# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP, NORTHEAST OHIO COALITION FOR THE HOMELESS, ELISA BREDENDIEK, PETER QUILLIGAN, and JOHN GERRATH,<br><br>Plaintiffs,<br><br>v.<br><br>DAVE YOST, in his official capacity as Ohio Attorney General, and FRANK LAROSE, in his official capacity as Ohio Secretary of State,<br><br>Defendants. | Case No. 2:24-cv-3495<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Kimberly A. Jolson |

**DECLARATION OF JONA HILARIO**

I, Jona Hilario, in accordance with 28 U.S.C. § 1746, declare the following:

1. I am over the age of 18. I am competent to make this sworn declaration. The following is based on my personal knowledge.

2. I am the Statewide Co-Director of OPAWL – Building AAPI Feminist Leadership ("OPAWL").

3. OPAWL is a nonprofit grassroots member-led community organization whose mission is to build collective power to advance social justice and elevate the voices, visibility, and progressive leadership of Asian American and Pacific Islander ("AAPI") and Asian women and nonbinary people across Ohio.

4. OPAWL was originally founded in 2016 and has grown to include more than 350 members statewide, all of whom identify as Asian or AAPI women and nonbinary people.

5. As a fiscally sponsored project of a 501(c)(3) organization, OPAWL operates as a

1

continuing association under Ohio law and is subject to any applicable 501(c)(3) regulations.

6. OPAWL's civic engagement work is core to its mission and includes nonpartisan organizing in support of or opposition to ballot issues, including by hosting voter outreach events, translating voter education materials into Asian languages, and collecting signatures for ballot issues.

7. For example, last summer, we tabled at various community events, including the Columbus Asian Festival, to educate hundreds of voters about the August special election on Issue 1, which would have increased the vote threshold for citizen-initiated amendments. We also hosted a panel event for our members about AAPI participation in the reproductive justice movement. The event helped our members talk about the reproductive rights amendment with their families and communities.

8. We also held phone and text banks on the vote threshold amendment and the reproductive rights amendment, and we translated talking points about both issues into six Asian languages that we shared via social media. We were even able to launch an in-language digital ad campaign on Instagram and Facebook about the threshold amendment, which reached Chinese and Hindi speakers in Ohio.

9. Additionally, we have participated in signature collection efforts for citizen-initiated amendments, including last year's reproductive rights amendment and this year's redistricting reform amendment. And we would like to continue educating voters and our community about any issues that will appear on the statewide ballot this fall.

10. OPAWL's members are active in their communities outside of OPAWL, too. They are dedicated to using the power of their voices to make collective change by donating to causes they care about, hosting voter outreach and education events, and volunteering for and attending

2

issue-related demonstrations.

11. Many of OPAWL's members make regular donations to OPAWL specifically, and even those who do not make direct financial contributions often expend some of their own funds to support OPAWL's ballot issue advocacy—whether by purchasing snacks for an event or providing materials for a phone bank. Even members who are only participating or volunteering often make small expenditures to do so, like paying for transportation to attend our events.

12. Although OPAWL does not require its members to disclose their citizenship status or the status of others in their households, OPAWL knows that many of its members are noncitizen immigrants or have noncitizen family members.

13. I myself was not yet a citizen when I co-founded OPAWL seven years ago. I immigrated to the United States from the Philippines in 2004 and became a citizen in 2022.

14. I came to Ohio to pursue my PhD in Molecular, Cellular and Developmental Biology at The Ohio State University in 2004, and Columbus has been my home for the past two decades. I now live here with my husband and two children.

15. Even when I was still working my way through the immigration process, I cared deeply about the policies that affected me, my family, and my community. I was eager to build community with others who identified as Asian and AAPI, and I found an organizing home at OPAWL.

16. I know that many OPAWL members feel the same way. For example, our member Sarah Imran is a Pakistani citizen and is completing her PhD at the University of Cincinnati. She is raising a young daughter here with her husband and is, at her core, an advocate for the issues she cares about.

17. OPAWL is a stronger and more effective organization for having members like

3

Sarah, who bring a global perspective to our work.

