# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP, NORTHEAST OHIO COALITION FOR THE HOMELESS, ELISA BREDENDIEK, PETER QUILLIGAN, and JOHN GERRATH, <br><br> Plaintiffs, <br><br> v. <br><br> DAVE YOST, in his official capacity as Ohio Attorney General, and FRANK LAROSE, in his official capacity as Ohio Secretary of State, <br><br> Defendants. | Case No. 2:24-cv-3495 <br><br> Judge Michael H. Watson <br><br> Magistrate Judge Kimberly A. Jolson |

## DECLARATION OF JOHN GERRATH

I, John Gerrath, in accordance with 28 U.S.C. § 1746, declare the following:

1. I am over the age of 18. I am competent to make this sworn declaration. The following is based on my personal knowledge.

2. I immigrated to the United States from Canada in 2012 with my wife and daughter. Our son was born in Michigan in 2015 and is a United States citizen.

3. Since 2019, I have been a lawful permanent resident of the United States, but I am not yet a United States citizen.

4. I am eligible to apply for citizenship in November of this year, and I plan to do so with my wife and daughter.

5. My future is in the United States, here with my family. I have no intention of leaving and consider it my home.

1

6. I have lived and worked in Silver Lake, Ohio for seven years and am very involved in my local community.

7. I work as a botanist and conservation biologist and am employed as an academic lab manager at Kent State University. I have been at KSU since 2017. My job includes doing research related to forests, plants, and related ecosystems.

8. I also serve on my village's Park Board as Tree Commissioner. The Tree Commission's mission is to educate residents on the importance of trees in the community, to encourage the planting of more trees, and to maintain and replant street and park trees. We hold public meetings, manage special projects, provide educational information about trees and their environmental impact on our website, inventory and help take care of trees in our village, host events, and provide mulch and trees to village residents.

9. I love my university and park board positions, and I have long appreciated the ability to learn and speak about issues that matter to me.

10. I care greatly about the policies that affect my family and me as Ohio residents, and I closely follow laws and public policies that develop in our state by speaking with colleagues and neighbors.

11. My interest in policy includes ballot issues pending in the state. Last year, I paid for and displayed signs in my yard in support of the citizen-initiated reproductive rights amendment and adult cannabis use law. State reproductive rights and drug legalization affect everyone who lives in Ohio—including my family—not just U.S. citizens.

12. I understand, however, that HB 1 includes a ban on noncitizens making any "independent expenditure in support of or opposition to a statewide ballot issue or question." H.B. 1, 135th Gen. Assemb., Spec. Sess. § 3517.121(B)(2) (Ohio 2024). Given the criminal and

monetary penalties that could follow from violating HB 1, if it goes into effect, I would no longer feel like I could spend money to buy a sign on this or any future ballot issue because I am a noncitizen, despite my strong belief that publicly supporting causes I am passionate contributes to the discourse about them.

13. I know that I am not eligible to vote currently, but supporting ballot issues by making contributions and expenditures is one way that I can express my informed opinions to spark conversations and, at times, healthy debate.

14. For example, I dedicate my time professionally and personally to causes related to the health of our environment. As a noncitizen, I breathe the same air as my citizen neighbors, and I do not believe I should be shut out from contributing money on any environmental ballot initiatives in the state or posting a sign about them in my yard.

15. It is not clear to me what I can and cannot do under HB 1 should it go into effect. For instance, I have made donations to local nonprofits in the past. But HB 1 includes a prohibition on any noncitizen making "a contribution . . . to the maximum extent permitted by law and by the constitutions of the United States and of this state, to a continuing association," *id.* § 3517.121(B)(4), which I understand to include all or nearly all nonprofit organizations.

16. As a result, I am concerned that if I contribute to a nonprofit that makes even a small expenditure in support of a ballot issue—including a ballot issue not yet on the ballot—I could face prison time. Given the broad language and confusing phrasing about "to the maximum extent permitted by law," I am not sure whether *any* of my nonprofit contributions, even to the local food bank, are allowed. The potential consequences are too severe for me to take any risks, especially with my prospects for citizenship potentially hanging in the balance.

17. HB 1 will restrict my ability to speak up for causes I care about—and it will even

3

have the effect of silencing my U.S. citizen son. It prevents me and my wife, who is also a noncitizen, from spending money even "indirectly" to support or oppose a ballot issue. *Id.* § 3517.121(B). Based on that language, neither my wife nor I would feel comfortable even spending money on posterboard and markers for our son to make a sign supporting a ballot issue, out of fear that it could be perceived as violating HB 1.

18. HB 1 also prevents any individual, regardless of citizenship status, from "solicit[ing], accept[ing], or receiv[ing] any funds from a foreign national" or "mak[ing] a contribution, expenditure, or independent expenditure using any funds the person knows were received from a foreign national" for the purpose of supporting or opposing a ballot issue or contributing to a continuing association. *Id.* § 3517.121(C)(1), (2). That means that my son could not ask my wife or I for a few dollars to spend on stickers or a baked good at a local festival supporting a nonprofit.

19. HB 1 will discourage me from participating in important issue advocacy through spending because I read HB 1's ban on foreign national contributions and expenditures as very broad and unclear, and I am afraid of the fact that it could be enforced by the Attorney General and Secretary of State based on a complaint from virtually anyone.

20. The fact that HB 1 singles out noncitizens also makes me feel isolated and stifled in a state I've called my home for seven years. I fear it will lead to additional restrictions on expression, or more divisions and classifications in my community, based on my citizenship status.

21. Because, as I read it, HB 1 will also potentially punish even innocent mistakes, if it goes into effect, I will steer clear of any contributions or expenditures on even the causes closest to me, including by stopping my household's standing monthly contributions to the Ohio Abortion Fund and Akron Food Bank. I cannot risk even an arrest, nor would my family be able to readily

4

pay five-digit fines. As a result, I will avoid any contributions or expenditures related to ballot issues, and HB 1 will restrain my ability to express myself on a range of pressing issues.

22. If HB 1 does not become effective, I plan to continue making contributions and expenditures related to ballot issues including displaying signs in my yard and donating to organizations pushing forward ballot issues. The thought of sitting out of these key public policy conversations is contrary to my values, but it seems unavoidable based on the breadth of the law if it is enforceable.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  6/27/2024

John Gerrath

5