# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP, NORTHEAST OHIO COALITION FOR THE HOMELESS, ELISA BREDENDIEK, PETER QUILLIGAN, and JOHN GERRATH,<br><br>        Plaintiffs,<br><br>  v.<br><br>DAVE YOST, in his official capacity as Ohio Attorney General, and FRANK LAROSE, in his official capacity as Ohio Secretary of State,<br><br>        Defendants. | Case No. 2:24-cv-3495<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Kimberly A. Jolson |

## DECLARATION OF ELISA BREDENDIEK

I, Elisa Bredendiek, in accordance with 28 U.S.C. § 1746, declare the following:

1. I am over the age of 18. I am competent to make this sworn declaration. The following is based on my personal knowledge.

2. I moved to Northeast Ohio from Germany in 2005, shortly after graduating from high school, to spend a year in Cleveland working at the InterReligious Task Force, a non-profit that focuses on human rights.

3. Although my original plan was to return to Germany after one year, I have been in Northeast Ohio ever since—for nearly two decades.

4. I attended college here in Ohio, met my husband here, and started a family here.

5. I now live in Cleveland with my husband and two children, all of whom are U.S. citizens. I teach French and Spanish at St. Ignatius High School.

6. I have been a lawful permanent resident of the United States since 2010.

1

7. Although I am a German citizen, I have no intention of leaving my home, Ohio.

8. From the time I moved to Northeast Ohio as a teenager, I have been an active member of my local community and supported causes I care about by working for nonprofit organizations including the ACLU of Ohio, volunteering my time with other organizations, lending my voice to demonstrations, and making monetary contributions where I could.

9. I have long appreciated that in the United States, I am able to speak freely about the issues that matter to me even though I am not a citizen.

10. In fact, part of what inspired me to stay in the United States, and in Northeast Ohio in particular, was the social justice community that welcomed me when I arrived here.

11. I have attended countless protests related to human rights, immigrants' rights, environmental justice, and anti-war efforts.

12. I have spent years volunteering with the Cleveland Catholic Worker to provide hospitality to the most vulnerable in our community.

13. I have made financial contributions to the Northeast Ohio Coalition for the Homeless (NEOCH) and several other organizations that support the homeless and immigrants.

14. I care deeply about the people and policies around me, but if HB 1 goes into effect, I will be prohibited from engaging in advocacy that I want to engage in, simply because I am not a United States citizen.

15. But for HB 1, I would continue to contribute to NEOCH, which I know uses some of its funds to support ballot issues and educate the community about them. But I am not willing to risk being subject to investigation by the Attorney General or being criminally prosecuted for my support of NEOCH and its community advocacy efforts. I understand that I could face jail time and be forced to pay a 10,000-dollar fine, even for making a small-dollar contribution. *Id.* §

2

3517.121(F). My family and I cannot afford to risk those consequences. If HB 1 is enforced, I will no longer be contributing to the organization.

16. As a result, I will also no longer be able to work with NEOCH to advance the organization's mission—a mission that I, personally, deeply care about—in the ways that I believe are most likely to be effective.

17. In addition, given HB 1's vague and broad language—including its prohibition on any noncitizen making "a contribution . . . to the maximum extent permitted by law and by the constitutions of the United States and of this state, to a continuing association," H.B. 1, 135th Gen. Assemb., Spec. Sess. § 3517.121(B)(4) (Ohio 2024), which I understand to include most if not all nonprofit organizations—I am concerned about contributing to *any* nonprofit organizations in the future, out of fear that doing so will risk investigation and criminal prosecution. Simply put, it is unclear to me which contributions are prohibited and which are allowed.

18. If HB 1 goes into effect, I will even be wary of attending protests or rallies, because I have to make small expenditures for gas, parking, and supplies in order to participate in them. Those expenditures would run contrary to HB 1's ban on noncitizens making an "independent expenditure in support of or opposition to a statewide ballot issue or question," especially since the ban applies to issues "regardless of whether [they] ha[ve] yet been certified to appear on the ballot." *Id.* § 3517.121(B)(2).

19. As someone who does not vote in state elections, I am not always aware of which issues are being considered for the ballot. Under HB 1's broad terms, which prohibit my engaging in spending to support or oppose any statewide ballot issue or question—even if it is not yet certified for the ballot—I can imagine inadvertently facing penalties for spending money to support immigrants' rights, for example, without knowing that a group of activists elsewhere in the state

3

is organizing for an immigrants' rights ballot issue.

20. I am already very careful about how I conduct myself during protests and in my activism, knowing that the consequences for running afoul of any law are grave: I could lose my lawful permanent residency and risk my family's stability and security in the process. That same concern only intensifies my fears surrounding HB 1 and the risk that I will be accused of—or even convicted of—violating the law, simply for engaging in advocacy about issues I care deeply about.

21. HB 1 adds a host of new restrictions on me—and my family, by virtue of their association with me. It prevents any individual, regardless of citizenship status, from "solicit[ing], accept[ing], or receiv[ing] any funds from a foreign national" or "mak[ing] a contribution, expenditure, or independent expenditure using any funds the person knows were received from a foreign national" for the purpose of supporting or opposing a ballot issue or contributing to a continuing association. *Id.* § 3517.121(C)(1), (2). And it uses terms like "indirectly," "implicitly," and "facilitate," which further add to the confusion. *Id.* § 3517.121(B), (B)(5), (D).

22. On my read, HB 1 would prevent my husband from using our joint bank account to continue making contributions to NEOCH in his own name.

23. This reality strikes me as deeply un-American and contrary to the values of giving back that my husband and I are instilling in our children.


I declare under penalty of perjury that the foregoing is true and correct.


Executed on 6/27/2024

*Elisa Bredendiek*

Elisa Bredendiek

4