# Exhibit 6

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP, NORTHEAST OHIO COALITION FOR THE HOMELESS, ELISA BREDENDIEK, PETER QUILLIGAN, and JOHN GERRATH,<br><br>        Plaintiffs,<br><br>   v.<br><br>DAVE YOST, in his official capacity as Ohio Attorney General, and FRANK LAROSE, in his official capacity as Ohio Secretary of State,<br><br>        Defendants. | Case No. 2:24-cv-3495<br><br>Judge Michael H. Watson<br><br>Magistrate Judge Kimberly A. Jolson |

## DECLARATION OF SARAH IMRAN

I, Sarah Imran, in accordance with 28 U.S.C. § 1746, declare the following:

1. I am over the age of 18. I am competent to make this sworn declaration. The following is based on my personal knowledge.

2. I am a member of OPAWL – Building AAPI Feminist Leadership (OPAWL), and I live in Cincinnati, Ohio.

3. I moved to Cincinnati in 2020 to pursue my PhD in political science at the University of Cincinnati, and I am due to complete my doctoral degree next year.

4. I am originally from Pakistan and am not a U.S. citizen. I am pursuing my studies here in the United States on a F-1 student visa.

5. Before moving to Cincinnati, I lived in Nashville, Tennessee, where I received a master's degree in Community Development from Vanderbilt University and worked in local government as the Director of Policy and Research for the Human Relations Commission.

1

6. In Nashville, I was originally on an F-1 visa and then worked on an H-1B visa.

7. My husband is a doctor at Cincinnati Children's Hospital. He also is not a U.S. citizen and is lawfully working here under the grant of a J-1 visa. We have a two-year-old daughter, who was born here in Ohio and is a United States citizen.

8. I have now lived in the United States for eight years, but I do not have a clear path to citizenship because I have been on non-immigrant visas. Despite being deeply involved and invested in my community here, I am no closer than when I moved to the United States in 2015 to having any sense of security or belonging in my status in this country.

9. My husband and I would like to find jobs that will allow us to remain in the United States after I complete my PhD. As we consider our options and whether to make the United States our longer-term home, we find ourselves evaluating the policy climate in which we would be raising our young daughter, who is a citizen of this country. It is important to us that we are able to advocate for policies that will benefit our community and our family, including specifically our daughter.

10. For example, we want our daughter to be safe from gun violence if she attends school here, and it is important to us that we all have access to affordable health care if something were to happen to one of us. As a result, I care just as deeply about the issues that affect me and my family as any other Ohio resident, whether or not they are a U.S citizen; and as we continue to build our lives here, it is important that I and my husband are able to freely support ballot issues and organizations that align with our own views on what is best for our community here in Ohio and our family.

11. I am deeply committed to speaking out about my views and affecting change where I can. I came to the United States to pursue higher education so that I had more tools to do so, and

2

my academic research interests include gender justice, social movements, and women-led community organizing. I have always paired my research and practice, and I have worked on advocating for social justice-oriented policies both in Pakistan and here in the United States.

12. My interest in building community and advocating for change with other women is what led me to OPAWL. I had been involved in a similar organization in Nashville and reached out to OPAWL about becoming a member as soon as I arrived in Cincinnati.

13. As an OPAWL member, I have participated in advocacy meetings with elected officials, and I have contributed to the organization's overall advocacy efforts by volunteering my time and donating my skills as an artist and illustrator to design posters for our events.

14. I am eager to take on a more active role with OPAWL in the future, including by serving on the organization's leadership team or board. I am concerned however that if I had a leadership role and made decisions about what ballot issues OPAWL might support or oppose, I and OPAWL could be violating HB 1's prohibitions on any noncitizen "directly or indirectly through any person or entity" making contributions, expenditures, or independent expenditures to this end. H.B. 1, 135th Gen. Assemb., Spec. Sess. § 3517.121(B)(2) (Ohio 2024). This could put both me and OPAWL as an organization at risk of investigation or even criminal penalties, and it also could put others in leadership at OPAWL at risk under division (C) or (D) of HB 1. Even without a leadership position, I am concerned that HB 1's broad prohibitions will make it impossible for me to participate as actively and affirmatively as I would like in OPAWL. There are so many ways in which I am concerned that my involvement could trigger consequences under HB 1 for me, the organization, or others involved in it.

15. In addition to my advocacy with OPAWL, I donate both my time and money to local nonprofit organizations that support survivors of domestic violence and food justice, and I

3

attend protests and rallies for issues I care about. But HB 1 makes me concerned that my involvement in these other issues, too, will now come with risks of investigation and criminal prosecution. My concerns stem not only from the provisions already discussed, but also from HB 1's prohibition on any noncitizen making "a contribution . . . to the maximum extent permitted by law and by the constitutions of the United States and of this state, to a continuing association," *id.* § 3517.121(B)(4), which I understand to include most if not all nonprofit organizations. Under that provision, I am not sure if I can contribute to *any* nonprofit organizations in the future without risking investigation and criminal prosecution. It is very unclear to me which contributions are prohibited and which are allowed.

16. Under HB 1's broad terms, I am afraid that I could even face penalties for spending money to support food justice without knowing that a group of activists elsewhere in the state is organizing for a food justice ballot issue, or without knowing that a women's shelter I am donating to plans to contribute a small portion of its funds to support a local ballot issue that affects its zoning.

17. I already do a risk-benefit analysis every time I participate in any kind of advocacy—whether that be attending a protest or speaking up in a meeting—because I know that I could lose my visa and put my education and my family's security at risk.

18. HB 1 adds new and severe penalties to that same risk-benefit analysis. As a result, if HB 1 is enforced, I will stop making contributions, speaking out, and associating with others to affect change on matters that I deeply care about and that impact me and my family.

19. If HB 1 does *not* go into effect, I will continue to use my voice as I have been. Indeed, being able to speak out on the issues I care about is why I came to the United States in the first place.

4

5

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  6/28/2024

*Sarah Imran*

Sarah Imran

5