18. OPAWL receives its funding from—and funds and supports its engagement and advocacy with the use of money from—foundation grants and donations from individual donors, including its individual members. Neither external donors nor members who donate are required to disclose their citizenship status or affiliation with foreign nationals when donating to OPAWL. Nor do we ask our grant funders to track the citizenship status of their own contributors.

19. I am deeply concerned about the provisions in HB 1 that, read together, broadly prohibit anyone, including specifically continuing associations like OPAWL, from being able to "solicit, accept, or receive any funds from a foreign national" or "[m]ake a contribution, expenditure, or independent expenditure using any funds the person knows were received from a foreign national" for the following purposes: "mak[ing] a contribution, expenditure, or independent expenditure in support of or opposition to a statewide ballot issue or question, regardless of whether the ballot issue has yet been certified to appear on the ballot" or "[m]ak[ing] a contribution to . . . any committee created to support or oppose a ballot issue or question, or, to the maximum extent permitted by law and by the constitutions of the United States and of this state, to a continuing association." H.B. 1, 135th Gen. Assemb., Spec. Sess. § 3517.121(B), (C) (Ohio 2024). It also prohibits OPAWL from "knowingly aid[ing] or facilitate[ing] a violation of" HB 1. *Id.* § 3517.121(D).

20. This language seems to prohibit OPAWL from receiving or using funds from any noncitizen—including one of our own members—that we then might use to support ballot issue advocacy, or even creating voter education materials that reference ballot issues.

21. We have no system to segregate funds received from noncitizens, and to do so would be incredibly burdensome on our organization, which has limited resources and staff

4

capacity. To even be able to segregate funds, we would need to—for the first time—solicit information on citizenship status from any contributors to our organization. That would require creating questionnaires or otherwise paying for background checks to verify citizenship status information. We would also need to set up new bank accounts or otherwise pay for professional accounting services to keep the money entirely separate, and we would need to implement new tracking systems to allow us to monitor exactly what ends up in each account and which accounts we're using for any activities that could be related to ballot issue advocacy. Relatedly, we would need to be careful to avoid transferring funds between our own accounts because of HB 1's prohibitions on "indirect" as well as "direct" spending. *Id.* § 3517.121(B), (C).

22. Setting up a tracking system would take resources away from our core work, including community building and storytelling.

23. Doing so would also be contrary to our mission. Our organization exists to be inclusive, and suddenly monitoring citizenship status would result in a loss of members, volunteers, and donors. Excluding participation, financial or otherwise, in our organization based on citizenship is antithetical to the values that brought most of OPAWL's members to the organization in the first place.

24. In addition to the terms mentioned above, I find other terms in HB 1 unclear and confusing and am not sure what they prohibit or what OPAWL would have to do to avoid violating them. For example, I am not sure what it means to "knowingly" "directly or indirectly through any other person or entity" accept or expend funds from a foreign national "to support or oppose a ballot issue or question," *id.* § 3517.121(B)(4), (C)(1)-(2), and how far back we need to monitor a funding trail.

25. HB 1 is also unclear about what OPAWL may do with funds already received from

5

individuals whose citizenship status is unknown to the organization. I have no way to know whether any funds previously received from a noncitizen, or someone whose citizenship status I do not know, must now also be segregated to avoid serious penalties.

26. Under HB 1, I understand that OPAWL and its leadership will be at risk of investigation, prosecution, and debilitating fines if we accept contributions from noncitizens and use those funds to support ballot issue advocacy in any way. As a relatively young and small organization, we cannot afford to take those risks.

27. Unless HB 1 is enjoined, OPAWL's advocacy efforts will be severely chilled. We have already started having internal conversations about whether we can engage in ballot issue advocacy going forward. At the very least, we will have to take a pause from all of our ballot issue advocacy—including our ongoing efforts related to this year's statewide ballot issues—as we reevaluate our procedures for soliciting and spending our funds.

28. HB 1 will also completely silence some of OPAWL's members from speaking out: noncitizens, those whose finances are closely associated with noncitizen family members, and those who would otherwise work in coordination with or with support from noncitizens.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  6/28/2024

*Jona Hilario*

Jona Hilario

6