# **Exhibit 7**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP et al., | |
| Plaintiffs, | Case No. 2:24-cv-3495 |
| v. | Judge Michael H. Watson |
| DAVE YOST, in his official capacity as Ohio Attorney General et al., | Magistrate Judge Kimberly A. Jolson |
| Defendants. | |

**DECLARATION OF JYOTI JASRASARIA IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I, Jyoti Jasrasaria, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am over the age of 18 and competent to make this declaration. I am an attorney with the law firm of Elias Law Group LLP and am admitted to practice law in Massachusetts and the District of Columbia, as well as before multiple federal courts of appeals and district courts. I am admitted *pro hac vice* in the above-captioned matter and am an attorney for Plaintiffs. I submit this declaration to provide the Court with true and correct copies of certain documents submitted in connection with Plaintiffs' Motion for Preliminary Injunction.

2.      Exhibit A is a true and correct copy of the enrolled version of H.B. 1, 135th Gen. Assemb., Spec. Sess. (Ohio 2024).

3.      Exhibit B is a true and correct copy of S.B. 215, 135th Gen. Assemb., Reg. Sess. (Ohio 2024), last accessed on June 28, 2024, and available at https://search-prod.lis.state.oh.us/solarapi/v1/general_assembly_135/bills/sb215/PS/02/sb215_02_PS?format=pdf.

4.      Exhibit C is a true and correct copy of H.B. 114, 135th Gen. Assemb., Reg. Sess. (Ohio 2024), last accessed on June 28, 2024, and available at https://search-prod.lis.state.oh.us/solarapi/v1/general_assembly_135/bills/hb114/PS/04/hb114_04_PS?format=pdf.

5.      Exhibit D is a true and correct copy of H.B. 305, 135th Gen. Assemb., Reg. Sess. (Ohio 2024), last accessed on June 28, 2024, and available at https://search-prod.lis.state.oh.us/solarapi/v1/general_assembly_135/bills/hb305/PS/04/hb305_04_PS?format=pdf.

6.      Exhibit E is a true and correct copy of H.B. 271, 135th Gen. Assemb., Spec. Sess. (Ohio 2024), last accessed on June 28, 2024, and available at https://legislature.ohio.gov/files/special-session/hb271_03_PS.pdf.

7.      Exhibit F is a true and correct copy of Governor Mike DeWine's May 23, 2024 Proclamation, last accessed on June 28, 2024, and available at https://content.govdelivery.com/attachments/OHIOGOVERNOR/2024/05/23/file_attachments/2888202/Proclamation%20-%20Special%20Session.pdf.

8.      Exhibit G is a true and correct copy of the February 21, 2024 Ohio Senate General Government Committee hearing on S.B. 215 and the associated certificate of transcriptionist.

9.      Exhibit H is a true and correct copy of the May 8, 2024 Ohio Senate floor debate on H.B. 114 and the associated certificate of transcriptionist.

10.      Exhibit I is a true and correct copy of the May 28, 2024 Ohio House Government Oversight Committee hearing on H.B. 1 and the associated certificate of transcriptionist.

11.      Exhibit J is a true and correct copy of the May 29, 2024 Ohio House Government Oversight Committee hearing on H.B. 1 and the associated certificate of transcriptionist.

12.     Exhibit K is a true and correct copy of the May 30, 2024 Ohio House Government Oversight Committee hearing on H.B. 1 and the associated certificate of transcriptionist.

13.     Exhibit L is a true and correct copy of the May 30, 2024 Ohio House floor debate on H.B. 1 and the associated certificate of transcriptionist.

14.     Exhibit M is a true and correct copy of the May 31, 2024 Ohio Senate floor debate on H.B. 1 and the associated certificate of transcriptionist.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 28, 2024

/s/ *Jyoti Jasrasaria*
Jyoti Jasrasaria*
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, D.C. 20001
Telephone: 202-968-4490
jjasrasaria@elias.law

*Attorneys for Plaintiffs*
* *Admitted pro hac vice*

# Exhibit A

(135th General Assembly)
(Special Session)
(Amended Substitute House Bill Number 1)

# AN ACT

To enact section 3517.121 of the Revised Code to modify the Campaign Finance Law regarding foreign nationals and ballot issues.

*Be it enacted by the General Assembly of the State of Ohio:*

SECTION 1. That section 3517.121 of the Revised Code be enacted to read as follows:

Sec. 3517.121. Notwithstanding any contrary provision of the Revised Code:

(A) As used in this section:

(1) "Electioneering communication" has the same meaning as in section 3517.1011 of the Revised Code.

(2) "Foreign national" means any of the following, as applicable:

(a) In the case of an individual, an individual who is not a United States citizen or national;

(b) A government of a foreign country or of a political subdivision of a foreign country;

(c) A foreign political party;

(d) A person, other than an individual, that is organized under the laws of, or has its principal place of business in, a foreign country.

(B) No foreign national shall, directly or indirectly through any person or entity, do any of the following:

(1) Make a contribution, expenditure, or independent expenditure in support of or opposition to a candidate for any elective office in this state, including an office of a political party;

(2) Make a contribution, expenditure, or independent expenditure in support of or opposition to a statewide ballot issue or question, regardless of whether the ballot issue or question has yet been certified to appear on the ballot;

(3) Make a disbursement for the direct cost of producing or airing an electioneering communication;

(4) Make a contribution to a candidate, campaign committee, political action committee, political contributing entity, legislative campaign fund, state candidate fund, political party, or separate segregated fund, to any committee created to support or oppose a ballot issue or question, or, to the maximum extent permitted by law and by the constitutions of the United States and of this state, to a continuing association;

(5) Promise, either expressly or implicitly, to make a contribution, expenditure, independent expenditure, or disbursement described in division (B)(1), (2), (3), or (4) of this section.

(C) No individual, candidate, campaign committee, political action committee, political

Am. Sub. H. B. No. 1

2

contributing entity, legislative campaign fund, state candidate fund, political party, separate segregated fund, or committee created to support or oppose a ballot issue or question and, to the maximum extent permitted by law and by the constitutions of the United States and of this state, no continuing association shall, directly or indirectly through any other person or entity, knowingly do either of the following:

(1) Solicit, accept, or receive any funds from a foreign national for any purpose described in division (B) of this section;

(2) Make a contribution, expenditure, or independent expenditure using any funds the person knows were received from a foreign national for any purpose described in division (B) of this section.

(D) No person shall knowingly aid or facilitate a violation of division (B) or (C) of this section.

(E) Any complaint that alleges a violation of division (W) of section 3517.13 of the Revised Code shall be treated as instead alleging a violation of this section.

(F)(1) Whoever knowingly violates division (B) of this section is guilty of a misdemeanor of the first degree on a first offense and is guilty of a felony of the fifth degree on a second or subsequent offense. The violator also shall be fined an amount equal to three times the amount involved in the violation or ten thousand dollars, whichever amount is greater.

(2) Whoever knowingly violates division (C) of this section is guilty of a misdemeanor of the first degree on a first offense and is guilty of a felony of the fifth degree on a second or subsequent offense. The violator also shall be fined an amount equal to three times the amount involved in the violation or ten thousand dollars, whichever amount is greater, and shall be required to return the total amount accepted in violation of that division to the foreign national from whom it was accepted.

(3) Whoever knowingly violates division (D) of this section is guilty of a misdemeanor of the first degree and shall be fined one thousand dollars.

(G)(1)(a) Except as otherwise provided in division (G)(1)(b) of this section, the attorney general has exclusive authority to prosecute a violation of this section and has exclusive supervision and control of all investigations, prosecutions, and enforcement proceedings under this section.

(b) If the attorney general is a victim or witness or otherwise involved in an alleged violation of this section, the attorney general shall refer the matter to the appropriate prosecutor, as determined under division (A)(2) of section 3517.155 of the Revised Code, except that if applicable, the attorney general shall make the determination described in division (A)(2)(b) of that section instead of the Ohio elections commission.

(2) Upon the occurrence of either of the following, the attorney general shall investigate an alleged violation of this section in consultation with the secretary of state:

(a) The submission of a written request to the attorney general by the governor, the secretary of state, the general assembly, or the Ohio elections commission, alleging a violation of this section;

Am. Sub. H. B. No. 1

3

(b) The filing of a complaint with the attorney general by an elector of this state, alleging a violation of this section.

(3) If it appears to the attorney general, after conducting an investigation under division (G)(2) of this section, that there is probable cause to believe that a violation of this section has occurred, the attorney general may prosecute the violation in a court of competent jurisdiction.

(H) When proceeding under this section, the attorney general and any assistant or special counsel designated by the attorney general for that purpose have all the rights, privileges, and powers conferred by law on prosecuting attorneys, including the power to appear before grand juries and to interrogate witnesses before such grand juries. These powers of the attorney general are in addition to any other applicable powers of the attorney general.

Am. Sub. H. B. No. 1

_____ Speaker _____ of the House of Representatives.

_____ President _____ of the Senate.

Passed **May 31** , 20 **24**

Approved JUNE 2 , 20 2 4

_____
Governor.



Am. Sub. H. B. No. 1

The section numbering of law of a general and permanent nature is complete and in conformity with the Revised Code.

_____

*Director, Legislative Service Commission.*

Filed in the office of the Secretary of State at Columbus, Ohio, on the **2nd** day of ___**June**___, A. D. 20 **24** .

_____

*Secretary of State.*

File No. **27**      Effective Date ___**9 | 1 | 2024**___

(135th General Assembly)
(Special Session)
(Amended Substitute House Bill Number 1)

## AN ACT

To enact section 3517.121 of the Revised Code to modify the Campaign Finance Law regarding foreign nationals and ballot issues.

*Introduced by*

Representative Seitz

Cosponsors: Representatives Abrams, Barhorst, Bird, Callender, Carruthers, Click, Creech, Cutrona, Daniels, Demetriou, Dobos, Edwards, Fowler Arthur, Ghanbari, Gross, Hall, Hillyer, Holmes, Hoops, John, Johnson, Jones, Kick, King, LaRe, Lipps, Loychik, McClain, Miller, K., Miller, M., Pavliga, Peterson, Plummer, Richardson, Robb Blasdel, Santucci, Schmidt, Stein, Stewart, Swearingen, Wiggam, Williams, Young, T.
Senators Chavez, Cirino, Gavarone, Hackett, Huffman, S., Lang, McColley, O'Brien, Reineke, Reynolds, Roegner, Romanchuk, Rulli, Schaffer, Wilkin

*Passed by the House of Representatives,*

_____ May 30 _____, 20 24

*Passed by the Senate,*

_____ May 31 _____, 20 24

*Filed in the office of the Secretary of State at Columbus, Ohio, on the*

2nd day of _____ June _____, A. D. 20 24

_____
Secretary of State.

# Exhibit B

**As Passed by the Senate**

**135th General Assembly**

**Regular Session**                                    **Sub. S. B. No. 215**

**2023-2024**

**Senators Gavarone, McColley**

**Cosponsors: Senators Brenner, Chavez, Cirino, Hackett, Huffman, S., Johnson, Landis, Lang, O'Brien, Reynolds, Roegner, Romanchuk, Rulli, Schaffer, Wilkin**

───

# A BILL

| | |
|---|---:|
| To amend sections 3517.01, 3517.10, 3517.12, | 1 |
| 3517.13, 3517.155, and 3517.992 and to enact | 2 |
| section 3517.121 of the Revised Code to prohibit | 3 |
| foreign nationals from making contributions or | 4 |
| expenditures regarding ballot issue campaigns. | 5 |

**BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO:**

| | |
|---|---:|
|     **Section 1.** That sections 3517.01, 3517.10, 3517.12, | 6 |
| 3517.13, 3517.155, and 3517.992 be amended and section 3517.121 | 7 |
| of the Revised Code be enacted to read as follows: | 8 |
|     **Sec. 3517.01.** (A)(1) A political party within the meaning | 9 |
| of Title XXXV of the Revised Code is any group of voters that | 10 |
| meets either of the following requirements: | 11 |
|     (a) Except as otherwise provided in this division, at the | 12 |
| most recent regular state election, the group polled for its | 13 |
| candidate for governor in the state or nominees for presidential | 14 |
| electors at least three per cent of the entire vote cast for | 15 |
| that office. A group that meets the requirements of this | 16 |
| division remains a political party for a period of four years | 17 |

after meeting those requirements. 18

(b) The group filed with the secretary of state, 19
subsequent to its failure to meet the requirements of division 20
(A)(1)(a) of this section, a party formation petition that meets 21
all of the following requirements: 22

(i) The petition is signed by qualified electors equal in 23
number to at least one per cent of the total vote for governor 24
or nominees for presidential electors at the most recent 25
election for such office. 26

(ii) The petition is signed by not fewer than five hundred 27
qualified electors from each of at least a minimum of one-half 28
of the congressional districts in this state. If an odd number 29
of congressional districts exists in this state, the number of 30
districts that results from dividing the number of congressional 31
districts by two shall be rounded up to the next whole number. 32

(iii) The petition declares the petitioners' intention of 33
organizing a political party, the name of which shall be stated 34
in the declaration, and of participating in the succeeding 35
general election, held in even-numbered years, that occurs more 36
than one hundred twenty-five days after the date of filing. 37

(iv) The petition designates a committee of not less than 38
three nor more than five individuals of the petitioners, who 39
shall represent the petitioners in all matters relating to the 40
petition. Notice of all matters or proceedings pertaining to the 41
petition may be served on the committee, or any of them, either 42
personally or by registered mail, or by leaving such notice at 43
the usual place of residence of each of them. 44

(2) No such group of electors shall assume a name or 45
designation that is similar, in the opinion of the secretary of 46

state, to that of an existing political party as to confuse or
mislead the voters at an election. 47
48

(B) A campaign committee shall be legally liable for any
debts, contracts, or expenditures incurred or executed in its
name. 49
50
51

(C) Notwithstanding the definitions found in section
3501.01 of the Revised Code, as used in this section and
sections 3517.08 to 3517.14, 3517.99, and 3517.992 of the
Revised Code: 52
53
54
55

(1) "Campaign committee" means a candidate or a
combination of two or more persons authorized by a candidate
under section 3517.081 of the Revised Code to receive
contributions and make expenditures. 56
57
58
59

(2) "Campaign treasurer" means an individual appointed by
a candidate under section 3517.081 of the Revised Code. 60
61

(3) "Candidate" has the same meaning as in division (H) of
section 3501.01 of the Revised Code and also includes any person
who, at any time before or after an election, receives
contributions or makes expenditures or other use of
contributions, has given consent for another to receive
contributions or make expenditures or other use of
contributions, or appoints a campaign treasurer, for the purpose
of bringing about the person's nomination or election to public
office. When two persons jointly seek the offices of governor
and lieutenant governor, "candidate" means the pair of
candidates jointly. "Candidate" does not include candidates for
election to the offices of member of a county or state central
committee, presidential elector, and delegate to a national
convention or conference of a political party. 62
63
64
65
66
67
68
69
70
71
72
73
74
75

(4) "Continuing association" means an association, other
than a campaign committee, political party, legislative campaign
fund, political contributing entity, or labor organization, that
is intended to be a permanent organization that has a primary
purpose other than supporting or opposing specific candidates,
political parties, or ballot issues, and that functions on a
regular basis throughout the year. "Continuing association"
includes organizations that are determined to be not organized
for profit under subsection 501 and that are described in
subsection 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal
Revenue Code. 76
77
78
79
80
81
82
83
84
85
86

(5) "Contribution" means a loan, gift, deposit,
forgiveness of indebtedness, donation, advance, payment, or
transfer of funds or anything of value, including a transfer of
funds from an inter vivos or testamentary trust or decedent's
estate, and the payment by any person other than the person to
whom the services are rendered for the personal services of
another person, which contribution is made, received, or used
for the purpose of influencing the results of an election. Any
loan, gift, deposit, forgiveness of indebtedness, donation,
advance, payment, or transfer of funds or of anything of value,
including a transfer of funds from an inter vivos or
testamentary trust or decedent's estate, and the payment by any
campaign committee, political action committee, legislative
campaign fund, political party, political contributing entity,
or person other than the person to whom the services are
rendered for the personal services of another person, that is
made, received, or used by a state or county political party,
other than the moneys an entity may receive under sections
3517.101, 3517.1012, and 3517.1013 of the Revised Code, shall be
considered to be a "contribution" for the purpose of section 87
88
89
90
91
92
93
94
95
96
97
98
99
100
101
102
103
104
105
106

3517.10 of the Revised Code and shall be included on a statement          107
of contributions filed under that section.                                108

    "Contribution" does not include any of the following:        109

    (a) Services provided without compensation by individuals    110
volunteering a portion or all of their time on behalf of a                111
person;                                                                    112

    (b) Ordinary home hospitality;                               113

    (c) The personal expenses of a volunteer paid for by that    114
volunteer campaign worker;                                                 115

    (d) Any gift given to an entity pursuant to section          116
3517.101 of the Revised Code;                                              117

    (e) Any contribution as defined in section 3517.1011 of      118
the Revised Code that is made, received, or used to pay the                119
direct costs of producing or airing an electioneering                      120
communication;                                                             121

    (f) Any gift given to a state or county political party       122
for the party's restricted fund under division (A)(2) of section           123
3517.1012 of the Revised Code;                                             124

    (g) Any gift given to a state political party for deposit     125
in a Levin account pursuant to section 3517.1013 of the Revised            126
Code. As used in this division, "Levin account" has the same               127
meaning as in that section.                                                128

    (h) Any donation given to a transition fund under section     129
3517.1014 of the Revised Code.                                             130

    (6) "Expenditure" means the disbursement or use of a         131
contribution <u>or other funds or anything of value</u> for the purpose    132
of influencing the results of an election or of making a                   133

charitable donation under division (G) of section 3517.08 of the 134
Revised Code. Any disbursement or use of a contribution by a 135
state or county political party is an expenditure and shall be 136
considered either to be made for the purpose of influencing the 137
results of an election or to be made as a charitable donation 138
under division (G) of section 3517.08 of the Revised Code and 139
shall be reported on a statement of expenditures filed under 140
section 3517.10 of the Revised Code. During the thirty days 141
preceding a primary or general election, any disbursement to pay 142
the direct costs of producing or airing a broadcast, cable, or 143
satellite communication that refers to a clearly identified 144
candidate shall be considered to be made for the purpose of 145
influencing the results of that election and shall be reported 146
as an expenditure or as an independent expenditure under section 147
3517.10 or 3517.105 of the Revised Code, as applicable, except 148
that the information required to be reported regarding 149
contributors for those expenditures or independent expenditures 150
shall be the same as the information required to be reported 151
under divisions (D)(1) and (2) of section 3517.1011 of the 152
Revised Code. 153

    As used in this division, "broadcast, cable, or satellite 154
communication" and "refers to a clearly identified candidate" 155
have the same meanings as in section 3517.1011 of the Revised 156
Code. 157

    (7) "Personal expenses" includes, but is not limited to, 158
ordinary expenses for accommodations, clothing, food, personal 159
motor vehicle or airplane, and home telephone. 160

    (8) "Political action committee" means a combination of 161
two or more persons, the primary or major purpose of which is to 162
support or oppose any candidate, political party, or issue, or 163

to influence the result of any election through express 164
advocacy, and that is not a political party, a campaign 165
committee, a political contributing entity, or a legislative 166
campaign fund. "Political action committee" does not include 167
either of the following: 168

(a) A continuing association that makes disbursements for 169
the direct costs of producing or airing electioneering 170
communications and that does not engage in express advocacy; 171

(b) A political club that is formed primarily for social 172
purposes and that consists of one hundred members or less, has 173
officers and periodic meetings, has less than two thousand five 174
hundred dollars in its treasury at all times, and makes an 175
aggregate total contribution of one thousand dollars or less per 176
calendar year. 177

(9) "Public office" means any state, county, municipal, 178
township, or district office, except an office of a political 179
party, that is filled by an election and the offices of United 180
States senator and representative. 181

(10) "Anything of value" has the same meaning as in 182
section 1.03 of the Revised Code. 183

(11) "Beneficiary of a campaign fund" means a candidate, a 184
public official or employee for whose benefit a campaign fund 185
exists, and any other person who has ever been a candidate or 186
public official or employee and for whose benefit a campaign 187
fund exists. 188

(12) "Campaign fund" means money or other property, 189
including contributions. 190

(13) "Public official or employee" has the same meaning as 191
in section 102.01 of the Revised Code. 192

(14) "Caucus" means all of the members of the house of          193
representatives or all of the members of the senate of the      194
general assembly who are members of the same political party.   195

(15) "Legislative campaign fund" means a fund that is           196
established as an auxiliary of a state political party and      197
associated with one of the houses of the general assembly.      198

(16) "In-kind contribution" means anything of value other       199
than money that is used to influence the results of an election 200
or is transferred to or used in support of or in opposition to a 201
candidate, campaign committee, legislative campaign fund,       202
political party, political action committee, or political       203
contributing entity and that is made with the consent of, in    204
coordination, cooperation, or consultation with, or at the      205
request or suggestion of the benefited candidate, committee,    206
fund, party, or entity. The financing of the dissemination,     207
distribution, or republication, in whole or part, of any        208
broadcast or of any written, graphic, or other form of campaign 209
materials prepared by the candidate, the candidate's campaign   210
committee, or their authorized agents is an in-kind contribution 211
to the candidate and an expenditure by the candidate.           212

(17)(17)(a) "Independent expenditure" means an either of         213
the following:                                                  214

(i) An expenditure by a person advocating the election or       215
defeat of an identified candidate or candidates, that is not    216
made with the consent of, in coordination, cooperation, or      217
consultation with, or at the request or suggestion of any       218
candidate or candidates or of the campaign committee or agent of 219
the candidate or candidates;                                    220

(ii) An expenditure by a person advocating support of or        221

opposition to an identified ballot issue or question or to                   222

achieve the successful circulation of an initiative or                       223

referendum petition in order to place such an issue or question              224

on the ballot, regardless of whether the ballot issue or                     225

question has yet been certified to appear on the ballot. ~~As~~              226

   (b) As used in division ~~(C)(17)~~ (C)(17)(a) of this     227

section:                                                                     228

   ~~(a)~~ (i) "Person" means an individual, partnership,      229

unincorporated business organization or association, political              230

action committee, political contributing entity, separate                   231

segregated fund, association, or other organization or group of             232

persons, but not a labor organization or a corporation unless               233

the labor organization or corporation is a political                        234

contributing entity.                                                         235

   ~~(b)~~ (ii) "Advocating" means any communication containing a   236

message advocating election or defeat.                                       237

   ~~(c)~~ (iii) "Identified candidate" means that the name of the   238

the candidate appears, a photograph or drawing of the candidate             239

appears, or the identity of the candidate is otherwise apparent             240

by unambiguous reference.                                                    241

   ~~(d)~~ (iv) "Made in coordination, cooperation, or          242

consultation with, or at the request or suggestion of, any                  243

candidate or the campaign committee or agent of the candidate"              244

means made pursuant to any arrangement, coordination, or                    245

direction by the candidate, the candidate's campaign committee,             246

or the candidate's agent prior to the publication, distribution,            247

display, or broadcast of the communication. An expenditure is               248

presumed to be so made when it is any of the following:                     249

   ~~(i)~~ (I) Based on information about the candidate's plans,   250

projects, or needs provided to the person making the expenditure       251
by the candidate, or by the candidate's campaign committee or          252
agent, with a view toward having an expenditure made;                  253

(ii) (II) Made by or through any person who is, or has                 254
been, authorized to raise or expend funds, who is, or has been,        255
an officer of the candidate's campaign committee, or who is, or        256
has been, receiving any form of compensation or reimbursement          257
from the candidate or the candidate's campaign committee or            258
agent;                                                                 259

(iii) (III) Except as otherwise provided in division (D)               260
of section 3517.105 of the Revised Code, made by a political           261
party in support of a candidate, unless the expenditure is made        262
by a political party to conduct voter registration or voter            263
education efforts.                                                     264

(e) (v) "Agent" means any person who has actual oral or                265
written authority, either express or implied, to make or to            266
authorize the making of expenditures on behalf of a candidate,         267
or means any person who has been placed in a position with the         268
candidate's campaign committee or organization such that it            269
would reasonably appear that in the ordinary course of campaign-       270
related activities the person may authorize expenditures.              271

(18) "Labor organization" means a labor union; an employee             272
organization; a federation of labor unions, groups, locals, or         273
other employee organizations; an auxiliary of a labor union,           274
employee organization, or federation of labor unions, groups,          275
locals, or other employee organizations; or any other bona fide        276
organization in which employees participate and that exists for        277
the purpose, in whole or in part, of dealing with employers            278
concerning grievances, labor disputes, wages, hours, and other         279
terms and conditions of employment.                                    280

(19) "Separate segregated fund" means a separate                         281
segregated fund established pursuant to the Federal Election              282
Campaign Act.                                                            283

(20) "Federal Election Campaign Act" means the "Federal                  284
Election Campaign Act of 1971," 86 Stat. 11, 2 U.S.C.A. 431, et          285
seq., as amended.                                                        286

(21) "Restricted fund" means the fund a state or county                  287
political party must establish under division (A)(1) of section          288
3517.1012 of the Revised Code.                                           289

(22) "Electioneering communication" has the same meaning                 290
as in section 3517.1011 of the Revised Code.                             291

(23) "Express advocacy" means a communication that                       292
contains express words advocating the nomination, election, or           293
defeat of a candidate or that contains express words advocating          294
the adoption or defeat of a question or issue, as determined by          295
a final judgment of a court of competent jurisdiction.                   296

(24) "~~Political~~ "Federal political committee" has the same           297
meaning as in section ~~3517.1011~~ 3517.107 of the Revised Code.        298

(25) "Political contributing entity" means any entity,                   299
including a corporation or labor organization, that may lawfully         300
make contributions and expenditures and that is not an                   301
individual or a political action committee, continuing                   302
association, campaign committee, political party, legislative            303
campaign fund, designated state campaign committee, or state             304
candidate fund. For purposes of this division, "lawfully" means          305
not prohibited by any section of the Revised Code, or authorized         306
by a final judgment of a court of competent jurisdiction.                307

~~(26)~~(26)(a) "Alternative political organization" means a             308
continuing association, corporation, labor organization, or              309

other person, other than an individual, that makes contributions            310
or expenditures and that is not a campaign committee, political             311
party, legislative campaign fund, designated state campaign                 312
committee, state candidate fund, federal political committee,               313
separate segregated fund, political action committee, or                    314
political contributing entity.                                              315

(b) A person described in division (C)(26)(a) of this                    316
section that makes contributions or expenditures that are                   317
prohibited under section 3599.03 or another provision of the                318
Revised Code nonetheless is considered an alternative political             319
organization.                                                               320

(c) "Alternative political organization" does not include               321
a partnership or other unincorporated business that makes a                 322
contribution as described in division (I) of section 3517.10 of             323
the Revised Code.                                                           324

(27) "Internet identifier of record" has the same meaning              325
as in section 9.312 of the Revised Code.                                    326

**Sec. 3517.10.** (A) Except as otherwise provided in this              327
division, every campaign committee, political action committee,             328
legislative campaign fund, political party, and political                   329
contributing entity that made or received a contribution or made           330
an expenditure in connection with the nomination or election of             331
any candidate or in connection with any ballot issue or question           332
at any election held or to be held in this state shall file, on            333
a form prescribed under this section or by electronic means of             334
transmission as provided in this section and section 3517.106 of           335
the Revised Code, a full, true, and itemized statement, made               336
under penalty of election falsification, setting forth in detail           337
the contributions and expenditures, not later than four p.m. of            338
the following dates:                                                        339

(1) The twelfth day before the election to reflect
contributions received and expenditures made from the close of
business on the last day reflected in the last previously filed
statement, if any, to the close of business on the twentieth day
before the election; 340 341 342 343 344

(2) The thirty-eighth day after the election to reflect
the contributions received and expenditures made from the close
of business on the last day reflected in the last previously
filed statement, if any, to the close of business on the seventh
day before the filing of the statement; 345 346 347 348 349

(3) The last business day of January of every year to
reflect the contributions received and expenditures made from
the close of business on the last day reflected in the last
previously filed statement, if any, to the close of business on
the last day of December of the previous year; 350 351 352 353 354

(4) The last business day of July of every year to reflect
the contributions received and expenditures made from the close
of business on the last day reflected in the last previously
filed statement, if any, to the close of business on the last
day of June of that year. 355 356 357 358 359

A campaign committee shall only be required to file the
statements prescribed under divisions (A)(1) and (2) of this
section in connection with the nomination or election of the
committee's candidate. 360 361 362 363

The statement required under division (A)(1) of this
section shall not be required of any campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity that has received
contributions of less than one thousand dollars and has made 364 365 366 367 368

expenditures of less than one thousand dollars at the close of 369
business on the twentieth day before the election. Those 370
contributions and expenditures shall be reported in the 371
statement required under division (A)(2) of this section. 372

If an election to select candidates to appear on the 373
general election ballot is held within sixty days before a 374
general election, the campaign committee of a successful 375
candidate in the earlier election may file the statement 376
required by division (A)(1) of this section for the general 377
election instead of the statement required by division (A)(2) of 378
this section for the earlier election if the pregeneral election 379
statement reflects the status of contributions and expenditures 380
for the period twenty days before the earlier election to twenty 381
days before the general election. 382

If a person becomes a candidate less than twenty days 383
before an election, the candidate's campaign committee is not 384
required to file the statement required by division (A)(1) of 385
this section. 386

No statement under division (A)(3) of this section shall 387
be required for any year in which a campaign committee, 388
political action committee, legislative campaign fund, political 389
party, or political contributing entity is required to file a 390
postgeneral election statement under division (A)(2) of this 391
section. However, a statement under division (A)(3) of this 392
section may be filed, at the option of the campaign committee, 393
political action committee, legislative campaign fund, political 394
party, or political contributing entity. 395

No campaign committee of a candidate for the office of 396
chief justice or justice of the supreme court, and no campaign 397
committee of a candidate for the office of judge of any court in 398

this state, shall be required to file a statement under division
(A)(4) of this section. 399
400

Except as otherwise provided in this paragraph and in the
next paragraph of this section, the only campaign committees
required to file a statement under division (A)(4) of this
section are the campaign committee of a statewide candidate and
the campaign committee of a candidate for county office. The
campaign committee of a candidate for any other nonjudicial
office is required to file a statement under division (A)(4) of
this section if that campaign committee receives, during that
period, contributions exceeding ten thousand dollars. 401
402
403
404
405
406
407
408
409

No statement under division (A)(4) of this section shall
be required of a campaign committee, a political action
committee, a legislative campaign fund, a political party, or a
political contributing entity for any year in which the campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity is
required to file a postprimary election statement under division
(A)(2) of this section. However, a statement under division (A)
(4) of this section may be filed at the option of the campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity. 410
411
412
413
414
415
416
417
418
419
420

No statement under division (A)(3) or (4) of this section
shall be required if the campaign committee, political action
committee, legislative campaign fund, political party, or
political contributing entity has no contributions that it has
received and no expenditures that it has made since the last
date reflected in its last previously filed statement. However,
the campaign committee, political action committee, legislative
campaign fund, political party, or political contributing entity 421
422
423
424
425
426
427
428

shall file a statement to that effect, on a form prescribed 429
under this section and made under penalty of election 430
falsification, on the date required in division (A)(3) or (4) of 431
this section, as applicable. 432

The campaign committee of a statewide candidate shall file 433
a monthly statement of contributions received during each of the 434
months of July, August, and September in the year of the general 435
election in which the candidate seeks office. The campaign 436
committee of a statewide candidate shall file the monthly 437
statement not later than three business days after the last day 438
of the month covered by the statement. During the period 439
beginning on the nineteenth day before the general election in 440
which a statewide candidate seeks election to office and 441
extending through the day of that general election, each time 442
the campaign committee of the joint candidates for the offices 443
of governor and lieutenant governor or of a candidate for the 444
office of secretary of state, auditor of state, treasurer of 445
state, or attorney general receives a contribution from a 446
contributor that causes the aggregate amount of contributions 447
received from that contributor during that period to equal or 448
exceed ten thousand dollars and each time the campaign committee 449
of a candidate for the office of chief justice or justice of the 450
supreme court receives a contribution from a contributor that 451
causes the aggregate amount of contributions received from that 452
contributor during that period to exceed ten thousand dollars, 453
the campaign committee shall file a two-business-day statement 454
reflecting that contribution. Contributions reported on a two- 455
business-day statement required to be filed by a campaign 456
committee of a statewide candidate in a primary election shall 457
also be included in the postprimary election statement required 458
to be filed by that campaign committee under division (A)(2) of 459

this section. A two-business-day statement required by this              460
paragraph shall be filed not later than two business days after         461
receipt of the contribution. The statements required by this            462
paragraph shall be filed in addition to any other statements            463
required by this section.                                               464

Subject to the secretary of state having implemented,                   465
tested, and verified the successful operation of any system the         466
secretary of state prescribes pursuant to divisions (C)(6)(b)           467
and (D)(6) of this section and division (F)(1) of section               468
3517.106 of the Revised Code for the filing of campaign finance         469
statements by electronic means of transmission, a campaign              470
committee of a statewide candidate shall file a two-business-day        471
statement under the preceding paragraph by electronic means of          472
transmission if the campaign committee is required to file a            473
pre-election, postelection, or monthly statement of                     474
contributions and expenditures by electronic means of                   475
transmission under this section or section 3517.106 of the              476
Revised Code.                                                           477

If a campaign committee or political action committee has               478
no balance on hand and no outstanding obligations and desires to        479
terminate itself, it shall file a statement to that effect, on a        480
form prescribed under this section and made under penalty of            481
election falsification, with the official with whom it files a          482
statement under division (A) of this section after filing a             483
final statement of contributions and a final statement of               484
expenditures, if contributions have been received or                    485
expenditures made since the period reflected in its last                486
previously filed statement.                                             487

(B) Except as otherwise provided in division (C)(7) of                  488
this section, each statement required by division (A) of this           489

section shall contain the following information: 490

(1) The full name and address of each campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity, including any treasurer of the committee, fund, party, or entity, filing a contribution and expenditure statement; 491
492
493
494
495

(2)(a) In the case of a campaign committee, the candidate's full name and address; 496
497

(b) In the case of a political action committee, the registration number assigned to the committee under division (D) (1) of this section. 498
499
500

(3) The date of the election and whether it was or will be a general, primary, or special election; 501
502

(4) A statement of contributions received, which shall include the following information: 503
504

(a) The month, day, and year of the contribution; 505

(b)(i) The full name and address of each person, political party, campaign committee, legislative campaign fund, political action committee, or political contributing entity from whom contributions are received and the registration number assigned to the political action committee under division (D)(1) of this section. The requirement of filing the full address does not apply to any statement filed by a state or local committee of a political party, to a finance committee of such committee, or to a committee recognized by a state or local committee as its fund-raising auxiliary. Notwithstanding division (F) of this section, the requirement of filing the full address shall be considered as being met if the address filed is the same address the contributor provided under division (E)(1) of this section. 506
507
508
509
510
511
512
513
514
515
516
517
518

(ii) If a political action committee, political
contributing entity, legislative campaign fund, or political
party that is required to file campaign finance statements by
electronic means of transmission under section 3517.106 of the
Revised Code or a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution from an individual that exceeds one
hundred dollars, the name of the individual's current employer,
if any, or, if the individual is self-employed, the individual's
occupation and the name of the individual's business, if any;
519
520
521
522
523
524
525
526
527
528

(iii) If a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution transmitted pursuant to section 3599.031
of the Revised Code from amounts deducted from the wages and
salaries of two or more employees that exceeds in the aggregate
one hundred dollars during any one filing period under division
(A)(1), (2), (3), or (4) of this section, the full name of the
employees' employer and the full name of the labor organization
of which the employees are members, if any.
529
530
531
532
533
534
535
536
537

(c) A description of the contribution received, if other
than money;
538
539

(d) The value in dollars and cents of the contribution;
540

(e) A separately itemized account of all contributions and
expenditures regardless of the amount, except a receipt of a
contribution from a person in the sum of twenty-five dollars or
less at one social or fund-raising activity and a receipt of a
contribution transmitted pursuant to section 3599.031 of the
Revised Code from amounts deducted from the wages and salaries
of employees if the contribution from the amount deducted from
the wages and salary of any one employee is twenty-five dollars
541
542
543
544
545
546
547
548

or less aggregated in a calendar year. An account of the total 549
contributions from each social or fund-raising activity shall 550
include a description of and the value of each in-kind 551
contribution received at that activity from any person who made 552
one or more such contributions whose aggregate value exceeded 553
two hundred fifty dollars and shall be listed separately, 554
together with the expenses incurred and paid in connection with 555
that activity. A campaign committee, political action committee, 556
legislative campaign fund, political party, or political 557
contributing entity shall keep records of contributions from 558
each person in the amount of twenty-five dollars or less at one 559
social or fund-raising activity and contributions from amounts 560
deducted under section 3599.031 of the Revised Code from the 561
wages and salary of each employee in the amount of twenty-five 562
dollars or less aggregated in a calendar year. No continuing 563
association that is recognized by a state or local committee of 564
a political party as an auxiliary of the party and that makes a 565
contribution from funds derived solely from regular dues paid by 566
members of the auxiliary shall be required to list the name or 567
address of any members who paid those dues. 568

Contributions that are other income shall be itemized 569
separately from all other contributions. The information 570
required under division (B)(4) of this section shall be provided 571
for all other income itemized. As used in this paragraph, "other 572
income" means a loan, investment income, or interest income. 573

(f) In the case of a campaign committee of a state elected 574
officer, if a person doing business with the state elected 575
officer in the officer's official capacity makes a contribution 576
to the campaign committee of that officer, the information 577
required under division (B)(4) of this section in regard to that 578
contribution, which shall be filed together with and considered 579

a part of the committee's statement of contributions as required 580
under division (A) of this section but shall be filed on a 581
separate form provided by the secretary of state. As used in 582
this division: 583

(i) "State elected officer" has the same meaning as in 584
section 3517.092 of the Revised Code. 585

(ii) "Person doing business" means a person or an officer 586
of an entity who enters into one or more contracts with a state 587
elected officer or anyone authorized to enter into contracts on 588
behalf of that officer to receive payments for goods or 589
services, if the payments total, in the aggregate, more than 590
five thousand dollars during a calendar year. 591

(5) A statement of expenditures which shall include the 592
following information: 593

(a) The month, day, and year of the expenditure; 594

(b) The full name and address of each person, political 595
party, campaign committee, legislative campaign fund, political 596
action committee, or political contributing entity to whom the 597
expenditure was made and the registration number assigned to the 598
political action committee under division (D)(1) of this 599
section; 600

(c) The object or purpose for which the expenditure was 601
made; 602

(d) The amount of each expenditure. 603

(C)(1) The statement of contributions and expenditures 604
shall be signed by the person completing the form. If a 605
statement of contributions and expenditures is filed by 606
electronic means of transmission pursuant to this section or 607

section 3517.106 of the Revised Code, the electronic signature          608
of the person who executes the statement and transmits the              609
statement by electronic means of transmission, as provided in           610
division (F) of section 3517.106 of the Revised Code, shall be          611
attached to or associated with the statement and shall be               612
binding on all persons and for all purposes under the campaign          613
finance reporting law as if the signature had been handwritten          614
in ink on a printed form.                                               615

(2) The person filing the statement, under penalty of                   616
election falsification, shall include with it a~~ ~~both of the          617
following:                                                              618

(a) A list of each anonymous contribution, the                          619
circumstances under which it was received, and the reason it            620
cannot be attributed to a specific donor;                               621

(b) A certification that the campaign committee, political              622
action committee, legislative campaign fund, political party, or        623
political contributing entity, as applicable, has not accepted          624
any contribution that is prohibited under this chapter or               625
section 3599.03 or 3599.031 of the Revised Code during the              626
period covered by the statement.                                        627

(3) Each statement of a campaign committee of a candidate               628
who holds public office shall contain a designation of each             629
contributor who is an employee in any unit or department under          630
the candidate's direct supervision and control. In a space              631
provided in the statement, the person filing the statement shall        632
affirm that each such contribution was voluntarily made.                633

(4) A campaign committee that did not receive                           634
contributions or make expenditures in connection with the               635
nomination or election of its candidate shall file a statement          636

to that effect, on a form prescribed under this section and made
under penalty of election falsification, on the date required in
division (A)(2) of this section. 637 638 639

(5) The campaign committee of any person who attempts to
become a candidate and who, for any reason, does not become
certified in accordance with Title XXXV of the Revised Code for
placement on the official ballot of a primary, general, or
special election to be held in this state, and who, at any time
prior to or after an election, receives contributions or makes
expenditures, or has given consent for another to receive
contributions or make expenditures, for the purpose of bringing
about the person's nomination or election to public office,
shall file the statement or statements prescribed by this
section and a termination statement, if applicable. Division (C)
(5) of this section does not apply to any person with respect to
an election to the offices of member of a county or state
central committee, presidential elector, or delegate to a
national convention or conference of a political party. 640 641 642 643 644 645 646 647 648 649 650 651 652 653 654

(6)(a) The statements required to be filed under this
section shall specify the balance in the hands of the campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity and the
disposition intended to be made of that balance. 655 656 657 658 659

(b) The secretary of state shall prescribe the form for
all statements required to be filed under this section and shall
furnish the forms to the boards of elections in the several
counties. The boards of elections shall supply printed copies of
those forms without charge. The secretary of state shall
prescribe the appropriate methodology, protocol, and data file
structure for statements required or permitted to be filed by 660 661 662 663 664 665 666

electronic means of transmission to the secretary of state or a
board of elections under division (A) of this section, division
(E) of section 3517.106, division (D) of section 3517.1011,
division (B) of section 3517.1012, division (C) of section
3517.1013, and divisions (D) and (I) of section 3517.1014 of the
Revised Code. Subject to division (A) of this section, division
(E) of section 3517.106, division (D) of section 3517.1011,
division (B) of section 3517.1012, division (C) of section
3517.1013, and divisions (D) and (I) of section 3517.1014 of the
Revised Code, the statements required to be stored on computer
by the secretary of state under division (B) of section 3517.106
of the Revised Code shall be filed in whatever format the
secretary of state considers necessary to enable the secretary
of state to store the information contained in the statements on
computer. Any such format shall be of a type and nature that is
readily available to whoever is required to file the statements
in that format. 683

(c) The secretary of state shall assess the need for
training regarding the filing of campaign finance statements by
electronic means of transmission and regarding associated
technologies for candidates, campaign committees, political
action committees, legislative campaign funds, political
parties, or political contributing entities, for individuals,
partnerships, or other entities, for persons making
disbursements to pay the direct costs of producing or airing
electioneering communications, or for treasurers of transition
funds, required or permitted to file statements by electronic
means of transmission under this section or section 3517.105,
3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014 of the
Revised Code. If, in the opinion of the secretary of state,
training in these areas is necessary, the secretary of state

667
668
669
670
671
672
673
674
675
676
677
678
679
680
681
682
684
685
686
687
688
689
690
691
692
693
694
695
696
697

shall arrange for the provision of voluntary training programs
for candidates, campaign committees, political action
committees, legislative campaign funds, political parties, or
political contributing entities, for individuals, partnerships,
and other entities, for persons making disbursements to pay the
direct costs of producing or airing electioneering
communications, or for treasurers of transition funds, as
appropriate. 698 699 700 701 702 703 704 705

(7) Each monthly statement and each two-business-day
statement required by division (A) of this section shall contain
the information required by divisions (B)(1) to (4), (C)(2),
and, if appropriate, (C)(3) of this section. Each statement
shall be signed as required by division (C)(1) of this section. 706 707 708 709 710

(D)(1)(a) Prior to receiving a contribution or making an
expenditure, every campaign committee, political action
committee, legislative campaign fund, political party, or
political contributing entity shall appoint a treasurer and
shall file, on a form prescribed by the secretary of state, a
designation of that appointment, including the full name and
address of the treasurer and of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity. That designation shall
be filed with the official with whom the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity is required to file
statements under section 3517.11 of the Revised Code. The name
of a campaign committee shall include at least the last name of
the campaign committee's candidate. If two or more candidates
are the beneficiaries of a single campaign committee under
division (B) of section 3517.081 of the Revised Code, the name
of the campaign committee shall include at least the last name 711 712 713 714 715 716 717 718 719 720 721 722 723 724 725 726 727 728

of each candidate who is a beneficiary of that campaign                729
committee. The secretary of state shall assign a registration          730
number to each political action committee that files a                 731
designation of the appointment of a treasurer under this               732
division if the political action committee is required by              733
division (A)(1) of section 3517.11 of the Revised Code to file         734
the statements prescribed by this section with the secretary of        735
state.                                                                 736

  (b) The form of the designation of treasurer shall require           737
the filer to certify, under penalty of election falsification,         738
that the campaign committee, political action committee,               739
legislative campaign fund, political party, or political               740
contributing entity, as applicable, has not accepted, and will         741
not accept, any contribution that is prohibited under this             742
chapter or section 3599.03 or 3599.031 of the Revised Code.            743

  (c) The secretary of state shall not accept for filing a             744
designation of treasurer of a political action committee or            745
political contributing entity if, in the opinion of the                746
secretary of state, the name of the political action committee         747
or political contributing entity would lead a reasonable person        748
to believe that the political action committee or political            749
contributing entity acts on behalf of or represents a county           750
political party, unless the designation is accompanied by a            751
written statement, signed by the chairperson of the county             752
political party's executive committee, granting the political          753
action committee or political contributing entity permission to        754
act on behalf of or represent the county political party.              755

  (2) The treasurer appointed under division (D)(1) of this            756
section shall keep a strict account of all contributions, from         757
whom received and the purpose for which they were disbursed.           758

(3)(a) Except as otherwise provided in section 3517.108 of
the Revised Code, a campaign committee shall deposit all
monetary contributions received by the committee into an account
separate from a personal or business account of the candidate or
campaign committee. 759
760
761
762
763

(b) A political action committee shall deposit all
monetary contributions received by the committee into an account
separate from all other funds. 764
765
766

(c) A state or county political party may establish a
state candidate fund that is separate from all other funds. A
state or county political party may deposit into its state
candidate fund any amounts of monetary contributions that are
made to or accepted by the political party subject to the
applicable limitations, if any, prescribed in section 3517.102
of the Revised Code. A state or county political party shall
deposit all other monetary contributions received by the party
into one or more accounts that are separate from its state
candidate fund. 767
768
769
770
771
772
773
774
775
776

(d) Each state political party shall have only one
legislative campaign fund for each house of the general
assembly. Each such fund shall be separate from any other funds
or accounts of that state party. A legislative campaign fund is
authorized to receive contributions and make expenditures for
the primary purpose of furthering the election of candidates who
are members of that political party to the house of the general
assembly with which that legislative campaign fund is
associated. Each legislative campaign fund shall be administered
and controlled in a manner designated by the caucus. As used in
this division, "caucus" has the same meaning as in section
3517.01 of the Revised Code and includes, as an ex officio 777
778
779
780
781
782
783
784
785
786
787
788

member, the chairperson of the state political party with which
the caucus is associated or that chairperson's designee. 
789
790

(4) Every expenditure in excess of twenty-five dollars
shall be vouched for by a receipted bill, stating the purpose of
the expenditure, that shall be filed with the statement of
expenditures. A canceled check with a notation of the purpose of
the expenditure is a receipted bill for purposes of division (D)
(4) of this section. 
791
792
793
794
795
796

(5) The secretary of state or the board of elections, as
the case may be, shall issue a receipt for each statement filed
under this section and shall preserve a copy of the receipt for
a period of at least six years. All statements filed under this
section shall be open to public inspection in the office where
they are filed and shall be carefully preserved for a period of
at least six years after the year in which they are filed. 
797
798
799
800
801
802
803

(6) The secretary of state, by rule adopted pursuant to
section 3517.23 of the Revised Code, shall prescribe both of the
following: 
804
805
806

(a) The manner of immediately acknowledging, with date and
time received, and preserving the receipt of statements that are
transmitted by electronic means of transmission to the secretary
of state or a board of elections pursuant to this section or
section 3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014
of the Revised Code; 
807
808
809
810
811
812

(b) The manner of preserving the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in the statements described in division
(D)(6)(a) of this section. The secretary of state shall preserve 
813
814
815
816
817

the contribution and expenditure, contribution and disbursement,
deposit and disbursement, gift and disbursement, or donation and
disbursement information in those statements for at least ten
years after the year in which they are filed by electronic means
of transmission.
818
819
820
821
822

(7)(a) The secretary of state, pursuant to division (G) of
section 3517.106 of the Revised Code, shall make available
online to the public through the internet the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in all of the following documents:
823
824
825
826
827
828

(i) All statements, all addenda, amendments, or other
corrections to statements, and all amended statements filed with
the secretary of state by electronic or other means of
transmission under this section, division (B)(2)(b) or (C)(2)(b)
of section 3517.105, or section 3517.106, 3517.1011, 3517.1012,
3517.1013, 3517.1014, or 3517.11 of the Revised Code;
829
830
831
832
833
834

(ii) All statements filed with a board of elections by
electronic means of transmission, and all addenda, amendments,
corrections, and amended versions of those statements, filed
with the board under this section, division (B)(2)(b) or (C)(2)
(b) of section 3517.105, or section 3517.106, 3517.1012, or
3517.11 of the Revised Code.
835
836
837
838
839
840

(b) The secretary of state may remove the information from
the internet after a reasonable period of time.
841
842

(E)(1) Any person, political party, campaign committee,
legislative campaign fund, political action committee, or
political contributing entity that makes a contribution in
connection with the nomination or election of any candidate or
843
844
845
846

in connection with any ballot issue or question at any election 847
held or to be held in this state shall provide its full name and 848
address to the recipient of the contribution at the time the 849
contribution is made. The political action committee also shall 850
provide the registration number assigned to the committee under 851
division (D)(1) of this section to the recipient of the 852
contribution at the time the contribution is made. 853

(2) Any individual who makes a contribution that exceeds 854
one hundred dollars to a political action committee, political 855
contributing entity, legislative campaign fund, or political 856
party or to a campaign committee of a statewide candidate or 857
candidate for the office of member of the general assembly shall 858
provide the name of the individual's current employer, if any, 859
or, if the individual is self-employed, the individual's 860
occupation and the name of the individual's business, if any, to 861
the recipient of the contribution at the time the contribution 862
is made. Sections 3599.39 and 3599.40 of the Revised Code do not 863
apply to division (E)(2) of this section. 864

(3) If a campaign committee shows that it has exercised 865
its best efforts to obtain, maintain, and submit the information 866
required under divisions (B)(4)(b)(ii) and (iii) of this 867
section, that committee is considered to have met the 868
requirements of those divisions. A campaign committee shall not 869
be considered to have exercised its best efforts unless, in 870
connection with written solicitations, it regularly includes a 871
written request for the information required under division (B) 872
(4)(b)(ii) of this section from the contributor or the 873
information required under division (B)(4)(b)(iii) of this 874
section from whoever transmits the contribution. 875

(4) Any check that a political action committee uses to 876

make a contribution or an expenditure shall contain the full 877
name and address of the committee and the registration number 878
assigned to the committee under division (D)(1) of this section. 879

(F) As used in this section: 880

(1)(a) Except as otherwise provided in division (F)(1) of 881
this section, "address" means all of the following if they 882
exist: apartment number, street, road, or highway name and 883
number, rural delivery route number, city or village, state, and 884
zip code as used in a person's post-office address, but not 885
post-office box. 886

(b) Except as otherwise provided in division (F)(1) of 887
this section, if an address is required in this section, a post- 888
office box and office, room, or suite number may be included in 889
addition to, but not in lieu of, an apartment, street, road, or 890
highway name and number. 891

(c) If an address is required in this section, a campaign 892
committee, political action committee, legislative campaign 893
fund, political party, or political contributing entity may use 894
the business or residence address of its treasurer or deputy 895
treasurer. The post-office box number of the campaign committee, 896
political action committee, legislative campaign fund, political 897
party, or political contributing entity may be used in addition 898
to that address. 899

(d) For the sole purpose of a campaign committee's 900
reporting of contributions on a statement of contributions 901
received under division (B)(4) of this section, "address" has 902
one of the following meanings at the option of the campaign 903
committee: 904

(i) The same meaning as in division (F)(1)(a) of this 905

section;
906

(ii) All of the following, if they exist: the
contributor's post-office box number and city or village, state,
and zip code as used in the contributor's post-office address.
907
908
909

(e) As used with regard to the reporting under this
section of any expenditure, "address" means all of the following
if they exist: apartment number, street, road, or highway name
and number, rural delivery route number, city or village, state,
and zip code as used in a person's post-office address, or post-
office box. If an address concerning any expenditure is required
in this section, a campaign committee, political action
committee, legislative campaign fund, political party, or
political contributing entity may use the business or residence
address of its treasurer or deputy treasurer or its post-office
box number.
910
911
912
913
914
915
916
917
918
919
920

(2) "Statewide candidate" means the joint candidates for
the offices of governor and lieutenant governor or a candidate
for the office of secretary of state, auditor of state,
treasurer of state, attorney general, member of the state board
of education, chief justice of the supreme court, or justice of
the supreme court.
921
922
923
924
925
926

(3) "Candidate for county office" means a candidate for
the office of county auditor, county treasurer, clerk of the
court of common pleas, judge of the court of common pleas,
sheriff, county recorder, county engineer, county commissioner,
prosecuting attorney, or coroner.
927
928
929
930
931

(G) An independent expenditure shall be reported whenever
and in the same manner that an expenditure is required to be
reported under this section and shall be reported pursuant to
932
933
934

division (B)(2)(a) or (C)(2)(a) of section 3517.105 of the
Revised Code. 935
936

(H)(1) Except as otherwise provided in division (H)(2) of
this section, if, during the combined pre-election and
postelection reporting periods for an election, a campaign
committee has received contributions of five hundred dollars or
less and has made expenditures in the total amount of five
hundred dollars or less, it may file a statement to that effect,
under penalty of election falsification, in lieu of the
statement required by division (A)(2) of this section. The
statement shall indicate the total amount of contributions
received and the total amount of expenditures made during those
combined reporting periods. 937
938
939
940
941
942
943
944
945
946
947

(2) In the case of a successful candidate at a primary
election, if either the total contributions received by or the
total expenditures made by the candidate's campaign committee
during the preprimary, postprimary, pregeneral, and postgeneral
election periods combined equal more than five hundred dollars,
the campaign committee may file the statement under division (H)
(1) of this section only for the primary election. The first
statement that the campaign committee files in regard to the
general election shall reflect all contributions received and
all expenditures made during the preprimary and postprimary
election periods. 948
949
950
951
952
953
954
955
956
957
958

(3) Divisions (H)(1) and (2) of this section do not apply
if a campaign committee receives contributions or makes
expenditures prior to the first day of January of the year of
the election at which the candidate seeks nomination or election
to office or if the campaign committee does not file a
termination statement with its postprimary election statement in 959
960
961
962
963
964

the case of an unsuccessful primary election candidate or with
its postgeneral election statement in the case of other
candidates.
965
966
967

(I) In the case of a contribution made by a partner of a
partnership or an owner or a member of another unincorporated
business from any funds of the partnership or other
unincorporated business, all of the following apply:
968
969
970
971

(1) The recipient of the contribution shall report the
contribution by listing both the partnership or other
unincorporated business and the name of the partner, owner, or
member making the contribution.
972
973
974
975

(2) In reporting the contribution, the recipient of the
contribution shall be entitled to conclusively rely upon the
information provided by the partnership or other unincorporated
business, provided that the information includes one of the
following:
976
977
978
979
980

(a) The name of each partner, owner, or member as of the
date of the contribution or contributions, and a statement that
the total contributions are to be allocated equally among all of
the partners, owners, or members; or
981
982
983
984

(b) The name of each partner, owner, or member as of the
date of the contribution or contributions who is participating
in the contribution or contributions, and a statement that the
contribution or contributions are to be allocated to those
individuals in accordance with the information provided by the
partnership or other unincorporated business to the recipient of
the contribution.
985
986
987
988
989
990
991

(3) For purposes of section 3517.102 of the Revised Code,
the contribution shall be considered to have been made by the
992
993

partner, owner, or member reported under division (I)(1) of this
section. 994
995

(4) No contribution from a partner of a partnership or an
owner or a member of another unincorporated business shall be
accepted from any funds of the partnership or other
unincorporated business unless the recipient reports the
contribution under division (I)(1) of this section together with
the information provided under division (I)(2) of this section. 996
997
998
999
1000
1001

(5) No partnership or other unincorporated business shall
make a contribution or contributions solely in the name of the
partnership or other unincorporated business. 1002
1003
1004

(6) As used in division (I) of this section, "partnership
or other unincorporated business" includes, but is not limited
to, a cooperative, a sole proprietorship, a general partnership,
a limited partnership, a limited partnership association, a
limited liability partnership, and a limited liability company. 1005
1006
1007
1008
1009

(J) A candidate shall have only one campaign committee at
any given time for all of the offices for which the person is a
candidate or holds office. 1010
1011
1012

(K)(1) In addition to filing a designation of appointment
of a treasurer under division (D)(1) of this section, the
campaign committee of any candidate for an elected municipal
office that pays an annual amount of compensation of five
thousand dollars or less, the campaign committee of any
candidate for member of a board of education except member of
the state board of education, or the campaign committee of any
candidate for township trustee or township fiscal officer may
sign, under penalty of election falsification, a certificate
attesting that the committee will not accept contributions 1013
1014
1015
1016
1017
1018
1019
1020
1021
1022

during an election period that exceed in the aggregate two
thousand dollars from all contributors and one hundred dollars
from any one individual, and that the campaign committee will
not make expenditures during an election period that exceed in
the aggregate two thousand dollars. 1023
1024
1025
1026
1027

The certificate shall be on a form prescribed by the
secretary of state and shall be filed not later than ten days
after the candidate files a declaration of candidacy and
petition, a nominating petition, or a declaration of intent to
be a write-in candidate. 1028
1029
1030
1031
1032

(2) Except as otherwise provided in division (K)(3) of
this section, a campaign committee that files a certificate
under division (K)(1) of this section is not required to file
the statements required by division (A) of this section. 1033
1034
1035
1036

(3) If, after filing a certificate under division (K)(1)
of this section, a campaign committee exceeds any of the
limitations described in that division during an election
period, the certificate is void and thereafter the campaign
committee shall file the statements required by division (A) of
this section. If the campaign committee has not previously filed
a statement, then on the first statement the campaign committee
is required to file under division (A) of this section after the
committee's certificate is void, the committee shall report all
contributions received and expenditures made from the time the
candidate filed the candidate's declaration of candidacy and
petition, nominating petition, or declaration of intent to be a
write-in candidate. 1037
1038
1039
1040
1041
1042
1043
1044
1045
1046
1047
1048
1049

(4) As used in division (K) of this section, "election
period" means the period of time beginning on the day a person
files a declaration of candidacy and petition, nominating 1050
1051
1052

petition, or declaration of intent to be a write-in candidate          1053
through the day of the election at which the person seeks              1054
nomination to office if the person is not elected to office, or,       1055
if the candidate was nominated in a primary election, the day of       1056
the election at which the candidate seeks office.                      1057

(L) A political contributing entity that receives                      1058
contributions from the dues, membership fees, or other                 1059
assessments of its members or from its officers, shareholders,         1060
and employees may report the aggregate amount of contributions         1061
received from those contributors and the number of individuals         1062
making those contributions, for each filing period under               1063
divisions (A)(1), (2), (3), and (4) of this section, rather than       1064
reporting information as required under division (B)(4) of this        1065
section, including, when applicable, the name of the current           1066
employer, if any, of a contributor whose contribution exceeds          1067
one hundred dollars or, if such a contributor is self-employed,        1068
the contributor's occupation and the name of the contributor's         1069
business, if any. Division (B)(4) of this section applies to a         1070
political contributing entity with regard to contributions it          1071
receives from all other contributors.                                  1072

Sec. 3517.12. (A) ~~Prior to receiving a contribution or~~             1073
~~making an expenditure, the circulator or~~ If the committee in       1074
charge of an initiative or referendum petition, or supplementary       1075
petition for additional signatures, for the submission to the          1076
electors of a ~~constitutional amendment, proposed law, section,~~     1077
~~or item of any law~~ ballot issue or question receives a             1078
contribution or makes an expenditure for the purpose of                1079
achieving the successful circulation of the petition, the              1080
committee is considered a political action committee for that          1081
purpose and shall ~~appoint a treasurer and shall file with the~~      1082
~~secretary of state, on a form prescribed by the secretary of~~       1083

state, a designation of that appointment, including the full  1084
name and address of the treasurer and of the circulator or  1085
committee comply with all applicable requirements of this  1086
chapter concerning political action committees, including filing  1087
a designation of treasurer under division (D) of section 3517.10  1088
of the Revised Code before receiving a contribution or making an  1089
expenditure and filing all required statements of contributions  1090
and expenditures.  1091

(B) The circulator or If the committee in charge of an  1092
initiative or referendum petition, or supplementary petition for  1093
additional signatures, for the submission to the electors of a  1094
constitutional amendment, proposed law, section, or item of any  1095
law ballot issue or question receives no contributions and makes  1096
no expenditures for the purpose of achieving the successful  1097
circulation of the petition, and is not otherwise considered a  1098
campaign committee, political party, legislative campaign fund,  1099
political action committee, or political contributing entity,  1100
then the committee shall, within thirty days after those the  1101
petition papers are is filed, file with the secretary of state  1102
office with which the petition is filed, on a form prescribed by  1103
the secretary of state, an itemized a statement, made under  1104
penalty of election falsification, showing in detail the  1105
following:  1106

(1) All money or things of value paid, given, promised, or  1107
received for circulating the petitions;  1108

(2) All appointments, promotions, or increases in salary,  1109
in positions which were given, promised, or received, or to  1110
obtain which assistance was given, promised, or received as a  1111
consideration for work done in circulating petitions;  1112

(3) Full names and addresses, including street, city, and  1113

state, of all persons to whom such payments or promises were                    1114

made and of all persons from whom such payments or promises were                1115

received;                                                                        1116

(4) Full names and addresses, including street, city, and                        1117

state, of all persons who contributed anything of value to be                    1118

used in circulating the petitions, and the amounts of those                      1119

contributions;                                                                   1120

(5) Time spent and salaries earned while soliciting                              1121

signatures to petitions by persons who were regular salaried                     1122

employees of some person or whom that employer authorized to                     1123

solicit as part of their regular duties.                                         1124

If that the committee received no money or things of                             1125

value were paid or received or if no promises were made or                       1126

received as a consideration for work done in circulating a                       1127

petition, the statement shall contain words to that effect                       1128

contributions and made no expenditures for the purpose of                        1129

achieving the successful circulation of the petition.                            1130

(C) The treasurer designated under division (A) of this                          1131

section shall file statements of contributions and expenditures                  1132

in accordance with section 3517.10 of the Revised Code regarding                 1133

all contributions made or received and all expenditures made by                  1134

that treasurer or the circulator or committee in connection with                 1135

the initiative or referendum petition, or supplementary petition                 1136

for additional signatures, for the submission of a                               1137

constitutional amendment, proposed law, section, or item of any                  1138

law.                                                                             1139

Sec. 3517.121. (A) Before receiving a contribution, as                           1140

defined in section 3517.01 of the Revised Code, or making an                     1141

expenditure on or after the effective date of this section,                      1142

every alternative political organization shall appoint a                              1143

treasurer and shall file a designation of that appointment under          1144

division (D)(1) of section 3517.10 of the Revised Code as though      1145

the alternative political organization were a political                              1146

contributing entity. The form of the designation shall indicate      1147

that the filer is an alternative political organization.                         1148

   (B)(1) Except as otherwise provided in division (C) of              1149

this section, an alternative political organization shall file      1150

statements of contributions and expenditures under section              1151

3517.10 of the Revised Code as though it were a political                   1152

contributing entity and shall be deemed to be a political                   1153

contributing entity for all purposes under this chapter.                    1154

   (2) For purposes of an alternative political organization      1155

reporting contributions received by the alternative political          1156

organization as required by division (B)(1) of this section:          1157

   (a) "Contribution" has the meaning defined in section              1158

3517.01 of the Revised Code if the alternative political                    1159

organization does all of the following:                                               1160

   (i) Deposits in a separate account from its general funds      1161

all loans, gifts, deposits, donations, advances, payments, or          1162

transfers of funds or anything of value, including a transfer of      1163

funds from an inter vivos or testamentary trust or decedent's          1164

estate and the payment by any person other than the person to          1165

whom the services are rendered for the personal services of          1166

another person, that are made to or received by the alternative      1167

political organization for the purpose of influencing the              1168

results of an election;                                                                    1169

   (ii) Does not transfer to that separate account any other      1170

loans, gifts, deposits, donations, advances, payments, or              1171

transfers of funds or anything of value, including a transfer of 1172
funds from an inter vivos or testamentary trust or decedent's 1173
estate and the payment by any person other than the person to 1174
whom the services are rendered for the personal services of 1175
another person, that are made to or received by the alternative 1176
political organization; 1177

(iii) Makes contributions and expenditures only from that 1178
separate account. 1179

(b) If an alternative political organization does not 1180
follow the procedure described in division (B)(2)(a) of this 1181
section, then any loan, gift, deposit, forgiveness of 1182
indebtedness, donation, advance, payment, or transfer of funds 1183
or anything of value, including a transfer of funds from an 1184
inter vivos or testamentary trust or decedent's estate and the 1185
payment by any person other than the person to whom the services 1186
are rendered for the personal services of another person, that 1187
is made to or received by the alternative political organization 1188
is considered a contribution, regardless of whether it is made 1189
or received for the purpose of influencing the results of an 1190
election. 1191

(C)(1) Upon filing a designation of appointment of a 1192
treasurer under division (A) of this section or upon filing a 1193
report of contributions and expenditures under division (B) of 1194
this section, an alternative political organization may file a 1195
certificate attesting that the alternative political 1196
organization has not accepted, and will not accept, anything of 1197
value from a foreign national, directly or indirectly, in the 1198
form of a contribution or for any other purpose. The certificate 1199
shall be on a form prescribed by the secretary of state and 1200
shall be signed under penalty of election falsification. Except 1201

as otherwise provided in division (C)(2) of this section, an                    1202
alternative political organization that files a certificate                     1203
under this division is no longer subject to the requirements of                 1204
division (B) of this section.                                                   1205

    (2) If, after filing a certificate under division (C)(1)        1206
of this section, an alternative political organization accepts                  1207
anything of value from a foreign national, directly or                          1208
indirectly, in the form of a contribution or for any other                      1209
purpose, the certificate is void. Thereafter, the alternative                   1210
political organization is subject to the requirements of                        1211
division (B) of this section. On the first statement of                         1212
contributions and expenditures the alternative political                       1213
organization is required to file after the certificate is void,                 1214
the alternative political organization shall report all                         1215
contributions received and expenditures made from the time the                  1216
alternative political organization filed its designation of                     1217
appointment of a treasurer under division (A) of this section or                1218
from the close of business on the last day reflected in its last                1219
previously filed statement of contributions and expenditures, as                1220
applicable.                                                                     1221

    (3) As used in division (D) of this section, "foreign        1222
national" has the same meaning as in division (W) of section                    1223
3517.13 of the Revised Code.                                                    1224

    **Sec. 3517.13.** (A)(1) No campaign committee of a statewide    1225
candidate shall fail to file a complete and accurate statement                  1226
required under division (A)(1) of section 3517.10 of the Revised                1227
Code.                                                                           1228

    (2) No campaign committee of a statewide candidate shall       1229
fail to file a complete and accurate monthly statement, and no                  1230
campaign committee of a statewide candidate or a candidate for                  1231

the office of chief justice or justice of the supreme court          1232
shall fail to file a complete and accurate two-business-day          1233
statement, as required under section 3517.10 of the Revised          1234
Code.                                                                1235

As used in this division, "statewide candidate" has the              1236
same meaning as in division (F)(2) of section 3517.10 of the         1237
Revised Code.                                                        1238

(B) No campaign committee shall fail to file a complete              1239
and accurate statement required under division (A)(1) of section     1240
3517.10 of the Revised Code.                                         1241

(C) No campaign committee shall fail to file a complete              1242
and accurate statement required under division (A)(2) of section     1243
3517.10 of the Revised Code.                                         1244

(D) No campaign committee shall fail to file a complete              1245
and accurate statement required under division (A)(3) or (4) of      1246
section 3517.10 of the Revised Code.                                 1247

(E) No person other than a campaign committee shall                  1248
knowingly fail to file a statement required under section            1249
3517.10 ~~or~~, 3517.107, or 3517.121 of the Revised Code.           1250

(F) No person shall make cash contributions to any person            1251
totaling more than one hundred dollars in each primary, special,     1252
or general election.                                                 1253

(G)(1) No person shall knowingly conceal or misrepresent             1254
contributions given or received, expenditures made, or any other     1255
information required to be reported by a provision in sections       1256
3517.08 to 3517.13 of the Revised Code.                              1257

(2)(a) No person shall make a contribution to a campaign             1258
committee, political action committee, political contributing        1259

entity, legislative campaign fund, political party, or person making disbursements to pay the direct costs of producing or airing electioneering communications in the name of another person. 1260 1261 1262 1263

(b) A person does not make a contribution in the name of another when either of the following applies: 1264 1265

(i) An individual makes a contribution from a partnership or other unincorporated business account, if the contribution is reported by listing both the name of the partnership or other unincorporated business and the name of the partner or owner making the contribution as required under division (I) of section 3517.10 of the Revised Code. 1266 1267 1268 1269 1270 1271

(ii) A person makes a contribution in that person's spouse's name or in both of their names. 1272 1273

(H) No person within this state, publishing a newspaper or other periodical, shall charge a campaign committee for political advertising a rate in excess of the rate such person would charge if the campaign committee were a general rate advertiser whose advertising was directed to promoting its business within the same area as that encompassed by the particular office that the candidate of the campaign committee is seeking. The rate shall take into account the amount of space used, as well as the type of advertising copy submitted by or on behalf of the campaign committee. All discount privileges otherwise offered by a newspaper or periodical to general rate advertisers shall be available upon equal terms to all campaign committees. 1274 1275 1276 1277 1278 1279 1280 1281 1282 1283 1284 1285 1286

No person within this state, operating a radio or television station or network of stations in this state, shall 1287 1288

charge a campaign committee for political broadcasts a rate that
exceeds: 
1289
1290

(1) During the forty-five days preceding the date of a
primary election and during the sixty days preceding the date of
a general or special election in which the candidate of the
campaign committee is seeking office, the lowest unit charge of
the station for the same class and amount of time for the same
period; 
1291
1292
1293
1294
1295
1296

(2) At any other time, the charges made for comparable use
of that station by its other users. 
1297
1298

(I) Subject to divisions (K), (L), (M), and (N) of this
section, no agency or department of this state or any political
subdivision shall award any contract, other than one let by
competitive bidding or a contract incidental to such contract or
which is by force account, for the purchase of goods costing
more than five hundred dollars or services costing more than
five hundred dollars to any individual, partnership,
association, including, without limitation, a professional
association organized under Chapter 1785. of the Revised Code,
estate, or trust if the individual has made or the individual's
spouse has made, or any partner, shareholder, administrator,
executor, or trustee or the spouse of any of them has made, as
an individual, within the two previous calendar years, one or
more contributions totaling in excess of one thousand dollars to
the holder of the public office having ultimate responsibility
for the award of the contract or to the public officer's
campaign committee. 
1299
1300
1301
1302
1303
1304
1305
1306
1307
1308
1309
1310
1311
1312
1313
1314
1315

(J) Subject to divisions (K), (L), (M), and (N) of this
section, no agency or department of this state or any political
subdivision shall award any contract, other than one let by 
1316
1317
1318

competitive bidding or a contract incidental to such contract or 1319
which is by force account, for the purchase of goods costing 1320
more than five hundred dollars or services costing more than 1321
five hundred dollars to a corporation or business trust, except 1322
a professional association organized under Chapter 1785. of the 1323
Revised Code, if an owner of more than twenty per cent of the 1324
corporation or business trust or the spouse of that person has 1325
made, as an individual, within the two previous calendar years, 1326
taking into consideration only owners for all of that period, 1327
one or more contributions totaling in excess of one thousand 1328
dollars to the holder of a public office having ultimate 1329
responsibility for the award of the contract or to the public 1330
officer's campaign committee. 1331

(K) For purposes of divisions (I) and (J) of this section, 1332
if a public officer who is responsible for the award of a 1333
contract is appointed by the governor, whether or not the 1334
appointment is subject to the advice and consent of the senate, 1335
excluding members of boards, commissions, committees, 1336
authorities, councils, boards of trustees, task forces, and 1337
other such entities appointed by the governor, the office of the 1338
governor is considered to have ultimate responsibility for the 1339
award of the contract. 1340

(L) For purposes of divisions (I) and (J) of this section, 1341
if a public officer who is responsible for the award of a 1342
contract is appointed by the elected chief executive officer of 1343
a municipal corporation, or appointed by the elected chief 1344
executive officer of a county operating under an alternative 1345
form of county government or county charter, excluding members 1346
of boards, commissions, committees, authorities, councils, 1347
boards of trustees, task forces, and other such entities 1348
appointed by the chief executive officer, the office of the 1349

chief executive officer is considered to have ultimate 1350
responsibility for the award of the contract. 1351

(M)(1) Divisions (I) and (J) of this section do not apply 1352
to contracts awarded by the board of commissioners of the 1353
sinking fund, municipal legislative authorities, boards of 1354
education, boards of county commissioners, boards of township 1355
trustees, or other boards, commissions, committees, authorities, 1356
councils, boards of trustees, task forces, and other such 1357
entities created by law, by the supreme court or courts of 1358
appeals, by county courts consisting of more than one judge, 1359
courts of common pleas consisting of more than one judge, or 1360
municipal courts consisting of more than one judge, or by a 1361
division of any court if the division consists of more than one 1362
judge. This division shall apply to the specified entity only if 1363
the members of the entity act collectively in the award of a 1364
contract for goods or services. 1365

(2) Divisions (I) and (J) of this section do not apply to 1366
actions of the controlling board. 1367

(N)(1) Divisions (I) and (J) of this section apply to 1368
contributions made to the holder of a public office having 1369
ultimate responsibility for the award of a contract, or to the 1370
public officer's campaign committee, during the time the person 1371
holds the office and during any time such person was a candidate 1372
for the office. Those divisions do not apply to contributions 1373
made to, or to the campaign committee of, a candidate for or 1374
holder of the office other than the holder of the office at the 1375
time of the award of the contract. 1376

(2) Divisions (I) and (J) of this section do not apply to 1377
contributions of a partner, shareholder, administrator, 1378
executor, trustee, or owner of more than twenty per cent of a 1379

corporation or business trust made before the person held any of 1380
those positions or after the person ceased to hold any of those 1381
positions in the partnership, association, estate, trust, 1382
corporation, or business trust whose eligibility to be awarded a 1383
contract is being determined, nor to contributions of the 1384
person's spouse made before the person held any of those 1385
positions, after the person ceased to hold any of those 1386
positions, before the two were married, after the granting of a 1387
decree of divorce, dissolution of marriage, or annulment, or 1388
after the granting of an order in an action brought solely for 1389
legal separation. Those divisions do not apply to contributions 1390
of the spouse of an individual whose eligibility to be awarded a 1391
contract is being determined made before the two were married, 1392
after the granting of a decree of divorce, dissolution of 1393
marriage, or annulment, or after the granting of an order in an 1394
action brought solely for legal separation. 1395

(O) No beneficiary of a campaign fund or other person 1396
shall convert for personal use, and no person shall knowingly 1397
give to a beneficiary of a campaign fund or any other person, 1398
for the beneficiary's or any other person's personal use, 1399
anything of value from the beneficiary's campaign fund, 1400
including, without limitation, payments to a beneficiary for 1401
services the beneficiary personally performs, except as 1402
reimbursement for any of the following: 1403

(1) Legitimate and verifiable prior campaign expenses 1404
incurred by the beneficiary; 1405

(2) Legitimate and verifiable ordinary and necessary prior 1406
expenses incurred by the beneficiary in connection with duties 1407
as the holder of a public office, including, without limitation, 1408
expenses incurred through participation in nonpartisan or 1409

bipartisan events if the participation of the holder of a public
office would normally be expected; 1410 1411

(3) Legitimate and verifiable ordinary and necessary prior
expenses incurred by the beneficiary while doing any of the
following: 1412 1413 1414

(a) Engaging in activities in support of or opposition to
a candidate other than the beneficiary, political party, or
ballot issue; 1415 1416 1417

(b) Raising funds for a political party, political action
committee, political contributing entity, legislative campaign
fund, campaign committee, or other candidate; 1418 1419 1420

(c) Participating in the activities of a political party,
political action committee, political contributing entity,
legislative campaign fund, or campaign committee; 1421 1422 1423

(d) Attending a political party convention or other
political meeting. 1424 1425

For purposes of this division, an expense is incurred
whenever a beneficiary has either made payment or is obligated
to make payment, as by the use of a credit card or other credit
procedure or by the use of goods or services received on
account. 1426 1427 1428 1429 1430

(P) No beneficiary of a campaign fund shall knowingly
accept, and no person shall knowingly give to the beneficiary of
a campaign fund, reimbursement for an expense under division (O)
of this section to the extent that the expense previously was
reimbursed or paid from another source of funds. If an expense
is reimbursed under division (O) of this section and is later
paid or reimbursed, wholly or in part, from another source of
funds, the beneficiary shall repay the reimbursement received 1431 1432 1433 1434 1435 1436 1437 1438

under division (O) of this section to the extent of the payment 1439
made or reimbursement received from the other source. 1440

(Q) No candidate or public official or employee shall 1441
accept for personal or business use anything of value from a 1442
political party, political action committee, political 1443
contributing entity, legislative campaign fund, or campaign 1444
committee other than the candidate's or public official's or 1445
employee's own campaign committee, and no person shall knowingly 1446
give to a candidate or public official or employee anything of 1447
value from a political party, political action committee, 1448
political contributing entity, legislative campaign fund, or 1449
such a campaign committee, except for the following: 1450

(1) Reimbursement for legitimate and verifiable ordinary 1451
and necessary prior expenses not otherwise prohibited by law 1452
incurred by the candidate or public official or employee while 1453
engaged in any legitimate activity of the political party, 1454
political action committee, political contributing entity, 1455
legislative campaign fund, or such campaign committee. Without 1456
limitation, reimbursable expenses under this division include 1457
those incurred while doing any of the following: 1458

(a) Engaging in activities in support of or opposition to 1459
another candidate, political party, or ballot issue; 1460

(b) Raising funds for a political party, legislative 1461
campaign fund, campaign committee, or another candidate; 1462

(c) Attending a political party convention or other 1463
political meeting. 1464

(2) Compensation not otherwise prohibited by law for 1465
actual and valuable personal services rendered under a written 1466
contract to the political party, political action committee, 1467

political contributing entity, legislative campaign fund, or 1468
such campaign committee for any legitimate activity of the 1469
political party, political action committee, political 1470
contributing entity, legislative campaign fund, or such campaign 1471
committee. 1472

Reimbursable expenses under this division do not include, 1473
and it is a violation of this division for a candidate or public 1474
official or employee to accept, or for any person to knowingly 1475
give to a candidate or public official or employee from a 1476
political party, political action committee, political 1477
contributing entity, legislative campaign fund, or campaign 1478
committee other than the candidate's or public official's or 1479
employee's own campaign committee, anything of value for 1480
activities primarily related to the candidate's or public 1481
official's or employee's own campaign for election, except for 1482
contributions to the candidate's or public official's or 1483
employee's campaign committee. 1484

For purposes of this division, an expense is incurred 1485
whenever a candidate or public official or employee has either 1486
made payment or is obligated to make payment, as by the use of a 1487
credit card or other credit procedure, or by the use of goods or 1488
services on account. 1489

(R)(1) Division (O) or (P) of this section does not 1490
prohibit a campaign committee from making direct advance or post 1491
payment from contributions to vendors for goods and services for 1492
which reimbursement is permitted under division (O) of this 1493
section, except that no campaign committee shall pay its 1494
candidate or other beneficiary for services personally performed 1495
by the candidate or other beneficiary. 1496

(2) If any expense that may be reimbursed under division 1497

(O), (P), or (Q) of this section is part of other expenses that 1498
may not be paid or reimbursed, the separation of the two types 1499
of expenses for the purpose of allocating for payment or 1500
reimbursement those expenses that may be paid or reimbursed may 1501
be by any reasonable accounting method, considering all of the 1502
surrounding circumstances. 1503

(3) For purposes of divisions (O), (P), and (Q) of this 1504
section, mileage allowance at a rate not greater than that 1505
allowed by the internal revenue service at the time the travel 1506
occurs may be paid instead of reimbursement for actual travel 1507
expenses allowable. 1508

(S)(1) As used in division (S) of this section: 1509

(a) "State elective office" has the same meaning as in 1510
section 3517.092 of the Revised Code. 1511

(b) "Federal office" means a federal office as defined in 1512
the Federal Election Campaign Act. 1513

(c) "Federal campaign committee" means a principal 1514
campaign committee or authorized committee as defined in the 1515
Federal Election Campaign Act. 1516

(2) No person who is a candidate for state elective office 1517
and who previously sought nomination or election to a federal 1518
office shall transfer any funds or assets from that person's 1519
federal campaign committee for nomination or election to the 1520
federal office to that person's campaign committee as a 1521
candidate for state elective office. 1522

(3) No campaign committee of a person who is a candidate 1523
for state elective office and who previously sought nomination 1524
or election to a federal office shall accept any funds or assets 1525
from that person's federal campaign committee for that person's 1526

**Sub. S. B. No. 215**                                                      **Page 53**
**As Passed by the Senate**

nomination or election to the federal office.                                    1527

(T)(1) Except as otherwise provided in division (B)(6)(c)              1528
of section 3517.102 of the Revised Code, a state or county               1529
political party shall not disburse moneys from any account other         1530
than a state candidate fund to make contributions to any of the          1531
following:                                                               1532

(a) A state candidate fund;                                       1533

(b) A legislative campaign fund;                                  1534

(c) A campaign committee of a candidate for the office of         1535
governor, lieutenant governor, secretary of state, auditor of            1536
state, treasurer of state, attorney general, member of the state         1537
board of education, or member of the general assembly.                   1538

(2) No state candidate fund, legislative campaign fund, or        1539
campaign committee of a candidate for any office described in            1540
division (T)(1)(c) of this section shall knowingly accept a              1541
contribution in violation of division (T)(1) of this section.            1542

(U) No person shall fail to file a statement required             1543
under section 3517.12 of the Revised Code.                               1544

(V) No campaign committee shall fail to file a statement          1545
required under division (K)(3) of section 3517.10 of the Revised         1546
Code.                                                                    1547

(W)(1) No foreign national shall, directly or indirectly          1548
through any other person or entity, ~~make~~ do either of the            1549
following:                                                               1550

(a) Make a contribution, expenditure, or independent              1551
expenditure or promise, either expressly or implicitly, to make          1552
a contribution, expenditure, or independent expenditure ~~in~~           1553
~~support of or opposition to a candidate for any elective office~~      1554

**Sub. S. B. No. 215**                                                          **Page 54**
**As Passed by the Senate**

~~in this state, including an office of a political party~~;                        1555

   (b) Solicit another person to make a contribution,                         1556
expenditure, or independent expenditure.                                       1557

   (2) No candidate, campaign committee, political action                     1558
committee, political contributing entity, legislative campaign                 1559
fund, state candidate fund, political party, ~~or~~ separate                   1560
segregated fund, federal political committee, or alternative                   1561
political organization shall do either of the following:                       1562

   (a) Transfer funds, or accept a transfer of funds,                         1563
directly or indirectly into an account from which the person                   1564
makes contributions or expenditures from an account that is                    1565
controlled by the person or by the person's affiliate and that,               1566
at any time, has contained funds received directly or indirectly               1567
from a foreign national. For purposes of this division, a person              1568
is affiliated with another person if they are both established,                1569
financed, maintained, or controlled by, or if they are, the same              1570
corporation, organization, labor organization, or other person,               1571
including any parent, subsidiary, division, or department of                  1572
that corporation, organization, labor organization, or other                  1573
person.                                                                        1574

   (b) Otherwise solicit or accept a contribution,                            1575
expenditure, or independent expenditure, directly or indirectly               1576
through another person, from a foreign national. ~~The secretary~~            1577
~~of state may direct any candidate, committee, entity, fund, or~~            1578
~~party that accepts a contribution, expenditure, or independent~~            1579
~~expenditure in violation of this division to return the~~                   1580
~~contribution, expenditure, or independent expenditure or, if it~~           1581
~~is not possible to return the contribution, expenditure, or~~               1582
~~independent expenditure, then to return instead the value of it,~~          1583
~~to the contributor.~~                                                        1584

(3) As used in division (W) of this section, "foreign          1585
national" ~~has the same meaning as in section 441e(b) of the~~     1586
~~Federal Election Campaign Act~~ means any of the following, as       1587
applicable:                                                     1588

(a) In the case of an individual, an individual who is not     1589
a United States citizen or national;                           1590

(b) A government of a foreign country or of a political         1591
subdivision of a foreign country;                              1592

(c) A foreign political party;                                 1593

(d) A person, other than an individual, that is organized      1594
under the laws of, or has its principal place of business in, a  1595
foreign country.                                               1596

(X)(1) No state or county political party shall transfer       1597
any moneys from its restricted fund to any account of the      1598
political party into which contributions may be made or from    1599
which contributions or expenditures may be made.               1600

(2)(a) No state or county political party shall deposit a      1601
contribution or contributions that it receives into its        1602
restricted fund.                                               1603

(b) No state or county political party shall make a            1604
contribution or an expenditure from its restricted fund.       1605

(3)(a) No corporation or labor organization shall make a       1606
gift or gifts from the corporation's or labor organization's    1607
money or property aggregating more than ten thousand dollars to  1608
any one state or county political party for the party's        1609
restricted fund in a calendar year.                            1610

(b) No state or county political party shall accept a gift     1611
or gifts for the party's restricted fund aggregating more than  1612

ten thousand dollars from any one corporation or labor 1613
organization in a calendar year. 1614

(4) No state or county political party shall transfer any 1615
moneys in the party's restricted fund to any other state or 1616
county political party. 1617

(5) No state or county political party shall knowingly 1618
fail to file a statement required under section 3517.1012 of the 1619
Revised Code. 1620

(Y) The administrator of workers' compensation and the 1621
employees of the bureau of workers' compensation shall not 1622
conduct any business with or award any contract, other than one 1623
awarded by competitive bidding, for the purchase of goods 1624
costing more than five hundred dollars or services costing more 1625
than five hundred dollars to any individual, partnership, 1626
association, including, without limitation, a professional 1627
association organized under Chapter 1785. of the Revised Code, 1628
estate, or trust, if the individual has made, or the 1629
individual's spouse has made, or any partner, shareholder, 1630
administrator, executor, or trustee, or the spouses of any of 1631
those individuals has made, as an individual, within the two 1632
previous calendar years, one or more contributions totaling in 1633
excess of one thousand dollars to the campaign committee of the 1634
governor or lieutenant governor or to the campaign committee of 1635
any candidate for the office of governor or lieutenant governor. 1636

(Z) The administrator of workers' compensation and the 1637
employees of the bureau of workers' compensation shall not 1638
conduct business with or award any contract, other than one 1639
awarded by competitive bidding, for the purchase of goods 1640
costing more than five hundred dollars or services costing more 1641
than five hundred dollars to a corporation or business trust, 1642

except a professional association organized under Chapter 1785.    1643
of the Revised Code, if an owner of more than twenty per cent of    1644
the corporation or business trust, or the spouse of the owner,    1645
has made, as an individual, within the two previous calendar    1646
years, taking into consideration only owners for all of such    1647
period, one or more contributions totaling in excess of one    1648
thousand dollars to the campaign committee of the governor or    1649
lieutenant governor or to the campaign committee of any    1650
candidate for the office of governor or lieutenant governor.    1651

   **Sec. 3517.155.** (A)(1) Except as otherwise provided in    1652
division (B) of this section, the Ohio elections commission    1653
shall hold its first hearing on a complaint filed with it, other    1654
than a complaint that receives an expedited hearing under    1655
section 3517.156 of the Revised Code, not later than ninety    1656
business days after the complaint is filed unless the commission    1657
has good cause to hold the hearing after that time, in which    1658
case it shall hold the hearing not later than one hundred eighty    1659
business days after the complaint is filed. At the hearing, the    1660
commission shall determine whether or not the failure to act or    1661
the violation alleged in the complaint has occurred and shall do    1662
only one of the following, except as otherwise provided in    1663
~~division (B) of~~ this section or in division (B) of section    1664
3517.151 of the Revised Code:    1665

   (a) Enter a finding that good cause has been shown not to    1666
impose a fine or not to refer the matter to the appropriate    1667
prosecutor;    1668

   (b) Impose a fine under section 3517.993 of the Revised    1669
Code;    1670

   (c) Refer the matter to the appropriate prosecutor~~;~~.    1671

(2) As used in division (A) of this section, "appropriate prosecutor" means a prosecutor as defined in section 2935.01 of the Revised Code and either of the following: 1672 1673 1674

(a) In the case of a failure to comply with or a violation of law involving a campaign committee or the committee's candidate, a political party, a legislative campaign fund, a political action committee, or a political contributing entity, that is required to file a statement of contributions and expenditures with the secretary of state under division (A) of section 3517.11 of the Revised Code, the prosecutor of Franklin county; 1675 1676 1677 1678 1679 1680 1681 1682

(b) In the case of a failure to comply with or a violation of law involving any other campaign committee or committee's candidate, or any other political party, political action committee, or political contributing entity either of the following as determined by the commission: 1683 1684 1685 1686 1687

(i) The prosecutor of Franklin county; 1688

(ii) The prosecutor of the county in which the candidacy or ballot question or issue is submitted to the electors or, if it is submitted in more than one county, the most populous of those counties. 1689 1690 1691 1692

(B) If the commission decides that the evidence is insufficient for it to determine whether or not the failure to act or the violation alleged in the complaint has occurred, the commission, by the affirmative vote of five members, may request that an investigatory attorney investigate the complaint. Upon that request, an investigatory attorney shall make an investigation in order to produce sufficient evidence for the commission to decide the matter. If the commission requests an 1693 1694 1695 1696 1697 1698 1699 1700

**Sub. S. B. No. 215**                                              **Page 59**
**As Passed by the Senate**

investigation under this division, for good cause shown by the          1701
investigatory attorney, the commission may extend by sixty days         1702
the deadline for holding its first hearing on the complaint as          1703
required in division (A) of this section.                               1704

(C) The commission shall take one of the actions required              1705
under division (A) of this section not later than thirty days           1706
after the close of all the evidence presented.                          1707

(D)(1) The commission shall make any finding of a failure              1708
to comply with or a violation of law in regard to a complaint           1709
that alleges a violation of division (A) or (B) of section              1710
3517.21, or division (A) or (B) of section 3517.22 of the               1711
Revised Code by clear and convincing evidence. The commission           1712
shall make any finding of a failure to comply with or a                 1713
violation of law in regard to any other complaint by a                  1714
preponderance of the evidence.                                          1715

(2) If the commission finds a violation of division (B) of             1716
section 3517.21 or division (B) of section 3517.22 of the               1717
Revised Code, it shall refer the matter to the appropriate              1718
prosecutor under division (A)(1)(c) of this section and shall           1719
not impose a fine under division (A)(1)(b) of this section or           1720
section 3517.993 of the Revised Code.                                   1721

(3)(a) If the commission finds a violation of division (W)             1722
of section 3517.13 of the Revised Code, it shall do one of the          1723
following:                                                              1724

(i) Impose a fine under section 3517.993 of the Revised                1725
Code in an amount equal to three times the amount involved in           1726
the violation or ten thousand dollars, whichever amount is              1727
greater, with none of the fine suspended and, in the case of a          1728
violation of division (W)(2) of section 3517.13 of the Revised          1729

Code, order the violator to return an amount equal to any amount                    1730
accepted in violation of that division to the foreign national                      1731
from whom it was accepted;                                                          1732

   (ii) Refer the matter to the appropriate prosecutor or to                        1733
the attorney general.                                                               1734

   (b) If the commission finds a violation of division (W) of                       1735
section 3517.13 of the Revised Code and refers the matter for                       1736
prosecution, the attorney general may prosecute the violation                       1737
with all the rights, privileges, and powers conferred by law on                     1738
prosecuting attorneys, including the power to appear before                         1739
grand juries and to interrogate witnesses before such grand                         1740
juries, under any of the following circumstances:                                   1741

   (i) Upon the commission's referral of the matter to the                          1742
attorney general;                                                                   1743

   (ii) Upon the request of the prosecutor to whom the                              1744
commission refers the matter;                                                       1745

   (iii) Upon the attorney general's own initiative.                                1746

   These powers of the attorney general are in addition to                          1747
any other applicable powers of the attorney general.                                1748

   (E) In an action before the commission or a panel of the                         1749
commission, if the allegations of the complainant are not                           1750
proved, and the commission takes the action described in                            1751
division (A)(1)(a) of this section or a panel of the commission                     1752
takes the action described in division (C)(1) of section                            1753
3517.156 of the Revised Code, the commission or a panel of the                      1754
commission may find that the complaint is frivolous, and, if the                    1755
commission or panel so finds, the commission shall order the                        1756
complainant to pay reasonable attorney's fees and to pay the                        1757
costs of the commission or panel as determined by a majority of                     1758

the members of the commission. The costs paid to the commission
or panel under this division shall be deposited into the Ohio
elections commission fund. 1759
1760
1761

**Sec. 3517.992.** This section establishes penalties only
with respect to acts or failures to act that occur on and after
August 24, 1995. 1762
1763
1764

(A)(1) A candidate whose campaign committee violates
division (A), (B), (C), (D), or (V) of section 3517.13 of the
Revised Code, or a treasurer of a campaign committee who
violates any of those divisions, shall be fined not more than
one hundred dollars for each day of violation. 1765
1766
1767
1768
1769

(2) Whoever violates division (E) or (X)(5) of section
3517.13 or division (E)(1) of section 3517.1014 of the Revised
Code shall be fined not more than one hundred dollars for each
day of violation. 1770
1771
1772
1773

(B) An entity that violates division (G)(1) of section
3517.101 of the Revised Code shall be fined not more than one
hundred dollars for each day of violation. 1774
1775
1776

(C) Whoever violates division (G)(2) of section 3517.101,
division (G) of section 3517.13, or division (E)(2) or (3) of
section 3517.1014 of the Revised Code shall be fined not more
than ten thousand dollars or, if the offender is a person who
was nominated or elected to public office, shall forfeit the
nomination or the office to which the offender was elected, or
both. 1777
1778
1779
1780
1781
1782
1783

(D) Whoever violates division (F) of section 3517.13 of
the Revised Code shall be fined not more than three times the
amount contributed. 1784
1785
1786

(E) Whoever violates division (H) of section 3517.13 of 1787

the Revised Code shall be fined not more than one hundred
dollars. 1788
1789

(F) Whoever violates division (O), (P), or (Q) of section
3517.13 of the Revised Code is guilty of a misdemeanor of the
first degree. 1790
1791
1792

(G) A state or county committee of a political party that
violates division (B)(1) of section 3517.18 of the Revised Code
as that section existed before its repeal by H.B. 166 of the
133rd general assembly shall be fined not more than twice the
amount of the improper expenditure. 1793
1794
1795
1796
1797

(H) An entity that violates division (H) of section
3517.101 of the Revised Code shall be fined not more than twice
the amount of the improper expenditure or use. 1798
1799
1800

(I)(1) Any individual who violates division (B)(1) of
section 3517.102 of the Revised Code and knows that the
contribution the individual makes violates that division shall
be fined an amount equal to three times the amount contributed
in excess of the amount permitted by that division. 1801
1802
1803
1804
1805

(2) Any political action committee that violates division
(B)(2) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 1806
1807
1808
1809

(3) Any campaign committee that violates division (B)(3)
or (5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 1810
1811
1812
1813

(4)(a) Any legislative campaign fund that violates
division (B)(6) of section 3517.102 of the Revised Code shall be
fined an amount equal to three times the amount transferred or 1814
1815
1816

contributed in excess of the amount permitted by that division, as applicable. 1817
1818

(b) Any state political party, county political party, or state candidate fund of a state political party or county political party that violates division (B)(6) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount transferred or contributed in excess of the amount permitted by that division, as applicable. 1819
1820
1821
1822
1823
1824

(c) Any political contributing entity that violates division (B)(7) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 1825
1826
1827
1828

(5) Any political party that violates division (B)(4) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 1829
1830
1831
1832

(6) Notwithstanding divisions (I)(1), (2), (3), (4), and (5) of this section, no violation of division (B) of section 3517.102 of the Revised Code occurs, and the secretary of state shall not refer parties to the Ohio elections commission, if the amount transferred or contributed in excess of the amount permitted by that division meets either of the following conditions: 1833
1834
1835
1836
1837
1838
1839

(a) It is completely refunded within five business days after it is accepted. 1840
1841

(b) It is completely refunded on or before the tenth business day after notification to the recipient of the excess transfer or contribution by the board of elections or the secretary of state that a transfer or contribution in excess of 1842
1843
1844
1845

the permitted amount has been received.

1846

(J)(1) Any campaign committee that violates division (C)
(1), (2), (3), or (6) of section 3517.102 of the Revised Code
shall be fined an amount equal to three times the amount
accepted in excess of the amount permitted by that division.
1847
1848
1849
1850

(2)(a) Any county political party that violates division
(C)(4)(a)(ii) or (iii) of section 3517.102 of the Revised Code
shall be fined an amount equal to three times the amount
accepted.
1851
1852
1853
1854

(b) Any county political party that violates division (C)
(4)(a)(i) of section 3517.102 of the Revised Code shall be fined
an amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division.
1855
1856
1857
1858
1859

(c) Any state political party that violates division (C)
(4)(b) of section 3517.102 of the Revised Code shall be fined an
amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division.
1860
1861
1862
1863
1864

(3) Any legislative campaign fund that violates division
(C)(5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount accepted in excess of the
amount permitted by that division.
1865
1866
1867
1868

(4) Any political action committee or political
contributing entity that violates division (C)(7) of section
3517.102 of the Revised Code shall be fined an amount equal to
three times the amount accepted in excess of the amount
permitted by that division.
1869
1870
1871
1872
1873

(5) Notwithstanding divisions (J)(1), (2), (3), and (4) of
1874

this section, no violation of division (C) of section 3517.102 
of the Revised Code occurs, and the secretary of state shall not 
refer parties to the Ohio elections commission, if the amount 
transferred or contributed in excess of the amount permitted to 
be accepted by that division meets either of the following 
conditions: 
1875
1876
1877
1878
1879
1880

(a) It is completely refunded within five business days 
after its acceptance. 
1881
1882

(b) It is completely refunded on or before the tenth 
business day after notification to the recipient of the excess 
transfer or contribution by the board of elections or the 
secretary of state that a transfer or contribution in excess of 
the permitted amount has been received. 
1883
1884
1885
1886
1887

(K)(1) Any legislative campaign fund that violates 
division (F)(1) of section 3517.102 of the Revised Code shall be 
fined twenty-five dollars for each day of violation. 
1888
1889
1890

(2) Any legislative campaign fund that violates division 
(F)(2) of section 3517.102 of the Revised Code shall give to the 
treasurer of state for deposit into the state treasury to the 
credit of the Ohio elections commission fund all excess 
contributions not disposed of as required by division (E) of 
section 3517.102 of the Revised Code. 
1891
1892
1893
1894
1895
1896

(L) Whoever violates section 3517.105 of the Revised Code 
shall be fined one thousand dollars. 
1897
1898

(M)(1) Whoever solicits a contribution in violation of 
section 3517.092 or violates division (B) of section 3517.09 of 
the Revised Code is guilty of a misdemeanor of the first degree. 
1899
1900
1901

(2) Whoever knowingly accepts a contribution in violation 
of division (B) or (C) of section 3517.092 of the Revised Code 
1902
1903

shall be fined an amount equal to three times the amount 1904
accepted in violation of either of those divisions and shall 1905
return to the contributor any amount so accepted. Whoever 1906
unknowingly accepts a contribution in violation of division (B) 1907
or (C) of section 3517.092 of the Revised Code shall return to 1908
the contributor any amount so accepted. 1909

(N) Whoever violates division (S) of section 3517.13 of 1910
the Revised Code shall be fined an amount equal to three times 1911
the amount of funds transferred or three times the value of the 1912
assets transferred in violation of that division. 1913

(O) Any campaign committee that accepts a contribution or 1914
contributions in violation of section 3517.108 of the Revised 1915
Code, uses a contribution in violation of that section, or fails 1916
to dispose of excess contributions in violation of that section 1917
shall be fined an amount equal to three times the amount 1918
accepted, used, or kept in violation of that section. 1919

(P) Any political party, state candidate fund, legislative 1920
candidate fund, or campaign committee that violates division (T) 1921
of section 3517.13 of the Revised Code shall be fined an amount 1922
equal to three times the amount contributed or accepted in 1923
violation of that section. 1924

(Q) A treasurer of a committee or another person who 1925
violates division (U) of section 3517.13 of the Revised Code 1926
shall be fined not more than two hundred fifty dollars. 1927

(R) Whoever violates division (I) or (J) of section 1928
3517.13 of the Revised Code shall be fined not more than one 1929
thousand dollars. Whenever a person is found guilty of violating 1930
division (I) or (J) of section 3517.13 of the Revised Code, the 1931
contract awarded in violation of either of those divisions shall 1932

be rescinded if its terms have not yet been performed. 1933

(S) A candidate whose campaign committee violates or a treasurer of a campaign committee who violates section 3517.081 of the Revised Code, and a candidate whose campaign committee violates or a treasurer of a campaign committee or another person who violates division (C) of section 3517.10 of the Revised Code, shall be fined not more than five hundred dollars. 1934
1935
1936
1937
1938
1939

(T) A candidate whose campaign committee violates or a treasurer of a committee who violates division (B) of section 3517.09 of the Revised Code, or a candidate whose campaign committee violates or a treasurer of a campaign committee or another person who violates division (C) of section 3517.09 of the Revised Code shall be fined not more than one thousand dollars. 1940
1941
1942
1943
1944
1945
1946

(U) Whoever violates section 3517.20 of the Revised Code shall be fined not more than five hundred dollars. 1947
1948

(V) Whoever violates section 3517.21 or 3517.22 of the Revised Code shall be imprisoned for not more than six months or fined not more than five thousand dollars, or both. 1949
1950
1951

(W) A campaign committee that is required to file a declaration of no limits under division (D)(2) of section 3517.103 of the Revised Code that, before filing that declaration, accepts a contribution or contributions that exceed the limitations prescribed in section 3517.102 of the Revised Code, shall return that contribution or those contributions to the contributor. 1952
1953
1954
1955
1956
1957
1958

(X) Any campaign committee that fails to file the declaration of filing-day finances required by division (F) of section 3517.109 of the Revised Code shall be fined twenty-five 1959
1960
1961

dollars for each day of violation.

(Y)(1) Any campaign committee that fails to dispose of
excess funds or excess aggregate contributions under division
(B) of section 3517.109 of the Revised Code in the manner
required by division (C) of that section shall give to the
treasurer of state for deposit into the Ohio elections
commission fund created under division (I) of section 3517.152
of the Revised Code all funds not disposed of pursuant to that
division.

(2) Any treasurer of a transition fund that fails to
dispose of assets remaining in the transition fund as required
under division (H)(1) or (2) of section 3517.1014 of the Revised
Code shall give to the treasurer of state for deposit into the
Ohio elections commission fund all assets not disposed of
pursuant to that division.

(Z) Any individual, campaign committee, political action
committee, political contributing entity, legislative campaign
fund, political party, treasurer of a transition fund, or other
entity that violates any provision of sections 3517.09 to
3517.12 of the Revised Code for which no penalty is provided for
under any other division of this section shall be fined not more
than one thousand dollars.

(AA)(1) Whoever knowingly violates division (W)(1) of
section 3517.13 of the Revised Code shall be fined an amount
equal to three times the amount contributed, expended, or
promised in violation of that division or ten thousand dollars,
whichever amount is greater.

(2) Whoever knowingly violates division (W)(2) of section
3517.13 of the Revised Code shall be fined an amount equal to

1962

1963
1964
1965
1966
1967
1968
1969
1970

1971
1972
1973
1974
1975
1976

1977
1978
1979
1980
1981
1982
1983

1984
1985
1986
1987
1988

1989
1990

three times the amount solicited or accepted in violation of                              1991

that division or ten thousand dollars, whichever amount is                                1992

greater, and shall be required to return an amount equal to any                           1993

amount accepted in violation of that division to the foreign                              1994

national from whom it was accepted.                                                       1995

(BB) Whoever knowingly violates division (C) or (D) of                                1996

section 3517.1011 of the Revised Code shall be fined not more                             1997

than ten thousand dollars plus not more than one thousand                                 1998

dollars for each day of violation.                                                        1999

(CC)(1) Subject to division (CC)(2) of this section,                                  2000

whoever violates division (H) of section 3517.1011 of the                                 2001

Revised Code shall be fined an amount up to three times the                               2002

amount disbursed for the direct costs of airing the                                       2003

communication made in violation of that division.                                         2004

(2) Whoever has been ordered by the Ohio elections                                    2005

commission or by a court of competent jurisdiction to cease                               2006

making communications in violation of division (H) of section                             2007

3517.1011 of the Revised Code who again violates that division                            2008

shall be fined an amount equal to three times the amount                                  2009

disbursed for the direct costs of airing the communication made                           2010

in violation of that division.                                                            2011

(DD)(1) Any corporation or labor organization that                                    2012

violates division (X)(3)(a) of section 3517.13 of the Revised                             2013

Code shall be fined an amount equal to three times the amount                             2014

given in excess of the amount permitted by that division.                                 2015

(2) Any state or county political party that violates                                 2016

division (X)(3)(b) of section 3517.13 of the Revised Code shall                           2017

be fined an amount equal to three times the amount accepted in                            2018

excess of the amount permitted by that division.                                          2019

(EE)(1) Any campaign committee or person who violates
division (C)(1)(b) or (c) of section 3517.1014 of the Revised
Code shall be fined an amount equal to three times the amount
donated in excess of the amount permitted by that division. 2020
2021
2022
2023

(2) Any officeholder or treasurer of a transition fund who
violates division (C)(3)(a) or (b) of section 3517.1014 of the
Revised Code shall be fined an amount equal to three times the
amount accepted in excess of the amount permitted by that
division. 2024
2025
2026
2027
2028

**Section 2.** That existing sections 3517.01, 3517.10,
3517.12, 3517.13, 3517.155, and 3517.992 of the Revised Code are
hereby repealed. 2029
2030
2031

# **Exhibit C**

**As Passed by the Senate**

**135th General Assembly**

**Regular Session**                                    **Sub. H. B. No. 114**

**2023-2024**

**Representatives Humphrey, Seitz**

**Cosponsors: Representatives Brennan, Williams, Miranda, Blackshear, Brent, Upchurch, McNally, Schmidt, Rogers, Weinstein, Isaacsohn, Brown, Mohamed, Abdullahi, Baker, Brewer, Denson, Dobos, Forhan, Galonski, Grim, Jarrells, Lightbody, Liston, Mathews, Miller, A., Thomas, C.**

**Senators Brenner, Cirino, Huffman, S., Johnson, O'Brien, Wilkin**

———

# A BILL

| | |
|---|---:|
| To amend sections 3517.01, 3517.10, 3517.12, | 1 |
| 3517.13, 3517.155, and 3517.992 of the Revised | 2 |
| Code to modify the Campaign Finance Law and to | 3 |
| delay the deadline for a major political party | 4 |
| to certify its presidential and vice | 5 |
| presidential candidates to the Secretary of | 6 |
| State for the 2024 general election. | 7 |

**BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO:**

| | |
|---|---:|
| **Section 1.** That sections 3517.01, 3517.10, 3517.12, | 8 |
| 3517.13, 3517.155, and 3517.992 of the Revised Code be amended | 9 |
| to read as follows: | 10 |
| **Sec. 3517.01.** (A)(1) A political party within the meaning | 11 |
| of Title XXXV of the Revised Code is any group of voters that | 12 |
| meets either of the following requirements: | 13 |
| (a) Except as otherwise provided in this division, at the | 14 |
| most recent regular state election, the group polled for its | 15 |

candidate for governor in the state or nominees for presidential 16
electors at least three per cent of the entire vote cast for 17
that office. A group that meets the requirements of this 18
division remains a political party for a period of four years 19
after meeting those requirements. 20

(b) The group filed with the secretary of state, 21
subsequent to its failure to meet the requirements of division 22
(A)(1)(a) of this section, a party formation petition that meets 23
all of the following requirements: 24

(i) The petition is signed by qualified electors equal in 25
number to at least one per cent of the total vote for governor 26
or nominees for presidential electors at the most recent 27
election for such office. 28

(ii) The petition is signed by not fewer than five hundred 29
qualified electors from each of at least a minimum of one-half 30
of the congressional districts in this state. If an odd number 31
of congressional districts exists in this state, the number of 32
districts that results from dividing the number of congressional 33
districts by two shall be rounded up to the next whole number. 34

(iii) The petition declares the petitioners' intention of 35
organizing a political party, the name of which shall be stated 36
in the declaration, and of participating in the succeeding 37
general election, held in even-numbered years, that occurs more 38
than one hundred twenty-five days after the date of filing. 39

(iv) The petition designates a committee of not less than 40
three nor more than five individuals of the petitioners, who 41
shall represent the petitioners in all matters relating to the 42
petition. Notice of all matters or proceedings pertaining to the 43
petition may be served on the committee, or any of them, either 44

personally or by registered mail, or by leaving such notice at
the usual place of residence of each of them.
45
46

(2) No such group of electors shall assume a name or
designation that is similar, in the opinion of the secretary of
state, to that of an existing political party as to confuse or
mislead the voters at an election.
47
48
49
50

(B) A campaign committee shall be legally liable for any
debts, contracts, or expenditures incurred or executed in its
name.
51
52
53

(C) Notwithstanding the definitions found in section
3501.01 of the Revised Code, as used in this section and
sections 3517.08 to 3517.14, 3517.99, and 3517.992 of the
Revised Code:
54
55
56
57

(1) "Campaign committee" means a candidate or a
combination of two or more persons authorized by a candidate
under section 3517.081 of the Revised Code to receive
contributions and make expenditures.
58
59
60
61

(2) "Campaign treasurer" means an individual appointed by
a candidate under section 3517.081 of the Revised Code.
62
63

(3) "Candidate" has the same meaning as in division (H) of
section 3501.01 of the Revised Code and also includes any person
who, at any time before or after an election, receives
contributions or makes expenditures or other use of
contributions, has given consent for another to receive
contributions or make expenditures or other use of
contributions, or appoints a campaign treasurer, for the purpose
of bringing about the person's nomination or election to public
office. When two persons jointly seek the offices of governor
and lieutenant governor, "candidate" means the pair of
64
65
66
67
68
69
70
71
72
73

candidates jointly. "Candidate" does not include candidates for 74
election to the offices of member of a county or state central 75
committee, presidential elector, and delegate to a national 76
convention or conference of a political party. 77

(4) "Continuing association" means an association, other 78
than a campaign committee, political party, legislative campaign 79
fund, political contributing entity, or labor organization, that 80
is intended to be a permanent organization that has a primary 81
purpose other than supporting or opposing specific candidates, 82
political parties, or ballot issues, and that functions on a 83
regular basis throughout the year. "Continuing association" 84
includes organizations that are determined to be not organized 85
for profit under subsection 501 and that are described in 86
subsection 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal 87
Revenue Code. 88

(5) "Contribution" means a loan, gift, deposit, 89
forgiveness of indebtedness, donation, advance, payment, or 90
transfer of funds or anything of value, including a transfer of 91
funds from an inter vivos or testamentary trust or decedent's 92
estate, and the payment by any person other than the person to 93
whom the services are rendered for the personal services of 94
another person, which contribution is made, received, or used 95
for the purpose of influencing the results of an election. Any 96
loan, gift, deposit, forgiveness of indebtedness, donation, 97
advance, payment, or transfer of funds or of anything of value, 98
including a transfer of funds from an inter vivos or 99
testamentary trust or decedent's estate, and the payment by any 100
campaign committee, political action committee, legislative 101
campaign fund, political party, political contributing entity, 102
or person other than the person to whom the services are 103
rendered for the personal services of another person, that is 104

made, received, or used by a state or county political party, 105
other than the moneys an entity may receive under sections 106
3517.101, 3517.1012, and 3517.1013 of the Revised Code, shall be 107
considered to be a "contribution" for the purpose of section 108
3517.10 of the Revised Code and shall be included on a statement 109
of contributions filed under that section. 110

"Contribution" does not include any of the following: 111

(a) Services provided without compensation by individuals 112
volunteering a portion or all of their time on behalf of a 113
person; 114

(b) Ordinary home hospitality; 115

(c) The personal expenses of a volunteer paid for by that 116
volunteer campaign worker; 117

(d) Any gift given to an entity pursuant to section 118
3517.101 of the Revised Code; 119

(e) Any contribution as defined in section 3517.1011 of 120
the Revised Code that is made, received, or used to pay the 121
direct costs of producing or airing an electioneering 122
communication; 123

(f) Any gift given to a state or county political party 124
for the party's restricted fund under division (A)(2) of section 125
3517.1012 of the Revised Code; 126

(g) Any gift given to a state political party for deposit 127
in a Levin account pursuant to section 3517.1013 of the Revised 128
Code. As used in this division, "Levin account" has the same 129
meaning as in that section. 130

(h) Any donation given to a transition fund under section 131
3517.1014 of the Revised Code. 132

**Sub. H. B. No. 114**                                                                                  **Page 6**
**As Passed by the Senate**

    (6) "Expenditure" means the disbursement or use of a                          133
contribution <u>or other funds</u> for the purpose of influencing the                                 134
results of an election or of making a charitable donation under                                        135
division (G) of section 3517.08 of the Revised Code. Any                                               136
disbursement or use of a contribution by a state or county                                             137
political party is an expenditure and shall be considered either                                       138
to be made for the purpose of influencing the results of an                                            139
election or to be made as a charitable donation under division                                         140
(G) of section 3517.08 of the Revised Code and shall be reported                                       141
on a statement of expenditures filed under section 3517.10 of                                          142
the Revised Code. During the thirty days preceding a primary or                                        143
general election, any disbursement to pay the direct costs of                                          144
producing or airing a broadcast, cable, or satellite                                                   145
communication that refers to a clearly identified candidate                                            146
shall be considered to be made for the purpose of influencing                                          147
the results of that election and shall be reported as an                                               148
expenditure or as an independent expenditure under section                                             149
3517.10 or 3517.105 of the Revised Code, as applicable, except                                         150
that the information required to be reported regarding                                                 151
contributors for those expenditures or independent expenditures                                        152
shall be the same as the information required to be reported                                           153
under divisions (D)(1) and (2) of section 3517.1011 of the                                             154
Revised Code.                                                                                          155

    As used in this division, "broadcast, cable, or satellite                      156
communication" and "refers to a clearly identified candidate"                                          157
have the same meanings as in section 3517.1011 of the Revised                                          158
Code.                                                                                                  159

    (7) "Personal expenses" includes, but is not limited to,                       160
ordinary expenses for accommodations, clothing, food, personal                                         161
motor vehicle or airplane, and home telephone.                                                         162

(8) "Political action committee" means a combination of
two or more persons, the primary or major purpose of which is to
support or oppose any candidate, political party, or issue, or
to influence the result of any election through express
advocacy, and that is not a political party, a campaign
committee, a political contributing entity, or a legislative
campaign fund. "Political action committee" does not include
either of the following:
163
164
165
166
167
168
169
170

(a) A continuing association that makes disbursements for
the direct costs of producing or airing electioneering
communications and that does not engage in express advocacy;
171
172
173

(b) A political club that is formed primarily for social
purposes and that consists of one hundred members or less, has
officers and periodic meetings, has less than two thousand five
hundred dollars in its treasury at all times, and makes an
aggregate total contribution of one thousand dollars or less per
calendar year.
174
175
176
177
178
179

(9) "Public office" means any state, county, municipal,
township, or district office, except an office of a political
party, that is filled by an election and the offices of United
States senator and representative.
180
181
182
183

(10) "Anything of value" has the same meaning as in
section 1.03 of the Revised Code.
184
185

(11) "Beneficiary of a campaign fund" means a candidate, a
public official or employee for whose benefit a campaign fund
exists, and any other person who has ever been a candidate or
public official or employee and for whose benefit a campaign
fund exists.
186
187
188
189
190

(12) "Campaign fund" means money or other property,
191

including contributions.                                                192

(13) "Public official or employee" has the same meaning as             193
in section 102.01 of the Revised Code.                                 194

(14) "Caucus" means all of the members of the house of                 195
representatives or all of the members of the senate of the             196
general assembly who are members of the same political party.          197

(15) "Legislative campaign fund" means a fund that is                  198
established as an auxiliary of a state political party and             199
associated with one of the houses of the general assembly.             200

(16) "In-kind contribution" means anything of value other             201
than money that is used to influence the results of an election        202
or is transferred to or used in support of or in opposition to a       203
candidate, campaign committee, legislative campaign fund,              204
political party, political action committee, or political              205
contributing entity and that is made with the consent of, in           206
coordination, cooperation, or consultation with, or at the             207
request or suggestion of the benefited candidate, committee,           208
fund, party, or entity. The financing of the dissemination,            209
distribution, or republication, in whole or part, of any               210
broadcast or of any written, graphic, or other form of campaign        211
materials prepared by the candidate, the candidate's campaign          212
committee, or their authorized agents is an in-kind contribution       213
to the candidate and an expenditure by the candidate.                  214

(17) (17)(a) "Independent expenditure" means an either of              215
the following:                                                         216

(i) An expenditure by a person advocating the election or              217
defeat of an identified candidate or candidates, that is not           218
made with the consent of, in coordination, cooperation, or             219
consultation with, or at the request or suggestion of any              220

**Sub. H. B. No. 114**                                                    **Page 9**
**As Passed by the Senate**

candidate or candidates or of the campaign committee or agent of        221
the candidate or candidates;                                            222

(ii) An expenditure by a person advocating support of or                223
opposition to an identified ballot issue or question or to              224
achieve the successful circulation of an initiative or                  225
referendum petition in order to place such an issue or question         226
on the ballot, regardless of whether the ballot issue or               227
question has yet been certified to appear on the ballot. As            228

(b) As used in division (C)(17) (C)(17)(a) of this                      229
section:                                                                230

(a) (i) "Person" means an individual, partnership,                      231
unincorporated business organization or association, political          232
action committee, political contributing entity, separate               233
segregated fund, association, or other organization or group of         234
persons, but not a labor organization or a corporation unless           235
the labor organization or corporation is a political                    236
contributing entity.                                                    237

(b) (ii) "Advocating" means any communication containing a              238
message advocating election or defeat.                                   239

(c) (iii) "Identified candidate" means that the name of                 240
the candidate appears, a photograph or drawing of the candidate         241
appears, or the identity of the candidate is otherwise apparent         242
by unambiguous reference.                                                243

(d) (iv) "Made in coordination, cooperation, or                         244
consultation with, or at the request or suggestion of, any              245
candidate or the campaign committee or agent of the candidate"          246
means made pursuant to any arrangement, coordination, or                247
direction by the candidate, the candidate's campaign committee,         248
or the candidate's agent prior to the publication, distribution,        249

display, or broadcast of the communication. An expenditure is                      250
presumed to be so made when it is any of the following:                            251

    ~~(i)~~ (I) Based on information about the candidate's plans,                   252
projects, or needs provided to the person making the expenditure                   253
by the candidate, or by the candidate's campaign committee or                      254
agent, with a view toward having an expenditure made;                              255

    ~~(ii)~~ (II) Made by or through any person who is, or has                      256
been, authorized to raise or expend funds, who is, or has been,                    257
an officer of the candidate's campaign committee, or who is, or                    258
has been, receiving any form of compensation or reimbursement                      259
from the candidate or the candidate's campaign committee or                        260
agent;                                                                             261

    ~~(iii)~~ (III) Except as otherwise provided in division (D)                   262
of section 3517.105 of the Revised Code, made by a political                       263
party in support of a candidate, unless the expenditure is made                    264
by a political party to conduct voter registration or voter                        265
education efforts.                                                                 266

    ~~(e)~~ (v) "Agent" means any person who has actual oral or                    267
written authority, either express or implied, to make or to                        268
authorize the making of expenditures on behalf of a candidate,                     269
or means any person who has been placed in a position with the                     270
candidate's campaign committee or organization such that it                        271
would reasonably appear that in the ordinary course of campaign-                   272
related activities the person may authorize expenditures.                          273

    (18) "Labor organization" means a labor union; an employee                     274
organization; a federation of labor unions, groups, locals, or                     275
other employee organizations; an auxiliary of a labor union,                       276
employee organization, or federation of labor unions, groups,                      277
locals, or other employee organizations; or any other bona fide                    278

organization in which employees participate and that exists for
the purpose, in whole or in part, of dealing with employers
concerning grievances, labor disputes, wages, hours, and other
terms and conditions of employment. 279 280 281 282

(19) "Separate segregated fund" means a separate
segregated fund established pursuant to the Federal Election
Campaign Act. 283 284 285

(20) "Federal Election Campaign Act" means the "Federal
Election Campaign Act of 1971," 86 Stat. 11, 2 U.S.C.A. 431, et
seq., as amended. 286 287 288

(21) "Restricted fund" means the fund a state or county
political party must establish under division (A)(1) of section
3517.1012 of the Revised Code. 289 290 291

(22) "Electioneering communication" has the same meaning
as in section 3517.1011 of the Revised Code. 292 293

(23) "Express advocacy" means a communication that
contains express words advocating the nomination, election, or
defeat of a candidate or that contains express words advocating
the adoption or defeat of a question or issue, as determined by
a final judgment of a court of competent jurisdiction. 294 295 296 297 298

(24) "Political committee" has the same meaning as in
section 3517.1011 of the Revised Code. 299 300

(25) "Political contributing entity" means any entity,
including a corporation or labor organization, that may lawfully
make contributions and expenditures and that is not an
individual or a political action committee, continuing
association, campaign committee, political party, legislative
campaign fund, designated state campaign committee, or state
candidate fund. For purposes of this division, "lawfully" means 301 302 303 304 305 306 307

not prohibited by any section of the Revised Code, or authorized 308
by a final judgment of a court of competent jurisdiction. 309

(26) "Internet identifier of record" has the same meaning 310
as in section 9.312 of the Revised Code. 311

**Sec. 3517.10.** (A) Except as otherwise provided in this 312
division, every campaign committee, political action committee, 313
legislative campaign fund, political party, and political 314
contributing entity that made or received a contribution or made 315
an expenditure in connection with the nomination or election of 316
any candidate or in connection with any ballot issue or question 317
at any election held or to be held in this state shall file, on 318
a form prescribed under this section or by electronic means of 319
transmission as provided in this section and section 3517.106 of 320
the Revised Code, a full, true, and itemized statement, made 321
under penalty of election falsification, setting forth in detail 322
the contributions and expenditures, not later than four p.m. of 323
the following dates: 324

(1) The twelfth day before the election to reflect 325
contributions received and expenditures made from the close of 326
business on the last day reflected in the last previously filed 327
statement, if any, to the close of business on the twentieth day 328
before the election; 329

(2) The thirty-eighth day after the election to reflect 330
the contributions received and expenditures made from the close 331
of business on the last day reflected in the last previously 332
filed statement, if any, to the close of business on the seventh 333
day before the filing of the statement; 334

(3) The last business day of January of every year to 335
reflect the contributions received and expenditures made from 336

the close of business on the last day reflected in the last
previously filed statement, if any, to the close of business on
the last day of December of the previous year; 337
338
339

(4) The last business day of July of every year to reflect
the contributions received and expenditures made from the close
of business on the last day reflected in the last previously
filed statement, if any, to the close of business on the last
day of June of that year. 340
341
342
343
344

A campaign committee shall only be required to file the
statements prescribed under divisions (A)(1) and (2) of this
section in connection with the nomination or election of the
committee's candidate. 345
346
347
348

The statement required under division (A)(1) of this
section shall not be required of any campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity that has received
contributions of less than one thousand dollars and has made
expenditures of less than one thousand dollars at the close of
business on the twentieth day before the election. Those
contributions and expenditures shall be reported in the
statement required under division (A)(2) of this section. 349
350
351
352
353
354
355
356
357

If an election to select candidates to appear on the
general election ballot is held within sixty days before a
general election, the campaign committee of a successful
candidate in the earlier election may file the statement
required by division (A)(1) of this section for the general
election instead of the statement required by division (A)(2) of
this section for the earlier election if the pregeneral election
statement reflects the status of contributions and expenditures
for the period twenty days before the earlier election to twenty 358
359
360
361
362
363
364
365
366

days before the general election. 367

If a person becomes a candidate less than twenty days
before an election, the candidate's campaign committee is not
required to file the statement required by division (A)(1) of
this section. 368
369
370
371

No statement under division (A)(3) of this section shall
be required for any year in which a campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity is required to file a
postgeneral election statement under division (A)(2) of this
section. However, a statement under division (A)(3) of this
section may be filed, at the option of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity. 372
373
374
375
376
377
378
379
380

No campaign committee of a candidate for the office of
chief justice or justice of the supreme court, and no campaign
committee of a candidate for the office of judge of any court in
this state, shall be required to file a statement under division
(A)(4) of this section. 381
382
383
384
385

Except as otherwise provided in this paragraph and in the
next paragraph of this section, the only campaign committees
required to file a statement under division (A)(4) of this
section are the campaign committee of a statewide candidate and
the campaign committee of a candidate for county office. The
campaign committee of a candidate for any other nonjudicial
office is required to file a statement under division (A)(4) of
this section if that campaign committee receives, during that
period, contributions exceeding ten thousand dollars. 386
387
388
389
390
391
392
393
394

No statement under division (A)(4) of this section shall 395

be required of a campaign committee, a political action 396
committee, a legislative campaign fund, a political party, or a 397
political contributing entity for any year in which the campaign 398
committee, political action committee, legislative campaign 399
fund, political party, or political contributing entity is 400
required to file a postprimary election statement under division 401
(A)(2) of this section. However, a statement under division (A) 402
(4) of this section may be filed at the option of the campaign 403
committee, political action committee, legislative campaign 404
fund, political party, or political contributing entity. 405

No statement under division (A)(3) or (4) of this section 406
shall be required if the campaign committee, political action 407
committee, legislative campaign fund, political party, or 408
political contributing entity has no contributions that it has 409
received and no expenditures that it has made since the last 410
date reflected in its last previously filed statement. However, 411
the campaign committee, political action committee, legislative 412
campaign fund, political party, or political contributing entity 413
shall file a statement to that effect, on a form prescribed 414
under this section and made under penalty of election 415
falsification, on the date required in division (A)(3) or (4) of 416
this section, as applicable. 417

The campaign committee of a statewide candidate shall file 418
a monthly statement of contributions received during each of the 419
months of July, August, and September in the year of the general 420
election in which the candidate seeks office. The campaign 421
committee of a statewide candidate shall file the monthly 422
statement not later than three business days after the last day 423
of the month covered by the statement. During the period 424
beginning on the nineteenth day before the general election in 425
which a statewide candidate seeks election to office and 426

extending through the day of that general election, each time 427
the campaign committee of the joint candidates for the offices 428
of governor and lieutenant governor or of a candidate for the 429
office of secretary of state, auditor of state, treasurer of 430
state, or attorney general receives a contribution from a 431
contributor that causes the aggregate amount of contributions 432
received from that contributor during that period to equal or 433
exceed ten thousand dollars and each time the campaign committee 434
of a candidate for the office of chief justice or justice of the 435
supreme court receives a contribution from a contributor that 436
causes the aggregate amount of contributions received from that 437
contributor during that period to exceed ten thousand dollars, 438
the campaign committee shall file a two-business-day statement 439
reflecting that contribution. Contributions reported on a two- 440
business-day statement required to be filed by a campaign 441
committee of a statewide candidate in a primary election shall 442
also be included in the postprimary election statement required 443
to be filed by that campaign committee under division (A)(2) of 444
this section. A two-business-day statement required by this 445
paragraph shall be filed not later than two business days after 446
receipt of the contribution. The statements required by this 447
paragraph shall be filed in addition to any other statements 448
required by this section. 449

Subject to the secretary of state having implemented, 450
tested, and verified the successful operation of any system the 451
secretary of state prescribes pursuant to divisions (C)(6)(b) 452
and (D)(6) of this section and division (F)(1) of section 453
3517.106 of the Revised Code for the filing of campaign finance 454
statements by electronic means of transmission, a campaign 455
committee of a statewide candidate shall file a two-business-day 456
statement under the preceding paragraph by electronic means of 457

transmission if the campaign committee is required to file a 458
pre-election, postelection, or monthly statement of 459
contributions and expenditures by electronic means of 460
transmission under this section or section 3517.106 of the 461
Revised Code. 462

        If a campaign committee or political action committee has 463
no balance on hand and no outstanding obligations and desires to 464
terminate itself, it shall file a statement to that effect, on a 465
form prescribed under this section and made under penalty of 466
election falsification, with the official with whom it files a 467
statement under division (A) of this section after filing a 468
final statement of contributions and a final statement of 469
expenditures, if contributions have been received or 470
expenditures made since the period reflected in its last 471
previously filed statement. 472

        (B) Except as otherwise provided in division (C)(7) of 473
this section, each statement required by division (A) of this 474
section shall contain the following information: 475

        (1) The full name and address of each campaign committee, 476
political action committee, legislative campaign fund, political 477
party, or political contributing entity, including any treasurer 478
of the committee, fund, party, or entity, filing a contribution 479
and expenditure statement; 480

        (2)(a) In the case of a campaign committee, the 481
candidate's full name and address; 482

        (b) In the case of a political action committee, the 483
registration number assigned to the committee under division (D) 484
(1) of this section. 485

        (3) The date of the election and whether it was or will be 486

a general, primary, or special election;

(4) A statement of contributions received, which shall
include the following information:

(a) The month, day, and year of the contribution;

(b)(i) The full name and address of each person, political
party, campaign committee, legislative campaign fund, political
action committee, or political contributing entity from whom
contributions are received and the registration number assigned
to the political action committee under division (D)(1) of this
section. The requirement of filing the full address does not
apply to any statement filed by a state or local committee of a
political party, to a finance committee of such committee, or to
a committee recognized by a state or local committee as its
fund-raising auxiliary. Notwithstanding division (F) of this
section, the requirement of filing the full address shall be
considered as being met if the address filed is the same address
the contributor provided under division (E)(1) of this section.

(ii) If a political action committee, political
contributing entity, legislative campaign fund, or political
party that is required to file campaign finance statements by
electronic means of transmission under section 3517.106 of the
Revised Code or a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution from an individual that exceeds one
hundred dollars, the name of the individual's current employer,
if any, or, if the individual is self-employed, the individual's
occupation and the name of the individual's business, if any;

(iii) If a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly

487
488
489
490
491
492
493
494
495
496
497
498
499
500
501
502
503
504
505
506
507
508
509
510
511
512
513
514
515

receives a contribution transmitted pursuant to section 3599.031 516
of the Revised Code from amounts deducted from the wages and 517
salaries of two or more employees that exceeds in the aggregate 518
one hundred dollars during any one filing period under division 519
(A)(1), (2), (3), or (4) of this section, the full name of the 520
employees' employer and the full name of the labor organization 521
of which the employees are members, if any. 522

(c) A description of the contribution received, if other 523
than money; 524

(d) The value in dollars and cents of the contribution; 525

(e) A separately itemized account of all contributions and 526
expenditures regardless of the amount, except a receipt of a 527
contribution from a person in the sum of twenty-five dollars or 528
less at one social or fund-raising activity and a receipt of a 529
contribution transmitted pursuant to section 3599.031 of the 530
Revised Code from amounts deducted from the wages and salaries 531
of employees if the contribution from the amount deducted from 532
the wages and salary of any one employee is twenty-five dollars 533
or less aggregated in a calendar year. An account of the total 534
contributions from each social or fund-raising activity shall 535
include a description of and the value of each in-kind 536
contribution received at that activity from any person who made 537
one or more such contributions whose aggregate value exceeded 538
two hundred fifty dollars and shall be listed separately, 539
together with the expenses incurred and paid in connection with 540
that activity. A campaign committee, political action committee, 541
legislative campaign fund, political party, or political 542
contributing entity shall keep records of contributions from 543
each person in the amount of twenty-five dollars or less at one 544
social or fund-raising activity and contributions from amounts 545

deducted under section 3599.031 of the Revised Code from the 546
wages and salary of each employee in the amount of twenty-five 547
dollars or less aggregated in a calendar year. No continuing 548
association that is recognized by a state or local committee of 549
a political party as an auxiliary of the party and that makes a 550
contribution from funds derived solely from regular dues paid by 551
members of the auxiliary shall be required to list the name or 552
address of any members who paid those dues. 553

Contributions that are other income shall be itemized 554
separately from all other contributions. The information 555
required under division (B)(4) of this section shall be provided 556
for all other income itemized. As used in this paragraph, "other 557
income" means a loan, investment income, or interest income. 558

(f) In the case of a campaign committee of a state elected 559
officer, if a person doing business with the state elected 560
officer in the officer's official capacity makes a contribution 561
to the campaign committee of that officer, the information 562
required under division (B)(4) of this section in regard to that 563
contribution, which shall be filed together with and considered 564
a part of the committee's statement of contributions as required 565
under division (A) of this section but shall be filed on a 566
separate form provided by the secretary of state. As used in 567
this division: 568

(i) "State elected officer" has the same meaning as in 569
section 3517.092 of the Revised Code. 570

(ii) "Person doing business" means a person or an officer 571
of an entity who enters into one or more contracts with a state 572
elected officer or anyone authorized to enter into contracts on 573
behalf of that officer to receive payments for goods or 574
services, if the payments total, in the aggregate, more than 575

five thousand dollars during a calendar year.                           576

    (5) A statement of expenditures which shall include the    577
following information:                                                  578

    (a) The month, day, and year of the expenditure;           579

    (b) The full name and address of each person, political    580
party, campaign committee, legislative campaign fund, political         581
action committee, or political contributing entity to whom the          582
expenditure was made and the registration number assigned to the        583
political action committee under division (D)(1) of this                584
section;                                                                585

    (c) The object or purpose for which the expenditure was     586
made;                                                                   587

    (d) The amount of each expenditure.                         588

    (C)(1) The statement of contributions and expenditures      589
shall be signed by the person completing the form. If a                 590
statement of contributions and expenditures is filed by                 591
electronic means of transmission pursuant to this section or            592
section 3517.106 of the Revised Code, the electronic signature          593
of the person who executes the statement and transmits the              594
statement by electronic means of transmission, as provided in           595
division (F) of section 3517.106 of the Revised Code, shall be          596
attached to or associated with the statement and shall be               597
binding on all persons and for all purposes under the campaign          598
finance reporting law as if the signature had been handwritten          599
in ink on a printed form.                                               600

    (2) The person filing the statement, under penalty of       601
election falsification, shall include with it a~both of the             602
following:                                                              603

(a) A list of each anonymous contribution, the                    604
circumstances under which it was received, and the reason it       605
cannot be attributed to a specific donor;                         606

(b) A certification that the campaign committee, political         607
action committee, legislative campaign fund, political party, or   608
political contributing entity, as applicable, has not knowingly    609
accepted any contribution that is prohibited under this chapter    610
or section 3599.03 or 3599.031 of the Revised Code, including      611
under division (W) of section 3517.13 of the Revised Code,         612
during the period covered by the statement.                       613

(3) Each statement of a campaign committee of a candidate          614
who holds public office shall contain a designation of each        615
contributor who is an employee in any unit or department under     616
the candidate's direct supervision and control. In a space        617
provided in the statement, the person filing the statement shall   618
affirm that each such contribution was voluntarily made.          619

(4) A campaign committee that did not receive                      620
contributions or make expenditures in connection with the         621
nomination or election of its candidate shall file a statement     622
to that effect, on a form prescribed under this section and made   623
under penalty of election falsification, on the date required in   624
division (A)(2) of this section.                                   625

(5) The campaign committee of any person who attempts to           626
become a candidate and who, for any reason, does not become        627
certified in accordance with Title XXXV of the Revised Code for    628
placement on the official ballot of a primary, general, or        629
special election to be held in this state, and who, at any time    630
prior to or after an election, receives contributions or makes     631
expenditures, or has given consent for another to receive         632
contributions or make expenditures, for the purpose of bringing    633

about the person's nomination or election to public office, 634
shall file the statement or statements prescribed by this 635
section and a termination statement, if applicable. Division (C) 636
(5) of this section does not apply to any person with respect to 637
an election to the offices of member of a county or state 638
central committee, presidential elector, or delegate to a 639
national convention or conference of a political party. 640

(6)(a) The statements required to be filed under this 641
section shall specify the balance in the hands of the campaign 642
committee, political action committee, legislative campaign 643
fund, political party, or political contributing entity and the 644
disposition intended to be made of that balance. 645

(b) The secretary of state shall prescribe the form for 646
all statements required to be filed under this section and shall 647
furnish the forms to the boards of elections in the several 648
counties. The boards of elections shall supply printed copies of 649
those forms without charge. The secretary of state shall 650
prescribe the appropriate methodology, protocol, and data file 651
structure for statements required or permitted to be filed by 652
electronic means of transmission to the secretary of state or a 653
board of elections under division (A) of this section, division 654
(E) of section 3517.106, division (D) of section 3517.1011, 655
division (B) of section 3517.1012, division (C) of section 656
3517.1013, and divisions (D) and (I) of section 3517.1014 of the 657
Revised Code. Subject to division (A) of this section, division 658
(E) of section 3517.106, division (D) of section 3517.1011, 659
division (B) of section 3517.1012, division (C) of section 660
3517.1013, and divisions (D) and (I) of section 3517.1014 of the 661
Revised Code, the statements required to be stored on computer 662
by the secretary of state under division (B) of section 3517.106 663
of the Revised Code shall be filed in whatever format the 664

secretary of state considers necessary to enable the secretary 665
of state to store the information contained in the statements on 666
computer. Any such format shall be of a type and nature that is 667
readily available to whoever is required to file the statements 668
in that format. 669

(c) The secretary of state shall assess the need for 670
training regarding the filing of campaign finance statements by 671
electronic means of transmission and regarding associated 672
technologies for candidates, campaign committees, political 673
action committees, legislative campaign funds, political 674
parties, or political contributing entities, for individuals, 675
partnerships, or other entities, for persons making 676
disbursements to pay the direct costs of producing or airing 677
electioneering communications, or for treasurers of transition 678
funds, required or permitted to file statements by electronic 679
means of transmission under this section or section 3517.105, 680
3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014 of the 681
Revised Code. If, in the opinion of the secretary of state, 682
training in these areas is necessary, the secretary of state 683
shall arrange for the provision of voluntary training programs 684
for candidates, campaign committees, political action 685
committees, legislative campaign funds, political parties, or 686
political contributing entities, for individuals, partnerships, 687
and other entities, for persons making disbursements to pay the 688
direct costs of producing or airing electioneering 689
communications, or for treasurers of transition funds, as 690
appropriate. 691

(7) Each monthly statement and each two-business-day 692
statement required by division (A) of this section shall contain 693
the information required by divisions (B)(1) to (4), (C)(2), 694
and, if appropriate, (C)(3) of this section. Each statement 695

shall be signed as required by division (C)(1) of this section.          696

(D)(1)(a) Prior to receiving a contribution or making an                 697
expenditure, every campaign committee, political action                  698
committee, legislative campaign fund, political party, or                699
political contributing entity shall appoint a treasurer and              700
shall file, on a form prescribed by the secretary of state, a            701
designation of that appointment, including the full name and             702
address of the treasurer and of the campaign committee,                  703
political action committee, legislative campaign fund, political         704
party, or political contributing entity. That designation shall          705
be filed with the official with whom the campaign committee,             706
political action committee, legislative campaign fund, political         707
party, or political contributing entity is required to file              708
statements under section 3517.11 of the Revised Code. The name           709
of a campaign committee shall include at least the last name of          710
the campaign committee's candidate. If two or more candidates            711
are the beneficiaries of a single campaign committee under               712
division (B) of section 3517.081 of the Revised Code, the name           713
of the campaign committee shall include at least the last name           714
of each candidate who is a beneficiary of that campaign                  715
committee. The secretary of state shall assign a registration            716
number to each political action committee that files a                   717
designation of the appointment of a treasurer under this                 718
division if the political action committee is required by                719
division (A)(1) of section 3517.11 of the Revised Code to file           720
the statements prescribed by this section with the secretary of          721
state.                                                                    722

(b) The form of the designation of treasurer shall require               723
the filer to certify, under penalty of election falsification,           724
that the campaign committee, political action committee,                 725
legislative campaign fund, political party, or political                 726

contributing entity, as applicable, has not knowingly accepted,          727
and will not knowingly accept, any contribution that is                  728
prohibited under this chapter or section 3599.03 or 3599.031 of          729
the Revised Code, including under division (W) of section                730
3517.13 of the Revised Code.                                             731

(c) The secretary of state shall not accept for filing a                 732
designation of treasurer of a political action committee or              733
political contributing entity if, in the opinion of the                  734
secretary of state, the name of the political action committee           735
or political contributing entity would lead a reasonable person          736
to believe that the political action committee or political              737
contributing entity acts on behalf of or represents a county             738
political party, unless the designation is accompanied by a              739
written statement, signed by the chairperson of the county               740
political party's executive committee, granting the political            741
action committee or political contributing entity permission to          742
act on behalf of or represent the county political party.                743

(2) The treasurer appointed under division (D)(1) of this                744
section shall keep a strict account of all contributions, from           745
whom received and the purpose for which they were disbursed.             746

(3)(a) Except as otherwise provided in section 3517.108 of               747
the Revised Code, a campaign committee shall deposit all                 748
monetary contributions received by the committee into an account         749
separate from a personal or business account of the candidate or         750
campaign committee.                                                      751

(b) A political action committee shall deposit all                       752
monetary contributions received by the committee into an account         753
separate from all other funds.                                           754

(c) A state or county political party may establish a                    755

state candidate fund that is separate from all other funds. A 756
state or county political party may deposit into its state 757
candidate fund any amounts of monetary contributions that are 758
made to or accepted by the political party subject to the 759
applicable limitations, if any, prescribed in section 3517.102 760
of the Revised Code. A state or county political party shall 761
deposit all other monetary contributions received by the party 762
into one or more accounts that are separate from its state 763
candidate fund. 764

(d) Each state political party shall have only one 765
legislative campaign fund for each house of the general 766
assembly. Each such fund shall be separate from any other funds 767
or accounts of that state party. A legislative campaign fund is 768
authorized to receive contributions and make expenditures for 769
the primary purpose of furthering the election of candidates who 770
are members of that political party to the house of the general 771
assembly with which that legislative campaign fund is 772
associated. Each legislative campaign fund shall be administered 773
and controlled in a manner designated by the caucus. As used in 774
this division, "caucus" has the same meaning as in section 775
3517.01 of the Revised Code and includes, as an ex officio 776
member, the chairperson of the state political party with which 777
the caucus is associated or that chairperson's designee. 778

(4) Every expenditure in excess of twenty-five dollars 779
shall be vouched for by a receipted bill, stating the purpose of 780
the expenditure, that shall be filed with the statement of 781
expenditures. A canceled check with a notation of the purpose of 782
the expenditure is a receipted bill for purposes of division (D) 783
(4) of this section. 784

(5) The secretary of state or the board of elections, as 785

the case may be, shall issue a receipt for each statement filed
under this section and shall preserve a copy of the receipt for
a period of at least six years. All statements filed under this
section shall be open to public inspection in the office where
they are filed and shall be carefully preserved for a period of
at least six years after the year in which they are filed. 786
787
788
789
790
791

(6) The secretary of state, by rule adopted pursuant to
section 3517.23 of the Revised Code, shall prescribe both of the
following: 792
793
794

(a) The manner of immediately acknowledging, with date and
time received, and preserving the receipt of statements that are
transmitted by electronic means of transmission to the secretary
of state or a board of elections pursuant to this section or
section 3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014
of the Revised Code; 795
796
797
798
799
800

(b) The manner of preserving the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in the statements described in division
(D)(6)(a) of this section. The secretary of state shall preserve
the contribution and expenditure, contribution and disbursement,
deposit and disbursement, gift and disbursement, or donation and
disbursement information in those statements for at least ten
years after the year in which they are filed by electronic means
of transmission. 801
802
803
804
805
806
807
808
809
810

(7)(a) The secretary of state, pursuant to division (G) of
section 3517.106 of the Revised Code, shall make available
online to the public through the internet the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and 811
812
813
814
815

disbursement information in all of the following documents: 816

(i) All statements, all addenda, amendments, or other 817
corrections to statements, and all amended statements filed with 818
the secretary of state by electronic or other means of 819
transmission under this section, division (B)(2)(b) or (C)(2)(b) 820
of section 3517.105, or section 3517.106, 3517.1011, 3517.1012, 821
3517.1013, 3517.1014, or 3517.11 of the Revised Code; 822

(ii) All statements filed with a board of elections by 823
electronic means of transmission, and all addenda, amendments, 824
corrections, and amended versions of those statements, filed 825
with the board under this section, division (B)(2)(b) or (C)(2) 826
(b) of section 3517.105, or section 3517.106, 3517.1012, or 827
3517.11 of the Revised Code. 828

(b) The secretary of state may remove the information from 829
the internet after a reasonable period of time. 830

(E)(1) Any person, political party, campaign committee, 831
legislative campaign fund, political action committee, or 832
political contributing entity that makes a contribution in 833
connection with the nomination or election of any candidate or 834
in connection with any ballot issue or question at any election 835
held or to be held in this state shall provide its full name and 836
address to the recipient of the contribution at the time the 837
contribution is made. The political action committee also shall 838
provide the registration number assigned to the committee under 839
division (D)(1) of this section to the recipient of the 840
contribution at the time the contribution is made. 841

(2) Any individual who makes a contribution that exceeds 842
one hundred dollars to a political action committee, political 843
contributing entity, legislative campaign fund, or political 844

party or to a campaign committee of a statewide candidate or 845
candidate for the office of member of the general assembly shall 846
provide the name of the individual's current employer, if any, 847
or, if the individual is self-employed, the individual's 848
occupation and the name of the individual's business, if any, to 849
the recipient of the contribution at the time the contribution 850
is made. Sections 3599.39 and 3599.40 of the Revised Code do not 851
apply to division (E)(2) of this section. 852

(3) If a campaign committee shows that it has exercised 853
its best efforts to obtain, maintain, and submit the information 854
required under divisions (B)(4)(b)(ii) and (iii) of this 855
section, that committee is considered to have met the 856
requirements of those divisions. A campaign committee shall not 857
be considered to have exercised its best efforts unless, in 858
connection with written solicitations, it regularly includes a 859
written request for the information required under division (B) 860
(4)(b)(ii) of this section from the contributor or the 861
information required under division (B)(4)(b)(iii) of this 862
section from whoever transmits the contribution. 863

(4) Any check that a political action committee uses to 864
make a contribution or an expenditure shall contain the full 865
name and address of the committee and the registration number 866
assigned to the committee under division (D)(1) of this section. 867

(F) As used in this section: 868

(1)(a) Except as otherwise provided in division (F)(1) of 869
this section, "address" means all of the following if they 870
exist: apartment number, street, road, or highway name and 871
number, rural delivery route number, city or village, state, and 872
zip code as used in a person's post-office address, but not 873
post-office box. 874

(b) Except as otherwise provided in division (F)(1) of
this section, if an address is required in this section, a post-
office box and office, room, or suite number may be included in
addition to, but not in lieu of, an apartment, street, road, or
highway name and number. 875
876
877
878
879

(c) If an address is required in this section, a campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity may use
the business or residence address of its treasurer or deputy
treasurer. The post-office box number of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity may be used in addition
to that address. 880
881
882
883
884
885
886
887

(d) For the sole purpose of a campaign committee's
reporting of contributions on a statement of contributions
received under division (B)(4) of this section, "address" has
one of the following meanings at the option of the campaign
committee: 888
889
890
891
892

(i) The same meaning as in division (F)(1)(a) of this
section; 893
894

(ii) All of the following, if they exist: the
contributor's post-office box number and city or village, state,
and zip code as used in the contributor's post-office address. 895
896
897

(e) As used with regard to the reporting under this
section of any expenditure, "address" means all of the following
if they exist: apartment number, street, road, or highway name
and number, rural delivery route number, city or village, state,
and zip code as used in a person's post-office address, or post-
office box. If an address concerning any expenditure is required 898
899
900
901
902
903

in this section, a campaign committee, political action               904
committee, legislative campaign fund, political party, or             905
political contributing entity may use the business or residence       906
address of its treasurer or deputy treasurer or its post-office       907
box number.                                                           908

(2) "Statewide candidate" means the joint candidates for              909
the offices of governor and lieutenant governor or a candidate        910
for the office of secretary of state, auditor of state,               911
treasurer of state, attorney general, member of the state board      912
of education, chief justice of the supreme court, or justice of       913
the supreme court.                                                    914

(3) "Candidate for county office" means a candidate for               915
the office of county auditor, county treasurer, clerk of the          916
court of common pleas, judge of the court of common pleas,            917
sheriff, county recorder, county engineer, county commissioner,       918
prosecuting attorney, or coroner.                                     919

(G) An independent expenditure shall be reported whenever             920
and in the same manner that an expenditure is required to be          921
reported under this section and shall be reported pursuant to         922
division (B)(2)(a) or (C)(2)(a) of section 3517.105 of the            923
Revised Code.                                                         924

(H)(1) Except as otherwise provided in division (H)(2) of             925
this section, if, during the combined pre-election and                926
postelection reporting periods for an election, a campaign            927
committee has received contributions of five hundred dollars or       928
less and has made expenditures in the total amount of five            929
hundred dollars or less, it may file a statement to that effect,      930
under penalty of election falsification, in lieu of the               931
statement required by division (A)(2) of this section. The            932
statement shall indicate the total amount of contributions            933

received and the total amount of expenditures made during those
combined reporting periods.

(2) In the case of a successful candidate at a primary
election, if either the total contributions received by or the
total expenditures made by the candidate's campaign committee
during the preprimary, postprimary, pregeneral, and postgeneral
election periods combined equal more than five hundred dollars,
the campaign committee may file the statement under division (H)
(1) of this section only for the primary election. The first
statement that the campaign committee files in regard to the
general election shall reflect all contributions received and
all expenditures made during the preprimary and postprimary
election periods.

(3) Divisions (H)(1) and (2) of this section do not apply
if a campaign committee receives contributions or makes
expenditures prior to the first day of January of the year of
the election at which the candidate seeks nomination or election
to office or if the campaign committee does not file a
termination statement with its postprimary election statement in
the case of an unsuccessful primary election candidate or with
its postgeneral election statement in the case of other
candidates.

(I) In the case of a contribution made by a partner of a
partnership or an owner or a member of another unincorporated
business from any funds of the partnership or other
unincorporated business, all of the following apply:

(1) The recipient of the contribution shall report the
contribution by listing both the partnership or other
unincorporated business and the name of the partner, owner, or
member making the contribution.

934
935

936
937
938
939
940
941
942
943
944
945
946

947
948
949
950
951
952
953
954
955

956
957
958
959

960
961
962
963

(2) In reporting the contribution, the recipient of the
contribution shall be entitled to conclusively rely upon the
information provided by the partnership or other unincorporated
business, provided that the information includes one of the
following: 

(a) The name of each partner, owner, or member as of the
date of the contribution or contributions, and a statement that
the total contributions are to be allocated equally among all of
the partners, owners, or members; or 

(b) The name of each partner, owner, or member as of the
date of the contribution or contributions who is participating
in the contribution or contributions, and a statement that the
contribution or contributions are to be allocated to those
individuals in accordance with the information provided by the
partnership or other unincorporated business to the recipient of
the contribution. 

(3) For purposes of section 3517.102 of the Revised Code,
the contribution shall be considered to have been made by the
partner, owner, or member reported under division (I)(1) of this
section. 

(4) No contribution from a partner of a partnership or an
owner or a member of another unincorporated business shall be
accepted from any funds of the partnership or other
unincorporated business unless the recipient reports the
contribution under division (I)(1) of this section together with
the information provided under division (I)(2) of this section. 

(5) No partnership or other unincorporated business shall
make a contribution or contributions solely in the name of the
partnership or other unincorporated business. 

964
965
966
967
968
969
970
971
972
973
974
975
976
977
978
979
980
981
982
983
984
985
986
987
988
989
990
991
992

(6) As used in division (I) of this section, "partnership or other unincorporated business" includes, but is not limited to, a cooperative, a sole proprietorship, a general partnership, a limited partnership, a limited partnership association, a limited liability partnership, and a limited liability company. 993
994
995
996
997

(J) A candidate shall have only one campaign committee at any given time for all of the offices for which the person is a candidate or holds office. 998
999
1000

(K)(1) In addition to filing a designation of appointment of a treasurer under division (D)(1) of this section, the campaign committee of any candidate for an elected municipal office that pays an annual amount of compensation of five thousand dollars or less, the campaign committee of any candidate for member of a board of education except member of the state board of education, or the campaign committee of any candidate for township trustee or township fiscal officer may sign, under penalty of election falsification, a certificate attesting that the committee will not accept contributions during an election period that exceed in the aggregate two thousand dollars from all contributors and one hundred dollars from any one individual, and that the campaign committee will not make expenditures during an election period that exceed in the aggregate two thousand dollars. 1001
1002
1003
1004
1005
1006
1007
1008
1009
1010
1011
1012
1013
1014
1015

The certificate shall be on a form prescribed by the secretary of state and shall be filed not later than ten days after the candidate files a declaration of candidacy and petition, a nominating petition, or a declaration of intent to be a write-in candidate. 1016
1017
1018
1019
1020

(2) Except as otherwise provided in division (K)(3) of this section, a campaign committee that files a certificate 1021
1022

under division (K)(1) of this section is not required to file
the statements required by division (A) of this section. 1023
1024

(3) If, after filing a certificate under division (K)(1)
of this section, a campaign committee exceeds any of the
limitations described in that division during an election
period, the certificate is void and thereafter the campaign
committee shall file the statements required by division (A) of
this section. If the campaign committee has not previously filed
a statement, then on the first statement the campaign committee
is required to file under division (A) of this section after the
committee's certificate is void, the committee shall report all
contributions received and expenditures made from the time the
candidate filed the candidate's declaration of candidacy and
petition, nominating petition, or declaration of intent to be a
write-in candidate. 1025
1026
1027
1028
1029
1030
1031
1032
1033
1034
1035
1036
1037

(4) As used in division (K) of this section, "election
period" means the period of time beginning on the day a person
files a declaration of candidacy and petition, nominating
petition, or declaration of intent to be a write-in candidate
through the day of the election at which the person seeks
nomination to office if the person is not elected to office, or,
if the candidate was nominated in a primary election, the day of
the election at which the candidate seeks office. 1038
1039
1040
1041
1042
1043
1044
1045

(L) A political contributing entity that receives
contributions from the dues, membership fees, or other
assessments of its members or from its officers, shareholders,
and employees may report the aggregate amount of contributions
received from those contributors and the number of individuals
making those contributions, for each filing period under
divisions (A)(1), (2), (3), and (4) of this section, rather than 1046
1047
1048
1049
1050
1051
1052

reporting information as required under division (B)(4) of this        1053
section, including, when applicable, the name of the current          1054
employer, if any, of a contributor whose contribution exceeds         1055
one hundred dollars or, if such a contributor is self-employed,       1056
the contributor's occupation and the name of the contributor's        1057
business, if any. Division (B)(4) of this section applies to a        1058
political contributing entity with regard to contributions it         1059
receives from all other contributors.                                 1060

     Sec. 3517.12. (A) ~~Prior to receiving a contribution or~~       1061
~~making an expenditure, the circulator or~~ If the committee in      1062
charge of an initiative or referendum petition, or supplementary      1063
petition for additional signatures, for the submission to the         1064
electors of a ~~constitutional amendment, proposed law, section,~~    1065
~~or item of any law~~ ballot issue or question receives a            1066
contribution or makes an expenditure for the purpose of               1067
achieving the successful circulation of the petition, the             1068
committee is considered a political action committee for that         1069
purpose and shall ~~appoint a treasurer and shall file with the~~     1070
~~secretary of state, on a form prescribed by the secretary of~~      1071
~~state, a designation of that appointment, including the full~~      1072
~~name and address of the treasurer and of the circulator or~~        1073
~~committee~~ comply with all applicable requirements of this         1074
chapter concerning political action committees, including filing      1075
a designation of treasurer under division (D) of section 3517.10      1076
of the Revised Code before receiving a contribution or making an      1077
expenditure and filing all required statements of contributions       1078
and expenditures.                                                     1079

     (B) ~~The circulator or~~ If the committee in charge of an       1080
initiative or referendum petition, or supplementary petition for     1081
additional signatures, for the submission to the electors of a        1082
~~constitutional amendment, proposed law, section, or item of any~~   1083

law ballot issue or question receives no contributions and makes          1084
no expenditures for the purpose of achieving the successful               1085
circulation of the petition, and is not otherwise considered a            1086
campaign committee, political party, legislative campaign fund,           1087
political action committee, or political contributing entity,             1088
then the committee shall, within thirty days after those the             1089
petition papers are is filed, file with the secretary of state           1090
office with which the petition is filed, on a form prescribed by          1091
the secretary of state, an itemized a statement, made under               1092
penalty of election falsification, showing in detail the                  1093
following:                                                                1094

(1) All money or things of value paid, given, promised, or               1095
received for circulating the petitions;                                   1096

(2) All appointments, promotions, or increases in salary,                1097
in positions which were given, promised, or received, or to              1098
obtain which assistance was given, promised, or received as a            1099
consideration for work done in circulating petitions;                     1100

(3) Full names and addresses, including street, city, and                1101
state, of all persons to whom such payments or promises were             1102
made and of all persons from whom such payments or promises were         1103
received;                                                                 1104

(4) Full names and addresses, including street, city, and                1105
state, of all persons who contributed anything of value to be            1106
used in circulating the petitions, and the amounts of those              1107
contributions;                                                            1108

(5) Time spent and salaries earned while soliciting                      1109
signatures to petitions by persons who were regular salaried             1110
employees of some person or whom that employer authorized to             1111
solicit as part of their regular duties.                                  1112

~~If~~ that the committee received no ~~money or things of~~                                    1113
~~value were paid or received or if no promises were made or~~                                  1114
~~received as a consideration for work done in circulating a~~                                   1115
~~petition, the statement shall contain words to that effect~~                                   1116
contributions and made no expenditures for the purpose of                                        1117
achieving the successful circulation of the petition.                                            1118

~~(C) The treasurer designated under division (A) of this~~                                      1119
~~section shall file statements of contributions and expenditures~~                              1120
~~in accordance with section 3517.10 of the Revised Code regarding~~                             1121
~~all contributions made or received and all expenditures made by~~                              1122
~~that treasurer or the circulator or committee in connection with~~                             1123
~~the initiative or referendum petition, or supplementary petition~~                             1124
~~for additional signatures, for the submission of a~~                                           1125
~~constitutional amendment, proposed law, section, or item of any~~                              1126
~~law.~~                                                                                          1127

    **Sec. 3517.13.** (A)(1) No campaign committee of a statewide                                 1128
candidate shall fail to file a complete and accurate statement                                   1129
required under division (A)(1) of section 3517.10 of the Revised                                  1130
Code.                                                                                            1131

    (2) No campaign committee of a statewide candidate shall                                      1132
fail to file a complete and accurate monthly statement, and no                                    1133
campaign committee of a statewide candidate or a candidate for                                    1134
the office of chief justice or justice of the supreme court                                       1135
shall fail to file a complete and accurate two-business-day                                       1136
statement, as required under section 3517.10 of the Revised                                       1137
Code.                                                                                            1138

    As used in this division, "statewide candidate" has the                                       1139
same meaning as in division (F)(2) of section 3517.10 of the                                      1140
Revised Code.                                                                                    1141

(B) No campaign committee shall fail to file a complete 1142
and accurate statement required under division (A)(1) of section 1143
3517.10 of the Revised Code. 1144

(C) No campaign committee shall fail to file a complete 1145
and accurate statement required under division (A)(2) of section 1146
3517.10 of the Revised Code. 1147

(D) No campaign committee shall fail to file a complete 1148
and accurate statement required under division (A)(3) or (4) of 1149
section 3517.10 of the Revised Code. 1150

(E) No person other than a campaign committee shall 1151
knowingly fail to file a statement required under section 1152
3517.10 or 3517.107 of the Revised Code. 1153

(F) No person shall make cash contributions to any person 1154
totaling more than one hundred dollars in each primary, special, 1155
or general election. 1156

(G)(1) No person shall knowingly conceal or misrepresent 1157
contributions given or received, expenditures made, or any other 1158
information required to be reported by a provision in sections 1159
3517.08 to 3517.13 of the Revised Code. 1160

(2)(a) No person shall make a contribution to a campaign 1161
committee, political action committee, political contributing 1162
entity, legislative campaign fund, political party, or person 1163
making disbursements to pay the direct costs of producing or 1164
airing electioneering communications in the name of another 1165
person. 1166

(b) A person does not make a contribution in the name of 1167
another when either of the following applies: 1168

(i) An individual makes a contribution from a partnership 1169

or other unincorporated business account, if the contribution is 1170
reported by listing both the name of the partnership or other 1171
unincorporated business and the name of the partner or owner 1172
making the contribution as required under division (I) of 1173
section 3517.10 of the Revised Code. 1174

(ii) A person makes a contribution in that person's 1175
spouse's name or in both of their names. 1176

(H) No person within this state, publishing a newspaper or 1177
other periodical, shall charge a campaign committee for 1178
political advertising a rate in excess of the rate such person 1179
would charge if the campaign committee were a general rate 1180
advertiser whose advertising was directed to promoting its 1181
business within the same area as that encompassed by the 1182
particular office that the candidate of the campaign committee 1183
is seeking. The rate shall take into account the amount of space 1184
used, as well as the type of advertising copy submitted by or on 1185
behalf of the campaign committee. All discount privileges 1186
otherwise offered by a newspaper or periodical to general rate 1187
advertisers shall be available upon equal terms to all campaign 1188
committees. 1189

No person within this state, operating a radio or 1190
television station or network of stations in this state, shall 1191
charge a campaign committee for political broadcasts a rate that 1192
exceeds: 1193

(1) During the forty-five days preceding the date of a 1194
primary election and during the sixty days preceding the date of 1195
a general or special election in which the candidate of the 1196
campaign committee is seeking office, the lowest unit charge of 1197
the station for the same class and amount of time for the same 1198
period; 1199

(2) At any other time, the charges made for comparable use
of that station by its other users. 
1200
1201

(I) Subject to divisions (K), (L), (M), and (N) of this
section, no agency or department of this state or any political
subdivision shall award any contract, other than one let by
competitive bidding or a contract incidental to such contract or
which is by force account, for the purchase of goods costing
more than five hundred dollars or services costing more than
five hundred dollars to any individual, partnership,
association, including, without limitation, a professional
association organized under Chapter 1785. of the Revised Code,
estate, or trust if the individual has made or the individual's
spouse has made, or any partner, shareholder, administrator,
executor, or trustee or the spouse of any of them has made, as
an individual, within the two previous calendar years, one or
more contributions totaling in excess of one thousand dollars to
the holder of the public office having ultimate responsibility
for the award of the contract or to the public officer's
campaign committee. 
1202
1203
1204
1205
1206
1207
1208
1209
1210
1211
1212
1213
1214
1215
1216
1217
1218

(J) Subject to divisions (K), (L), (M), and (N) of this
section, no agency or department of this state or any political
subdivision shall award any contract, other than one let by
competitive bidding or a contract incidental to such contract or
which is by force account, for the purchase of goods costing
more than five hundred dollars or services costing more than
five hundred dollars to a corporation or business trust, except
a professional association organized under Chapter 1785. of the
Revised Code, if an owner of more than twenty per cent of the
corporation or business trust or the spouse of that person has
made, as an individual, within the two previous calendar years,
taking into consideration only owners for all of that period, 
1219
1220
1221
1222
1223
1224
1225
1226
1227
1228
1229
1230

one or more contributions totaling in excess of one thousand 1231
dollars to the holder of a public office having ultimate 1232
responsibility for the award of the contract or to the public 1233
officer's campaign committee. 1234

(K) For purposes of divisions (I) and (J) of this section, 1235
if a public officer who is responsible for the award of a 1236
contract is appointed by the governor, whether or not the 1237
appointment is subject to the advice and consent of the senate, 1238
excluding members of boards, commissions, committees, 1239
authorities, councils, boards of trustees, task forces, and 1240
other such entities appointed by the governor, the office of the 1241
governor is considered to have ultimate responsibility for the 1242
award of the contract. 1243

(L) For purposes of divisions (I) and (J) of this section, 1244
if a public officer who is responsible for the award of a 1245
contract is appointed by the elected chief executive officer of 1246
a municipal corporation, or appointed by the elected chief 1247
executive officer of a county operating under an alternative 1248
form of county government or county charter, excluding members 1249
of boards, commissions, committees, authorities, councils, 1250
boards of trustees, task forces, and other such entities 1251
appointed by the chief executive officer, the office of the 1252
chief executive officer is considered to have ultimate 1253
responsibility for the award of the contract. 1254

(M)(1) Divisions (I) and (J) of this section do not apply 1255
to contracts awarded by the board of commissioners of the 1256
sinking fund, municipal legislative authorities, boards of 1257
education, boards of county commissioners, boards of township 1258
trustees, or other boards, commissions, committees, authorities, 1259
councils, boards of trustees, task forces, and other such 1260

entities created by law, by the supreme court or courts of 1261
appeals, by county courts consisting of more than one judge, 1262
courts of common pleas consisting of more than one judge, or 1263
municipal courts consisting of more than one judge, or by a 1264
division of any court if the division consists of more than one 1265
judge. This division shall apply to the specified entity only if 1266
the members of the entity act collectively in the award of a 1267
contract for goods or services. 1268

(2) Divisions (I) and (J) of this section do not apply to 1269
actions of the controlling board. 1270

(N)(1) Divisions (I) and (J) of this section apply to 1271
contributions made to the holder of a public office having 1272
ultimate responsibility for the award of a contract, or to the 1273
public officer's campaign committee, during the time the person 1274
holds the office and during any time such person was a candidate 1275
for the office. Those divisions do not apply to contributions 1276
made to, or to the campaign committee of, a candidate for or 1277
holder of the office other than the holder of the office at the 1278
time of the award of the contract. 1279

(2) Divisions (I) and (J) of this section do not apply to 1280
contributions of a partner, shareholder, administrator, 1281
executor, trustee, or owner of more than twenty per cent of a 1282
corporation or business trust made before the person held any of 1283
those positions or after the person ceased to hold any of those 1284
positions in the partnership, association, estate, trust, 1285
corporation, or business trust whose eligibility to be awarded a 1286
contract is being determined, nor to contributions of the 1287
person's spouse made before the person held any of those 1288
positions, after the person ceased to hold any of those 1289
positions, before the two were married, after the granting of a 1290

decree of divorce, dissolution of marriage, or annulment, or 1291
after the granting of an order in an action brought solely for 1292
legal separation. Those divisions do not apply to contributions 1293
of the spouse of an individual whose eligibility to be awarded a 1294
contract is being determined made before the two were married, 1295
after the granting of a decree of divorce, dissolution of 1296
marriage, or annulment, or after the granting of an order in an 1297
action brought solely for legal separation. 1298

(O) No beneficiary of a campaign fund or other person 1299
shall convert for personal use, and no person shall knowingly 1300
give to a beneficiary of a campaign fund or any other person, 1301
for the beneficiary's or any other person's personal use, 1302
anything of value from the beneficiary's campaign fund, 1303
including, without limitation, payments to a beneficiary for 1304
services the beneficiary personally performs, except as 1305
reimbursement for any of the following: 1306

(1) Legitimate and verifiable prior campaign expenses 1307
incurred by the beneficiary; 1308

(2) Legitimate and verifiable ordinary and necessary prior 1309
expenses incurred by the beneficiary in connection with duties 1310
as the holder of a public office, including, without limitation, 1311
expenses incurred through participation in nonpartisan or 1312
bipartisan events if the participation of the holder of a public 1313
office would normally be expected; 1314

(3) Legitimate and verifiable ordinary and necessary prior 1315
expenses incurred by the beneficiary while doing any of the 1316
following: 1317

(a) Engaging in activities in support of or opposition to 1318
a candidate other than the beneficiary, political party, or 1319

ballot issue;

(b) Raising funds for a political party, political action committee, political contributing entity, legislative campaign fund, campaign committee, or other candidate;

(c) Participating in the activities of a political party, political action committee, political contributing entity, legislative campaign fund, or campaign committee;

(d) Attending a political party convention or other political meeting.

For purposes of this division, an expense is incurred whenever a beneficiary has either made payment or is obligated to make payment, as by the use of a credit card or other credit procedure or by the use of goods or services received on account.

(P) No beneficiary of a campaign fund shall knowingly accept, and no person shall knowingly give to the beneficiary of a campaign fund, reimbursement for an expense under division (O) of this section to the extent that the expense previously was reimbursed or paid from another source of funds. If an expense is reimbursed under division (O) of this section and is later paid or reimbursed, wholly or in part, from another source of funds, the beneficiary shall repay the reimbursement received under division (O) of this section to the extent of the payment made or reimbursement received from the other source.

(Q) No candidate or public official or employee shall accept for personal or business use anything of value from a political party, political action committee, political contributing entity, legislative campaign fund, or campaign committee other than the candidate's or public official's or

1320
1321
1322
1323
1324
1325
1326
1327
1328
1329
1330
1331
1332
1333
1334
1335
1336
1337
1338
1339
1340
1341
1342
1343
1344
1345
1346
1347
1348

employee's own campaign committee, and no person shall knowingly 1349
give to a candidate or public official or employee anything of 1350
value from a political party, political action committee, 1351
political contributing entity, legislative campaign fund, or 1352
such a campaign committee, except for the following: 1353

(1) Reimbursement for legitimate and verifiable ordinary 1354
and necessary prior expenses not otherwise prohibited by law 1355
incurred by the candidate or public official or employee while 1356
engaged in any legitimate activity of the political party, 1357
political action committee, political contributing entity, 1358
legislative campaign fund, or such campaign committee. Without 1359
limitation, reimbursable expenses under this division include 1360
those incurred while doing any of the following: 1361

(a) Engaging in activities in support of or opposition to 1362
another candidate, political party, or ballot issue; 1363

(b) Raising funds for a political party, legislative 1364
campaign fund, campaign committee, or another candidate; 1365

(c) Attending a political party convention or other 1366
political meeting. 1367

(2) Compensation not otherwise prohibited by law for 1368
actual and valuable personal services rendered under a written 1369
contract to the political party, political action committee, 1370
political contributing entity, legislative campaign fund, or 1371
such campaign committee for any legitimate activity of the 1372
political party, political action committee, political 1373
contributing entity, legislative campaign fund, or such campaign 1374
committee. 1375

Reimbursable expenses under this division do not include, 1376
and it is a violation of this division for a candidate or public 1377

| | |
|---|---:|
| official or employee to accept, or for any person to knowingly | 1378 |
| give to a candidate or public official or employee from a | 1379 |
| political party, political action committee, political | 1380 |
| contributing entity, legislative campaign fund, or campaign | 1381 |
| committee other than the candidate's or public official's or | 1382 |
| employee's own campaign committee, anything of value for | 1383 |
| activities primarily related to the candidate's or public | 1384 |
| official's or employee's own campaign for election, except for | 1385 |
| contributions to the candidate's or public official's or | 1386 |
| employee's campaign committee. | 1387 |

For purposes of this division, an expense is incurred whenever a candidate or public official or employee has either made payment or is obligated to make payment, as by the use of a credit card or other credit procedure, or by the use of goods or services on account. 1388 1389 1390 1391 1392

(R)(1) Division (O) or (P) of this section does not prohibit a campaign committee from making direct advance or post payment from contributions to vendors for goods and services for which reimbursement is permitted under division (O) of this section, except that no campaign committee shall pay its candidate or other beneficiary for services personally performed by the candidate or other beneficiary. 1393 1394 1395 1396 1397 1398 1399

(2) If any expense that may be reimbursed under division (O), (P), or (Q) of this section is part of other expenses that may not be paid or reimbursed, the separation of the two types of expenses for the purpose of allocating for payment or reimbursement those expenses that may be paid or reimbursed may be by any reasonable accounting method, considering all of the surrounding circumstances. 1400 1401 1402 1403 1404 1405 1406

(3) For purposes of divisions (O), (P), and (Q) of this 1407

| | |
|---|---|
| section, mileage allowance at a rate not greater than that | 1408 |
| allowed by the internal revenue service at the time the travel | 1409 |
| occurs may be paid instead of reimbursement for actual travel | 1410 |
| expenses allowable. | 1411 |
| (4) For purposes of divisions (O), (P), and (Q) of this | 1412 |
| section, the reasonable cost of child care rendered in this | 1413 |
| state is considered an ordinary and necessary expense incurred | 1414 |
| by a beneficiary while engaging in the activities and duties | 1415 |
| described in those divisions, so long as all of the following | 1416 |
| apply: | 1417 |
| (a) The cost is incurred only as a direct result of the | 1418 |
| beneficiary engaging in those activities and duties and would | 1419 |
| not otherwise be incurred. | 1420 |
| (b) The beneficiary is a primary caregiver of the child. | 1421 |
| (c) The child is twelve years of age or younger. | 1422 |
| (S)(1) As used in division (S) of this section: | 1423 |
| (a) "State elective office" has the same meaning as in | 1424 |
| section 3517.092 of the Revised Code. | 1425 |
| (b) "Federal office" means a federal office as defined in | 1426 |
| the Federal Election Campaign Act. | 1427 |
| (c) "Federal campaign committee" means a principal | 1428 |
| campaign committee or authorized committee as defined in the | 1429 |
| Federal Election Campaign Act. | 1430 |
| (2) No person who is a candidate for state elective office | 1431 |
| and who previously sought nomination or election to a federal | 1432 |
| office shall transfer any funds or assets from that person's | 1433 |
| federal campaign committee for nomination or election to the | 1434 |
| federal office to that person's campaign committee as a | 1435 |

candidate for state elective office.                                           1436

(3) No campaign committee of a person who is a candidate      1437
for state elective office and who previously sought nomination  1438
or election to a federal office shall accept any funds or assets  1439
from that person's federal campaign committee for that person's  1440
nomination or election to the federal office.                   1441

(T)(1) Except as otherwise provided in division (B)(6)(c)    1442
of section 3517.102 of the Revised Code, a state or county      1443
political party shall not disburse moneys from any account other  1444
than a state candidate fund to make contributions to any of the  1445
following:                                                      1446

(a) A state candidate fund;                                  1447

(b) A legislative campaign fund;                             1448

(c) A campaign committee of a candidate for the office of    1449
governor, lieutenant governor, secretary of state, auditor of   1450
state, treasurer of state, attorney general, member of the state  1451
board of education, or member of the general assembly.          1452

(2) No state candidate fund, legislative campaign fund, or   1453
campaign committee of a candidate for any office described in    1454
division (T)(1)(c) of this section shall knowingly accept a      1455
contribution in violation of division (T)(1) of this section.    1456

(U) No person shall fail to file a statement required        1457
under section 3517.12 of the Revised Code.                      1458

(V) No campaign committee shall fail to file a statement     1459
required under division (K)(3) of section 3517.10 of the Revised  1460
Code.                                                           1461

(W)(1) No foreign national shall, directly or indirectly     1462
through any other person or entity, ~~make~~ do any of the      1463

**Sub. H. B. No. 114**                                                                 **Page 51**
**As Passed by the Senate**

following:                                                                                 1464

(a) Make a contribution, expenditure, or independent                        1465
expenditure or promise, either expressly or implicitly, to make      1466
a contribution, expenditure, or independent expenditure in             1467
support of or opposition to a candidate for any elective office     1468
in this state, including an office of a political party;                   1469

(b) Solicit another person to make a contribution,                         1470
expenditure, or independent expenditure;                                          1471

(c) Make a loan, gift, deposit, forgiveness of                                  1472
indebtedness, donation, advance, payment, or transfer of funds     1473
to another person with a designation, instruction, or                    1474
encumbrance that the foreign national knows will result in any      1475
part of the loan, gift, deposit, forgiveness of indebtedness,       1476
donation, advance, payment, or transfer of funds being used to      1477
make a contribution, expenditure, or independent expenditure. As   1478
used in this division, "designation, instruction, or                       1479
encumbrance" includes any designation, instruction, or                    1480
encumbrance that is direct or indirect, express or implied, oral    1481
or written, or involving an intermediary or conduit.                        1482

(2) No candidate, campaign committee, political action             1483
committee, political contributing entity, legislative campaign       1484
fund, state candidate fund, political party, or separate               1485
segregated fund, continuing association, corporation, or labor       1486
organization shall do either of the following:                              1487

(a) Knowingly transfer funds, or accept a transfer of               1488
funds, directly or indirectly into an account from which the         1489
person makes contributions or expenditures from an account that     1490
is controlled by the person or by the person's affiliate and         1491
that, at any time, has contained funds received directly or          1492

indirectly from a foreign national. For purposes of this                1493
division, a person is affiliated with another person if they are        1494
both established, financed, maintained, or controlled by, or if         1495
they are, the same corporation, organization, labor                     1496
organization, or other person, including any parent, subsidiary,        1497
division, or department of that corporation, organization, labor        1498
organization, or other person.                                          1499

(b) Otherwise knowingly solicit or accept a contribution,               1500
expenditure, or independent expenditure, directly or indirectly         1501
through another person or entity, from a foreign national. ~~The~~      1502
~~secretary of state may direct any candidate, committee, entity,~~     1503
~~fund, or party that accepts a contribution, expenditure, or~~         1504
~~independent expenditure in violation of this division to return~~     1505
~~the contribution, expenditure, or independent expenditure or, if~~    1506
~~it is not possible to return the contribution, expenditure, or~~      1507
~~independent expenditure, then to return instead the value of it,~~    1508
~~to the contributor.~~                                                 1509

(3) No person shall knowingly aid or facilitate a                       1510
violation of division (W)(1) or (2) of this section.                    1511

(4) As used in division (W) of this section, "foreign                   1512
national" ~~has the same meaning as in section 441e(b) of the~~         1513
~~Federal Election Campaign Act~~ means any of the following, as        1514
applicable:                                                             1515

(a) In the case of an individual, an individual who is not              1516
a United States citizen or national;                                    1517

(b) A government of a foreign country or of a political                 1518
subdivision of a foreign country;                                       1519

(c) A foreign political party;                                          1520

(d) A person, other than an individual, that is organized              1521

under the laws of, or has its principal place of business in, a     1522
foreign country.                                                    1523

(X)(1) No state or county political party shall transfer           1524
any moneys from its restricted fund to any account of the           1525
political party into which contributions may be made or from        1526
which contributions or expenditures may be made.                    1527

(2)(a) No state or county political party shall deposit a          1528
contribution or contributions that it receives into its             1529
restricted fund.                                                    1530

(b) No state or county political party shall make a                1531
contribution or an expenditure from its restricted fund.            1532

(3)(a) No corporation or labor organization shall make a           1533
gift or gifts from the corporation's or labor organization's        1534
money or property aggregating more than ten thousand dollars to     1535
any one state or county political party for the party's             1536
restricted fund in a calendar year.                                 1537

(b) No state or county political party shall accept a gift         1538
or gifts for the party's restricted fund aggregating more than      1539
ten thousand dollars from any one corporation or labor              1540
organization in a calendar year.                                    1541

(4) No state or county political party shall transfer any          1542
moneys in the party's restricted fund to any other state or         1543
county political party.                                             1544

(5) No state or county political party shall knowingly             1545
fail to file a statement required under section 3517.1012 of the    1546
Revised Code.                                                       1547

(Y) The administrator of workers' compensation and the             1548
employees of the bureau of workers' compensation shall not          1549

conduct any business with or award any contract, other than one 1550
awarded by competitive bidding, for the purchase of goods 1551
costing more than five hundred dollars or services costing more 1552
than five hundred dollars to any individual, partnership, 1553
association, including, without limitation, a professional 1554
association organized under Chapter 1785. of the Revised Code, 1555
estate, or trust, if the individual has made, or the 1556
individual's spouse has made, or any partner, shareholder, 1557
administrator, executor, or trustee, or the spouses of any of 1558
those individuals has made, as an individual, within the two 1559
previous calendar years, one or more contributions totaling in 1560
excess of one thousand dollars to the campaign committee of the 1561
governor or lieutenant governor or to the campaign committee of 1562
any candidate for the office of governor or lieutenant governor. 1563

(Z) The administrator of workers' compensation and the 1564
employees of the bureau of workers' compensation shall not 1565
conduct business with or award any contract, other than one 1566
awarded by competitive bidding, for the purchase of goods 1567
costing more than five hundred dollars or services costing more 1568
than five hundred dollars to a corporation or business trust, 1569
except a professional association organized under Chapter 1785. 1570
of the Revised Code, if an owner of more than twenty per cent of 1571
the corporation or business trust, or the spouse of the owner, 1572
has made, as an individual, within the two previous calendar 1573
years, taking into consideration only owners for all of such 1574
period, one or more contributions totaling in excess of one 1575
thousand dollars to the campaign committee of the governor or 1576
lieutenant governor or to the campaign committee of any 1577
candidate for the office of governor or lieutenant governor. 1578

**Sec. 3517.155.** (A)(1) Except as otherwise provided in 1579
division (B) of this section, the Ohio elections commission 1580

shall hold its first hearing on a complaint filed with it, other          1581
than a complaint that receives an expedited hearing under                 1582
section 3517.156 of the Revised Code, not later than ninety               1583
business days after the complaint is filed unless the commission          1584
has good cause to hold the hearing after that time, in which              1585
case it shall hold the hearing not later than one hundred eighty          1586
business days after the complaint is filed. At the hearing, the           1587
commission shall determine whether or not the failure to act or           1588
the violation alleged in the complaint has occurred and shall do          1589
only one of the following, except as otherwise provided in                1590
~~division (B) of~~ this section or in division (B) of section            1591
3517.151 of the Revised Code:                                             1592

(a) Enter a finding that good cause has been shown not to                 1593
impose a fine or not to refer the matter to the appropriate               1594
prosecutor;                                                               1595

(b) Impose a fine under section 3517.993 of the Revised                   1596
Code;                                                                     1597

(c) Refer the matter to the appropriate prosecutor~~,~~ __.__             1598

(2) As used in division (A) of this section, "appropriate                 1599
prosecutor" means ~~a prosecutor as defined in section 2935.01 of~~       1600
~~the Revised Code and~~ either of the following:                         1601

(a) In the case of a failure to comply with or a violation                1602
of law involving a campaign committee or the committee's                  1603
candidate, a political party, a legislative campaign fund, a              1604
political action committee, or a political contributing entity,           1605
that is required to file a statement of contributions and                 1606
expenditures with the secretary of state under division (A) of            1607
section 3517.11 of the Revised Code, the ~~prosecutor of Franklin~~       1608
~~county~~ __attorney general, except that if the attorney general is__   1609

a victim or witness or otherwise involved in the matter,       1610
"appropriate prosecutor" means a county prosecutor whom the       1611
commission deems appropriate to prosecute the matter;       1612

      (b) In the case of a failure to comply with or a violation       1613
of law involving any other campaign committee or committee's       1614
candidate, or any other political party, political action       1615
committee, or political contributing entity, either of the       1616
following as determined by the commission:       1617

      (i) The prosecutor of Franklin county attorney general,       1618
except that if the attorney general is a victim or witness or       1619
otherwise involved in the matter, the commission shall refer the       1620
matter to the prosecutor described in division (A)(2)(b)(ii) of       1621
this section;       1622

      (ii) The prosecutor of the county in which the candidacy       1623
or ballot question or issue is submitted to the electors or, if       1624
it is submitted in more than one county, the most populous of       1625
those counties, except that if that prosecutor is a victim or       1626
witness or otherwise involved in the matter, the commission       1627
shall refer the matter to the attorney general.       1628

      (3) When the commission refers a matter to the attorney       1629
general under this section, or when a matter is transferred to       1630
the attorney general under division (D)(3)(b) of this section,       1631
the attorney general may prosecute the matter with all the       1632
rights, privileges, and powers conferred by law on prosecuting       1633
attorneys, including the power to appear before grand juries and       1634
to interrogate witnesses before such grand juries. These powers       1635
of the attorney general are in addition to any other applicable       1636
powers of the attorney general.       1637

      (B) If the commission decides that the evidence is       1638

insufficient for it to determine whether or not the failure to
act or the violation alleged in the complaint has occurred, the
commission, by the affirmative vote of five members, may request
that an investigatory attorney investigate the complaint. Upon
that request, an investigatory attorney shall make an
investigation in order to produce sufficient evidence for the
commission to decide the matter. If the commission requests an
investigation under this division, for good cause shown by the
investigatory attorney, the commission may extend by sixty days
the deadline for holding its first hearing on the complaint as
required in division (A) of this section.

(C) The commission shall take one of the actions required
under division (A) of this section not later than thirty days
after the close of all the evidence presented.

(D)(1) The commission shall make any finding of a failure
to comply with or a violation of law in regard to a complaint
that alleges a violation of division (A) or (B) of section
3517.21, or division (A) or (B) of section 3517.22 of the
Revised Code by clear and convincing evidence. The commission
shall make any finding of a failure to comply with or a
violation of law in regard to any other complaint by a
preponderance of the evidence.

(2) If the commission finds a violation of division (B) of
section 3517.21 or division (B) of section 3517.22 of the
Revised Code, it shall refer the matter to the appropriate
prosecutor under division (A)(1)(c) of this section and shall
not impose a fine under division (A)(1)(b) of this section or
section 3517.993 of the Revised Code.

(3)(a) If the commission finds a violation of division (W)
of section 3517.13 of the Revised Code, it shall do one of the

1639
1640
1641
1642
1643
1644
1645
1646
1647
1648
1649
1650
1651
1652
1653
1654
1655
1656
1657
1658
1659
1660
1661
1662
1663
1664
1665
1666
1667
1668

following:                                                                              1669

(i) Impose a fine under section 3517.993 of the Revised          1670
Code in an amount equal to three times the amount involved in    1671
the violation or ten thousand dollars, whichever amount is       1672
greater, with none of the fine suspended and, in the case of a   1673
violation of division (W)(2) of section 3517.13 of the Revised   1674
Code, order the violator to return an amount equal to any amount 1675
accepted in violation of that division to the foreign national   1676
from whom it was accepted;                                       1677

(ii) Refer the matter to the appropriate prosecutor.            1678

(b)(i) Except as otherwise provided in division (D)(3)(b)        1679
(ii) of this section, if the commission finds a violation of     1680
division (W) of section 3517.13 of the Revised Code and refers   1681
the matter to a county prosecutor under division (A)(2)(b)(ii)   1682
of this section, the attorney general may transfer the matter to 1683
the attorney general for prosecution upon the request of the     1684
prosecutor to whom the commission refers the matter or upon the  1685
attorney general's own initiative.                               1686

(ii) Division (D)(3)(b)(i) of this section does not apply        1687
to any matter in which the attorney general is a victim or       1688
witness or is otherwise involved.                                1689

(E) In an action before the commission or a panel of the        1690
commission, if the allegations of the complainant are not        1691
proved, and the commission takes the action described in         1692
division (A)(1)(a) of this section or a panel of the commission  1693
takes the action described in division (C)(1) of section         1694
3517.156 of the Revised Code, the commission or a panel of the   1695
commission may find that the complaint is frivolous, and, if the 1696
commission or panel so finds, the commission shall order the     1697

complainant to pay reasonable attorney's fees and to pay the 1698
costs of the commission or panel as determined by a majority of 1699
the members of the commission. The costs paid to the commission 1700
or panel under this division shall be deposited into the Ohio 1701
elections commission fund. 1702

**Sec. 3517.992.** This section establishes penalties only 1703
with respect to acts or failures to act that occur on and after 1704
August 24, 1995. 1705

(A)(1) A candidate whose campaign committee violates 1706
division (A), (B), (C), (D), or (V) of section 3517.13 of the 1707
Revised Code, or a treasurer of a campaign committee who 1708
violates any of those divisions, shall be fined not more than 1709
one hundred dollars for each day of violation. 1710

(2) Whoever violates division (E) or (X)(5) of section 1711
3517.13 or division (E)(1) of section 3517.1014 of the Revised 1712
Code shall be fined not more than one hundred dollars for each 1713
day of violation. 1714

(B) An entity that violates division (G)(1) of section 1715
3517.101 of the Revised Code shall be fined not more than one 1716
hundred dollars for each day of violation. 1717

(C) Whoever violates division (G)(2) of section 3517.101, 1718
division (G) of section 3517.13, or division (E)(2) or (3) of 1719
section 3517.1014 of the Revised Code shall be fined not more 1720
than ten thousand dollars or, if the offender is a person who 1721
was nominated or elected to public office, shall forfeit the 1722
nomination or the office to which the offender was elected, or 1723
both. 1724

(D) Whoever violates division (F) of section 3517.13 of 1725
the Revised Code shall be fined not more than three times the 1726

amount contributed. 1727

(E) Whoever violates division (H) of section 3517.13 of
the Revised Code shall be fined not more than one hundred
dollars. 1728
1729
1730

(F) Whoever violates division (O), (P), or (Q) of section
3517.13 of the Revised Code is guilty of a misdemeanor of the
first degree. 1731
1732
1733

(G) A state or county committee of a political party that
violates division (B)(1) of section 3517.18 of the Revised Code
as that section existed before its repeal by H.B. 166 of the
133rd general assembly shall be fined not more than twice the
amount of the improper expenditure. 1734
1735
1736
1737
1738

(H) An entity that violates division (H) of section
3517.101 of the Revised Code shall be fined not more than twice
the amount of the improper expenditure or use. 1739
1740
1741

(I)(1) Any individual who violates division (B)(1) of
section 3517.102 of the Revised Code and knows that the
contribution the individual makes violates that division shall
be fined an amount equal to three times the amount contributed
in excess of the amount permitted by that division. 1742
1743
1744
1745
1746

(2) Any political action committee that violates division
(B)(2) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 1747
1748
1749
1750

(3) Any campaign committee that violates division (B)(3)
or (5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 1751
1752
1753
1754

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 144 of 879 PAGEID #: 279

As Passed by the Senate

(4)(a) Any legislative campaign fund that violates
division (B)(6) of section 3517.102 of the Revised Code shall be
fined an amount equal to three times the amount transferred or
contributed in excess of the amount permitted by that division,
as applicable.
1755
1756
1757
1758
1759

(b) Any state political party, county political party, or
state candidate fund of a state political party or county
political party that violates division (B)(6) of section
3517.102 of the Revised Code shall be fined an amount equal to
three times the amount transferred or contributed in excess of
the amount permitted by that division, as applicable.
1760
1761
1762
1763
1764
1765

(c) Any political contributing entity that violates
division (B)(7) of section 3517.102 of the Revised Code shall be
fined an amount equal to three times the amount contributed in
excess of the amount permitted by that division.
1766
1767
1768
1769

(5) Any political party that violates division (B)(4) of
section 3517.102 of the Revised Code shall be fined an amount
equal to three times the amount contributed in excess of the
amount permitted by that division.
1770
1771
1772
1773

(6) Notwithstanding divisions (I)(1), (2), (3), (4), and
(5) of this section, no violation of division (B) of section
3517.102 of the Revised Code occurs, and the secretary of state
shall not refer parties to the Ohio elections commission, if the
amount transferred or contributed in excess of the amount
permitted by that division meets either of the following
conditions:
1774
1775
1776
1777
1778
1779
1780

(a) It is completely refunded within five business days
after it is accepted.
1781
1782

(b) It is completely refunded on or before the tenth
1783

business day after notification to the recipient of the excess
transfer or contribution by the board of elections or the
secretary of state that a transfer or contribution in excess of
the permitted amount has been received. 
1784
1785
1786
1787

(J)(1) Any campaign committee that violates division (C)
(1), (2), (3), or (6) of section 3517.102 of the Revised Code
shall be fined an amount equal to three times the amount
accepted in excess of the amount permitted by that division. 
1788
1789
1790
1791

(2)(a) Any county political party that violates division
(C)(4)(a)(ii) or (iii) of section 3517.102 of the Revised Code
shall be fined an amount equal to three times the amount
accepted. 
1792
1793
1794
1795

(b) Any county political party that violates division (C)
(4)(a)(i) of section 3517.102 of the Revised Code shall be fined
an amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division. 
1796
1797
1798
1799
1800

(c) Any state political party that violates division (C)
(4)(b) of section 3517.102 of the Revised Code shall be fined an
amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division. 
1801
1802
1803
1804
1805

(3) Any legislative campaign fund that violates division
(C)(5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount accepted in excess of the
amount permitted by that division. 
1806
1807
1808
1809

(4) Any political action committee or political
contributing entity that violates division (C)(7) of section
3517.102 of the Revised Code shall be fined an amount equal to 
1810
1811
1812

three times the amount accepted in excess of the amount 1813
permitted by that division. 1814

(5) Notwithstanding divisions (J)(1), (2), (3), and (4) of 1815
this section, no violation of division (C) of section 3517.102 1816
of the Revised Code occurs, and the secretary of state shall not 1817
refer parties to the Ohio elections commission, if the amount 1818
transferred or contributed in excess of the amount permitted to 1819
be accepted by that division meets either of the following 1820
conditions: 1821

(a) It is completely refunded within five business days 1822
after its acceptance. 1823

(b) It is completely refunded on or before the tenth 1824
business day after notification to the recipient of the excess 1825
transfer or contribution by the board of elections or the 1826
secretary of state that a transfer or contribution in excess of 1827
the permitted amount has been received. 1828

(K)(1) Any legislative campaign fund that violates 1829
division (F)(1) of section 3517.102 of the Revised Code shall be 1830
fined twenty-five dollars for each day of violation. 1831

(2) Any legislative campaign fund that violates division 1832
(F)(2) of section 3517.102 of the Revised Code shall give to the 1833
treasurer of state for deposit into the state treasury to the 1834
credit of the Ohio elections commission fund all excess 1835
contributions not disposed of as required by division (E) of 1836
section 3517.102 of the Revised Code. 1837

(L) Whoever violates section 3517.105 of the Revised Code 1838
shall be fined one thousand dollars. 1839

(M)(1) Whoever solicits a contribution in violation of 1840
section 3517.092 or violates division (B) of section 3517.09 of 1841

the Revised Code is guilty of a misdemeanor of the first degree. 1842

(2) Whoever knowingly accepts a contribution in violation 1843
of division (B) or (C) of section 3517.092 of the Revised Code 1844
shall be fined an amount equal to three times the amount 1845
accepted in violation of either of those divisions and shall 1846
return to the contributor any amount so accepted. Whoever 1847
unknowingly accepts a contribution in violation of division (B) 1848
or (C) of section 3517.092 of the Revised Code shall return to 1849
the contributor any amount so accepted. 1850

(N) Whoever violates division (S) of section 3517.13 of 1851
the Revised Code shall be fined an amount equal to three times 1852
the amount of funds transferred or three times the value of the 1853
assets transferred in violation of that division. 1854

(O) Any campaign committee that accepts a contribution or 1855
contributions in violation of section 3517.108 of the Revised 1856
Code, uses a contribution in violation of that section, or fails 1857
to dispose of excess contributions in violation of that section 1858
shall be fined an amount equal to three times the amount 1859
accepted, used, or kept in violation of that section. 1860

(P) Any political party, state candidate fund, legislative 1861
candidate fund, or campaign committee that violates division (T) 1862
of section 3517.13 of the Revised Code shall be fined an amount 1863
equal to three times the amount contributed or accepted in 1864
violation of that section. 1865

(Q) A treasurer of a committee or another person who 1866
violates division (U) of section 3517.13 of the Revised Code 1867
shall be fined not more than two hundred fifty dollars. 1868

(R) Whoever violates division (I) or (J) of section 1869
3517.13 of the Revised Code shall be fined not more than one 1870

thousand dollars. Whenever a person is found guilty of violating 1871
division (I) or (J) of section 3517.13 of the Revised Code, the 1872
contract awarded in violation of either of those divisions shall 1873
be rescinded if its terms have not yet been performed. 1874

(S) A candidate whose campaign committee violates or a 1875
treasurer of a campaign committee who violates section 3517.081 1876
of the Revised Code, and a candidate whose campaign committee 1877
violates or a treasurer of a campaign committee or another 1878
person who violates division (C) of section 3517.10 of the 1879
Revised Code, shall be fined not more than five hundred dollars. 1880

(T) A candidate whose campaign committee violates or a 1881
treasurer of a committee who violates division (B) of section 1882
3517.09 of the Revised Code, or a candidate whose campaign 1883
committee violates or a treasurer of a campaign committee or 1884
another person who violates division (C) of section 3517.09 of 1885
the Revised Code shall be fined not more than one thousand 1886
dollars. 1887

(U) Whoever violates section 3517.20 of the Revised Code 1888
shall be fined not more than five hundred dollars. 1889

(V) Whoever violates section 3517.21 or 3517.22 of the 1890
Revised Code shall be imprisoned for not more than six months or 1891
fined not more than five thousand dollars, or both. 1892

(W) A campaign committee that is required to file a 1893
declaration of no limits under division (D)(2) of section 1894
3517.103 of the Revised Code that, before filing that 1895
declaration, accepts a contribution or contributions that exceed 1896
the limitations prescribed in section 3517.102 of the Revised 1897
Code, shall return that contribution or those contributions to 1898
the contributor. 1899

(X) Any campaign committee that fails to file the
declaration of filing-day finances required by division (F) of
section 3517.109 of the Revised Code shall be fined twenty-five
dollars for each day of violation. 

1900
1901
1902
1903

(Y)(1) Any campaign committee that fails to dispose of
excess funds or excess aggregate contributions under division
(B) of section 3517.109 of the Revised Code in the manner
required by division (C) of that section shall give to the
treasurer of state for deposit into the Ohio elections
commission fund created under division (I) of section 3517.152
of the Revised Code all funds not disposed of pursuant to that
division. 

1904
1905
1906
1907
1908
1909
1910
1911

(2) Any treasurer of a transition fund that fails to
dispose of assets remaining in the transition fund as required
under division (H)(1) or (2) of section 3517.1014 of the Revised
Code shall give to the treasurer of state for deposit into the
Ohio elections commission fund all assets not disposed of
pursuant to that division. 

1912
1913
1914
1915
1916
1917

(Z) Any individual, campaign committee, political action
committee, political contributing entity, legislative campaign
fund, political party, treasurer of a transition fund, or other
entity that violates any provision of sections 3517.09 to
3517.12 of the Revised Code for which no penalty is provided for
under any other division of this section shall be fined not more
than one thousand dollars. 

1918
1919
1920
1921
1922
1923
1924

(AA)(1) Whoever knowingly violates division (W)(1) of
section 3517.13 of the Revised Code shall be fined an amount
equal to three times the amount contributed, expended, or
promised in violation of that division or ten thousand dollars,
whichever amount is greater. 

1925
1926
1927
1928
1929

(2) Whoever knowingly violates division (W)(2) of section          1930
3517.13 of the Revised Code shall be fined an amount equal to      1931
three times the amount solicited or accepted in violation of       1932
that division or ten thousand dollars, whichever amount is         1933
greater, and shall be required to return an amount equal to any    1934
amount accepted in violation of that division to the foreign       1935
national from whom it was accepted.                                1936

   (3) Whoever knowingly violates division (W)(3) of section       1937
3517.13 of the Revised Code shall be fined an amount equal to      1938
three times the amount involved in the violation or ten thousand   1939
dollars, whichever amount is greater.                              1940

(BB) Whoever knowingly violates division (C) or (D) of             1941
section 3517.1011 of the Revised Code shall be fined not more      1942
than ten thousand dollars plus not more than one thousand          1943
dollars for each day of violation.                                 1944

(CC)(1) Subject to division (CC)(2) of this section,               1945
whoever violates division (H) of section 3517.1011 of the          1946
Revised Code shall be fined an amount up to three times the        1947
amount disbursed for the direct costs of airing the                1948
communication made in violation of that division.                  1949

(2) Whoever has been ordered by the Ohio elections                 1950
commission or by a court of competent jurisdiction to cease        1951
making communications in violation of division (H) of section      1952
3517.1011 of the Revised Code who again violates that division     1953
shall be fined an amount equal to three times the amount           1954
disbursed for the direct costs of airing the communication made    1955
in violation of that division.                                     1956

(DD)(1) Any corporation or labor organization that                 1957
violates division (X)(3)(a) of section 3517.13 of the Revised      1958

Code shall be fined an amount equal to three times the amount 1959
given in excess of the amount permitted by that division. 1960

(2) Any state or county political party that violates 1961
division (X)(3)(b) of section 3517.13 of the Revised Code shall 1962
be fined an amount equal to three times the amount accepted in 1963
excess of the amount permitted by that division. 1964

(EE)(1) Any campaign committee or person who violates 1965
division (C)(1)(b) or (c) of section 3517.1014 of the Revised 1966
Code shall be fined an amount equal to three times the amount 1967
donated in excess of the amount permitted by that division. 1968

(2) Any officeholder or treasurer of a transition fund who 1969
violates division (C)(3)(a) or (b) of section 3517.1014 of the 1970
Revised Code shall be fined an amount equal to three times the 1971
amount accepted in excess of the amount permitted by that 1972
division. 1973

**Section 2.** That existing sections 3517.01, 3517.10, 1974
3517.12, 3517.13, 3517.155, and 3517.992 of the Revised Code are 1975
hereby repealed. 1976

**Section 3.** (A) Notwithstanding any provision of the 1977
Revised Code to the contrary, a major political party shall 1978
certify to the Secretary of State in writing the names of its 1979
candidates for president and vice-president nominated by its 1980
national convention pursuant to section 3505.10 of the Revised 1981
Code not later than the seventy-fourth day before the 2024 1982
general election. The political party may transmit the 1983
certification to the Secretary of State by any reasonably 1984
reliable method that, under the circumstances, will provide for 1985
the Secretary of State to receive it by the deadline, including 1986
by any of the following methods: 1987

| | |
|---|---|
| (1) Hand delivery; | 1988 |
| (2) Certified, express, or ordinary mail delivery by the | 1989 |
| United States Postal Service; | 1990 |
| (3) Commercial carrier service; | 1991 |
| (4) Facsimile transmission; | 1992 |
| (5) Electronic mail. | 1993 |
| (B) For purposes of this section, "major political party" | 1994 |
| has the same meaning as in section 3501.01 of the Revised Code. | 1995 |

# Exhibit D

**As Passed by the Senate**

**135th General Assembly**

**Regular Session**                              **Am. Sub. H. B. No. 305**

**2023-2024**

**Representatives Stewart, Brown**

**Cosponsors: Representatives Baker, Bird, Brewer, Claggett, Click, Dell'Aquila, Galonski, Grim, Gross, Isaacsohn, Jarrells, John, Kick, Klopfenstein, Lampton, LaRe, Lightbody, Lipps, McNally, Miller, A., Miller, J., Miranda, Mohamed, Plummer, Skindell, Somani, Upchurch, Weinstein, Williams, Willis, Young, T., Hillyer, Mathews, Abrams, Barhorst, Brennan, Brent, Creech, Cross, Cutrona, Dobos, Forhan, Fowler Arthur, Hall, Humphrey, Johnson, Jones, Liston, Lorenz, McClain, Miller, K., Miller, M., Oelslager, Patton, Pavliga, Peterson, Robb Blasdel, Russo, Stein, Thomas, C., White, Wiggam**

**Senators Manning, Brenner, Cirino, Gavarone, Hackett, Johnson, Lang, McColley, Reineke, Reynolds, Roegner, Romanchuk, Schaffer, Wilkin, Wilson**

———

# A BILL

| | |
|---|---:|
| To amend sections 9.03, 120.54, 181.21, 325.33, | 1 |
| 345.13, 517.23, 1317.07, 1901.02, 1901.123, | 2 |
| 1901.261, 1907.11, 1907.143, 1907.261, 2303.081, | 3 |
| 2303.201, 2505.02, 2929.20, 2967.26, 3517.01, | 4 |
| 3517.10, 3517.12, 3517.13, 3517.155, 3517.992, | 5 |
| 3517.993, 4507.112, 4509.101, and 4517.261; to | 6 |
| enact new section 135.032 and sections 181.26, | 7 |
| 1901.313, 1907.202, and 3109.055; and to repeal | 8 |
| sections 135.032 and 135.321 of the Revised Code | 9 |
| to address the laws governing financial and | 10 |
| administrative matters of the courts, judgeships | 11 |
| and court jurisdiction in Conneaut and Ashtabula | 12 |
| County, appeals related to enforcement of state | 13 |
| law, conciliation in family law proceedings, the | 14 |
| use of financial assistance by legal aid | 15 |
| societies, allocation of funds to the Indigent | 16 |

|  |  |
|---|---|
| Support Defense Fund, political subdivision | 17 |
| soldiers' memorials, maintenance of a mausoleum | 18 |
| or columbarium, third-party administration of | 19 |
| driving tests, motor vehicle documentary service | 20 |
| charges, and public depositories; to establish a | 21 |
| standing juvenile committee of the Criminal | 22 |
| Sentencing Commission; to prohibit chartered | 23 |
| counties and municipal corporations from using | 24 |
| public funds for certain purposes; to modify the | 25 |
| Campaign Finance Law; and to reiterate the | 26 |
| effective date of judicial release and | 27 |
| transitional control provisions enacted in S.B. | 28 |
| 288 of the 134th General Assembly. | 29 |

## BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO:

**Section 1.** That sections 9.03, 120.54, 181.21, 325.33, 345.13, 517.23, 1317.07, 1901.02, 1901.123, 1901.261, 1907.11, 1907.143, 1907.261, 2303.081, 2303.201, 2505.02, 2929.20, 2967.26, 3517.01, 3517.10, 3517.12, 3517.13, 3517.155, 3517.992, 3517.993, 4507.112, 4509.101, and 4517.261 be amended and new section 135.032 and sections 181.26, 1901.313, 1907.202, and 3109.055 of the Revised Code be enacted to read as follows:

30
31
32
33
34
35
36

**Sec. 9.03.** (A) As used in this section:

37

(1) "Political subdivision" means any body corporate and politic, ~~except a municipal corporation that has adopted a charter under Section 7 of Article XVIII, Ohio Constitution, and except a county that has adopted a charter under Sections 3 and 4 of Article X, Ohio Constitution,~~ to which both of the

38
39
40
41
42

following apply:                                                                              43

    (a) It is responsible for governmental activities only in                      44
a geographic area smaller than the state.                                                     45

    (b) It is subject to the sovereign immunity of the state.                         46

    (2) "Cigarettes" and "tobacco product" have the same                              47
meanings as in section 5743.01 of the Revised Code.                                           48

    (3) "Transaction" has the same meaning as in section                              49
1315.51 of the Revised Code.                                                                  50

    (4) "Campaign committee," "campaign fund," "candidate,"                            51
"legislative campaign fund," "political action committee,"                                    52
"political committee," "political party," and "separate                                       53
segregated fund" have the same meanings as in section 3517.01 of                              54
the Revised Code.                                                                             55

    (B) Except as otherwise provided in division (C) of this                          56
section, the governing body of a political subdivision may use                                57
public funds to publish and distribute newsletters, or to use                                 58
any other means, to communicate information about the plans,                                  59
policies, and operations of the political subdivision to members                              60
of the public within the political subdivision and to other                                   61
persons who may be affected by the political subdivision.                                     62

    (C) Except as otherwise provided in division (A)(7) of                            63
section 340.03 of the Revised Code, no governing body of a                                    64
political subdivision shall use public funds to do any of the                                 65
following:                                                                                    66

    (1) Publish, distribute, or otherwise communicate                                 67
information that does any of the following:                                                   68

    (a) Contains defamatory, libelous, or obscene matter;                              69

(b) Promotes alcoholic beverages, cigarettes or other 70
tobacco products, or any illegal product, service, or activity; 71

(c) Promotes illegal discrimination on the basis of race, 72
color, religion, national origin, disability, age, or ancestry; 73

(d) Supports or opposes any labor organization or any 74
action by, on behalf of, or against any labor organization; 75

(e) Supports or opposes the nomination or election of a 76
candidate for public office, the investigation, prosecution, or 77
recall of a public official, or the passage of a levy or bond 78
issue. 79

(2) Compensate any employee of the political subdivision 80
for time spent on any activity to influence the outcome of an 81
election for any of the purposes described in division (C)(1)(e) 82
of this section. Division (C)(2) of this section does not 83
prohibit the use of public funds to compensate an employee of a 84
political subdivision for attending a public meeting to present 85
information about the political subdivision's finances, 86
activities, and governmental actions in a manner that is not 87
designed to influence the outcome of an election or the passage 88
of a levy or bond issue, even though the election, levy, or bond 89
issue is discussed or debated at the meeting. 90

(D) Except as otherwise provided in division (A)(7) of 91
section 340.03 of the Revised Code or in division (E) of this 92
section, no person shall knowingly conduct a direct or indirect 93
transaction of public funds to the benefit of any of the 94
following: 95

(1) A campaign committee; 96

(2) A political action committee; 97

|  |  |
|---|---|
| (3) A legislative campaign fund; | 98 |
| (4) A political party; | 99 |
| (5) A campaign fund; | 100 |
| (6) A political committee; | 101 |
| (7) A separate segregated fund; | 102 |
| (8) A candidate. | 103 |

(E) Division (D) of this section does not prohibit the utilization of any person's own time to speak in support of or in opposition to any candidate, recall, referendum, levy, or bond issue unless prohibited by any other section of the Revised Code. | 104 105 106 107 108

(F) Nothing in this section prohibits or restricts any political subdivision from sponsoring, participating in, or doing any of the following: | 109 110 111

(1) Charitable or public service advertising that is not commercial in nature; | 112 113

(2) Advertising of exhibitions, performances, programs, products, or services that are provided by employees of a political subdivision or are provided at or through premises owned or operated by a political subdivision; | 114 115 116 117

(3) Licensing an interest in a name or mark that is owned or controlled by the political subdivision. | 118 119

(G) Whoever violates division (D) of this section shall be punished as provided in section 3599.40 of the Revised Code. | 120 121

**Sec. 120.54.** (A) A legal aid society that receives financial assistance from the legal aid fund under section 120.53 of the Revised Code shall use the financial assistance | 122 123 124

**Am. Sub. H. B. No. 305**                                              **Page 6**
**As Passed by the Senate**

for only the following purposes:                                          125

    (1) To defray the costs of providing legal services to          126
indigents;                                                                127

    (2) To provide legal training and legal technical              128
assistance to other eligible legal aid societies; and                     129

    (3) If the legal aid society has entered into an agreement     130
pursuant to division (H) of section 120.53 of the Revised Code            131
and in accordance with the description and list of conditions             132
set forth in its application pursuant to division (B)(9) of that          133
section, to provide funds for the services, programs, training,           134
and legal technical assistance provided to the legal aid society          135
under the contract.                                                       136

    (B) No financial assistance received by a legal aid           137
society from the legal aid fund pursuant to section 120.53 of             138
the Revised Code shall be used for the provision of legal                 139
services in ~~relation to~~ any criminal case or proceeding or in         140
~~relation to~~ the provision of legal assistance in any fee              141
generating case.                                                          142

    **Sec. 135.032.** (A) For the purposes of this section:         143

    (1) "Institution" means an institution eligible to become      144
a public depository under section 135.03 or 135.32 of the                 145
Revised Code or an eligible credit union, as defined in section           146
135.62 of the Revised Code.                                               147

    (2) "Prompt corrective action directive" means a directive     148
issued by a regulatory authority of the United States as                  149
authorized under 12 U.S.C. 1790d or 1831o.                                150

    (B) An institution designated as a public depository under     151
this chapter shall notify each governing board that made such             152

**Am. Sub. H. B. No. 305**                                          **Page 7**
**As Passed by the Senate**

designation if the institution becomes party to an active prompt          153
corrective action directive.                                               154

    (C) Except as otherwise provided in division (D) of this          155
section, an institution is ineligible to become a public                   156
depository under this chapter or to have active, interim, or               157
inactive deposits awarded, placed, purchased, made, or                     158
designated pursuant to this chapter, if the institution is party           159
to an active prompt corrective action directive.                           160

    (D) If a governing board receives notice under division           161
(B) of this section, or otherwise becomes aware that an                    162
institution the board designated as a public depository is party          163
to an active prompt corrective action directive, the board may            164
do either or both of the following, if the board determines that          165
it is in the public interest:                                             166

    (1) Allow the public depository to continue to have              167
active, interim, or inactive deposits awarded, placed,                    168
purchased, made, or designated for the remainder of the                   169
designation period;                                                       170

    (2) Designate the institution as a public depository for        171
additional succeeding designation periods.                                172

    (E) If a governing board determines that one or both of         173
the actions permitted by division (D) of this section are in the          174
public interest, and public moneys are lost due to the failure            175
of the public depository subject to the active prompt correction          176
directive, all of the following are relieved from any liability           177
for that loss:                                                            178

    (1) The governing board's treasurer and deputy treasurer;       179

    (2) An executive director, director, or other person           180
employed by the governing board, its treasurer, or its deputy             181

Am. Sub. H. B. No. 305                                                    **Page 8**
As Passed by the Senate

treasurer;                                                                      182

     (3) Bondspersons and surety of any person described in                     183

divisions (E)(1) and (2) of this section.                                       184

     **Sec. 181.21.** (A) There is hereby created within the                    185

supreme court the state criminal sentencing commission,                         186

consisting of thirty-one members. One member shall be the chief                 187

justice of the supreme court, who shall be the chairperson of                   188

the commission. The following ten members of the commission, no                 189

more than six of whom shall be members of the same political                    190

party, shall be appointed by the chief justice: one judge of a                  191

court of appeals, three judges of courts of common pleas who are                192

not juvenile court judges, three judges of juvenile courts, and                 193

three judges of municipal courts or county courts. Four members                 194

shall be the superintendent of the state highway patrol, the                    195

state public defender, the director of youth services, and the                 196

director of rehabilitation and correction, or their individual                  197

designees. The following twelve members, no more than seven of                  198

whom shall be members of the same political party, shall be                     199

appointed by the governor after consulting with the appropriate                 200

state associations, if any, that are represented by these                       201

members: one sheriff; two county prosecuting attorneys, at least                202

one of whom shall be experienced in the prosecution of cases in                 203

juvenile court involving alleged delinquent children, unruly                    204

children, and juvenile traffic offenders; two peace officers of                 205

a municipal corporation or township, at least one of whom shall                 206

be experienced in the investigation of cases involving                          207

juveniles; one former victim of a violation of Title XXIX of the                208

Revised Code; one attorney whose practice of law primarily                      209

involves the representation of criminal defendants; one member                  210

of the Ohio state bar association; one attorney whose practice                  211

of law primarily involves the representation in juvenile court                  212

of alleged delinquent children, unruly children, and juvenile 213
traffic offenders; one full-time city prosecuting attorney; one 214
county commissioner; and one mayor, city manager, or member of a 215
legislative authority of a municipal corporation. Two members 216
shall be members of the senate, one appointed by the president 217
of the senate and one appointed by the minority leader of the 218
senate. Two members shall be members of the house of 219
representatives, one appointed by the speaker of the house of 220
representatives and one appointed by the minority leader of the 221
house of representatives. 222

     The chief justice shall become a member of the commission 223
on August 22, 1990, and the chief justice's successors in office 224
shall become members of the commission on the day that they 225
assume the office of chief justice. The term of office of the 226
chief justice as a member of the commission shall continue for 227
as long as that person holds the office of chief justice. The 228
term of office of the member who is an attorney whose practice 229
of law primarily involves the representation of criminal 230
defendants, the term of office of the member who is an attorney 231
whose practice of law primarily involves the representation in 232
juvenile court of alleged delinquent children, unruly children, 233
and juvenile traffic offenders, and the term of office of the 234
former victim of a violation of Title XXIX of the Revised Code 235
shall be four years. The term of office of the superintendent of 236
the state highway patrol, the state public defender, the 237
director of youth services, and the director of rehabilitation 238
and correction, or their individual designees, as members of the 239
commission shall continue for as long as they hold the office of 240
superintendent of the state highway patrol, state public 241
defender, director of youth services, or director of 242
rehabilitation and correction. The term of office of a municipal 243

corporation or township peace officer as a member of the 244
commission shall be the lesser of four years or until that 245
person ceases to be a peace officer of a municipal corporation 246
or township. Unless the full-time city prosecuting attorney is 247
an elected official, the term of office of the full-time city 248
prosecuting attorney shall be the lesser of four years or until 249
the full-time city prosecuting attorney ceases to be a full-time 250
city prosecuting attorney. All of the members of the commission 251
who are elected officials shall serve the lesser of four years 252
or until the expiration of their term of office. Any vacancy on 253
the commission shall be filled in the same manner as the 254
original appointment. 255

When the chief justice and governor make their 256
appointments to the commission, they shall consider adequate 257
representation by race and gender. 258

(B) The commission shall select a vice-chairperson and any 259
other necessary officers and adopt rules to govern its 260
proceedings. The commission shall meet as necessary at the call 261
of the chairperson or on the written request of eight or more of 262
its members. Sixteen members of the commission constitute a 263
quorum, and the votes of a majority of the quorum present shall 264
be required to validate any action of the commission. All 265
business of the commission shall be conducted in public 266
meetings. 267

The members of the commission shall serve without 268
compensation, but each member shall be reimbursed for the 269
member's actual and necessary expenses incurred in the 270
performance of the member's official duties on the commission. 271
In the absence of the chairperson, the vice-chairperson shall 272
perform the duties of the chairperson. 273

**Am. Sub. H. B. No. 305**                                                      **Page 11**
**As Passed by the Senate**

    (C) The commission shall establish an office and shall                274
appoint and fix the compensation of a project director and any              275
other employees necessary to assist the commission in the                   276
execution of its authority under sections 181.21 to 181.25 of               277
the Revised Code. The project director shall have a thorough                278
understanding of the criminal laws of this state and experience             279
in committee-oriented research. The other employees may include             280
a research coordinator with experience and training in policy-              281
oriented research; professional staff employees with backgrounds            282
in criminal law, criminal justice, political science, or related            283
fields of expertise; administrative assistants; and secretaries.            284
The commission also may appoint and fix the compensation of                 285
part-time data collectors, clerical employees, and other                    286
temporary employees as needed to enable the commission to                   287
execute its authority under sections 181.21 to 181.25 of the                288
Revised Code.                                                               289

    (D)(1) The sentencing commission shall establish a                    290
standing juvenile committee. The committee may consist of the               291
following commission members:                                               292

    (a) The chief justice of the supreme court or the chief               293
justice's designee;                                                         294

    (b) The director of youth services, or the director's                 295
designee;                                                                   296

    (c) The three juvenile court judges;                                  297

    (d) One court of common pleas judge who is not a juvenile            298
court judge;                                                                299

    (e) One county prosecuting attorney who is experienced in            300
the prosecution of cases in juvenile court involving alleged                301
delinquent children, unruly children, and juvenile traffic                  302

**Am. Sub. H. B. No. 305**                                                  **Page 12**
**As Passed by the Senate**

offenders;                                                                           303

        (f)  The attorney whose practice of law primarily involves    304
the representation in juvenile court of alleged delinquent            305
children, unruly children, and juvenile traffic offenders;            306

        (g)  The former victim of a violation of Title XXIX of the     307
Revised Code;                                                                  308

        (h)  The county commissioner;                                        309

        (i)  One legislator from each political party;                     310

        (j)  The sheriff;                                                            311

        (k)  One municipal corporation or township peace officer    312
who is experienced in the investigation of cases involving          313
juveniles;                                                                          314

        (l)  Any other persons that the chief justice or the           315
chairperson of the committee designates.                               316

        (2)  The members may serve on the committee by designation  317
of the chief justice or the chairperson of the committee.           318

        (3)  The chief justice shall designate a member to serve as   319
chairperson of the committee. The committee shall select a vice-   320
chairperson and any other necessary officers and adopt rules to    321
govern its proceedings.                                                       322

        (4)  The committee shall meet as necessary at the call of      323
the chairperson or on the written request of four or more of the   324
committee's members. A majority of the members of the committee    325
constitutes a quorum, and the votes of a majority of the quorum    326
present are required to validate any action of the committee,       327
including recommendations to the commission.                          328

        (5)  The committee and the commission shall comply with       329

section 181.26 of the Revised Code.                                        330

   **Sec. 181.26.** (A) In addition to its duties set forth in    331
this chapter, the state criminal sentencing commission shall do            332
all of the following:                                                      333

   (1) Review all statutes governing delinquent child, unruly   334
child, and juvenile traffic offender dispositions in this state;           335

   (2) Review state and local resources, including facilities    336
and programs, used for delinquent child, unruly child, and                 337
juvenile traffic offender dispositions and the populations of              338
youthful offenders in the facilities and programs;                         339

   (3) Develop a juvenile justice policy for the state. The      340
policy shall be designed to:                                               341

   (a) Assist in the managing of the number of persons in,       342
operation of, and costs of the facilities, the programs, and               343
other resources used in delinquent child, unruly child, and                344
juvenile traffic offender dispositions;                                    345

   (b) Further the purposes for disposition under section        346
2152.01 of the Revised Code;                                               347

   (c) Provide greater certainty, proportionality,               348
uniformity, fairness, and simplicity in delinquent child, unruly           349
child, and juvenile traffic offender dispositions while                    350
retaining reasonable judicial discretion.                                  351

   (B) The commission shall do all of the following:            352

   (1) Assist in the implementation of statutes governing        353
delinquent child, unruly child, and juvenile traffic offender              354
dispositions in this state;                                                355

   (2) Monitor the operation of statutes governing delinquent    356

**Am. Sub. H. B. No. 305**                                          **Page 14**
**As Passed by the Senate**

child, unruly child, and juvenile traffic offender dispositions        357
in this state, periodically report to the general assembly on          358
the statutes' operation and the statutes' impact on resources          359
used in delinquent child, unruly child, and juvenile traffic           360
offender dispositions, and recommend necessary changes in the          361
statutes to the general assembly in the biennial monitoring            362
report described in section 181.25 of the Revised Code;                363

    (3) Review all bills that are introduced in the general       364
assembly related to delinquent child, unruly child, and juvenile       365
traffic offender dispositions, determine if those bills are            366
consistent with the juvenile justice policy adopted under              367
division (A)(3) of this section, recommend to the general              368
assembly amendments to those bills if necessary, and assist the        369
general assembly in making legislation consistent with the             370
juvenile justice policy adopted under division (A)(3) of this          371
section.                                                               372

    **Sec. 325.33.** (A) Notwithstanding sections 325.27 and          373
325.31 of the Revised Code, all fees retained by the clerk of          374
courts under Chapters 1548., 4505., and 4519. of the Revised           375
Code, all fees the clerk of courts receives as a third-party           376
administrator of the motor vehicle skills test under section           377
4507.112 of the Revised Code, and all fees the clerk of courts         378
receives in the capacity of deputy registrar under section             379
4503.03 of the Revised Code shall be paid into the county              380
treasury to the credit of the certificate of title                     381
administration fund, which is hereby created. Fees credited to         382
the fund shall be used as follows:                                     383

    (1) To pay the costs incurred by the clerk of courts in          384
processing titles under Chapters 1548., 4505., and 4519. of the        385
Revised Code;                                                          386

   (2) To pay the clerk of courts an eight thousand dollar 387
annual pay supplement for performing the duties of a deputy 388
registrar if the clerk is not a limited authority deputy 389
registrar, as described in section 4501:1-6-04 of the Ohio 390
Administrative Code. 391

   (B) If the board of county commissioners and the clerk of 392
courts agree that the money in the fund exceeds what is needed 393
to pay the costs specified in division (A) of this section, the 394
excess may be transferred to the county general fund and used 395
for other county purposes. If the board of county commissioners 396
and the clerk of courts are unable to agree on the amount of any 397
such excess, the county budget commission shall determine the 398
amount that will be transferred to the county general fund. 399

   **Sec. 345.13.** A soldiers' memorial, provided for by section 400
345.01 of the Revised Code, shall be maintained so as to 401
commemorate the services of all members and veterans of the 402
armed forces of the United States. The board of trustees shall 403
make rules and regulations for the use, administration, and 404
maintenance of such memorial as is fitting and necessary to 405
carry out the purposes thereof. The board of trustees may make 406
rules and regulations for entertainment, retail, educational, 407
sporting, social, cultural, or arts opportunities at the 408
memorial. 409

   When such memorial is a building, it shall provide 410
suitable apartments of sufficient dimensions to commemorate the 411
soldiers, sailors, marines, and all members of the armed forces 412
of the United States, so designated by congress, ~~both men and~~ 413
~~women of the county,~~ who have lost their lives while in the 414
service of the country. Suitable tablets shall be maintained 415
with the names of such soldiers, sailors, and marines inscribed 416

**Am. Sub. H. B. No. 305**                                              **Page 16**
**As Passed by the Senate**

thereon. The building may include a public auditorium, music          417
hall, and recreational facilities.                                    418

    The board may establish rental fees and other charges for         419
the use of the memorial, and it may waive any portion of such         420
charges.                                                              421

    With the approval of the board of county commissioners,           422
the board of trustees may enter into contracts with political         423
subdivisions or nonprofit organizations for the use of other          424
facilities separate and apart from the memorial, and to provide       425
other services. Such use shall adhere to the rules and                426
regulations established by the board of trustees to carry out         427
the purposes of the memorial.                                         428

    **Sec. 517.23.** (A) Subject to divisions (B), (D), and (E),       429
and (F) of this section, the board of township trustees, the          430
trustees or directors of a cemetery association, or the other         431
officers having control and management of a cemetery or the           432
officer of a municipal corporation who has control and                433
management of a municipal cemetery shall disinter or grant            434
permission to disinter any remains buried interred in the             435
cemetery in either of the following circumstances:                    436

    (1) Within thirty days after an application for                   437
disinterment is filed with the cemetery in accordance with            438
division (A) of section 517.24 of the Revised Code and payment        439
of the reasonable costs and expense of disinterment is made by        440
the following applicants:                                             441

    (a) A designated representative, or successor, to whom the        442
decedent had assigned the right of disposition in a written           443
declaration pursuant to section 2108.70 of the Revised Code and       444
who had exercised such right at the time of the declarant's           445

death;                                                                      446

(b) If no designated representative exercised the right of          447
disposition pursuant to section 2108.70 of the Revised Code, the             448
surviving spouse of the decedent who is eighteen years of age or             449
older.                                                                       450

(2) On order of a probate court issued under division (B)           451
of section 517.24 of the Revised Code and payment by the person              452
who applied for the order under that division of the reasonable              453
costs and expense of disinterment.                                           454

(B) No disinterment shall be made pursuant to this section          455
and section 517.24 of the Revised Code if the decedent died of a             456
contagious or infectious disease until a permit has been issued              457
by the board of health of a general health district or of a city             458
health district. This division does not apply to cremated                    459
remains.                                                                     460

(C) Upon disinterment of remains under division (A)(1) or           461
(2) of this section, the involved board, trustees, directors,                462
other officers, or officer of the municipal corporation shall                463
deliver or cause to be delivered the disinterred remains to the              464
applicant under division (A)(1) of this section or, if the                   465
disinterment was pursuant to court order issued under division               466
(B) of section 517.24 of the Revised Code, to the person who                 467
applied for the order under that division.                                   468

(D) The board of township trustees, the trustees or              469
directors of a cemetery association, or the other officers                   470
having control and management of a cemetery or the officer of a              471
municipal corporation who has control and management of a                    472
municipal cemetery may disinter or grant permission to disinter              473
and, if appropriate, may reinter or grant permission to reinter              474

**Am. Sub. H. B. No. 305**                                              **Page 18**
**As Passed by the Senate**

any remains ~~buried~~ interred in the cemetery to correct an                475
interment error in the cemetery if the board, trustees,                      476
directors, other officers, or officer of the municipal                       477
corporation comply with the internal rules of the cemetery                   478
pertaining to disinterments and if the board, trustees,                      479
directors, other officers, or officer of the municipal                       480
corporation provide notice of the disinterment to the person who             481
has been assigned or reassigned the rights of disposition for                482
the deceased person under the provisions of section 2108.70 or               483
2108.81 of the Revised Code. The board, trustees, directors,                 484
other officers, or officer of the municipal corporation may                  485
correct an interment error under this division without a court               486
order or an application by a person.                                         487

(E)(1) A person who is an interested party and who is                        488
eighteen years of age or older and of sound mind may apply to                489
the probate court of the county in which the decedent is ~~buried~~          490
interred for an order to prevent the applicant under division                491
(A)(1) of this section from having the remains of the decedent               492
disinterred. An application to prevent the disinterment of the               493
remains of the decedent shall be in writing, subscribed and                  494
verified by oath, and include all of the following:                         495

(a) If applicable, a statement that the applicant assumed                   496
financial responsibility for the funeral and ~~burial~~ interment           497
expenses of the decedent;                                                    498

(b) If division (E)(1)(a) of this section is inapplicable                   499
relative to the applicant, a statement that the applicant did               500
not assume financial responsibility for the funeral and ~~burial~~          501
interment expenses of the decedent;                                          502

(c) A statement that the applicant is eighteen years of                     503
age or older and of sound mind;                                              504

(d) The relationship of the applicant to the decedent;                    505

(e) A statement of the applicant's reasons to oppose the                  506
disinterment of the remains of the decedent.                              507

(2) An applicant for an order to prevent the disinterment                 508
of the remains of the decedent under division (E) of this                 509
section promptly shall give notice of the filing of the                   510
application by certified mail, return receipt requested, to the           511
applicant under division (A)(1) of this section. The notice               512
shall indicate that the applicant has filed an application for            513
an order to prevent the disinterment of the remains of the                514
decedent.                                                                 515

~~(F)~~ (F)(1) If the repair or replacement of a mausoleum or             516
columbarium necessitates the disinterment of one or more sets of          517
remains, the board, trustees, directors, other officers, or               518
officer of the municipal corporation, shall file a single                 519
application with the probate court in the county where the                520
mausoleum or columbarium is situated for a disinterment order             521
that authorizes the disinterment and reinterment of those                 522
affected remains in the mausoleum or columbarium. Upon the                523
filing of the application, the probate court shall schedule a             524
hearing.                                                                  525

(2) The board, trustees, directors, other officers, or                    526
officer of the municipal corporation promptly shall provide               527
notice to the surviving spouses of the affected decedents and to          528
the persons who have been assigned or reassigned the rights of            529
disposition for the affected remains under the provisions of              530
sections 2108.70 to 2108.90 of the Revised Code. The notice               531
shall state that an application for disinterment has been filed           532
and shall provide the time, date, and location of the hearing.            533
The notice shall be sent by certified mail, return receipt                534

| | |
|---|---|
| requested, or, if the names or addresses of such persons are | 535 |
| unknown and cannot with reasonable diligence be ascertained, the | 536 |
| notice shall be made by publication in a newspaper of general | 537 |
| circulation in the county where the probate court is located and | 538 |
| as otherwise required by the probate court. | 539 |
| (3) Upon conducting the hearing, the court shall issue an | 540 |
| order of disinterment if all of the following are satisfied: | 541 |
| (a) The affected remains shall be held in a permanent or | 542 |
| temporary structure on cemetery property that allows for access | 543 |
| for visitation during the times that the cemetery's other | 544 |
| grounds and facilities are open for visitation, shall be | 545 |
| properly identified and held in a secure manner without any | 546 |
| commingling of cremated remains, and shall not be held for a | 547 |
| period exceeding eighteen months unless an extension of time is | 548 |
| granted by the probate court for good cause; | 549 |
| (b) If a mausoleum or columbarium is being replaced, the | 550 |
| replacement mausoleum or columbarium shall be built on property | 551 |
| that is owned by the cemetery and that is either the same | 552 |
| property upon which the original mausoleum or columbarium was | 553 |
| located or property that is contiguous thereto; | 554 |
| (c) The cemetery provided notice as required under | 555 |
| division (F)(2) of this section; | 556 |
| (d) Upon considering all of the following, the court finds | 557 |
| there are one or more compelling reasons to issue the requested | 558 |
| order of disinterment: | 559 |
| (i) The cost, feasibility, and timetable for the repairs | 560 |
| or replacement; | 561 |
| (ii) The current condition of the structure to be repaired | 562 |
| or replaced; | 563 |

 (iii) The location, design, features, and overall quality  564
of the proposed replacement structure;  565

 (iv) The input of the persons receiving notice under  566
division (F)(2) of this section.  567

 (4) A cemetery is not liable in damages in a civil action  568
if the cemetery changes the specific location of entombment  569
rights or columbarium rights due to the repair or replacement of  570
a mausoleum or columbarium made in accordance with an order  571
issued by the probate court under division (F)(3) of this  572
section.  573

 (G) As used in this section and in section 517.24 of the  574
Revised Code:  575

 (1) "Cemetery" and "interment" have the same meanings as  576
in section 1721.21 of the Revised Code.  577

 (2) "Disinterment" means the recovery of human remains by  578
exhumation, disentombment, or disinurnment. "Disinterment" does  579
not include the raising and lowering of remains to accommodate  580
two interments within a single grave and does not include the  581
repositioning of an outside burial container that encroaches an  582
adjoining burial space.  583

 **Sec. 1317.07.** No retail installment contract authorized by  584
section 1317.03 of the Revised Code that is executed in  585
connection with any retail installment sale shall evidence any  586
indebtedness in excess of the time balance fixed in the written  587
instrument in compliance with section 1317.04 of the Revised  588
Code, but it may evidence in addition any agreements of the  589
parties for the payment of delinquent charges, as provided for  590
in section 1317.06 of the Revised Code, taxes, and any lawful  591
fee actually paid out, or to be paid out, by the retail seller  592

| | |
|---|---|
| to any public officer for filing, recording, or releasing any | 593 |
| instrument securing the payment of the obligation owed on any | 594 |
| retail installment contract. No retail seller, directly or | 595 |
| indirectly, shall charge, contract for, or receive from any | 596 |
| retail buyer, any further or other amount for examination, | 597 |
| service, brokerage, commission, expense, fee, or other thing of | 598 |
| value, unless the retail seller is otherwise authorized by law | 599 |
| to do so. A documentary service charge customarily and presently | 600 |
| being paid on May 9, 1949, in a particular business and area may | 601 |
| be charged if the charge does not exceed two hundred fifty | 602 |
| dollars per sale, except as otherwise authorized by section | 603 |
| 4517.261 of the Revised Code. | 604 |

| | |
|---|---|
| No retail seller shall use multiple agreements with | 605 |
| respect to a single item or related items purchased at the same | 606 |
| time, with intent to obtain a higher charge than would otherwise | 607 |
| be permitted by Chapter 1317. of the Revised Code or to avoid | 608 |
| disclosure of an annual percentage rate, nor by use of such | 609 |
| agreements make any charge greater than that which would be | 610 |
| permitted by Chapter 1317. of the Revised Code had a single | 611 |
| agreement been used. | 612 |

| | |
|---|---|
| **Sec. 1901.02.** (A) The municipal courts established by | 613 |
| section 1901.01 of the Revised Code have jurisdiction within the | 614 |
| corporate limits of their respective municipal corporations, or, | 615 |
| for the Clermont county municipal court, and, effective January | 616 |
| 1, 2008, the Erie county municipal court, within the municipal | 617 |
| corporation or unincorporated territory in which they are | 618 |
| established, and are courts of record. Each of the courts shall | 619 |
| be styled "_____ municipal court," | 620 |
| inserting the name of the municipal corporation, except the | 621 |
| following courts, which shall be styled as set forth below: | 622 |

(1) The municipal court established in Chesapeake that
shall be styled and known as the "Lawrence county municipal
court"; 623
624
625

(2) The municipal court established in Cincinnati that
shall be styled and known as the "Hamilton county municipal
court"; 626
627
628

(3) The municipal court established in Ravenna that shall
be styled and known as the "Portage county municipal court"; 629
630

(4) The municipal court established in Athens that shall
be styled and known as the "Athens county municipal court"; 631
632

(5) The municipal court established in Columbus that shall
be styled and known as the "Franklin county municipal court"; 633
634

(6) The municipal court established in London that shall
be styled and known as the "Madison county municipal court"; 635
636

(7) The municipal court established in Newark that shall
be styled and known as the "Licking county municipal court"; 637
638

(8) The municipal court established in Wooster that shall
be styled and known as the "Wayne county municipal court"; 639
640

(9) The municipal court established in Wapakoneta that
shall be styled and known as the "Auglaize county municipal
court"; 641
642
643

(10) The municipal court established in Troy that shall be
styled and known as the "Miami county municipal court"; 644
645

(11) The municipal court established in Bucyrus that shall
be styled and known as the "Crawford county municipal court"; 646
647

(12) The municipal court established in Logan that shall
be styled and known as the "Hocking county municipal court"; 648
649

(13) The municipal court established in Urbana that shall
be styled and known as the "Champaign county municipal court";
650
651

(14) The municipal court established in Jackson that shall
be styled and known as the "Jackson county municipal court";
652
653

(15) The municipal court established in Springfield that
shall be styled and known as the "Clark county municipal court";
654
655

(16) The municipal court established in Kenton that shall
be styled and known as the "Hardin county municipal court";
656
657

(17) The municipal court established within Clermont
county in Batavia or in any other municipal corporation or
unincorporated territory within Clermont county that is selected
by the legislative authority of that court that shall be styled
and known as the "Clermont county municipal court";
658
659
660
661
662

(18) The municipal court established in Wilmington that,
beginning July 1, 1992, shall be styled and known as the
"Clinton county municipal court";
663
664
665

(19) The municipal court established in Port Clinton that
shall be styled and known as the "Ottawa county municipal
court";
666
667
668

(20) The municipal court established in Lancaster that,
beginning January 2, 2000, shall be styled and known as the
"Fairfield county municipal court";
669
670
671

(21) The municipal court established within Columbiana
county in Lisbon or in any other municipal corporation or
unincorporated territory selected pursuant to division (I) of
section 1901.021 of the Revised Code, that shall be styled and
known as the "Columbiana county municipal court";
672
673
674
675
676

(22) The municipal court established in Georgetown that,
677

beginning February 9, 2003, shall be styled and known as the
"Brown county municipal court";
678
679

(23) The municipal court established in Mount Gilead that,
beginning January 1, 2003, shall be styled and known as the
"Morrow county municipal court";
680
681
682

(24) The municipal court established in Greenville that,
beginning January 1, 2005, shall be styled and known as the
"Darke county municipal court";
683
684
685

(25) The municipal court established in Millersburg that,
beginning January 1, 2007, shall be styled and known as the
"Holmes county municipal court";
686
687
688

(26) The municipal court established in Carrollton that,
beginning January 1, 2007, shall be styled and known as the
"Carroll county municipal court";
689
690
691

(27) The municipal court established within Erie county in
Milan or established in any other municipal corporation or
unincorporated territory that is within Erie county, is within
the territorial jurisdiction of that court, and is selected by
the legislative authority of that court that, beginning January
1, 2008, shall be styled and known as the "Erie county municipal
court";
692
693
694
695
696
697
698

(28) The municipal court established in Ottawa that,
beginning January 1, 2011, shall be styled and known as the
"Putnam county municipal court";
699
700
701

(29) The municipal court established within Montgomery
county in any municipal corporation or unincorporated territory
within Montgomery county, except the municipal corporations of
Centerville, Clayton, Dayton, Englewood, Germantown, Kettering,
Miamisburg, Moraine, Oakwood, Union, Vandalia, and West
702
703
704
705
706

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 179 of 879 PAGEID #: 314

**Am. Sub. H. B. No. 305** **Page 26**
**As Passed by the Senate**

Carrollton and Butler, German, Harrison, Miami, and Washington
townships, that is selected by the legislative authority of that
court and that, beginning July 1, 2010, shall be styled and
known as the "Montgomery county municipal court";
707
708
709
710

(30) The municipal court established in Tiffin that,
beginning January 1, 2014, shall be styled and known as the
"Tiffin-Fostoria municipal court";
711
712
713

(31) The municipal court established in New Lexington
that, beginning January 1, 2018, shall be styled and known as
the "Perry county municipal court";
714
715
716

(32) The municipal court established in Paulding that,
beginning January 1, 2020, shall be styled and known as the
"Paulding county municipal court";
717
718
719

(33) The municipal court established in Wauseon that,
beginning January 1, 2024, shall be styled and known as the
"Fulton county municipal court."
720
721
722

(B) In addition to the jurisdiction set forth in division
(A) of this section, the municipal courts established by section
1901.01 of the Revised Code have jurisdiction as follows:
723
724
725

The Akron municipal court has jurisdiction within Bath,
Richfield, and Springfield townships, and within the municipal
corporations of Fairlawn, Lakemore, and Mogadore, in Summit
county.
726
727
728
729

The Alliance municipal court has jurisdiction within
Lexington, Marlboro, Paris, and Washington townships in Stark
county.
730
731
732

The Ashland municipal court has jurisdiction within
Ashland county.
733
734

The Ashtabula municipal court has jurisdiction within
Ashtabula, Plymouth, and Saybrook townships in Ashtabula county. 735
736

The Athens county municipal court has jurisdiction within
Athens county. 737
738

The Auglaize county municipal court has jurisdiction
within Auglaize county. 739
740

The Avon Lake municipal court has jurisdiction within the
municipal corporations of Avon and Sheffield in Lorain county. 741
742

The Barberton municipal court has jurisdiction within
Coventry, Franklin, and Green townships, within all of Copley
township except within the municipal corporation of Fairlawn,
and within the municipal corporations of Clinton and Norton, in
Summit county. 743
744
745
746
747

The Bedford municipal court has jurisdiction within the
municipal corporations of Bedford Heights, Oakwood, Glenwillow,
Solon, Bentleyville, Chagrin Falls, Moreland Hills, Orange,
Warrensville Heights, North Randall, and Woodmere, and within
Warrensville and Chagrin Falls townships, in Cuyahoga county. 748
749
750
751
752

The Bellefontaine municipal court has jurisdiction within
Logan county. 753
754

The Bellevue municipal court has jurisdiction within Lyme
and Sherman townships in Huron county and within York township
in Sandusky county. 755
756
757

The Berea municipal court has jurisdiction within the
municipal corporations of Strongsville, Middleburgh Heights,
Brook Park, Westview, and Olmsted Falls, and within Olmsted
township, in Cuyahoga county. 758
759
760
761

The Bowling Green municipal court has jurisdiction within 762

the municipal corporations of Bairdstown, Bloomdale, Bradner, 763
Custar, Cygnet, Grand Rapids, Haskins, Hoytville, Jerry City, 764
Milton Center, North Baltimore, Pemberville, Portage, Rising 765
Sun, Tontogany, Wayne, West Millgrove, and Weston; within Bloom, 766
Center, Freedom, Grand Rapids, Henry, Jackson, Liberty, 767
Middleton, Milton, Montgomery, Plain, Portage, Washington, 768
Webster, and Weston townships in Wood county; and on and after 769
January 2, 2024, within Perry township in Wood county. 770

Beginning February 9, 2003, the Brown county municipal 771
court has jurisdiction within Brown county. 772

The Bryan municipal court has jurisdiction within Williams 773
county. 774

The Cambridge municipal court has jurisdiction within 775
Guernsey county. 776

The Campbell municipal court has jurisdiction within 777
Coitsville township in Mahoning county. 778

The Canton municipal court has jurisdiction within Canton, 779
Lake, Nimishillen, Osnaburg, Pike, Plain, and Sandy townships in 780
Stark county. 781

The Carroll county municipal court has jurisdiction within 782
Carroll county. 783

The Celina municipal court has jurisdiction within Mercer 784
county. 785

The Champaign county municipal court has jurisdiction 786
within Champaign county. 787

The Chardon municipal court has jurisdiction within Geauga 788
county. 789

**Am. Sub. H. B. No. 305**                                              **Page 29**
**As Passed by the Senate**

|  |  |
|---|---|
| The Chillicothe municipal court has jurisdiction within Ross county. | 790<br>791 |
| The Circleville municipal court has jurisdiction within Pickaway county. | 792<br>793 |
| The Clark county municipal court has jurisdiction within Clark county. | 794<br>795 |
| The Clermont county municipal court has jurisdiction within Clermont county. | 796<br>797 |
| The Cleveland municipal court has jurisdiction within the municipal corporation of Bratenahl in Cuyahoga county. | 798<br>799 |
| Beginning July 1, 1992, the Clinton county municipal court has jurisdiction within Clinton county. | 800<br>801 |
| The Columbiana county municipal court has jurisdiction within Columbiana county. | 802<br>803 |
| Beginning January 1, 2025, the Conneaut municipal court has jurisdiction within the municipal corporation of North Kingsville, and within Kingsville, Monroe, and Sheffield townships, in Ashtabula county. | 804<br>805<br>806<br>807 |
| The Coshocton municipal court has jurisdiction within Coshocton county. | 808<br>809 |
| The Crawford county municipal court has jurisdiction within Crawford county. | 810<br>811 |
| Until December 31, 2008, the Cuyahoga Falls municipal court has jurisdiction within Boston, Hudson, Northfield Center, Sagamore Hills, and Twinsburg townships, and within the municipal corporations of Boston Heights, Hudson, Munroe Falls, Northfield, Peninsula, Reminderville, Silver Lake, Stow, | 812<br>813<br>814<br>815<br>816 |

Tallmadge, Twinsburg, and Macedonia, in Summit county. 817

Beginning January 1, 2005, the Darke county municipal 818
court has jurisdiction within Darke county except within the 819
municipal corporation of Bradford. 820

The Defiance municipal court has jurisdiction within 821
Defiance county. 822

The Delaware municipal court has jurisdiction within 823
Delaware county. 824

The Eaton municipal court has jurisdiction within Preble 825
county. 826

The Elyria municipal court has jurisdiction within the 827
municipal corporations of Grafton, LaGrange, and North 828
Ridgeville, and within Elyria, Carlisle, Eaton, Columbia, 829
Grafton, and LaGrange townships, in Lorain county. 830

Beginning January 1, 2008, the Erie county municipal court 831
has jurisdiction within Erie county except within the townships 832
of Florence, Huron, Perkins, and Vermilion and the municipal 833
corporations of Bay View, Castalia, Huron, Sandusky, and 834
Vermilion. 835

The Fairborn municipal court has jurisdiction within the 836
municipal corporation of Beavercreek and within Bath and 837
Beavercreek townships in Greene county. 838

Beginning January 2, 2000, the Fairfield county municipal 839
court has jurisdiction within Fairfield county. 840

The Findlay municipal court has jurisdiction, until 841
January 2, 2024, within all of Hancock county except within 842
Washington township, and on and after January 2, 2024, within 843
all of Hancock county. 844

The Franklin municipal court has jurisdiction within
Franklin township in Warren county.
845
846

The Franklin county municipal court has jurisdiction
within Franklin county.
847
848

The Fremont municipal court has jurisdiction within
Ballville and Sandusky townships in Sandusky county.
849
850

Beginning January 1, 2024, the Fulton county municipal
court has jurisdiction within Fulton county.
851
852

The Gallipolis municipal court has jurisdiction within
Gallia county.
853
854

The Garfield Heights municipal court has jurisdiction
within the municipal corporations of Maple Heights, Walton
Hills, Valley View, Cuyahoga Heights, Newburgh Heights,
Independence, and Brecksville in Cuyahoga county.
855
856
857
858

The Girard municipal court has jurisdiction within
Liberty, Vienna, and Hubbard townships in Trumbull county.
859
860

The Hamilton municipal court has jurisdiction within Ross
and St. Clair townships in Butler county.
861
862

The Hamilton county municipal court has jurisdiction
within Hamilton county.
863
864

The Hardin county municipal court has jurisdiction within
Hardin county.
865
866

The Hillsboro municipal court has jurisdiction within all
of Highland county except within Madison township.
867
868

The Hocking county municipal court has jurisdiction within
Hocking county.
869
870

The Holmes county municipal court has jurisdiction within
871

Holmes county.

872

The Huron municipal court has jurisdiction within all of
Huron township in Erie county except within the municipal
corporation of Sandusky.

873
874
875

The Ironton municipal court has jurisdiction within Aid,
Decatur, Elizabeth, Hamilton, Lawrence, Upper, and Washington
townships in Lawrence county.

876
877
878

The Jackson county municipal court has jurisdiction within
Jackson county.

879
880

The Kettering municipal court has jurisdiction within the
municipal corporations of Centerville and Moraine, and within
Washington township, in Montgomery county.

881
882
883

Until January 2, 2000, the Lancaster municipal court has
jurisdiction within Fairfield county.

884
885

The Lawrence county municipal court has jurisdiction
within the townships of Fayette, Mason, Perry, Rome, Symmes,
Union, and Windsor in Lawrence county.

886
887
888

The Lebanon municipal court has jurisdiction within
Turtlecreek township in Warren county.

889
890

The Licking county municipal court has jurisdiction within
Licking county.

891
892

The Lima municipal court has jurisdiction within Allen
county.

893
894

The Lorain municipal court has jurisdiction within the
municipal corporation of Sheffield Lake, and within Sheffield
township, in Lorain county.

895
896
897

The Lyndhurst municipal court has jurisdiction within the

898

municipal corporations of Mayfield Heights, Gates Mills, 899
Mayfield, Highland Heights, and Richmond Heights in Cuyahoga 900
county. 901

The Madison county municipal court has jurisdiction within 902
Madison county. 903

The Mansfield municipal court has jurisdiction within 904
Madison, Springfield, Sandusky, Franklin, Weller, Mifflin, Troy, 905
Washington, Monroe, Perry, Jefferson, and Worthington townships, 906
and within sections 35-36-31 and 32 of Butler township, in 907
Richland county. 908

The Marietta municipal court has jurisdiction within 909
Washington county. 910

The Marion municipal court has jurisdiction within Marion 911
county. 912

The Marysville municipal court has jurisdiction within 913
Union county. 914

The Mason municipal court has jurisdiction within 915
Deerfield township in Warren county. 916

The Massillon municipal court has jurisdiction within 917
Bethlehem, Perry, Sugar Creek, Tuscarawas, Lawrence, and Jackson 918
townships in Stark county. 919

The Maumee municipal court has jurisdiction within the 920
municipal corporations of Waterville and Whitehouse, within 921
Waterville and Providence townships, and within those portions 922
of Springfield, Monclova, and Swanton townships lying south of 923
the northerly boundary line of the Ohio turnpike, in Lucas 924
county. 925

The Medina municipal court has jurisdiction within the 926

municipal corporations of Briarwood Beach, Brunswick, Chippewa- 927
on-the-Lake, and Spencer and within the townships of Brunswick 928
Hills, Chatham, Granger, Hinckley, Lafayette, Litchfield, 929
Liverpool, Medina, Montville, Spencer, and York townships, in 930
Medina county. 931

The Mentor municipal court has jurisdiction within the 932
municipal corporation of Mentor-on-the-Lake in Lake county. 933

The Miami county municipal court has jurisdiction within 934
Miami county and within the part of the municipal corporation of 935
Bradford that is located in Darke county. 936

The Miamisburg municipal court has jurisdiction within the 937
municipal corporations of Germantown and West Carrollton, and 938
within German and Miami townships in Montgomery county. 939

The Middletown municipal court has jurisdiction within 940
Madison township, and within all of Lemon township, except 941
within the municipal corporation of Monroe, in Butler county. 942

Beginning July 1, 2010, the Montgomery county municipal 943
court has jurisdiction within all of Montgomery county except 944
for the municipal corporations of Centerville, Clayton, Dayton, 945
Englewood, Germantown, Kettering, Miamisburg, Moraine, Oakwood, 946
Union, Vandalia, and West Carrollton and Butler, German, 947
Harrison, Miami, and Washington townships. 948

Beginning January 1, 2003, the Morrow county municipal 949
court has jurisdiction within Morrow county. 950

The Mount Vernon municipal court has jurisdiction within 951
Knox county. 952

The Napoleon municipal court has jurisdiction within Henry 953
county. 954

The New Philadelphia municipal court has jurisdiction 955
within the municipal corporation of Dover, and within Auburn, 956
Bucks, Fairfield, Goshen, Jefferson, Warren, York, Dover, 957
Franklin, Lawrence, Sandy, Sugarcreek, and Wayne townships in 958
Tuscarawas county. 959

The Newton Falls municipal court has jurisdiction within 960
Bristol, Bloomfield, Lordstown, Newton, Braceville, Southington, 961
Farmington, and Mesopotamia townships in Trumbull county. 962

The Niles municipal court has jurisdiction within the 963
municipal corporation of McDonald, and within Weathersfield 964
township in Trumbull county. 965

The Norwalk municipal court has jurisdiction within all of 966
Huron county except within the municipal corporation of Bellevue 967
and except within Lyme and Sherman townships. 968

The Oberlin municipal court has jurisdiction within the 969
municipal corporations of Amherst, Kipton, Rochester, South 970
Amherst, and Wellington, and within Henrietta, Russia, Camden, 971
Pittsfield, Brighton, Wellington, Penfield, Rochester, and 972
Huntington townships, and within all of Amherst township except 973
within the municipal corporation of Lorain, in Lorain county. 974

The Oregon municipal court has jurisdiction within the 975
municipal corporation of Harbor View, and within Jerusalem 976
township, in Lucas county, and north within Maumee Bay and Lake 977
Erie to the boundary line between Ohio and Michigan between the 978
easterly boundary of the court and the easterly boundary of the 979
Toledo municipal court. 980

The Ottawa county municipal court has jurisdiction within 981
Ottawa county. 982

The Painesville municipal court has jurisdiction within 983

Painesville, Perry, Leroy, Concord, and Madison townships in 984
Lake county. 985

The Parma municipal court has jurisdiction within the 986
municipal corporations of Parma Heights, Brooklyn, Linndale, 987
North Royalton, Broadview Heights, Seven Hills, and Brooklyn 988
Heights in Cuyahoga county. 989

Beginning January 1, 2018, the Perry county municipal 990
court has jurisdiction within Perry county. 991

Beginning January 1, 2020, the Paulding county municipal 992
court has jurisdiction within Paulding county. 993

The Perrysburg municipal court has jurisdiction within the 994
municipal corporations of Luckey, Millbury, Northwood, Rossford, 995
and Walbridge, and within Perrysburg, Lake, and Troy townships, 996
in Wood county. 997

The Portage county municipal court has jurisdiction within 998
Portage county. 999

The Portsmouth municipal court has jurisdiction within 1000
Scioto county. 1001

The Putnam county municipal court has jurisdiction within 1002
Putnam county. 1003

The Rocky River municipal court has jurisdiction within 1004
the municipal corporations of Bay Village, Westlake, Fairview 1005
Park, and North Olmsted, and within Riveredge township, in 1006
Cuyahoga county. 1007

The Sandusky municipal court has jurisdiction within the 1008
municipal corporations of Castalia and Bay View, and within 1009
Perkins township, in Erie county. 1010

The Shaker Heights municipal court has jurisdiction within
the municipal corporations of University Heights, Beachwood,
Pepper Pike, and Hunting Valley in Cuyahoga county. 1011
1012
1013

The Shelby municipal court has jurisdiction within Sharon,
Jackson, Cass, Plymouth, and Blooming Grove townships, and
within all of Butler township except sections 35-36-31 and 32,
in Richland county. 1014
1015
1016
1017

The Sidney municipal court has jurisdiction within Shelby
county. 1018
1019

Beginning January 1, 2009, the Stow municipal court has
jurisdiction within Boston, Hudson, Northfield Center, Sagamore
Hills, and Twinsburg townships, and within the municipal
corporations of Boston Heights, Cuyahoga Falls, Hudson, Munroe
Falls, Northfield, Peninsula, Reminderville, Silver Lake, Stow,
Tallmadge, Twinsburg, and Macedonia, in Summit county. 1020
1021
1022
1023
1024
1025

The Struthers municipal court has jurisdiction within the
municipal corporations of Lowellville, New Middleton, and
Poland, and within Poland and Springfield townships in Mahoning
county. 1026
1027
1028
1029

The Sylvania municipal court has jurisdiction within the
municipal corporations of Berkey and Holland, and within
Sylvania, Richfield, Spencer, and Harding townships, and within
those portions of Swanton, Monclova, and Springfield townships
lying north of the northerly boundary line of the Ohio turnpike,
in Lucas county. 1030
1031
1032
1033
1034
1035

Beginning January 1, 2014, the Tiffin-Fostoria municipal
court has jurisdiction within Adams, Big Spring, Bloom, Clinton,
Eden, Hopewell, Jackson, Liberty, Loudon, Pleasant, Reed,
Scipio, Seneca, Thompson, and Venice townships in Seneca county, 1036
1037
1038
1039

and beginning on January 1, 2014, and until January 2, 2024, has 1040
jurisdiction within Washington township in Hancock county, and 1041
within Perry township, except within the municipal corporation 1042
of West Millgrove, in Wood county. 1043

The Toledo municipal court has jurisdiction within 1044
Washington township, and within the municipal corporation of 1045
Ottawa Hills, in Lucas county. 1046

The Upper Sandusky municipal court has jurisdiction within 1047
Wyandot county. 1048

The Vandalia municipal court has jurisdiction within the 1049
municipal corporations of Clayton, Englewood, and Union, and 1050
within Butler, Harrison, and Randolph townships, in Montgomery 1051
county. 1052

The Van Wert municipal court has jurisdiction within Van 1053
Wert county. 1054

The Vermilion municipal court has jurisdiction within the 1055
townships of Vermilion and Florence in Erie county and within 1056
all of Brownhelm township except within the municipal 1057
corporation of Lorain, in Lorain county. 1058

The Wadsworth municipal court has jurisdiction within the 1059
municipal corporations of Gloria Glens Park, Lodi, Seville, and 1060
Westfield Center, and within Guilford, Harrisville, Homer, 1061
Sharon, Wadsworth, and Westfield townships in Medina county. 1062

The Warren municipal court has jurisdiction within Warren 1063
and Champion townships, and within all of Howland township 1064
except within the municipal corporation of Niles, in Trumbull 1065
county. 1066

The Washington Court House municipal court has 1067

jurisdiction within Fayette county. 1068

The Wayne county municipal court has jurisdiction within Wayne county. 1069 1070

The Willoughby municipal court has jurisdiction within the municipal corporations of Eastlake, Wickliffe, Willowick, Willoughby Hills, Kirtland, Kirtland Hills, Waite Hill, Timberlake, and Lakeline, and within Kirtland township, in Lake county. 1071 1072 1073 1074 1075

Through June 30, 1992, the Wilmington municipal court has jurisdiction within Clinton county. 1076 1077

The Xenia municipal court has jurisdiction within Caesarcreek, Cedarville, Jefferson, Miami, New Jasper, Ross, Silvercreek, Spring Valley, Sugarcreek, and Xenia townships in Greene county. 1078 1079 1080 1081

(C) As used in this section: 1082

(1) "Within a township" includes all land, including, but not limited to, any part of any municipal corporation, that is physically located within the territorial boundaries of that township, whether or not that land or municipal corporation is governmentally a part of the township. 1083 1084 1085 1086 1087

(2) "Within a municipal corporation" includes all land within the territorial boundaries of the municipal corporation and any townships that are coextensive with the municipal corporation. 1088 1089 1090 1091

**Sec. 1901.123.** (A)(1) Subject to reimbursement under division (B) of this section, the treasurer of the county in which a county-operated municipal court or other municipal court is located shall pay the per diem compensation to which an 1092 1093 1094 1095

acting judge appointed pursuant to division (A)(2)(a), (B)(1),        1096
or (C)(1) of section 1901.121 of the Revised Code is entitled         1097
pursuant to division (A)(1) of section 1901.122 of the Revised        1098
Code.                                                                 1099

(2) The treasurer of the county in which a county-operated       1100
municipal court or other municipal court is located shall pay         1101
the per diem compensation to which an assigned judge assigned         1102
pursuant to division (A)(1), (A)(2)(b), (B)(2), (C)(2), or (D)        1103
of section 1901.121 of the Revised Code is entitled pursuant to       1104
division (B)(1) or (4) of section 1901.122 of the Revised Code.       1105

(3) Subject to reimbursement under division (B) of this          1106
section, the treasurer of the county in which a county-operated       1107
municipal court or other municipal court is located shall pay         1108
the per diem compensation to which an assigned judge assigned         1109
pursuant to division (A)(1), (A)(2)(b), (B)(2), (C)(2), or (D)        1110
of section 1901.121 of the Revised Code is entitled pursuant to       1111
division (B)(2) of section 1901.122 of the Revised Code.              1112

(4) Subject to reimbursement under division (C) of this          1113
section, the supreme court shall pay the per diem compensation        1114
to which an assigned judge assigned pursuant to division (A)(1),      1115
(A)(2)(b), (B)(2), (C)(2), or (D) of section 1901.121 of the          1116
Revised Code is entitled pursuant to division (B)(3) of section       1117
1901.122 of the Revised Code.                                         1118

(B) ~~The treasurer of a~~ A county that, pursuant to division   1119
(A)(1) or (3) of this section, is required to pay the per diem        1120
compensation to which an acting judge or assigned judge is            1121
entitled, shall submit to the administrative director of the          1122
supreme court quarterly requests for reimbursements of the state      1123
portion of the per diem amounts so paid. The requests shall           1124
include verifications of the payment of those amounts and an          1125

affidavit from the acting judge or assigned judge stating the          1126
days and hours worked. The administrative director shall cause          1127
reimbursements of the state portion of the per diem amounts paid       1128
to be issued to the county if the administrative director              1129
verifies that those amounts were, in fact, so paid. <u>If the</u>         1130
<u>county fails to submit a request within one year after the per</u>     1131
<u>diem compensation was paid, the administrative director shall</u>      1132
<u>refuse to cause reimbursement to be issued.</u>                        1133

      (C) If the supreme court, pursuant to division (A)(4) of          1134
this section, is required to pay the per diem compensation to          1135
which an assigned judge is entitled, annually, on the first day        1136
of August, the administrative director of the supreme court           1137
shall issue a billing to the county treasurer of any county to        1138
which such a judge was assigned to a municipal court for              1139
reimbursement of the county or local portion of the per diem          1140
compensation previously paid by the supreme court for the            1141
twelve-month period preceding the last day of June. The county        1142
or local portion of the per diem compensation shall be that part      1143
of each per diem paid by the state which is proportional to the       1144
county or local shares of the total compensation of a resident        1145
judge of such court. The county treasurer shall forward the          1146
payment within thirty days. After forwarding the payment, the         1147
county treasurer shall seek reimbursement from the applicable         1148
local municipalities as appropriate.                                  1149

      **Sec. 1901.261.** (A)(1) A municipal court may determine that    1150
for the efficient operation of the court additional funds are         1151
required to computerize the court, to make available               1152
computerized legal research services, or to do both. Upon making      1153
a determination that additional funds are required for either or      1154
both of those purposes, the court shall include in its schedule       1155
of fees and costs under section 1901.26 of the Revised Code one       1156

additional fee not to exceed three dollars on the filing of each 1157
cause of action or appeal equivalent to one described in 1158
division (A), (Q), or (U) of section 2303.20 of the Revised Code 1159
and shall direct the clerk of the court to charge the fee. 1160

(2) All fees collected under this section shall be paid on 1161
or before the twentieth day of the month following the month in 1162
which they are collected to the county treasurer if the court is 1163
a county-operated municipal court or to the city treasurer if 1164
the court is not a county-operated municipal court. The 1165
treasurer shall place the funds from the fees in a separate fund 1166
to be disbursed upon an order of the court, subject to an 1167
appropriation by the board of county commissioners if the court 1168
is a county-operated municipal court or by the legislative 1169
authority of the municipal corporation if the court is not a 1170
county-operated municipal court, or upon an order of the court, 1171
subject to the court making an annual report available to the 1172
public listing the use of all such funds, in an amount not 1173
greater than the actual cost to the court of computerizing the 1174
court, procuring and maintaining computerized legal research 1175
services, or both. 1176

(3) If the court determines that the funds in the fund 1177
described in division (A)(2) of this section are more than 1178
sufficient to satisfy the purpose for which the additional fee 1179
described in division (A)(1) of this section was imposed, the 1180
court may declare a surplus in the fund and, subject to an 1181
appropriation by the board of county commissioners if the court 1182
is a county-operated municipal court or by the legislative 1183
authority of the municipal corporation if the court is not a 1184
county-operated municipal court, expend those surplus funds, or 1185
upon an order of the court, subject to the court making an 1186
annual report available to the public listing the use of all 1187

**Am. Sub. H. B. No. 305**                                                           **Page 43**
**As Passed by the Senate**

such funds, expend those surplus funds, for other appropriate                    1188
technological expenses of the court.                                             1189

~~(B)(1) A~~(B)(1)(a) Except as provided in division (B)(1)(b)                    1190
of this section, the clerk of a municipal court may determine                    1191
that, for the efficient operation of the office of the clerk of                  1192
the municipal court, additional funds are required to                            1193
computerize the office of the clerk of the court and, upon that                  1194
determination, may ~~include in its schedule of fees and costs~~                 1195
~~under section 1901.26 of the Revised Code an additional~~                      1196
authorize and direct that a computerization fee not to exceed                    1197
~~ten~~ twenty dollars be charged on the filing of each cause of                 1198
action or appeal, on the filing, docketing, and endorsing of                     1199
each certificate of judgment, or on the docketing and indexing                   1200
of each aid in execution or petition to vacate, revive, or                       1201
modify a judgment that is equivalent to one described in                         1202
division (A), (P), (Q), (T), or (U) of section 2303.20 of the                    1203
Revised Code.                                                                    1204

    (b) In a county in which the clerk of the municipal court                     1205
is appointed, the municipal court may make the determination                     1206
described in division (B)(1)(a) of this section and, upon that                   1207
determination, may include such a computerization fee in its                     1208
schedule of fees and costs under section 1901.26 of the Revised                  1209
Code.                                                                            1210

    (2) Subject to division ~~(B)(2)~~(B)(3) of this section, all                 1211
moneys collected under division ~~(B)(1)~~(B)(1)(a) of this section              1212
shall be paid on or before the twentieth day of the month                       1213
following the month in which they are collected to the county                    1214
treasurer if the court is a county-operated municipal court or                   1215
to the city treasurer if the court is not a county-operated                      1216
municipal court. The treasurer shall place the funds from the                    1217

fees in a separate fund to be disbursed, ~~upon an order of the~~ 1218
~~municipal court and~~ subject to an appropriation made by the 1219
board of county commissioners if the court is a county-operated 1220
municipal court or by the legislative authority of the municipal 1221
corporation if the court is not a county-operated municipal 1222
court, in an amount no greater than the actual cost to the court 1223
of procuring and maintaining computer systems for the office of 1224
the clerk of the municipal court. 1225

    ~~(2)~~ (3) If a municipal court or the clerk of a municipal 1226
court makes the determination described in division ~~(B)(1)~~ (B)(1) 1227
(a) of this section, the board of county commissioners of the 1228
county if the court is a county-operated municipal court or the 1229
legislative authority of the municipal corporation if the court 1230
is not a county-operated municipal court, may issue one or more 1231
general obligation bonds for the purpose of procuring and 1232
maintaining the computer systems for the office of the clerk of 1233
the municipal court. In addition to the purposes stated in 1234
division ~~(B)(1)~~ (B)(1)(a) of this section for which the moneys 1235
collected under that division may be expended, the moneys 1236
additionally may be expended to pay debt charges and financing 1237
costs related to any general obligation bonds issued pursuant to 1238
division ~~(B)(2)~~ (B)(3) of this section as they become due. 1239
General obligation bonds issued pursuant to division ~~(B)(2)~~ (B) 1240
(3) of this section are Chapter 133. securities. 1241

    **Sec. 1901.313.** (A) Beginning not later than two hundred 1242
seventy days after the effective date of this section, pleadings 1243
or documents may be filed with the clerk of court either in 1244
paper format or in electronic format. 1245

    (B)(1) The clerk shall determine whether the filing of 1246
pleadings or documents in electronic format may be accomplished 1247

either by electronic mail or through the use of an online                    1248

platform.                                                                    1249

(2) The fee for filing pleadings or documents in                        1250

electronic format may be paid after the filing. The clerk shall              1251

not require that any fee for the filing of pleadings or                      1252

documents in electronic format be paid before the filing, unless             1253

the clerk has provided for an electronic payment system for such             1254

filing.                                                                      1255

(3) The clerk shall not require a fee for the filing of                  1256

pleadings or documents in electronic format that is greater than             1257

the applicable fee for the filing of pleadings or documents in               1258

paper format.                                                                1259

(C) Pleadings and documents filed in paper format may be                1260

converted to an electronic format. Documents created by the                  1261

clerk of court in the exercise of the clerk's duties may be                  1262

created in an electronic format.                                             1263

(D) When pleadings or documents are received or created                 1264

in, or converted to, an electronic format as provided in this                1265

section, the pleadings or documents in that format shall be                  1266

considered the official version of the record.                               1267

Sec. 1907.11. (A) Each county court district shall have                  1268

the following county court judges, to be elected as follows:                 1269

In the Adams county county court, one part-time judge                    1270

shall be elected in 1982.                                                    1271

In Until December 31, 2030, in the Ashtabula county county               1272

court, one part-time judge shall be elected in 1980, and one                 1273

part-time judge shall be elected in 1982. Notwithstanding any                1274

contrary provision of division (C) of section 1907.13 of the                 1275

Revised Code, the part-time judge to be elected in 2028 shall be             1276

elected for a term of two years commencing on January 1, 2029, | 1277
and ending on December 31, 2030. The Ashtabula county county | 1278
court part-time judgeships cease to exist on January 1, 2031. | 1279
One full-time judge shall be elected in 2030, for a six-year | 1280
term to commence on January 1, 2031. Effective January 1, 2031, | 1281
notwithstanding division (A)(6) of section 141.04 of the Revised | 1282
Code and division (A) of section 1907.16 of the Revised Code, | 1283
the full-time judge of the Ashtabula county county court under | 1284
this section shall receive the compensation set forth in | 1285
division (A)(5) of section 141.04 of the Revised Code. | 1286

In the Belmont county county court, one part-time judge | 1287
shall be elected in 1992, term to commence on January 1, 1993, | 1288
and two part-time judges shall be elected in 1994, terms to | 1289
commence on January 1, 1995, and January 2, 1995, respectively. | 1290

In the Butler county county court, one part-time judge | 1291
shall be elected in 1992, term to commence on January 1, 1993, | 1292
and two part-time judges shall be elected in 1994, terms to | 1293
commence on January 1, 1995, and January 2, 1995, respectively. | 1294

Until December 31, 2007, in the Erie county county court, | 1295
one part-time judge shall be elected in 1982. Effective January | 1296
1, 2008, the Erie county county court shall cease to exist. | 1297

In the Harrison county county court, one part-time judge | 1298
shall be elected in 1982. | 1299

In the Highland county county court, one part-time judge | 1300
shall be elected in 1982. | 1301

In the Jefferson county county court, one part-time judge | 1302
shall be elected in 1992, term to commence on January 1, 1993, | 1303
and two part-time judges shall be elected in 1994, terms to | 1304
commence on January 1, 1995, and January 2, 1995, respectively. | 1305

In the Mahoning county county court, one part-time judge shall be elected in 1992, term to commence on January 1, 1993, and three part-time judges shall be elected in 1994, terms to commence on January 1, 1995, January 2, 1995, and January 3, 1995, respectively. 1306 1307 1308 1309 1310

In the Meigs county county court, one part-time judge shall be elected in 1982. 1311 1312

In the Monroe county county court, one part-time judge shall be elected in 1982. 1313 1314

In the Morgan county county court, one part-time judge shall be elected in 1982. 1315 1316

In the Muskingum county county court, one part-time judge shall be elected in 1980, and one part-time judge shall be elected in 1982. 1317 1318 1319

In the Noble county county court, one part-time judge shall be elected in 1982. 1320 1321

In the Pike county county court, one part-time judge shall be elected in 1982. 1322 1323

In the Sandusky county county court, one full-time judge shall be elected in 2024, term to commence on January 2, 2025. Effective January 2, 2025, notwithstanding division (A)(6) of section 141.04 of the Revised Code and division (A) of section 1907.16 of the Revised Code, the full-time judge of the Sandusky county county court under this section shall receive the compensation set forth in division (A)(5) of section 141.04 of the Revised Code. 1324 1325 1326 1327 1328 1329 1330 1331

In the Trumbull county county court, one part-time judge shall be elected in 1992, and one part-time judge shall be 1332 1333

elected in 1994. 

In the Tuscarawas county county court, one part-time judge shall be elected in 1982. 

In the Vinton county county court, one part-time judge shall be elected in 1982. 

In the Warren county county court, one part-time judge shall be elected in 1980, and one part-time judge shall be elected in 1982. 

(B)(1) Additional judges shall be elected at the next regular election for a county court judge as provided in section 1907.13 of the Revised Code. 

(2) Vacancies caused by the death or the resignation from, forfeiture of, or removal from office of a judge shall be filled in accordance with section 107.08 of the Revised Code, except as provided in section 1907.15 of the Revised Code. 

**Sec. 1907.143.** (A)(1) Subject to reimbursement under division (B) of this section, the treasurer of the county in which a county court is located shall pay the per diem compensation to which an acting judge appointed pursuant to division (A)(2)(a), (B)(1), or (C)(1) of section 1907.141 of the Revised Code is entitled pursuant to division (A) of section 1907.142 of the Revised Code. 

(2) The treasurer of the county in which a county court is located shall pay the per diem compensation to which an assigned judge assigned pursuant to division (A)(1), (A)(2)(b), (B)(2), or (C)(2) of section 1907.141 of the Revised Code is entitled pursuant to division (B)(1) or (4) of section 1907.142 of the Revised Code. 

1334
1335
1336
1337
1338
1339
1340
1341
1342
1343
1344
1345
1346
1347
1348
1349
1350
1351
1352
1353
1354
1355
1356
1357
1358
1359
1360
1361

(3) Subject to reimbursement under division (B) of this       1362
section, the treasurer of the county in which a county court is   1363
located shall pay the per diem compensation to which an assigned  1364
judge assigned pursuant to division (A)(1), (A)(2)(b), (B)(2),   1365
or (C)(2) of section 1907.141 of the Revised Code is entitled    1366
pursuant to division (B)(2) of section 1907.142 of the Revised   1367
Code.                                                            1368

(4) Subject to reimbursement under division (C) of this       1369
section, the supreme court shall pay the per diem compensation   1370
to which an assigned judge assigned pursuant to division (A)(1),  1371
(A)(2)(b), (B)(2), or (C)(2) of section 1907.141 of the Revised  1372
Code is entitled pursuant to division (B)(3) of section 1907.142  1373
of the Revised Code.                                             1374

(B) ~~The treasurer of a~~ A county that, pursuant to division   1375
(A)(1) or (3) of this section, is required to pay the per diem   1376
compensation to which an acting judge or assigned judge is       1377
entitled, shall submit to the administrative director of the    1378
supreme court quarterly requests for reimbursements of the state  1379
portion of the per diem amounts so paid. The requests shall      1380
include verifications of the payment of those amounts and an     1381
affidavit from the acting judge or assigned judge stating the    1382
days and hours worked. The administrative director shall cause   1383
reimbursements of the state portion of the per diem amounts paid  1384
to be issued to the county if the administrative director        1385
verifies that those amounts were, in fact, so paid. <u>If the</u>    1386
<u>county fails to submit a request within one year after the per</u>   1387
<u>diem compensation was paid, the administrative director shall</u>    1388
<u>refuse to cause reimbursement to be issued.</u>                   1389

(C) If the supreme court, pursuant to division (A)(4) of     1390
this section, is required to pay the per diem compensation to    1391

**Am. Sub. H. B. No. 305**                                                        **Page 50**
**As Passed by the Senate**

| | |
|---|---|
| which an assigned judge is entitled, annually, on the first day | 1392 |
| of August, the administrative director of the supreme court | 1393 |
| shall issue a billing to the county treasurer of any county to | 1394 |
| which such a judge was assigned to a county court for | 1395 |
| reimbursement of the county portion of the per diem compensation | 1396 |
| previously paid by the supreme court for the twelve-month period | 1397 |
| preceding the last day of June. The county portion of the per | 1398 |
| diem compensation shall be that part of each per diem paid by | 1399 |
| the state which is proportional to the county shares of the | 1400 |
| total compensation of a resident judge of such court. The county | 1401 |
| treasurer shall forward the payment within thirty days. After | 1402 |
| forwarding the payment, the county treasurer shall seek | 1403 |
| reimbursement from the applicable local municipalities as | 1404 |
| appropriate. | 1405 |
| **Sec. 1907.202.** (A) Beginning not later than two hundred | 1406 |
| seventy days after the effective date of this section, pleadings | 1407 |
| or documents may be filed with the clerk of the county court | 1408 |
| either in paper format or in electronic format. | 1409 |
| (B)(1) The clerk shall determine whether the filing of | 1410 |
| pleadings or documents in electronic format may be accomplished | 1411 |
| either by electronic mail or through the use of an online | 1412 |
| platform. | 1413 |
| (2) The fee for filing pleadings or documents in | 1414 |
| electronic format may be paid after the filing. The clerk shall | 1415 |
| not require that any fee for the filing of pleadings or | 1416 |
| documents in electronic format be paid before the filing, unless | 1417 |
| the clerk has provided for an electronic payment system for such | 1418 |
| filing. | 1419 |
| (3) The clerk shall not require a fee for the filing of | 1420 |
| pleadings or documents in electronic format that is greater than | 1421 |

the applicable fee for the filing of pleadings or documents in      1422
paper format.                                                       1423

(C) Pleadings and documents filed in paper format may be        1424
converted to an electronic format. Documents created by the         1425
clerk of the county court in the exercise of the clerk's duties     1426
may be created in an electronic format.                             1427

(D) When pleadings or documents are received or created         1428
in, or converted to, an electronic format as provided in this       1429
section, the pleadings or documents in that format shall be         1430
considered the official version of the record.                      1431

Sec. 1907.261. (A)(1) A county court may determine that         1432
for the efficient operation of the court additional funds are       1433
required to computerize the court, to make available                1434
computerized legal research services, or to do both. Upon making    1435
a determination that additional funds are required for either or    1436
both of those purposes, the court shall include in its schedule     1437
of fees and costs under section 1907.24 of the Revised Code one     1438
additional fee not to exceed three dollars on the filing of each    1439
cause of action or appeal equivalent to one described in            1440
division (A), (Q), or (U) of section 2303.20 of the Revised Code    1441
and shall direct the clerk of the court to charge the fee.          1442

(2) All fees collected under this section shall be paid on      1443
or before the twentieth day of the month following the month in     1444
which they are collected to the county treasurer. The treasurer     1445
shall place the funds from the fees in a separate fund to be        1446
disbursed either upon an order of the court, subject to an          1447
appropriation by the board of county commissioners, or upon an      1448
order of the court, subject to the court making an annual report    1449
available to the public listing the use of all such funds, in an    1450
amount not greater than the actual cost to the court of             1451

**Am. Sub. H. B. No. 305**                                              **Page 52**
**As Passed by the Senate**

computerizing the court, procuring and maintaining computerized        1452
legal research services, or both.                                      1453

(3) If the court determines that the funds in the fund                 1454
described in division (A)(2) of this section are more than             1455
sufficient to satisfy the purpose for which the additional fee         1456
described in division (A)(1) of this section was imposed, the          1457
court may declare a surplus in the fund and, subject to an             1458
appropriation by the board of county commissioners, expend those       1459
surplus funds, or upon an order of the court, subject to the           1460
court making an annual report available to the public listing          1461
the use of all such funds, expend those surplus funds, for other       1462
appropriate technological expenses of the court.                       1463

~~(B)(1) A~~(B)(1)(a) Except as provided in division (B)(1)(b)         1464
of this section, the clerk of a county court may determine that,       1465
for the efficient operation of the office of the clerk of the          1466
court, additional funds are required to computerize the office         1467
of the clerk of the court and, upon that determination, may            1468
~~include in its schedule of fees and costs under section 1907.24~~    1469
~~of the Revised Code an additional~~authorize and direct that a       1470
computerization fee not to exceed ~~ten~~twenty dollars be charged     1471
on the filing of each cause of action or appeal, on the filing,        1472
docketing, and endorsing of each certificate of judgment, or on        1473
the docketing and indexing of each aid in execution or petition        1474
to vacate, revive, or modify a judgment that is equivalent to          1475
one described in division (A), (P), (Q), (T), or (U) of section        1476
2303.20 of the Revised Code.                                           1477

(b) In a county in which the clerk of the county court is              1478
appointed, the county court may make the determination described       1479
in division (B)(1)(a) of this section and, upon that                   1480
determination, may include such a computerization fee in its           1481

schedule of fees and costs under section 1907.24 of the Revised     1482
Code.                                                                1483

        (2) Subject to division (B)(2)(B)(3) of this section, all    1484
moneys collected under division (B)(1)(B)(1)(a) of this section      1485
shall be paid on or before the twentieth day of the month           1486
following the month in which they are collected to the county        1487
treasurer. The treasurer shall place the funds from the fees in      1488
a separate fund to be disbursed, upon an order of the county         1489
court and subject to an appropriation made by the board of          1490
county commissioners, in an amount no greater than the actual        1491
cost to the court of procuring and maintaining computer systems      1492
for the office of the clerk of the county court.                     1493

        (2)(3) If a county court or the clerk of a county court      1494
makes the determination described in division (B)(1)(B)(1)(a) of    1495
this section, the board of county commissioners of that county       1496
may issue one or more general obligation bonds for the purpose       1497
of procuring and maintaining the computer systems for the office    1498
of the clerk of the county court. In addition to the purposes       1499
stated in division (B)(1)(B)(1)(a) of this section for which the    1500
moneys collected under that division may be expended, the moneys     1501
additionally may be expended to pay debt charges and financing       1502
costs related to any general obligation bonds issued pursuant to     1503
division (B)(2)(B)(3) of this section as they become due.           1504
General obligation bonds issued pursuant to division (B)(2)(B)       1505
(3) of this section are Chapter 133. securities.                    1506

        Sec. 2303.081. (A) Pleadings or documents may be filed       1507
with the clerk of court either in paper format or in electronic      1508
format.                                                              1509

        (B)(1) The clerk shall determine whether the filing of       1510
pleadings or documents in electronic format may be accomplished      1511

**Am. Sub. H. B. No. 305**                                    **Page 54**
**As Passed by the Senate**

| | |
|---|---|
| either by electronic mail or through the use of an online | 1512 |
| platform. | 1513 |
| (2) The fee for filing pleadings or documents in | 1514 |
| electronic format may be paid after the filing. The clerk shall | 1515 |
| not require that any fee for the filing of pleadings or | 1516 |
| documents in electronic format be paid before the filing, unless | 1517 |
| the clerk has provided for an electronic payment system for such | 1518 |
| filing. | 1519 |
| (3) The clerk shall not require a fee for the filing of | 1520 |
| pleadings or documents in electronic format that is greater than | 1521 |
| the applicable fee for the filing of pleadings or documents in | 1522 |
| paper format. | 1523 |
| (4) Divisions (B)(1), (2), and (3) of this section do not | 1524 |
| apply to the filing of pleadings or documents in a probate court | 1525 |
| or juvenile court. | 1526 |
| (C) Pleadings and documents filed in paper format may be | 1527 |
| converted to an electronic format. Documents created by the | 1528 |
| clerk of court in the exercise of the clerk's duties may be | 1529 |
| created in an electronic format. | 1530 |
| (B) (D) When pleadings or documents are received or | 1531 |
| created in, or converted to, an electronic format as provided in | 1532 |
| division (A) of this section, the pleadings or documents in that | 1533 |
| format shall be considered the official version of the record. | 1534 |
| **Sec. 2303.201.** (A)(1) The court of common pleas of any | 1535 |
| county may determine that for the efficient operation of the | 1536 |
| court additional funds are required to computerize the court, to | 1537 |
| make available computerized legal research services, or to do | 1538 |
| both. Upon making a determination that additional funds are | 1539 |
| required for either or both of those purposes, the court shall | 1540 |

**Am. Sub. H. B. No. 305**                                                **Page 55**
**As Passed by the Senate**

authorize and direct the clerk of the court of common pleas to          1541
charge one additional fee, not to exceed six dollars, on the            1542
filing of each cause of action or appeal under divisions (A),           1543
(Q), and (U) of section 2303.20 of the Revised Code.                    1544

    (2) All fees collected under division (A)(1) of this           1545
section shall be paid to the county treasurer. The treasurer            1546
shall place the funds from the fees in a separate fund to be            1547
disbursed either upon an order of the court, subject to an              1548
appropriation by the board of county commissioners, or upon an          1549
order of the court, subject to the court making an annual report        1550
available to the public listing the use of all such funds, in an        1551
amount not greater than the actual cost to the court of                 1552
procuring and maintaining computerization of the court,                 1553
computerized legal research services, or both.                          1554

    (3) If the court determines that the funds in the fund          1555
described in division (A)(2) of this section are more than              1556
sufficient to satisfy the purpose for which the additional fee         1557
described in division (A)(1) of this section was imposed, the           1558
court may declare a surplus in the fund and, subject to an              1559
appropriation by the board of county commissioners, expend those       1560
surplus funds, or upon an order of the court, subject to the           1561
court making an annual report available to the public listing          1562
the use of all such funds, expend those surplus funds, for other       1563
appropriate technological expenses of the court.                        1564

    ~~(B)(1) The~~(B)(1)(a) Except as provided in division (B)(1)     1565
(b) of this section, the clerk of the court of common pleas of         1566
any county may determine that, for the efficient operation of          1567
the office of the clerk of the court of common pleas, additional       1568
funds are required to make technological advances in or to             1569
computerize the office of the clerk of the court of common pleas       1570

and, upon that determination, authorize and direct ~~the clerk of~~                    1571
~~the court of common pleas to charge~~ that an additional fee, not                     1572
to exceed twenty dollars, on the filing of each cause of action                        1573
or appeal, on the filing, docketing, and endorsing of each                             1574
certificate of judgment, or on the docketing and indexing of                           1575
each aid in execution or petition to vacate, revive, or modify a                       1576
judgment under divisions (A), (P), (Q), (T), and (U) of section                        1577
2303.20 of the Revised Code and not to exceed one dollar each                          1578
for the services described in divisions (B), (C), (D), (F), (H),                       1579
and (L) of section 2303.20 of the Revised Code, be charged.                            1580

    (b) In a county in which the clerk of the court of common      1581
pleas is appointed, the court may make the determination                               1582
described in division (B)(1)(a) of this section and, upon that                         1583
determination, may include such a computerization fee in its                           1584
schedule of fees and costs.                                                            1585

    (2) Subject to division ~~(B)(2)~~(B)(3) of this section, all   1586
moneys collected under division ~~(B)(1)~~(B)(1)(a) of this section                    1587
shall be paid to the county treasurer to be disbursed, ~~upon an~~                     1588
~~order of the court of common pleas and~~ subject to an                               1589
appropriation made by the board of county commissioners, in an                         1590
amount no greater than the actual cost to the court of procuring                       1591
and maintaining technology and computer systems for the office                         1592
of the clerk of the court of common pleas.                                             1593

    ~~(2)~~(3) If the court of common pleas or the clerk of the     1594
court of common pleas of a county makes the determination                              1595
described in division ~~(B)(1)~~(B)(1)(a) of this section, the board                   1596
of county commissioners of that county may issue one or more                           1597
general obligation bonds for the purpose of procuring and                              1598
maintaining the technology and computer systems for the office                         1599
of the clerk of the court of common pleas. In addition to the                          1600

purposes stated in division ~~(B)(1)~~(B)(1)(a) of this section for          1601
which the moneys collected under that division may be expended,             1602
the moneys additionally may be expended to pay debt charges on              1603
and financing costs related to any general obligation bonds                 1604
issued pursuant to division ~~(B)(2)~~(B)(3) of this section as they        1605
become due. General obligation bonds issued pursuant to division            1606
~~(B)(2)~~(B)(3) of this section are Chapter 133. securities.               1607

    (C) The court of common pleas shall collect the sum of          1608
twenty-six dollars as additional filing fees in each new civil             1609
action or proceeding for the charitable public purpose of                  1610
providing financial assistance to legal aid societies that                 1611
operate within the state and to support the office of the state            1612
public defender. This division does not apply to a juvenile                1613
division of a court of common pleas, except that an additional             1614
filing fee of fifteen dollars shall apply to custody,                      1615
visitation, and parentage actions; to a probate division of a             1616
court of common pleas, except that the additional filing fees             1617
shall apply to name change, guardianship, adoption, and                    1618
decedents' estate proceedings; or to an execution on a judgment,          1619
proceeding in aid of execution, or other post-judgment                     1620
proceeding arising out of a civil action. The filing fees                  1621
required to be collected under this division shall be in                    1622
addition to any other filing fees imposed in the action or                 1623
proceeding and shall be collected at the time of the filing of            1624
the action or proceeding. The court shall not waive the payment            1625
of the additional filing fees in a new civil action or                     1626
proceeding unless the court waives the advanced payment of all             1627
filing fees in the action or proceeding. All such moneys                    1628
collected during a month except for an amount equal to up to one           1629
per cent of those moneys retained to cover administrative costs            1630
shall be transmitted on or before the twentieth day of the                 1631

following month by the clerk of the court to the treasurer of 1632
state in a manner prescribed by the treasurer of state or by the 1633
Ohio access to justice foundation. The treasurer of state shall 1634
deposit four per cent of the funds collected under this division 1635
to the credit of the civil case filing fee fund established 1636
under section 120.07 of the Revised Code and ninety-six per cent 1637
of the funds collected under this division to the credit of the 1638
legal aid fund established under section 120.52 of the Revised 1639
Code. 1640

The court may retain up to one per cent of the moneys it 1641
collects under this division to cover administrative costs, 1642
including the hiring of any additional personnel necessary to 1643
implement this division. If the court fails to transmit to the 1644
treasurer of state the moneys the court collects under this 1645
division in a manner prescribed by the treasurer of state or by 1646
the Ohio access to justice foundation, the court shall forfeit 1647
the moneys the court retains under this division to cover 1648
administrative costs, including the hiring of any additional 1649
personnel necessary to implement this division, and shall 1650
transmit to the treasurer of state all moneys collected under 1651
this division, including the forfeited amount retained for 1652
administrative costs, for deposit in the legal aid fund. 1653

(D) On and after the thirtieth day after December 9, 1994, 1654
the court of common pleas shall collect the sum of thirty-two 1655
dollars as additional filing fees in each new action or 1656
proceeding for annulment, divorce, or dissolution of marriage 1657
for the purpose of funding shelters for victims of domestic 1658
violence pursuant to sections 3113.35 to 3113.39 of the Revised 1659
Code. The filing fees required to be collected under this 1660
division shall be in addition to any other filing fees imposed 1661
in the action or proceeding and shall be collected at the time 1662

of the filing of the action or proceeding. The court shall not 1663
waive the payment of the additional filing fees in a new action 1664
or proceeding for annulment, divorce, or dissolution of marriage 1665
unless the court waives the advanced payment of all filing fees 1666
in the action or proceeding. On or before the twentieth day of 1667
each month, all moneys collected during the immediately 1668
preceding month pursuant to this division shall be deposited by 1669
the clerk of the court into the county treasury in the special 1670
fund used for deposit of additional marriage license fees as 1671
described in section 3113.34 of the Revised Code. Upon their 1672
deposit into the fund, the moneys shall be retained in the fund 1673
and expended only as described in section 3113.34 of the Revised 1674
Code. 1675

(E)(1) The court of common pleas may determine that, for 1676
the efficient operation of the court, additional funds are 1677
necessary to acquire and pay for special projects of the court, 1678
including, but not limited to, the acquisition of additional 1679
facilities or the rehabilitation of existing facilities, the 1680
acquisition of equipment, the hiring and training of staff, 1681
community service programs, mediation or dispute resolution 1682
services, the employment of magistrates, the training and 1683
education of judges, acting judges, and magistrates, and other 1684
related services. Upon that determination, the court by rule may 1685
charge a fee, in addition to all other court costs, on the 1686
filing of each criminal cause, civil action or proceeding, or 1687
judgment by confession. 1688

If the court of common pleas offers or requires a special 1689
program or additional services in cases of a specific type, the 1690
court by rule may assess an additional charge in a case of that 1691
type, over and above court costs, to cover the special program 1692
or service. The court shall adjust the special assessment 1693

periodically, but not retroactively, so that the amount assessed in those cases does not exceed the actual cost of providing the service or program. 1694 1695 1696

All moneys collected under division (E) of this section shall be paid to the county treasurer for deposit into either a general special projects fund or a fund established for a specific special project. Moneys from a fund of that nature shall be disbursed upon an order of the court, subject to an appropriation by the board of county commissioners, in an amount no greater than the actual cost to the court of a project. If a specific fund is terminated because of the discontinuance of a program or service established under division (E) of this section, the court may order, subject to an appropriation by the board of county commissioners, that moneys remaining in the fund be transferred to an account established under this division for a similar purpose. 1697 1698 1699 1700 1701 1702 1703 1704 1705 1706 1707 1708 1709

(2) As used in division (E) of this section: 1710

(a) "Criminal cause" means a charge alleging the violation of a statute or ordinance, or subsection of a statute or ordinance, that requires a separate finding of fact or a separate plea before disposition and of which the defendant may be found guilty, whether filed as part of a multiple charge on a single summons, citation, or complaint or as a separate charge on a single summons, citation, or complaint. "Criminal cause" does not include separate violations of the same statute or ordinance, or subsection of the same statute or ordinance, unless each charge is filed on a separate summons, citation, or complaint. 1711 1712 1713 1714 1715 1716 1717 1718 1719 1720 1721

(b) "Civil action or proceeding" means any civil litigation that must be determined by judgment entry. 1722 1723

**Sec. 2505.02.** (A) As used in this section: 1724

(1) "Substantial right" means a right that the United 1725
States Constitution, the Ohio Constitution, a statute, the 1726
common law, or a rule of procedure entitles a person to enforce 1727
or protect. 1728

(2) "Special proceeding" means an action or proceeding 1729
that is specially created by statute and that prior to 1853 was 1730
not denoted as an action at law or a suit in equity. 1731

(3) "Provisional remedy" means a proceeding ancillary to 1732
an action, including, but not limited to, a proceeding for a 1733
preliminary injunction, attachment, discovery of privileged 1734
matter, suppression of evidence, a prima-facie showing pursuant 1735
to section 2307.85 or 2307.86 of the Revised Code, a prima-facie 1736
showing pursuant to section 2307.92 of the Revised Code, or a 1737
finding made pursuant to division (A)(3) of section 2307.93 of 1738
the Revised Code. 1739

(B) An order is a final order that may be reviewed, 1740
affirmed, modified, or reversed, with or without retrial, when 1741
it is one of the following: 1742

(1) An order that affects a substantial right in an action 1743
that in effect determines the action and prevents a judgment; 1744

(2) An order that affects a substantial right made in a 1745
special proceeding or upon a summary application in an action 1746
after judgment; 1747

(3) An order that vacates or sets aside a judgment or 1748
grants a new trial; 1749

(4) An order that grants or denies a provisional remedy 1750
and to which both of the following apply: 1751

(a) The order in effect determines the action with respect    1752
to the provisional remedy and prevents a judgment in the action    1753
in favor of the appealing party with respect to the provisional    1754
remedy.    1755

(b) The appealing party would not be afforded a meaningful    1756
or effective remedy by an appeal following final judgment as to    1757
all proceedings, issues, claims, and parties in the action.    1758

(5) An order that determines that an action may or may not    1759
be maintained as a class action;    1760

(6) An order determining the constitutionality of any    1761
changes to the Revised Code made by Am. Sub. S.B. 281 of the    1762
124th general assembly, including the amendment of sections    1763
1751.67, 2117.06, 2305.11, 2305.15, 2305.234, 2317.02, 2317.54,    1764
2323.56, 2711.21, 2711.22, 2711.23, 2711.24, 2743.02, 2743.43,    1765
2919.16, 3923.63, 3923.64, 4705.15, and 5111.018 (renumbered as    1766
5164.07 by H.B. 59 of the 130th general assembly), and the    1767
enactment of sections 2305.113, 2323.41, 2323.43, and 2323.55 of    1768
the Revised Code or any changes made by Sub. S.B. 80 of the    1769
125th general assembly, including the amendment of sections    1770
2125.02, 2305.10, 2305.131, 2315.18, 2315.19, and 2315.21 of the    1771
Revised Code;    1772

(7) An order in an appropriation proceeding that may be    1773
appealed pursuant to division (B)(3) of section 163.09 of the    1774
Revised Code;    1775

(8) An order restraining or restricting enforcement, in    1776
whole or in part, facially or as applied, of any state statute    1777
or regulation, including, but not limited, to orders in the form    1778
of injunctions, declaratory judgments, or writs.    1779

(C) When a court issues an order that vacates or sets    1780

aside a judgment or grants a new trial, the court, upon the 1781
request of either party, shall state in the order the grounds 1782
upon which the new trial is granted or the judgment vacated or 1783
set aside. 1784

(D) This section applies to and governs any action, 1785
including an appeal, that is pending in any court on July 22, 1786
1998, and all claims filed or actions commenced on or after July 1787
22, 1998, notwithstanding any provision of any prior statute or 1788
rule of law of this state. 1789

**Sec. 2929.20.** (A) As used in this section: 1790

(1)(a) Except as provided in division (A)(1)(b) of this 1791
section, "eligible offender" means any person who, on or after 1792
April 7, 2009, is serving a stated prison term that includes one 1793
or more nonmandatory prison terms. A person may be an eligible 1794
offender and also may be an eighty per cent-qualifying offender 1795
or, during a declared state of emergency, a state of emergency- 1796
qualifying offender. 1797

(b) "Eligible offender" does not include any person who, 1798
on or after April 7, 2009, is serving a stated prison term for 1799
any of the following criminal offenses that was a felony and was 1800
committed while the person held a public office in this state: 1801

(i) A violation of section 2921.02, 2921.03, 2921.05, 1802
2921.31, 2921.32, 2921.41, 2921.42, or 2923.32 of the Revised 1803
Code; 1804

(ii) A violation of section 2913.42, 2921.04, 2921.11, or 1805
2921.12 of the Revised Code, when the conduct constituting the 1806
violation was related to the duties of the offender's public 1807
office or to the offender's actions as a public official holding 1808
that public office; 1809

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 217 of 879 PAGEID #: 352

(iii) A violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially equivalent to any violation listed in division (A)(1)(b)(i) of this section; | 1810
1811
1812
1813

(iv) A violation of an existing or former municipal ordinance or law of this or any other state or the United States that is substantially equivalent to any violation listed in division (A)(1)(b)(ii) of this section, when the conduct constituting the violation was related to the duties of the offender's public office or to the offender's actions as a public official holding that public office; | 1814
1815
1816
1817
1818
1819
1820

(v) A conspiracy to commit, attempt to commit, or complicity in committing any offense listed in division (A)(1)(b)(i) or described in division (A)(1)(b)(iii) of this section; | 1821
1822
1823

(vi) A conspiracy to commit, attempt to commit, or complicity in committing any offense listed in division (A)(1)(b)(ii) or described in division (A)(1)(b)(iv) of this section, if the conduct constituting the offense that was the subject of the conspiracy, that would have constituted the offense attempted, or constituting the offense in which the offender was complicit was or would have been related to the duties of the offender's public office or to the offender's actions as a public official holding that public office. | 1824
1825
1826
1827
1828
1829
1830
1831
1832

(2) "State of emergency-qualifying offender" means any inmate to whom all of the following apply: | 1833
1834

(a) The inmate is serving a stated prison term during a state of emergency that is declared by the governor as a direct response to a pandemic or public health emergency. | 1835
1836
1837

(b) The geographical area covered by the declared state of | 1838

**Am. Sub. H. B. No. 305**                                              **Page 65**
**As Passed by the Senate**

emergency includes the location at which the inmate is serving        1839
the stated prison term described in division (A)(2)(a) of this        1840
section.                                                              1841

(c) There is a direct nexus between the emergency that is             1842
the basis of the governor's declaration of the state of              1843
emergency and the circumstances of, and need for release of, the      1844
inmate.                                                               1845

(3)(a) "Eighty per cent-qualifying offender" means an                 1846
offender who is serving a stated prison term of one year or          1847
more, on or after April 4, 2023, who has commenced service of        1848
that stated prison term, who is not serving a stated prison term      1849
that includes a disqualifying prison term or a stated prison         1850
term that consists solely of one or more restricting prison          1851
terms, and to whom either of the following applies:                  1852

(i) If the offender is serving a stated prison term of one           1853
year or more that includes one or more restricting prison terms      1854
and one or more eligible prison terms, the offender has fully        1855
served all restricting prison terms and has served eighty per        1856
cent of that stated prison term that remains to be served after      1857
all restricting prison terms have been fully served.                 1858

(ii) If the offender is serving a stated prison term of              1859
one year or more that consists solely of one or more eligible        1860
prison terms, the offender has served eighty per cent of that        1861
stated prison term.                                                   1862

(b) For purposes of determining whether an offender is an            1863
eighty per cent-qualifying offender under division (A)(3)(a) of      1864
this section:                                                         1865

(i) If the offender's stated prison term includes                    1866
consecutive prison terms, any restricting prison terms shall be      1867

deemed served prior to any eligible prison terms that run 1868
consecutively to the restricting prison terms, and the eligible 1869
prison terms are deemed to commence after all of the restricting 1870
prison terms have been fully served. 1871

(ii) An offender serving a stated prison term of one year 1872
or more that includes a mandatory prison term that is not a 1873
disqualifying prison term and is not a restricting prison term 1874
is not automatically disqualified from being an eighty per cent- 1875
qualifying offender as a result of the offender's service of 1876
that mandatory term for release from prison under this section, 1877
and the offender may be eligible for release from prison in 1878
accordance with this division and division (O) of this section. 1879

(4) "Nonmandatory prison term" means a prison term that is 1880
not a mandatory prison term. 1881

(5) "Public office" means any elected federal, state, or 1882
local government office in this state. 1883

(6) "Victim's representative" has the same meaning as in 1884
section 2930.01 of the Revised Code. 1885

(7) "Imminent danger of death," "medically incapacitated," 1886
and "terminal illness" have the same meanings as in section 1887
2967.05 of the Revised Code. 1888

(8) "Aggregated nonmandatory prison term or terms" means 1889
the aggregate of the following: 1890

(a) All nonmandatory definite prison terms; 1891

(b) With respect to any non-life felony indefinite prison 1892
term, all nonmandatory minimum prison terms imposed as part of 1893
the non-life felony indefinite prison term or terms. 1894

(9) "Deadly weapon" and "dangerous ordnance" have the same 1895

meanings as in section 2923.11 of the Revised Code. 1896

(10) "Disqualifying prison term" means any of the 1897
following: 1898

(a) A prison term imposed for aggravated murder, murder, 1899
voluntary manslaughter, involuntary manslaughter, felonious 1900
assault, kidnapping, rape, aggravated arson, aggravated 1901
burglary, or aggravated robbery; 1902

(b) A prison term imposed for complicity in, an attempt to 1903
commit, or conspiracy to commit any offense listed in division 1904
(A)(10)(a) of this section; 1905

(c) A prison term of life imprisonment, including any term 1906
of life imprisonment that has parole eligibility; 1907

(d) A prison term imposed for any felony other than 1908
carrying a concealed weapon an essential element of which is any 1909
conduct or failure to act expressly involving any deadly weapon 1910
or dangerous ordnance; 1911

(e) A prison term imposed for any violation of section 1912
2925.03 of the Revised Code that is a felony of the first or 1913
second degree; 1914

(f) A prison term imposed for engaging in a pattern of 1915
corrupt activity in violation of section 2923.32 of the Revised 1916
Code; 1917

(g) A prison term imposed pursuant to section 2971.03 of 1918
the Revised Code; 1919

(h) A prison term imposed for any sexually oriented 1920
offense. 1921

(11) "Eligible prison term" means any prison term that is 1922

not a disqualifying prison term and is not a restricting prison term. 1923
1924

(12) "Restricting prison term" means any of the following: 1925

(a) A mandatory prison term imposed under division (B)(1) (a), (B)(1)(c), (B)(1)(f), (B)(1)(g), (B)(2), or (B)(7) of section 2929.14 of the Revised Code for a specification of the type described in that division; 1926
1927
1928
1929

(b) In the case of an offender who has been sentenced to a mandatory prison term for a specification of the type described in division (A)(12)(a) of this section, the prison term imposed for the felony offense for which the specification was stated at the end of the body of the indictment, count in the indictment, or information charging the offense; 1930
1931
1932
1933
1934
1935

(c) A prison term imposed for trafficking in persons; 1936

(d) A prison term imposed for any offense that is described in division (A)(12)(d)(i) of this section if division (A)(12)(d)(ii) of this section applies to the offender: 1937
1938
1939

(i) The offense is a felony of the first or second degree that is an offense of violence and that is not described in division (A)(10)(a) or (b) of this section, an attempt to commit a felony of the first or second degree that is an offense of violence and that is not described in division (A)(10)(a) or (b) of this section if the attempt is a felony of the first or second degree, or an offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to any other offense described in this division. 1940
1941
1942
1943
1944
1945
1946
1947
1948
1949

(ii) The offender previously was convicted of or pleaded guilty to any offense listed in division (A)(10) or (A)(12)(d) 1950
1951

(i) of this section.

1952

(13) "Sexually oriented offense" has the same meaning as
in section 2950.01 of the Revised Code.
1953
1954

(14) "Stated prison term of one year or more" means a
definite prison term of one year or more imposed as a stated
prison term, or a minimum prison term of one year or more
imposed as part of a stated prison term that is a non-life
felony indefinite prison term.
1955
1956
1957
1958
1959

(B) On the motion of an eligible offender, on the motion
of a state of emergency-qualifying offender made during the
declared state of emergency, or on its own motion with respect
to an eligible offender or with respect to a state of emergency-
qualifying offender during the declared state of emergency, the
sentencing court may reduce the offender's aggregated
nonmandatory prison term or terms through a judicial release
under this section.
1960
1961
1962
1963
1964
1965
1966
1967

(C)(1) Subject to division (C)(2) of this section, an
eligible offender may file a motion for judicial release with
the sentencing court, or a state of emergency-qualifying
offender may file a motion for judicial release with the
sentencing court during the declared state of emergency, within
the following applicable periods:
1968
1969
1970
1971
1972
1973

(a) If the aggregated nonmandatory prison term or terms is
less than two years, the eligible offender or state of
emergency-qualifying offender may file the motion at any time
after the offender is delivered to a state correctional
institution or, if the prison term includes a mandatory prison
term or terms, at any time after the expiration of all mandatory
prison terms.
1974
1975
1976
1977
1978
1979
1980

(b) If the aggregated nonmandatory prison term or terms is at least two years but less than five years, the eligible offender or state of emergency-qualifying offender may file the motion not earlier than one hundred eighty days after the offender is delivered to a state correctional institution or, if the prison term includes a mandatory prison term or terms, not earlier than one hundred eighty days after the expiration of all mandatory prison terms. | 1981
1982
1983
1984
1985
1986
1987
1988

(c) If the aggregated nonmandatory prison term or terms is five years, the eligible offender or state of emergency-qualifying offender may file the motion not earlier than the date on which the offender has served four years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, not earlier than four years after the expiration of all mandatory prison terms. | 1989
1990
1991
1992
1993
1994
1995

(d) If the aggregated nonmandatory prison term or terms is more than five years but not more than ten years, the eligible offender or state of emergency-qualifying offender may file the motion not earlier than the date on which the offender has served five years of the offender's stated prison term or, if the prison term includes a mandatory prison term or terms, not earlier than five years after the expiration of all mandatory prison terms. | 1996
1997
1998
1999
2000
2001
2002
2003

(e) If the aggregated nonmandatory prison term or terms is more than ten years, the eligible offender or state of emergency-qualifying offender may file the motion not earlier than the later of the date on which the offender has served one-half of the offender's stated prison term or the date specified in division (C)(1)(d) of this section. | 2004
2005
2006
2007
2008
2009

(f) With respect to a state of emergency-qualifying | 2010

offender, if the offender's prison term does not include a 2011
mandatory prison term or terms, or if the offender's prison term 2012
includes one or more mandatory prison terms and the offender has 2013
completed the mandatory prison term or terms, the state of 2014
emergency-qualifying offender may file the motion at any time 2015
during the offender's aggregated nonmandatory prison term or 2016
terms, provided that time also is during the declared state of 2017
emergency. 2018

(2) During any single declared state of emergency, a state 2019
of emergency-qualifying offender may only file a motion for 2020
judicial release as a state of emergency-qualifying offender 2021
with the sentencing court during that declared state of 2022
emergency once every six months. 2023

(D)(1)(a) Upon receipt of a timely motion for judicial 2024
release filed by an eligible offender or a state of emergency- 2025
qualifying offender under division (C) of this section, or upon 2026
the sentencing court's own motion made within the appropriate 2027
time specified in that division, the court may deny the motion 2028
without a hearing or schedule a hearing on the motion. The court 2029
may grant the motion without a hearing for an offender under 2030
consideration for judicial release as a state of emergency- 2031
qualifying offender, but the court shall not grant the motion 2032
without a hearing for an offender under consideration as an 2033
eligible offender. If a court denies a motion without a hearing, 2034
the court later may consider judicial release for that eligible 2035
offender or that state of emergency-qualifying offender on a 2036
subsequent motion. For an offender under consideration for 2037
judicial release as an eligible offender, but not for one under 2038
consideration as a state of emergency-qualifying offender, the 2039
court may deny the motion with prejudice. If a court denies a 2040
motion with prejudice, the court may later consider judicial 2041

release on its own motion. For an offender under consideration 2042
for judicial release as a state of emergency-qualifying 2043
offender, the court shall not deny a motion with prejudice. For 2044
an offender under consideration for judicial release as an 2045
eligible offender, but not for one under consideration as a 2046
state of emergency-qualifying offender, if a court denies a 2047
motion after a hearing, the court shall not consider a 2048
subsequent motion for that offender based on the offender's 2049
classification as an eligible offender. The court may hold 2050
multiple hearings for any offender under consideration for 2051
judicial release as a state of emergency-qualifying offender, 2052
but shall hold only one hearing for any offender under 2053
consideration as an eligible offender. 2054

(b) If an offender is under consideration for judicial 2055
release as an eligible offender and the motion is denied, and if 2056
the offender at that time also is or subsequently becomes a 2057
state of emergency-qualifying offender, the denial does not 2058
limit or affect any right of the offender to file a motion under 2059
this section for consideration for judicial release as a state 2060
of emergency-qualifying offender or for the court on its own 2061
motion to consider the offender for judicial release as a state 2062
of emergency-qualifying offender. 2063

If an offender is under consideration for judicial release 2064
as a state of emergency-qualifying offender and the motion is 2065
denied, and if the offender at that time also is or subsequently 2066
becomes an eligible offender, the denial does not limit or 2067
affect any right of the offender to file a motion under this 2068
section for consideration for judicial release as an eligible 2069
offender or for the court on its own motion to consider the 2070
offender for judicial release as an eligible offender. 2071

(2)(a) With respect to a motion for judicial release filed 2072
by an offender as an eligible offender or made by the court on 2073
its own motion for an offender as an eligible offender, a 2074
hearing under this section shall be conducted in open court not 2075
less than thirty or more than sixty days after the motion is 2076
filed, provided that the court may delay the hearing for one 2077
hundred eighty additional days. If the court holds a hearing, 2078
the court shall enter a ruling on the motion within ten days 2079
after the hearing. If the court denies the motion without a 2080
hearing, the court shall enter its ruling on the motion within 2081
sixty days after the motion is filed. 2082

(b) With respect to a motion for judicial release filed by 2083
an offender as a state of emergency-qualifying offender or made 2084
by the court on its own motion for an offender as a state of 2085
emergency-qualifying offender, the court shall notify the 2086
prosecuting attorney of the county in which the offender was 2087
indicted and may order the prosecuting attorney to respond to 2088
the motion in writing within ten days. The prosecuting attorney 2089
shall notify the victim pursuant to the Ohio Constitution. The 2090
prosecuting attorney shall include in the response any statement 2091
that the victim wants to be represented to the court. The court 2092
shall consider any response from the prosecuting attorney and 2093
any statement from the victim in its ruling on the motion. After 2094
receiving the response from the prosecuting attorney, the court 2095
either shall order a hearing consistent with divisions (E) to 2096
(I) of this section as soon as possible, or shall enter its 2097
ruling on the motion for judicial release as soon as possible. 2098
If the court conducts a hearing, the hearing shall be conducted 2099
in open court or by a virtual, telephonic, or other form of 2100
remote hearing. If the court holds a hearing, the court shall 2101
enter a ruling on the motion within ten days after the hearing. 2102

If the court denies the motion without a hearing, the court 2103
shall enter its ruling on the motion within ten days after the 2104
motion is filed or after it receives the response from the 2105
prosecuting attorney. 2106

(E) If a court schedules a hearing under divisions (D)(1) 2107
and (2)(a) of this section or under divisions (D)(1) and (2)(b) 2108
of this section, the court shall notify the subject eligible 2109
offender or state of emergency-qualifying offender and the head 2110
of the state correctional institution in which that subject 2111
offender is confined prior to the hearing. The head of the state 2112
correctional institution immediately shall notify the 2113
appropriate person at the department of rehabilitation and 2114
correction of the hearing, and the department within twenty-four 2115
hours after receipt of the notice, shall post on the database it 2116
maintains pursuant to section 5120.66 of the Revised Code the 2117
subject offender's name and all of the information specified in 2118
division (A)(1)(c)(i) of that section. If the court schedules a 2119
hearing for judicial release, the court promptly shall give 2120
notice of the hearing to the prosecuting attorney of the county 2121
in which the subject eligible offender or state of emergency- 2122
qualifying offender was indicted. Upon receipt of the notice 2123
from the court, the prosecuting attorney shall do whichever of 2124
the following is applicable: 2125

(1) Subject to division (E)(2) of this section, notify the 2126
victim of the offense and the victim's representative, if 2127
applicable, pursuant to the Ohio Constitution and division (B) 2128
of section 2930.16 of the Revised Code; 2129

(2) If the offense was an offense of violence that is a 2130
felony of the first, second, or third degree, except as 2131
otherwise provided in this division, pursuant to the Ohio 2132

Constitution, notify the victim and the victim's representative, 2133
if applicable, of the hearing regardless of whether the victim 2134
or victim's representative has requested the notification. 2135
Except when notice to the victim is required under the Ohio 2136
Constitution, the notice of the hearing shall not be given under 2137
this division to a victim or victim's representative if the 2138
victim or victim's representative has requested pursuant to 2139
division (B)(2) of section 2930.03 of the Revised Code that the 2140
victim or the victim's representative not be provided the 2141
notice. If notice is to be provided to a victim or victim's 2142
representative under this division, the prosecuting attorney may 2143
give the notice by any reasonable means, including regular mail, 2144
telephone, and electronic mail, in accordance with division (D) 2145
(1) of section 2930.16 of the Revised Code. If the notice is 2146
based on an offense committed prior to March 22, 2013, the 2147
notice also shall include the opt-out information described in 2148
division (D)(1) of section 2930.16 of the Revised Code. The 2149
prosecuting attorney, in accordance with division (D)(2) of 2150
section 2930.16 of the Revised Code, shall keep a record of all 2151
attempts to provide the notice, and of all notices provided, 2152
under this division. Division (E)(2) of this section, and the 2153
notice-related provisions of division (K) of this section, 2154
division (D)(1) of section 2930.16, division (H) of section 2155
2967.12, division (E)(1)(b) of section 2967.19 as it existed 2156
prior to April 4, 2023, division (A)(3)(b) of section 2967.26, 2157
division (D)(1) of section 2967.28, and division (A)(2) of 2158
section 5149.101 of the Revised Code enacted in the act in which 2159
division (E)(2) of this section was enacted, shall be known as 2160
"Roberta's Law." 2161

(F) Upon an offender's successful completion of 2162
rehabilitative activities, the head of the state correctional 2163

institution may notify the sentencing court of the successful
completion of the activities. 
2164
2165

(G) Prior to the date of the hearing on a motion for
judicial release made by an eligible offender, by a state of
emergency-qualifying offender, or by a court on its own under
this section, the head of the state correctional institution in
which the subject offender is confined shall send to the court
an institutional summary report on the offender's conduct in the
institution and in any institution from which the offender may
have been transferred. Upon the request of the prosecuting
attorney of the county in which the subject offender was
indicted or of any law enforcement agency, the head of the state
correctional institution, at the same time the person sends the
institutional summary report to the court, also shall send a
copy of the report to the requesting prosecuting attorney and
law enforcement agencies. The institutional summary report shall
cover the subject offender's participation in school, vocational
training, work, treatment, and other rehabilitative activities
and any disciplinary action taken against the subject offender.
The report shall be made part of the record of the hearing. A
presentence investigation report is not required for judicial
release. 
2166
2167
2168
2169
2170
2171
2172
2173
2174
2175
2176
2177
2178
2179
2180
2181
2182
2183
2184
2185

(H) If the court grants a hearing on a motion for judicial
release made by an eligible offender, by a state of emergency-
qualifying offender, or by a court on its own under this
section, the subject offender shall attend the hearing if
ordered to do so by the court. Upon receipt of a copy of the
journal entry containing the order, the head of the state
correctional institution in which the subject offender is
incarcerated shall deliver the subject offender to the sheriff
of the county in which the hearing is to be held. The sheriff 
2186
2187
2188
2189
2190
2191
2192
2193
2194

shall convey the subject offender to and from the hearing. 2195

(I) At the hearing on a motion for judicial release under 2196
this section made by an eligible offender, by a state of 2197
emergency-qualifying offender, or by a court on its own, the 2198
court shall afford the subject offender and the offender's 2199
attorney an opportunity to present written and, if present, oral 2200
information relevant to the motion. The court shall afford a 2201
similar opportunity to the prosecuting attorney, the victim, the 2202
victim's representative, the victim's attorney, if applicable, 2203
and any other person the court determines is likely to present 2204
additional relevant information. The court shall consider any 2205
oral or written statement of a victim, victim's representative, 2206
and victim's attorney, if applicable, made pursuant to section 2207
2930.14 or 2930.17 of the Revised Code, any victim impact 2208
statement prepared pursuant to section 2947.051 of the Revised 2209
Code, and any report made under division (G) of this section. 2210
The court may consider any written statement of any person 2211
submitted to the court pursuant to division (L) of this section. 2212

If the motion alleges that the offender who is the subject 2213
of the motion is an eligible offender and the court makes an 2214
initial determination that the offender satisfies the criteria 2215
for being an eligible offender, or if the motion alleges that 2216
the offender who is the subject of the motion is a state of 2217
emergency-qualifying offender and the court makes an initial 2218
determination that the offender satisfies the criteria for being 2219
a state of emergency-qualifying offender, the court shall 2220
determine whether to grant the motion. After ruling on the 2221
motion, the court shall notify the prosecuting attorney of the 2222
county in which the eligible offender or state of emergency- 2223
qualifying offender was indicted of the ruling, and the 2224
prosecuting attorney shall notify the victim and the victim's 2225

representative of the ruling in accordance with sections 2930.03 2226
and 2930.16 of the Revised Code or, if the court granted the 2227
motion, in accordance with division (K) of this section. 2228

(J)(1) A court shall not grant a judicial release under 2229
this section to an offender who is imprisoned for a felony of 2230
the first or second degree and who is under consideration as an 2231
eligible offender, or to an offender who committed an offense 2232
under Chapter 2925. or 3719. of the Revised Code, who is under 2233
consideration as an eligible offender, and for whom there was a 2234
presumption under section 2929.13 of the Revised Code in favor 2235
of a prison term, unless the court, with reference to factors 2236
under section 2929.12 of the Revised Code, finds both of the 2237
following: 2238

(a) That a sanction other than a prison term would 2239
adequately punish the offender and protect the public from 2240
future criminal violations by the offender because the 2241
applicable factors indicating a lesser likelihood of recidivism 2242
outweigh the applicable factors indicating a greater likelihood 2243
of recidivism; 2244

(b) That a sanction other than a prison term would not 2245
demean the seriousness of the offense because factors indicating 2246
that the offender's conduct in committing the offense was less 2247
serious than conduct normally constituting the offense outweigh 2248
factors indicating that the eligible offender's conduct was more 2249
serious than conduct normally constituting the offense. 2250

(2) A court that grants a judicial release under division 2251
(J)(1) of this section to an offender who is under consideration 2252
as an eligible offender shall specify on the record both 2253
findings required in that division and also shall list all the 2254
factors described in that division that were presented at the 2255

hearing.

2256

(3)(a) Subject to division (J)(3)(b) of this section, a
court shall grant a judicial release under this section to an
offender who is under consideration as a state of emergency-
qualifying offender if the court determines that the risks posed
by incarceration to the health and safety of the offender,
because of the nature of the declared state of emergency,
outweigh the risk to public safety if the offender were to be
released from incarceration. 
2257
2258
2259
2260
2261
2262
2263
2264

(b) A court shall not grant a judicial release under this
section to an offender who is imprisoned for a felony of the
first or second degree and is under consideration for judicial
release as a state of emergency-qualifying offender unless the
court, with reference to the factors specified under section
2929.12 of the Revised Code, finds both of the criteria set
forth in divisions (J)(1)(a) and (b) of this section. 
2265
2266
2267
2268
2269
2270
2271

(K) If the court grants a motion for judicial release
under this section, the court shall order the release of the
eligible offender or state of emergency-qualifying offender,
shall place the offender under an appropriate community control
sanction, under appropriate conditions, and under the
supervision of the department of probation serving the court and
shall reserve the right to reimpose the sentence that it reduced
if the offender violates the sanction. If the court reimposes
the reduced sentence, it may do so either concurrently with, or
consecutive to, any new sentence imposed on the eligible
offender or state of emergency-qualifying offender as a result
of the violation that is a new offense. Except as provided in
division (N)(5)(b) of this section, the period of community
control shall be no longer than five years. The court, in its 
2272
2273
2274
2275
2276
2277
2278
2279
2280
2281
2282
2283
2284
2285

discretion, may reduce the period of community control by the 2286
amount of time the offender spent in jail or prison for the 2287
offense and in prison. If the court made any findings pursuant 2288
to division (J)(1) of this section, the court shall serve a copy 2289
of the findings upon counsel for the parties within fifteen days 2290
after the date on which the court grants the motion for judicial 2291
release. 2292

If the court grants a motion for judicial release, the 2293
court shall notify the appropriate person at the department of 2294
rehabilitation and correction, and the department shall post 2295
notice of the release on the database it maintains pursuant to 2296
section 5120.66 of the Revised Code. The court also shall notify 2297
the prosecuting attorney of the county in which the eligible 2298
offender or state of emergency-qualifying offender was indicted 2299
that the motion has been granted. When notice to the victim is 2300
required under the Ohio Constitution, the prosecuting attorney 2301
shall notify the victim and the victim's representative, if 2302
applicable, of the judicial release. In all other cases, unless 2303
the victim or the victim's representative has requested pursuant 2304
to division (B)(2) of section 2930.03 of the Revised Code that 2305
the victim or victim's representative not be provided the 2306
notice, the prosecuting attorney shall notify the victim and the 2307
victim's representative, if applicable, of the judicial release 2308
in any manner, and in accordance with the same procedures, 2309
pursuant to which the prosecuting attorney is authorized to 2310
provide notice of the hearing pursuant to division (E)(2) of 2311
this section. If the notice is based on an offense committed 2312
prior to March 22, 2013, the notice to the victim or victim's 2313
representative also shall include the opt-out information 2314
described in division (D)(1) of section 2930.16 of the Revised 2315
Code. 2316

(L) In addition to and independent of the right of a 2317
victim to make a statement pursuant to section 2930.14, 2930.17, 2318
or 2946.051 of the Revised Code and any right of a person to 2319
present written information or make a statement pursuant to 2320
division (I) of this section, any person may submit to the 2321
court, at any time prior to the hearing on the motion for 2322
judicial release of the eligible offender or state of emergency- 2323
qualifying offender, a written statement concerning the effects 2324
of the offender's criminal offense, the circumstances 2325
surrounding the criminal offense, the manner in which the 2326
criminal offense was perpetrated, and the person's opinion as to 2327
whether the offender should be released. 2328

(M)(1) The changes to this section that are made on 2329
September 30, 2011, apply to any judicial release decision made 2330
on or after September 30, 2011, for any eligible offender, 2331
subject to division (M)(2) of this section. 2332

(2) The changes to this section that are made on April 4, 2333
2023, apply to any judicial release application, and any 2334
judicial release decision, made on or after April 4, 2023, for 2335
any eligible offender or state of emergency-qualifying offender. 2336

(N)(1) Notwithstanding the eligibility requirements 2337
specified in divisions (A)(1) and (2) of this section and the 2338
filing time frames specified in division (C) of this section and 2339
notwithstanding the findings required under division (J)(1) and 2340
the eligibility criteria specified in division (J)(3) of this 2341
section, the sentencing court, upon the court's own motion and 2342
after considering whether the release of the offender into 2343
society would create undue risk to public safety, may grant a 2344
judicial release to an offender who is not serving a life 2345
sentence at any time during the offender's imposed sentence when 2346

the director of rehabilitation and correction certifies to the 2347
sentencing court through the chief medical officer for the 2348
department of rehabilitation and correction that the offender is 2349
in imminent danger of death, is medically incapacitated, or has 2350
a terminal illness. 2351

(2) The director of rehabilitation and correction shall 2352
not certify any offender under division (N)(1) of this section 2353
who is serving a death sentence. 2354

(3) A motion made by the court under division (N)(1) of 2355
this section is subject to the notice, hearing, and other 2356
procedural requirements specified in divisions (D), (E), (G), 2357
(H), (I), (K), and (L) of this section with respect to motions 2358
for a grant of judicial release to eligible offenders, including 2359
notice to the victim, except for the following: 2360

(a) The court may waive the offender's appearance at any 2361
hearing scheduled by the court if the offender's condition makes 2362
it impossible for the offender to participate meaningfully in 2363
the proceeding. 2364

(b) The court may grant the motion without a hearing, 2365
provided that the prosecuting attorney, victim, and victim's 2366
representative, if applicable, to whom notice of the hearing was 2367
provided under division (E) of this section indicate that they 2368
do not wish to participate in the hearing or present information 2369
relevant to the motion. 2370

(4) The court may request health care records from the 2371
department of rehabilitation and correction to verify the 2372
certification made under division (N)(1) of this section. 2373

(5)(a) If the court grants judicial release under division 2374
(N)(1) of this section, the court shall do all of the following: 2375

(i) Order the release of the offender;

(ii) Place the offender under an appropriate community
control sanction, under appropriate conditions;

(iii) Place the offender under the supervision of the
department of probation serving the court or under the
supervision of the adult parole authority.

(b) The court, in its discretion, may revoke the judicial
release if the offender violates the community control sanction
described in division (N)(5)(a) of this section. The period of
that community control is not subject to the five-year
limitation described in division (K) of this section and shall
not expire earlier than the date on which all of the offender's
mandatory prison terms expire.

(6) If the health of an offender who is released under
division (N)(1) of this section improves so that the offender is
no longer terminally ill, medically incapacitated, or in
imminent danger of death, the court shall, upon the court's own
motion, revoke the judicial release. The court shall not grant
the motion without a hearing unless the offender waives a
hearing. If a hearing is held, the court shall afford the
offender and the offender's attorney an opportunity to present
written and, if the offender or the offender's attorney is
present, oral information relevant to the motion. The court
shall afford a similar opportunity to the prosecuting attorney,
the victim, the victim's representative, the victim's attorney,
if applicable, and any other person the court determines is
likely to present additional relevant information. If a hearing
is held, the prosecuting attorney shall notify the victim and
the victim's representative, if applicable, pursuant to the Ohio
Constitution. A court that grants a motion under this division

2376
2377
2378
2379
2380
2381
2382
2383
2384
2385
2386
2387
2388
2389
2390
2391
2392
2393
2394
2395
2396
2397
2398
2399
2400
2401
2402
2403
2404
2405

shall specify its findings on the record. 2406

(O)(1) Separate from and independent of the provisions of divisions (A) to (N) of this section, the director of the department of rehabilitation and correction may recommend in writing to the sentencing court that the court consider releasing from prison, through a judicial release, any offender who is confined in a state correctional institution and who is an eighty per cent-qualifying offender. The director may file such a recommendation for judicial release by submitting to the sentencing court a notice, in writing, of the recommendation within the applicable period specified in division (A)(3) of this section for qualifying as an eighty per cent-qualifying offender. 2407 2408 2409 2410 2411 2412 2413 2414 2415 2416 2417 2418

The director shall include with any notice submitted to the sentencing court under this division an institutional summary report that covers the offender's participation while confined in a state correctional institution in school, training, work, treatment, and other rehabilitative activities and any disciplinary action taken against the offender while so confined. The director shall include with the notice any other documentation requested by the court, if available. 2419 2420 2421 2422 2423 2424 2425 2426

If the director submits a notice under this division recommending judicial release, the department promptly shall provide to the prosecuting attorney of the county in which the offender was indicted a copy of the written notice and recommendation, a copy of the institutional summary report, and any other information provided to the court, and shall provide a copy of the institutional summary report to any law enforcement agency that requests the report. The department also shall provide written notice of the submission of the director's 2427 2428 2429 2430 2431 2432 2433 2434 2435

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 238 of 879 PAGEID #: 373

notice to any victim of the offender or victim's representative, if applicable, in the same manner as is specified in divisions (E)(1) and (2) of this section with respect to notices of hearings. 2436 2437 2438 2439

(2) A recommendation for judicial release in a notice submitted by the director under division (O)(1) of this section is subject to the notice, hearing, and other procedural requirements specified in divisions (E), (H), (I), and (L) of this section, including notice to the victim pursuant to the Ohio Constitution, except as otherwise specified in divisions (O)(3) to (5) of this section, provided that references in divisions (E), (H), (I), (K), and (L) of this section to "the motion" shall be construed for purposes of division (O) of this section as being references to the notice and recommendation specified in division (O)(1) of this section. 2440 2441 2442 2443 2444 2445 2446 2447 2448 2449 2450

(3) The director's submission of a notice under division (O)(1) of this section constitutes a recommendation by the director that the court strongly consider a judicial release of the offender consistent with the purposes and principles of sentencing set forth in sections 2929.11 and 2929.13 of the Revised Code and establishes a rebuttable presumption that the offender shall be released through a judicial release in accordance with the recommendation. The presumption of release may be rebutted only as described in division (O)(6) of this section. Only an offender recommended by the director under division (O)(1) of this section may be considered for a judicial release under division (O) of this section. 2451 2452 2453 2454 2455 2456 2457 2458 2459 2460 2461 2462

(4) Upon receipt of a notice recommending judicial release submitted by the director under division (O)(1) of this section, the court shall schedule a hearing to consider the 2463 2464 2465

recommendation for the judicial release of the offender who is 2466
the subject of the notice. The hearing shall be conducted in 2467
open court not less than thirty or more than sixty days after 2468
the notice is submitted. The court shall inform the department 2469
and the prosecuting attorney of the county in which the offender 2470
who is the subject of the notice was indicted of the date, time, 2471
and location of the hearing. Upon receipt of the notice from the 2472
court, the prosecuting attorney shall comply with division (E) 2473
of this section, including providing notice to the victim and 2474
the victim's representative, if applicable, pursuant to the Ohio 2475
Constitution, and the department shall post the information 2476
specified in that division. 2477

(5) When a court schedules a hearing under division (O)(4) 2478
of this section, at the hearing, the court shall consider all of 2479
the following in determining whether to grant the offender 2480
judicial release under division (O) of this section: 2481

(a) The institutional summary report submitted under 2482
division (O)(1) of this section; 2483

(b) The inmate's academic, vocational education programs, 2484
or alcohol or drug treatment programs; or involvement in 2485
meaningful activity; 2486

(c) The inmate's assignments and whether the inmate 2487
consistently performed each work assignment to the satisfaction 2488
of the department staff responsible for supervising the inmate's 2489
work; 2490

(d) The inmate transferred to and actively participated in 2491
core curriculum programming at a reintegration center prison; 2492

(e) The inmate's disciplinary history; 2493

(f) The inmate's security level; 2494

(g) All other information, statements, reports, and documentation described in division (I) of this section. 2495 2496

(6) If the court that receives a notice recommending judicial release submitted by the director under division (O)(1) of this section makes an initial determination that the offender satisfies the criteria for being an eighty per cent-qualifying offender, the court then shall determine whether to grant the offender judicial release. In making the second determination, the court shall grant the offender judicial release unless the prosecuting attorney proves to the court, by a preponderance of the evidence, that the legitimate interests of the government in maintaining the offender's confinement outweigh the interests of the offender in being released from that confinement. If the court grants a judicial release under this division, division (K) of this section applies regarding the judicial release, including notice to the victim and the victim's representative, if applicable, pursuant to the Ohio Constitution, provided that references in division (K) of this section to "the motion" shall be construed for purposes of the judicial release granted under this division as being references to the notice and recommendation specified in division (O)(1) of this section. 2497 2498 2499 2500 2501 2502 2503 2504 2505 2506 2507 2508 2509 2510 2511 2512 2513 2514 2515

The court shall enter its ruling on the notice recommending judicial release submitted by the director under division (O)(1) of this section within ten days after the hearing is conducted. After ruling on whether to grant the offender judicial release under division (O) of this section, the court shall notify the offender, the prosecuting attorney, and the department of rehabilitation and correction of its decision, and shall notify the victim of its decision in accordance with the Ohio Constitution and sections 2930.03 and 2930.16 of the Revised Code. If the court does not enter a 2516 2517 2518 2519 2520 2521 2522 2523 2524 2525

ruling on the notice within ten days after the hearing is 2526
conducted as required under this division, the division of 2527
parole and community services of the department of 2528
rehabilitation and correction may release the offender. 2529

(P) All notices to a victim of an offense provided under 2530
division (D), (E), (K), (N), or (O) of this section shall be 2531
provided in accordance with the Ohio Constitution. 2532

**Sec. 2967.26.** (A)(1) The department of rehabilitation and 2533
correction, by rule, may establish a transitional control 2534
program for the purpose of closely monitoring a prisoner's 2535
adjustment to community supervision during the final one hundred 2536
eighty days of the prisoner's confinement. If the department 2537
establishes a transitional control program under this division, 2538
the division of parole and community services of the department 2539
of rehabilitation and correction may transfer eligible prisoners 2540
to transitional control status under the program during the 2541
final one hundred eighty days of their confinement and under the 2542
terms and conditions established by the department, shall 2543
provide for the confinement as provided in this division of each 2544
eligible prisoner so transferred, and shall supervise each 2545
eligible prisoner so transferred in one or more community 2546
control sanctions. Each eligible prisoner who is transferred to 2547
transitional control status under the program shall be confined 2548
in a suitable facility that is licensed pursuant to division (C) 2549
of section 2967.14 of the Revised Code, or shall be confined in 2550
a residence the department has approved for this purpose and be 2551
monitored pursuant to an electronic monitoring device, as 2552
defined in section 2929.01 of the Revised Code. If the 2553
department establishes a transitional control program under this 2554
division, the rules establishing the program shall include 2555
criteria that define which prisoners are eligible for the 2556

**Am. Sub. H. B. No. 305**                                                           **Page 89**
**As Passed by the Senate**

program, criteria that must be satisfied to be approved as a                    2557
residence that may be used for confinement under the program of                 2558
a prisoner that is transferred to it and procedures for the                     2559
department to approve residences that satisfy those criteria,                   2560
and provisions of the type described in division (C) of this                    2561
section. At a minimum, the criteria that define which prisoners                 2562
are eligible for the program shall provide all of the following:                2563

(a) That a prisoner is eligible for the program if the                          2564
prisoner is serving a prison term or term of imprisonment for an                2565
offense committed prior to March 17, 1998, and if, at the time                  2566
at which eligibility is being determined, the prisoner would                    2567
have been eligible for a furlough under this section as it                      2568
existed immediately prior to March 17, 1998, or would have been                 2569
eligible for conditional release under former section 2967.23 of                2570
the Revised Code as that section existed immediately prior to                   2571
March 17, 1998;                                                                 2572

(b) That no prisoner who is serving a mandatory prison                          2573
term is eligible for the program until after expiration of the                  2574
mandatory term;                                                                 2575

(c) That no prisoner who is serving a prison term or term                       2576
of life imprisonment without parole imposed pursuant to section                 2577
2971.03 of the Revised Code is eligible for the program.                        2578

(2) At least sixty days prior to transferring to                               2579
transitional control under this section a prisoner who is                       2580
serving a definite term of imprisonment or definite prison term                 2581
of less than one year for an offense committed on or after July                 2582
1, 1996, or who is serving a minimum term of less than one year                 2583
under a non-life felony indefinite prison term, on or after                     2584
April 4, 2023, the division of parole and community services of                 2585
the department of rehabilitation and correction shall give                      2586

notice of the pendency of the transfer to transitional control 2587
to the court of common pleas of the county in which the 2588
indictment against the prisoner was found and of the fact that 2589
the court may disapprove the transfer of the prisoner to 2590
transitional control and shall include the institutional summary 2591
report prepared by the head of the state correctional 2592
institution in which the prisoner is confined. The head of the 2593
state correctional institution in which the prisoner is 2594
confined, upon the request of the division of parole and 2595
community services, shall provide to the division for inclusion 2596
in the notice sent to the court under this division an 2597
institutional summary report on the prisoner's conduct in the 2598
institution and in any institution from which the prisoner may 2599
have been transferred. The institutional summary report shall 2600
cover the prisoner's participation in school, vocational 2601
training, work, treatment, and other rehabilitative activities 2602
and any disciplinary action taken against the prisoner. If the 2603
court disapproves of the transfer of the prisoner to 2604
transitional control, the court shall notify the division of the 2605
disapproval within thirty days after receipt of the notice. If 2606
the court timely disapproves the transfer of the prisoner to 2607
transitional control, the division shall not proceed with the 2608
transfer. If the court does not timely disapprove the transfer 2609
of the prisoner to transitional control, the division may 2610
transfer the prisoner to transitional control. 2611

(3)(a) If the victim of an offense for which a prisoner 2612
was sentenced to a prison term or term of imprisonment has 2613
requested notification under section 2930.16 of the Revised Code 2614
and has provided the department of rehabilitation and correction 2615
with the victim's name and address or if division (A)(3)(b) of 2616
this section applies, the division of parole and community 2617

services, at least sixty days prior to transferring the prisoner 2618
to transitional control pursuant to this section, shall notify 2619
the victim and the victim's representative, if applicable, of 2620
the pendency of the transfer and of the victim's and victim's 2621
representative's right to submit a statement to the division 2622
regarding the impact of the transfer of the prisoner to 2623
transitional control. If the victim or victim's representative's 2624
subsequently submits a statement of that nature to the division, 2625
the division shall consider the statement in deciding whether to 2626
transfer the prisoner to transitional control. 2627

(b) If a prisoner is incarcerated for the commission of 2628
aggravated murder, murder, or an offense of violence that is a 2629
felony of the first, second, or third degree or under a sentence 2630
of life imprisonment, except as otherwise provided in this 2631
division, the notice described in division (A)(3)(a) of this 2632
section shall be given regardless of whether the victim has 2633
requested the notification. The notice described in division (A) 2634
(3)(a) of this section shall not be given under this division to 2635
a victim if the victim has requested pursuant to division (B)(2) 2636
of section 2930.03 of the Revised Code that the victim not be 2637
provided the notice. If notice is to be provided to a victim 2638
under this division, the authority may give the notice by any 2639
reasonable means, including regular mail, telephone, and 2640
electronic mail, in accordance with division (D)(1) of section 2641
2930.16 of the Revised Code. If the notice is based on an 2642
offense committed prior to March 22, 2013, the notice also shall 2643
include the opt-out information described in division (D)(1) of 2644
section 2930.16 of the Revised Code. The authority, in 2645
accordance with division (D)(2) of section 2930.16 of the 2646
Revised Code, shall keep a record of all attempts to provide the 2647
notice, and of all notices provided, under this division. 2648

Division (A)(3)(b) of this section, and the notice-related provisions of divisions (E)(2) and (K) of section 2929.20, division (D)(1) of section 2930.16, division (H) of section 2967.12, division (E)(1)(b) of section 2967.19 as it existed prior to April 4, 2023, division (D)(1) of section 2967.28, and division (A)(2) of section 5149.101 of the Revised Code enacted in the act in which division (A)(3)(b) of this section was enacted, shall be known as "Roberta's Law." 2649 2650 2651 2652 2653 2654 2655 2656

(4) The department of rehabilitation and correction, at least sixty days prior to transferring a prisoner to transitional control pursuant to this section, shall post on the database it maintains pursuant to section 5120.66 of the Revised Code the prisoner's name and all of the information specified in division (A)(1)(c)(iv) of that section. In addition to and independent of the right of a victim to submit a statement as described in division (A)(3) of this section or to otherwise make a statement and in addition to and independent of any other right or duty of a person to present information or make a statement, any person may send to the division of parole and community services at any time prior to the division's transfer of the prisoner to transitional control a written statement regarding the transfer of the prisoner to transitional control. In addition to the information, reports, and statements it considers under divisions (A)(2) and (3) of this section or that it otherwise considers, the division shall consider each statement submitted in accordance with this division in deciding whether to transfer the prisoner to transitional control. 2657 2658 2659 2660 2661 2662 2663 2664 2665 2666 2667 2668 2669 2670 2671 2672 2673 2674 2675

(B) Each prisoner transferred to transitional control under this section shall be confined in the manner described in division (A) of this section during any period of time that the prisoner is not actually working at the prisoner's approved 2676 2677 2678 2679

employment, engaged in a vocational training or another 2680
educational program, engaged in another program designated by 2681
the director, or engaged in other activities approved by the 2682
department. 2683

(C) The department of rehabilitation and correction shall 2684
adopt rules for transferring eligible prisoners to transitional 2685
control, supervising and confining prisoners so transferred, 2686
administering the transitional control program in accordance 2687
with this section, and using the moneys deposited into the 2688
transitional control fund established under division (E) of this 2689
section. 2690

(D) The department of rehabilitation and correction may 2691
adopt rules for the issuance of passes for the limited purposes 2692
described in this division to prisoners who are transferred to 2693
transitional control under this section. If the department 2694
adopts rules of that nature, the rules shall govern the granting 2695
of the passes and shall provide for the supervision of prisoners 2696
who are temporarily released pursuant to one of those passes. 2697
Upon the adoption of rules under this division, the department 2698
may issue passes to prisoners who are transferred to 2699
transitional control status under this section in accordance 2700
with the rules and the provisions of this division. All passes 2701
issued under this division shall be for a maximum of forty-eight 2702
hours and may be issued only for the following purposes: 2703

(1) To visit a relative in imminent danger of death; 2704

(2) To have a private viewing of the body of a deceased 2705
relative; 2706

(3) To visit with family; 2707

(4) To otherwise aid in the rehabilitation of the 2708

prisoner. 2709

(E) The division of parole and community services may 2710
require a prisoner who is transferred to transitional control to 2711
pay to the division the reasonable expenses incurred by the 2712
division in supervising or confining the prisoner while under 2713
transitional control. Inability to pay those reasonable expenses 2714
shall not be grounds for refusing to transfer an otherwise 2715
eligible prisoner to transitional control. Amounts received by 2716
the division of parole and community services under this 2717
division shall be deposited into the transitional control fund, 2718
which is hereby created in the state treasury and which hereby 2719
replaces and succeeds the furlough services fund that formerly 2720
existed in the state treasury. All moneys that remain in the 2721
furlough services fund on March 17, 1998, shall be transferred 2722
on that date to the transitional control fund. The transitional 2723
control fund shall be used solely to pay costs related to the 2724
operation of the transitional control program established under 2725
this section. The director of rehabilitation and correction 2726
shall adopt rules in accordance with section 111.15 of the 2727
Revised Code for the use of the fund. 2728

(F) A prisoner who violates any rule established by the 2729
department of rehabilitation and correction under division (A), 2730
(C), or (D) of this section may be transferred to a state 2731
correctional institution pursuant to rules adopted under 2732
division (A), (C), or (D) of this section, but the prisoner 2733
shall receive credit towards completing the prisoner's sentence 2734
for the time spent under transitional control. 2735

If a prisoner is transferred to transitional control under 2736
this section, upon successful completion of the period of 2737
transitional control, the prisoner may be released on parole or 2738

under post-release control pursuant to section 2967.13 or                          2739
2967.28 of the Revised Code and rules adopted by the department                    2740
of rehabilitation and correction. If the prisoner is released                      2741
under post-release control, the duration of the post-release                       2742
control, the type of post-release control sanctions that may be                    2743
imposed, the enforcement of the sanctions, and the treatment of                    2744
prisoners who violate any sanction applicable to the prisoner                      2745
are governed by section 2967.28 of the Revised Code.                               2746

   **Sec. 3109.055.** (A) If a child is born to an unmarried                        2747
woman and the father of the child has acknowledged the child and                   2748
that acknowledgment has become final pursuant to section                          2749
2151.232, 3111.25, or 3111.821 of the Revised Code or has been                     2750
determined in an action under Chapter 3111. of the Revised Code                    2751
to be the father of the child, the court, upon its own motion or                   2752
the motion of one of the parties, may order the parents to                         2753
undergo conciliation with a magistrate in order to resolve any                     2754
disputes regarding the allocation of parental rights and                           2755
responsibilities between the parents in a case pending before                      2756
the court. An order requiring conciliation shall set forth the                     2757
the name of the magistrate who will serve as the conciliator and                   2758
the manner in which the costs of any conciliation procedures are                   2759
to be paid.                                                                         2760

   (B) A magistrate who serves as a conciliator shall use                           2761
conciliation procedures to resolve a dispute regarding the                         2762
allocation of parental rights and responsibilities and, upon                       2763
resolution of the dispute, issue an order regarding the                            2764
allocation of parental rights and responsibilities, parenting                      2765
time, or companionship or visitation pursuant to section                           2766
2151.23, 3109.04, or 3109.12 of the Revised Code. The                              2767
conciliation procedures may include without limitation the use                     2768
of family counselors and service agencies, community health                       2769

services, physicians, licensed psychologists, or clergy. If the                2770
magistrate orders the parties to undergo family counseling, the                2771
magistrate shall name the counselor and set forth the required                 2772
type of counseling, the length of time for the counseling, and                 2773
any other specific conditions. No order regarding the allocation               2774
of parental rights and responsibilities, parenting time, or                    2775
companionship or visitation shall be issued until the                          2776
conciliation has concluded and been reported to the magistrate.                2777

Sec. 3517.01. (A)(1) A political party within the meaning                  2778
of Title XXXV of the Revised Code is any group of voters that                  2779
meets either of the following requirements:                                    2780

(a) Except as otherwise provided in this division, at the                  2781
most recent regular state election, the group polled for its                   2782
candidate for governor in the state or nominees for presidential               2783
electors at least three per cent of the entire vote cast for                   2784
that office. A group that meets the requirements of this                       2785
division remains a political party for a period of four years                  2786
after meeting those requirements.                                              2787

(b) The group filed with the secretary of state,                           2788
subsequent to its failure to meet the requirements of division                2789
(A)(1)(a) of this section, a party formation petition that meets               2790
all of the following requirements:                                             2791

(i) The petition is signed by qualified electors equal in                  2792
number to at least one per cent of the total vote for governor                 2793
or nominees for presidential electors at the most recent                       2794
election for such office.                                                      2795

(ii) The petition is signed by not fewer than five hundred                 2796
qualified electors from each of at least a minimum of one-half                 2797
of the congressional districts in this state. If an odd number                 2798

of congressional districts exists in this state, the number of 2799
districts that results from dividing the number of congressional 2800
districts by two shall be rounded up to the next whole number. 2801

(iii) The petition declares the petitioners' intention of 2802
organizing a political party, the name of which shall be stated 2803
in the declaration, and of participating in the succeeding 2804
general election, held in even-numbered years, that occurs more 2805
than one hundred twenty-five days after the date of filing. 2806

(iv) The petition designates a committee of not less than 2807
three nor more than five individuals of the petitioners, who 2808
shall represent the petitioners in all matters relating to the 2809
petition. Notice of all matters or proceedings pertaining to the 2810
petition may be served on the committee, or any of them, either 2811
personally or by registered mail, or by leaving such notice at 2812
the usual place of residence of each of them. 2813

(2) No such group of electors shall assume a name or 2814
designation that is similar, in the opinion of the secretary of 2815
state, to that of an existing political party as to confuse or 2816
mislead the voters at an election. 2817

(B) A campaign committee shall be legally liable for any 2818
debts, contracts, or expenditures incurred or executed in its 2819
name. 2820

(C) Notwithstanding the definitions found in section 2821
3501.01 of the Revised Code, as used in this section and 2822
sections 3517.08 to 3517.14, 3517.99, and 3517.992 of the 2823
Revised Code: 2824

(1) "Campaign committee" means a candidate or a 2825
combination of two or more persons authorized by a candidate 2826
under section 3517.081 of the Revised Code to receive 2827

contributions and make expenditures.

(2) "Campaign treasurer" means an individual appointed by a candidate under section 3517.081 of the Revised Code.

(3) "Candidate" has the same meaning as in division (H) of section 3501.01 of the Revised Code and also includes any person who, at any time before or after an election, receives contributions or makes expenditures or other use of contributions, has given consent for another to receive contributions or make expenditures or other use of contributions, or appoints a campaign treasurer, for the purpose of bringing about the person's nomination or election to public office. When two persons jointly seek the offices of governor and lieutenant governor, "candidate" means the pair of candidates jointly. "Candidate" does not include candidates for election to the offices of member of a county or state central committee, presidential elector, and delegate to a national convention or conference of a political party.

(4) "Continuing association" means an association, other than a campaign committee, political party, legislative campaign fund, political contributing entity, or labor organization, that is intended to be a permanent organization that has a primary purpose other than supporting or opposing specific candidates, political parties, or ballot issues, and that functions on a regular basis throughout the year. "Continuing association" includes organizations that are determined to be not organized for profit under subsection 501 and that are described in subsection 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal Revenue Code.

(5) "Contribution" means a loan, gift, deposit, forgiveness of indebtedness, donation, advance, payment, or

2828
2829
2830
2831
2832
2833
2834
2835
2836
2837
2838
2839
2840
2841
2842
2843
2844
2845
2846
2847
2848
2849
2850
2851
2852
2853
2854
2855
2856
2857

transfer of funds or anything of value, including a transfer of 2858
funds from an inter vivos or testamentary trust or decedent's 2859
estate, and the payment by any person other than the person to 2860
whom the services are rendered for the personal services of 2861
another person, which contribution is made, received, or used 2862
for the purpose of influencing the results of an election. Any 2863
loan, gift, deposit, forgiveness of indebtedness, donation, 2864
advance, payment, or transfer of funds or of anything of value, 2865
including a transfer of funds from an inter vivos or 2866
testamentary trust or decedent's estate, and the payment by any 2867
campaign committee, political action committee, legislative 2868
campaign fund, political party, political contributing entity, 2869
or person other than the person to whom the services are 2870
rendered for the personal services of another person, that is 2871
made, received, or used by a state or county political party, 2872
other than the moneys an entity may receive under sections 2873
3517.101, 3517.1012, and 3517.1013 of the Revised Code, shall be 2874
considered to be a "contribution" for the purpose of section 2875
3517.10 of the Revised Code and shall be included on a statement 2876
of contributions filed under that section. 2877

"Contribution" does not include any of the following: 2878

(a) Services provided without compensation by individuals 2879
volunteering a portion or all of their time on behalf of a 2880
person; 2881

(b) Ordinary home hospitality; 2882

(c) The personal expenses of a volunteer paid for by that 2883
volunteer campaign worker; 2884

(d) Any gift given to an entity pursuant to section 2885
3517.101 of the Revised Code; 2886

(e) Any contribution as defined in section 3517.1011 of                2887
the Revised Code that is made, received, or used to pay the            2888
direct costs of producing or airing an electioneering                  2889
communication;                                                          2890

(f) Any gift given to a state or county political party                2891
for the party's restricted fund under division (A)(2) of section       2892
3517.1012 of the Revised Code;                                         2893

(g) Any gift given to a state political party for deposit              2894
in a Levin account pursuant to section 3517.1013 of the Revised        2895
Code. As used in this division, "Levin account" has the same           2896
meaning as in that section.                                            2897

(h) Any donation given to a transition fund under section              2898
3517.1014 of the Revised Code.                                         2899

(6) "Expenditure" means the disbursement or use of a                   2900
contribution or other funds for the purpose of influencing the         2901
results of an election or of making a charitable donation under        2902
division (G) of section 3517.08 of the Revised Code. Any               2903
disbursement or use of a contribution by a state or county             2904
political party is an expenditure and shall be considered either       2905
to be made for the purpose of influencing the results of an            2906
election or to be made as a charitable donation under division         2907
(G) of section 3517.08 of the Revised Code and shall be reported       2908
on a statement of expenditures filed under section 3517.10 of          2909
the Revised Code. During the thirty days preceding a primary or        2910
general election, any disbursement to pay the direct costs of          2911
producing or airing a broadcast, cable, or satellite                   2912
communication that refers to a clearly identified candidate            2913
shall be considered to be made for the purpose of influencing          2914
the results of that election and shall be reported as an               2915
expenditure or as an independent expenditure under section             2916

3517.10 or 3517.105 of the Revised Code, as applicable, except
that the information required to be reported regarding
contributors for those expenditures or independent expenditures
shall be the same as the information required to be reported
under divisions (D)(1) and (2) of section 3517.1011 of the
Revised Code. 2917 2918 2919 2920 2921 2922

As used in this division, "broadcast, cable, or satellite
communication" and "refers to a clearly identified candidate"
have the same meanings as in section 3517.1011 of the Revised
Code. 2923 2924 2925 2926

(7) "Personal expenses" includes, but is not limited to,
ordinary expenses for accommodations, clothing, food, personal
motor vehicle or airplane, and home telephone. 2927 2928 2929

(8) "Political action committee" means a combination of
two or more persons, the primary or major purpose of which is to
support or oppose any candidate, political party, or issue, or
to influence the result of any election through express
advocacy, and that is not a political party, a campaign
committee, a political contributing entity, or a legislative
campaign fund. "Political action committee" does not include
either of the following: 2930 2931 2932 2933 2934 2935 2936 2937

(a) A continuing association that makes disbursements for
the direct costs of producing or airing electioneering
communications and that does not engage in express advocacy; 2938 2939 2940

(b) A political club that is formed primarily for social
purposes and that consists of one hundred members or less, has
officers and periodic meetings, has less than two thousand five
hundred dollars in its treasury at all times, and makes an
aggregate total contribution of one thousand dollars or less per 2941 2942 2943 2944 2945

calendar year.
2946

(9) "Public office" means any state, county, municipal, township, or district office, except an office of a political party, that is filled by an election and the offices of United States senator and representative.
2947
2948
2949
2950

(10) "Anything of value" has the same meaning as in section 1.03 of the Revised Code.
2951
2952

(11) "Beneficiary of a campaign fund" means a candidate, a public official or employee for whose benefit a campaign fund exists, and any other person who has ever been a candidate or public official or employee and for whose benefit a campaign fund exists.
2953
2954
2955
2956
2957

(12) "Campaign fund" means money or other property, including contributions.
2958
2959

(13) "Public official or employee" has the same meaning as in section 102.01 of the Revised Code.
2960
2961

(14) "Caucus" means all of the members of the house of representatives or all of the members of the senate of the general assembly who are members of the same political party.
2962
2963
2964

(15) "Legislative campaign fund" means a fund that is established as an auxiliary of a state political party and associated with one of the houses of the general assembly.
2965
2966
2967

(16) "In-kind contribution" means anything of value other than money that is used to influence the results of an election or is transferred to or used in support of or in opposition to a candidate, campaign committee, legislative campaign fund, political party, political action committee, or political contributing entity and that is made with the consent of, in
2968
2969
2970
2971
2972
2973

| | |
|---|---|
| coordination, cooperation, or consultation with, or at the | 2974 |
| request or suggestion of the benefited candidate, committee, | 2975 |
| fund, party, or entity. The financing of the dissemination, | 2976 |
| distribution, or republication, in whole or part, of any | 2977 |
| broadcast or of any written, graphic, or other form of campaign | 2978 |
| materials prepared by the candidate, the candidate's campaign | 2979 |
| committee, or their authorized agents is an in-kind contribution | 2980 |
| to the candidate and an expenditure by the candidate. | 2981 |

(17) (17)(a) "Independent expenditure" means an either of the following: 2982 2983

(i) An expenditure by a person advocating the election or defeat of an identified candidate or candidates, that is not made with the consent of, in coordination, cooperation, or consultation with, or at the request or suggestion of any candidate or candidates or of the campaign committee or agent of the candidate or candidates; 2984 2985 2986 2987 2988 2989

(ii) An expenditure by a person advocating support of or opposition to an identified ballot issue or question or to achieve the successful circulation of an initiative or referendum petition in order to place such an issue or question on the ballot, regardless of whether the ballot issue or question has yet been certified to appear on the ballot. As 2990 2991 2992 2993 2994 2995

(b) As used in division (C)(17) (C)(17)(a) of this section: 2996 2997

(a) (i) "Person" means an individual, partnership, unincorporated business organization or association, political action committee, political contributing entity, separate segregated fund, association, or other organization or group of persons, but not a labor organization or a corporation unless 2998 2999 3000 3001 3002

the labor organization or corporation is a political                     3003
contributing entity.                                                     3004

~~(b)~~ (ii) "Advocating" means any communication containing a           3005
message advocating election or defeat.                                   3006

~~(c)~~ (iii) "Identified candidate" means that the name of              3007
the candidate appears, a photograph or drawing of the candidate          3008
appears, or the identity of the candidate is otherwise apparent          3009
by unambiguous reference.                                                3010

~~(d)~~ (iv) "Made in coordination, cooperation, or                      3011
consultation with, or at the request or suggestion of, any               3012
candidate or the campaign committee or agent of the candidate"           3013
means made pursuant to any arrangement, coordination, or                 3014
direction by the candidate, the candidate's campaign committee,          3015
or the candidate's agent prior to the publication, distribution,         3016
display, or broadcast of the communication. An expenditure is            3017
presumed to be so made when it is any of the following:                  3018

~~(i)~~ (I) Based on information about the candidate's plans,             3019
projects, or needs provided to the person making the expenditure         3020
by the candidate, or by the candidate's campaign committee or            3021
agent, with a view toward having an expenditure made;                    3022

~~(ii)~~ (II) Made by or through any person who is, or has               3023
been, authorized to raise or expend funds, who is, or has been,          3024
an officer of the candidate's campaign committee, or who is, or          3025
has been, receiving any form of compensation or reimbursement            3026
from the candidate or the candidate's campaign committee or              3027
agent;                                                                   3028

~~(iii)~~ (III) Except as otherwise provided in division (D)             3029
of section 3517.105 of the Revised Code, made by a political             3030
party in support of a candidate, unless the expenditure is made          3031

by a political party to conduct voter registration or voter          3032
education efforts.                                                    3033

(e) (v) "Agent" means any person who has actual oral or              3034
written authority, either express or implied, to make or to          3035
authorize the making of expenditures on behalf of a candidate,       3036
or means any person who has been placed in a position with the       3037
candidate's campaign committee or organization such that it          3038
would reasonably appear that in the ordinary course of campaign-     3039
related activities the person may authorize expenditures.            3040

(18) "Labor organization" means a labor union; an employee           3041
organization; a federation of labor unions, groups, locals, or       3042
other employee organizations; an auxiliary of a labor union,         3043
employee organization, or federation of labor unions, groups,        3044
locals, or other employee organizations; or any other bona fide      3045
organization in which employees participate and that exists for      3046
the purpose, in whole or in part, of dealing with employers          3047
concerning grievances, labor disputes, wages, hours, and other       3048
terms and conditions of employment.                                  3049

(19) "Separate segregated fund" means a separate                     3050
segregated fund established pursuant to the Federal Election          3051
Campaign Act.                                                         3052

(20) "Federal Election Campaign Act" means the "Federal              3053
Election Campaign Act of 1971," 86 Stat. 11, 2 U.S.C.A. 431, et      3054
seq., as amended.                                                    3055

(21) "Restricted fund" means the fund a state or county              3056
political party must establish under division (A)(1) of section      3057
3517.1012 of the Revised Code.                                       3058

(22) "Electioneering communication" has the same meaning             3059
as in section 3517.1011 of the Revised Code.                         3060

(23) "Express advocacy" means a communication that contains express words advocating the nomination, election, or defeat of a candidate or that contains express words advocating the adoption or defeat of a question or issue, as determined by a final judgment of a court of competent jurisdiction. 3061 3062 3063 3064 3065

(24) "Political committee" has the same meaning as in section 3517.1011 of the Revised Code. 3066 3067

(25) "Political contributing entity" means any entity, including a corporation or labor organization, that may lawfully make contributions and expenditures and that is not an individual or a political action committee, continuing association, campaign committee, political party, legislative campaign fund, designated state campaign committee, or state candidate fund. For purposes of this division, "lawfully" means not prohibited by any section of the Revised Code, or authorized by a final judgment of a court of competent jurisdiction. 3068 3069 3070 3071 3072 3073 3074 3075 3076

(26) "Internet identifier of record" has the same meaning as in section 9.312 of the Revised Code. 3077 3078

**Sec. 3517.10.** (A) Except as otherwise provided in this division, every campaign committee, political action committee, legislative campaign fund, political party, and political contributing entity that made or received a contribution or made an expenditure in connection with the nomination or election of any candidate or in connection with any ballot issue or question at any election held or to be held in this state shall file, on a form prescribed under this section or by electronic means of transmission as provided in this section and section 3517.106 of the Revised Code, a full, true, and itemized statement, made under penalty of election falsification, setting forth in detail the contributions and expenditures, not later than four p.m. of 3079 3080 3081 3082 3083 3084 3085 3086 3087 3088 3089 3090

the following dates: 3091

(1) The twelfth day before the election to reflect contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the twentieth day before the election; 3092
3093
3094
3095
3096

(2) The thirty-eighth day after the election to reflect the contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the seventh day before the filing of the statement; 3097
3098
3099
3100
3101

(3) The last business day of January of every year to reflect the contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the last day of December of the previous year; 3102
3103
3104
3105
3106

(4) The last business day of July of every year to reflect the contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the last day of June of that year. 3107
3108
3109
3110
3111

A campaign committee shall only be required to file the statements prescribed under divisions (A)(1) and (2) of this section in connection with the nomination or election of the committee's candidate. 3112
3113
3114
3115

The statement required under division (A)(1) of this section shall not be required of any campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity that has received 3116
3117
3118
3119

| | |
|---|---|
| contributions of less than one thousand dollars and has made | 3120 |
| expenditures of less than one thousand dollars at the close of | 3121 |
| business on the twentieth day before the election. Those | 3122 |
| contributions and expenditures shall be reported in the | 3123 |
| statement required under division (A)(2) of this section. | 3124 |
| If an election to select candidates to appear on the | 3125 |
| general election ballot is held within sixty days before a | 3126 |
| general election, the campaign committee of a successful | 3127 |
| candidate in the earlier election may file the statement | 3128 |
| required by division (A)(1) of this section for the general | 3129 |
| election instead of the statement required by division (A)(2) of | 3130 |
| this section for the earlier election if the pregeneral election | 3131 |
| statement reflects the status of contributions and expenditures | 3132 |
| for the period twenty days before the earlier election to twenty | 3133 |
| days before the general election. | 3134 |
| If a person becomes a candidate less than twenty days | 3135 |
| before an election, the candidate's campaign committee is not | 3136 |
| required to file the statement required by division (A)(1) of | 3137 |
| this section. | 3138 |
| No statement under division (A)(3) of this section shall | 3139 |
| be required for any year in which a campaign committee, | 3140 |
| political action committee, legislative campaign fund, political | 3141 |
| party, or political contributing entity is required to file a | 3142 |
| postgeneral election statement under division (A)(2) of this | 3143 |
| section. However, a statement under division (A)(3) of this | 3144 |
| section may be filed, at the option of the campaign committee, | 3145 |
| political action committee, legislative campaign fund, political | 3146 |
| party, or political contributing entity. | 3147 |
| No campaign committee of a candidate for the office of | 3148 |
| chief justice or justice of the supreme court, and no campaign | 3149 |

committee of a candidate for the office of judge of any court in this state, shall be required to file a statement under division (A)(4) of this section. 3150 3151 3152

Except as otherwise provided in this paragraph and in the next paragraph of this section, the only campaign committees required to file a statement under division (A)(4) of this section are the campaign committee of a statewide candidate and the campaign committee of a candidate for county office. The campaign committee of a candidate for any other nonjudicial office is required to file a statement under division (A)(4) of this section if that campaign committee receives, during that period, contributions exceeding ten thousand dollars. 3153 3154 3155 3156 3157 3158 3159 3160 3161

No statement under division (A)(4) of this section shall be required of a campaign committee, a political action committee, a legislative campaign fund, a political party, or a political contributing entity for any year in which the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity is required to file a postprimary election statement under division (A)(2) of this section. However, a statement under division (A) (4) of this section may be filed at the option of the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity. 3162 3163 3164 3165 3166 3167 3168 3169 3170 3171 3172

No statement under division (A)(3) or (4) of this section shall be required if the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity has no contributions that it has received and no expenditures that it has made since the last date reflected in its last previously filed statement. However, the campaign committee, political action committee, legislative 3173 3174 3175 3176 3177 3178 3179

|                                                                          |      |
|--------------------------------------------------------------------------|------|
| campaign fund, political party, or political contributing entity         | 3180 |
| shall file a statement to that effect, on a form prescribed              | 3181 |
| under this section and made under penalty of election                    | 3182 |
| falsification, on the date required in division (A)(3) or (4) of         | 3183 |
| this section, as applicable.                                             | 3184 |
| The campaign committee of a statewide candidate shall file               | 3185 |
| a monthly statement of contributions received during each of the         | 3186 |
| months of July, August, and September in the year of the general         | 3187 |
| election in which the candidate seeks office. The campaign               | 3188 |
| committee of a statewide candidate shall file the monthly                | 3189 |
| statement not later than three business days after the last day          | 3190 |
| of the month covered by the statement. During the period                 | 3191 |
| beginning on the nineteenth day before the general election in           | 3192 |
| which a statewide candidate seeks election to office and                 | 3193 |
| extending through the day of that general election, each time            | 3194 |
| the campaign committee of the joint candidates for the offices           | 3195 |
| of governor and lieutenant governor or of a candidate for the            | 3196 |
| office of secretary of state, auditor of state, treasurer of             | 3197 |
| state, or attorney general receives a contribution from a                | 3198 |
| contributor that causes the aggregate amount of contributions            | 3199 |
| received from that contributor during that period to equal or            | 3200 |
| exceed ten thousand dollars and each time the campaign committee         | 3201 |
| of a candidate for the office of chief justice or justice of the         | 3202 |
| supreme court receives a contribution from a contributor that            | 3203 |
| causes the aggregate amount of contributions received from that          | 3204 |
| contributor during that period to exceed ten thousand dollars,           | 3205 |
| the campaign committee shall file a two-business-day statement           | 3206 |
| reflecting that contribution. Contributions reported on a two-           | 3207 |
| business-day statement required to be filed by a campaign                | 3208 |
| committee of a statewide candidate in a primary election shall           | 3209 |
| also be included in the postprimary election statement required          | 3210 |

to be filed by that campaign committee under division (A)(2) of 3211
this section. A two-business-day statement required by this 3212
paragraph shall be filed not later than two business days after 3213
receipt of the contribution. The statements required by this 3214
paragraph shall be filed in addition to any other statements 3215
required by this section. 3216

Subject to the secretary of state having implemented, 3217
tested, and verified the successful operation of any system the 3218
secretary of state prescribes pursuant to divisions (C)(6)(b) 3219
and (D)(6) of this section and division (F)(1) of section 3220
3517.106 of the Revised Code for the filing of campaign finance 3221
statements by electronic means of transmission, a campaign 3222
committee of a statewide candidate shall file a two-business-day 3223
statement under the preceding paragraph by electronic means of 3224
transmission if the campaign committee is required to file a 3225
pre-election, postelection, or monthly statement of 3226
contributions and expenditures by electronic means of 3227
transmission under this section or section 3517.106 of the 3228
Revised Code. 3229

If a campaign committee or political action committee has 3230
no balance on hand and no outstanding obligations and desires to 3231
terminate itself, it shall file a statement to that effect, on a 3232
form prescribed under this section and made under penalty of 3233
election falsification, with the official with whom it files a 3234
statement under division (A) of this section after filing a 3235
final statement of contributions and a final statement of 3236
expenditures, if contributions have been received or 3237
expenditures made since the period reflected in its last 3238
previously filed statement. 3239

(B) Except as otherwise provided in division (C)(7) of 3240

this section, each statement required by division (A) of this section shall contain the following information: 3241 3242

(1) The full name and address of each campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity, including any treasurer of the committee, fund, party, or entity, filing a contribution and expenditure statement; 3243 3244 3245 3246 3247

(2)(a) In the case of a campaign committee, the candidate's full name and address; 3248 3249

(b) In the case of a political action committee, the registration number assigned to the committee under division (D) (1) of this section. 3250 3251 3252

(3) The date of the election and whether it was or will be a general, primary, or special election; 3253 3254

(4) A statement of contributions received, which shall include the following information: 3255 3256

(a) The month, day, and year of the contribution; 3257

(b)(i) The full name and address of each person, political party, campaign committee, legislative campaign fund, political action committee, or political contributing entity from whom contributions are received and the registration number assigned to the political action committee under division (D)(1) of this section. The requirement of filing the full address does not apply to any statement filed by a state or local committee of a political party, to a finance committee of such committee, or to a committee recognized by a state or local committee as its fund-raising auxiliary. Notwithstanding division (F) of this section, the requirement of filing the full address shall be considered as being met if the address filed is the same address 3258 3259 3260 3261 3262 3263 3264 3265 3266 3267 3268 3269

the contributor provided under division (E)(1) of this section. 3270

(ii) If a political action committee, political
contributing entity, legislative campaign fund, or political
party that is required to file campaign finance statements by
electronic means of transmission under section 3517.106 of the
Revised Code or a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution from an individual that exceeds one
hundred dollars, the name of the individual's current employer,
if any, or, if the individual is self-employed, the individual's
occupation and the name of the individual's business, if any; 3271 3272 3273 3274 3275 3276 3277 3278 3279 3280

(iii) If a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution transmitted pursuant to section 3599.031
of the Revised Code from amounts deducted from the wages and
salaries of two or more employees that exceeds in the aggregate
one hundred dollars during any one filing period under division
(A)(1), (2), (3), or (4) of this section, the full name of the
employees' employer and the full name of the labor organization
of which the employees are members, if any. 3281 3282 3283 3284 3285 3286 3287 3288 3289

(c) A description of the contribution received, if other
than money; 3290 3291

(d) The value in dollars and cents of the contribution; 3292

(e) A separately itemized account of all contributions and
expenditures regardless of the amount, except a receipt of a
contribution from a person in the sum of twenty-five dollars or
less at one social or fund-raising activity and a receipt of a
contribution transmitted pursuant to section 3599.031 of the
Revised Code from amounts deducted from the wages and salaries 3293 3294 3295 3296 3297 3298

of employees if the contribution from the amount deducted from 3299
the wages and salary of any one employee is twenty-five dollars 3300
or less aggregated in a calendar year. An account of the total 3301
contributions from each social or fund-raising activity shall 3302
include a description of and the value of each in-kind 3303
contribution received at that activity from any person who made 3304
one or more such contributions whose aggregate value exceeded 3305
two hundred fifty dollars and shall be listed separately, 3306
together with the expenses incurred and paid in connection with 3307
that activity. A campaign committee, political action committee, 3308
legislative campaign fund, political party, or political 3309
contributing entity shall keep records of contributions from 3310
each person in the amount of twenty-five dollars or less at one 3311
social or fund-raising activity and contributions from amounts 3312
deducted under section 3599.031 of the Revised Code from the 3313
wages and salary of each employee in the amount of twenty-five 3314
dollars or less aggregated in a calendar year. No continuing 3315
association that is recognized by a state or local committee of 3316
a political party as an auxiliary of the party and that makes a 3317
contribution from funds derived solely from regular dues paid by 3318
members of the auxiliary shall be required to list the name or 3319
address of any members who paid those dues. 3320

Contributions that are other income shall be itemized 3321
separately from all other contributions. The information 3322
required under division (B)(4) of this section shall be provided 3323
for all other income itemized. As used in this paragraph, "other 3324
income" means a loan, investment income, or interest income. 3325

(f) In the case of a campaign committee of a state elected 3326
officer, if a person doing business with the state elected 3327
officer in the officer's official capacity makes a contribution 3328
to the campaign committee of that officer, the information 3329

required under division (B)(4) of this section in regard to that 3330
contribution, which shall be filed together with and considered 3331
a part of the committee's statement of contributions as required 3332
under division (A) of this section but shall be filed on a 3333
separate form provided by the secretary of state. As used in 3334
this division: 3335

(i) "State elected officer" has the same meaning as in 3336
section 3517.092 of the Revised Code. 3337

(ii) "Person doing business" means a person or an officer 3338
of an entity who enters into one or more contracts with a state 3339
elected officer or anyone authorized to enter into contracts on 3340
behalf of that officer to receive payments for goods or 3341
services, if the payments total, in the aggregate, more than 3342
five thousand dollars during a calendar year. 3343

(5) A statement of expenditures which shall include the 3344
following information: 3345

(a) The month, day, and year of the expenditure; 3346

(b) The full name and address of each person, political 3347
party, campaign committee, legislative campaign fund, political 3348
action committee, or political contributing entity to whom the 3349
expenditure was made and the registration number assigned to the 3350
political action committee under division (D)(1) of this 3351
section; 3352

(c) The object or purpose for which the expenditure was 3353
made; 3354

(d) The amount of each expenditure. 3355

(C)(1) The statement of contributions and expenditures 3356
shall be signed by the person completing the form. If a 3357

statement of contributions and expenditures is filed by            3358
electronic means of transmission pursuant to this section or       3359
section 3517.106 of the Revised Code, the electronic signature     3360
of the person who executes the statement and transmits the         3361
statement by electronic means of transmission, as provided in      3362
division (F) of section 3517.106 of the Revised Code, shall be     3363
attached to or associated with the statement and shall be          3364
binding on all persons and for all purposes under the campaign     3365
finance reporting law as if the signature had been handwritten     3366
in ink on a printed form.                                          3367

(2) The person filing the statement, under penalty of         3368
election falsification, shall include with it a both of the        3369
following:                                                         3370

(a) A list of each anonymous contribution, the               3371
circumstances under which it was received, and the reason it       3372
cannot be attributed to a specific donor;                          3373

(b) A certification that the campaign committee, political   3374
action committee, legislative campaign fund, political party, or   3375
political contributing entity, as applicable, has not knowingly    3376
accepted any contribution that is prohibited under this chapter    3377
or section 3599.03 or 3599.031 of the Revised Code, including      3378
under division (W) of section 3517.13 of the Revised Code,         3379
during the period covered by the statement.                        3380

(3) Each statement of a campaign committee of a candidate    3381
who holds public office shall contain a designation of each        3382
contributor who is an employee in any unit or department under     3383
the candidate's direct supervision and control. In a space         3384
provided in the statement, the person filing the statement shall   3385
affirm that each such contribution was voluntarily made.           3386

(4) A campaign committee that did not receive
contributions or make expenditures in connection with the
nomination or election of its candidate shall file a statement
to that effect, on a form prescribed under this section and made
under penalty of election falsification, on the date required in
division (A)(2) of this section. 3387
3388
3389
3390
3391
3392

(5) The campaign committee of any person who attempts to
become a candidate and who, for any reason, does not become
certified in accordance with Title XXXV of the Revised Code for
placement on the official ballot of a primary, general, or
special election to be held in this state, and who, at any time
prior to or after an election, receives contributions or makes
expenditures, or has given consent for another to receive
contributions or make expenditures, for the purpose of bringing
about the person's nomination or election to public office,
shall file the statement or statements prescribed by this
section and a termination statement, if applicable. Division (C)
(5) of this section does not apply to any person with respect to
an election to the offices of member of a county or state
central committee, presidential elector, or delegate to a
national convention or conference of a political party. 3393
3394
3395
3396
3397
3398
3399
3400
3401
3402
3403
3404
3405
3406
3407

(6)(a) The statements required to be filed under this
section shall specify the balance in the hands of the campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity and the
disposition intended to be made of that balance. 3408
3409
3410
3411
3412

(b) The secretary of state shall prescribe the form for
all statements required to be filed under this section and shall
furnish the forms to the boards of elections in the several
counties. The boards of elections shall supply printed copies of 3413
3414
3415
3416

those forms without charge. The secretary of state shall 3417
prescribe the appropriate methodology, protocol, and data file 3418
structure for statements required or permitted to be filed by 3419
electronic means of transmission to the secretary of state or a 3420
board of elections under division (A) of this section, division 3421
(E) of section 3517.106, division (D) of section 3517.1011, 3422
division (B) of section 3517.1012, division (C) of section 3423
3517.1013, and divisions (D) and (I) of section 3517.1014 of the 3424
Revised Code. Subject to division (A) of this section, division 3425
(E) of section 3517.106, division (D) of section 3517.1011, 3426
division (B) of section 3517.1012, division (C) of section 3427
3517.1013, and divisions (D) and (I) of section 3517.1014 of the 3428
Revised Code, the statements required to be stored on computer 3429
by the secretary of state under division (B) of section 3517.106 3430
of the Revised Code shall be filed in whatever format the 3431
secretary of state considers necessary to enable the secretary 3432
of state to store the information contained in the statements on 3433
computer. Any such format shall be of a type and nature that is 3434
readily available to whoever is required to file the statements 3435
in that format. 3436

(c) The secretary of state shall assess the need for 3437
training regarding the filing of campaign finance statements by 3438
electronic means of transmission and regarding associated 3439
technologies for candidates, campaign committees, political 3440
action committees, legislative campaign funds, political 3441
parties, or political contributing entities, for individuals, 3442
partnerships, or other entities, for persons making 3443
disbursements to pay the direct costs of producing or airing 3444
electioneering communications, or for treasurers of transition 3445
funds, required or permitted to file statements by electronic 3446
means of transmission under this section or section 3517.105, 3447

3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014 of the 3448
Revised Code. If, in the opinion of the secretary of state, 3449
training in these areas is necessary, the secretary of state 3450
shall arrange for the provision of voluntary training programs 3451
for candidates, campaign committees, political action 3452
committees, legislative campaign funds, political parties, or 3453
political contributing entities, for individuals, partnerships, 3454
and other entities, for persons making disbursements to pay the 3455
direct costs of producing or airing electioneering 3456
communications, or for treasurers of transition funds, as 3457
appropriate. 3458

(7) Each monthly statement and each two-business-day 3459
statement required by division (A) of this section shall contain 3460
the information required by divisions (B)(1) to (4), (C)(2), 3461
and, if appropriate, (C)(3) of this section. Each statement 3462
shall be signed as required by division (C)(1) of this section. 3463

(D)(1)(a) Prior to receiving a contribution or making an 3464
expenditure, every campaign committee, political action 3465
committee, legislative campaign fund, political party, or 3466
political contributing entity shall appoint a treasurer and 3467
shall file, on a form prescribed by the secretary of state, a 3468
designation of that appointment, including the full name and 3469
address of the treasurer and of the campaign committee, 3470
political action committee, legislative campaign fund, political 3471
party, or political contributing entity. That designation shall 3472
be filed with the official with whom the campaign committee, 3473
political action committee, legislative campaign fund, political 3474
party, or political contributing entity is required to file 3475
statements under section 3517.11 of the Revised Code. The name 3476
of a campaign committee shall include at least the last name of 3477
the campaign committee's candidate. If two or more candidates 3478

are the beneficiaries of a single campaign committee under                    3479
division (B) of section 3517.081 of the Revised Code, the name                3480
of the campaign committee shall include at least the last name               3481
of each candidate who is a beneficiary of that campaign                       3482
committee. The secretary of state shall assign a registration                3483
number to each political action committee that files a                        3484
designation of the appointment of a treasurer under this                      3485
division if the political action committee is required by                     3486
division (A)(1) of section 3517.11 of the Revised Code to file                3487
the statements prescribed by this section with the secretary of              3488
state.                                                                        3489

   (b) The form of the designation of treasurer shall require                 3490
the filer to certify, under penalty of election falsification,               3491
that the campaign committee, political action committee,                      3492
legislative campaign fund, political party, or political                      3493
contributing entity, as applicable, has not knowingly accepted,              3494
and will not knowingly accept, any contribution that is                       3495
prohibited under this chapter or section 3599.03 or 3599.031 of              3496
the Revised Code, including under division (W) of section                     3497
3517.13 of the Revised Code.                                                  3498

   (c) The secretary of state shall not accept for filing a                   3499
designation of treasurer of a political action committee or                  3500
political contributing entity if, in the opinion of the                      3501
secretary of state, the name of the political action committee               3502
or political contributing entity would lead a reasonable person              3503
to believe that the political action committee or political                   3504
contributing entity acts on behalf of or represents a county                 3505
political party, unless the designation is accompanied by a                   3506
written statement, signed by the chairperson of the county                    3507
political party's executive committee, granting the political                 3508
action committee or political contributing entity permission to              3509

act on behalf of or represent the county political party. 3510

(2) The treasurer appointed under division (D)(1) of this
section shall keep a strict account of all contributions, from
whom received and the purpose for which they were disbursed. 3511 3512 3513

(3)(a) Except as otherwise provided in section 3517.108 of
the Revised Code, a campaign committee shall deposit all
monetary contributions received by the committee into an account
separate from a personal or business account of the candidate or
campaign committee. 3514 3515 3516 3517 3518

(b) A political action committee shall deposit all
monetary contributions received by the committee into an account
separate from all other funds. 3519 3520 3521

(c) A state or county political party may establish a
state candidate fund that is separate from all other funds. A
state or county political party may deposit into its state
candidate fund any amounts of monetary contributions that are
made to or accepted by the political party subject to the
applicable limitations, if any, prescribed in section 3517.102
of the Revised Code. A state or county political party shall
deposit all other monetary contributions received by the party
into one or more accounts that are separate from its state
candidate fund. 3522 3523 3524 3525 3526 3527 3528 3529 3530 3531

(d) Each state political party shall have only one
legislative campaign fund for each house of the general
assembly. Each such fund shall be separate from any other funds
or accounts of that state party. A legislative campaign fund is
authorized to receive contributions and make expenditures for
the primary purpose of furthering the election of candidates who
are members of that political party to the house of the general 3532 3533 3534 3535 3536 3537 3538

assembly with which that legislative campaign fund is 3539
associated. Each legislative campaign fund shall be administered 3540
and controlled in a manner designated by the caucus. As used in 3541
this division, "caucus" has the same meaning as in section 3542
3517.01 of the Revised Code and includes, as an ex officio 3543
member, the chairperson of the state political party with which 3544
the caucus is associated or that chairperson's designee. 3545

(4) Every expenditure in excess of twenty-five dollars 3546
shall be vouched for by a receipted bill, stating the purpose of 3547
the expenditure, that shall be filed with the statement of 3548
expenditures. A canceled check with a notation of the purpose of 3549
the expenditure is a receipted bill for purposes of division (D) 3550
(4) of this section. 3551

(5) The secretary of state or the board of elections, as 3552
the case may be, shall issue a receipt for each statement filed 3553
under this section and shall preserve a copy of the receipt for 3554
a period of at least six years. All statements filed under this 3555
section shall be open to public inspection in the office where 3556
they are filed and shall be carefully preserved for a period of 3557
at least six years after the year in which they are filed. 3558

(6) The secretary of state, by rule adopted pursuant to 3559
section 3517.23 of the Revised Code, shall prescribe both of the 3560
following: 3561

(a) The manner of immediately acknowledging, with date and 3562
time received, and preserving the receipt of statements that are 3563
transmitted by electronic means of transmission to the secretary 3564
of state or a board of elections pursuant to this section or 3565
section 3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014 3566
of the Revised Code; 3567

(b) The manner of preserving the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in the statements described in division
(D)(6)(a) of this section. The secretary of state shall preserve
the contribution and expenditure, contribution and disbursement,
deposit and disbursement, gift and disbursement, or donation and
disbursement information in those statements for at least ten
years after the year in which they are filed by electronic means
of transmission. 3568
3569
3570
3571
3572
3573
3574
3575
3576
3577

(7)(a) The secretary of state, pursuant to division (G) of
section 3517.106 of the Revised Code, shall make available
online to the public through the internet the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in all of the following documents: 3578
3579
3580
3581
3582
3583

(i) All statements, all addenda, amendments, or other
corrections to statements, and all amended statements filed with
the secretary of state by electronic or other means of
transmission under this section, division (B)(2)(b) or (C)(2)(b)
of section 3517.105, or section 3517.106, 3517.1011, 3517.1012,
3517.1013, 3517.1014, or 3517.11 of the Revised Code; 3584
3585
3586
3587
3588
3589

(ii) All statements filed with a board of elections by
electronic means of transmission, and all addenda, amendments,
corrections, and amended versions of those statements, filed
with the board under this section, division (B)(2)(b) or (C)(2)
(b) of section 3517.105, or section 3517.106, 3517.1012, or
3517.11 of the Revised Code. 3590
3591
3592
3593
3594
3595

(b) The secretary of state may remove the information from
the internet after a reasonable period of time. 3596
3597

(E)(1) Any person, political party, campaign committee, 3598
legislative campaign fund, political action committee, or 3599
political contributing entity that makes a contribution in 3600
connection with the nomination or election of any candidate or 3601
in connection with any ballot issue or question at any election 3602
held or to be held in this state shall provide its full name and 3603
address to the recipient of the contribution at the time the 3604
contribution is made. The political action committee also shall 3605
provide the registration number assigned to the committee under 3606
division (D)(1) of this section to the recipient of the 3607
contribution at the time the contribution is made. 3608

(2) Any individual who makes a contribution that exceeds 3609
one hundred dollars to a political action committee, political 3610
contributing entity, legislative campaign fund, or political 3611
party or to a campaign committee of a statewide candidate or 3612
candidate for the office of member of the general assembly shall 3613
provide the name of the individual's current employer, if any, 3614
or, if the individual is self-employed, the individual's 3615
occupation and the name of the individual's business, if any, to 3616
the recipient of the contribution at the time the contribution 3617
is made. Sections 3599.39 and 3599.40 of the Revised Code do not 3618
apply to division (E)(2) of this section. 3619

(3) If a campaign committee shows that it has exercised 3620
its best efforts to obtain, maintain, and submit the information 3621
required under divisions (B)(4)(b)(ii) and (iii) of this 3622
section, that committee is considered to have met the 3623
requirements of those divisions. A campaign committee shall not 3624
be considered to have exercised its best efforts unless, in 3625
connection with written solicitations, it regularly includes a 3626
written request for the information required under division (B) 3627
(4)(b)(ii) of this section from the contributor or the 3628

information required under division (B)(4)(b)(iii) of this
section from whoever transmits the contribution. 3629
3630

(4) Any check that a political action committee uses to
make a contribution or an expenditure shall contain the full
name and address of the committee and the registration number
assigned to the committee under division (D)(1) of this section. 3631
3632
3633
3634

(F) As used in this section: 3635

(1)(a) Except as otherwise provided in division (F)(1) of
this section, "address" means all of the following if they
exist: apartment number, street, road, or highway name and
number, rural delivery route number, city or village, state, and
zip code as used in a person's post-office address, but not
post-office box. 3636
3637
3638
3639
3640
3641

(b) Except as otherwise provided in division (F)(1) of
this section, if an address is required in this section, a post-
office box and office, room, or suite number may be included in
addition to, but not in lieu of, an apartment, street, road, or
highway name and number. 3642
3643
3644
3645
3646

(c) If an address is required in this section, a campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity may use
the business or residence address of its treasurer or deputy
treasurer. The post-office box number of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity may be used in addition
to that address. 3647
3648
3649
3650
3651
3652
3653
3654

(d) For the sole purpose of a campaign committee's
reporting of contributions on a statement of contributions
received under division (B)(4) of this section, "address" has 3655
3656
3657

one of the following meanings at the option of the campaign
committee: 3658
3659

(i) The same meaning as in division (F)(1)(a) of this
section; 3660
3661

(ii) All of the following, if they exist: the
contributor's post-office box number and city or village, state,
and zip code as used in the contributor's post-office address. 3662
3663
3664

(e) As used with regard to the reporting under this
section of any expenditure, "address" means all of the following
if they exist: apartment number, street, road, or highway name
and number, rural delivery route number, city or village, state,
and zip code as used in a person's post-office address, or post-
office box. If an address concerning any expenditure is required
in this section, a campaign committee, political action
committee, legislative campaign fund, political party, or
political contributing entity may use the business or residence
address of its treasurer or deputy treasurer or its post-office
box number. 3665
3666
3667
3668
3669
3670
3671
3672
3673
3674
3675

(2) "Statewide candidate" means the joint candidates for
the offices of governor and lieutenant governor or a candidate
for the office of secretary of state, auditor of state,
treasurer of state, attorney general, member of the state board
of education, chief justice of the supreme court, or justice of
the supreme court. 3676
3677
3678
3679
3680
3681

(3) "Candidate for county office" means a candidate for
the office of county auditor, county treasurer, clerk of the
court of common pleas, judge of the court of common pleas,
sheriff, county recorder, county engineer, county commissioner,
prosecuting attorney, or coroner. 3682
3683
3684
3685
3686

(G) An independent expenditure shall be reported whenever and in the same manner that an expenditure is required to be reported under this section and shall be reported pursuant to division (B)(2)(a) or (C)(2)(a) of section 3517.105 of the Revised Code. 3687
3688
3689
3690
3691

(H)(1) Except as otherwise provided in division (H)(2) of this section, if, during the combined pre-election and postelection reporting periods for an election, a campaign committee has received contributions of five hundred dollars or less and has made expenditures in the total amount of five hundred dollars or less, it may file a statement to that effect, under penalty of election falsification, in lieu of the statement required by division (A)(2) of this section. The statement shall indicate the total amount of contributions received and the total amount of expenditures made during those combined reporting periods. 3692
3693
3694
3695
3696
3697
3698
3699
3700
3701
3702

(2) In the case of a successful candidate at a primary election, if either the total contributions received by or the total expenditures made by the candidate's campaign committee during the preprimary, postprimary, pregeneral, and postgeneral election periods combined equal more than five hundred dollars, the campaign committee may file the statement under division (H)(1) of this section only for the primary election. The first statement that the campaign committee files in regard to the general election shall reflect all contributions received and all expenditures made during the preprimary and postprimary election periods. 3703
3704
3705
3706
3707
3708
3709
3710
3711
3712
3713

(3) Divisions (H)(1) and (2) of this section do not apply if a campaign committee receives contributions or makes expenditures prior to the first day of January of the year of 3714
3715
3716

the election at which the candidate seeks nomination or election 3717
to office or if the campaign committee does not file a 3718
termination statement with its postprimary election statement in 3719
the case of an unsuccessful primary election candidate or with 3720
its postgeneral election statement in the case of other 3721
candidates. 3722

(I) In the case of a contribution made by a partner of a 3723
partnership or an owner or a member of another unincorporated 3724
business from any funds of the partnership or other 3725
unincorporated business, all of the following apply: 3726

(1) The recipient of the contribution shall report the 3727
contribution by listing both the partnership or other 3728
unincorporated business and the name of the partner, owner, or 3729
member making the contribution. 3730

(2) In reporting the contribution, the recipient of the 3731
contribution shall be entitled to conclusively rely upon the 3732
information provided by the partnership or other unincorporated 3733
business, provided that the information includes one of the 3734
following: 3735

(a) The name of each partner, owner, or member as of the 3736
date of the contribution or contributions, and a statement that 3737
the total contributions are to be allocated equally among all of 3738
the partners, owners, or members; or 3739

(b) The name of each partner, owner, or member as of the 3740
date of the contribution or contributions who is participating 3741
in the contribution or contributions, and a statement that the 3742
contribution or contributions are to be allocated to those 3743
individuals in accordance with the information provided by the 3744
partnership or other unincorporated business to the recipient of 3745

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 282 of 879 PAGEID #: 417

the contribution.

(3) For purposes of section 3517.102 of the Revised Code, the contribution shall be considered to have been made by the partner, owner, or member reported under division (I)(1) of this section.

(4) No contribution from a partner of a partnership or an owner or a member of another unincorporated business shall be accepted from any funds of the partnership or other unincorporated business unless the recipient reports the contribution under division (I)(1) of this section together with the information provided under division (I)(2) of this section.

(5) No partnership or other unincorporated business shall make a contribution or contributions solely in the name of the partnership or other unincorporated business.

(6) As used in division (I) of this section, "partnership or other unincorporated business" includes, but is not limited to, a cooperative, a sole proprietorship, a general partnership, a limited partnership, a limited partnership association, a limited liability partnership, and a limited liability company.

(J) A candidate shall have only one campaign committee at any given time for all of the offices for which the person is a candidate or holds office.

(K)(1) In addition to filing a designation of appointment of a treasurer under division (D)(1) of this section, the campaign committee of any candidate for an elected municipal office that pays an annual amount of compensation of five thousand dollars or less, the campaign committee of any candidate for member of a board of education except member of the state board of education, or the campaign committee of any

3746
3747
3748
3749
3750
3751
3752
3753
3754
3755
3756
3757
3758
3759
3760
3761
3762
3763
3764
3765
3766
3767
3768
3769
3770
3771
3772
3773
3774

candidate for township trustee or township fiscal officer may 3775
sign, under penalty of election falsification, a certificate 3776
attesting that the committee will not accept contributions 3777
during an election period that exceed in the aggregate two 3778
thousand dollars from all contributors and one hundred dollars 3779
from any one individual, and that the campaign committee will 3780
not make expenditures during an election period that exceed in 3781
the aggregate two thousand dollars. 3782

The certificate shall be on a form prescribed by the 3783
secretary of state and shall be filed not later than ten days 3784
after the candidate files a declaration of candidacy and 3785
petition, a nominating petition, or a declaration of intent to 3786
be a write-in candidate. 3787

(2) Except as otherwise provided in division (K)(3) of 3788
this section, a campaign committee that files a certificate 3789
under division (K)(1) of this section is not required to file 3790
the statements required by division (A) of this section. 3791

(3) If, after filing a certificate under division (K)(1) 3792
of this section, a campaign committee exceeds any of the 3793
limitations described in that division during an election 3794
period, the certificate is void and thereafter the campaign 3795
committee shall file the statements required by division (A) of 3796
this section. If the campaign committee has not previously filed 3797
a statement, then on the first statement the campaign committee 3798
is required to file under division (A) of this section after the 3799
committee's certificate is void, the committee shall report all 3800
contributions received and expenditures made from the time the 3801
candidate filed the candidate's declaration of candidacy and 3802
petition, nominating petition, or declaration of intent to be a 3803
write-in candidate. 3804

(4) As used in division (K) of this section, "election                3805
period" means the period of time beginning on the day a person        3806
files a declaration of candidacy and petition, nominating             3807
petition, or declaration of intent to be a write-in candidate         3808
through the day of the election at which the person seeks             3809
nomination to office if the person is not elected to office, or,      3810
if the candidate was nominated in a primary election, the day of      3811
the election at which the candidate seeks office.                     3812

(L) A political contributing entity that receives                     3813
contributions from the dues, membership fees, or other                3814
assessments of its members or from its officers, shareholders,        3815
and employees may report the aggregate amount of contributions        3816
received from those contributors and the number of individuals        3817
making those contributions, for each filing period under              3818
divisions (A)(1), (2), (3), and (4) of this section, rather than      3819
reporting information as required under division (B)(4) of this       3820
section, including, when applicable, the name of the current          3821
employer, if any, of a contributor whose contribution exceeds         3822
one hundred dollars or, if such a contributor is self-employed,       3823
the contributor's occupation and the name of the contributor's        3824
business, if any. Division (B)(4) of this section applies to a        3825
political contributing entity with regard to contributions it         3826
receives from all other contributors.                                 3827

**Sec. 3517.12.** (A) ~~Prior to receiving a contribution or~~        3828
~~making an expenditure, the circulator or~~ If the committee in      3829
charge of an initiative or referendum petition, or supplementary      3830
petition for additional signatures, for the submission to the         3831
electors of a constitutional amendment, proposed law, section,        3832
or item of any law wishes to receive any contribution or make         3833
any expenditure for the purpose of achieving the successful           3834
circulation of the petition, the committee shall ~~appoint a~~        3835

~~treasurer and shall file with the secretary of state, on a form~~     3836
~~prescribed by the secretary of state, a designation of that~~        3837
~~appointment, including the full name and address of the~~           3838
~~treasurer and of the circulator or committee~~file a designation     3839
of treasurer under division (D) of section 3517.10 of the              3840
Revised Code as a political action committee before receiving a        3841
contribution or making an expenditure and thereafter shall             3842
comply with all applicable requirements of this chapter                3843
concerning political action committees.                                 3844

(B) ~~The circulator or~~ If the committee in charge of an             3845
initiative or referendum petition, or supplementary petition for       3846
additional signatures, for the submission to the electors of a         3847
constitutional amendment, proposed law, section, or item of any        3848
law receives no contributions and makes no expenditures for the        3849
purpose of achieving the successful circulation of the petition,       3850
and is not otherwise considered a campaign committee, political        3851
party, legislative campaign fund, political action committee, or       3852
political contributing entity, then the committee shall, within        3853
thirty days after ~~those~~ the petition ~~papers are~~ is filed, file   3854
with the secretary of state, on a form prescribed by the               3855
secretary of state, ~~an itemized~~ a statement~~,~~ made under penalty   3856
of election falsification~~, showing in detail the following:~~          3857

~~(1) All money or things of value paid, given, promised, or~~         3858
~~received for circulating the petitions;~~                             3859

~~(2) All appointments, promotions, or increases in salary,~~          3860
~~in positions which were given, promised, or received, or to~~        3861
~~obtain which assistance was given, promised, or received as a~~       3862
~~consideration for work done in circulating petitions;~~              3863

~~(3) Full names and addresses, including street, city, and~~          3864
~~state, of all persons to whom such payments or promises were~~       3865

~~made and of all persons from whom such payments or promises were~~          3866
~~received;~~                                                                  3867

~~(4) Full names and addresses, including street, city, and~~                  3868
~~state, of all persons who contributed anything of value to be~~             3869
~~used in circulating the petitions, and the amounts of those~~               3870
~~contributions;~~                                                            3871

~~(5) Time spent and salaries earned while soliciting~~                        3872
~~signatures to petitions by persons who were regular salaried~~              3873
~~employees of some person or whom that employer authorized to~~              3874
~~solicit as part of their regular duties.~~                                  3875

~~If~~ that the committee received no ~~money or things of~~                   3876
~~value were paid or received or if no promises were made or~~                3877
~~received as a consideration for work done in circulating a~~                3878
~~petition, the statement shall contain words to that effect~~                3879
contributions and made no expenditures for the purpose of                     3880
achieving the successful circulation of the petition.                         3881

~~(C) The treasurer designated under division (A) of this~~                    3882
~~section shall file statements of contributions and expenditures~~           3883
~~in accordance with section 3517.10 of the Revised Code regarding~~          3884
~~all contributions made or received and all expenditures made by~~           3885
~~that treasurer or the circulator or committee in connection with~~          3886
~~the initiative or referendum petition, or supplementary petition~~          3887
~~for additional signatures, for the submission of a~~                        3888
~~constitutional amendment, proposed law, section, or item of any~~           3889
~~law.~~                                                                       3890

    **Sec. 3517.13.** (A)(1) No campaign committee of a statewide             3891
candidate shall fail to file a complete and accurate statement               3892
required under division (A)(1) of section 3517.10 of the Revised             3893
Code.                                                                         3894

(2) No campaign committee of a statewide candidate shall 3895
fail to file a complete and accurate monthly statement, and no 3896
campaign committee of a statewide candidate or a candidate for 3897
the office of chief justice or justice of the supreme court 3898
shall fail to file a complete and accurate two-business-day 3899
statement, as required under section 3517.10 of the Revised 3900
Code. 3901

As used in this division, "statewide candidate" has the 3902
same meaning as in division (F)(2) of section 3517.10 of the 3903
Revised Code. 3904

(B) No campaign committee shall fail to file a complete 3905
and accurate statement required under division (A)(1) of section 3906
3517.10 of the Revised Code. 3907

(C) No campaign committee shall fail to file a complete 3908
and accurate statement required under division (A)(2) of section 3909
3517.10 of the Revised Code. 3910

(D) No campaign committee shall fail to file a complete 3911
and accurate statement required under division (A)(3) or (4) of 3912
section 3517.10 of the Revised Code. 3913

(E) No person other than a campaign committee shall 3914
knowingly fail to file a statement required under section 3915
3517.10 or 3517.107 of the Revised Code. 3916

(F) No person shall make cash contributions to any person 3917
totaling more than one hundred dollars in each primary, special, 3918
or general election. 3919

(G)(1) No person shall knowingly conceal or misrepresent 3920
contributions given or received, expenditures made, or any other 3921
information required to be reported by a provision in sections 3922
3517.08 to 3517.13 of the Revised Code. 3923

(2)(a) No person shall make a contribution to a campaign committee, political action committee, political contributing entity, legislative campaign fund, political party, or person making disbursements to pay the direct costs of producing or airing electioneering communications in the name of another person. 3924 3925 3926 3927 3928 3929

(b) A person does not make a contribution in the name of another when either of the following applies: 3930 3931

(i) An individual makes a contribution from a partnership or other unincorporated business account, if the contribution is reported by listing both the name of the partnership or other unincorporated business and the name of the partner or owner making the contribution as required under division (I) of section 3517.10 of the Revised Code. 3932 3933 3934 3935 3936 3937

(ii) A person makes a contribution in that person's spouse's name or in both of their names. 3938 3939

(H) No person within this state, publishing a newspaper or other periodical, shall charge a campaign committee for political advertising a rate in excess of the rate such person would charge if the campaign committee were a general rate advertiser whose advertising was directed to promoting its business within the same area as that encompassed by the particular office that the candidate of the campaign committee is seeking. The rate shall take into account the amount of space used, as well as the type of advertising copy submitted by or on behalf of the campaign committee. All discount privileges otherwise offered by a newspaper or periodical to general rate advertisers shall be available upon equal terms to all campaign committees. 3940 3941 3942 3943 3944 3945 3946 3947 3948 3949 3950 3951 3952

No person within this state, operating a radio or
television station or network of stations in this state, shall
charge a campaign committee for political broadcasts a rate that
exceeds: 3953 3954 3955 3956

(1) During the forty-five days preceding the date of a
primary election and during the sixty days preceding the date of
a general or special election in which the candidate of the
campaign committee is seeking office, the lowest unit charge of
the station for the same class and amount of time for the same
period; 3957 3958 3959 3960 3961 3962

(2) At any other time, the charges made for comparable use
of that station by its other users. 3963 3964

(I) Subject to divisions (K), (L), (M), and (N) of this
section, no agency or department of this state or any political
subdivision shall award any contract, other than one let by
competitive bidding or a contract incidental to such contract or
which is by force account, for the purchase of goods costing
more than five hundred dollars or services costing more than
five hundred dollars to any individual, partnership,
association, including, without limitation, a professional
association organized under Chapter 1785. of the Revised Code,
estate, or trust if the individual has made or the individual's
spouse has made, or any partner, shareholder, administrator,
executor, or trustee or the spouse of any of them has made, as
an individual, within the two previous calendar years, one or
more contributions totaling in excess of one thousand dollars to
the holder of the public office having ultimate responsibility
for the award of the contract or to the public officer's
campaign committee. 3965 3966 3967 3968 3969 3970 3971 3972 3973 3974 3975 3976 3977 3978 3979 3980 3981

(J) Subject to divisions (K), (L), (M), and (N) of this 3982

section, no agency or department of this state or any political subdivision shall award any contract, other than one let by competitive bidding or a contract incidental to such contract or which is by force account, for the purchase of goods costing more than five hundred dollars or services costing more than five hundred dollars to a corporation or business trust, except a professional association organized under Chapter 1785. of the Revised Code, if an owner of more than twenty per cent of the corporation or business trust or the spouse of that person has made, as an individual, within the two previous calendar years, taking into consideration only owners for all of that period, one or more contributions totaling in excess of one thousand dollars to the holder of a public office having ultimate responsibility for the award of the contract or to the public officer's campaign committee. 3983 3984 3985 3986 3987 3988 3989 3990 3991 3992 3993 3994 3995 3996 3997

(K) For purposes of divisions (I) and (J) of this section, if a public officer who is responsible for the award of a contract is appointed by the governor, whether or not the appointment is subject to the advice and consent of the senate, excluding members of boards, commissions, committees, authorities, councils, boards of trustees, task forces, and other such entities appointed by the governor, the office of the governor is considered to have ultimate responsibility for the award of the contract. 3998 3999 4000 4001 4002 4003 4004 4005 4006

(L) For purposes of divisions (I) and (J) of this section, if a public officer who is responsible for the award of a contract is appointed by the elected chief executive officer of a municipal corporation, or appointed by the elected chief executive officer of a county operating under an alternative form of county government or county charter, excluding members of boards, commissions, committees, authorities, councils, 4007 4008 4009 4010 4011 4012 4013

boards of trustees, task forces, and other such entities 4014

appointed by the chief executive officer, the office of the 4015

chief executive officer is considered to have ultimate 4016

responsibility for the award of the contract. 4017

(M)(1) Divisions (I) and (J) of this section do not apply 4018

to contracts awarded by the board of commissioners of the 4019

sinking fund, municipal legislative authorities, boards of 4020

education, boards of county commissioners, boards of township 4021

trustees, or other boards, commissions, committees, authorities, 4022

councils, boards of trustees, task forces, and other such 4023

entities created by law, by the supreme court or courts of 4024

appeals, by county courts consisting of more than one judge, 4025

courts of common pleas consisting of more than one judge, or 4026

municipal courts consisting of more than one judge, or by a 4027

division of any court if the division consists of more than one 4028

judge. This division shall apply to the specified entity only if 4029

the members of the entity act collectively in the award of a 4030

contract for goods or services. 4031

(2) Divisions (I) and (J) of this section do not apply to 4032

actions of the controlling board. 4033

(N)(1) Divisions (I) and (J) of this section apply to 4034

contributions made to the holder of a public office having 4035

ultimate responsibility for the award of a contract, or to the 4036

public officer's campaign committee, during the time the person 4037

holds the office and during any time such person was a candidate 4038

for the office. Those divisions do not apply to contributions 4039

made to, or to the campaign committee of, a candidate for or 4040

holder of the office other than the holder of the office at the 4041

time of the award of the contract. 4042

(2) Divisions (I) and (J) of this section do not apply to 4043

| | |
|---|---|
| contributions of a partner, shareholder, administrator, | 4044 |
| executor, trustee, or owner of more than twenty per cent of a | 4045 |
| corporation or business trust made before the person held any of | 4046 |
| those positions or after the person ceased to hold any of those | 4047 |
| positions in the partnership, association, estate, trust, | 4048 |
| corporation, or business trust whose eligibility to be awarded a | 4049 |
| contract is being determined, nor to contributions of the | 4050 |
| person's spouse made before the person held any of those | 4051 |
| positions, after the person ceased to hold any of those | 4052 |
| positions, before the two were married, after the granting of a | 4053 |
| decree of divorce, dissolution of marriage, or annulment, or | 4054 |
| after the granting of an order in an action brought solely for | 4055 |
| legal separation. Those divisions do not apply to contributions | 4056 |
| of the spouse of an individual whose eligibility to be awarded a | 4057 |
| contract is being determined made before the two were married, | 4058 |
| after the granting of a decree of divorce, dissolution of | 4059 |
| marriage, or annulment, or after the granting of an order in an | 4060 |
| action brought solely for legal separation. | 4061 |

| | |
|---|---|
| (O) No beneficiary of a campaign fund or other person | 4062 |
| shall convert for personal use, and no person shall knowingly | 4063 |
| give to a beneficiary of a campaign fund or any other person, | 4064 |
| for the beneficiary's or any other person's personal use, | 4065 |
| anything of value from the beneficiary's campaign fund, | 4066 |
| including, without limitation, payments to a beneficiary for | 4067 |
| services the beneficiary personally performs, except as | 4068 |
| reimbursement for any of the following: | 4069 |

| | |
|---|---|
| (1) Legitimate and verifiable prior campaign expenses | 4070 |
| incurred by the beneficiary; | 4071 |

| | |
|---|---|
| (2) Legitimate and verifiable ordinary and necessary prior | 4072 |
| expenses incurred by the beneficiary in connection with duties | 4073 |

as the holder of a public office, including, without limitation, 4074
expenses incurred through participation in nonpartisan or 4075
bipartisan events if the participation of the holder of a public 4076
office would normally be expected; 4077

(3) Legitimate and verifiable ordinary and necessary prior 4078
expenses incurred by the beneficiary while doing any of the 4079
following: 4080

(a) Engaging in activities in support of or opposition to 4081
a candidate other than the beneficiary, political party, or 4082
ballot issue; 4083

(b) Raising funds for a political party, political action 4084
committee, political contributing entity, legislative campaign 4085
fund, campaign committee, or other candidate; 4086

(c) Participating in the activities of a political party, 4087
political action committee, political contributing entity, 4088
legislative campaign fund, or campaign committee; 4089

(d) Attending a political party convention or other 4090
political meeting. 4091

For purposes of this division, an expense is incurred 4092
whenever a beneficiary has either made payment or is obligated 4093
to make payment, as by the use of a credit card or other credit 4094
procedure or by the use of goods or services received on 4095
account. 4096

(P) No beneficiary of a campaign fund shall knowingly 4097
accept, and no person shall knowingly give to the beneficiary of 4098
a campaign fund, reimbursement for an expense under division (O) 4099
of this section to the extent that the expense previously was 4100
reimbursed or paid from another source of funds. If an expense 4101
is reimbursed under division (O) of this section and is later 4102

paid or reimbursed, wholly or in part, from another source of
funds, the beneficiary shall repay the reimbursement received
under division (O) of this section to the extent of the payment
made or reimbursement received from the other source. 4103 4104 4105 4106

(Q) No candidate or public official or employee shall
accept for personal or business use anything of value from a
political party, political action committee, political
contributing entity, legislative campaign fund, or campaign
committee other than the candidate's or public official's or
employee's own campaign committee, and no person shall knowingly
give to a candidate or public official or employee anything of
value from a political party, political action committee,
political contributing entity, legislative campaign fund, or
such a campaign committee, except for the following: 4107 4108 4109 4110 4111 4112 4113 4114 4115 4116

(1) Reimbursement for legitimate and verifiable ordinary
and necessary prior expenses not otherwise prohibited by law
incurred by the candidate or public official or employee while
engaged in any legitimate activity of the political party,
political action committee, political contributing entity,
legislative campaign fund, or such campaign committee. Without
limitation, reimbursable expenses under this division include
those incurred while doing any of the following: 4117 4118 4119 4120 4121 4122 4123 4124

(a) Engaging in activities in support of or opposition to
another candidate, political party, or ballot issue; 4125 4126

(b) Raising funds for a political party, legislative
campaign fund, campaign committee, or another candidate; 4127 4128

(c) Attending a political party convention or other
political meeting. 4129 4130

(2) Compensation not otherwise prohibited by law for 4131

actual and valuable personal services rendered under a written 4132
contract to the political party, political action committee, 4133
political contributing entity, legislative campaign fund, or 4134
such campaign committee for any legitimate activity of the 4135
political party, political action committee, political 4136
contributing entity, legislative campaign fund, or such campaign 4137
committee. 4138

Reimbursable expenses under this division do not include, 4139
and it is a violation of this division for a candidate or public 4140
official or employee to accept, or for any person to knowingly 4141
give to a candidate or public official or employee from a 4142
political party, political action committee, political 4143
contributing entity, legislative campaign fund, or campaign 4144
committee other than the candidate's or public official's or 4145
employee's own campaign committee, anything of value for 4146
activities primarily related to the candidate's or public 4147
official's or employee's own campaign for election, except for 4148
contributions to the candidate's or public official's or 4149
employee's campaign committee. 4150

For purposes of this division, an expense is incurred 4151
whenever a candidate or public official or employee has either 4152
made payment or is obligated to make payment, as by the use of a 4153
credit card or other credit procedure, or by the use of goods or 4154
services on account. 4155

(R)(1) Division (O) or (P) of this section does not 4156
prohibit a campaign committee from making direct advance or post 4157
payment from contributions to vendors for goods and services for 4158
which reimbursement is permitted under division (O) of this 4159
section, except that no campaign committee shall pay its 4160
candidate or other beneficiary for services personally performed 4161

by the candidate or other beneficiary. 4162

(2) If any expense that may be reimbursed under division 4163
(O), (P), or (Q) of this section is part of other expenses that 4164
may not be paid or reimbursed, the separation of the two types 4165
of expenses for the purpose of allocating for payment or 4166
reimbursement those expenses that may be paid or reimbursed may 4167
be by any reasonable accounting method, considering all of the 4168
surrounding circumstances. 4169

(3) For purposes of divisions (O), (P), and (Q) of this 4170
section, mileage allowance at a rate not greater than that 4171
allowed by the internal revenue service at the time the travel 4172
occurs may be paid instead of reimbursement for actual travel 4173
expenses allowable. 4174

(S)(1) As used in division (S) of this section: 4175

(a) "State elective office" has the same meaning as in 4176
section 3517.092 of the Revised Code. 4177

(b) "Federal office" means a federal office as defined in 4178
the Federal Election Campaign Act. 4179

(c) "Federal campaign committee" means a principal 4180
campaign committee or authorized committee as defined in the 4181
Federal Election Campaign Act. 4182

(2) No person who is a candidate for state elective office 4183
and who previously sought nomination or election to a federal 4184
office shall transfer any funds or assets from that person's 4185
federal campaign committee for nomination or election to the 4186
federal office to that person's campaign committee as a 4187
candidate for state elective office. 4188

(3) No campaign committee of a person who is a candidate 4189

for state elective office and who previously sought nomination          4190
or election to a federal office shall accept any funds or assets         4191
from that person's federal campaign committee for that person's          4192
nomination or election to the federal office.                            4193

(T)(1) Except as otherwise provided in division (B)(6)(c)               4194
of section 3517.102 of the Revised Code, a state or county               4195
political party shall not disburse moneys from any account other         4196
than a state candidate fund to make contributions to any of the          4197
following:                                                               4198

(a) A state candidate fund;                                            4199

(b) A legislative campaign fund;                                       4200

(c) A campaign committee of a candidate for the office of              4201
governor, lieutenant governor, secretary of state, auditor of           4202
state, treasurer of state, attorney general, member of the state        4203
board of education, or member of the general assembly.                   4204

(2) No state candidate fund, legislative campaign fund, or             4205
campaign committee of a candidate for any office described in           4206
division (T)(1)(c) of this section shall knowingly accept a             4207
contribution in violation of division (T)(1) of this section.           4208

(U) No person shall fail to file a statement required                  4209
under section 3517.12 of the Revised Code.                               4210

(V) No campaign committee shall fail to file a statement               4211
required under division (K)(3) of section 3517.10 of the Revised        4212
Code.                                                                   4213

(W)(1) No foreign national shall, directly or indirectly               4214
through any other person or entity, ~~make~~ knowingly do any of the     4215
following:                                                              4216

(a) Make a contribution, expenditure, or independent                   4217

expenditure or promise, either expressly or implicitly, to make 4218
a contribution, expenditure, or independent expenditure ~~in~~ 4219
~~support of or opposition to a candidate for any elective office~~ 4220
~~in this state, including an office of a political party~~; 4221

(b) Solicit another person to make a contribution, 4222
expenditure, or independent expenditure; 4223

(c) Make a loan, gift, deposit, forgiveness of 4224
indebtedness, donation, advance, payment, or transfer of funds 4225
to another person with a designation, instruction, or 4226
encumbrance that the foreign national knows will result in any 4227
part of the loan, gift, deposit, forgiveness of indebtedness, 4228
donation, advance, payment, or transfer of funds being used to 4229
make a contribution, expenditure, or independent expenditure. As 4230
used in this division, "designation, instruction, or 4231
encumbrance" includes any designation, instruction, or 4232
encumbrance that is direct or indirect, express or implied, oral 4233
or written, or involving an intermediary or conduit. 4234

(2) No candidate, campaign committee, political action 4235
committee, political contributing entity, legislative campaign 4236
fund, state candidate fund, political party, ~~or~~ separate 4237
segregated fund, or continuing association shall do either of 4238
the following: 4239

(a) Knowingly transfer funds, or accept a transfer of 4240
funds, directly or indirectly into an account from which the 4241
person makes contributions or expenditures from an account that 4242
is controlled by the person or by the person's affiliate and 4243
that the person, at any time, knew to contain funds described in 4244
division (W)(1) of this section that are received directly or 4245
indirectly through another person or entity from a foreign 4246
national. For purposes of this division, a person is affiliated 4247

with another person if they are both established, financed,                    4248
maintained, or controlled by, or if they are, the same person,                 4249
including any parent, subsidiary, division, or department of                   4250
that person.                                                                   4251

(b) Otherwise knowingly solicit or accept a contribution,                      4252
expenditure, or independent expenditure, directly or indirectly                4253
through another person or entity, from a foreign national. ~~The~~             4254
~~secretary of state may direct any candidate, committee, entity,~~            4255
~~fund, or party that accepts a contribution, expenditure, or~~                4256
~~independent expenditure in violation of this division to return~~            4257
~~the contribution, expenditure, or independent expenditure or, if~~           4258
~~it is not possible to return the contribution, expenditure, or~~             4259
~~independent expenditure, then to return instead the value of it,~~           4260
~~to the contributor.~~                                                        4261

(3) No person shall knowingly aid or facilitate a                              4262
violation of division (W)(1) or (2) of this section.                           4263

(4) As used in division (W) of this section, "foreign                          4264
national" ~~has the same meaning as in section 441e(b) of the~~                4265
~~Federal Election Campaign Act~~ means any of the following, as               4266
applicable:                                                                    4267

(a) In the case of an individual, an individual who is not                     4268
a United States citizen or national;                                           4269

(b) A government of a foreign country or of a political                        4270
subdivision of a foreign country;                                              4271

(c) A foreign political party;                                                 4272

(d) A person, other than an individual, that is organized                      4273
under the laws of, or has its principal place of business in, a                4274
foreign country.                                                               4275

(X)(1) No state or county political party shall transfer 4276
any moneys from its restricted fund to any account of the 4277
political party into which contributions may be made or from 4278
which contributions or expenditures may be made. 4279

(2)(a) No state or county political party shall deposit a 4280
contribution or contributions that it receives into its 4281
restricted fund. 4282

(b) No state or county political party shall make a 4283
contribution or an expenditure from its restricted fund. 4284

(3)(a) No corporation or labor organization shall make a 4285
gift or gifts from the corporation's or labor organization's 4286
money or property aggregating more than ten thousand dollars to 4287
any one state or county political party for the party's 4288
restricted fund in a calendar year. 4289

(b) No state or county political party shall accept a gift 4290
or gifts for the party's restricted fund aggregating more than 4291
ten thousand dollars from any one corporation or labor 4292
organization in a calendar year. 4293

(4) No state or county political party shall transfer any 4294
moneys in the party's restricted fund to any other state or 4295
county political party. 4296

(5) No state or county political party shall knowingly 4297
fail to file a statement required under section 3517.1012 of the 4298
Revised Code. 4299

(Y) The administrator of workers' compensation and the 4300
employees of the bureau of workers' compensation shall not 4301
conduct any business with or award any contract, other than one 4302
awarded by competitive bidding, for the purchase of goods 4303
costing more than five hundred dollars or services costing more 4304

than five hundred dollars to any individual, partnership, 4305
association, including, without limitation, a professional 4306
association organized under Chapter 1785. of the Revised Code, 4307
estate, or trust, if the individual has made, or the 4308
individual's spouse has made, or any partner, shareholder, 4309
administrator, executor, or trustee, or the spouses of any of 4310
those individuals has made, as an individual, within the two 4311
previous calendar years, one or more contributions totaling in 4312
excess of one thousand dollars to the campaign committee of the 4313
governor or lieutenant governor or to the campaign committee of 4314
any candidate for the office of governor or lieutenant governor. 4315

(Z) The administrator of workers' compensation and the 4316
employees of the bureau of workers' compensation shall not 4317
conduct business with or award any contract, other than one 4318
awarded by competitive bidding, for the purchase of goods 4319
costing more than five hundred dollars or services costing more 4320
than five hundred dollars to a corporation or business trust, 4321
except a professional association organized under Chapter 1785. 4322
of the Revised Code, if an owner of more than twenty per cent of 4323
the corporation or business trust, or the spouse of the owner, 4324
has made, as an individual, within the two previous calendar 4325
years, taking into consideration only owners for all of such 4326
period, one or more contributions totaling in excess of one 4327
thousand dollars to the campaign committee of the governor or 4328
lieutenant governor or to the campaign committee of any 4329
candidate for the office of governor or lieutenant governor. 4330

**Sec. 3517.155.** (A)(1) Except as otherwise provided in 4331
division (B) of this section, the Ohio elections commission 4332
shall hold its first hearing on a complaint filed with it, other 4333
than a complaint that receives an expedited hearing under 4334
section 3517.156 of the Revised Code, not later than ninety 4335

business days after the complaint is filed unless the commission        4336
has good cause to hold the hearing after that time, in which            4337
case it shall hold the hearing not later than one hundred eighty        4338
business days after the complaint is filed. At the hearing, the         4339
commission shall determine whether or not the failure to act or         4340
the violation alleged in the complaint has occurred and shall do        4341
only one of the following, except as otherwise provided in              4342
~~division (B) of~~ this section or in division (B) of section          4343
3517.151 of the Revised Code:                                          4344

(a) Enter a finding that good cause has been shown not to              4345
impose a fine or not to refer the matter to the appropriate            4346
prosecutor;                                                            4347

(b) Impose a fine under section 3517.993 of the Revised                4348
Code;                                                                  4349

(c) Refer the matter to the appropriate prosecutor~~;~~.               4350

(2) As used in division (A) of this section, "appropriate             4351
prosecutor" means ~~a prosecutor as defined in section 2935.01 of~~    4352
~~the Revised Code and~~ either of the following:                       4353

(a) In the case of a failure to comply with or a violation            4354
of law involving a campaign committee or the committee's               4355
candidate, a political party, a legislative campaign fund, a           4356
political action committee, or a political contributing entity,        4357
that is required to file a statement of contributions and              4358
expenditures with the secretary of state under division (A) of         4359
section 3517.11 of the Revised Code, the ~~prosecutor of Franklin~~    4360
~~county~~ <u>attorney general, except that if the attorney general is</u>  4361
<u>a victim or witness or otherwise involved in the matter,</u>             4362
<u>"appropriate prosecutor" means a county prosecutor whom the</u>          4363
<u>commission deems appropriate to prosecute the matter;</u>                4364

(b)  In the case of a failure to comply with or a violation          4365
of law involving any other campaign committee or committee's         4366
candidate, or any other political party, political action            4367
committee, or political contributing entity, either of the           4368
following as determined by the commission:                           4369

(i)  The ~~prosecutor of Franklin county~~ attorney general,         4370
except that if the attorney general is a victim or witness or        4371
otherwise involved in the matter, the commission shall refer the     4372
matter to the prosecutor described in division (A)(2)(b)(ii) of      4373
this section;                                                        4374

(ii)  The prosecutor of the county in which the candidacy            4375
or ballot question or issue is submitted to the electors or, if      4376
it is submitted in more than one county, the most populous of        4377
those counties, except that if that prosecutor is a victim or        4378
witness or otherwise involved in the matter, the commission          4379
shall refer the matter to the attorney general.                      4380

(3)  When the commission refers a matter to the attorney             4381
general under this section, or when the attorney general assumes     4382
responsibility for the prosecution of a matter under division        4383
(D)(3)(b) of this section, the attorney general may prosecute        4384
the matter with all the rights, privileges, and powers conferred     4385
by law on prosecuting attorneys, including the power to appear       4386
before grand juries and to interrogate witnesses before such         4387
grand juries. These powers of the attorney general are in            4388
addition to any other applicable powers of the attorney general.     4389

(B)  If the commission decides that the evidence is                  4390
insufficient for it to determine whether or not the failure to       4391
act or the violation alleged in the complaint has occurred, the      4392
commission, by the affirmative vote of five members, may request     4393
that an investigatory attorney investigate the complaint. Upon       4394

that request, an investigatory attorney shall make an                          4395
investigation in order to produce sufficient evidence for the                  4396
commission to decide the matter. If the commission requests an                 4397
investigation under this division, for good cause shown by the                 4398
investigatory attorney, the commission may extend by sixty days                4399
the deadline for holding its first hearing on the complaint as                 4400
required in division (A) of this section.                                      4401

(C) The commission shall take one of the actions required                      4402
under division (A) of this section not later than thirty days                  4403
after the close of all the evidence presented.                                 4404

(D)(1) The commission shall make any finding of a failure                      4405
to comply with or a violation of law in regard to a complaint                  4406
that alleges a violation of division (A) or (B) of section                     4407
3517.21, or division (A) or (B) of section 3517.22 of the                      4408
Revised Code by clear and convincing evidence. The commission                  4409
shall make any finding of a failure to comply with or a                        4410
violation of law in regard to any other complaint by a                         4411
preponderance of the evidence.                                                 4412

(2) If the commission finds a violation of division (B) of                     4413
section 3517.21 or division (B) of section 3517.22 of the                      4414
Revised Code, it shall refer the matter to the appropriate                     4415
prosecutor under division (A)(1)(c) of this section and shall                  4416
not impose a fine under division (A)(1)(b) of this section or                  4417
section 3517.993 of the Revised Code.                                          4418

(3)(a) If the commission finds a violation of division (W)                     4419
of section 3517.13 of the Revised Code, it shall do one of the                 4420
following:                                                                     4421

(i) Impose a fine under section 3517.993 of the Revised                        4422
Code in an amount equal to three times the amount involved in                  4423

the violation or ten thousand dollars, whichever amount is                4424
greater, with none of the fine suspended and, in the case of a            4425
violation of division (W)(2) of section 3517.13 of the Revised            4426
Code, order the violator to return an amount equal to any amount          4427
accepted in violation of that division to the foreign national            4428
from whom it was accepted;                                                4429

    (ii) Refer the matter to the appropriate prosecutor.          4430

    (b)(i) Except as otherwise provided in division (D)(3)(b)       4431
(ii) of this section, if the commission finds a violation of              4432
division (W) of section 3517.13 of the Revised Code and refers            4433
the matter to a county prosecutor under division (A)(2)(b)(ii)            4434
of this section, upon the request of the prosecutor to whom the           4435
commission refers the matter or upon the attorney general's own           4436
initiative, the attorney general may assume responsibility for            4437
the prosecution of the matter.                                            4438

    (ii) Division (D)(3)(b)(i) of this section does not apply         4439
to any matter in which the attorney general is a victim or                4440
witness or is otherwise involved.                                         4441

    (E) In an action before the commission or a panel of the          4442
commission, if the allegations of the complainant are not                 4443
proved, and the commission takes the action described in                  4444
division (A)(1)(a) of this section or a panel of the commission           4445
takes the action described in division (C)(1) of section                  4446
3517.156 of the Revised Code, the commission or a panel of the            4447
commission may find that the complaint is frivolous, and, if the          4448
commission or panel so finds, the commission shall order the              4449
complainant to pay reasonable attorney's fees and to pay the              4450
costs of the commission or panel as determined by a majority of           4451
the members of the commission. The costs paid to the commission           4452
or panel under this division shall be deposited into the Ohio             4453

elections commission fund.

4454

**Sec. 3517.992.** This section establishes penalties only
with respect to acts or failures to act that occur on and after
August 24, 1995.

4455
4456
4457

(A)(1) A candidate whose campaign committee violates
division (A), (B), (C), (D), or (V) of section 3517.13 of the
Revised Code, or a treasurer of a campaign committee who
violates any of those divisions, shall be fined not more than
one hundred dollars for each day of violation.

4458
4459
4460
4461
4462

(2) Whoever violates division (E) or (X)(5) of section
3517.13 or division (E)(1) of section 3517.1014 of the Revised
Code shall be fined not more than one hundred dollars for each
day of violation.

4463
4464
4465
4466

(B) An entity that violates division (G)(1) of section
3517.101 of the Revised Code shall be fined not more than one
hundred dollars for each day of violation.

4467
4468
4469

(C) Whoever violates division (G)(2) of section 3517.101,
division (G) of section 3517.13, or division (E)(2) or (3) of
section 3517.1014 of the Revised Code shall be fined not more
than ten thousand dollars or, if the offender is a person who
was nominated or elected to public office, shall forfeit the
nomination or the office to which the offender was elected, or
both.

4470
4471
4472
4473
4474
4475
4476

(D) Whoever violates division (F) of section 3517.13 of
the Revised Code shall be fined not more than three times the
amount contributed.

4477
4478
4479

(E) Whoever violates division (H) of section 3517.13 of
the Revised Code shall be fined not more than one hundred
dollars.

4480
4481
4482

(F) Whoever violates division (O), (P), or (Q) of section 3517.13 of the Revised Code is guilty of a misdemeanor of the first degree. 4483
4484
4485

(G) A state or county committee of a political party that violates division (B)(1) of section 3517.18 of the Revised Code as that section existed before its repeal by H.B. 166 of the 133rd general assembly shall be fined not more than twice the amount of the improper expenditure. 4486
4487
4488
4489
4490

(H) An entity that violates division (H) of section 3517.101 of the Revised Code shall be fined not more than twice the amount of the improper expenditure or use. 4491
4492
4493

(I)(1) Any individual who violates division (B)(1) of section 3517.102 of the Revised Code and knows that the contribution the individual makes violates that division shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 4494
4495
4496
4497
4498

(2) Any political action committee that violates division (B)(2) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 4499
4500
4501
4502

(3) Any campaign committee that violates division (B)(3) or (5) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 4503
4504
4505
4506

(4)(a) Any legislative campaign fund that violates division (B)(6) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount transferred or contributed in excess of the amount permitted by that division, as applicable. 4507
4508
4509
4510
4511

(b) Any state political party, county political party, or state candidate fund of a state political party or county political party that violates division (B)(6) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount transferred or contributed in excess of the amount permitted by that division, as applicable. 4512 4513 4514 4515 4516 4517

(c) Any political contributing entity that violates division (B)(7) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 4518 4519 4520 4521

(5) Any political party that violates division (B)(4) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount contributed in excess of the amount permitted by that division. 4522 4523 4524 4525

(6) Notwithstanding divisions (I)(1), (2), (3), (4), and (5) of this section, no violation of division (B) of section 3517.102 of the Revised Code occurs, and the secretary of state shall not refer parties to the Ohio elections commission, if the amount transferred or contributed in excess of the amount permitted by that division meets either of the following conditions: 4526 4527 4528 4529 4530 4531 4532

(a) It is completely refunded within five business days after it is accepted. 4533 4534

(b) It is completely refunded on or before the tenth business day after notification to the recipient of the excess transfer or contribution by the board of elections or the secretary of state that a transfer or contribution in excess of the permitted amount has been received. 4535 4536 4537 4538 4539

(J)(1) Any campaign committee that violates division (C) 4540

(1), (2), (3), or (6) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount accepted in excess of the amount permitted by that division. 4541
4542
4543

(2)(a) Any county political party that violates division (C)(4)(a)(ii) or (iii) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount accepted. 4544
4545
4546
4547

(b) Any county political party that violates division (C)(4)(a)(i) of section 3517.102 of the Revised Code shall be fined an amount from its state candidate fund equal to three times the amount accepted in excess of the amount permitted by that division. 4548
4549
4550
4551
4552

(c) Any state political party that violates division (C)(4)(b) of section 3517.102 of the Revised Code shall be fined an amount from its state candidate fund equal to three times the amount accepted in excess of the amount permitted by that division. 4553
4554
4555
4556
4557

(3) Any legislative campaign fund that violates division (C)(5) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount accepted in excess of the amount permitted by that division. 4558
4559
4560
4561

(4) Any political action committee or political contributing entity that violates division (C)(7) of section 3517.102 of the Revised Code shall be fined an amount equal to three times the amount accepted in excess of the amount permitted by that division. 4562
4563
4564
4565
4566

(5) Notwithstanding divisions (J)(1), (2), (3), and (4) of this section, no violation of division (C) of section 3517.102 of the Revised Code occurs, and the secretary of state shall not 4567
4568
4569

refer parties to the Ohio elections commission, if the amount 4570
transferred or contributed in excess of the amount permitted to 4571
be accepted by that division meets either of the following 4572
conditions: 4573

(a) It is completely refunded within five business days 4574
after its acceptance. 4575

(b) It is completely refunded on or before the tenth 4576
business day after notification to the recipient of the excess 4577
transfer or contribution by the board of elections or the 4578
secretary of state that a transfer or contribution in excess of 4579
the permitted amount has been received. 4580

(K)(1) Any legislative campaign fund that violates 4581
division (F)(1) of section 3517.102 of the Revised Code shall be 4582
fined twenty-five dollars for each day of violation. 4583

(2) Any legislative campaign fund that violates division 4584
(F)(2) of section 3517.102 of the Revised Code shall give to the 4585
treasurer of state for deposit into the state treasury to the 4586
credit of the Ohio elections commission fund all excess 4587
contributions not disposed of as required by division (E) of 4588
section 3517.102 of the Revised Code. 4589

(L) Whoever violates section 3517.105 of the Revised Code 4590
shall be fined one thousand dollars. 4591

(M)(1) Whoever solicits a contribution in violation of 4592
section 3517.092 or violates division (B) of section 3517.09 of 4593
the Revised Code is guilty of a misdemeanor of the first degree. 4594

(2) Whoever knowingly accepts a contribution in violation 4595
of division (B) or (C) of section 3517.092 of the Revised Code 4596
shall be fined an amount equal to three times the amount 4597
accepted in violation of either of those divisions and shall 4598

return to the contributor any amount so accepted. Whoever 4599
unknowingly accepts a contribution in violation of division (B) 4600
or (C) of section 3517.092 of the Revised Code shall return to 4601
the contributor any amount so accepted. 4602

(N) Whoever violates division (S) of section 3517.13 of 4603
the Revised Code shall be fined an amount equal to three times 4604
the amount of funds transferred or three times the value of the 4605
assets transferred in violation of that division. 4606

(O) Any campaign committee that accepts a contribution or 4607
contributions in violation of section 3517.108 of the Revised 4608
Code, uses a contribution in violation of that section, or fails 4609
to dispose of excess contributions in violation of that section 4610
shall be fined an amount equal to three times the amount 4611
accepted, used, or kept in violation of that section. 4612

(P) Any political party, state candidate fund, legislative 4613
candidate fund, or campaign committee that violates division (T) 4614
of section 3517.13 of the Revised Code shall be fined an amount 4615
equal to three times the amount contributed or accepted in 4616
violation of that section. 4617

(Q) A treasurer of a committee or another person who 4618
violates division (U) of section 3517.13 of the Revised Code 4619
shall be fined not more than two hundred fifty dollars. 4620

(R) Whoever violates division (I) or (J) of section 4621
3517.13 of the Revised Code shall be fined not more than one 4622
thousand dollars. Whenever a person is found guilty of violating 4623
division (I) or (J) of section 3517.13 of the Revised Code, the 4624
contract awarded in violation of either of those divisions shall 4625
be rescinded if its terms have not yet been performed. 4626

(S) A candidate whose campaign committee violates or a 4627

treasurer of a campaign committee who violates section 3517.081 4628
of the Revised Code, and a candidate whose campaign committee 4629
violates or a treasurer of a campaign committee or another 4630
person who violates division (C) of section 3517.10 of the 4631
Revised Code, shall be fined not more than five hundred dollars. 4632

(T) A candidate whose campaign committee violates or a 4633
treasurer of a committee who violates division (B) of section 4634
3517.09 of the Revised Code, or a candidate whose campaign 4635
committee violates or a treasurer of a campaign committee or 4636
another person who violates division (C) of section 3517.09 of 4637
the Revised Code shall be fined not more than one thousand 4638
dollars. 4639

(U) Whoever violates section 3517.20 of the Revised Code 4640
shall be fined not more than five hundred dollars. 4641

(V) Whoever violates section 3517.21 or 3517.22 of the 4642
Revised Code shall be imprisoned for not more than six months or 4643
fined not more than five thousand dollars, or both. 4644

(W) A campaign committee that is required to file a 4645
declaration of no limits under division (D)(2) of section 4646
3517.103 of the Revised Code that, before filing that 4647
declaration, accepts a contribution or contributions that exceed 4648
the limitations prescribed in section 3517.102 of the Revised 4649
Code, shall return that contribution or those contributions to 4650
the contributor. 4651

(X) Any campaign committee that fails to file the 4652
declaration of filing-day finances required by division (F) of 4653
section 3517.109 of the Revised Code shall be fined twenty-five 4654
dollars for each day of violation. 4655

(Y)(1) Any campaign committee that fails to dispose of 4656

excess funds or excess aggregate contributions under division      4657
(B) of section 3517.109 of the Revised Code in the manner          4658
required by division (C) of that section shall give to the         4659
treasurer of state for deposit into the Ohio elections             4660
commission fund created under division (I) of section 3517.152     4661
of the Revised Code all funds not disposed of pursuant to that     4662
division.                                                          4663

(2) Any treasurer of a transition fund that fails to               4664
dispose of assets remaining in the transition fund as required     4665
under division (H)(1) or (2) of section 3517.1014 of the Revised   4666
Code shall give to the treasurer of state for deposit into the     4667
Ohio elections commission fund all assets not disposed of          4668
pursuant to that division.                                         4669

(Z) Any individual, campaign committee, political action           4670
committee, political contributing entity, legislative campaign     4671
fund, political party, treasurer of a transition fund, or other    4672
entity that violates any provision of sections 3517.09 to          4673
3517.12 of the Revised Code for which no penalty is provided for   4674
under any other division of this section shall be fined not more   4675
than one thousand dollars.                                         4676

(AA)(1) Whoever knowingly violates division (W)(1) of              4677
section 3517.13 of the Revised Code shall be fined an amount       4678
equal to three times the amount contributed, expended, or          4679
promised in violation of that division or ten thousand dollars,    4680
whichever amount is greater.                                       4681

(2) Whoever knowingly violates division (W)(2) of section          4682
3517.13 of the Revised Code shall be fined an amount equal to      4683
three times the amount solicited or accepted in violation of       4684
that division or ten thousand dollars, whichever amount is         4685
greater, and shall be required to return an amount equal to any    4686

amount accepted in violation of that division to the foreign          4687
national from whom it was accepted.                                   4688

(3) Whoever knowingly violates division (W)(3) of section          4689
3517.13 of the Revised Code shall be fined an amount equal to        4690
three times the amount involved in the violation or ten thousand     4691
dollars, whichever amount is greater.                                4692

(BB) Whoever knowingly violates division (C) or (D) of            4693
section 3517.1011 of the Revised Code shall be fined not more        4694
than ten thousand dollars plus not more than one thousand            4695
dollars for each day of violation.                                   4696

(CC)(1) Subject to division (CC)(2) of this section,              4697
whoever violates division (H) of section 3517.1011 of the            4698
Revised Code shall be fined an amount up to three times the          4699
amount disbursed for the direct costs of airing the                  4700
communication made in violation of that division.                    4701

(2) Whoever has been ordered by the Ohio elections               4702
commission or by a court of competent jurisdiction to cease          4703
making communications in violation of division (H) of section        4704
3517.1011 of the Revised Code who again violates that division       4705
shall be fined an amount equal to three times the amount             4706
disbursed for the direct costs of airing the communication made      4707
in violation of that division.                                       4708

(DD)(1) Any corporation or labor organization that               4709
violates division (X)(3)(a) of section 3517.13 of the Revised        4710
Code shall be fined an amount equal to three times the amount        4711
given in excess of the amount permitted by that division.            4712

(2) Any state or county political party that violates            4713
division (X)(3)(b) of section 3517.13 of the Revised Code shall      4714
be fined an amount equal to three times the amount accepted in       4715

excess of the amount permitted by that division.                    4716

(EE)(1) Any campaign committee or person who violates                4717
division (C)(1)(b) or (c) of section 3517.1014 of the Revised        4718
Code shall be fined an amount equal to three times the amount        4719
donated in excess of the amount permitted by that division.          4720

(2) Any officeholder or treasurer of a transition fund who           4721
violates division (C)(3)(a) or (b) of section 3517.1014 of the       4722
Revised Code shall be fined an amount equal to three times the       4723
amount accepted in excess of the amount permitted by that            4724
division.                                                            4725

Sec. 3517.993. This section authorizes the establishment             4726
of fines that may be imposed only with respect to acts or            4727
failures to act that occur on and after August 24, 1995.             4728

(A) Except as otherwise provided in ~~division~~ divisions (D)       4729
(2) and (3) of section 3517.155 of the Revised Code, the Ohio        4730
elections commission may impose administrative fines under           4731
division (A)(1)(b) of section 3517.155 of the Revised Code in        4732
accordance with the amounts set forth under sections 3517.992,       4733
3599.03, and 3599.031 of the Revised Code.                           4734

(B) ~~The~~ Except as otherwise provided in division (D)(3) of       4735
section 3517.155 of the Revised Code, the commission may suspend     4736
all or part of a fine it imposes under this section upon             4737
whatever terms and conditions the commission considers just.         4738

(C)(1) The commission shall consider any of the following            4739
circumstances in determining whether to impose a maximum fine        4740
under this section:                                                  4741

(a) Whether the violator has been found guilty of any                4742
other violation of Title XXXV of the Revised Code;                   4743

(b) Whether the violation was made knowingly or purposely; 4744

(c) Whether any relevant statements, addenda, or 4745
affidavits required to be filed have not been filed; 4746

(d) Whether the violator has any outstanding fines imposed 4747
for a violation of Title XXXV of the Revised Code; 4748

(e) Whether the violation occurred during the course of a 4749
campaign. 4750

(2) The commission shall consider any of the following 4751
circumstances in determining whether to impose a minimal fine or 4752
no fine under this section: 4753

(a) Whether the violator previously has not been found 4754
guilty of any other violation of Title XXXV of the Revised Code; 4755

(b) Whether the violator has promptly corrected the 4756
violator's violation; 4757

(c) Whether the nature and circumstances of the violation 4758
merit a minimum fine; 4759

(d) Whether there are substantial grounds tending to 4760
excuse or justify the violation, although failing to establish a 4761
defense to the violation; 4762

(e) Whether the violation was not purposely committed. 4763

(3) The circumstances set forth in divisions (C)(1) and 4764
(2) of this section shall be considered by, but shall not 4765
control the decision of, the commission in imposing a fine. 4766

(D) Fines imposed by the commission under this section 4767
shall be paid into the Ohio elections commission fund. 4768

**Sec. 4507.112.** (A) The director of public safety may 4769
authorize a third party to administer the motor vehicle skills 4770

test specified in division (A)(2) of section 4507.11 of the          4771

Revised Code. A third-party administrator may be any person, any     4772

agency of this state, or any agency, department, or                  4773

instrumentality of local government, including a clerk of the        4774

court of common pleas. The third party shall administer the same     4775

skills test as otherwise would be administered by the bureau of      4776

motor vehicles.                                                      4777

(B) For purposes of authorizing a third party to                    4778

administer the motor vehicle skills test, the director and the       4779

third party shall enter into an agreement that does all of the       4780

following:                                                          4781

(1) Allows the director or the director's representative            4782

to conduct random examinations, inspections, and audits of the       4783

third party, whether covert or overt, without prior notice;          4784

(2) Requires all examiners of the third party to meet the           4785

same qualification and training standards as examiners of the        4786

department of public safety;                                        4787

(3) Requires the third party to use designated road test            4788

routes that have been approved by the director;                      4789

(4) If the third party also is a driver training school,            4790

prohibits a skills test examiner employed by the school from         4791

administering a skills test to an applicant that the examiner        4792

personally trained;                                                 4793

(5) Establishes appropriate documentation and                       4794

communication between the third party and the department             4795

indicating who has attempted the skills test with the third          4796

party and whether the person completed the test successfully;        4797

(6) Reserves to the department the right to take prompt             4798

and appropriate remedial action against the third party and its      4799

skills test examiners if the third party or its skills test
examiners fail to comply with state standards for the testing
program or with any other terms of the agreement. 4800 4801 4802

(C)(1) The director may adopt rules in accordance with
Chapter 119. of the Revised Code establishing reasonable fees
that a third party authorized to administer the motor vehicle
skills test under this section may charge for the skills test. 4803 4804 4805 4806

(2) If the director does not adopt the rules authorized
under division (C)(1) of this section, a third party may charge
a fee to an applicant who attempts the skills test with that
third party. However, a third party shall not charge a fee
greater than the cost of administering the skills test to that
applicant. 4807 4808 4809 4810 4811 4812

**Sec. 4509.101.** (A)(1) No person shall operate, or permit
the operation of, a motor vehicle in this state, unless proof of
financial responsibility is maintained continuously throughout
the registration period with respect to that vehicle, or, in the
case of a driver who is not the owner, with respect to that
driver's operation of that vehicle. 4813 4814 4815 4816 4817 4818

(2) Whoever violates division (A)(1) of this section shall
be subject to the following civil penalties: 4819 4820

(a) Subject to divisions (A)(2)(b) and (c) of this
section, a class (F) suspension of the person's driver's
license, commercial driver's license, temporary instruction
permit, probationary license, or nonresident operating privilege
for the period of time specified in division (B)(6) of section
4510.02 of the Revised Code and impoundment of the person's
license. The court may grant limited driving privileges to the
person, but only if the person presents proof of financial 4821 4822 4823 4824 4825 4826 4827 4828

responsibility and is enrolled in a reinstatement fee payment plan pursuant to section 4510.10 of the Revised Code. 4829 4830

(b) If, within five years of the violation, the person's operating privileges are again suspended and the person's license again is impounded for a violation of division (A)(1) of this section, a class C suspension of the person's driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege for the period of time specified in division (B)(3) of section 4510.02 of the Revised Code. The court may grant limited driving privileges to the person only if the person presents proof of financial responsibility and has complied with division (A)(5) of this section, and no court may grant limited driving privileges for the first fifteen days of the suspension. 4831 4832 4833 4834 4835 4836 4837 4838 4839 4840 4841 4842

(c) If, within five years of the violation, the person's operating privileges are suspended and the person's license is impounded two or more times for a violation of division (A)(1) of this section, a class B suspension of the person's driver's license, commercial driver's license, temporary instruction permit, probationary license, or nonresident operating privilege for the period of time specified in division (B)(2) of section 4510.02 of the Revised Code. The court may grant limited driving privileges to the person only if the person presents proof of financial responsibility and has complied with division (A)(5) of this section, except that no court may grant limited driving privileges for the first thirty days of the suspension. 4843 4844 4845 4846 4847 4848 4849 4850 4851 4852 4853 4854

(d) In addition to the suspension of an owner's license under division (A)(2)(a), (b), or (c) of this section, the suspension of the rights of the owner to register the motor vehicle and the impoundment of the owner's certificate of 4855 4856 4857 4858

registration and license plates until the owner complies with
division (A)(5) of this section. 4859
4860

The clerk of court shall waive the cost of filing a
petition for limited driving privileges if, pursuant to section
2323.311 of the Revised Code, the petitioner applies to be
qualified as an indigent litigant and the court approves the
application. 4861
4862
4863
4864
4865

(3) A person to whom this state has issued a certificate
of registration for a motor vehicle or a license to operate a
motor vehicle or who is determined to have operated any motor
vehicle or permitted the operation in this state of a motor
vehicle owned by the person shall be required to verify the
existence of proof of financial responsibility covering the
operation of the motor vehicle or the person's operation of the
motor vehicle under either of the following circumstances: 4866
4867
4868
4869
4870
4871
4872
4873

(a) The person or a motor vehicle owned by the person is
involved in a traffic accident that requires the filing of an
accident report under section 4509.06 of the Revised Code. 4874
4875
4876

(b) The person receives a traffic ticket indicating that
proof of the maintenance of financial responsibility was not
produced upon the request of a peace officer or state highway
patrol trooper made in accordance with division (D)(2) of this
section. 4877
4878
4879
4880
4881

(4) An order of the registrar that suspends and impounds a
license or registration, or both, shall state the date on or
before which the person is required to surrender the person's
license or certificate of registration and license plates. The
person is deemed to have surrendered the license or certificate
of registration and license plates, in compliance with the 4882
4883
4884
4885
4886
4887

order, if the person does either of the following: 4888

(a) On or before the date specified in the order, delivers 4889
the license or certificate of registration and license plates to 4890
the registrar; 4891

(b) Mails the license or certificate of registration and 4892
license plates to the registrar in an envelope or container 4893
bearing a postmark showing a date no later than the date 4894
specified in the order. 4895

(5) Except as provided in division (L) of this section, 4896
the registrar shall not restore any operating privileges or 4897
registration rights suspended under this section, return any 4898
license, certificate of registration, or license plates 4899
impounded under this section, or reissue license plates under 4900
section 4503.232 of the Revised Code, if the registrar destroyed 4901
the impounded license plates under that section, or reissue a 4902
license under section 4510.52 of the Revised Code, if the 4903
registrar destroyed the suspended license under that section, 4904
unless the rights are not subject to suspension or revocation 4905
under any other law and unless the person, in addition to 4906
complying with all other conditions required by law for 4907
reinstatement of the operating privileges or registration 4908
rights, complies with all of the following: 4909

(a) Pays to the registrar or an eligible deputy registrar 4910
a financial responsibility reinstatement fee of forty dollars 4911
for the first violation of division (A)(1) of this section, 4912
three hundred dollars for a second violation of that division, 4913
and six hundred dollars for a third or subsequent violation of 4914
that division; 4915

(b) If the person has not voluntarily surrendered the 4916

license, certificate, or license plates in compliance with the 4917
order, pays to the registrar or an eligible deputy registrar a 4918
financial responsibility nonvoluntary compliance fee in an 4919
amount, not to exceed fifty dollars, determined by the 4920
registrar; 4921

(c) Files and continuously maintains proof of financial 4922
responsibility under sections 4509.44 to 4509.65 of the Revised 4923
Code; 4924

(d) Pays a deputy registrar a service fee of ten dollars 4925
to compensate the deputy registrar for services performed under 4926
this section. The deputy registrar shall retain eight dollars of 4927
the service fee and shall transmit the reinstatement fee, any 4928
nonvoluntary compliance fee, and two dollars of the service fee 4929
to the registrar in the manner the registrar shall determine. 4930

(B)(1) Every party required to file an accident report 4931
under section 4509.06 of the Revised Code also shall include 4932
with the report a document described in division (G)(1)(a) of 4933
this section or shall present proof of financial responsibility 4934
through use of an electronic wireless communications device as 4935
permitted by division (G)(1)(b) of this section. 4936

If the registrar determines, within forty-five days after 4937
the report is filed, that an operator or owner has violated 4938
division (A)(1) of this section, the registrar shall do all of 4939
the following: 4940

(a) Order the impoundment, with respect to the motor 4941
vehicle involved, required under division (A)(2)(d) of this 4942
section, of the certificate of registration and license plates 4943
of any owner who has violated division (A)(1) of this section; 4944

(b) Order the suspension required under division (A)(2) 4945

(a), (b), or (c) of this section of the license of any operator 4946
or owner who has violated division (A)(1) of this section; 4947

(c) Record the name and address of the person whose 4948
certificate of registration and license plates have been 4949
impounded or are under an order of impoundment, or whose license 4950
has been suspended or is under an order of suspension; the 4951
serial number of the person's license; the serial numbers of the 4952
person's certificate of registration and license plates; and the 4953
person's social security account number, if assigned, or, where 4954
the motor vehicle is used for hire or principally in connection 4955
with any established business, the person's federal taxpayer 4956
identification number. The information shall be recorded in such 4957
a manner that it becomes a part of the person's permanent 4958
record, and assists the registrar in monitoring compliance with 4959
the orders of suspension or impoundment. 4960

(d) Send written notification to every person to whom the 4961
order pertains, at the person's last known address as shown on 4962
the records of the bureau. The person, within ten days after the 4963
date of the mailing of the notification, shall surrender to the 4964
registrar, in a manner set forth in division (A)(4) of this 4965
section, any certificate of registration and registration plates 4966
under an order of impoundment, or any license under an order of 4967
suspension. 4968

(2) The registrar shall issue any order under division (B) 4969
(1) of this section without a hearing. Any person adversely 4970
affected by the order, within ten days after the issuance of the 4971
order, may request an administrative hearing before the 4972
registrar, who shall provide the person with an opportunity for 4973
a hearing in accordance with this paragraph. A request for a 4974
hearing does not operate as a suspension of the order. The scope 4975

of the hearing shall be limited to whether the person in fact 4976
demonstrated to the registrar proof of financial responsibility 4977
in accordance with this section. The registrar shall determine 4978
the date, time, and place of any hearing, provided that the 4979
hearing shall be held, and an order issued or findings made, 4980
within thirty days after the registrar receives a request for a 4981
hearing. If requested by the person in writing, the registrar 4982
may designate as the place of hearing the county seat of the 4983
county in which the person resides or a place within fifty miles 4984
of the person's residence. The person shall pay the cost of the 4985
hearing before the registrar, if the registrar's order of 4986
suspension or impoundment is upheld. 4987

(C) Any order of suspension or impoundment issued under 4988
this section or division (B) of section 4509.37 of the Revised 4989
Code may be terminated at any time if the registrar determines 4990
upon a showing of proof of financial responsibility that the 4991
operator or owner of the motor vehicle was in compliance with 4992
division (A)(1) of this section at the time of the traffic 4993
offense, motor vehicle inspection, or accident that resulted in 4994
the order against the person. A determination may be made 4995
without a hearing. This division does not apply unless the 4996
person shows good cause for the person's failure to present 4997
satisfactory proof of financial responsibility to the registrar 4998
prior to the issuance of the order. 4999

(D)(1)(a) For the purpose of enforcing this section, every 5000
peace officer is deemed an agent of the registrar. 5001

(b) Any peace officer who, in the performance of the peace 5002
officer's duties as authorized by law, becomes aware of a person 5003
whose license is under an order of suspension, or whose 5004
certificate of registration and license plates are under an 5005

order of impoundment, pursuant to this section, may confiscate
the license, certificate of registration, and license plates,
and return them to the registrar. 
5006
5007
5008

(2) A peace officer shall request the owner or operator of
a motor vehicle to produce proof of financial responsibility in
a manner described in division (G) of this section at the time
the peace officer acts to enforce the traffic laws of this state
and during motor vehicle inspections conducted pursuant to
section 4513.02 of the Revised Code. 
5009
5010
5011
5012
5013
5014

(3) A peace officer shall indicate on every traffic ticket
whether the person receiving the traffic ticket produced proof
of the maintenance of financial responsibility in response to
the officer's request under division (D)(2) of this section. The
peace officer shall inform every person who receives a traffic
ticket and who has failed to produce proof of the maintenance of
financial responsibility that the person must submit proof to
the traffic violations bureau with any payment of a fine and
costs for the ticketed violation or, if the person is to appear
in court for the violation, the person must submit proof to the
court. 
5015
5016
5017
5018
5019
5020
5021
5022
5023
5024
5025

(4)(a) If a person who has failed to produce proof of the
maintenance of financial responsibility appears in court for a
ticketed violation, the court may permit the defendant to
present evidence of proof of financial responsibility to the
court at such time and in such manner as the court determines to
be necessary or appropriate. In a manner prescribed by the
registrar, the clerk of courts shall provide the registrar with
the identity of any person who fails to submit proof of the
maintenance of financial responsibility pursuant to division (D)
(3) of this section. 
5026
5027
5028
5029
5030
5031
5032
5033
5034
5035

(b) If a person who has failed to produce proof of the maintenance of financial responsibility also fails to submit that proof to the traffic violations bureau with payment of a fine and costs for the ticketed violation, the traffic violations bureau, in a manner prescribed by the registrar, shall notify the registrar of the identity of that person. 5036 5037 5038 5039 5040 5041

(5)(a) Upon receiving notice from a clerk of courts or traffic violations bureau pursuant to division (D)(4) of this section, the registrar shall order the suspension of the license of the person required under division (A)(2)(a), (b), or (c) of this section and the impoundment of the person's certificate of registration and license plates required under division (A)(2) (d) of this section, effective thirty days after the date of the mailing of notification. The registrar also shall notify the person that the person must present the registrar with proof of financial responsibility in accordance with this section, surrender to the registrar the person's certificate of registration, license plates, and license, or submit a statement subject to section 2921.13 of the Revised Code that the person did not operate or permit the operation of the motor vehicle at the time of the offense. Notification shall be in writing and shall be sent to the person at the person's last known address as shown on the records of the bureau of motor vehicles. The person, within fifteen days after the date of the mailing of notification, shall present proof of financial responsibility, surrender the certificate of registration, license plates, and license to the registrar in a manner set forth in division (A) (4) of this section, or submit the statement required under this section together with other information the person considers appropriate. 5042 5043 5044 5045 5046 5047 5048 5049 5050 5051 5052 5053 5054 5055 5056 5057 5058 5059 5060 5061 5062 5063 5064 5065

If the registrar does not receive proof or the person does 5066

not surrender the certificate of registration, license plates, and license, in accordance with this division, the registrar shall permit the order for the suspension of the license of the person and the impoundment of the person's certificate of registration and license plates to take effect. 5067 5068 5069 5070 5071

(b) In the case of a person who presents, within the fifteen-day period, proof of financial responsibility, the registrar shall terminate the order of suspension and the impoundment of the registration and license plates required under division (A)(2)(d) of this section and shall send written notification to the person, at the person's last known address as shown on the records of the bureau. 5072 5073 5074 5075 5076 5077 5078

(c) Any person adversely affected by the order of the registrar under division (D)(5)(a) or (b) of this section, within ten days after the issuance of the order, may request an administrative hearing before the registrar, who shall provide the person with an opportunity for a hearing in accordance with this paragraph. A request for a hearing does not operate as a suspension of the order. The scope of the hearing shall be limited to whether, at the time of the hearing, the person presents proof of financial responsibility covering the vehicle and whether the person is eligible for an exemption in accordance with this section or any rule adopted under it. The registrar shall determine the date, time, and place of any hearing; provided, that the hearing shall be held, and an order issued or findings made, within thirty days after the registrar receives a request for a hearing. If requested by the person, the hearing may be held remotely by electronic means. If requested by the person in writing, the registrar may designate as the place of hearing the county seat of the county in which the person resides or a place within fifty miles of the person's 5079 5080 5081 5082 5083 5084 5085 5086 5087 5088 5089 5090 5091 5092 5093 5094 5095 5096 5097

residence. Such person shall pay the cost of the hearing before the registrar, if the registrar's order of suspension or impoundment under division (D)(5)(a) or (b) of this section is upheld. 5098 5099 5100 5101

(6) A peace officer may charge an owner or operator of a motor vehicle with a violation of section 4510.16 of the Revised Code when the owner or operator fails to show proof of the maintenance of financial responsibility pursuant to a peace officer's request under division (D)(2) of this section, if a check of the owner or operator's driving record indicates that the owner or operator, at the time of the operation of the motor vehicle, is required to file and maintain proof of financial responsibility under section 4509.45 of the Revised Code for a previous violation of this chapter. 5102 5103 5104 5105 5106 5107 5108 5109 5110 5111

(7) Any forms used by law enforcement agencies in administering this section shall be prescribed, supplied, and paid for by the registrar. 5112 5113 5114

(8) No peace officer, law enforcement agency employing a peace officer, or political subdivision or governmental agency that employs a peace officer shall be liable in a civil action for damages or loss to persons arising out of the performance of any duty required or authorized by this section. 5115 5116 5117 5118 5119

(9) As used in this section, "peace officer" has the meaning set forth in section 2935.01 of the Revised Code. 5120 5121

(E) All fees, except court costs, fees paid to a deputy registrar, and those portions of the financial responsibility reinstatement fees as otherwise specified in this division, collected under this section shall be paid into the state treasury to the credit of the public safety - highway purposes 5122 5123 5124 5125 5126

fund established in section 4501.06 of the Revised Code and used      5127
to cover costs incurred by the bureau in the administration of        5128
this section and sections 4503.20, 4507.212, and 4509.81 of the       5129
Revised Code, and by any law enforcement agency employing any         5130
peace officer who returns any license, certificate of                 5131
registration, and license plates to the registrar pursuant to         5132
division (C) of this section.                                         5133

    Of each financial responsibility reinstatement fee the            5134
registrar collects pursuant to division (A)(5)(a) of this             5135
section or receives from a deputy registrar under division (A)        5136
(5)(d) of this section, the registrar shall deposit ten dollars       5137
of each forty-dollar reinstatement fee, fifty dollars of each         5138
three-hundred-dollar reinstatement fee, and one hundred dollars       5139
of each six-hundred-dollar reinstatement fee into the state           5140
treasury to the credit of the indigent defense support fund           5141
created by section 120.08 of the Revised Code.                        5142

    (F) Chapter 119. of the Revised Code applies to this              5143
section only to the extent that any provision in that chapter is      5144
not clearly inconsistent with this section.                           5145

    (G)(1)(a) The registrar, court, traffic violations bureau,        5146
or peace officer may require proof of financial responsibility        5147
to be demonstrated by use of a standard form prescribed by the        5148
registrar. If the use of a standard form is not required, a           5149
person may demonstrate proof of financial responsibility under        5150
this section by presenting to the traffic violations bureau,          5151
court, registrar, or peace officer any of the following               5152
documents or a copy of the documents:                                 5153

    (i) A financial responsibility identification card as             5154
provided in section 4509.103 of the Revised Code;                     5155

(ii) A certificate of proof of financial responsibility on
a form provided and approved by the registrar for the filing of
an accident report required to be filed under section 4509.06 of
the Revised Code; 
5156
5157
5158
5159

(iii) A policy of liability insurance, a declaration page
of a policy of liability insurance, or liability bond, if the
policy or bond complies with section 4509.20 or sections 4509.49
to 4509.61 of the Revised Code; 
5160
5161
5162
5163

(iv) A bond or certification of the issuance of a bond as
provided in section 4509.59 of the Revised Code; 
5164
5165

(v) A certificate of deposit of money or securities as
provided in section 4509.62 of the Revised Code; 
5166
5167

(vi) A certificate of self-insurance as provided in
section 4509.72 of the Revised Code. 
5168
5169

(b) A person also may present proof of financial
responsibility under this section to the traffic violations
bureau, court, registrar, or peace officer through use of an
electronic wireless communications device as specified under
section 4509.103 of the Revised Code. 
5170
5171
5172
5173
5174

(2) If a person fails to demonstrate proof of financial
responsibility in a manner described in division (G)(1) of this
section, the person may demonstrate proof of financial
responsibility under this section by any other method that the
court or the bureau, by reason of circumstances in a particular
case, may consider appropriate. 
5175
5176
5177
5178
5179
5180

(3) A motor carrier certificated by the interstate
commerce commission or by the public utilities commission may
demonstrate proof of financial responsibility by providing a
statement designating the motor carrier's operating authority 
5181
5182
5183
5184

and averring that the insurance coverage required by the 5185
certificating authority is in full force and effect. 5186

(4)(a) A finding by the registrar or court that a person 5187
is covered by proof of financial responsibility in the form of 5188
an insurance policy or surety bond is not binding upon the named 5189
insurer or surety or any of its officers, employees, agents, or 5190
representatives and has no legal effect except for the purpose 5191
of administering this section. 5192

(b) The preparation and delivery of a financial 5193
responsibility identification card or any other document 5194
authorized to be used as proof of financial responsibility and 5195
the generation and delivery of proof of financial responsibility 5196
to an electronic wireless communications device that is 5197
displayed on the device as text or images does not do any of the 5198
following: 5199

(i) Create any liability or estoppel against an insurer or 5200
surety, or any of its officers, employees, agents, or 5201
representatives; 5202

(ii) Constitute an admission of the existence of, or of 5203
any liability or coverage under, any policy or bond; 5204

(iii) Waive any defenses or counterclaims available to an 5205
insurer, surety, agent, employee, or representative in an action 5206
commenced by an insured or third-party claimant upon a cause of 5207
action alleged to have arisen under an insurance policy or 5208
surety bond or by reason of the preparation and delivery of a 5209
document for use as proof of financial responsibility or the 5210
generation and delivery of proof of financial responsibility to 5211
an electronic wireless communications device. 5212

(c) Whenever it is determined by a final judgment in a 5213

judicial proceeding that an insurer or surety, which has been 5214
named on a document or displayed on an electronic wireless 5215
communications device accepted by a court or the registrar as 5216
proof of financial responsibility covering the operation of a 5217
motor vehicle at the time of an accident or offense, is not 5218
liable to pay a judgment for injuries or damages resulting from 5219
such operation, the registrar, notwithstanding any previous 5220
contrary finding, shall forthwith suspend the operating 5221
privileges and registration rights of the person against whom 5222
the judgment was rendered as provided in division (A)(2) of this 5223
section. 5224

(H) In order for any document or display of text or images 5225
on an electronic wireless communications device described in 5226
division (G)(1) of this section to be used for the demonstration 5227
of proof of financial responsibility under this section, the 5228
document or words or images shall state the name of the insured 5229
or obligor, the name of the insurer or surety company, and the 5230
effective and expiration dates of the financial responsibility, 5231
and designate by explicit description or by appropriate 5232
reference all motor vehicles covered which may include a 5233
reference to fleet insurance coverage. 5234

(I) For purposes of this section, "owner" does not include 5235
a licensed motor vehicle leasing dealer as defined in section 5236
4517.01 of the Revised Code, but does include a motor vehicle 5237
renting dealer as defined in section 4549.65 of the Revised 5238
Code. Nothing in this section or in section 4509.51 of the 5239
Revised Code shall be construed to prohibit a motor vehicle 5240
renting dealer from entering into a contractual agreement with a 5241
person whereby the person renting the motor vehicle agrees to be 5242
solely responsible for maintaining proof of financial 5243
responsibility, in accordance with this section, with respect to 5244

the operation, maintenance, or use of the motor vehicle during          5245
the period of the motor vehicle's rental.                                5246

(J) The purpose of this section is to require the                        5247
maintenance of proof of financial responsibility with respect to        5248
the operation of motor vehicles on the highways of this state,          5249
so as to minimize those situations in which persons are not             5250
compensated for injuries and damages sustained in motor vehicle         5251
accidents. The general assembly finds that this section contains        5252
reasonable civil penalties and procedures for achieving this            5253
purpose.                                                                 5254

(K) Nothing in this section shall be construed to be                     5255
subject to section 4509.78 of the Revised Code.                          5256

(L)(1) The registrar may terminate any suspension imposed                5257
under this section and not require the owner to comply with              5258
divisions (A)(5)(a), (b), and (c) of this section if the                5259
registrar with or without a hearing determines that the owner of        5260
the vehicle has established by clear and convincing evidence             5261
that all of the following apply:                                         5262

(a) The owner customarily maintains proof of financial                   5263
responsibility.                                                          5264

(b) Proof of financial responsibility was not in effect                  5265
for the vehicle on the date in question for one of the following        5266
reasons:                                                                 5267

(i) The vehicle was inoperable.                                          5268

(ii) The vehicle is operated only seasonally, and the date              5269
in question was outside the season of operation.                         5270

(iii) A person other than the vehicle owner or driver was               5271
at fault for the lapse of proof of financial responsibility             5272

through no fault of the owner or driver. 5273

(iv) The lapse of proof of financial responsibility was caused by excusable neglect under circumstances that are not likely to recur and do not suggest a purpose to evade the requirements of this chapter. 5274
5275
5276
5277

(2) The registrar may grant an owner or driver relief for a reason specified in division (L)(1)(b)(iii) or (iv) of this section only if the owner or driver has not previously been granted relief under division (L)(1)(b)(iii) or (iv) of this section. 5278
5279
5280
5281
5282

(M) The registrar shall adopt rules in accordance with Chapter 119. of the Revised Code that are necessary to administer and enforce this section. The rules shall include procedures for the surrender of license plates upon failure to maintain proof of financial responsibility and provisions relating to reinstatement of registration rights, acceptable forms of proof of financial responsibility, the use of an electronic wireless communications device to present proof of financial responsibility, and verification of the existence of financial responsibility during the period of registration. 5283
5284
5285
5286
5287
5288
5289
5290
5291
5292

(N)(1) When a person utilizes an electronic wireless communications device to present proof of financial responsibility, only the evidence of financial responsibility displayed on the device shall be viewed by the registrar, peace officer, employee or official of the traffic violations bureau, or the court. No other content of the device shall be viewed for purposes of obtaining proof of financial responsibility. 5293
5294
5295
5296
5297
5298
5299

(2) When a person provides an electronic wireless communications device to the registrar, a peace officer, an 5300
5301

employee or official of a traffic violations bureau, or the            5302
court, the person assumes the risk of any resulting damage to          5303
the device unless the registrar, peace officer, employee, or           5304
official, or court personnel purposely, knowingly, or recklessly       5305
commits an action that results in damage to the device.                5306

   Sec. 4517.261. (A) For the purposes of this section,                5307
"consumer price index" means the index, as prepared by the             5308
United States bureau of labor statistics (U.S. city average for        5309
urban wage earners and clerical workers: all items) or, if that        5310
index is no longer published, a generally available comparable         5311
index as determined by the registrar of motor vehicles.                5312

   (B) A motor vehicle dealer may contract for and receive a           5313
documentary service charge for a retail or wholesale sale or           5314
lease of a motor vehicle. A documentary service charge shall be        5315
specified in writing without itemization of the individual             5316
services provided. A documentary service charge shall be not           5317
more than the lesser of the following:                                 5318

   (A) (1) The amount allowed in a retail installment sale,            5319
adjusted as required by division (C) of this section;                  5320

   (B) (2) Ten per cent of the amount the buyer or lessee is           5321
required to pay pursuant to the contract, excluding tax, title,        5322
and registration fees, and any negative equity adjustment.             5323

   (C)(1) On the effective date of this amendment, and on the          5324
last day of each September that begins thereafter, the registrar       5325
of motor vehicles shall adjust the documentary service charge          5326
allowed under division (B)(1) of this section in connection with       5327
the sale or lease of a motor vehicle by adding two hundred fifty       5328
dollars to the product of two hundred fifty dollars times the          5329
cumulative percentage change in the consumer price index since         5330

July 1, 2006, based on the most recently published data, and                5331
rounding to the nearest one-dollar increment.                               5332

(2) Subject to division (C)(3) of this section, the                     5333
adjusted documentary service charge computed under division (C)             5334
(1) of this section applies as follows:                                     5335

(a) For the first adjustment required by division (C)(1)                5336
of this section, from the effective date of this amendment until            5337
the last day of December following the second adjustment                    5338
required by that division;                                                  5339

(b) For the second and all subsequent adjustments required              5340
by division (C)(1) of this section, for the full calendar year              5341
following the date of the adjustment.                                       5342

(3) If the adjustment required by division (C)(1) of this               5343
section results in an amount less than the documentary service              5344
charge allowed at the time the adjustment is made, then the                 5345
maximum documentary service charge per sale at the time the                 5346
adjustment is made applies for the following calendar year.                 5347

(4) The registrar shall publish the adjusted documentary                5348
service charge amount and the dates to which it applies on a web            5349
site maintained by the department of public safety.                         5350

(5) The adjusted documentary service charge determined                  5351
under division (C) of this section applies only with respect to             5352
the sale or lease of a motor vehicle by a motor vehicle dealer,             5353
and only if the adjusted documentary service charge does not                5354
exceed the amount described in division (B)(2) of this section.             5355

**Section 2.** That existing sections 9.03, 120.54, 181.21,                 5356
325.33, 345.13, 517.23, 1317.07, 1901.02, 1901.123, 1901.261,               5357
1907.11, 1907.143, 1907.261, 2303.081, 2303.201, 2505.02,                   5358
2929.20, 2967.26, 3517.01, 3517.10, 3517.12, 3517.13, 3517.155,             5359

3517.992, 3517.993, 4507.112, 4509.101, and 4517.261 of the
Revised Code are hereby repealed. 5360 5361

**Section 3.** That sections 135.032 and 135.321 of the
Revised Code are hereby repealed. 5362 5363

**Section 4.** (A) All cases arising in the municipal
corporation of North Kingsville in Ashtabula County that are
pending in the Eastern County Court in Ashtabula County on
January 1, 2025, shall be adjudicated by the Ashtabula County
County Court. All cases arising in the municipal corporation of
North Kingsville in Ashtabula County on or after January 1,
2025, shall be brought before the Conneaut Municipal Court. 5364 5365 5366 5367 5368 5369 5370

(B) All cases arising in Kingsville, Monroe, and Sheffield
Townships in Ashtabula County that are pending in the Eastern
County Court in Ashtabula County on January 1, 2025, shall be
adjudicated by the Ashtabula County County Court. All cases
arising in Kingsville, Monroe, and Sheffield Townships in
Ashtabula County on or after January 1, 2025, shall be brought
before the Conneaut Municipal Court. 5371 5372 5373 5374 5375 5376 5377

**Section 5.** Any fees that were collected by a clerk of
court serving as a third-party administrator of a motor vehicle
skills test under section 4507.112 of the Revised Code beginning
on April 12, 2021, until the effective date of this section
shall be paid into the county treasury to the credit of the
certificate of title administration fund, as established in
section 325.33 of the Revised Code. 5378 5379 5380 5381 5382 5383 5384

# Exhibit E

**As Passed by the Senate**

**135th General Assembly**

**Special Session**                                        **Am. Sub. H. B. No. 271**

**2023-2024**

**Representatives Mathews, Peterson**

**Cosponsors: Representatives Gross, Hall, Abrams, Baker, Barhorst, Brennan, Brent, Brewer, Carruthers, Claggett, Creech, Cross, Daniels, Dell'Aquila, Denson, Dobos, Forhan, Ghanbari, Hillyer, Holmes, Jarrells, Johnson, Jones, King, Klopfenstein, Lampton, Liston, Lorenz, McClain, McNally, Miller, J., Miller, M., Mohamed, Patton, Pavliga, Piccolantonio, Pizzulli, Robb Blasdel, Russo, Somani, Swearingen, Thomas, C., Troy, Whitted, Wiggam, Williams**

**Senators Brenner, Cirino, Schaffer**

——

# A BILL

|  |  |
|---|---|
| To amend sections 3505.06, 3517.01, 3517.10, | 1 |
| 3517.12, 3517.13, 3517.155, 3517.992, and | 2 |
| 3517.993 of the Revised Code to specify that | 3 |
| state questions and issues appearing on ballots | 4 |
| must be numbered consecutively based on the | 5 |
| previous election and to respond to the | 6 |
| Governor's proclamation calling a special | 7 |
| session of the General Assembly by modifying the | 8 |
| Campaign Finance Law and delaying the deadline | 9 |
| for a major political party to certify its | 10 |
| presidential and vice presidential candidates to | 11 |
| the Secretary of State for the 2024 general | 12 |
| election. | 13 |

## BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF OHIO:

|  |  |
|---|---|
| **Section 1.** That sections 3505.06, 3517.01, 3517.10, | 14 |

3517.12, 3517.13, 3517.155, 3517.992, and 3517.993 of the 15
Revised Code be amended to read as follows: 16

**Sec. 3505.06.** (A) On the questions and issues ballot shall 17
be printed all questions and issues to be submitted at any one 18
election together with the percentage of affirmative votes 19
necessary for passage as required by law. Such ballot shall have 20
printed across the top thereof, and below the stubs, "Official 21
Questions and Issues Ballot." 22

(B)(1) Questions and issues shall be grouped together on 23
the ballot from top to bottom as provided in division (B)(1) of 24
this section, except as otherwise provided in division (B)(2) of 25
this section. State questions and issues shall always appear as 26
the top group of questions and issues. In calendar year 1997, 27
the following questions and issues shall be grouped together on 28
the ballot, in the following order from top to bottom, after the 29
state questions and issues: 30

(a) County questions and issues; 31

(b) Municipal questions and issues; 32

(c) Township questions and issues; 33

(d) School or other district questions and issues. 34

In each succeeding calendar year after 1997, each group of 35
questions and issues described in division (B)(1)(a) to (d) of 36
this section shall be moved down one place on the ballot except 37
that the group that was last on the ballot during the 38
immediately preceding calendar year shall appear at the top of 39
the ballot after the state questions and issues. The rotation 40
shall be performed only once each calendar year, beginning with 41
the first election held during the calendar year. The rotation 42
of groups of questions and issues shall be performed during each 43

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 341 of 879 PAGEID #: 476

calendar year as required by division (B)(1) of this section, 44
even if no questions and issues from any one or more such groups 45
appear on the ballot at any particular election held during that 46
calendar year. 47

(2) Questions and issues shall be grouped together on the 48
ballot, from top to bottom, in the following order when it is 49
not practicable to group them together as required by division 50
(B)(1) of this section because of the type of voting machines 51
used by the board of elections: state questions and issues, 52
county questions and issues, municipal questions and issues, 53
township questions and issues, and school or other district 54
questions and issues. The particular order in which each of a 55
group of state questions or issues is placed on the ballot shall 56
be determined by, and certified to each board of elections by, 57
the secretary of state. 58

(3) Failure of the board of elections to rotate questions 59
and issues as required by division (B)(1) of this section does 60
not affect the validity of the election at which the failure 61
occurred, and is not grounds for contesting an election under 62
section 3515.08 of the Revised Code. 63

(C) The particular order in which each of a group of 64
county, municipal, township, or school district questions or 65
issues is placed on the ballot shall be determined by the board 66
providing the ballots. 67

(D) The printed matter pertaining to each question or 68
issue on the ballot shall be enclosed at the top and bottom 69
thereof by a heavy horizontal line across the width of the 70
ballot. Immediately below such top line shall be printed a brief 71
title descriptive of the question or issue below it, such as 72
"Proposed Constitutional Amendment," "Proposed Bond Issue," 73

**Am. Sub. H. B. No. 271**                                        **Page 4**
**As Passed by the Senate**

"Proposed Annexation of Territory," "Proposed Increase in Tax          74
Rate," or such other brief title as will be descriptive of the        75
question or issue to which it pertains, together with a brief         76
statement of the percentage of affirmative votes necessary for        77
passage, such as "A sixty-five per cent affirmative vote is           78
necessary for passage," "A majority vote is necessary for             79
passage," or such other brief statement as will be descriptive        80
of the percentage of affirmative votes required.                      81

    (E) The questions and issues ballot need not contain the        82
full text of the proposal to be voted upon. A condensed text          83
that will properly describe the question, issue, or an amendment      84
proposed by other than the general assembly shall be used as          85
prepared and certified by the secretary of state for state-wide       86
questions or issues or by the board for local questions or            87
issues. If other than a full text is used, the full text of the       88
proposed question, issue, or amendment together with the              89
percentage of affirmative votes necessary for passage as              90
required by law shall be posted in each polling place in some         91
spot that is easily accessible to the voters.                         92

    ~~(F) Each~~ (F)(1) Except as otherwise provided in division        93
(F)(2) of this section, each question and issue appearing on the      94
questions and issues ballot may be consecutively numbered. The        95
question or issue determined to appear at the top of the ballot       96
may be designated on the face thereof by the Arabic numeral "1"       97
and all questions and issues placed below on the ballot shall be      98
consecutively numbered. Such numeral shall be placed below the        99
heavy top horizontal line enclosing such question or issue and        100
to the left of the brief title thereof.                               101

    (2) Beginning with the general election to be held on            102
November 5, 2024, a state question or issue determined to appear      103

**Am. Sub. H. B. No. 271**                                                                 **Page 5**
**As Passed by the Senate**

at the top of the ballot shall be designated on the face thereof                    104
by the Arabic numeral "1" and all state questions and issues                         105
placed below on the ballot shall be consecutively numbered. For                      106
elections occurring after the general election held on November                      107
5, 2024, a state question or issue determined to appear at the                       108
top of the ballot shall be designated on the face thereof by the                     109
Arabic numeral that is consecutive to the Arabic numeral of the                      110
last state question or issue that appeared on the ballot at the                      111
immediately preceding election at which a state question or                          112
issue appeared on the ballot and all state questions or issues                       113
placed below on the ballot shall be consecutively numbered. Such                     114
numeral shall be placed below the heavy top horizontal line                          115
enclosing such question or issue and to the left of the brief                        116
title thereof. Once a state question or issue appears on the                         117
ballot designated by the Arabic numeral "500," the state                             118
question or issue appearing at the top of the ballot at the                          119
immediately following election at which a state question or                          120
issue appears on the ballot shall be designated by the Arabic                        121
numeral "1."                                                                         122

      (G) No portion of a ballot question proposing to levy a                        123
property tax in excess of the ten-mill limitation under any                          124
section of the Revised Code, including the renewal or                                125
replacement of such a levy, may be printed in boldface type or                       126
in a font size that is different from the font size of other                         127
text in the ballot question. The prohibitions in division (G) of                     128
this section do not apply to printed matter either described in                      129
division (D) of this section related to such a ballot question                       130
or located in the area of the ballot in which votes are                              131
indicated for or against that question.                                              132

      **Sec. 3517.01.** (A)(1) A political party within the meaning                  133
of Title XXXV of the Revised Code is any group of voters that                        134

meets either of the following requirements: 135

(a) Except as otherwise provided in this division, at the most recent regular state election, the group polled for its candidate for governor in the state or nominees for presidential electors at least three per cent of the entire vote cast for that office. A group that meets the requirements of this division remains a political party for a period of four years after meeting those requirements. 136
137
138
139
140
141
142

(b) The group filed with the secretary of state, subsequent to its failure to meet the requirements of division (A)(1)(a) of this section, a party formation petition that meets all of the following requirements: 143
144
145
146

(i) The petition is signed by qualified electors equal in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election for such office. 147
148
149
150

(ii) The petition is signed by not fewer than five hundred qualified electors from each of at least a minimum of one-half of the congressional districts in this state. If an odd number of congressional districts exists in this state, the number of districts that results from dividing the number of congressional districts by two shall be rounded up to the next whole number. 151
152
153
154
155
156

(iii) The petition declares the petitioners' intention of organizing a political party, the name of which shall be stated in the declaration, and of participating in the succeeding general election, held in even-numbered years, that occurs more than one hundred twenty-five days after the date of filing. 157
158
159
160
161

(iv) The petition designates a committee of not less than three nor more than five individuals of the petitioners, who 162
163

shall represent the petitioners in all matters relating to the 164
petition. Notice of all matters or proceedings pertaining to the 165
petition may be served on the committee, or any of them, either 166
personally or by registered mail, or by leaving such notice at 167
the usual place of residence of each of them. 168

(2) No such group of electors shall assume a name or 169
designation that is similar, in the opinion of the secretary of 170
state, to that of an existing political party as to confuse or 171
mislead the voters at an election. 172

(B) A campaign committee shall be legally liable for any 173
debts, contracts, or expenditures incurred or executed in its 174
name. 175

(C) Notwithstanding the definitions found in section 176
3501.01 of the Revised Code, as used in this section and 177
sections 3517.08 to 3517.14, 3517.99, and 3517.992 of the 178
Revised Code: 179

(1) "Campaign committee" means a candidate or a 180
combination of two or more persons authorized by a candidate 181
under section 3517.081 of the Revised Code to receive 182
contributions and make expenditures. 183

(2) "Campaign treasurer" means an individual appointed by 184
a candidate under section 3517.081 of the Revised Code. 185

(3) "Candidate" has the same meaning as in division (H) of 186
section 3501.01 of the Revised Code and also includes any person 187
who, at any time before or after an election, receives 188
contributions or makes expenditures or other use of 189
contributions, has given consent for another to receive 190
contributions or make expenditures or other use of 191
contributions, or appoints a campaign treasurer, for the purpose 192

of bringing about the person's nomination or election to public 193
office. When two persons jointly seek the offices of governor 194
and lieutenant governor, "candidate" means the pair of 195
candidates jointly. "Candidate" does not include candidates for 196
election to the offices of member of a county or state central 197
committee, presidential elector, and delegate to a national 198
convention or conference of a political party. 199

(4) "Continuing association" means an association, other 200
than a campaign committee, political party, legislative campaign 201
fund, political contributing entity, or labor organization, that 202
is intended to be a permanent organization that has a primary 203
purpose other than supporting or opposing specific candidates, 204
political parties, or ballot issues, and that functions on a 205
regular basis throughout the year. "Continuing association" 206
includes organizations that are determined to be not organized 207
for profit under subsection 501 and that are described in 208
subsection 501(c)(3), 501(c)(4), or 501(c)(6) of the Internal 209
Revenue Code. 210

(5) "Contribution" means a loan, gift, deposit, 211
forgiveness of indebtedness, donation, advance, payment, or 212
transfer of funds or anything of value, including a transfer of 213
funds from an inter vivos or testamentary trust or decedent's 214
estate, and the payment by any person other than the person to 215
whom the services are rendered for the personal services of 216
another person, which contribution is made, received, or used 217
for the purpose of influencing the results of an election. Any 218
loan, gift, deposit, forgiveness of indebtedness, donation, 219
advance, payment, or transfer of funds or of anything of value, 220
including a transfer of funds from an inter vivos or 221
testamentary trust or decedent's estate, and the payment by any 222
campaign committee, political action committee, legislative 223

campaign fund, political party, political contributing entity, 224
or person other than the person to whom the services are 225
rendered for the personal services of another person, that is 226
made, received, or used by a state or county political party, 227
other than the moneys an entity may receive under sections 228
3517.101, 3517.1012, and 3517.1013 of the Revised Code, shall be 229
considered to be a "contribution" for the purpose of section 230
3517.10 of the Revised Code and shall be included on a statement 231
of contributions filed under that section. 232

"Contribution" does not include any of the following: 233

(a) Services provided without compensation by individuals 234
volunteering a portion or all of their time on behalf of a 235
person; 236

(b) Ordinary home hospitality; 237

(c) The personal expenses of a volunteer paid for by that 238
volunteer campaign worker; 239

(d) Any gift given to an entity pursuant to section 240
3517.101 of the Revised Code; 241

(e) Any contribution as defined in section 3517.1011 of 242
the Revised Code that is made, received, or used to pay the 243
direct costs of producing or airing an electioneering 244
communication; 245

(f) Any gift given to a state or county political party 246
for the party's restricted fund under division (A)(2) of section 247
3517.1012 of the Revised Code; 248

(g) Any gift given to a state political party for deposit 249
in a Levin account pursuant to section 3517.1013 of the Revised 250
Code. As used in this division, "Levin account" has the same 251

meaning as in that section.

252

(h) Any donation given to a transition fund under section 3517.1014 of the Revised Code. 253
254

(6) "Expenditure" means the disbursement or use of a contribution for the purpose of influencing the results of an election or of making a charitable donation under division (G) of section 3517.08 of the Revised Code. Any disbursement or use of a contribution by a state or county political party is an expenditure and shall be considered either to be made for the purpose of influencing the results of an election or to be made as a charitable donation under division (G) of section 3517.08 of the Revised Code and shall be reported on a statement of expenditures filed under section 3517.10 of the Revised Code. During the thirty days preceding a primary or general election, any disbursement to pay the direct costs of producing or airing a broadcast, cable, or satellite communication that refers to a clearly identified candidate shall be considered to be made for the purpose of influencing the results of that election and shall be reported as an expenditure or as an independent expenditure under section 3517.10 or 3517.105 of the Revised Code, as applicable, except that the information required to be reported regarding contributors for those expenditures or independent expenditures shall be the same as the information required to be reported under divisions (D)(1) and (2) of section 3517.1011 of the Revised Code. 255
256
257
258
259
260
261
262
263
264
265
266
267
268
269
270
271
272
273
274
275
276

As used in this division, "broadcast, cable, or satellite communication" and "refers to a clearly identified candidate" have the same meanings as in section 3517.1011 of the Revised Code. 277
278
279
280

(7) "Personal expenses" includes, but is not limited to, 281

ordinary expenses for accommodations, clothing, food, personal
motor vehicle or airplane, and home telephone.
282
283

(8) "Political action committee" means a combination of
two or more persons, the primary or major purpose of which is to
support or oppose any candidate, political party, or issue, or
to influence the result of any election through express
advocacy, and that is not a political party, a campaign
committee, a political contributing entity, or a legislative
campaign fund. "Political action committee" does not include
either of the following:
284
285
286
287
288
289
290
291

(a) A continuing association that makes disbursements for
the direct costs of producing or airing electioneering
communications and that does not engage in express advocacy;
292
293
294

(b) A political club that is formed primarily for social
purposes and that consists of one hundred members or less, has
officers and periodic meetings, has less than two thousand five
hundred dollars in its treasury at all times, and makes an
aggregate total contribution of one thousand dollars or less per
calendar year.
295
296
297
298
299
300

(9) "Public office" means any state, county, municipal,
township, or district office, except an office of a political
party, that is filled by an election and the offices of United
States senator and representative.
301
302
303
304

(10) "Anything of value" has the same meaning as in
section 1.03 of the Revised Code.
305
306

(11) "Beneficiary of a campaign fund" means a candidate, a
public official or employee for whose benefit a campaign fund
exists, and any other person who has ever been a candidate or
public official or employee and for whose benefit a campaign
307
308
309
310

**Am. Sub. H. B. No. 271**                                     **Page 12**
**As Passed by the Senate**

fund exists.                                                          311

(12) "Campaign fund" means money or other property,                  312
including contributions.                                             313

(13) "Public official or employee" has the same meaning as           314
in section 102.01 of the Revised Code.                              315

(14) "Caucus" means all of the members of the house of               316
representatives or all of the members of the senate of the          317
general assembly who are members of the same political party.       318

(15) "Legislative campaign fund" means a fund that is                319
established as an auxiliary of a state political party and           320
associated with one of the houses of the general assembly.          321

(16) "In-kind contribution" means anything of value other            322
than money that is used to influence the results of an election     323
or is transferred to or used in support of or in opposition to a    324
candidate, campaign committee, legislative campaign fund,           325
political party, political action committee, or political           326
contributing entity and that is made with the consent of, in        327
coordination, cooperation, or consultation with, or at the          328
request or suggestion of the benefited candidate, committee,        329
fund, party, or entity. The financing of the dissemination,         330
distribution, or republication, in whole or part, of any            331
broadcast or of any written, graphic, or other form of campaign     332
materials prepared by the candidate, the candidate's campaign       333
committee, or their authorized agents is an in-kind contribution    334
to the candidate and an expenditure by the candidate.               335

~~(17)~~(17)(a) "Independent expenditure" means ~~an~~ either of     336
the following:                                                       337

(i) An expenditure by a person advocating the election or           338
defeat of an identified candidate or candidates, that is not        339

made with the consent of, in coordination, cooperation, or            340
consultation with, or at the request or suggestion of any             341
candidate or candidates or of the campaign committee or agent of      342
the candidate or candidates;                                          343

   (ii) An expenditure by a person advocating support of or           344
opposition to an identified ballot issue or question or to            345
achieve the successful circulation of an initiative or                346
referendum petition in order to place such an issue or question       347
on the ballot, regardless of whether the ballot issue or              348
question has yet been certified to appear on the ballot. As           349

   (b) As used in division (C)(17) (C)(17)(a) of this                 350
section:                                                              351

   (a) (i) "Person" means an individual, partnership,                 352
unincorporated business organization or association, political        353
action committee, political contributing entity, separate             354
segregated fund, association, or other organization or group of       355
persons, but not a labor organization or a corporation unless         356
the labor organization or corporation is a political                  357
contributing entity.                                                  358

   (b) (ii) "Advocating" means any communication containing a         359
message advocating election or defeat.                                360

   (c) (iii) "Identified candidate" means that the name of            361
the candidate appears, a photograph or drawing of the candidate       362
appears, or the identity of the candidate is otherwise apparent       363
by unambiguous reference.                                             364

   (d) (iv) "Made in coordination, cooperation, or                    365
consultation with, or at the request or suggestion of, any            366
candidate or the campaign committee or agent of the candidate"        367
means made pursuant to any arrangement, coordination, or              368

**Am. Sub. H. B. No. 271**                                                      **Page 14**
**As Passed by the Senate**

direction by the candidate, the candidate's campaign committee,          369
or the candidate's agent prior to the publication, distribution,         370
display, or broadcast of the communication. An expenditure is            371
presumed to be so made when it is any of the following:                  372

~~(i)~~ (I) Based on information about the candidate's plans,             373
projects, or needs provided to the person making the expenditure         374
by the candidate, or by the candidate's campaign committee or            375
agent, with a view toward having an expenditure made;                    376

~~(ii)~~ (II) Made by or through any person who is, or has               377
been, authorized to raise or expend funds, who is, or has been,          378
an officer of the candidate's campaign committee, or who is, or          379
has been, receiving any form of compensation or reimbursement            380
from the candidate or the candidate's campaign committee or              381
agent;                                                                   382

~~(iii)~~ (III) Except as otherwise provided in division (D)             383
of section 3517.105 of the Revised Code, made by a political             384
party in support of a candidate, unless the expenditure is made          385
by a political party to conduct voter registration or voter              386
education efforts.                                                       387

~~(e)~~ (v) "Agent" means any person who has actual oral or              388
written authority, either express or implied, to make or to              389
authorize the making of expenditures on behalf of a candidate,           390
or means any person who has been placed in a position with the           391
candidate's campaign committee or organization such that it              392
would reasonably appear that in the ordinary course of campaign-         393
related activities the person may authorize expenditures.                394

(18) "Labor organization" means a labor union; an employee               395
organization; a federation of labor unions, groups, locals, or           396
other employee organizations; an auxiliary of a labor union,             397

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 353 of 879 PAGEID #: 488

**Am. Sub. H. B. No. 271**
**As Passed by the Senate**

**Page 15**

employee organization, or federation of labor unions, groups, 398
locals, or other employee organizations; or any other bona fide 399
organization in which employees participate and that exists for 400
the purpose, in whole or in part, of dealing with employers 401
concerning grievances, labor disputes, wages, hours, and other 402
terms and conditions of employment. 403

(19) "Separate segregated fund" means a separate 404
segregated fund established pursuant to the Federal Election 405
Campaign Act. 406

(20) "Federal Election Campaign Act" means the "Federal 407
Election Campaign Act of 1971," 86 Stat. 11, 2 U.S.C.A. 431, et 408
seq., as amended. 409

(21) "Restricted fund" means the fund a state or county 410
political party must establish under division (A)(1) of section 411
3517.1012 of the Revised Code. 412

(22) "Electioneering communication" has the same meaning 413
as in section 3517.1011 of the Revised Code. 414

(23) "Express advocacy" means a communication that 415
contains express words advocating the nomination, election, or 416
defeat of a candidate or that contains express words advocating 417
the adoption or defeat of a question or issue, as determined by 418
a final judgment of a court of competent jurisdiction. 419

(24) "Political committee" has the same meaning as in 420
section 3517.1011 of the Revised Code. 421

(25) "Political contributing entity" means any entity, 422
including a corporation or labor organization, that may lawfully 423
make contributions and expenditures and that is not an 424
individual or a political action committee, continuing 425
association, campaign committee, political party, legislative 426

campaign fund, designated state campaign committee, or state 427
candidate fund. For purposes of this division, "lawfully" means 428
not prohibited by any section of the Revised Code, or authorized 429
by a final judgment of a court of competent jurisdiction. 430

(26) "Internet identifier of record" has the same meaning 431
as in section 9.312 of the Revised Code. 432

**Sec. 3517.10.** (A) Except as otherwise provided in this 433
division, every campaign committee, political action committee, 434
legislative campaign fund, political party, and political 435
contributing entity that made or received a contribution or made 436
an expenditure in connection with the nomination or election of 437
any candidate or in connection with any ballot issue or question 438
at any election held or to be held in this state shall file, on 439
a form prescribed under this section or by electronic means of 440
transmission as provided in this section and section 3517.106 of 441
the Revised Code, a full, true, and itemized statement, made 442
under penalty of election falsification, setting forth in detail 443
the contributions and expenditures, not later than four p.m. of 444
the following dates: 445

(1) The twelfth day before the election to reflect 446
contributions received and expenditures made from the close of 447
business on the last day reflected in the last previously filed 448
statement, if any, to the close of business on the twentieth day 449
before the election; 450

(2) The thirty-eighth day after the election to reflect 451
the contributions received and expenditures made from the close 452
of business on the last day reflected in the last previously 453
filed statement, if any, to the close of business on the seventh 454
day before the filing of the statement; 455

(3) The last business day of January of every year to reflect the contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the last day of December of the previous year; 456
457
458
459
460

(4) The last business day of July of every year to reflect the contributions received and expenditures made from the close of business on the last day reflected in the last previously filed statement, if any, to the close of business on the last day of June of that year. 461
462
463
464
465

A campaign committee shall only be required to file the statements prescribed under divisions (A)(1) and (2) of this section in connection with the nomination or election of the committee's candidate. 466
467
468
469

The statement required under division (A)(1) of this section shall not be required of any campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity that has received contributions of less than one thousand dollars and has made expenditures of less than one thousand dollars at the close of business on the twentieth day before the election. Those contributions and expenditures shall be reported in the statement required under division (A)(2) of this section. 470
471
472
473
474
475
476
477
478

If an election to select candidates to appear on the general election ballot is held within sixty days before a general election, the campaign committee of a successful candidate in the earlier election may file the statement required by division (A)(1) of this section for the general election instead of the statement required by division (A)(2) of this section for the earlier election if the pregeneral election 479
480
481
482
483
484
485

statement reflects the status of contributions and expenditures
for the period twenty days before the earlier election to twenty
days before the general election. 486 487 488

If a person becomes a candidate less than twenty days
before an election, the candidate's campaign committee is not
required to file the statement required by division (A)(1) of
this section. 489 490 491 492

No statement under division (A)(3) of this section shall
be required for any year in which a campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity is required to file a
postgeneral election statement under division (A)(2) of this
section. However, a statement under division (A)(3) of this
section may be filed, at the option of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity. 493 494 495 496 497 498 499 500 501

No campaign committee of a candidate for the office of
chief justice or justice of the supreme court, and no campaign
committee of a candidate for the office of judge of any court in
this state, shall be required to file a statement under division
(A)(4) of this section. 502 503 504 505 506

Except as otherwise provided in this paragraph and in the
next paragraph of this section, the only campaign committees
required to file a statement under division (A)(4) of this
section are the campaign committee of a statewide candidate and
the campaign committee of a candidate for county office. The
campaign committee of a candidate for any other nonjudicial
office is required to file a statement under division (A)(4) of
this section if that campaign committee receives, during that
period, contributions exceeding ten thousand dollars. 507 508 509 510 511 512 513 514 515

No statement under division (A)(4) of this section shall be required of a campaign committee, a political action committee, a legislative campaign fund, a political party, or a political contributing entity for any year in which the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity is required to file a postprimary election statement under division (A)(2) of this section. However, a statement under division (A) (4) of this section may be filed at the option of the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity. 516 517 518 519 520 521 522 523 524 525 526

No statement under division (A)(3) or (4) of this section shall be required if the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity has no contributions that it has received and no expenditures that it has made since the last date reflected in its last previously filed statement. However, the campaign committee, political action committee, legislative campaign fund, political party, or political contributing entity shall file a statement to that effect, on a form prescribed under this section and made under penalty of election falsification, on the date required in division (A)(3) or (4) of this section, as applicable. 527 528 529 530 531 532 533 534 535 536 537 538

The campaign committee of a statewide candidate shall file a monthly statement of contributions received during each of the months of July, August, and September in the year of the general election in which the candidate seeks office. The campaign committee of a statewide candidate shall file the monthly statement not later than three business days after the last day of the month covered by the statement. During the period beginning on the nineteenth day before the general election in 539 540 541 542 543 544 545 546

| | |
|---|---|
| which a statewide candidate seeks election to office and | 547 |
| extending through the day of that general election, each time | 548 |
| the campaign committee of the joint candidates for the offices | 549 |
| of governor and lieutenant governor or of a candidate for the | 550 |
| office of secretary of state, auditor of state, treasurer of | 551 |
| state, or attorney general receives a contribution from a | 552 |
| contributor that causes the aggregate amount of contributions | 553 |
| received from that contributor during that period to equal or | 554 |
| exceed ten thousand dollars and each time the campaign committee | 555 |
| of a candidate for the office of chief justice or justice of the | 556 |
| supreme court receives a contribution from a contributor that | 557 |
| causes the aggregate amount of contributions received from that | 558 |
| contributor during that period to exceed ten thousand dollars, | 559 |
| the campaign committee shall file a two-business-day statement | 560 |
| reflecting that contribution. Contributions reported on a two- | 561 |
| business-day statement required to be filed by a campaign | 562 |
| committee of a statewide candidate in a primary election shall | 563 |
| also be included in the postprimary election statement required | 564 |
| to be filed by that campaign committee under division (A)(2) of | 565 |
| this section. A two-business-day statement required by this | 566 |
| paragraph shall be filed not later than two business days after | 567 |
| receipt of the contribution. The statements required by this | 568 |
| paragraph shall be filed in addition to any other statements | 569 |
| required by this section. | 570 |

| | |
|---|---|
| Subject to the secretary of state having implemented, | 571 |
| tested, and verified the successful operation of any system the | 572 |
| secretary of state prescribes pursuant to divisions (C)(6)(b) | 573 |
| and (D)(6) of this section and division (F)(1) of section | 574 |
| 3517.106 of the Revised Code for the filing of campaign finance | 575 |
| statements by electronic means of transmission, a campaign | 576 |
| committee of a statewide candidate shall file a two-business-day | 577 |

statement under the preceding paragraph by electronic means of
transmission if the campaign committee is required to file a
pre-election, postelection, or monthly statement of
contributions and expenditures by electronic means of
transmission under this section or section 3517.106 of the
Revised Code. 578
579
580
581
582
583

If a campaign committee or political action committee has
no balance on hand and no outstanding obligations and desires to
terminate itself, it shall file a statement to that effect, on a
form prescribed under this section and made under penalty of
election falsification, with the official with whom it files a
statement under division (A) of this section after filing a
final statement of contributions and a final statement of
expenditures, if contributions have been received or
expenditures made since the period reflected in its last
previously filed statement. 584
585
586
587
588
589
590
591
592
593

(B) Except as otherwise provided in division (C)(7) of
this section, each statement required by division (A) of this
section shall contain the following information: 594
595
596

(1) The full name and address of each campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity, including any treasurer
of the committee, fund, party, or entity, filing a contribution
and expenditure statement; 597
598
599
600
601

(2)(a) In the case of a campaign committee, the
candidate's full name and address; 602
603

(b) In the case of a political action committee, the
registration number assigned to the committee under division (D)
(1) of this section. 604
605
606

(3) The date of the election and whether it was or will be
a general, primary, or special election; 607
608

(4) A statement of contributions received, which shall
include the following information: 609
610

(a) The month, day, and year of the contribution; 611

(b)(i) The full name and address of each person, political
party, campaign committee, legislative campaign fund, political
action committee, or political contributing entity from whom
contributions are received and the registration number assigned
to the political action committee under division (D)(1) of this
section. The requirement of filing the full address does not
apply to any statement filed by a state or local committee of a
political party, to a finance committee of such committee, or to
a committee recognized by a state or local committee as its
fund-raising auxiliary. Notwithstanding division (F) of this
section, the requirement of filing the full address shall be
considered as being met if the address filed is the same address
the contributor provided under division (E)(1) of this section. 612
613
614
615
616
617
618
619
620
621
622
623
624

(ii) If a political action committee, political
contributing entity, legislative campaign fund, or political
party that is required to file campaign finance statements by
electronic means of transmission under section 3517.106 of the
Revised Code or a campaign committee of a statewide candidate or
candidate for the office of member of the general assembly
receives a contribution from an individual that exceeds one
hundred dollars, the name of the individual's current employer,
if any, or, if the individual is self-employed, the individual's
occupation and the name of the individual's business, if any; 625
626
627
628
629
630
631
632
633
634

(iii) If a campaign committee of a statewide candidate or 635

candidate for the office of member of the general assembly 636
receives a contribution transmitted pursuant to section 3599.031 637
of the Revised Code from amounts deducted from the wages and 638
salaries of two or more employees that exceeds in the aggregate 639
one hundred dollars during any one filing period under division 640
(A)(1), (2), (3), or (4) of this section, the full name of the 641
employees' employer and the full name of the labor organization 642
of which the employees are members, if any. 643

(c) A description of the contribution received, if other 644
than money; 645

(d) The value in dollars and cents of the contribution; 646

(e) A separately itemized account of all contributions and 647
expenditures regardless of the amount, except a receipt of a 648
contribution from a person in the sum of twenty-five dollars or 649
less at one social or fund-raising activity and a receipt of a 650
contribution transmitted pursuant to section 3599.031 of the 651
Revised Code from amounts deducted from the wages and salaries 652
of employees if the contribution from the amount deducted from 653
the wages and salary of any one employee is twenty-five dollars 654
or less aggregated in a calendar year. An account of the total 655
contributions from each social or fund-raising activity shall 656
include a description of and the value of each in-kind 657
contribution received at that activity from any person who made 658
one or more such contributions whose aggregate value exceeded 659
two hundred fifty dollars and shall be listed separately, 660
together with the expenses incurred and paid in connection with 661
that activity. A campaign committee, political action committee, 662
legislative campaign fund, political party, or political 663
contributing entity shall keep records of contributions from 664
each person in the amount of twenty-five dollars or less at one 665

social or fund-raising activity and contributions from amounts deducted under section 3599.031 of the Revised Code from the wages and salary of each employee in the amount of twenty-five dollars or less aggregated in a calendar year. No continuing association that is recognized by a state or local committee of a political party as an auxiliary of the party and that makes a contribution from funds derived solely from regular dues paid by members of the auxiliary shall be required to list the name or address of any members who paid those dues. 666
667
668
669
670
671
672
673
674

Contributions that are other income shall be itemized separately from all other contributions. The information required under division (B)(4) of this section shall be provided for all other income itemized. As used in this paragraph, "other income" means a loan, investment income, or interest income. 675
676
677
678
679

(f) In the case of a campaign committee of a state elected officer, if a person doing business with the state elected officer in the officer's official capacity makes a contribution to the campaign committee of that officer, the information required under division (B)(4) of this section in regard to that contribution, which shall be filed together with and considered a part of the committee's statement of contributions as required under division (A) of this section but shall be filed on a separate form provided by the secretary of state. As used in this division: 680
681
682
683
684
685
686
687
688
689

(i) "State elected officer" has the same meaning as in section 3517.092 of the Revised Code. 690
691

(ii) "Person doing business" means a person or an officer of an entity who enters into one or more contracts with a state elected officer or anyone authorized to enter into contracts on behalf of that officer to receive payments for goods or 692
693
694
695

services, if the payments total, in the aggregate, more than                696
five thousand dollars during a calendar year.                               697

(5) A statement of expenditures which shall include the                     698
following information:                                                      699

(a) The month, day, and year of the expenditure;                           700

(b) The full name and address of each person, political                    701
party, campaign committee, legislative campaign fund, political            702
action committee, or political contributing entity to whom the             703
expenditure was made and the registration number assigned to the           704
political action committee under division (D)(1) of this                   705
section;                                                                   706

(c) The object or purpose for which the expenditure was                    707
made;                                                                      708

(d) The amount of each expenditure.                                        709

(C)(1) The statement of contributions and expenditures                     710
shall be signed by the person completing the form. If a                    711
statement of contributions and expenditures is filed by                    712
electronic means of transmission pursuant to this section or               713
section 3517.106 of the Revised Code, the electronic signature             714
of the person who executes the statement and transmits the                 715
statement by electronic means of transmission, as provided in              716
division (F) of section 3517.106 of the Revised Code, shall be             717
attached to or associated with the statement and shall be                  718
binding on all persons and for all purposes under the campaign             719
finance reporting law as if the signature had been handwritten             720
in ink on a printed form.                                                  721

(2) The person filing the statement, under penalty of                      722
election falsification, shall include with it a̶ both of the               723
following:                                                                 724

(a) A list of each anonymous contribution, the 725
circumstances under which it was received, and the reason it 726
cannot be attributed to a specific donor; 727

(b) A certification that the campaign committee, political 728
action committee, legislative campaign fund, political party, or 729
political contributing entity, as applicable, has not knowingly 730
accepted any contribution that is prohibited under this chapter 731
or section 3599.03 or 3599.031 of the Revised Code, including 732
under division (W) of section 3517.13 of the Revised Code, 733
during the period covered by the statement. 734

(3) Each statement of a campaign committee of a candidate 735
who holds public office shall contain a designation of each 736
contributor who is an employee in any unit or department under 737
the candidate's direct supervision and control. In a space 738
provided in the statement, the person filing the statement shall 739
affirm that each such contribution was voluntarily made. 740

(4) A campaign committee that did not receive 741
contributions or make expenditures in connection with the 742
nomination or election of its candidate shall file a statement 743
to that effect, on a form prescribed under this section and made 744
under penalty of election falsification, on the date required in 745
division (A)(2) of this section. 746

(5) The campaign committee of any person who attempts to 747
become a candidate and who, for any reason, does not become 748
certified in accordance with Title XXXV of the Revised Code for 749
placement on the official ballot of a primary, general, or 750
special election to be held in this state, and who, at any time 751
prior to or after an election, receives contributions or makes 752
expenditures, or has given consent for another to receive 753
contributions or make expenditures, for the purpose of bringing 754

about the person's nomination or election to public office,
shall file the statement or statements prescribed by this
section and a termination statement, if applicable. Division (C)
(5) of this section does not apply to any person with respect to
an election to the offices of member of a county or state
central committee, presidential elector, or delegate to a
national convention or conference of a political party. 
755
756
757
758
759
760
761

(6)(a) The statements required to be filed under this
section shall specify the balance in the hands of the campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity and the
disposition intended to be made of that balance. 
762
763
764
765
766

(b) The secretary of state shall prescribe the form for
all statements required to be filed under this section and shall
furnish the forms to the boards of elections in the several
counties. The boards of elections shall supply printed copies of
those forms without charge. The secretary of state shall
prescribe the appropriate methodology, protocol, and data file
structure for statements required or permitted to be filed by
electronic means of transmission to the secretary of state or a
board of elections under division (A) of this section, division
(E) of section 3517.106, division (D) of section 3517.1011,
division (B) of section 3517.1012, division (C) of section
3517.1013, and divisions (D) and (I) of section 3517.1014 of the
Revised Code. Subject to division (A) of this section, division
(E) of section 3517.106, division (D) of section 3517.1011,
division (B) of section 3517.1012, division (C) of section
3517.1013, and divisions (D) and (I) of section 3517.1014 of the
Revised Code, the statements required to be stored on computer
by the secretary of state under division (B) of section 3517.106
of the Revised Code shall be filed in whatever format the 
767
768
769
770
771
772
773
774
775
776
777
778
779
780
781
782
783
784
785

secretary of state considers necessary to enable the secretary 786
of state to store the information contained in the statements on 787
computer. Any such format shall be of a type and nature that is 788
readily available to whoever is required to file the statements 789
in that format. 790

(c) The secretary of state shall assess the need for 791
training regarding the filing of campaign finance statements by 792
electronic means of transmission and regarding associated 793
technologies for candidates, campaign committees, political 794
action committees, legislative campaign funds, political 795
parties, or political contributing entities, for individuals, 796
partnerships, or other entities, for persons making 797
disbursements to pay the direct costs of producing or airing 798
electioneering communications, or for treasurers of transition 799
funds, required or permitted to file statements by electronic 800
means of transmission under this section or section 3517.105, 801
3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014 of the 802
Revised Code. If, in the opinion of the secretary of state, 803
training in these areas is necessary, the secretary of state 804
shall arrange for the provision of voluntary training programs 805
for candidates, campaign committees, political action 806
committees, legislative campaign funds, political parties, or 807
political contributing entities, for individuals, partnerships, 808
and other entities, for persons making disbursements to pay the 809
direct costs of producing or airing electioneering 810
communications, or for treasurers of transition funds, as 811
appropriate. 812

(7) Each monthly statement and each two-business-day 813
statement required by division (A) of this section shall contain 814
the information required by divisions (B)(1) to (4), (C)(2), 815
and, if appropriate, (C)(3) of this section. Each statement 816

shall be signed as required by division (C)(1) of this section.                817

(D)(1)(a) Prior to receiving a contribution or making an                       818
expenditure, every campaign committee, political action                        819
committee, legislative campaign fund, political party, or                      820
political contributing entity shall appoint a treasurer and                    821
shall file, on a form prescribed by the secretary of state, a                  822
designation of that appointment, including the full name and                   823
address of the treasurer and of the campaign committee,                        824
political action committee, legislative campaign fund, political               825
party, or political contributing entity. That designation shall                826
be filed with the official with whom the campaign committee,                   827
political action committee, legislative campaign fund, political               828
party, or political contributing entity is required to file                    829
statements under section 3517.11 of the Revised Code. The name                 830
of a campaign committee shall include at least the last name of                831
the campaign committee's candidate. If two or more candidates                  832
are the beneficiaries of a single campaign committee under                     833
division (B) of section 3517.081 of the Revised Code, the name                 834
of the campaign committee shall include at least the last name                 835
of each candidate who is a beneficiary of that campaign                        836
committee. The secretary of state shall assign a registration                  837
number to each political action committee that files a                         838
designation of the appointment of a treasurer under this                       839
division if the political action committee is required by                      840
division (A)(1) of section 3517.11 of the Revised Code to file                 841
the statements prescribed by this section with the secretary of                842
state.                                                                         843

(b) The form of the designation of treasurer shall require                     844
the filer to certify, under penalty of election falsification,                 845
that the campaign committee, political action committee,                       846
legislative campaign fund, political party, or political                       847

contributing entity, as applicable, has not knowingly accepted, 848
and will not knowingly accept, any contribution that is 849
prohibited under this chapter or section 3599.03 or 3599.031 of 850
the Revised Code, including under division (W) of section 851
3517.13 of the Revised Code. 852

(c) The secretary of state shall not accept for filing a 853
designation of treasurer of a political action committee or 854
political contributing entity if, in the opinion of the 855
secretary of state, the name of the political action committee 856
or political contributing entity would lead a reasonable person 857
to believe that the political action committee or political 858
contributing entity acts on behalf of or represents a county 859
political party, unless the designation is accompanied by a 860
written statement, signed by the chairperson of the county 861
political party's executive committee, granting the political 862
action committee or political contributing entity permission to 863
act on behalf of or represent the county political party. 864

(2) The treasurer appointed under division (D)(1) of this 865
section shall keep a strict account of all contributions, from 866
whom received and the purpose for which they were disbursed. 867

(3)(a) Except as otherwise provided in section 3517.108 of 868
the Revised Code, a campaign committee shall deposit all 869
monetary contributions received by the committee into an account 870
separate from a personal or business account of the candidate or 871
campaign committee. 872

(b) A political action committee shall deposit all 873
monetary contributions received by the committee into an account 874
separate from all other funds. 875

(c) A state or county political party may establish a 876

state candidate fund that is separate from all other funds. A 877
state or county political party may deposit into its state 878
candidate fund any amounts of monetary contributions that are 879
made to or accepted by the political party subject to the 880
applicable limitations, if any, prescribed in section 3517.102 881
of the Revised Code. A state or county political party shall 882
deposit all other monetary contributions received by the party 883
into one or more accounts that are separate from its state 884
candidate fund. 885

(d) Each state political party shall have only one 886
legislative campaign fund for each house of the general 887
assembly. Each such fund shall be separate from any other funds 888
or accounts of that state party. A legislative campaign fund is 889
authorized to receive contributions and make expenditures for 890
the primary purpose of furthering the election of candidates who 891
are members of that political party to the house of the general 892
assembly with which that legislative campaign fund is 893
associated. Each legislative campaign fund shall be administered 894
and controlled in a manner designated by the caucus. As used in 895
this division, "caucus" has the same meaning as in section 896
3517.01 of the Revised Code and includes, as an ex officio 897
member, the chairperson of the state political party with which 898
the caucus is associated or that chairperson's designee. 899

(4) Every expenditure in excess of twenty-five dollars 900
shall be vouched for by a receipted bill, stating the purpose of 901
the expenditure, that shall be filed with the statement of 902
expenditures. A canceled check with a notation of the purpose of 903
the expenditure is a receipted bill for purposes of division (D) 904
(4) of this section. 905

(5) The secretary of state or the board of elections, as 906

the case may be, shall issue a receipt for each statement filed
under this section and shall preserve a copy of the receipt for
a period of at least six years. All statements filed under this
section shall be open to public inspection in the office where
they are filed and shall be carefully preserved for a period of
at least six years after the year in which they are filed. 
907
908
909
910
911
912

(6) The secretary of state, by rule adopted pursuant to
section 3517.23 of the Revised Code, shall prescribe both of the
following: 
913
914
915

(a) The manner of immediately acknowledging, with date and
time received, and preserving the receipt of statements that are
transmitted by electronic means of transmission to the secretary
of state or a board of elections pursuant to this section or
section 3517.106, 3517.1011, 3517.1012, 3517.1013, or 3517.1014
of the Revised Code; 
916
917
918
919
920
921

(b) The manner of preserving the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and
disbursement information in the statements described in division
(D)(6)(a) of this section. The secretary of state shall preserve
the contribution and expenditure, contribution and disbursement,
deposit and disbursement, gift and disbursement, or donation and
disbursement information in those statements for at least ten
years after the year in which they are filed by electronic means
of transmission. 
922
923
924
925
926
927
928
929
930
931

(7)(a) The secretary of state, pursuant to division (G) of
section 3517.106 of the Revised Code, shall make available
online to the public through the internet the contribution and
expenditure, contribution and disbursement, deposit and
disbursement, gift and disbursement, or donation and 
932
933
934
935
936

disbursement information in all of the following documents: 937

(i) All statements, all addenda, amendments, or other corrections to statements, and all amended statements filed with the secretary of state by electronic or other means of transmission under this section, division (B)(2)(b) or (C)(2)(b) of section 3517.105, or section 3517.106, 3517.1011, 3517.1012, 3517.1013, 3517.1014, or 3517.11 of the Revised Code; 938
939
940
941
942
943

(ii) All statements filed with a board of elections by electronic means of transmission, and all addenda, amendments, corrections, and amended versions of those statements, filed with the board under this section, division (B)(2)(b) or (C)(2)(b) of section 3517.105, or section 3517.106, 3517.1012, or 3517.11 of the Revised Code. 944
945
946
947
948
949

(b) The secretary of state may remove the information from the internet after a reasonable period of time. 950
951

(E)(1) Any person, political party, campaign committee, legislative campaign fund, political action committee, or political contributing entity that makes a contribution in connection with the nomination or election of any candidate or in connection with any ballot issue or question at any election held or to be held in this state shall provide its full name and address to the recipient of the contribution at the time the contribution is made. The political action committee also shall provide the registration number assigned to the committee under division (D)(1) of this section to the recipient of the contribution at the time the contribution is made. 952
953
954
955
956
957
958
959
960
961
962

(2) Any individual who makes a contribution that exceeds one hundred dollars to a political action committee, political contributing entity, legislative campaign fund, or political 963
964
965

party or to a campaign committee of a statewide candidate or 966
candidate for the office of member of the general assembly shall 967
provide the name of the individual's current employer, if any, 968
or, if the individual is self-employed, the individual's 969
occupation and the name of the individual's business, if any, to 970
the recipient of the contribution at the time the contribution 971
is made. Sections 3599.39 and 3599.40 of the Revised Code do not 972
apply to division (E)(2) of this section. 973

(3) If a campaign committee shows that it has exercised 974
its best efforts to obtain, maintain, and submit the information 975
required under divisions (B)(4)(b)(ii) and (iii) of this 976
section, that committee is considered to have met the 977
requirements of those divisions. A campaign committee shall not 978
be considered to have exercised its best efforts unless, in 979
connection with written solicitations, it regularly includes a 980
written request for the information required under division (B) 981
(4)(b)(ii) of this section from the contributor or the 982
information required under division (B)(4)(b)(iii) of this 983
section from whoever transmits the contribution. 984

(4) Any check that a political action committee uses to 985
make a contribution or an expenditure shall contain the full 986
name and address of the committee and the registration number 987
assigned to the committee under division (D)(1) of this section. 988

(F) As used in this section: 989

(1)(a) Except as otherwise provided in division (F)(1) of 990
this section, "address" means all of the following if they 991
exist: apartment number, street, road, or highway name and 992
number, rural delivery route number, city or village, state, and 993
zip code as used in a person's post-office address, but not 994
post-office box. 995

(b) Except as otherwise provided in division (F)(1) of
this section, if an address is required in this section, a post-
office box and office, room, or suite number may be included in
addition to, but not in lieu of, an apartment, street, road, or
highway name and number. 996
997
998
999
1000

(c) If an address is required in this section, a campaign
committee, political action committee, legislative campaign
fund, political party, or political contributing entity may use
the business or residence address of its treasurer or deputy
treasurer. The post-office box number of the campaign committee,
political action committee, legislative campaign fund, political
party, or political contributing entity may be used in addition
to that address. 1001
1002
1003
1004
1005
1006
1007
1008

(d) For the sole purpose of a campaign committee's
reporting of contributions on a statement of contributions
received under division (B)(4) of this section, "address" has
one of the following meanings at the option of the campaign
committee: 1009
1010
1011
1012
1013

(i) The same meaning as in division (F)(1)(a) of this
section; 1014
1015

(ii) All of the following, if they exist: the
contributor's post-office box number and city or village, state,
and zip code as used in the contributor's post-office address. 1016
1017
1018

(e) As used with regard to the reporting under this
section of any expenditure, "address" means all of the following
if they exist: apartment number, street, road, or highway name
and number, rural delivery route number, city or village, state,
and zip code as used in a person's post-office address, or post-
office box. If an address concerning any expenditure is required 1019
1020
1021
1022
1023
1024

in this section, a campaign committee, political action
committee, legislative campaign fund, political party, or
political contributing entity may use the business or residence
address of its treasurer or deputy treasurer or its post-office
box number. 

1025
1026
1027
1028
1029

(2) "Statewide candidate" means the joint candidates for
the offices of governor and lieutenant governor or a candidate
for the office of secretary of state, auditor of state,
treasurer of state, attorney general, member of the state board
of education, chief justice of the supreme court, or justice of
the supreme court. 

1030
1031
1032
1033
1034
1035

(3) "Candidate for county office" means a candidate for
the office of county auditor, county treasurer, clerk of the
court of common pleas, judge of the court of common pleas,
sheriff, county recorder, county engineer, county commissioner,
prosecuting attorney, or coroner. 

1036
1037
1038
1039
1040

(G) An independent expenditure shall be reported whenever
and in the same manner that an expenditure is required to be
reported under this section and shall be reported pursuant to
division (B)(2)(a) or (C)(2)(a) of section 3517.105 of the
Revised Code. 

1041
1042
1043
1044
1045

(H)(1) Except as otherwise provided in division (H)(2) of
this section, if, during the combined pre-election and
postelection reporting periods for an election, a campaign
committee has received contributions of five hundred dollars or
less and has made expenditures in the total amount of five
hundred dollars or less, it may file a statement to that effect,
under penalty of election falsification, in lieu of the
statement required by division (A)(2) of this section. The
statement shall indicate the total amount of contributions 

1046
1047
1048
1049
1050
1051
1052
1053
1054

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 375 of 879 PAGEID #: 510

**Am. Sub. H. B. No. 271**
**As Passed by the Senate**

**Page 37**

received and the total amount of expenditures made during those
combined reporting periods. 
1055
1056

(2) In the case of a successful candidate at a primary
election, if either the total contributions received by or the
total expenditures made by the candidate's campaign committee
during the preprimary, postprimary, pregeneral, and postgeneral
election periods combined equal more than five hundred dollars,
the campaign committee may file the statement under division (H)
(1) of this section only for the primary election. The first
statement that the campaign committee files in regard to the
general election shall reflect all contributions received and
all expenditures made during the preprimary and postprimary
election periods. 
1057
1058
1059
1060
1061
1062
1063
1064
1065
1066
1067

(3) Divisions (H)(1) and (2) of this section do not apply
if a campaign committee receives contributions or makes
expenditures prior to the first day of January of the year of
the election at which the candidate seeks nomination or election
to office or if the campaign committee does not file a
termination statement with its postprimary election statement in
the case of an unsuccessful primary election candidate or with
its postgeneral election statement in the case of other
candidates. 
1068
1069
1070
1071
1072
1073
1074
1075
1076

(I) In the case of a contribution made by a partner of a
partnership or an owner or a member of another unincorporated
business from any funds of the partnership or other
unincorporated business, all of the following apply: 
1077
1078
1079
1080

(1) The recipient of the contribution shall report the
contribution by listing both the partnership or other
unincorporated business and the name of the partner, owner, or
member making the contribution. 
1081
1082
1083
1084

(2) In reporting the contribution, the recipient of the contribution shall be entitled to conclusively rely upon the information provided by the partnership or other unincorporated business, provided that the information includes one of the following: 1085 1086 1087 1088 1089

(a) The name of each partner, owner, or member as of the date of the contribution or contributions, and a statement that the total contributions are to be allocated equally among all of the partners, owners, or members; or 1090 1091 1092 1093

(b) The name of each partner, owner, or member as of the date of the contribution or contributions who is participating in the contribution or contributions, and a statement that the contribution or contributions are to be allocated to those individuals in accordance with the information provided by the partnership or other unincorporated business to the recipient of the contribution. 1094 1095 1096 1097 1098 1099 1100

(3) For purposes of section 3517.102 of the Revised Code, the contribution shall be considered to have been made by the partner, owner, or member reported under division (I)(1) of this section. 1101 1102 1103 1104

(4) No contribution from a partner of a partnership or an owner or a member of another unincorporated business shall be accepted from any funds of the partnership or other unincorporated business unless the recipient reports the contribution under division (I)(1) of this section together with the information provided under division (I)(2) of this section. 1105 1106 1107 1108 1109 1110

(5) No partnership or other unincorporated business shall make a contribution or contributions solely in the name of the partnership or other unincorporated business. 1111 1112 1113

(6) As used in division (I) of this section, "partnership
or other unincorporated business" includes, but is not limited
to, a cooperative, a sole proprietorship, a general partnership,
a limited partnership, a limited partnership association, a
limited liability partnership, and a limited liability company. 
1114
1115
1116
1117
1118

(J) A candidate shall have only one campaign committee at
any given time for all of the offices for which the person is a
candidate or holds office. 
1119
1120
1121

(K)(1) In addition to filing a designation of appointment
of a treasurer under division (D)(1) of this section, the
campaign committee of any candidate for an elected municipal
office that pays an annual amount of compensation of five
thousand dollars or less, the campaign committee of any
candidate for member of a board of education except member of
the state board of education, or the campaign committee of any
candidate for township trustee or township fiscal officer may
sign, under penalty of election falsification, a certificate
attesting that the committee will not accept contributions
during an election period that exceed in the aggregate two
thousand dollars from all contributors and one hundred dollars
from any one individual, and that the campaign committee will
not make expenditures during an election period that exceed in
the aggregate two thousand dollars. 
1122
1123
1124
1125
1126
1127
1128
1129
1130
1131
1132
1133
1134
1135
1136

The certificate shall be on a form prescribed by the
secretary of state and shall be filed not later than ten days
after the candidate files a declaration of candidacy and
petition, a nominating petition, or a declaration of intent to
be a write-in candidate. 
1137
1138
1139
1140
1141

(2) Except as otherwise provided in division (K)(3) of
this section, a campaign committee that files a certificate 
1142
1143

under division (K)(1) of this section is not required to file 1144
the statements required by division (A) of this section. 1145

(3) If, after filing a certificate under division (K)(1) 1146
of this section, a campaign committee exceeds any of the 1147
limitations described in that division during an election 1148
period, the certificate is void and thereafter the campaign 1149
committee shall file the statements required by division (A) of 1150
this section. If the campaign committee has not previously filed 1151
a statement, then on the first statement the campaign committee 1152
is required to file under division (A) of this section after the 1153
committee's certificate is void, the committee shall report all 1154
contributions received and expenditures made from the time the 1155
candidate filed the candidate's declaration of candidacy and 1156
petition, nominating petition, or declaration of intent to be a 1157
write-in candidate. 1158

(4) As used in division (K) of this section, "election 1159
period" means the period of time beginning on the day a person 1160
files a declaration of candidacy and petition, nominating 1161
petition, or declaration of intent to be a write-in candidate 1162
through the day of the election at which the person seeks 1163
nomination to office if the person is not elected to office, or, 1164
if the candidate was nominated in a primary election, the day of 1165
the election at which the candidate seeks office. 1166

(L) A political contributing entity that receives 1167
contributions from the dues, membership fees, or other 1168
assessments of its members or from its officers, shareholders, 1169
and employees may report the aggregate amount of contributions 1170
received from those contributors and the number of individuals 1171
making those contributions, for each filing period under 1172
divisions (A)(1), (2), (3), and (4) of this section, rather than 1173

| | |
|---|---|
| reporting information as required under division (B)(4) of this | 1174 |
| section, including, when applicable, the name of the current | 1175 |
| employer, if any, of a contributor whose contribution exceeds | 1176 |
| one hundred dollars or, if such a contributor is self-employed, | 1177 |
| the contributor's occupation and the name of the contributor's | 1178 |
| business, if any. Division (B)(4) of this section applies to a | 1179 |
| political contributing entity with regard to contributions it | 1180 |
| receives from all other contributors. | 1181 |

 Sec. 3517.12. (A) ~~Prior to receiving a contribution or~~ 1182
~~making an expenditure, the circulator or~~ If the committee in 1183
charge of an initiative or referendum petition, or supplementary 1184
petition for additional signatures, for the submission to the 1185
electors of a constitutional amendment, proposed law, section, 1186
or item of any law wishes to receive any contribution or make 1187
any expenditure for the purpose of achieving the successful 1188
circulation of the petition, the committee shall ~~appoint a~~ 1189
~~treasurer and shall file with the secretary of state, on a form~~ 1190
~~prescribed by the secretary of state, a designation of that~~ 1191
~~appointment, including the full name and address of the~~ 1192
~~treasurer and of the circulator or committee~~ file a designation 1193
of treasurer under division (D) of section 3517.10 of the 1194
Revised Code as a political action committee before receiving a 1195
contribution or making an expenditure  and thereafter shall 1196
comply with all applicable requirements of this chapter 1197
concerning political action committees. 1198

 (B) ~~The circulator or~~ If the committee in charge of an 1199
initiative or referendum petition, or supplementary petition for 1200
additional signatures, for the submission to the electors of a 1201
constitutional amendment, proposed law, section, or item of any 1202
law receives no contributions and makes no expenditures for the 1203
purpose of achieving the successful circulation of the petition, 1204

**Am. Sub. H. B. No. 271**                                                    **Page 42**
**As Passed by the Senate**

and is not otherwise considered a campaign committee, political                1205
party, legislative campaign fund, political action committee, or               1206
political contributing entity, then the committee shall, within                1207
thirty days after ~~those~~ the petition ~~papers are~~ is filed, file         1208
with the secretary of state, on a form prescribed by the                       1209
secretary of state, ~~an itemized~~ a statement~~,~~ made under penalty        1210
of election falsification~~, showing in detail the following:~~                1211

~~(1) All money or things of value paid, given, promised, or~~                 1212
~~received for circulating the petitions;~~                                    1213

~~(2) All appointments, promotions, or increases in salary,~~                  1214
~~in positions which were given, promised, or received, or to~~                1215
~~obtain which assistance was given, promised, or received as a~~              1216
~~consideration for work done in circulating petitions;~~                      1217

~~(3) Full names and addresses, including street, city, and~~                  1218
~~state, of all persons to whom such payments or promises were~~               1219
~~made and of all persons from whom such payments or promises were~~           1220
~~received;~~                                                                   1221

~~(4) Full names and addresses, including street, city, and~~                  1222
~~state, of all persons who contributed anything of value to be~~              1223
~~used in circulating the petitions, and the amounts of those~~                1224
~~contributions;~~                                                             1225

~~(5) Time spent and salaries earned while soliciting~~                        1226
~~signatures to petitions by persons who were regular salaried~~               1227
~~employees of some person or whom that employer authorized to~~               1228
~~solicit as part of their regular duties.~~                                   1229

~~If~~ that the committee received no ~~money or things of~~                    1230
~~value were paid or received or if no promises were made or~~                 1231
~~received as a consideration for work done in circulating a~~                 1232
~~petition, the statement shall contain words to that effect~~                 1233

contributions and made no expenditures for the purpose of                    1234
achieving the successful circulation of the petition.                         1235

~~(C) The treasurer designated under division (A) of this~~                   1236
~~section shall file statements of contributions and expenditures~~           1237
~~in accordance with section 3517.10 of the Revised Code regarding~~          1238
~~all contributions made or received and all expenditures made by~~           1239
~~that treasurer or the circulator or committee in connection with~~          1240
~~the initiative or referendum petition, or supplementary petition~~          1241
~~for additional signatures, for the submission of a~~                        1242
~~constitutional amendment, proposed law, section, or item of any~~           1243
~~law.~~                                                                       1244

   **Sec. 3517.13.** (A)(1) No campaign committee of a statewide              1245
candidate shall fail to file a complete and accurate statement                1246
required under division (A)(1) of section 3517.10 of the Revised              1247
Code.                                                                         1248

   (2) No campaign committee of a statewide candidate shall                   1249
fail to file a complete and accurate monthly statement, and no                1250
campaign committee of a statewide candidate or a candidate for                1251
the office of chief justice or justice of the supreme court                   1252
shall fail to file a complete and accurate two-business-day                   1253
statement, as required under section 3517.10 of the Revised                   1254
Code.                                                                         1255

   As used in this division, "statewide candidate" has the                    1256
same meaning as in division (F)(2) of section 3517.10 of the                  1257
Revised Code.                                                                 1258

   (B) No campaign committee shall fail to file a complete                    1259
and accurate statement required under division (A)(1) of section              1260
3517.10 of the Revised Code.                                                  1261

   (C) No campaign committee shall fail to file a complete                    1262

and accurate statement required under division (A)(2) of section 3517.10 of the Revised Code. 1263 1264

(D) No campaign committee shall fail to file a complete and accurate statement required under division (A)(3) or (4) of section 3517.10 of the Revised Code. 1265 1266 1267

(E) No person other than a campaign committee shall knowingly fail to file a statement required under section 3517.10 or 3517.107 of the Revised Code. 1268 1269 1270

(F) No person shall make cash contributions to any person totaling more than one hundred dollars in each primary, special, or general election. 1271 1272 1273

(G)(1) No person shall knowingly conceal or misrepresent contributions given or received, expenditures made, or any other information required to be reported by a provision in sections 3517.08 to 3517.13 of the Revised Code. 1274 1275 1276 1277

(2)(a) No person shall make a contribution to a campaign committee, political action committee, political contributing entity, legislative campaign fund, political party, or person making disbursements to pay the direct costs of producing or airing electioneering communications in the name of another person. 1278 1279 1280 1281 1282 1283

(b) A person does not make a contribution in the name of another when either of the following applies: 1284 1285

(i) An individual makes a contribution from a partnership or other unincorporated business account, if the contribution is reported by listing both the name of the partnership or other unincorporated business and the name of the partner or owner making the contribution as required under division (I) of section 3517.10 of the Revised Code. 1286 1287 1288 1289 1290 1291

(ii) A person makes a contribution in that person's 1292
spouse's name or in both of their names. 1293

(H) No person within this state, publishing a newspaper or 1294
other periodical, shall charge a campaign committee for 1295
political advertising a rate in excess of the rate such person 1296
would charge if the campaign committee were a general rate 1297
advertiser whose advertising was directed to promoting its 1298
business within the same area as that encompassed by the 1299
particular office that the candidate of the campaign committee 1300
is seeking. The rate shall take into account the amount of space 1301
used, as well as the type of advertising copy submitted by or on 1302
behalf of the campaign committee. All discount privileges 1303
otherwise offered by a newspaper or periodical to general rate 1304
advertisers shall be available upon equal terms to all campaign 1305
committees. 1306

No person within this state, operating a radio or 1307
television station or network of stations in this state, shall 1308
charge a campaign committee for political broadcasts a rate that 1309
exceeds: 1310

(1) During the forty-five days preceding the date of a 1311
primary election and during the sixty days preceding the date of 1312
a general or special election in which the candidate of the 1313
campaign committee is seeking office, the lowest unit charge of 1314
the station for the same class and amount of time for the same 1315
period; 1316

(2) At any other time, the charges made for comparable use 1317
of that station by its other users. 1318

(I) Subject to divisions (K), (L), (M), and (N) of this 1319
section, no agency or department of this state or any political 1320

subdivision shall award any contract, other than one let by 1321
competitive bidding or a contract incidental to such contract or 1322
which is by force account, for the purchase of goods costing 1323
more than five hundred dollars or services costing more than 1324
five hundred dollars to any individual, partnership, 1325
association, including, without limitation, a professional 1326
association organized under Chapter 1785. of the Revised Code, 1327
estate, or trust if the individual has made or the individual's 1328
spouse has made, or any partner, shareholder, administrator, 1329
executor, or trustee or the spouse of any of them has made, as 1330
an individual, within the two previous calendar years, one or 1331
more contributions totaling in excess of one thousand dollars to 1332
the holder of the public office having ultimate responsibility 1333
for the award of the contract or to the public officer's 1334
campaign committee. 1335

(J) Subject to divisions (K), (L), (M), and (N) of this 1336
section, no agency or department of this state or any political 1337
subdivision shall award any contract, other than one let by 1338
competitive bidding or a contract incidental to such contract or 1339
which is by force account, for the purchase of goods costing 1340
more than five hundred dollars or services costing more than 1341
five hundred dollars to a corporation or business trust, except 1342
a professional association organized under Chapter 1785. of the 1343
Revised Code, if an owner of more than twenty per cent of the 1344
corporation or business trust or the spouse of that person has 1345
made, as an individual, within the two previous calendar years, 1346
taking into consideration only owners for all of that period, 1347
one or more contributions totaling in excess of one thousand 1348
dollars to the holder of a public office having ultimate 1349
responsibility for the award of the contract or to the public 1350
officer's campaign committee. 1351

(K) For purposes of divisions (I) and (J) of this section, if a public officer who is responsible for the award of a contract is appointed by the governor, whether or not the appointment is subject to the advice and consent of the senate, excluding members of boards, commissions, committees, authorities, councils, boards of trustees, task forces, and other such entities appointed by the governor, the office of the governor is considered to have ultimate responsibility for the award of the contract. 1352 1353 1354 1355 1356 1357 1358 1359 1360

(L) For purposes of divisions (I) and (J) of this section, if a public officer who is responsible for the award of a contract is appointed by the elected chief executive officer of a municipal corporation, or appointed by the elected chief executive officer of a county operating under an alternative form of county government or county charter, excluding members of boards, commissions, committees, authorities, councils, boards of trustees, task forces, and other such entities appointed by the chief executive officer, the office of the chief executive officer is considered to have ultimate responsibility for the award of the contract. 1361 1362 1363 1364 1365 1366 1367 1368 1369 1370 1371

(M)(1) Divisions (I) and (J) of this section do not apply to contracts awarded by the board of commissioners of the sinking fund, municipal legislative authorities, boards of education, boards of county commissioners, boards of township trustees, or other boards, commissions, committees, authorities, councils, boards of trustees, task forces, and other such entities created by law, by the supreme court or courts of appeals, by county courts consisting of more than one judge, courts of common pleas consisting of more than one judge, or municipal courts consisting of more than one judge, or by a division of any court if the division consists of more than one 1372 1373 1374 1375 1376 1377 1378 1379 1380 1381 1382

judge. This division shall apply to the specified entity only if the members of the entity act collectively in the award of a contract for goods or services. 1383 1384 1385

(2) Divisions (I) and (J) of this section do not apply to actions of the controlling board. 1386 1387

(N)(1) Divisions (I) and (J) of this section apply to contributions made to the holder of a public office having ultimate responsibility for the award of a contract, or to the public officer's campaign committee, during the time the person holds the office and during any time such person was a candidate for the office. Those divisions do not apply to contributions made to, or to the campaign committee of, a candidate for or holder of the office other than the holder of the office at the time of the award of the contract. 1388 1389 1390 1391 1392 1393 1394 1395 1396

(2) Divisions (I) and (J) of this section do not apply to contributions of a partner, shareholder, administrator, executor, trustee, or owner of more than twenty per cent of a corporation or business trust made before the person held any of those positions or after the person ceased to hold any of those positions in the partnership, association, estate, trust, corporation, or business trust whose eligibility to be awarded a contract is being determined, nor to contributions of the person's spouse made before the person held any of those positions, after the person ceased to hold any of those positions, before the two were married, after the granting of a decree of divorce, dissolution of marriage, or annulment, or after the granting of an order in an action brought solely for legal separation. Those divisions do not apply to contributions of the spouse of an individual whose eligibility to be awarded a contract is being determined made before the two were married, 1397 1398 1399 1400 1401 1402 1403 1404 1405 1406 1407 1408 1409 1410 1411 1412

after the granting of a decree of divorce, dissolution of 1413
marriage, or annulment, or after the granting of an order in an 1414
action brought solely for legal separation. 1415

(O) No beneficiary of a campaign fund or other person 1416
shall convert for personal use, and no person shall knowingly 1417
give to a beneficiary of a campaign fund or any other person, 1418
for the beneficiary's or any other person's personal use, 1419
anything of value from the beneficiary's campaign fund, 1420
including, without limitation, payments to a beneficiary for 1421
services the beneficiary personally performs, except as 1422
reimbursement for any of the following: 1423

(1) Legitimate and verifiable prior campaign expenses 1424
incurred by the beneficiary; 1425

(2) Legitimate and verifiable ordinary and necessary prior 1426
expenses incurred by the beneficiary in connection with duties 1427
as the holder of a public office, including, without limitation, 1428
expenses incurred through participation in nonpartisan or 1429
bipartisan events if the participation of the holder of a public 1430
office would normally be expected; 1431

(3) Legitimate and verifiable ordinary and necessary prior 1432
expenses incurred by the beneficiary while doing any of the 1433
following: 1434

(a) Engaging in activities in support of or opposition to 1435
a candidate other than the beneficiary, political party, or 1436
ballot issue; 1437

(b) Raising funds for a political party, political action 1438
committee, political contributing entity, legislative campaign 1439
fund, campaign committee, or other candidate; 1440

(c) Participating in the activities of a political party, 1441

political action committee, political contributing entity, 1442

legislative campaign fund, or campaign committee; 1443

(d) Attending a political party convention or other 1444

political meeting. 1445

For purposes of this division, an expense is incurred 1446

whenever a beneficiary has either made payment or is obligated 1447

to make payment, as by the use of a credit card or other credit 1448

procedure or by the use of goods or services received on 1449

account. 1450

(P) No beneficiary of a campaign fund shall knowingly 1451

accept, and no person shall knowingly give to the beneficiary of 1452

a campaign fund, reimbursement for an expense under division (O) 1453

of this section to the extent that the expense previously was 1454

reimbursed or paid from another source of funds. If an expense 1455

is reimbursed under division (O) of this section and is later 1456

paid or reimbursed, wholly or in part, from another source of 1457

funds, the beneficiary shall repay the reimbursement received 1458

under division (O) of this section to the extent of the payment 1459

made or reimbursement received from the other source. 1460

(Q) No candidate or public official or employee shall 1461

accept for personal or business use anything of value from a 1462

political party, political action committee, political 1463

contributing entity, legislative campaign fund, or campaign 1464

committee other than the candidate's or public official's or 1465

employee's own campaign committee, and no person shall knowingly 1466

give to a candidate or public official or employee anything of 1467

value from a political party, political action committee, 1468

political contributing entity, legislative campaign fund, or 1469

such a campaign committee, except for the following: 1470

(1) Reimbursement for legitimate and verifiable ordinary 1471
and necessary prior expenses not otherwise prohibited by law 1472
incurred by the candidate or public official or employee while 1473
engaged in any legitimate activity of the political party, 1474
political action committee, political contributing entity, 1475
legislative campaign fund, or such campaign committee. Without 1476
limitation, reimbursable expenses under this division include 1477
those incurred while doing any of the following: 1478

(a) Engaging in activities in support of or opposition to 1479
another candidate, political party, or ballot issue; 1480

(b) Raising funds for a political party, legislative 1481
campaign fund, campaign committee, or another candidate; 1482

(c) Attending a political party convention or other 1483
political meeting. 1484

(2) Compensation not otherwise prohibited by law for 1485
actual and valuable personal services rendered under a written 1486
contract to the political party, political action committee, 1487
political contributing entity, legislative campaign fund, or 1488
such campaign committee for any legitimate activity of the 1489
political party, political action committee, political 1490
contributing entity, legislative campaign fund, or such campaign 1491
committee. 1492

Reimbursable expenses under this division do not include, 1493
and it is a violation of this division for a candidate or public 1494
official or employee to accept, or for any person to knowingly 1495
give to a candidate or public official or employee from a 1496
political party, political action committee, political 1497
contributing entity, legislative campaign fund, or campaign 1498
committee other than the candidate's or public official's or 1499

employee's own campaign committee, anything of value for 1500
activities primarily related to the candidate's or public 1501
official's or employee's own campaign for election, except for 1502
contributions to the candidate's or public official's or 1503
employee's campaign committee. 1504

For purposes of this division, an expense is incurred 1505
whenever a candidate or public official or employee has either 1506
made payment or is obligated to make payment, as by the use of a 1507
credit card or other credit procedure, or by the use of goods or 1508
services on account. 1509

(R)(1) Division (O) or (P) of this section does not 1510
prohibit a campaign committee from making direct advance or post 1511
payment from contributions to vendors for goods and services for 1512
which reimbursement is permitted under division (O) of this 1513
section, except that no campaign committee shall pay its 1514
candidate or other beneficiary for services personally performed 1515
by the candidate or other beneficiary. 1516

(2) If any expense that may be reimbursed under division 1517
(O), (P), or (Q) of this section is part of other expenses that 1518
may not be paid or reimbursed, the separation of the two types 1519
of expenses for the purpose of allocating for payment or 1520
reimbursement those expenses that may be paid or reimbursed may 1521
be by any reasonable accounting method, considering all of the 1522
surrounding circumstances. 1523

(3) For purposes of divisions (O), (P), and (Q) of this 1524
section, mileage allowance at a rate not greater than that 1525
allowed by the internal revenue service at the time the travel 1526
occurs may be paid instead of reimbursement for actual travel 1527
expenses allowable. 1528

(S)(1) As used in division (S) of this section: 1529

(a) "State elective office" has the same meaning as in 1530
section 3517.092 of the Revised Code. 1531

(b) "Federal office" means a federal office as defined in 1532
the Federal Election Campaign Act. 1533

(c) "Federal campaign committee" means a principal 1534
campaign committee or authorized committee as defined in the 1535
Federal Election Campaign Act. 1536

(2) No person who is a candidate for state elective office 1537
and who previously sought nomination or election to a federal 1538
office shall transfer any funds or assets from that person's 1539
federal campaign committee for nomination or election to the 1540
federal office to that person's campaign committee as a 1541
candidate for state elective office. 1542

(3) No campaign committee of a person who is a candidate 1543
for state elective office and who previously sought nomination 1544
or election to a federal office shall accept any funds or assets 1545
from that person's federal campaign committee for that person's 1546
nomination or election to the federal office. 1547

(T)(1) Except as otherwise provided in division (B)(6)(c) 1548
of section 3517.102 of the Revised Code, a state or county 1549
political party shall not disburse moneys from any account other 1550
than a state candidate fund to make contributions to any of the 1551
following: 1552

(a) A state candidate fund; 1553

(b) A legislative campaign fund; 1554

(c) A campaign committee of a candidate for the office of 1555
governor, lieutenant governor, secretary of state, auditor of 1556

**Am. Sub. H. B. No. 271**                                            **Page 54**
**As Passed by the Senate**

state, treasurer of state, attorney general, member of the state          1557

board of education, or member of the general assembly.                    1558

    (2) No state candidate fund, legislative campaign fund, or      1559

campaign committee of a candidate for any office described in             1560

division (T)(1)(c) of this section shall knowingly accept a               1561

contribution in violation of division (T)(1) of this section.             1562

    (U) No person shall fail to file a statement required         1563

under section 3517.12 of the Revised Code.                                1564

    (V) No campaign committee shall fail to file a statement       1565

required under division (K)(3) of section 3517.10 of the Revised          1566

Code.                                                                     1567

    (W)(1) No foreign national shall, directly or indirectly       1568

through any other person or entity, ~~make~~ knowingly do any of the      1569

following:                                                                1570

    (a) Make a contribution, expenditure, or independent           1571

expenditure or promise, either expressly or implicitly, to make           1572

a contribution, expenditure, or independent expenditure ~~in~~            1573

~~support of or opposition to a candidate for any elective office~~       1574

~~in this state, including an office of a political party~~;              1575

    (b) Solicit another person to make a contribution,             1576

expenditure, or independent expenditure;                                  1577

    (c) Make a loan, gift, deposit, forgiveness of                 1578

indebtedness, donation, advance, payment, or transfer of funds            1579

to another person with a designation, instruction, or                     1580

encumbrance that the foreign national knows will result in any            1581

part of the loan, gift, deposit, forgiveness of indebtedness,             1582

donation, advance, payment, or transfer of funds being used to            1583

make a contribution, expenditure, or independent expenditure. As          1584

used in this division, "designation, instruction, or                      1585

**Am. Sub. H. B. No. 271**                                    **Page 55**
**As Passed by the Senate**

encumbrance" includes any designation, instruction, or            1586
encumbrance that is direct or indirect, express or implied, oral  1587
or written, or involving an intermediary or conduit.              1588

    (2) No candidate, campaign committee, political action       1589
committee, political contributing entity, legislative campaign    1590
fund, state candidate fund, political party, or separate          1591
segregated fund, or continuing association shall do either of     1592
the following:                                                    1593

    (a) Knowingly transfer funds, or accept a transfer of         1594
funds, directly or indirectly into an account from which the      1595
person makes contributions or expenditures from an account that   1596
is controlled by the person or by the person's affiliate and      1597
that the person, at any time, knew to contain funds described in  1598
division (W)(1) of this section that are received directly or     1599
indirectly through another person or entity from a foreign        1600
national. For purposes of this division, a person is affiliated   1601
with another person if they are both established, financed,       1602
maintained, or controlled by, or if they are, the same person,    1603
including any parent, subsidiary, division, or department of      1604
that person.                                                      1605

    (b) Otherwise knowingly solicit or accept a contribution,     1606
expenditure, or independent expenditure, directly or indirectly   1607
through another person or entity, from a foreign national. The    1608
secretary of state may direct any candidate, committee, entity,   1609
fund, or party that accepts a contribution, expenditure, or       1610
independent expenditure in violation of this division to return   1611
the contribution, expenditure, or independent expenditure or, if  1612
it is not possible to return the contribution, expenditure, or    1613
independent expenditure, then to return instead the value of it,  1614
to the contributor.                                               1615

(3) No person shall knowingly aid or facilitate a                          1616
violation of division (W)(1) or (2) of this section.                       1617

(4) As used in division (W) of this section, "foreign                      1618
national" ~~has the same meaning as in section 441e(b) of the~~            1619
~~Federal Election Campaign Act~~ means any of the following, as           1620
applicable:                                                                1621

(a) In the case of an individual, an individual who is not                 1622
a United States citizen or national;                                       1623

(b) A government of a foreign country or of a political                    1624
subdivision of a foreign country;                                          1625

(c) A foreign political party;                                             1626

(d) A person, other than an individual, that is organized                  1627
under the laws of, or has its principal place of business in, a            1628
foreign country.                                                           1629

(X)(1) No state or county political party shall transfer                   1630
any moneys from its restricted fund to any account of the                  1631
political party into which contributions may be made or from               1632
which contributions or expenditures may be made.                           1633

(2)(a) No state or county political party shall deposit a                  1634
contribution or contributions that it receives into its                    1635
restricted fund.                                                           1636

(b) No state or county political party shall make a                        1637
contribution or an expenditure from its restricted fund.                   1638

(3)(a) No corporation or labor organization shall make a                   1639
gift or gifts from the corporation's or labor organization's               1640
money or property aggregating more than ten thousand dollars to            1641
any one state or county political party for the party's                    1642
restricted fund in a calendar year.                                        1643

(b) No state or county political party shall accept a gift 1644
or gifts for the party's restricted fund aggregating more than 1645
ten thousand dollars from any one corporation or labor 1646
organization in a calendar year. 1647

(4) No state or county political party shall transfer any 1648
moneys in the party's restricted fund to any other state or 1649
county political party. 1650

(5) No state or county political party shall knowingly 1651
fail to file a statement required under section 3517.1012 of the 1652
Revised Code. 1653

(Y) The administrator of workers' compensation and the 1654
employees of the bureau of workers' compensation shall not 1655
conduct any business with or award any contract, other than one 1656
awarded by competitive bidding, for the purchase of goods 1657
costing more than five hundred dollars or services costing more 1658
than five hundred dollars to any individual, partnership, 1659
association, including, without limitation, a professional 1660
association organized under Chapter 1785. of the Revised Code, 1661
estate, or trust, if the individual has made, or the 1662
individual's spouse has made, or any partner, shareholder, 1663
administrator, executor, or trustee, or the spouses of any of 1664
those individuals has made, as an individual, within the two 1665
previous calendar years, one or more contributions totaling in 1666
excess of one thousand dollars to the campaign committee of the 1667
governor or lieutenant governor or to the campaign committee of 1668
any candidate for the office of governor or lieutenant governor. 1669

(Z) The administrator of workers' compensation and the 1670
employees of the bureau of workers' compensation shall not 1671
conduct business with or award any contract, other than one 1672
awarded by competitive bidding, for the purchase of goods 1673

| | |
|---|---|
| costing more than five hundred dollars or services costing more | 1674 |
| than five hundred dollars to a corporation or business trust, | 1675 |
| except a professional association organized under Chapter 1785. | 1676 |
| of the Revised Code, if an owner of more than twenty per cent of | 1677 |
| the corporation or business trust, or the spouse of the owner, | 1678 |
| has made, as an individual, within the two previous calendar | 1679 |
| years, taking into consideration only owners for all of such | 1680 |
| period, one or more contributions totaling in excess of one | 1681 |
| thousand dollars to the campaign committee of the governor or | 1682 |
| lieutenant governor or to the campaign committee of any | 1683 |
| candidate for the office of governor or lieutenant governor. | 1684 |

| | |
|---|---|
| **Sec. 3517.155.** (A)(1) Except as otherwise provided in | 1685 |
| division (B) of this section, the Ohio elections commission | 1686 |
| shall hold its first hearing on a complaint filed with it, other | 1687 |
| than a complaint that receives an expedited hearing under | 1688 |
| section 3517.156 of the Revised Code, not later than ninety | 1689 |
| business days after the complaint is filed unless the commission | 1690 |
| has good cause to hold the hearing after that time, in which | 1691 |
| case it shall hold the hearing not later than one hundred eighty | 1692 |
| business days after the complaint is filed. At the hearing, the | 1693 |
| commission shall determine whether or not the failure to act or | 1694 |
| the violation alleged in the complaint has occurred and shall do | 1695 |
| only one of the following, except as otherwise provided in | 1696 |
| ~~division (B) of~~ this section or in division (B) of section | 1697 |
| 3517.151 of the Revised Code: | 1698 |

| | |
|---|---|
| (a) Enter a finding that good cause has been shown not to | 1699 |
| impose a fine or not to refer the matter to the appropriate | 1700 |
| prosecutor; | 1701 |

| | |
|---|---|
| (b) Impose a fine under section 3517.993 of the Revised | 1702 |
| Code; | 1703 |

**Am. Sub. H. B. No. 271**                                      **Page 59**
**As Passed by the Senate**

(c) Refer the matter to the appropriate prosecutor~~,~~ as      1704
determined under division (A)(2) of this section.              1705

(2) ~~As used in division (A) of this section, "appropriate~~   1706
~~prosecutor" means a prosecutor as defined in section 2935.01 of~~  1707
~~the Revised Code and either of the following:~~               1708

(a) In the case of a failure to comply with or a violation    1709
of law involving ~~a campaign committee or the committee's~~    1710
~~candidate, a political party, a legislative campaign fund, a~~  1711
~~political action committee, or a political contributing entity,~~  1712
~~that is required to file a statement of contributions and~~    1713
~~expenditures with the secretary of state under division (A) of~~  1714
~~section 3517.11 of the Revised Code~~ any of the following      1715
persons, the ~~prosecutor of Franklin county,~~ commission shall  1716
refer the matter to the attorney general, except that if the  1717
attorney general is a victim or witness or otherwise involved in  1718
the matter, the commission shall refer the matter to a county  1719
prosecutor whom the commission deems appropriate to prosecute  1720
the matter:                                                    1721

(i) A campaign committee, or the committee's candidate,       1722
for a statewide office or the state board of education;        1723

(ii) A committee described in section 3517.12 of the          1724
Revised Code or any other person with respect to contributions,  1725
expenditures, or independent expenditures made or accepted for  1726
the purpose of advocating support of or opposition to an       1727
identified statewide ballot issue or question;                1728

(iii) Any person, other than an individual, whose             1729
principal place of business is not in Ohio;                    1730

(iv) Any individual who is not a resident of Ohio.            1731

(b) In the case of a failure to comply with or a violation   1732

of law involving any ~~other campaign committee or committee's~~        1733
~~candidate, or any other political party, political action~~           1734
~~committee, or political contributing entity either of the~~           1735
~~following as determined by the commission:~~                          1736

~~(i) The prosecutor of Franklin county;~~                              1737

~~(ii) The~~ other person, the commission shall refer the              1738
matter to the prosecutor of the county in which the ~~candidacy or~~    1739
~~ballot question or issue is submitted to the electors or, if it~~     1740
~~is submitted in more than one county, the most populous of those~~    1741
~~counties~~person, other than an individual, has its principal        1742
place of business or the county in which the individual resides,        1743
as applicable, except that if that prosecutor is a victim or            1744
witness or otherwise involved in the matter, the commission             1745
shall refer the matter to a county prosecutor whom the                  1746
commission deems appropriate to prosecute the matter. Upon the          1747
request of the prosecutor to whom the commission refers the             1748
matter, the attorney general may assume responsibility for              1749
prosecuting the matter, unless the attorney general is a victim         1750
or witness or is otherwise involved in the matter.                      1751

    (3) When the commission refers a matter to the attorney           1752
general under this section, or when the attorney general assumes        1753
responsibility for prosecuting a matter under this section, the         1754
attorney general may prosecute the matter with all the rights,          1755
privileges, and powers conferred by law on prosecuting                  1756
attorneys, including the power to appear before grand juries and        1757
to interrogate witnesses before such grand juries. These powers         1758
of the attorney general are in addition to any other applicable         1759
powers of the attorney general.                                         1760

    (B) If the commission decides that the evidence is                1761
insufficient for it to determine whether or not the failure to          1762

act or the violation alleged in the complaint has occurred, the      1763
commission, by the affirmative vote of five members, may request     1764
that an investigatory attorney investigate the complaint. Upon       1765
that request, an investigatory attorney shall make an                1766
investigation in order to produce sufficient evidence for the        1767
commission to decide the matter. If the commission requests an       1768
investigation under this division, for good cause shown by the       1769
investigatory attorney, the commission may extend by sixty days      1770
the deadline for holding its first hearing on the complaint as       1771
required in division (A) of this section.                            1772

    (C) The commission shall take one of the actions required     1773
under division (A) of this section not later than thirty days        1774
after the close of all the evidence presented.                       1775

    (D)(1) The commission shall make any finding of a failure        1776
to comply with or a violation of law in regard to a complaint        1777
that alleges a violation of division (A) or (B) of section           1778
3517.21, or division (A) or (B) of section 3517.22 of the            1779
Revised Code by clear and convincing evidence. The commission        1780
shall make any finding of a failure to comply with or a              1781
violation of law in regard to any other complaint by a               1782
preponderance of the evidence.                                       1783

    (2) If the commission finds a violation of division (B) of       1784
section 3517.21 or division (B) of section 3517.22 of the            1785
Revised Code, it shall refer the matter to the appropriate           1786
prosecutor under division (A)(1)(c) of this section and shall        1787
not impose a fine under division (A)(1)(b) of this section or        1788
section 3517.993 of the Revised Code.                                1789

    (3) If the commission finds a violation of division (W) of       1790
section 3517.13 of the Revised Code, it shall do one of the          1791
following:                                                           1792

(a) Impose a fine under section 3517.993 of the Revised          1793
Code in an amount equal to three times the amount involved in    1794
the violation or ten thousand dollars, whichever amount is       1795
greater, with none of the fine suspended and, in the case of a   1796
violation of division (W)(2) of section 3517.13 of the Revised   1797
Code, order the violator to return an amount equal to any amount 1798
accepted in violation of that division to the foreign national   1799
from whom it was accepted;                                       1800

(b) Refer the matter to the appropriate prosecutor under         1801
division (A)(1)(c) of this section.                              1802

(E) In an action before the commission or a panel of the         1803
commission, if the allegations of the complainant are not        1804
proved, and the commission takes the action described in         1805
division (A)(1)(a) of this section or a panel of the commission  1806
takes the action described in division (C)(1) of section         1807
3517.156 of the Revised Code, the commission or a panel of the   1808
commission may find that the complaint is frivolous, and, if the 1809
commission or panel so finds, the commission shall order the     1810
complainant to pay reasonable attorney's fees and to pay the     1811
costs of the commission or panel as determined by a majority of  1812
the members of the commission. The costs paid to the commission  1813
or panel under this division shall be deposited into the Ohio    1814
elections commission fund.                                       1815

**Sec. 3517.992.** This section establishes penalties only       1816
with respect to acts or failures to act that occur on and after  1817
August 24, 1995.                                                 1818

(A)(1) A candidate whose campaign committee violates             1819
division (A), (B), (C), (D), or (V) of section 3517.13 of the    1820
Revised Code, or a treasurer of a campaign committee who         1821
violates any of those divisions, shall be fined not more than    1822

one hundred dollars for each day of violation. 1823

(2) Whoever violates division (E) or (X)(5) of section 3517.13 or division (E)(1) of section 3517.1014 of the Revised Code shall be fined not more than one hundred dollars for each day of violation. 1824
1825
1826
1827

(B) An entity that violates division (G)(1) of section 3517.101 of the Revised Code shall be fined not more than one hundred dollars for each day of violation. 1828
1829
1830

(C) Whoever violates division (G)(2) of section 3517.101, division (G) of section 3517.13, or division (E)(2) or (3) of section 3517.1014 of the Revised Code shall be fined not more than ten thousand dollars or, if the offender is a person who was nominated or elected to public office, shall forfeit the nomination or the office to which the offender was elected, or both. 1831
1832
1833
1834
1835
1836
1837

(D) Whoever violates division (F) of section 3517.13 of the Revised Code shall be fined not more than three times the amount contributed. 1838
1839
1840

(E) Whoever violates division (H) of section 3517.13 of the Revised Code shall be fined not more than one hundred dollars. 1841
1842
1843

(F) Whoever violates division (O), (P), or (Q) of section 3517.13 of the Revised Code is guilty of a misdemeanor of the first degree. 1844
1845
1846

(G) A state or county committee of a political party that violates division (B)(1) of section 3517.18 of the Revised Code as that section existed before its repeal by H.B. 166 of the 133rd general assembly shall be fined not more than twice the amount of the improper expenditure. 1847
1848
1849
1850
1851

(H) An entity that violates division (H) of section
3517.101 of the Revised Code shall be fined not more than twice
the amount of the improper expenditure or use. 
1852
1853
1854

(I)(1) Any individual who violates division (B)(1) of
section 3517.102 of the Revised Code and knows that the
contribution the individual makes violates that division shall
be fined an amount equal to three times the amount contributed
in excess of the amount permitted by that division. 
1855
1856
1857
1858
1859

(2) Any political action committee that violates division
(B)(2) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 
1860
1861
1862
1863

(3) Any campaign committee that violates division (B)(3)
or (5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount contributed in excess of
the amount permitted by that division. 
1864
1865
1866
1867

(4)(a) Any legislative campaign fund that violates
division (B)(6) of section 3517.102 of the Revised Code shall be
fined an amount equal to three times the amount transferred or
contributed in excess of the amount permitted by that division,
as applicable. 
1868
1869
1870
1871
1872

(b) Any state political party, county political party, or
state candidate fund of a state political party or county
political party that violates division (B)(6) of section
3517.102 of the Revised Code shall be fined an amount equal to
three times the amount transferred or contributed in excess of
the amount permitted by that division, as applicable. 
1873
1874
1875
1876
1877
1878

(c) Any political contributing entity that violates
division (B)(7) of section 3517.102 of the Revised Code shall be
1879
1880

fined an amount equal to three times the amount contributed in 1881
excess of the amount permitted by that division. 1882

(5) Any political party that violates division (B)(4) of 1883
section 3517.102 of the Revised Code shall be fined an amount 1884
equal to three times the amount contributed in excess of the 1885
amount permitted by that division. 1886

(6) Notwithstanding divisions (I)(1), (2), (3), (4), and 1887
(5) of this section, no violation of division (B) of section 1888
3517.102 of the Revised Code occurs, and the secretary of state 1889
shall not refer parties to the Ohio elections commission, if the 1890
amount transferred or contributed in excess of the amount 1891
permitted by that division meets either of the following 1892
conditions: 1893

(a) It is completely refunded within five business days 1894
after it is accepted. 1895

(b) It is completely refunded on or before the tenth 1896
business day after notification to the recipient of the excess 1897
transfer or contribution by the board of elections or the 1898
secretary of state that a transfer or contribution in excess of 1899
the permitted amount has been received. 1900

(J)(1) Any campaign committee that violates division (C) 1901
(1), (2), (3), or (6) of section 3517.102 of the Revised Code 1902
shall be fined an amount equal to three times the amount 1903
accepted in excess of the amount permitted by that division. 1904

(2)(a) Any county political party that violates division 1905
(C)(4)(a)(ii) or (iii) of section 3517.102 of the Revised Code 1906
shall be fined an amount equal to three times the amount 1907
accepted. 1908

(b) Any county political party that violates division (C) 1909

(4)(a)(i) of section 3517.102 of the Revised Code shall be fined
an amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division. 
- 1910
- 1911
- 1912
- 1913

(c) Any state political party that violates division (C)
(4)(b) of section 3517.102 of the Revised Code shall be fined an
amount from its state candidate fund equal to three times the
amount accepted in excess of the amount permitted by that
division. 
- 1914
- 1915
- 1916
- 1917
- 1918

(3) Any legislative campaign fund that violates division
(C)(5) of section 3517.102 of the Revised Code shall be fined an
amount equal to three times the amount accepted in excess of the
amount permitted by that division. 
- 1919
- 1920
- 1921
- 1922

(4) Any political action committee or political
contributing entity that violates division (C)(7) of section
3517.102 of the Revised Code shall be fined an amount equal to
three times the amount accepted in excess of the amount
permitted by that division. 
- 1923
- 1924
- 1925
- 1926
- 1927

(5) Notwithstanding divisions (J)(1), (2), (3), and (4) of
this section, no violation of division (C) of section 3517.102
of the Revised Code occurs, and the secretary of state shall not
refer parties to the Ohio elections commission, if the amount
transferred or contributed in excess of the amount permitted to
be accepted by that division meets either of the following
conditions: 
- 1928
- 1929
- 1930
- 1931
- 1932
- 1933
- 1934

(a) It is completely refunded within five business days
after its acceptance. 
- 1935
- 1936

(b) It is completely refunded on or before the tenth
business day after notification to the recipient of the excess 
- 1937
- 1938

transfer or contribution by the board of elections or the 1939
secretary of state that a transfer or contribution in excess of 1940
the permitted amount has been received. 1941

(K)(1) Any legislative campaign fund that violates 1942
division (F)(1) of section 3517.102 of the Revised Code shall be 1943
fined twenty-five dollars for each day of violation. 1944

(2) Any legislative campaign fund that violates division 1945
(F)(2) of section 3517.102 of the Revised Code shall give to the 1946
treasurer of state for deposit into the state treasury to the 1947
credit of the Ohio elections commission fund all excess 1948
contributions not disposed of as required by division (E) of 1949
section 3517.102 of the Revised Code. 1950

(L) Whoever violates section 3517.105 of the Revised Code 1951
shall be fined one thousand dollars. 1952

(M)(1) Whoever solicits a contribution in violation of 1953
section 3517.092 or violates division (B) of section 3517.09 of 1954
the Revised Code is guilty of a misdemeanor of the first degree. 1955

(2) Whoever knowingly accepts a contribution in violation 1956
of division (B) or (C) of section 3517.092 of the Revised Code 1957
shall be fined an amount equal to three times the amount 1958
accepted in violation of either of those divisions and shall 1959
return to the contributor any amount so accepted. Whoever 1960
unknowingly accepts a contribution in violation of division (B) 1961
or (C) of section 3517.092 of the Revised Code shall return to 1962
the contributor any amount so accepted. 1963

(N) Whoever violates division (S) of section 3517.13 of 1964
the Revised Code shall be fined an amount equal to three times 1965
the amount of funds transferred or three times the value of the 1966
assets transferred in violation of that division. 1967

(O) Any campaign committee that accepts a contribution or contributions in violation of section 3517.108 of the Revised Code, uses a contribution in violation of that section, or fails to dispose of excess contributions in violation of that section shall be fined an amount equal to three times the amount accepted, used, or kept in violation of that section. 1968 1969 1970 1971 1972 1973

(P) Any political party, state candidate fund, legislative candidate fund, or campaign committee that violates division (T) of section 3517.13 of the Revised Code shall be fined an amount equal to three times the amount contributed or accepted in violation of that section. 1974 1975 1976 1977 1978

(Q) A treasurer of a committee or another person who violates division (U) of section 3517.13 of the Revised Code shall be fined not more than two hundred fifty dollars. 1979 1980 1981

(R) Whoever violates division (I) or (J) of section 3517.13 of the Revised Code shall be fined not more than one thousand dollars. Whenever a person is found guilty of violating division (I) or (J) of section 3517.13 of the Revised Code, the contract awarded in violation of either of those divisions shall be rescinded if its terms have not yet been performed. 1982 1983 1984 1985 1986 1987

(S) A candidate whose campaign committee violates or a treasurer of a campaign committee who violates section 3517.081 of the Revised Code, and a candidate whose campaign committee violates or a treasurer of a campaign committee or another person who violates division (C) of section 3517.10 of the Revised Code, shall be fined not more than five hundred dollars. 1988 1989 1990 1991 1992 1993

(T) A candidate whose campaign committee violates or a treasurer of a committee who violates division (B) of section 3517.09 of the Revised Code, or a candidate whose campaign 1994 1995 1996

committee violates or a treasurer of a campaign committee or 
another person who violates division (C) of section 3517.09 of 
the Revised Code shall be fined not more than one thousand 
dollars. 
1997
1998
1999
2000

(U) Whoever violates section 3517.20 of the Revised Code 
shall be fined not more than five hundred dollars. 
2001
2002

(V) Whoever violates section 3517.21 or 3517.22 of the 
Revised Code shall be imprisoned for not more than six months or 
fined not more than five thousand dollars, or both. 
2003
2004
2005

(W) A campaign committee that is required to file a 
declaration of no limits under division (D)(2) of section 
3517.103 of the Revised Code that, before filing that 
declaration, accepts a contribution or contributions that exceed 
the limitations prescribed in section 3517.102 of the Revised 
Code, shall return that contribution or those contributions to 
the contributor. 
2006
2007
2008
2009
2010
2011
2012

(X) Any campaign committee that fails to file the 
declaration of filing-day finances required by division (F) of 
section 3517.109 of the Revised Code shall be fined twenty-five 
dollars for each day of violation. 
2013
2014
2015
2016

(Y)(1) Any campaign committee that fails to dispose of 
excess funds or excess aggregate contributions under division 
(B) of section 3517.109 of the Revised Code in the manner 
required by division (C) of that section shall give to the 
treasurer of state for deposit into the Ohio elections 
commission fund created under division (I) of section 3517.152 
of the Revised Code all funds not disposed of pursuant to that 
division. 
2017
2018
2019
2020
2021
2022
2023
2024

(2) Any treasurer of a transition fund that fails to 
2025

**Am. Sub. H. B. No. 271** **Page 70**
**As Passed by the Senate**

| | |
|---|---|
| dispose of assets remaining in the transition fund as required | 2026 |
| under division (H)(1) or (2) of section 3517.1014 of the Revised | 2027 |
| Code shall give to the treasurer of state for deposit into the | 2028 |
| Ohio elections commission fund all assets not disposed of | 2029 |
| pursuant to that division. | 2030 |

(Z) Any individual, campaign committee, political action committee, political contributing entity, legislative campaign fund, political party, treasurer of a transition fund, or other entity that violates any provision of sections 3517.09 to 3517.12 of the Revised Code for which no penalty is provided for under any other division of this section shall be fined not more than one thousand dollars.

(AA)(1) Whoever knowingly violates division (W)(1) of section 3517.13 of the Revised Code shall be fined an amount equal to three times the amount contributed, expended, or promised in violation of that division or ten thousand dollars, whichever amount is greater.

(2) Whoever knowingly violates division (W)(2) of section 3517.13 of the Revised Code shall be fined an amount equal to three times the amount solicited or accepted in violation of that division or ten thousand dollars, whichever amount is greater, and shall be required to return an amount equal to any amount accepted in violation of that division to the foreign national from whom it was accepted.

(3) Whoever knowingly violates division (W)(3) of section 3517.13 of the Revised Code shall be fined an amount equal to three times the amount involved in the violation or ten thousand dollars, whichever amount is greater.

(BB) Whoever knowingly violates division (C) or (D) of

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 409 of 879 PAGEID #: 544

**Am. Sub. H. B. No. 271**                                                          **Page 71**
**As Passed by the Senate**

section 3517.1011 of the Revised Code shall be fined not more
than ten thousand dollars plus not more than one thousand
dollars for each day of violation.
2055
2056
2057

(CC)(1) Subject to division (CC)(2) of this section,
whoever violates division (H) of section 3517.1011 of the
Revised Code shall be fined an amount up to three times the
amount disbursed for the direct costs of airing the
communication made in violation of that division.
2058
2059
2060
2061
2062

(2) Whoever has been ordered by the Ohio elections
commission or by a court of competent jurisdiction to cease
making communications in violation of division (H) of section
3517.1011 of the Revised Code who again violates that division
shall be fined an amount equal to three times the amount
disbursed for the direct costs of airing the communication made
in violation of that division.
2063
2064
2065
2066
2067
2068
2069

(DD)(1) Any corporation or labor organization that
violates division (X)(3)(a) of section 3517.13 of the Revised
Code shall be fined an amount equal to three times the amount
given in excess of the amount permitted by that division.
2070
2071
2072
2073

(2) Any state or county political party that violates
division (X)(3)(b) of section 3517.13 of the Revised Code shall
be fined an amount equal to three times the amount accepted in
excess of the amount permitted by that division.
2074
2075
2076
2077

(EE)(1) Any campaign committee or person who violates
division (C)(1)(b) or (c) of section 3517.1014 of the Revised
Code shall be fined an amount equal to three times the amount
donated in excess of the amount permitted by that division.
2078
2079
2080
2081

(2) Any officeholder or treasurer of a transition fund who
violates division (C)(3)(a) or (b) of section 3517.1014 of the
2082
2083

---

Revised Code shall be fined an amount equal to three times the amount accepted in excess of the amount permitted by that division.

**Sec. 3517.993.** This section authorizes the establishment of fines that may be imposed only with respect to acts or failures to act that occur on and after August 24, 1995.

(A) Except as otherwise provided in ~~division~~ divisions (D)(2) and (3) of section 3517.155 of the Revised Code, the Ohio elections commission may impose administrative fines under division (A)(1)(b) of section 3517.155 of the Revised Code in accordance with the amounts set forth under sections 3517.992, 3599.03, and 3599.031 of the Revised Code.

(B) ~~The~~ Except as otherwise provided in division (D)(3) of section 3517.155 of the Revised Code, the commission may suspend all or part of a fine it imposes under this section upon whatever terms and conditions the commission considers just.

(C)(1) The commission shall consider any of the following circumstances in determining whether to impose a maximum fine under this section:

(a) Whether the violator has been found guilty of any other violation of Title XXXV of the Revised Code;

(b) Whether the violation was made knowingly or purposely;

(c) Whether any relevant statements, addenda, or affidavits required to be filed have not been filed;

(d) Whether the violator has any outstanding fines imposed for a violation of Title XXXV of the Revised Code;

(e) Whether the violation occurred during the course of a campaign.

(2) The commission shall consider any of the following 2112
circumstances in determining whether to impose a minimal fine or 2113
no fine under this section: 2114

(a) Whether the violator previously has not been found 2115
guilty of any other violation of Title XXXV of the Revised Code; 2116

(b) Whether the violator has promptly corrected the 2117
violator's violation; 2118

(c) Whether the nature and circumstances of the violation 2119
merit a minimum fine; 2120

(d) Whether there are substantial grounds tending to 2121
excuse or justify the violation, although failing to establish a 2122
defense to the violation; 2123

(e) Whether the violation was not purposely committed. 2124

(3) The circumstances set forth in divisions (C)(1) and 2125
(2) of this section shall be considered by, but shall not 2126
control the decision of, the commission in imposing a fine. 2127

(D) Fines imposed by the commission under this section 2128
shall be paid into the Ohio elections commission fund. 2129

**Section 2.** That existing sections 3505.06, 3517.01, 2130
3517.10, 3517.12, 3517.13, 3517.155, 3517.992, and 3517.993 of 2131
the Revised Code are hereby repealed. 2132

**Section 3.** (A) Notwithstanding any provision of the 2133
Revised Code to the contrary, but subject to section 1.14 of the 2134
Revised Code: 2135

(1) For purposes of the 2024 general election, a major 2136
political party shall certify to the Secretary of State in 2137
writing the names of its candidates for president and vice- 2138

president nominated by its national convention pursuant to 2139
section 3505.10 of the Revised Code not later than the effective 2140
date of this section. The political party may transmit the 2141
certification to the Secretary of State by any reasonably 2142
reliable method that, under the circumstances, will provide for 2143
the Secretary of State to receive it by the deadline, including 2144
by any of the following methods: 2145

(a) Hand delivery; 2146

(b) Certified, express, or ordinary mail delivery by the 2147
United States Postal Service; 2148

(c) Commercial carrier service; 2149

(d) Facsimile transmission; 2150

(e) Electronic mail. 2151

(2) The Secretary of State shall certify the forms of the 2152
official ballots to be used at the 2024 general election not 2153
later than the fourth day after the effective date of this 2154
section. 2155

(B) For purposes of this section, "major political party" 2156
has the same meaning as in section 3501.01 of the Revised Code. 2157

**Section 4.** Section 3 of this act is intended to apply 2158
retroactively to certifications of candidates required to be 2159
made under section 3505.10 of the Revised Code and to the 2160
certification of the forms of the official ballots under section 2161
3505.01 of the Revised Code for purposes of the 2024 general 2162
election. Section 3 of this act is remedial in nature because it 2163
prevents a major political party's candidates for President and 2164
Vice-President from being inadvertently excluded from the ballot 2165
at the 2024 general election. 2166

**Section 5.** This act responds to the Governor's                2167
proclamation calling a special session of the General Assembly    2168
beginning on Tuesday, May 28, 2024, for the following purposes:   2169

(A) Enabling a major political party to certify to the            2170
Ohio Secretary of State the names of the major party candidates   2171
for President and Vice-President of the United States of America  2172
nominated by the party's national convention pursuant to section  2173
3505.10 of the Revised Code;                                      2174

(B) Meaningfully strengthening the State of Ohio's                2175
prohibition against foreign influence with and in Ohio's          2176
elections.                                                        2177

# Exhibit F



# MIKE DEWINE
GOVERNOR
STATE OF OHIO

## PROCLAMATION

**WHEREAS,** Article III, Section 8 of the Ohio Constitution authorizes the Governor on extraordinary occasions to convene the General Assembly by proclamation; and

**WHEREAS,** Section 3505.10(B)(1) of the Ohio Revised Code requires major political parties to certify the names of their joint candidates for president and vice president to the Secretary of State at least ninety (90) days before the general election; and

**WHEREAS,** a major political party is set to nominate its joint candidates for president and vice president at its national convention on August 19-22, 2024, which is less than ninety (90) days before the 2024 general election; and

**WHEREAS,** failure of a major political party to have its joint candidates for president and vice president on the general election ballot will reduce the number of voters thus impacting down ballot races such as the U.S. Senate race; and

**WHEREAS,** it is in the best interest of the State of Ohio that the joint candidates for president and vice president for both major political parties be on the Ohio ballot in the 2024 general election; and

**WHEREAS,** the opaque nature of certain foreign political contributions is an issue of primary importance in the State of Ohio and needs to be further deliberated and resolved by the General Assembly; and

**WHEREAS,** the Ohio House of Representatives and Ohio Senate have been deliberating these important issues. Examples of this potential legislation include, in whole or in part, Sub. House Bill 114, Am. Sub. House Bill 305, and Sub. Senate Bill 215; and

**WHEREAS,** based on these foregoing and extraordinary occasions, I am compelled to issue this proclamation for the general assembly to consider legislation which accomplishes the purposes of enabling a major political party to certify the names of their joint candidates for president and vice president to the Secretary of State within 70 days of the general election and to strengthen the State of Ohio's existing prohibitions against foreign influence in Ohio's elections prior to the 2024 General Election; and

**NOW, THEREFORE,** I, Mike DeWine, Governor of the State of Ohio, hereby declare that an extraordinary occasion exists and convene the General Assembly into special session, in accordance with Article III, Section 8 of the Ohio Constitution, to begin Tuesday, May 28, 2024 and Wednesday, May 29, 2024, and to be held at the Statehouse in Columbus, for the following purposes:

1. To enable a major political party to certify to the Ohio Secretary of State the names of the major party candidates for president and vice president of the United States of America nominated by the party's national convention pursuant to Section 3505.10 of the Revised Code, which may include consideration of Sub. H.B. No. 114 As Passed by the Senate, Sub. S.B. No. 92 As Reported by the House Government Oversight Committee, or other similar legislation effectuating this purpose, and

2. To meaningfully strengthen the State of Ohio's prohibition against foreign influence with and in Ohio's elections, which may include consideration of Sub. H.B. No. 114 As Passed by the Senate, Am. Sub. H.B. No. 305 As Passed by the Senate, Sub. S.B. No. 215 As Passed by the Senate, or other similar legislation effectuating this purpose.

This proclamation shall take effect immediately and remain in full force and effect unless it is rescinded or modified by me.



In Testimony Whereof, I have hereunto Subscribed my name and caused the Great Seal of the State of Ohio to be affixed at Columbus, this 23rd day of May, in the year Two Thousand and Twenty-Four.

Mike DeWine
Governor, State of Ohio

# Exhibit G



# Transcript of Testimony of Ohio Senate General Government Committee

**Date:** February 21, 2024

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6           TRANSCRIPT OF VIDEO-RECORDED

7               TESTIMONY OF THE

8     OHIO SENATE GENERAL GOVERNMENT COMMITTEE

9             FEBRUARY 21, 2024

10

11

12

13

14

15

16

17

18

19

20   Job No.: 540606

21   Pages: 1 - 48

22   Transcribed by: Christian Naaden

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    2

```
1              P R O C E E D I N G S

2         SEN. RULLI:  The chair will now bring forth

3    Senate Bill 215. Senator McColley and Senator  Gavarone

4    for their first hearing. Welcome to committee.

5         SEN. GAVARONE:  Thank you, Chair Rulli, Vice-

6    Chair Reineke and fellow members of the Senate General

7    Government Committee. Thank you for the chance to

8    provide sponsor testimony on Senate Bill 215,

9    legislation which prevents foreign interests from

10   participating directly or indirectly in ballot issues.

11        Both Ohio and federal law already prohibit

12   foreign interests from participating in candidate

13   races. Therefore, this bill simply closes the finance -

14   - campaign finance loophole for issue campaigns. Nearly

15   80 percent of voters favor a ban on foreign individuals

16   and entities funding ballot initiatives, with the

17   support for the ban being strongest amongst

18   Republicans, Democrats and Independents.

19        Multiple states have similar laws already in

20   place or legislation pending to prohibit foreign

21   contributions in these campaigns. In addition, this

22   legislation retains current law requiring campaigns
```

1    that accept money from foreign interests to pay a fine

2    equal to three times the amount accepted or $10,000,

3    whichever's greater.

4              Strengthens requirements that the campaign

5    also repay contributions by making this a mandatory

6    requirement. Current law only requires repayment if the

7    Secretary of State so orders. Senate Bill 215 also

8    specifies that the expenditures made during this

9    signature gathering phase, including expenditures made

10   to defeat or frustrate signature gathering, are subject

11   to the requirements of the bill and cannot be funded by

12   foreign interests.

13             Lastly, Senate Bill 215 ensures that the group

14   working on the ballot initiative is classified as a

15   political action committee, a PAC. This ensures these

16   groups comply with the PAC filing requirements. These

17   requirements include ongoing campaign finance

18   disclosures and a new requirement that the PAC

19   treasurer certify that the group has not accepted

20   foreign contributions.

21             To be clear, this campaign finance reform

22   measure will ensure that all of Ohio's elections are

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024          4

1    not impacted by foreign influences and it'll better

2    protect Ohio -- Ohio's elections from foreign interests

3    hiding behind dark money entities like 501(c)(4)s.

4            For example, in 2023, the Sixteen Thirty Funds

5    spent over $13 million across all three Ohio ballot

6    campaigns. This fund has received over $220 million

7    from a Swiss billionaire, Hansjorg Wyss, since 2016.

8    $220 million. Senate Bill 215 would ensure that foreign

9    billionaires cannot influence elections in our state.

10           Thank you again for the opportunity to provide

11   sponsor testimony on Senate Bill 215. We'd be happy to

12   answer any questions Committee may have.

13           SEN. MCCOLLEY:  We can go straight to

14   questions, Mr. Chairman.

15           SEN. RULLI:  Thank you both for your

16   testimonies. So, we'll start -- I'll start off the

17   questions. I always like to ask the genesis of your

18   thought process for doing this. I think when you look

19   over the last 20 or 30 years of the American elections

20   both parties question the results. We could have hours

21   of debate on that.

22           So where was the genesis that the two senators

1    came up with this thought?

2           SEN. GAVARONE:  To the Chairman, I can tell

3    you that I recently learned of this Swiss billionaire

4    throwing all this money into Ohio -- Ohio's ballot

5    initiatives. And you got to wonder, what interest does

6    a foreign national have in changing Ohio's

7    constitution.

8           It's wrong. They -- so for decades now,

9    foreign nationals have not been able to participate in

10   candidate races. So, this is just an expansion to close

11   the loophole so they cannot provide funding in ballot

12   initiative elections as well.

13          SEN. MCCOLLEY:  Mr. Chairman, I would -- I

14   would say the genesis that I have in this is -- is

15   similar but as Senator Gavarone pointed out, this has

16   been on the books for federal law since 1972, I

17   believe, on the books for Ohio law for candidate

18   elections since 1999.

19          And actually there's an Elections Commission

20   opinion issued in 2021 that says that Ohio law already

21   prohibits expenditures by groups that receive money

22   from foreign nationals on issues campaigns even though

1  the same prohibition is already expressly in place for

2  candidate elections.

3          So, this is something that also seeks to

4  fortify Ohio law and -- and eliminate any ambiguity

5  because very clearly that elections commission co-

6  opinion did not stop entities like the Sixteen Thirty

7  Fund from pouring tens of millions of dollars into the

8  state of Ohio over the last 12 months on these issues

9  campaigns. And, you know, wherever the voters decide to

10  go on these issues campaigns that is up to them. That's

11  something that I think we have to -- we have to look at

12  and we have to respect the will of the voters on those

13  campaigns.

14          But I think all Ohioans should be able to

15  universally agree that we want the people who are

16  participating in these elections to actually be

17  citizens of the Unites States. They should not be

18  people from foreign countries who are trying to put

19  their invisible hands some way into these elections and

20  influencing them unduly against -- against the laws of

21  the state of Ohio or other states or even federal law.

22          SEN. RULLI:  I appreciate that. And I have a

1  follow up. I know that when we look at different middle

2  eastern monies that have been infiltrating American

3  universities and colleges we could trace it back to

4  about seven to eight years ago when that influx began.

5  Is there a moment in history that we could trace

6  foreign influence? Surprisingly, Switzerland or

7  Finland, you said.

8          SEN. GAVARONE:  Swiss -- a Swiss billionaire.

9          SEN. RULLI:  Switzerland. That's a surprising

10  country that how it had an influence on Ohio politics.

11  But is there something that happened on the time table

12  that this began? Is it within the last 5, 10, or 20

13  years?

14          MS. MCCOLLEY:  To the Chairman, we're going to

15  have a number of witnesses who are going to come up

16  here after us who are, what I would say, would qualify

17  as national experts on these issues. They've been

18  studying it, they've been gathering information from

19  tax returns from these organizations for some years.

20          They're going to be able to tell you with a

21  reasonable degree of certainty when these types of

22  contributions started with these organizations and

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    8

1   when, quiet frankly, the volume and breath of these

2   types of involvements at the dollar amounts we're

3   talking about began. It's something that, of course,

4   we've all known and in many cases been frustrated by

5   the rise of money in politics. But certainly the rise

6   of foreign money in politics and the rise of foreign

7   money trying to impact our elections is a troubling

8   concern.

9           SEN. RULLI:  I really appreciate those

10  answers. And I am going to turn my attention now to our

11  Honorable Senator DeMora for a question.

12          SEN. DEMORA:  Thank you Mr. Chairman.

13          Obviously you both know where I stand on this.

14  But so your presumptive presidential nominee -- nominee

15  gets all kind of money from Saudi Arabia and Russia and

16  these third-party groups that then spend money on his

17  behalf. So, but that's okay, but it's not okay for

18  somebody to actually give money to liberal leading

19  causes.

20          So, again, all the groups that they're going

21  to come up here after -- after you guys talk are all

22  conservative think tanks that all get funded by dark

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    9

1    money, their donors are not known. So, how is -- I

2    mean, so how can you say that just because one person

3    gave some money to one group who actually was on the --

4    we'll say the correct side of an issue last year, now

5    all of a sudden because that issue actually prevailed,

6    now we have to get rid of dark money. It -- had your

7    side prevailed in that election last year, this bill

8    wouldn't have come to fruition, would it have?

9            SEN. GAVARONE:  The Chair to the Senator.

10   Actually, that's not true. I don't believe foreign

11   nationals should be participating at all in Ohio's

12   elections. And we need to really question why -- why

13   these foreign billionaires want to change our laws here

14   in Ohio.

15           So, I think it's -- it crosses both parties

16   across the political spectrum and if you look at

17   polling, Democrats and Republicans strongly agree that

18   we should not be allowing foreign nationals to

19   participate in our elections.

20           SEN. MCCOLLEY:  Mr. Chairman, if I could

21   respond to that as well.

22           I -- I would say I'm not an expert on the

1  federal law surrounding this. There's not a whole lot

2  we could do on a -- on a  presidential election from a

3  campaign finance standpoint as a state legislature,

4  that would be something that would be subject to

5  federal law. However, as we did point out, it is

6  illegal under federal law for foreign nationals to

7  spend money in federal elections.

8          And so, without knowing the data that you're

9  relying upon, I can't really respond in detail to that.

10 But I would also agree with my co-sponsor here. You

11 know, there -- there's a strong probability that

12 without this foreign money that both of those ballot

13 initiatives would have still gone the way that they

14 did.

15         Maybe not by as much as they did because of,

16 you know, we're talking about $13 million here over the

17 course of two campaigns, but there's a strong

18 probability that they would have gone the way that they

19 did as far as the end result is concerned.

20         But I think, as I stated before, we should all

21 be looking at this as a matter of trust and integrity

22 that our voters have in our election process know that

1  this isn't something that is being unduly influenced by

2  people from either side of the aisle or either side of

3  the issue who aren't even citizens of this country.

4           SEN. RULLI:  And do we have any further

5  questions?

6           Just out of curiosity, is the amount of money

7  that they're infilt- -- that they're inserting into the

8  Ohio election, like with the Swiss -- Swiss, is that

9  known how much or no?

10          [talking in background, inaudible]

11          SEN. MCCOLLEY:  Give me a second, Mr.

12  Chairman. So, here -- here's some information we were

13  able to pull through just reviewing the Ohio Secretary

14  of State's website. And in particular we -- we talk

15  about the Sixteen Thirty Fund primarily because it is

16  the, I guess, most known -- the most known violator, if

17  you will, of -- of this type of practice.

18          And it's not us just saying it. It's the

19  Associated Press reported this and has reporter [sic]

20  it -- reported it on numerous occasions that this

21  Sixteen Thirty Fund is primarily funded or at least the

22  -- the largest donor -- known donor is a Swiss

1    billionaire named Hansjorg Wyss.

2           But the Sixteen Thirty Fund has received as --

3    as Senator Gavarone mentioned, over $220 million.

4    Actually I believe the number might be closer to $240

5    million since 2016 from the Swiss billionaire Hansjorg

6    Wyss. Moreover, Sixteen Thirty Fund spent in the 2022

7    mid-term elections approximately $196 million across

8    the country. In addition to that, it spent $13,226,600

9    across all three Ohio 2023 campaigns.

10          This is something that is easily verifiable.

11   It's not us making any of this stuff up. One can do

12   their own research but this is an alarming trend over

13   the course of two elections to see that kind of money

14   thrown in by an organization with known and very strong

15   foreign ties into Ohio's issue elections, especially

16   when, as I mentioned before, the Elections Commission

17   believes that Ohio law already prohibits this.

18          SEN. RULLI:  I'm going to move his follow up

19   after my follow up. Are there any states in the -- in

20   the union that have actually already moved before us

21   and have already done this type of legislation within

22   their State House?

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                     13

```
 1            SEN. GAVARONE:  We have witnesses here that

 2   are going to be testifying later, I believe -- I know

 3   there are several states who have proposed similar

 4   legislation and their -- it will be follow-up testimony

 5   that can verify the status.

 6            SEN. RULLI:  That's great. Okay. Then we're

 7   going to move -- go ahead.

 8            SEN. MCCOLLEY:  Mr. Chairman, it's also worth

 9   noting that there was legislation introduced at the

10   congressional level that I believe just passed

11   unanimously on a bipartisan basis out of the committee

12   in the United States House of Representatives to band

13   this type of spending. So, again, this is a bipartisan

14   issue that everybody should stand firmly against.

15            SEN. RULLI:  Appreciate that. The Chair

16   recognizes Senator DeMora.

17            SEN. DEMORA:  Thank you, Mr. Chairman.

18            So, Senator McColley, you're an attorney. I'm

19   going to ask you this question. So, we all know that if

20   someone wants to get around this, I mean, I can set up

21   a -- I can set up a committee in another state, have

22   Sixteen Thirty donate money to that committee.
```

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    14

1          Then that committee can -- I can set up

2    another committee in this state and have that committee

3    donate money to me, to this other committee in Ohio

4    when I'm not taking any foreign money because it's

5    coming through three different -- three different

6    things. I mean there's -- I mean that's how it's done.

7    I mean, let's be honest. I mean, everybody does it and

8    everybody is going to continue to do this.

9          So, this is kind of a -- I mean, I -- yes, I -

10   - I agree that foreign nationals shouldn't be pumping

11   money into elections in Ohio or anywhere else. But we

12   all know and -- and because this has actually been

13   perfected, not by my side because I -- I'm -- I mean on

14   my side behind the time and all this stuff, let's --

15   let's -- I've freely admit that, but by members on your

16   side of the aisle are the ones perfected how to move

17   this -- since the Vallejo [ph] decision -- not Vallejo,

18   the -- the -- whatever decision that corporations be

19   money and let all these things occur in the United

20   States politics.

21          Your side has been able to do this by setting

22   up all these things that are -- that are not affiliated

1  but kind of affiliated and again there's always going

2  to be ways around this.

3          And, so, I'm just wondering if this is not a -

4  - if you said the other -- our Elections Commission

5  already says its banned, is this -- it's not a -- and -

6  - and by the way, the bills are coming from the same

7  source where most of these bills come from, it's an

8  national group that gives bills to all 50 states and

9  they're kind of cherry picked by which legislatures

10  want to do them and which legislators don't,

11  Republican-led legislatures do the cherry picked ones

12  that they want.

13          You know, a- -- again, we're behind the times

14  as -- as progressives and Democrats, that we don't have

15  a national group that does these legislations for us. I

16  mean, I give you credit for that as well.

17          So, aren't we just kind of playing to the bass

18  here again that this is something that, you know, is

19  not -- is this something, again, to kind of gin up the

20  bass. We all hate foreign money but again, if you ask

21  the average voter what their top 10 issues are, I

22  guarantee you money from foreign nationals effecting

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    16

1    the elections aren't going to come in the top 30.

2            SEN. RULLI:  Proceed.

3            SEN. MCCOLLEY:  Thank you, Mr. Chairman.

4            I -- I would say regardless -- again,

5    regardless this -- this -- this is our original bill.

6    Okay. This isn't something that somebody gave us and

7    said verbatim put this into a bill. Okay. And again,

8    this isn't something that is politically motivated one

9    side or the other. It's something that we should be

10   looking at frankly as Ohioans and Americans not wanting

11   this type of practice to continue.

12           You know, but by your remarks it sounds like

13   you might have experience in setting these types of

14   things up, Senator DeMora. But --

15           SEN. DEMORA:  I work weekends.

16           SEN. MCCOLLEY:  -- but I -- I would say, you

17   know, regardless of what side any of this comes from,

18   we should all be opposed to it whether it's coming from

19   the right, coming from the left, Republicans or

20   Democrats, we should all be opposed to it because,

21   again, foreign nationals should not be influencing

22   issues campaigns or candidate elections in the state of

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    17

1    Ohio.

2         Now, interestingly enough, you mentioned that

3    -- I will mention this, the people who view this stuff

4    and the people who monitor this stuff and the people

5    who are experts at this stuff, will tell you that the

6    web of dark money designed to conceal the -- the -- the

7    -- the --the source of -- of funding -- but look the --

8    I wouldn't say that we're the experts on it on the

9    right. I would say the people on the -- on the left are

10   the ones who have perfected this art. And I'll let that

11   information speak for itself.

12        But regardless, again, if they were a

13   Republican group doing this and spending money from

14   foreign nationals in Ohio candidates' races or issues

15   elections, I think we should all stand united against

16   that and I think that's what the voters would want us

17   to do.

18        SEN. RULLI:  I'm just going to make a comment.

19   As the Chair, I would more than willingly offer my

20   office to invite all the senators here because I feel

21   that there's a little bit of curiosity to my left that

22   maybe we could get you as a yes vote on this.

1          So, if you need to have a meeting about that

2     to maybe talk about maybe a little baby amendment or

3     something to get Senator DeMora, we -- we will talk

4     about that.

5          SEN. DEMORA:  Mr. Chairman, the audi- -- the

6     audience already hates me for the next bill that I'm

7     supporting being bipartisan on it. I don't want to be

8     hated on both bills here at one time.

9          SEN. RULLI:  I understand. I understand.

10          SEN. MCCOLLEY:  See, Mr. Chairman, you know,

11    Senator DeMora, you're -- you're not -- you're not --

12    you're immune to -- to stepping outside of a political

13    aim to do the right thing. So, we'll -- we'll work with

14    you on this. But I would say that we're open to

15    amendments on this.

16          Ultimately, to your point, Senator DeMora, it

17    does need to be something that works and the penalties

18    need to be a big enough deterrent that the

19    sophisticated actors in this arena understand that it

20    is going to be a hefty price to pay in the event that

21    they go awry or -- or go aside of this law.

22          We are working on some concepts now that we're

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    19

1    not necessarily ready to reveal that would make it much

2    clearer how this needs to be complied with, much

3    clearer how somebody would go awry of the statute. But

4    nevertheless, it needs to work because, you're right,

5    there are sophisticated actors all over the place in

6    this -- in this realm that are going to be designed and

7    -- and intent on going around whatever we put in place.

8         SEN. RULLI:  Thank you both for your

9    testimony.

10        SEN. MCCOLLEY:  Thank you.

11        SEN. RULLI:  We're going to proceed with the

12   first hearing but we're going to move into second phase

13   of the first hearing. We're going to now move into

14   proponent testimony. So, the Committee would like to

15   welcome to the podium Jason Snead for proponent

16   testimony.

17        Welcome to Committee.

18        MR. SNEAD:  Thank you Mr. Chairman and members

19   of the Committee. I appreciate the opportunity to be

20   here and to return to my home state of Ohio to testify

21   today on Senate Bill 215 to prohibit both direct and

22   indirect foreign contributions to ballot measure

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    20

1    campaigns in the state.

2            My name is Jason Snead, I am the executive

3    director of the Honest Elections Project, a non-profit

4    devoted to the principle that every American has the

5    right to vote in free, fair and secure elections.

6            Americans do not want foreign nationals

7    influencing their elections and each of us has the

8    right to know that the foundation of our democracy is

9    protected against foreign interference. But while the

10   media has spent considerable time focusing on threats

11   abroad from Russia and China, comparatively little

12   attention has been paid to the torrent of foreign money

13   flowing into American politics from foreign nationals

14   like billionaire activist Hansjorg Wyss.

15           Mr. Wyss is one of the largest political

16   donors in the United States but he is not an American

17   citizen. Last week, Politico reported that, quote,

18   "Wyss doled out more than $63 million in grants to left

19   leaning groups in fiscal 2022," end quote.

20           As you will soon hear in greater detail from

21   Caitlin Sutherland of Americans for Public Trust, Mr.

22   Wyss has pumped nearly half a billion dollars of

1   foreign money into political causes throughout this

2   country. 243 million of that sum has landed in the

3   coffers of a political spending powerhouse, the Sixteen

4   Thirty Fund.

5          Ohioans are acutely aware of Sixteen Thirty

6   Funds' impact even if they do not know it. Last year

7   alone Sixteen Thirty spent more than $14 million on

8   ballot measure campaigns in this state. Sixteen Thirty

9   Fund is already one of the largest donors to a fourth

10  coming ballot measure to fundamentally change the

11  redistricting process.

12         And as we speak, Mr. Wyss' personal attorney,

13  Mark Alias [ph] is suing in the Ohio Supreme Court to

14  advance a second ballot measure intended to rewrite

15  this state's election laws and even to reopen the door

16  to non-citizen voting.

17         These proposed ballot measures aim to affect

18  the make-up of elected legislatures and rewrite the

19  rules that govern elections in Ohio.

20         These are foundational issues to our republic,

21  yet there is no law in place to ensure that foreign

22  nationals are not influencing these highly

1   consequential campaigns. So long as that is true,

2   Ohioans can expect foreign funding to continue

3   influencing elections in this state.

4           Indeed, Sixteen Thirty has an established

5   history of spending massive sums to advance measures

6   precisely like those facing Ohio this year.

7           In 2022 Sixteen Thirty spent over $10 million

8   to advance Michigan Proposal 2, a measure strikingly

9   similar to the so-called Ohio voters' bill of rights

10  currently in litigation and they spent $6 million on a

11  2018 Michigan measure to reshape the redistricting

12  process. Again, in a manner very similar to the

13  redistricting measure facing this state. And that is

14  just the spending in one state.

15          This is why this issue is so much more than a

16  fight over last year's election or the outcome of any

17  single ballot measure issue. Changing Ohio's

18  constitution has become a top goal of national special

19  interests and it is concerning that one of the largest

20  drivers of this effort is also a top recipient of

21  foreign money.

22          Federal and state laws have prohibited foreign

1  nationals from donating to candidate races for federal,

2  state and local office for decades. It is long past

3  time to bring similar safeguards against foreign

4  influence to ballot measure contests here in Ohio.

5  Numerous other states have taken similar steps

6  including Colorado, Maryland, Nevada, Washington, and

7  more. Last year, more than 86 percent of voters in

8  Maine adopted an initiative to prohibit foreign

9  spending on ballot measures.

10          Here in Ohio a poll conducted by our sister

11  organization HEP Action found that 85 percent of

12  registered voters think foreign nationals should not be

13  allowed to influence elections. 68 percent would back a

14  law to block indirect influence of elections in Ohio.

15          And let us not forget that in 2022 some 77

16  percent of Ohioans voted to ban non-citizen voting in

17  this state. Clearly, there is a broad public consensus

18  that non-citizens should not be influencing elections.

19          SB 215 would make get strides towards

20  safeguarding the integrity of Ohio's elections against

21  foreign influence without in any way inhibiting the

22  ability of American citizens to donate to the

1     candidates and causes they support.

2              Nor does this bill infringe on important

3     protections for the privacy of American donors who

4     chose to contribute to causes that they support.

5     Drawing this distinction between citizens and non-

6     citizens is imminently reasonable. After all, we do not

7     allow non-citizens to vote and we have long banned non-

8     citizens from donating to political candidates.

9              Ballot measure process deserves the same

10    protections. This should not be a partisan issue. Every

11    Ohio voter should know that each election is free of

12    foreign interference and I applaud the members of this

13    Senate for considering legislation and leading the way

14    towards that important conclusion.

15             I think you for the opportunity and will

16    happily take any questions.

17             SEN. RULLI:  We really appreciate your

18    testimony today.

19             Are there any questions from the Committee?

20             SEN. MCCOLLEY:  Mr. Chairman.

21             SEN. RULLI:  Senator McColley.

22             SEN. MCCOLLEY:  Thank you, Mr. Chairman. Thank

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    25

1    you, Mr. Snead.

2             As you look across the country, are you seeing

3    a -- you kind of alluded to it in -- in your testimony

4    but you -- you mentioned Ohio and a few other states.

5    Are you seeing a number of other states that do have

6    open ballot initiatives for -- for constitutional

7    amendments or statutory initiatives where this type of

8    massive influx of seemingly endless money is -- is

9    coming in overnight to -- to fund these campaigns?

10            MR. SNEAD:  Yes. Mr. Chairman, to the Senator,

11   absolutely.

12            Sixteen Thirty Fund is one of the largest

13   donors to ballot measures in the United States and

14   indeed almost any state that has a ballot measure has

15   seen Sixteen Thirty contribute to it. The sums are not

16   inconsiderable by any stretch. You heard me give the

17   facts in Michigan. $10 million went to Proposal 2 in

18   2022, one cycle ago. In 2018 $6 million went into their

19   redistricting measure and that was only one of several

20   states.

21            In fact, I believe there were four states in

22   total that Sixteen Thirty contributed to just on the

1    redistricting issue. Sixteen Thirty has shown that they

2    are willing and able to spend tens of millions of

3    dollars to advance ballot measures in states across the

4    country.

5           And as I said, they are one of the largest

6    single donors. And you got -- you all are facing a

7    redistricting measure potentially this year. They're

8    already one of the largest donors to that measure as

9    well.

10          SEN. RULLI:  Thank you.

11          Senator DeMora.

12          SEN. DEMORA:  Thank you, Mr. Chairman.

13          Mr. Snead, who funds your group?

14          MR. SNEAD:  My group is funded by a number of

15   Americans who believe in honest elections and as many

16   organizations we protect their privacy. That's a policy

17   which many groups on both the left and the right

18   endorse.

19          SEN. DEMORA:  Mr. Chairman.

20          SEN. RULLI:  Follow up.

21          SEN. DEMORA:  So, you're not willing to give

22   us your list of -- of donors, huh?

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    27

1         MR. SNEAD:  Well, Mr. Chairman, Senator

2    DeMora, as I said, we respect the privacy of our

3    donors. I can tell you that every single one of them is

4    an American citizen, which is more than I think can be

5    said for Sixteen Thirty Fund and Hansjorg Wyss. I

6    believe that every one should have the opportunity to

7    know that foreign citizens are not in any way

8    influencing the election process and that's really what

9    I'm here to talk about today.

10        SEN. DEMORA:  One more.

11        SEN. RULLI:  Proceed.

12        SEN. DEMORA:  So -- thank you Mr. Chairman.

13   So your group doesn't believe in mail-in voting but you

14   want to have a free, fair and secure election. Is that

15   -- is that -- is that the case?

16        MR. SNEAD:  Mr. Chairman, Senator, no, that is

17   not the case. In fact, my position, which you can find

18   on a 14 point report on the Honest Elections' website,

19   details that it is important to secure mail ballots

20   with things like voter identification, a law which was

21   just passed and upheld in a court here in Ohio. It's

22   important that we protect those ballots. They are

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    28

1   vulnerable to fraud, to mistakes, vote harvesting and

2   trafficking operations and so forth. But I have never

3   in any way, shape or form condemned mail voting.

4            SEN. DEMORA:  [inaudible].

5            SEN. RULLI:  No more questions. Thank you so

6   much for your testimony.

7            MR. SNEAD:  Thank you, Mr. Chairman.

8            SEN. RULLI:  The Committee will now call

9   Catherine Gunsalus to the podium for testimony.

10            Welcome to Committee, Catherine.

11            MS. GUNSALUS:  Mr. Chairman, members of the

12   Committee, thank you. Thank you for the opportunity to

13   testify in support of Senate Bill 215.

14            My name is Catherine Gunsalus, I am the

15   director of state advocacy for the Her- -- for Heritage

16   Action for America. We are a national grassroots

17   organization with two million conservative activists

18   across the country including thousands of Ohioans.

19   We're also the political or lobbying branch of the

20   Heritage Foundation.

21            Heritage Action supports Senate Bill 215. We

22   thank Senator Gavarone and Senator McColley for

1    introducing this legislation, ensuring Ohio's elections

2    are free from the corrupting influence of foreign

3    funding. Free and fair elections are the bedrock of our

4    republic and every Ohioan  should have the confidence

5    and security and the integrity of our election system.

6              In George Washington's 1796 farewell address

7    he cautioned that, quote, foreign influence is one of

8    the most painful foes of Republican government, end

9    quote. With growing geopolitical threats like the

10   influence of the Chinese communist party, Ohio is wise

11   to ensure the integrity of its elections and guard

12   against the influence of foreign actors that could seek

13   to under mind Ohio's elec- - -- interests.

14             There's several meet -- reasons that have

15   already been mentioned of why Senate Bill 215 is

16   important. I'll review just three of those and -- and

17   for -- for the Committee.

18             Number one, prohibiting foreign nationals from

19   contributing to ballot issue campaigns ensures Ohioans'

20   voices are not diluted and the decisions about Ohio's

21   constitution and laws are based on the voices of its

22   citizens, not foreign billionaires.

1          Heritage Action lobbies alongside of and on

2     behalf of grassroots across the country including here

3     in Ohio and protecting Ohio's elections from outside

4     influence is top of mind, for -- for the grassroots.

5     And they're keenly aware of the fact that the integrity

6     of our government and protecting liberty hinge upon the

7     ability to conduct transparent, accurate and fair

8     elections. Grassroots are -- are tr- -- determined to

9     ensure that their voice is heard and they can have the

10    confidence in the electoral process.

11          Second, as already mentioned as well by the

12    Senator, for years state of Ohio has banned foreign

13    national contributions to political candidates running

14    for office. Senate Bill 215 ensures consistency and

15    fairness in Ohio's electoral process by also banning

16    foreign national contributions for ballot issues. As

17    also mentioned, US federal government rightly limits

18    the participation of foreign individuals, entities,

19    governments in national political campaigns.

20          Thirdly and lastly, I'll note that the foreign

21    meddling in the US political landscape's not a

22    hypothetical problem. States are -- are -- like Ohio

1    are right to address it. Also I would note that O- --

2    Ohio's not alone in its endeavor to push back. It was

3    mentioned -- previously the question was raised are

4    there other states that have already taken action.

5    There are about eight states that have already banned

6    foreign influence in ballot issues. Those states

7    include California, Colorado, Maine, Maryland, North

8    Dakota, South Dakota, Washington and Nevada.

9              This year alone other states like Oklahoma and

10   Arizona have presented similar legislation as well to

11   take initiative to protect their state elections from

12   foreign funding, have introduced that legislation in

13   their legislature.

14             In closing, Ohio has already made great

15   strides into strengthening and securing your elections.

16   And you have the opportunity here to continue leading

17   by passing Senate Bill 215. We urge your support and

18   thank you so much, Mr. Chairman.

19             SEN. RULLI:  We really appreciate your time

20   for your testimony today.

21             Does the Committee have questions?

22             Senator DeMora.

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                               32

```
1            SEN. DEMORA:  Thank you, Mr. Chairman.
2            I'll ask you the same question I asked the
3    previous witness. Who funds your group?
4            MS. GUNSALUS:  Well, Mr. Chairman --
5            SEN. RULLI:  Proceed.
6            MS. GUNSALUS:  -- to -- to the Senator, I -- I
7    -- I don't know quite the answer to your -- your
8    question. I -- so --
9            SEN. DEMORA:  Well -- and you sh- -- and your
10   first thing's prohibiting foreign nationals from
11   contributing so that campaign ensures Ohio's voice is
12   not diluted. I can tell you your top two funders are
13   the Koch brothers and Philip Morris. Now, last time I
14   checked the Koch brothers and Philip Morris aren't
15   headquartered in Ohio, are they?
16           MS. GUNSALUS:  Mr. --
17           SEN. RULLI:  Proceed.
18           MS. GUNSALUS:  -- Mr. Chairman to the Senator.
19           I think the reason for -- for -- why I'm here
20   today is simply to ensure that foreign funding are not
21   -- is not influencing Ohio's ballot measures
22   specifically. So, I'd be happy to follow up with you on
```

1    your specific question related to -- to Heritage

2    donors.

3            SEN. DEMORA:  Oh, I'd love that. Thank you.

4            Mr. -- thank you Mr. Chairman.

5            SEN. RULLI:  Chair recognizes Senator Rob

6    McColley.

7            SEN. MCCOLLEY:  Thank you, Mr. Chairman.

8            And this -- this is a question that could have

9    easily been asked of Mr. Snead as well in response to

10   the line of questioning from Mr. DeMora.

11           What we're talking about here are expenditures

12   in elections, not expenditures that are being made in a

13   process of issue advocacy like what you guys are doing

14   here today. There are no shortage of 501(c)(3)s and

15   501(c)(4)s that are involved daily at the State House

16   on all sides of the issue who are non-profit

17   organizations who are set up here for philanthropic

18   causes in many cases that there's never been any

19   question as to who their donors are or why we should

20   know them.

21           What we're talking about here is

22   electioneering during the times of elections. And so, I

1  guess any response to that would be appreciated. Thank
2  you.
3          MS. GUNSALUS:  Mr. Chairman to the Senator.
4  Thank you.
5          Yes, absolutely, and -- and I think this is
6  some -- this is an issue that Ohioans feel very
7  passionate about, a grassroots here feel very
8  passionate about ensuring that that foreign influence
9  in electioneering to your point, Senator, is not
10  occurring and so I would just note that, reaffirm that.
11          SEN. RULLI:  Appreciate your testimony and I
12  think for the record the Koch brothers and Philip
13  Morris are United States companies. Thank you so much.
14          MS. GUNSALUS:  Thank you.
15          SEN. RULLI:  The Committee will now call
16  Caitlin Sutherland to the podium for testimony.
17          Welcome to Committee, Caitlin.
18          MS. SUTHERLAND:  Chairman Rulli, Ranking
19  Member DeMora and members of the Committee. Thank you
20  for the invitation and opportunity to testify in
21  support of Senate Bill 215 which prohibits foreign
22  nationals from contributing to state ballot issues.

1          My name is Caitlin Sutherland and I am the

2    executive director of Americans for Public Trust, a

3    non-profit, non-partisan organization dedicated to

4    restoring trust in government by holding politicians

5    and political groups accountable.

6          Since our founding in 2020, APT has devoted

7    extensive resources to uncovering, mapping and

8    publicizing outside money influence in politics and

9    policy. Americans should have every confidence that

10   their elections are free from foreign interference and

11   influence. But unfortunately, as you've heard, a

12   significant source of foreign cash is flowing into

13   politics from a Swiss billionaire named Hansjorg Wyss.

14          Multiple press outlets including the

15   Associated Press, Bloomberg and Real Clear Politics

16   have confirmed Mr. Wyss is a foreign national. But

17   don't just take their word for it. Listen to what Mr.

18   Wyss has said about the matter. In 2011 Mr. Wyss told a

19   Swiss newspaper that he, quote, never felt the need to

20   become an American.

21          He claimed he found the process, quote, too

22   complicated and instead preferred to call himself,

1    quote, a spiritual dual citizen. Despite Mr. Wyss'

2    disinterest in becoming an American citizen, he made it

3    a personal goal to influence American politics.

4    According to a biography written by his own sister, Mr.

5    Wyss' personal goal is to, quote, reinterpret the

6    American constitution in light of progressive politics.

7          So, how is Mr. Wyss, who is not a US citizen

8    and therefore prohibited from directly or indirectly

9    influencing our elections doing just that? Well, first

10   in the '90s and early [inaudible], he seemingly illegal

11   gave more than $100,000 directly to candidates and

12   political committees. But Mr. Wyss's direct giving

13   pales to comparison to his current and preferred method

14   of influencing our politics, his non-profit.

15         Mr. Wyss uses his two non-profits, the Wyss

16   Foundation, a 501(c)(3) and the Berger Action Fund

17   formerly called the Wyss Action Fund, a 501(c)(4), to

18   fund liberal groups across the nation. He has used

19   these two non-profit vehicles to pump almost half a

20   billion dollars into the US political system. In his

21   biography Mr. Wyss's sister explicitly detailed his

22   ability to, quote, exert an influence on American

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                      37

1    domestic politics through his foundations.

2          If this sounds like a staggering amount of

3    money from a reclusive billionaire and organizations

4    you might never have heard of, that's because it's all

5    by design. Again, while speaking to foreign media, Mr.

6    Wyss admitted that he was fighting laws in Arizona

7    that, quote, give police too many rights, working to

8    nominate progressive federal judges and funding

9    abortion clinics. But the catch, he also bragged that

10   his, quote, name never appears linked to his efforts.

11         But how exactly by his own words does he exert

12   an influence? According to the New York Times, Mr.

13   Wyss's, quote, political activism is channeled through

14   a daisy chain of opaque organizations that mask the

15   ultimate recipients of the money. The most opaque of

16   those organizations is a little known group called the

17   Sixteen Thirty Fund.

18         According to the Associated Press, the Sixteen

19   Thirty Fund has, quote, received 208 million from Wyss

20   since 2016. Bloomberg has also confirmed, quote, Wyss

21   has disclosed giving over 208 million to Sixty Thirty

22   Fund, a clearinghouse for the left. Less than one week

1  ago Politico reported on another cash infusion of $35

2  million from Mr. Wyss bringing the total from him into

3  Sixteen Thirty Fund to a whopping $243 million.

4          How does this pact -- impact Ohio? In less

5  than a year that little known but well-funded Sixteen

6  Thirty Fund has funneled over 14 million into three

7  Ohio ballot measures. One person one vote, Ohioans

8  United For Re- -- Reproductive Rights and Citizens Not

9  Politicians. That's right, the same group that has

10  received almost 250 million from a foreign national has

11  turned around and spent over 14 million right here in

12  Ohio. And there's more spending to come.

13          Citizens Not Politicians, an ironic name given

14  the ties to foreign funds, is currently collecting

15  signatures in Ohio. Given their deep pockets, we can

16  expect even more backing to come from Sixteen Thirty

17  Fund. This pipeline of foreign cash into Ohio politics

18  should be stopped. Foreign nationals are already banned

19  from donating to candidates directly so why should

20  ballot issues be any different.

21          The proposed legislation would prohibit

22  foreign nationals from injecting money into Ohio ballot

1    issues both directly and indirectly, which includes

2    funneling money through US base non-profit

3    organizations. I urge you to support Senate Bill 215 to

4    help foreign nationals from influencing important

5    policy here in Ohio.

6          Thank you.

7          SEN. RULLI:  Really appreciate your testimony

8    today. It means that we're robust [??].

9          Are there any questions from the Committee?

10         Senator DeMora.

11         SEN. DEMORA:  Thank you, Mr. Chairman.

12         So, you are a non-profit, non-partisan

13    organization in quotes. Tell me what -- what Democrat

14    works for you or what demo- -- what Republican group

15    have you ever gone after because everything I read

16    about you and go after Democratic groups and -- and

17    left leaning groups? So how is that non-partisan?

18         MS. SUTHERLAND:  We are an independent

19    501(c)(3) based in Alexandria, Virginia that has filed

20    complaints and raised issues on both the right and the

21    left. I'd be happy to share with you the ethics

22    complaints that we have filed against Republicans

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                              40

1   including former Congressman Madison Cawthorn and

2   former Congressman Steven Watkins and former

3   Congressman Van Taylor.

4          SEN. DEMORA:  Okay. Thank you, Mr. Chair. I --

5   I have a follow up.

6          SEN. RULLI:  Follow up.

7          SEN. DEMORA:  Okay. Are you still being

8   investigated by the IRS for illegally doing political

9   spending from a 501(c)(3)?

10         MS. SUTHERLAND:  We are not being investigated

11  for illegally politically spending.

12         SEN. DEMORA:  Oh, then I guess all the news

13  media I've read is in- -- is -- is not true, huh?

14         MS. SUTHERLAND:  Anyone can file a complaint

15  against anyone. However, that does not mean that it has

16  merit. Individuals can file ethics complaints, FEC

17  complaints against organization [sic]. What's important

18  here is whether they have merit and whether or not

19  they're well sourced and well cited, like the

20  information I have brought to you today based on 10

21  years of tax returns showing a foreign national's money

22  has poured into a group supporting Ohio issues.

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    41

1           SEN. DEMORA:  Thank you, Mr. Chairman. I'm

2      done with her.

3           SEN. RULLI:  Thank you for that answer. Chair

4      will now recognize Senator Rob McColley.

5           SEN. MCCOLLEY:  Thank you, Chairman.

6           Can you go through the depth and breath of

7      your research and how you -- how you are able to come

8      to -- into this information and how -- how difficult it

9      is in some cases to chase it down and really the

10     exhaustive efforts that you've put into coming up with

11     the data that you have?

12          MS. SUTHERLAND:  Yeah. Thank you Chair, to the

13     Senator.

14          It is all based on publicly available tax

15     returns from his two non-profit entities. And so when

16     you take a look at the money going out from those non-

17     profits into a variety of causes like the Sixteen

18     Thirty Fund, you can just add up the dollar amount that

19     he had spent.

20          And it's not just exclusive to Sixteen Thirty

21     Fund, the money pouring from this foreign national's

22     two non-profits by his own words designed to exert and

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    42

1    influence that it's all on these tax returns for anyone

2    to see and I'd be happy to share that with the

3    Committee after this hearing.

4            SEN. RULLI:  Thank you so much for your

5    testimony.

6            SEN. MCCOLLEY:  Well --

7            SEN. RULLI:  Oh, I'm so sorry. Rebuttal from

8    Mr. -- Senator McColley.

9            SEN. MCCOLLEY:  Thank -- thank you Chairman

10   Rulli.

11           Can you -- you talk a little bit about the --

12   the daisy chain of organizations when you quoted the

13   New Times article detailing what's going on here. Can

14   you detail that a little bit, the -- the lengths to

15   which sometimes these organizations go to, in some

16   cases, conceal the funds of -- from their ultimate

17   source?

18           SEN. RULLI:  Proceed.

19           MS. SUTHERLAND:  Thank you, Chair to the

20   Senator.

21           Yes. As I mentioned, that he has openly

22   bragged that his name never appears. And, so, that is

1    his ultimate goal is to how to influence American

2    politics without being an American citizen. If it

3    sounds confusing, it's because it's by design. He wants

4    to be one step removed from his influence because he

5    knows it's illegal. He knows that it's illegal to

6    donate directly to candidates, which he has since

7    stopped doing.

8              What we've seen here is a shift to indirectly

9    influencing our elections, which, again, is still

10   illegal, which is why it is so important to take the

11   step to make sure that you ban both direct and indirect

12   funds of foreign money into ballot initiatives.

13             SEN. MCCOLLEY:  Mr. Chairman.

14             SEN. RULLI:  Follow up.

15             SEN. MCCOLLEY:  Yep.

16             Can you talk a little bit about the -- the

17   response that typically gets made when some of these

18   complaints get filed against these organizations about

19   how, oh, trust us, we -- we -- we have bifurcated the

20   money? We have somehow separated it, although it's all

21   in the same organization, we've been able to -- to --

22   to somehow make sure that no -- no dollars that came in

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    44

1   through this transaction have ever been spent on this

2   other stuff. Can you talk about the fungible nature of

3   money and how -- how that quite frankly is a little bit

4   of a -- a work around in some ways?

5           MS. SUTHERLAND:  Yeah. Thank you, Chair to the

6   Senator.

7           That's exactly right. They have never actually

8   shown proof that they have any separate bank accounts,

9   any separate funds. They have been pressed by the

10  Federal Election Commission in response to an FEC

11  complaint filed by my organization, APT, and they've

12  also been pressed by credible news outlets, like the

13  Associated Press and Bloomberg.

14          But time and time again, they have refused to

15  prove what you are discussing, is segregated funds. We

16  continuously hear a, no, trust us. However, when you do

17  the math it gets -- it's almost laughable when you have

18  the same organization receiving, as I said, almost a

19  quarter of a billion dollars from a  foreign national

20  turning around and spending on issues here in Ohio.

21  There the problem is very easy to see.

22          SEN. RULLI:  Thank you so much.

1          The Chair will now recognize Senator Gavarone.

2          SEN. GAVARONE:  Thank you very much for your

3    testimony. Senator DeMora earlier questioned this

4    complicated web of -- of financial transactions. Can

5    you explain the financial shell game that's going on

6    and how that is intended to hide money from foreign

7    nationals?

8          MS. SUTHERLAND:  Yeah. Thank you, Chair to the

9    Senator.

10         Yes. You know, he does not -- Mr. Wyss and his

11   giving he does not want to be made public. He purposely

12   does not speak to the American people. He -- or the

13   American press. We have only determined that he is a US

14   citizen by examining Swiss newspapers. He has referred

15   with the New York Times did the first exposé on his

16   daisy chain of organizations.

17         He even refused to tell the New York Times

18   whether or not he was a US citizen. That is because he

19   wants to remain reclusive. And yes, the shell game of

20   setting up these 501(c)(3)s and 501(c)(4)s for the sole

21   purpose of funneling money into another 501(c)(4) which

22   then turns around and spends in Ohio, Kansas, Virginia,

1   Florida, Texas, on and on which we will be seeing in

2   2024 is a problem.

3           However, when you take a look at just last

4   Friday the 2022 tax form was just released showing

5   another $60 million was poured into our elections. And

6   the year before that, $72 million. When you total it

7   all up it's around half a billion dollars from this one

8   individual in to American politics. That's a staggering

9   amount of money and it must be stopped.

10          SEN. RULLI:  Follow up Senator Gavarone.

11          SEN. GAVARONE:  I just wanted to clarify one

12  point you made. You mentioned that Hansjorg Wyss is a

13  citizen.

14          MS. SUTHERLAND:  Oh, is not. Sorry, Mr. Chair,

15  to the Senator.

16          Is not a citizen. He refused to clarify when

17  the New York Times asked if he was a citizen and then

18  he declined to even tell the New York Times if he was a

19  citizen. He is a confirmed foreign national, even by

20  his own words.

21          SEN. RULLI:  Seeing so- -- no more questions,

22  we thank you so much for your testimony.

1          This will constitute the first hearing of

2    Senate Bill 2- -- 215.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

```
 1              CERTIFICATE OF TRANSCRIBER

 2      I, Chris Naaden, a transcriber, hereby declare

 3  under penalty of perjury that to the best of my ability

 4  from the audio recordings and supporting information;

 5  and that I am neither counsel for, related to, nor

 6  employed by any of the parties to this case and have no

 7  interest, financial or otherwise, in its outcome, the

 8  above 47 pages contain a full, true and correct

 9  transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12          I further declare that I have no interest in

13  the event of the action.

14

15  _____

16  June 6, 2024

17  Chris Naaden

18

19  (540606, Ohio Senate General Government Committee - 2-

20  21-2024)

21

22
```

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

49

**A**

**ability**
23:22, 30:7,
36:22, 48:3
**able**
5:9, 6:14,
7:20, 11:13,
14:21, 26:2,
41:7, 43:21
**abortion**
37:9
**about**
7:4, 8:3,
10:16, 11:15,
18:1, 18:2,
18:4, 27:9,
29:20, 31:5,
33:11, 33:21,
34:7, 34:8,
35:18, 39:16,
42:11, 43:16,
43:18, 44:2
**above**
48:8
**abroad**
20:11
**absolutely**
25:11, 34:5
**accept**
3:1
**accepted**
3:2, 3:19
**according**
36:4, 37:12,
37:18
**accountable**
35:5
**accounts**
44:8
**accurate**
30:7
**across**
4:5, 9:16,
12:7, 12:9,
25:2, 26:3,
28:18, 30:2,
36:18

**action**
3:15, 23:11,
28:16, 28:21,
30:1, 31:4,
36:16, 36:17,
48:13
**activism**
37:13
**activist**
20:14
**activists**
28:17
**actors**
18:19, 19:5,
29:12
**actually**
5:19, 6:16,
8:18, 9:3, 9:5,
9:10, 12:4,
12:20, 14:12,
44:7
**acutely**
21:5
**add**
41:18
**addition**
2:21, 12:8
**address**
29:6, 31:1
**admit**
14:15
**admitted**
37:6
**adopted**
23:8
**advance**
21:14, 22:5,
22:8, 26:3
**advocacy**
28:15, 33:13
**affect**
21:17
**affiliated**
14:22, 15:1
**after**
7:16, 8:21,
12:19, 24:6,
39:15, 39:16,

42:3
**again**
4:10, 8:20,
13:13, 15:1,
15:13, 15:18,
15:19, 15:20,
16:4, 16:7,
16:21, 17:12,
22:12, 37:5,
43:9, 44:14
**against**
6:20, 13:14,
17:15, 20:9,
23:3, 23:20,
29:12, 39:22,
40:15, 40:17,
43:18
**ago**
7:4, 25:18,
38:1
**agree**
6:15, 9:17,
10:10, 14:10
**ahead**
13:7
**aim**
18:13, 21:17
**aisle**
11:2, 14:16
**alarming**
12:12
**alexandria**
39:19
**alias**
21:13
**all**
3:22, 4:5, 5:4,
6:14, 8:4, 8:15,
8:20, 8:21,
8:22, 9:5, 9:11,
10:20, 12:9,
13:19, 14:12,
14:14, 14:19,
14:22, 15:8,
15:20, 16:18,
16:20, 17:15,
17:20, 19:5,
24:6, 26:6,

33:16, 37:4,
40:12, 41:14,
42:1, 43:20,
46:7
**allow**
24:7
**allowed**
23:13
**allowing**
9:18
**alluded**
25:3
**almost**
25:14, 36:19,
38:10, 44:17,
44:18
**alone**
21:7, 31:2,
31:9
**alongside**
30:1
**already**
2:11, 2:19,
5:20, 6:1,
12:17, 12:20,
12:21, 15:5,
18:6, 21:9,
26:8, 29:15,
30:11, 31:4,
31:5, 31:14,
38:18
**also**
3:5, 3:7, 6:3,
10:10, 13:8,
22:20, 28:19,
30:15, 30:17,
31:1, 37:9,
37:20, 44:12
**although**
43:20
**always**
4:17, 15:1
**ambiguity**
6:4
**amendment**
18:2
**amendments**
18:15, 25:7

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

50

america
28:16
american
4:19, 7:2,
20:4, 20:13,
20:16, 23:22,
24:3, 27:4,
35:20, 36:2,
36:3, 36:6,
36:22, 43:1,
43:2, 45:12,
45:13, 46:8
americans
16:10, 20:6,
20:21, 26:15,
35:2, 35:9
amongst
2:17
amount
3:2, 11:6,
37:2, 41:18,
46:9
amounts
8:2
another
13:21, 14:2,
38:1, 45:21,
46:5
answer
4:12, 32:7,
41:3
answers
8:10
any
4:12, 6:4,
11:4, 12:11,
12:19, 14:4,
16:17, 22:16,
23:21, 24:16,
24:19, 25:14,
25:16, 27:7,
28:3, 33:18,
34:1, 38:20,
39:9, 44:8,
44:9, 48:6
anyone
40:14, 40:15,
42:1

anywhere
14:11
appears
37:10, 42:22
applaud
24:12
appreciate
6:22, 8:9,
13:15, 19:19,
24:17, 31:19,
34:11, 39:7
appreciated
34:1
approximately
12:7
apt
35:6, 44:11
arabia
8:15
aren't
11:3, 15:17,
16:1, 32:14
arena
18:19
arizona
31:10, 37:6
around
13:20, 15:2,
19:7, 38:11,
44:4, 44:20,
45:22, 46:7
art
17:10
article
42:13
aside
18:21
asked
32:2, 33:9,
46:17
associated
11:19, 35:15,
37:18, 44:13
attention
8:10, 20:12
attorney
13:18, 21:12
audi
18:5

audience
18:6
audio
48:4
available
41:14
average
15:21
aware
21:5, 30:5
awry
18:21, 19:3

**B**

baby
18:2
back
7:3, 23:13,
31:2
background
11:10
backing
38:16
ballot
2:10, 2:16,
3:14, 4:5, 5:4,
5:11, 10:12,
19:22, 21:8,
21:10, 21:14,
21:17, 22:17,
23:4, 23:9,
24:9, 25:6,
25:13, 25:14,
26:3, 29:19,
30:16, 31:6,
32:21, 34:22,
38:7, 38:20,
38:22, 43:12
ballots
27:19, 27:22
ban
2:15, 2:17,
23:16, 43:11
band
13:12
bank
44:8
banned
15:5, 24:7,

30:12, 31:5,
38:18
banning
30:15
base
39:2
based
29:21, 39:19,
40:20, 41:14
basis
13:11
bass
15:17, 15:20
because
6:5, 9:2, 9:5,
10:15, 11:15,
14:4, 14:12,
14:13, 16:20,
17:20, 19:4,
37:4, 39:15,
43:3, 43:4,
45:18
become
22:18, 35:20
becoming
36:2
bedrock
29:3
been
5:9, 5:16, 7:2,
7:17, 7:18, 8:4,
14:12, 14:21,
20:12, 29:15,
33:9, 33:18,
43:21, 44:1,
44:9, 44:12
before
10:20, 12:16,
12:20, 46:6
began
7:4, 7:12, 8:3
behalf
8:17, 30:2
behind
4:3, 14:14,
15:13
being
2:17, 11:1,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

51

18:7, 33:12,
40:7, 40:10,
43:2
**believe**
5:17, 9:10,
12:4, 13:2,
13:10, 25:21,
26:15, 27:6,
27:13
**believes**
12:17
**berger**
36:16
**best**
48:3
**better**
4:1
**between**
24:5
**bifurcated**
43:19
**big**
18:18
**bill**
2:3, 2:8, 2:13,
3:7, 3:11, 3:13,
4:8, 4:11, 9:7,
16:5, 16:7,
18:6, 19:21,
22:9, 24:2,
28:13, 28:21,
29:15, 30:14,
31:17, 34:21,
39:3, 47:2
**billion**
20:22, 36:20,
44:19, 46:7
**billionaire**
4:7, 5:3, 7:8,
12:1, 12:5,
20:14, 35:13,
37:3
**billionaires**
4:9, 9:13,
29:22
**bills**
15:6, 15:7,
15:8, 18:8

**biography**
36:4, 36:21
**bipartisan**
13:11, 13:13,
18:7
**bit**
17:21, 42:11,
42:14, 43:16,
44:3
**block**
23:14
**bloomberg**
35:15, 37:20,
44:13
**books**
5:16, 5:17
**both**
2:11, 4:15,
4:20, 8:13,
9:15, 10:12,
18:8, 19:8,
19:21, 26:17,
39:1, 39:20,
43:11
**bragged**
37:9, 42:22
**branch**
28:19
**breath**
8:1, 41:6
**bring**
2:2, 23:3
**bringing**
38:2
**broad**
23:17
**brothers**
32:13, 32:14,
34:12
**brought**
40:20

**C**

**c)(3**
36:16, 39:19,
40:9
**c)(3)s**
33:14, 45:20

**c)(4**
36:17, 45:21
**c)(4)s**
4:3, 33:15,
45:20
**caitlin**
20:21, 34:16,
34:17, 35:1
**california**
31:7
**call**
28:8, 34:15,
35:22
**called**
36:17, 37:16
**came**
5:1, 43:22
**campaign**
2:14, 3:4,
3:17, 3:21,
10:3, 32:11
**campaigns**
2:14, 2:21,
2:22, 4:6, 5:22,
6:9, 6:10, 6:13,
10:17, 12:9,
16:22, 20:1,
21:8, 22:1,
25:9, 29:19,
30:19
**can't**
10:9
**candidate**
2:12, 5:10,
5:17, 6:2,
16:22, 23:1
**candidates**
17:14, 24:1,
24:8, 30:13,
36:11, 38:19,
43:6
**cannot**
3:11, 4:9, 5:11
**caption**
48:10
**case**
27:15, 27:17,
48:6

**cases**
8:4, 33:18,
41:9, 42:16
**cash**
35:12, 38:1,
38:17
**catch**
37:9
**catherine**
28:9, 28:10,
28:14
**causes**
8:19, 21:1,
24:1, 24:4,
33:18, 41:17
**cautioned**
29:7
**cawthorn**
40:1
**certainly**
8:5
**certainty**
7:21
**certificate**
48:1
**certify**
3:19
**chain**
37:14, 42:12,
45:16
**chair**
2:2, 2:5, 2:6,
9:9, 13:15,
17:19, 33:5,
40:4, 41:3,
41:12, 42:19,
44:5, 45:1,
45:8, 46:14
**chairman**
4:14, 5:2,
5:13, 7:14,
8:12, 9:20,
11:12, 13:8,
13:17, 16:3,
18:5, 18:10,
19:18, 24:20,
24:22, 25:10,
26:12, 26:19,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

52

27:1, 27:12,
27:16, 28:7,
28:11, 31:18,
32:1, 32:4,
32:18, 33:4,
33:7, 34:3,
34:18, 39:11,
41:1, 41:5,
42:9, 43:13
**chance**
2:7
**change**
9:13, 21:10
**changing**
5:6, 22:17
**channeled**
37:13
**chase**
41:9
**checked**
32:14
**cherry**
15:9, 15:11
**china**
20:11
**chinese**
29:10
**chose**
24:4
**chris**
48:2, 48:17
**christian**
1:22
**cited**
40:19
**citizen**
20:17, 27:4,
36:1, 36:2,
36:7, 43:2,
45:14, 45:18,
46:13, 46:16,
46:17, 46:19
**citizens**
6:17, 11:3,
23:22, 24:5,
24:6, 24:8,
27:7, 29:22,
38:8, 38:13

**claimed**
35:21
**clarify**
46:11, 46:16
**classified**
3:14
**clear**
3:21, 35:15
**clearer**
19:2, 19:3
**clearinghouse**
37:22
**clearly**
6:5, 23:17
**clinics**
37:9
**close**
5:10
**closer**
12:4
**closes**
2:13
**closing**
31:14
**co-sponsor**
10:10
**coffers**
21:3
**collecting**
38:14
**colleges**
7:3
**colorado**
23:6, 31:7
**come**
7:15, 8:21,
9:8, 15:7, 16:1,
38:12, 38:16,
41:7
**comes**
16:17
**coming**
14:5, 15:6,
16:18, 16:19,
21:10, 25:9,
41:10
**comment**
17:18

**commission**
5:19, 6:5,
12:16, 15:4,
44:10
**committee**
1:8, 2:4, 2:7,
3:15, 4:12,
13:11, 13:21,
13:22, 14:1,
14:2, 14:3,
19:14, 19:17,
19:19, 24:19,
28:8, 28:10,
28:12, 29:17,
31:21, 34:15,
34:17, 34:19,
39:9, 42:3,
48:19
**committees**
36:12
**communist**
29:10
**companies**
34:13
**comparatively**
20:11
**comparison**
36:13
**complaint**
40:14, 44:11
**complaints**
39:20, 39:22,
40:16, 40:17,
43:18
**complicated**
35:22, 45:4
**complied**
19:2
**comply**
3:16
**conceal**
17:6, 42:16
**concepts**
18:22
**concern**
8:8
**concerned**
10:19

**concerning**
22:19
**conclusion**
24:14
**condemned**
28:3
**conduct**
30:7
**conducted**
23:10
**confidence**
29:4, 30:10,
35:9
**confirmed**
35:16, 37:20,
46:19
**confusing**
43:3
**congressional**
13:10
**congressman**
40:1, 40:2,
40:3
**consensus**
23:17
**consequential**
22:1
**conservative**
8:22, 28:17
**considerable**
20:10
**considering**
24:13
**consistency**
30:14
**constitute**
47:1
**constitution**
5:7, 22:18,
29:21, 36:6
**constitutional**
25:6
**contain**
48:8
**contests**
23:4
**continue**
14:8, 16:11,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                    53

22:2, 31:16
**continuously**
44:16
**contribute**
24:4, 25:15
**contributed**
25:22
**contributing**
29:19, 32:11,
34:22
**contributions**
2:21, 3:5,
3:20, 7:22,
19:22, 30:13,
30:16
**corporations**
14:18
**correct**
9:4, 48:8
**corrupting**
29:2
**could**
4:20, 7:3, 7:5,
9:20, 10:2,
17:22, 29:12,
33:8
**counsel**
48:5
**countries**
6:18
**country**
7:10, 11:3,
12:8, 21:2,
25:2, 26:4,
28:18, 30:2
**course**
8:3, 10:17,
12:13
**court**
21:13, 27:21
**credible**
44:12
**credit**
15:16
**crosses**
9:15
**curiosity**
11:6, 17:21

**current**
2:22, 3:6,
36:13
**currently**
22:10, 38:14
**cycle**
25:18

**D**

**daily**
33:15
**daisy**
37:14, 42:12,
45:16
**dakota**
31:8
**dark**
4:3, 8:22, 9:6,
17:6
**data**
10:8, 41:11
**debate**
4:21
**decades**
5:8, 23:2
**decide**
6:9
**decision**
14:17, 14:18
**decisions**
29:20
**declare**
48:2, 48:12
**declined**
46:18
**dedicated**
35:3
**deep**
38:15
**defeat**
3:10
**degree**
7:21
**demo**
39:14
**democracy**
20:8
**democrat**
39:13

**democratic**
39:16
**democrats**
2:18, 9:17,
15:14, 16:20
**demora**
8:11, 8:12,
13:16, 13:17,
16:14, 16:15,
18:3, 18:5,
18:11, 18:16,
26:11, 26:12,
26:19, 26:21,
27:2, 27:10,
27:12, 28:4,
31:22, 32:1,
32:9, 33:3,
33:10, 34:19,
39:10, 39:11,
40:4, 40:7,
40:12, 41:1,
45:3
**depth**
41:6
**deserves**
24:9
**design**
37:5, 43:3
**designed**
17:6, 19:6,
41:22
**despite**
36:1
**detail**
10:9, 20:20,
42:14
**detailed**
36:21
**detailing**
42:13
**details**
27:19
**determined**
30:8, 45:13
**deterrent**
18:18
**devoted**
20:4, 35:6

**different**
7:1, 14:5,
38:20
**difficult**
41:8
**diluted**
29:20, 32:12
**direct**
19:21, 36:12,
43:11
**directly**
2:10, 36:8,
36:11, 38:19,
39:1, 43:6
**director**
20:3, 28:15,
35:2
**disclosed**
37:21
**disclosures**
3:18
**discussing**
44:15
**disinterest**
36:2
**distinction**
24:5
**doing**
4:18, 17:13,
33:13, 36:9,
40:8, 43:7
**doled**
20:18
**dollar**
8:2, 41:18
**dollars**
6:7, 20:22,
26:3, 36:20,
43:22, 44:19,
46:7
**domestic**
37:1
**donate**
13:22, 14:3,
23:22, 43:6
**donating**
23:1, 24:8,
38:19

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

54

| | | | |
|---|---|---|---|
| **done** | **elec** | **endless** | **examining** |
| 12:21, 14:6, | 29:13 | 25:8 | 45:14 |
| 41:2 | **elected** | **endorse** | **example** |
| **donor** | 21:18 | 26:18 | 4:4 |
| 11:22 | **election** | **enough** | **exclusive** |
| **donors** | 9:7, 10:2, | 17:2, 18:18 | 41:20 |
| 9:1, 20:16, | 10:22, 11:8, | **ensure** | **executive** |
| 21:9, 24:3, | 21:15, 22:16, | 3:22, 4:8, | 20:2, 35:2 |
| 25:13, 26:6, | 24:11, 27:8, | 21:21, 29:11, | **exert** |
| 26:8, 26:22, | 27:14, 29:5, | 30:9, 32:20 | 36:22, 37:11, |
| 27:3, 33:2, | 44:10 | **ensures** | 41:22 |
| 33:19 | **electioneering** | 3:13, 3:15, | **exhaustive** |
| **door** | 33:22, 34:9 | 29:19, 30:14, | 41:10 |
| 21:15 | **elections** | 32:11 | **expansion** |
| **down** | 3:22, 4:2, 4:9, | **ensuring** | 5:10 |
| 41:9 | 4:19, 5:12, | 29:1, 34:8 | **expect** |
| **drawing** | 5:18, 5:19, 6:2, | **entities** | 22:2, 38:16 |
| 24:5 | 6:5, 6:16, 6:19, | 2:16, 4:3, 6:6, | **expenditures** |
| **drivers** | 8:7, 9:12, 9:19, | 30:18, 41:15 | 3:8, 3:9, 5:21, |
| 22:20 | 10:7, 12:7, | **equal** | 33:11, 33:12 |
| **dual** | 12:13, 12:15, | 3:2 | **experience** |
| 36:1 | 12:16, 14:11, | **especially** | 16:13 |
| **during** | 15:4, 16:1, | 12:15 | **expert** |
| 3:8, 33:22 | 16:22, 17:15, | **established** | 9:22 |
| **E** | 20:3, 20:5, | 22:4 | **experts** |
| **each** | 20:7, 21:19, | **ethics** | 7:17, 17:5, |
| 20:7, 24:11 | 22:3, 23:13, | 39:21, 40:16 | 17:8 |
| **earlier** | 23:14, 23:18, | **even** | **explain** |
| 45:3 | 23:20, 26:15, | 5:22, 6:21, | 45:5 |
| **early** | 27:18, 29:1, | 11:3, 21:6, | **explicitly** |
| 36:10 | 29:3, 29:11, | 21:15, 38:16, | 36:21 |
| **easily** | 30:3, 30:8, | 45:17, 46:18, | **exposé** |
| 12:10, 33:9 | 31:11, 31:15, | 46:19 | 45:15 |
| **eastern** | 33:12, 33:22, | **event** | **expressly** |
| 7:2 | 35:10, 36:9, | 18:20, 48:10, | 6:1 |
| **easy** | 43:9, 46:5 | 48:13 | **extensive** |
| 44:21 | **electoral** | **ever** | 35:7 |
| **effecting** | 30:10, 30:15 | 39:15, 44:1 | **F** |
| 15:22 | **eliminate** | **every** | **facing** |
| **effort** | 6:4 | 20:4, 24:10, | 22:6, 22:13, |
| 22:20 | **else** | 27:3, 27:6, | 26:6 |
| **efforts** | 14:11 | 29:4, 35:9 | **fact** |
| 37:10, 41:10 | **employed** | **everybody** | 25:21, 27:17, |
| **eight** | 48:6 | 13:14, 14:7, | 30:5 |
| 7:4, 31:5 | **end** | 14:8 | **facts** |
| **either** | 10:19, 20:19, | **everything** | 25:17 |
| 11:2 | 29:8 | 39:15 | **fair** |
| | **endeavor** | **exactly** | 20:5, 27:14, |
| | 31:2 | 37:11, 44:7 | |

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

29:3, 30:7
**fairness**
30:15
**far**
10:19
**farewell**
29:6
**favor**
2:15
**february**
1:9
**fec**
40:16, 44:10
**federal**
2:11, 5:16,
6:21, 10:1,
10:5, 10:6,
10:7, 22:22,
23:1, 30:17,
37:8, 44:10
**feel**
17:20, 34:6,
34:7
**fellow**
2:6
**felt**
35:19
**few**
25:4
**fight**
22:16
**fighting**
37:6
**file**
40:14, 40:16
**filed**
39:19, 39:22,
43:18, 44:11
**filing**
3:16
**finance**
2:13, 2:14,
3:17, 3:21, 10:3
**financial**
45:4, 45:5,
48:7
**find**
27:17

**fine**
3:1
**finland**
7:7
**firmly**
13:14
**first**
2:4, 19:12,
19:13, 32:10,
36:9, 45:15,
47:1
**fiscal**
20:19
**florida**
46:1
**flowing**
20:13, 35:12
**focusing**
20:10
**foes**
29:8
**follow**
7:1, 12:18,
12:19, 26:20,
32:22, 40:5,
40:6, 43:14,
46:10
**follow-up**
13:4
**foreign**
2:9, 2:12,
2:15, 2:20, 3:1,
3:12, 3:20, 4:1,
4:2, 4:8, 5:6,
5:9, 5:22, 6:18,
7:6, 8:6, 9:10,
9:13, 9:18,
10:6, 10:12,
12:15, 14:4,
14:10, 15:20,
15:22, 16:21,
17:14, 19:22,
20:6, 20:9,
20:12, 20:13,
21:1, 21:21,
22:2, 22:21,
22:22, 23:3,
23:8, 23:12,

23:21, 24:12,
27:7, 29:2,
29:7, 29:12,
29:18, 29:22,
30:12, 30:16,
30:18, 30:20,
31:6, 31:12,
32:10, 32:20,
34:8, 34:21,
35:10, 35:12,
35:16, 37:5,
38:10, 38:14,
38:17, 38:18,
38:22, 39:4,
40:21, 41:21,
43:12, 44:19,
45:6, 46:19
**forget**
23:15
**form**
28:3, 46:4
**former**
40:1, 40:2
**formerly**
36:17
**forth**
2:2, 28:2
**fortify**
6:4
**found**
23:11, 35:21
**foundation**
20:8, 28:20,
36:16
**foundational**
21:20
**foundations**
37:1
**founding**
35:6
**four**
25:21
**fourth**
21:9
**frankly**
8:1, 16:10,
44:3
**fraud**
28:1

**free**
20:5, 24:11,
27:14, 29:2,
29:3, 35:10
**freely**
14:15
**friday**
46:4
**fruition**
9:8
**frustrate**
3:10
**frustrated**
8:4
**full**
48:8
**fund**
4:6, 6:7,
11:15, 11:21,
12:2, 12:6,
21:4, 21:9,
25:9, 25:12,
27:5, 36:16,
36:17, 36:18,
37:17, 37:19,
37:22, 38:3,
38:6, 38:17,
41:18, 41:21
**fundamentally**
21:10
**funded**
3:11, 8:22,
11:21, 26:14
**funders**
32:12
**funding**
2:16, 5:11,
17:7, 22:2,
29:3, 31:12,
32:20, 37:8
**funds**
4:4, 21:6,
26:13, 32:3,
38:14, 42:16,
43:12, 44:9,
44:15
**fungible**
44:2

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

**funneled**
38:6
**funneling**
39:2, 45:21
**further**
11:4, 48:12

**G**

**game**
45:5, 45:19
**gathering**
3:9, 3:10, 7:18
**gavarone**
2:3, 2:5, 5:2,
5:15, 7:8, 9:9,
12:3, 13:1,
28:22, 45:1,
45:2, 46:10,
46:11
**gave**
9:3, 16:6,
36:11
**general**
1:8, 2:6, 48:19
**genesis**
4:17, 4:22,
5:14
**geopolitical**
29:9
**george**
29:6
**gin**
15:19
**give**
8:18, 11:11,
15:16, 25:16,
26:21, 37:7
**given**
38:13, 38:15
**gives**
15:8
**giving**
36:12, 37:21,
45:11
**go**
4:13, 6:10,
13:7, 18:21,
19:3, 39:16,

41:6, 42:15
**goal**
22:18, 36:3,
36:5, 43:1
**going**
7:14, 7:15,
7:20, 8:10,
8:20, 12:18,
13:2, 13:7,
13:19, 14:8,
15:1, 16:1,
17:18, 18:20,
19:6, 19:7,
19:11, 19:12,
19:13, 41:16,
42:13, 45:5
**gone**
10:13, 10:18,
39:15
**govern**
21:19
**government**
1:8, 2:7, 29:8,
30:6, 30:17,
35:4, 48:19
**governments**
30:19
**grants**
20:18
**grassroots**
28:16, 30:2,
30:4, 30:8, 34:7
**great**
13:6, 31:14
**greater**
3:3, 20:20
**group**
3:13, 3:19,
9:3, 15:8,
15:15, 17:13,
26:13, 26:14,
27:13, 32:3,
37:16, 38:9,
39:14, 40:22
**groups**
3:16, 5:21,
8:16, 8:20,
20:19, 26:17,

35:5, 36:18,
39:16, 39:17
**growing**
29:9
**guarantee**
15:22
**guard**
29:11
**guess**
11:16, 34:1,
40:12
**gunsalus**
28:9, 28:11,
28:14, 32:4,
32:6, 32:16,
32:18, 34:3,
34:14
**guys**
8:21, 33:13

**H**

**half**
20:22, 36:19,
46:7
**hands**
6:19
**hansjorg**
4:7, 12:1,
12:5, 20:14,
27:5, 35:13,
46:12
**happened**
7:11
**happily**
24:16
**happy**
4:11, 32:22,
39:21, 42:2
**harvesting**
28:1
**hate**
15:20
**hated**
18:8
**hates**
18:6
**headquartered**
32:15

**hear**
20:20, 44:16
**heard**
25:16, 30:9,
35:11, 37:4
**hearing**
2:4, 19:12,
19:13, 42:3,
47:1
**hefty**
18:20
**help**
39:4
**hep**
23:11
**here**
7:16, 8:21,
9:13, 10:10,
10:16, 11:12,
13:1, 15:18,
17:20, 18:8,
19:20, 23:4,
23:10, 27:9,
27:21, 30:2,
31:16, 32:19,
33:11, 33:14,
33:17, 33:21,
34:7, 38:11,
39:5, 40:18,
42:13, 43:8,
44:20
**here's**
11:12
**hereby**
48:2
**heritage**
28:15, 28:20,
28:21, 30:1,
33:1
**hide**
45:6
**hiding**
4:3
**highly**
21:22
**himself**
35:22
**hinge**
30:6

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                          57

history
7:5, 22:5
holding
35:4
home
19:20
honest
14:7, 20:3,
26:15, 27:18
honorable
8:11
hours
4:20
house
12:22, 13:12,
33:15
however
10:5, 40:15,
44:16, 46:3
huh
26:22, 40:13
hypothetical
30:22

**I**

identification
27:20
illegal
10:6, 36:10,
43:5, 43:10
illegally
40:8, 40:11
imminently
24:6
immune
18:12
impact
8:7, 21:6, 38:4
impacted
4:1
important
24:2, 24:14,
27:19, 27:22,
29:16, 39:4,
40:17, 43:10
include
3:17, 31:7
includes
39:1

including
3:9, 23:6,
28:18, 30:2,
35:14, 40:1
inconsiderable
25:16
indeed
22:4, 25:14
independent
39:18
independents
2:18
indirect
19:22, 23:14,
43:11
indirectly
2:10, 36:8,
39:1, 43:8
individual
46:8
individuals
2:15, 30:18,
40:16
infilt
11:7
infiltrating
7:2
influence
4:9, 7:6, 7:10,
23:4, 23:13,
23:14, 23:21,
29:2, 29:7,
29:10, 29:12,
30:4, 31:6,
34:8, 35:8,
35:11, 36:3,
36:22, 37:12,
42:1, 43:1, 43:4
influenced
11:1
influences
4:1
influencing
6:20, 16:21,
20:7, 21:22,
22:3, 23:18,
27:8, 32:21,
36:9, 36:14,

39:4, 43:9
influx
7:4, 25:8
information
7:18, 11:12,
17:11, 40:20,
41:8, 48:4
infringe
24:2
infusion
38:1
inhibiting
23:21
initiative
3:14, 5:12,
23:8, 31:11
initiatives
2:16, 5:5,
10:13, 25:6,
25:7, 43:12
injecting
38:22
inserting
11:7
instead
35:22
integrity
10:21, 23:20,
29:5, 29:11,
30:5
intended
21:14, 45:6
intent
19:7
interest
5:5, 48:7,
48:12
interestingly
17:2
interests
2:9, 2:12, 3:1,
3:12, 4:2,
22:19, 29:13
interference
20:9, 24:12,
35:10
introduced
13:9, 31:12

introducing
29:1
investigated
40:8, 40:10
invisible
6:19
invitation
34:20
invite
17:20
involved
33:15
involvements
8:2
ironic
38:13
irs
40:8
issue
2:14, 9:4, 9:5,
11:3, 12:15,
13:14, 22:15,
22:17, 24:10,
26:1, 29:19,
33:13, 33:16,
34:6
issued
5:20
issues
2:10, 5:22,
6:8, 6:10, 7:17,
15:21, 16:22,
17:14, 21:20,
30:16, 31:6,
34:22, 38:20,
39:1, 39:20,
40:22, 44:20
it'll
4:1
itself
17:11

**J**

jason
19:15, 20:2
job
1:20
judges
37:8

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

58

**june**
48:16

**K**

**kansas**
45:22
**keenly**
30:5
**kind**
8:15, 12:13,
14:9, 15:1,
15:9, 15:17,
15:19, 25:3
**know**
6:9, 7:1, 8:13,
10:11, 10:16,
10:22, 13:2,
13:19, 14:12,
15:13, 15:18,
16:12, 16:17,
18:10, 20:8,
21:6, 24:11,
27:7, 32:7,
33:20, 45:10
**knowing**
10:8
**known**
8:4, 9:1, 11:9,
11:16, 11:22,
12:14, 37:16,
38:5
**knows**
43:5
**koch**
32:13, 32:14,
34:12

**L**

**landed**
21:2
**landscape's**
30:21
**largest**
11:22, 20:15,
21:9, 22:19,
25:12, 26:5,
26:8
**last**
4:19, 6:8,

**june**
7:12, 9:4, 9:7,
20:17, 21:6,
22:16, 23:7,
32:13, 46:3
**lastly**
3:13, 30:20
**later**
13:2
**laughable**
44:17
**law**
2:11, 2:22,
3:6, 5:16, 5:17,
5:20, 6:4, 6:21,
10:1, 10:5,
10:6, 12:17,
18:21, 21:21,
23:14, 27:20
**laws**
2:19, 6:20,
9:13, 21:15,
22:22, 29:21,
37:6
**leading**
8:18, 24:13,
31:16
**leaning**
20:19, 39:17
**learned**
5:3
**least**
11:21
**left**
16:19, 17:9,
17:21, 20:18,
26:17, 37:22,
39:17, 39:21
**legislation**
2:9, 2:20,
2:22, 12:21,
13:4, 13:9,
24:13, 29:1,
31:10, 31:12,
38:21
**legislations**
15:15
**legislators**
15:10

**legislature**
10:3, 31:13
**legislatures**
15:9, 15:11,
21:18
**lengths**
42:14
**less**
37:22, 38:4
**let's**
14:7, 14:14,
14:15
**level**
13:10
**liberal**
8:18, 36:18
**liberty**
30:6
**light**
36:6
**limits**
30:17
**line**
33:10
**linked**
37:10
**list**
26:22
**listed**
48:10
**listen**
35:17
**litigation**
22:10
**little**
17:21, 18:2,
20:11, 37:16,
38:5, 42:11,
42:14, 43:16,
44:3
**lobbies**
30:1
**lobbying**
28:19
**local**
23:2
**long**
22:1, 23:2,

24:7
**look**
4:18, 6:11,
7:1, 9:16, 17:7,
25:2, 41:16,
46:3
**looking**
10:21, 16:10
**loophole**
2:14, 5:11
**lot**
10:1
**love**
33:3

**M**

**made**
3:8, 3:9,
31:14, 33:12,
36:2, 43:17,
45:11, 46:12
**madison**
40:1
**mail**
27:19, 28:3
**mail-in**
27:13
**maine**
23:8, 31:7
**make**
17:18, 19:1,
23:19, 43:11,
43:22
**make-up**
21:18
**making**
3:5, 12:11
**mandatory**
3:5
**manner**
22:12
**many**
8:4, 26:15,
26:17, 33:18,
37:7
**mapping**
35:7
**mark**
21:13

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

59

**maryland**
23:6, 31:7
**mask**
37:14
**massive**
22:5, 25:8
**math**
44:17
**matter**
10:21, 35:18
**maybe**
10:15, 17:22,
18:2
**mccolley**
2:3, 4:13,
5:13, 7:14,
9:20, 11:11,
13:8, 13:18,
16:3, 16:16,
18:10, 19:10,
24:20, 24:21,
24:22, 28:22,
33:6, 33:7,
41:4, 41:5,
42:6, 42:8,
42:9, 43:13,
43:15
**mean**
9:2, 13:20,
14:6, 14:7,
14:9, 14:13,
15:16, 40:15
**means**
39:8
**measure**
3:22, 19:22,
21:8, 21:10,
21:14, 22:8,
22:11, 22:13,
22:17, 23:4,
24:9, 25:14,
25:19, 26:7,
26:8
**measures**
21:17, 22:5,
23:9, 25:13,
26:3, 32:21,
38:7

**meddling**
30:21
**media**
20:10, 37:5,
40:13
**meet**
29:14
**meeting**
18:1
**member**
34:19
**members**
2:6, 14:15,
19:18, 24:12,
28:11, 34:19
**mention**
17:3
**mentioned**
12:3, 12:16,
17:2, 25:4,
29:15, 30:11,
30:17, 31:3,
42:21, 46:12
**merit**
40:16, 40:18
**method**
36:13
**michigan**
22:8, 22:11,
25:17
**mid-term**
12:7
**middle**
7:1
**might**
12:4, 16:13,
37:4
**million**
4:5, 4:6, 4:8,
10:16, 12:3,
12:5, 12:7,
20:18, 21:2,
21:7, 22:7,
22:10, 25:17,
25:18, 28:17,
37:19, 37:21,
38:2, 38:3,
38:6, 38:10,

38:11, 46:5,
46:6
**millions**
6:7, 26:2
**mind**
29:13, 30:4
**mistakes**
28:1
**moment**
7:5
**money**
3:1, 4:3, 5:4,
5:21, 8:5, 8:6,
8:7, 8:15, 8:16,
8:18, 9:1, 9:3,
9:6, 10:7,
10:12, 11:6,
12:13, 13:22,
14:3, 14:4,
14:11, 14:19,
15:20, 15:22,
17:6, 17:13,
20:12, 21:1,
22:21, 25:8,
35:8, 37:3,
37:15, 38:22,
39:2, 40:21,
41:16, 41:21,
43:12, 43:20,
44:3, 45:6,
45:21, 46:9
**monies**
7:2
**monitor**
17:4
**months**
6:8
**more**
17:19, 20:18,
21:7, 22:15,
23:7, 27:4,
27:10, 28:5,
36:11, 38:12,
38:16, 46:21
**moreover**
12:6
**morris**
32:13, 32:14,

34:13
**most**
11:16, 15:7,
29:8, 37:15
**motivated**
16:8
**move**
12:18, 13:7,
14:16, 19:12,
19:13
**moved**
12:20
**much**
10:15, 11:9,
19:1, 19:2,
22:15, 28:6,
31:18, 34:13,
42:4, 44:22,
45:2, 46:22
**multiple**
2:19, 35:14
**must**
46:9

**N**

**naaden**
1:22, 48:2,
48:17
**name**
20:2, 28:14,
35:1, 37:10,
38:13, 42:22
**named**
12:1, 35:13
**nation**
36:18
**national**
5:6, 7:17,
15:8, 15:15,
22:18, 28:16,
30:13, 30:16,
30:19, 35:16,
38:10, 44:19,
46:19
**national's**
40:21, 41:21
**nationals**
5:9, 5:22,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    60

9:11, 9:18,
10:6, 14:10,
15:22, 16:21,
17:14, 20:6,
20:13, 21:22,
23:1, 23:12,
29:18, 32:10,
34:22, 38:18,
38:22, 39:4,
45:7
**nature**
44:2
**nearly**
2:14, 20:22
**necessarily**
19:1
**need**
9:12, 18:1,
18:17, 18:18,
35:19
**needs**
19:2, 19:4
**neither**
48:5
**nevada**
23:6, 31:8
**never**
28:2, 33:18,
35:19, 37:4,
37:10, 42:22,
44:7
**nevertheless**
19:4
**new**
3:18, 37:12,
42:13, 45:15,
45:17, 46:17,
46:18
**news**
40:12, 44:12
**newspaper**
35:19
**newspapers**
45:14
**next**
18:6
**nominate**
37:8

**nominee**
8:14
**non**
24:5, 24:7,
41:16
**non-citizen**
21:16, 23:16
**non-citizens**
23:18, 24:7
**non-partisan**
35:3, 39:12,
39:17
**non-profit**
20:3, 33:16,
35:3, 36:14,
36:19, 39:2,
39:12, 41:15
**non-profits**
36:15, 41:22
**north**
31:7
**note**
30:20, 31:1,
34:10
**noting**
13:9
**number**
7:15, 12:4,
25:5, 26:14,
29:18
**numerous**
11:20, 23:5

――――――― O ―――――――

**o**
31:1
**obviously**
8:13
**occasions**
11:20
**occur**
14:19
**occurring**
34:10
**offer**
17:19
**office**
17:20, 23:2,

30:14
**oh**
33:3, 40:12,
42:7, 43:19,
46:14
**ohio**
1:8, 2:11, 4:2,
4:5, 5:4, 5:17,
5:20, 6:4, 6:8,
6:21, 7:10,
9:14, 11:8,
11:13, 12:9,
12:17, 14:3,
14:11, 17:1,
17:14, 19:20,
21:13, 21:19,
22:6, 22:9,
23:4, 23:10,
23:14, 24:11,
25:4, 27:21,
29:10, 30:3,
30:12, 30:22,
31:14, 32:15,
38:4, 38:7,
38:12, 38:15,
38:17, 38:22,
39:5, 40:22,
44:20, 45:22,
48:19
**ohio's**
3:22, 4:2, 5:4,
5:6, 9:11,
12:15, 22:17,
23:20, 29:1,
29:13, 29:20,
30:3, 30:15,
31:2, 32:11,
32:21
**ohioan**
29:4
**ohioans**
6:14, 16:10,
21:5, 22:2,
23:16, 28:18,
29:19, 34:6,
38:7
**okay**
8:17, 13:6,

16:6, 16:7,
40:4, 40:7
**oklahoma**
31:9
**one**
9:2, 9:3,
12:11, 16:8,
18:8, 20:15,
21:9, 22:14,
22:19, 25:12,
25:18, 25:19,
26:5, 26:8,
27:3, 27:6,
27:10, 29:7,
29:18, 37:22,
38:7, 43:4,
46:7, 46:11
**ones**
14:16, 15:11,
17:10
**ongoing**
3:17
**only**
3:6, 25:19,
45:13
**opaque**
37:14, 37:15
**open**
18:14, 25:6
**openly**
42:21
**operations**
28:2
**opinion**
5:20, 6:6
**opportunity**
4:10, 19:19,
24:15, 27:6,
28:12, 31:16,
34:20
**opposed**
16:18, 16:20
**orders**
3:7
**organization**
12:14, 23:11,
28:17, 35:3,
39:13, 40:17,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    61

43:21, 44:11,
44:18
**organizations**
7:19, 7:22,
26:16, 33:17,
37:3, 37:14,
37:16, 39:3,
42:12, 42:15,
43:18, 45:16
**original**
16:5
**other**
6:21, 14:3,
15:4, 16:9,
23:5, 25:4,
25:5, 31:4,
31:9, 44:2
**otherwise**
48:7
**out**
5:15, 10:5,
11:6, 13:11,
20:18, 41:16
**outcome**
22:16, 48:7
**outlets**
35:14, 44:12
**outside**
18:12, 30:3,
35:8
**over**
4:5, 4:6, 4:19,
6:8, 10:16,
12:3, 12:12,
19:5, 22:7,
22:16, 37:21,
38:6, 38:11
**overnight**
25:9
**own**
12:12, 36:4,
37:11, 41:22,
46:20

**P**

**pac**
3:15, 3:16,
3:18

**pact**
38:4
**page**
48:10
**pages**
1:21, 48:8
**paid**
20:12
**painful**
29:8
**pales**
36:13
**participate**
5:9, 9:19
**participating**
2:10, 2:12,
6:16, 9:11
**participation**
30:18
**particular**
11:14
**parties**
4:20, 9:15,
48:6
**partisan**
24:10
**party**
29:10
**passed**
13:10, 27:21
**passing**
31:17
**passionate**
34:7, 34:8
**past**
23:2
**pay**
3:1, 18:20
**penalties**
18:17
**penalty**
48:3
**pending**
2:20
**people**
6:15, 6:18,
11:2, 17:3,
17:4, 17:9,

45:12
**percent**
2:15, 23:7,
23:11, 23:13,
23:16
**perfected**
14:13, 14:16,
17:10
**perjury**
48:3
**person**
9:2, 38:7
**personal**
21:12, 36:3,
36:5
**ph**
14:17, 21:13
**phase**
3:9, 19:12
**philanthropic**
33:17
**philip**
32:13, 32:14,
34:12
**picked**
15:9, 15:11
**pipeline**
38:17
**place**
2:20, 6:1,
19:5, 19:7,
21:21
**playing**
15:17
**pockets**
38:15
**podium**
19:15, 28:9,
34:16
**point**
10:5, 18:16,
27:18, 34:9,
46:12
**pointed**
5:15
**police**
37:7
**policy**
26:16, 35:9,

39:5
**political**
3:15, 9:16,
18:12, 20:15,
21:1, 21:3,
24:8, 28:19,
30:13, 30:19,
30:21, 35:5,
36:12, 36:20,
37:13, 40:8
**politically**
16:8, 40:11
**politicians**
35:4, 38:9,
38:13
**politico**
20:17, 38:1
**politics**
7:10, 8:5, 8:6,
14:20, 20:13,
35:8, 35:13,
35:15, 36:3,
36:6, 36:14,
37:1, 38:17,
43:2, 46:8
**poll**
23:10
**polling**
9:17
**position**
27:17
**potentially**
26:7
**poured**
40:22, 46:5
**pouring**
6:7, 41:21
**powerhouse**
21:3
**practice**
11:17, 16:11
**precisely**
22:6
**preferred**
35:22, 36:13
**presented**
31:10
**presidential**
8:14, 10:2

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    62

press
11:19, 35:14,
35:15, 37:18,
44:13, 45:13
pressed
44:9, 44:12
presumptive
8:14
prevailed
9:5, 9:7
prevents
2:9
previous
32:3
previously
31:3
price
18:20
primarily
11:15, 11:21
principle
20:4
privacy
24:3, 26:16,
27:2
probability
10:11, 10:18
problem
30:22, 44:21,
46:2
proceed
16:2, 19:11,
27:11, 32:5,
32:17, 42:18
process
4:18, 10:22,
21:11, 22:12,
24:9, 27:8,
30:10, 30:15,
33:13, 35:21
profits
41:17
progressive
36:6, 37:8
progressives
15:14
prohibit
2:11, 2:20,

19:21, 23:8,
38:21
prohibited
22:22, 36:8
prohibiting
29:18, 32:10
prohibition
6:1
prohibits
5:21, 12:17,
34:21
project
20:3
proof
44:8
proponent
19:14, 19:15
proposal
22:8, 25:17
proposed
13:3, 21:17,
38:21
protect
4:2, 26:16,
27:22, 31:11
protected
20:9
protecting
30:3, 30:6
protections
24:3, 24:10
prove
44:15
provide
2:8, 4:10, 5:11
public
20:21, 23:17,
35:2, 45:11
publicizing
35:8
publicly
41:14
pull
11:13
pump
36:19
pumped
20:22

pumping
14:10
purpose
45:21
purposely
45:11
push
31:2
put
6:18, 16:7,
19:7, 41:10

Q

qualify
7:16
quarter
44:19
question
4:20, 8:11,
9:12, 13:19,
31:3, 32:2,
32:8, 33:1,
33:8, 33:19
questioned
45:3
questioning
33:10
questions
4:12, 4:14,
4:17, 11:5,
24:16, 24:19,
28:5, 31:21,
39:9, 46:21
quiet
8:1
quite
32:7, 44:3
quote
20:17, 20:19,
29:7, 29:9,
35:19, 35:21,
36:1, 36:5,
36:22, 37:7,
37:10, 37:13,
37:19, 37:20
quoted
42:12
quotes
39:13

R

races
2:13, 5:10,
17:14, 23:1
raised
31:3, 39:20
ranking
34:18
read
39:15, 40:13
ready
19:1
reaffirm
34:10
real
35:15
really
8:9, 9:12,
10:9, 24:17,
27:8, 31:19,
39:7, 41:9
realm
19:6
reason
32:19
reasonable
7:21, 24:6
reasons
29:14
rebuttal
42:7
receive
5:21
received
4:6, 12:2,
37:19, 38:10,
48:9
receiving
44:18
recently
5:3
recipient
22:20
recipients
37:15
reclusive
37:3, 45:19

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                              63

recognize
41:4, 45:1
recognizes
13:16, 33:5
record
34:12
recordings
48:4
redistricting
21:11, 22:11,
22:13, 25:19,
26:1, 26:7
referred
45:14
reform
3:21
refused
44:14, 45:17,
46:16
regarding
48:10
regardless
16:4, 16:5,
16:17, 17:12
registered
23:12
reineke
2:6
reinterpret
36:5
related
33:1, 48:5
released
46:4
relying
10:9
remain
45:19
remarks
16:12
removed
43:4
reopen
21:15
repay
3:5
repayment
3:6

report
27:18
reported
11:19, 11:20,
20:17, 38:1
reporter
11:19
representatives
13:12
reproductive
38:8
republic
21:20, 29:4
republican
17:13, 29:8,
39:14
republican-led
15:11
republicans
2:18, 9:17,
16:19, 39:22
requirement
3:6, 3:18
requirements
3:4, 3:11,
3:16, 3:17
requires
3:6
requiring
2:22
research
12:12, 41:7
reshape
22:11
resources
35:7
respect
6:12, 27:2
respond
9:21, 10:9
response
33:9, 34:1,
43:17, 44:10
restoring
35:4
result
10:19
results
4:20

retains
2:22
return
19:20
returns
7:19, 40:21,
41:15, 42:1
reveal
19:1
review
29:16
reviewing
11:13
rewrite
21:14, 21:18
rid
9:6
right
16:19, 17:9,
18:13, 19:4,
20:5, 20:8,
26:17, 31:1,
38:9, 38:11,
39:20, 44:7
rightly
30:17
rights
22:9, 37:7,
38:8
rise
8:5, 8:6
rob
33:5, 41:4
robust
39:8
rules
21:19
rulli
2:2, 2:5, 4:15,
6:22, 7:9, 8:9,
11:4, 12:18,
13:6, 13:15,
16:2, 17:18,
18:9, 19:8,
19:11, 24:17,
24:21, 26:10,
26:20, 27:11,
28:5, 28:8,

31:19, 32:5,
32:17, 33:5,
34:11, 34:15,
34:18, 39:7,
40:6, 41:3,
42:4, 42:7,
42:10, 42:18,
43:14, 44:22,
46:10, 46:21
running
30:13
russia
8:15, 20:11
_____
            S
s
36:10
safeguarding
23:20
safeguards
23:3
said
7:7, 15:4,
16:7, 26:5,
27:2, 27:5,
35:18, 44:18
same
6:1, 15:6,
24:9, 32:2,
38:9, 43:21,
44:18
saudi
8:15
say
5:14, 7:16,
9:2, 9:4, 9:22,
16:4, 16:16,
17:8, 17:9,
18:14
saying
11:18
says
5:20, 15:5
sb
23:19
second
11:11, 19:12,
21:14, 30:11

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

64

secretary
3:7, 11:13
secure
20:5, 27:14,
27:19
securing
31:15
security
29:5
see
12:13, 18:10,
42:2, 44:21
seeing
25:2, 25:5,
46:1, 46:21
seek
29:12
seeks
6:3
seemingly
25:8, 36:10
seen
25:15, 43:8
segregated
44:15
sen
2:2, 2:5, 4:13,
4:15, 5:2, 5:13,
6:22, 7:8, 7:9,
8:9, 8:12, 9:9,
9:20, 11:4,
11:11, 12:18,
13:1, 13:6,
13:8, 13:15,
13:17, 16:2,
16:3, 16:15,
16:16, 17:18,
18:5, 18:9,
18:10, 19:8,
19:10, 19:11,
24:17, 24:20,
24:21, 24:22,
26:10, 26:12,
26:19, 26:20,
26:21, 27:10,
27:11, 27:12,
28:4, 28:5,
28:8, 31:19,

32:1, 32:5,
32:9, 32:17,
33:3, 33:5,
33:7, 34:11,
34:15, 39:7,
39:11, 40:4,
40:6, 40:7,
40:12, 41:1,
41:3, 41:5,
42:4, 42:6,
42:7, 42:9,
42:18, 43:13,
43:14, 43:15,
44:22, 45:2,
46:10, 46:11,
46:21
senate
1:8, 2:3, 2:6,
2:8, 3:7, 3:13,
4:8, 4:11,
19:21, 24:13,
28:13, 28:21,
29:15, 30:14,
31:17, 34:21,
39:3, 47:2,
48:19
senator
2:3, 5:15,
8:11, 9:9, 12:3,
13:16, 13:18,
16:14, 18:3,
18:11, 18:16,
24:21, 25:10,
26:11, 27:1,
27:16, 28:22,
30:12, 31:22,
32:6, 32:18,
33:5, 34:3,
34:9, 39:10,
41:4, 41:13,
42:8, 42:20,
44:6, 45:1,
45:3, 45:9,
46:10, 46:15
senators
4:22, 17:20
separate
44:8, 44:9

separated
43:20
set
13:20, 13:21,
14:1, 33:17
setting
14:21, 16:13,
45:20
seven
7:4
several
13:3, 25:19,
29:14
sh
32:9
shape
28:3
share
39:21, 42:2
shell
45:5, 45:19
shift
43:8
shortage
33:14
should
6:14, 6:17,
9:11, 9:18,
10:20, 13:14,
16:9, 16:18,
16:20, 16:21,
17:15, 23:12,
23:18, 24:10,
24:11, 27:6,
29:4, 33:19,
35:9, 38:18,
38:19
shouldn't
14:10
showing
40:21, 46:4
shown
26:1, 44:8
sic
11:19, 40:17
side
9:4, 9:7, 11:2,
14:13, 14:14,

14:16, 14:21,
16:9, 16:17
sides
33:16
signature
3:9, 3:10
signature-9nqmi
48:14
signatures
38:15
significant
35:12
similar
2:19, 5:15,
13:3, 22:9,
22:12, 23:3,
23:5, 31:10
simply
2:13, 32:20
since
4:7, 5:16,
5:18, 12:5,
14:17, 35:6,
37:20, 43:6
single
22:17, 26:6,
27:3
sister
23:10, 36:4,
36:21
sixteen
4:4, 6:6,
11:15, 11:21,
12:2, 12:6,
13:22, 21:3,
21:5, 21:7,
21:8, 22:4,
22:7, 25:12,
25:15, 25:22,
26:1, 27:5,
37:17, 37:18,
38:3, 38:5,
38:16, 41:17,
41:20
sixty
37:21
snead
19:15, 19:18,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    65

20:2, 25:1,
25:10, 26:13,
26:14, 27:1,
27:16, 28:7,
33:9
**so-called**
22:9
**sole**
45:20
**some**
6:19, 7:19,
9:3, 11:12,
18:22, 23:15,
34:6, 41:9,
42:15, 43:17,
44:4
**somebody**
8:18, 16:6,
19:3
**somehow**
43:20, 43:22
**someone**
13:20
**something**
6:3, 6:11,
7:11, 8:3, 10:4,
11:1, 12:10,
15:18, 15:19,
16:6, 16:8,
16:9, 18:3,
18:17
**sometimes**
42:15
**soon**
20:20
**sophisticated**
18:19, 19:5
**sorry**
42:7, 46:14
**sounds**
16:12, 37:2,
43:3
**source**
15:7, 17:7,
35:12, 42:17
**sourced**
40:19
**south**
31:8

**speak**
17:11, 21:12,
45:12
**speaking**
37:5
**special**
22:18
**specific**
33:1
**specifically**
32:22
**specifies**
3:8
**spectrum**
9:16
**spend**
8:16, 10:7,
26:2
**spending**
13:13, 17:13,
21:3, 22:5,
22:14, 23:9,
38:12, 40:9,
40:11, 44:20
**spends**
45:22
**spent**
4:5, 12:6,
12:8, 20:10,
21:7, 22:7,
22:10, 38:11,
41:19, 44:1
**spiritual**
36:1
**sponsor**
2:8, 4:11
**staggering**
37:2, 46:8
**stand**
8:13, 13:14,
17:15
**standpoint**
10:3
**start**
4:16
**started**
7:22
**state**
3:7, 4:9, 6:8,

6:21, 10:3,
12:22, 13:21,
14:2, 16:22,
19:20, 20:1,
21:8, 22:3,
22:13, 22:14,
22:22, 23:2,
23:17, 25:14,
28:15, 30:12,
31:11, 33:15,
34:22
**state's**
11:14, 21:15
**stated**
10:20
**states**
2:19, 6:17,
6:21, 12:19,
13:3, 13:12,
14:20, 15:8,
20:16, 23:5,
25:4, 25:5,
25:13, 25:20,
25:21, 26:3,
30:22, 31:4,
31:5, 31:6,
31:9, 34:13
**status**
13:5
**statute**
19:3
**statutory**
25:7
**step**
43:4, 43:11
**stepping**
18:12
**steps**
23:5
**steven**
40:2
**still**
10:13, 40:7,
43:9
**stop**
6:6
**stopped**
38:18, 43:7,

46:9
**straight**
4:13
**strengthening**
31:15
**strengthens**
3:4
**stretch**
25:16
**strides**
23:19, 31:15
**strikingly**
22:8
**strong**
10:11, 10:17,
12:14
**strongest**
2:17
**strongly**
9:17
**studying**
7:18
**stuff**
12:11, 14:14,
17:3, 17:4,
17:5, 44:2
**subject**
3:10, 10:4
**sudden**
9:5
**suing**
21:13
**sum**
21:2
**sums**
22:5, 25:15
**support**
2:17, 24:1,
24:4, 28:13,
31:17, 34:21,
39:3
**supporting**
18:7, 40:22,
48:4
**supports**
28:21
**supreme**
21:13

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024

66

sure
43:11, 43:22
surprising
7:9
surprisingly
7:6
surrounding
10:1
sutherland
20:21, 34:16,
34:18, 35:1,
39:18, 40:10,
40:14, 41:12,
42:19, 44:5,
45:8, 46:14
swiss
4:7, 5:3, 7:8,
11:8, 11:22,
12:5, 35:13,
35:19, 45:14
switzerland
7:6, 7:9
system
29:5, 36:20

**T**

table
7:11
take
24:16, 31:11,
35:17, 41:16,
43:10, 46:3
taken
23:5, 31:4
taking
14:4
talk
8:21, 11:14,
18:2, 18:3,
27:9, 42:11,
43:16, 44:2
talking
8:3, 10:16,
11:10, 33:11,
33:21
tanks
8:22
tape-recording
48:9

tax
7:19, 40:21,
41:14, 42:1,
46:4
taylor
40:3
tell
5:2, 7:20,
17:5, 27:3,
32:12, 39:13,
45:17, 46:18
tens
6:7, 26:2
testify
19:20, 28:13,
34:20
testifying
13:2
testimonies
4:16
testimony
1:7, 2:8, 4:11,
13:4, 19:9,
19:14, 19:16,
24:18, 25:3,
28:6, 28:9,
31:20, 34:11,
34:16, 39:7,
42:5, 45:3,
46:22
texas
46:1
thank
2:5, 2:7, 4:10,
4:15, 8:12,
13:17, 16:3,
19:8, 19:10,
19:18, 24:22,
26:10, 26:12,
27:12, 28:5,
28:7, 28:12,
28:22, 31:18,
32:1, 33:3,
33:4, 33:7,
34:1, 34:4,
34:13, 34:14,
34:19, 39:6,
39:11, 40:4,

41:1, 41:3,
41:5, 41:12,
42:4, 42:9,
42:19, 44:5,
44:22, 45:2,
45:8, 46:22
therefore
2:13, 36:8
thing
18:13
thing's
32:10
things
14:6, 14:19,
14:22, 16:14,
27:20
think
4:18, 6:11,
6:14, 8:22,
9:15, 10:20,
17:15, 17:16,
23:12, 24:15,
27:4, 32:19,
34:5, 34:12
third-party
8:16
thirdly
30:20
thirty
4:4, 6:6,
11:15, 11:21,
12:2, 12:6,
13:22, 21:4,
21:5, 21:7,
21:8, 22:4,
22:7, 25:12,
25:15, 25:22,
26:1, 27:5,
37:17, 37:19,
37:21, 38:3,
38:6, 38:16,
41:18, 41:20
thought
4:18, 5:1
thousands
28:18
threats
20:10, 29:9

three
3:2, 4:5, 12:9,
14:5, 29:16,
38:6
through
11:13, 14:5,
37:1, 37:13,
39:2, 41:6, 44:1
throughout
21:1
throwing
5:4
thrown
12:14
ties
12:15, 38:14
time
7:11, 14:14,
18:8, 20:10,
23:3, 31:19,
32:13, 44:14
times
3:2, 15:13,
33:22, 37:12,
42:13, 45:15,
45:17, 46:17,
46:18
today
19:21, 24:18,
27:9, 31:20,
32:20, 33:14,
39:8, 40:20
told
35:18
top
15:21, 16:1,
22:18, 22:20,
30:4, 32:12
torrent
20:12
total
25:22, 38:2,
46:6
towards
23:19, 24:14
tr
30:8
trace
7:3, 7:5

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                                67

**trafficking**
28:2
**transaction**
44:1
**transactions**
45:4
**transcribed**
1:22
**transcriber**
48:1, 48:2
**transcript**
1:6
**transcription**
48:9
**transparent**
30:7
**treasurer**
3:19
**trend**
12:12
**troubling**
8:7
**true**
9:10, 22:1,
40:13, 48:8
**trust**
10:21, 20:21,
35:2, 35:4,
43:19, 44:16
**trying**
6:18, 8:7
**turn**
8:10
**turned**
38:11
**turning**
44:20
**turns**
45:22
**two**
4:22, 10:17,
12:13, 28:17,
32:12, 36:15,
36:19, 41:15,
41:22
**type**
11:17, 12:21,
13:13, 16:11,

25:7
**types**
7:21, 8:2,
16:13
**typically**
43:17

---
**U**
---
**ultimate**
37:15, 42:16,
43:1
**ultimately**
18:16
**unanimously**
13:11
**uncovering**
35:7
**under**
10:6, 29:13,
48:3
**understand**
18:9, 18:19
**unduly**
6:20, 11:1
**unfortunately**
35:11
**union**
12:20
**united**
13:12, 14:19,
17:15, 20:16,
25:13, 34:13,
38:8
**unites**
6:17
**universally**
6:15
**universities**
7:3
**upheld**
27:21
**urge**
31:17, 39:3
**uses**
36:15

---
**V**
---
**vallejo**
14:17

**van**
40:3
**variety**
41:17
**vehicles**
36:19
**verbatim**
16:7
**verifiable**
12:10
**verify**
13:5
**vice**
2:5
**video-recorded**
1:6
**view**
17:3
**violator**
11:16
**virginia**
39:19, 45:22
**voice**
30:9, 32:11
**voices**
29:20, 29:21
**volume**
8:1
**vote**
17:22, 20:5,
24:7, 28:1, 38:7
**voted**
23:16
**voter**
15:21, 24:11,
27:20
**voters**
2:15, 6:9,
6:12, 10:22,
17:16, 22:9,
23:7, 23:12
**voting**
21:16, 23:16,
27:13, 28:3
**vulnerable**
28:1

---
**W**
---
**want**
6:15, 9:13,

15:10, 15:12,
17:16, 18:7,
20:6, 27:14,
45:11
**wanted**
46:11
**wanting**
16:10
**wants**
13:20, 43:3,
45:19
**washington**
23:6, 31:8
**washington's**
29:6
**watkins**
40:2
**way**
6:19, 10:13,
10:18, 15:6,
23:21, 24:13,
27:7, 28:3
**ways**
15:2, 44:4
**we'll**
4:16, 9:4,
18:13
**we're**
7:14, 8:2,
10:16, 13:6,
15:13, 17:8,
18:14, 18:22,
19:11, 19:12,
19:13, 28:19,
33:11, 33:21,
39:8
**we've**
8:4, 43:8,
43:21
**web**
17:6, 45:4
**website**
11:14, 27:18
**week**
20:17, 37:22
**weekends**
16:15
**welcome**
2:4, 19:15,

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                                    68

19:17, 28:10,
34:17
**well-funded**
38:5
**went**
25:17, 25:18
**whatever**
14:18, 19:7
**wherever**
6:9
**whether**
16:18, 40:18,
45:18
**whichever's**
3:3
**whole**
10:1
**whopping**
38:3
**willing**
26:2, 26:21
**willingly**
17:19
**wise**
29:10
**within**
7:12, 12:21
**without**
10:8, 10:12,
23:21, 43:2
**witness**
32:3
**witnesses**
7:15, 13:1
**wonder**
5:5
**wondering**
15:3
**word**
35:17
**words**
37:11, 41:22,
46:20
**work**
16:15, 18:13,
19:4, 44:4
**working**
3:14, 18:22,

37:7
**works**
18:17, 39:14
**worth**
13:8
**wouldn't**
9:8, 17:8
**written**
36:4
**wrong**
5:8
**wyss**
4:7, 12:1,
12:6, 20:14,
20:15, 20:18,
20:22, 21:12,
27:5, 35:13,
35:16, 35:18,
36:7, 36:15,
36:17, 37:6,
37:19, 37:20,
38:2, 45:10,
46:12
**wyss's**
36:12, 36:21,
37:13

**Y**

**yeah**
41:12, 44:5,
45:8
**year**
9:4, 9:7, 21:6,
22:6, 23:7,
26:7, 31:9,
38:5, 46:6
**year's**
22:16
**years**
4:19, 7:4,
7:13, 7:19,
30:12, 40:21
**yep**
43:15
**york**
37:12, 45:15,
45:17, 46:17,

46:18

**$**

**$10**
22:7, 25:17
**$10,000**
3:2
**$100,000**
36:11
**$13**
4:5, 10:16
**$13,226,600**
12:8
**$14**
21:7
**$196**
12:7
**$220**
4:6, 4:8, 12:3
**$240**
12:4
**$243**
38:3
**$35**
38:1
**$6**
22:10, 25:18
**$60**
46:5
**$63**
20:18
**$72**
46:6

**1**

**10**
7:12, 15:21,
40:20
**12**
6:8
**14**
27:18, 38:6,
38:11
**1796**
29:6
**1972**
5:16
**1999**
5:18

**2**

**2**
47:2, 48:19
**20**
4:19, 7:12
**2011**
35:18
**2016**
4:7, 12:5,
37:20
**2018**
22:11, 25:18
**2020**
35:6
**2021**
5:20
**2022**
12:6, 20:19,
22:7, 23:15,
25:18, 46:4
**2023**
4:4, 12:9
**2024**
1:9, 46:2,
48:16, 48:20
**208**
37:19, 37:21
**21**
1:9, 48:20
**215**
2:3, 2:8, 3:7,
3:13, 4:8, 4:11,
19:21, 23:19,
28:13, 28:21,
29:15, 30:14,
31:17, 34:21,
39:3, 47:2
**243**
21:2
**250**
38:10

**3**

**30**
4:19, 16:1

**4**

**47**
48:8

Transcript of Testimony of Ohio Senate General Government Committee
Conducted on February 21, 2024                         69

**48**
1:21

                          **5**
**50**
15:8
**501**
4:3, 33:14,
33:15, 36:16,
36:17, 39:19,
40:9, 45:20,
45:21
**540606**
1:20, 48:19

                          **6**
**68**
23:13

                          **7**
**77**
23:15

                          **8**
**80**
2:15
**85**
23:11
**86**
23:7

                          **9**
**90**
36:10

# Exhibit H



# Transcript of Testimony of the Ohio Senate

**Date:** May 8, 2024

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

1

2

3

4

5

6              TRANSCRIPT OF VIDEO-RECORDED

7                  TESTIMONY OF THE

8                    OHIO SENATE

9                    MAY 8, 2024

10

11

12

13

14

15

16

17

18

19

20   Job No.: 540606

21   Pages: 1 - 26

22   Transcribed by: Christian Naaden

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                               2

1               P R O C E E D I N G S

2          SEN. HUFFMAN:  -- the motion is agreed to.

3     Bills for third consideration.

4          CLERK:  Substitute House Bill Number 114,

5     Representative Humphrey, Sykes, and others, to amend

6     section of the revised code to modify the campaign

7     finance law and to delay the deadline for the major

8     political party [inaudible] presidential advice,

9     president of candidates for the security of state for

10    the 2024 general election.

11         SEN. HUFFMAN:  So the question is shall the

12    bill pass? The chair recognizes Senator McColley.

13         SEN. MCCOLLEY:  Thank you, Mr. President. Um,

14    I stand in favor of House Bill 2 -- 114. Let's go

15    through, I suppose the -- the underlying bill that came

16    over and then some amendments that were made in

17    committee.

18         The original bill dealt with the allowance of

19    using campaign funds to pay for certain childcare

20    expenses that are incidental to the performance of

21    one's duty in their elected office.

22         So it would allow them to use those funds for

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                   3

1    any carrying out of their official duties and would, it

2    incidentally would create an opportunity for parents of

3    young children or single parents to be able to have

4    more ability to run for office.

5            And also, the amendment we adapted earlier

6    today tighten the language to ensure these funds are

7    used appropriately and not for extravagant expenditures

8    including ensuring the cost must be reasonable, that

9    also that the care is rendered in state and that the

10   child actually needs care based on the age, and that

11   the expenditure are made only by the primary caregiver.

12           There was two other amendments that were

13   selected. And both of these amendments that we added

14   earlier today have to do with very important issues

15   that we need to take care of in the very short term

16   because they're going to impact the upcoming election.

17           One of course, is the amendment that would

18   need to be made or the change in law, temporary law

19   that would need to be made in light of the Democrat

20   National Committee deciding that they were going to

21   have their convention after the filing deadline in the

22   State of Ohio.

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                    4

1            I can speak for myself, as much as I already

2    know who I am going to vote for, and it will not be the

3    nominee coming out of that convention. Nevertheless, I

4    think Ohio ones deserve to have a choice when they go

5    to the ballot, and states should not be using lawfare

6    or otherwise to try and take their political enemies

7    off the ballot.

8            And so, that's one thing that we believe I

9    guess should be fixed on a temporary basis. We

10   shouldn't be making a permanent law change in this

11   circumstance because there are a lot of potential

12   consequences that have to do with the calendar leading

13   up to an election that Secretary LaRose has been pretty

14   consistent about in dealing with many of these tight

15   timeframes as it comes to conducting election.

16           So, this would allow for in essence the date

17   that would have been the -- the candidate would have

18   been, needed to have been certified by, would have been

19   August 7th. We're changing that to August 23rd, which

20   is 74 days before the election.

21           So this should allow for the Democratic

22   National Committee to provide the nominee so Ohioans

1    can have that choice on the ballot when they go to

2    vote.

3            We also dealt with another issue that as I

4    mentioned before, is a clear and present threat to the

5    upcoming election.

6            We have a clear and present threat to the

7    upcoming election in the form foreign election

8    interference that is going on right now in the State of

9    Ohio, right underneath our very noses.

10           We know and we've talked about this before,

11   Senate Vote 215, we already voted it out, but we're

12   adding provisions that are similar to that into this

13   bill because we know for a fact that organizations

14   linked to foreign nationals contributed almost $14

15   million in the State of Ohio in the last year alone as

16   it related to the elections that occurred in August and

17   November.

18           We know there is already an elections

19   commission opinion that was issued in 2021 that said

20   this was prohibited. They did it anyway. And so, we

21   know that those same entities are also involved in this

22   upcoming election, thereby, having foreign national

1    interference into our elections.

2            We should be on a bipartisan basis against

3    this. Both sides over the course of the very short

4    recent history, have also bemoaned the fact that there

5    is foreign interference in our elections. We should be

6    on a bipartisan basis against this.

7            So what would the bill do and how is it

8    different than Senate Bill 215 that we already passed

9    out of this chamber?

10           So Senate Bill 215 as we passed it out, we

11   sought to increase semi-accountability measures that

12   would be in the bill through some donor disclosure

13   requirements that would have been in that bill.

14           We found out later from talking with some --

15   some experts on campaign finance law and first

16   amendment law, who said you're likely to go awry of

17   some supreme court precedence, United States Court

18   precedence, as it could -- as it pertains to people

19   being able to give to these types of campaigns and the

20   disclosure requirement.

21           So after talking with them we've come up with

22   some changes that I'll summarize. So it would prohibit

1   foreign nationals from making these types of

2   contributions directly or indirectly.

3          And it goes into a greater definition of what

4   directly or indirectly would be as well. But we also

5   added a mental copiability provision to this knowingly

6   because one could easily see how one might unknowingly

7   unwittingly to themselves, almost one might argue,

8   accidentally take money from a foreign national even if

9   it was a small amount and accidentally trigger the

10  statute.

11         Those aren't the types of people we're after.

12  The types of people we're after are those who actually

13  actively conspire and set up a method by which to

14  accomplish these goals.

15         And quite frankly, the dollar amounts that are

16  really the biggest danger right now where the foreign

17  election and their appearance is coming from, are so

18  significant that anybody would know where this money

19  was coming from. So let's be clear about that.

20         We also would require political entities to

21  certify on their campaign filings that they have not

22  and will not knowingly accept prohibited con- --

1   contributions under the language, under the penalty of

2   election falsification.

3          Again, adding the knowingly portion for the

4   mens rea a part of that. Clarifies that the term

5   independent expenditure includes expenditures

6   advocating for the support or opposition to a ballot

7   issue or the circulation of the ballot issue petitions.

8   Specifies that committees in charge of a ballot issue

9   must register as a pack.

10          Now, you may think oh, packs are these big

11  dauting organizations. Under the state statute they are

12  much simpler organizations. It's in essence you

13  registering on a very simple registration form with the

14  secretary of state that you are receiving money for

15  against an issue. And then you would have to certify

16  that you're not going to take the inappropriate and

17  prohibited contributions under the language.

18          And you would have to take that register if

19  you were going to make expenditures or against a ballot

20  initiative. We require a person who violates foreign

21  national contribution prohibition do not only return

22  the contribution but pay the maximum fine for doing so.

```
1            And so, what we have seen over the past -- in

2   the past regarding some of these provisions is that the

3   Ohio Elections Commission, even though they may make a

4   finding that this was violated, oftentimes are giving a

5   slap on the wrist to the violators.

6            When we're talking about the kind of money

7   that's coming in, a slap on the wrist is the cost of

8   doing business to many of these people, and they're

9   going to continue to do it if we don't have some real

10  accountability.

11           And it also would move jurisdiction for

12  prosecution for these types of cases to either the

13  county in which the violation occurred, because let's

14  be honest, these violations could occur all over the

15  state or the attorney general.

16           Current prosecution authority is solely with

17  the Franklin County prosecutor. Now, you have to ask

18  yourself if a violation occurred up in Lucas County,

19  why would the Franklin County prosecutor with their

20  bandwidth and -- and with the -- with many of the --

21  the restraints that they have on their own office and

22  resources, why would they be all that thrilled about
```

1    prosecuting a case all the way up in northwest Ohio.

2    The chances are they would not.

3            And so, this allows for the prosecution to

4    occur locally where it occurred or in the case as well

5    of a foreign national who oftentimes isn't going to

6    have the same ties to the State of Ohio as a

7    traditional criminal defendant would. It allows for the

8    state itself through the attorney general's office to

9    throw its full resources behind bringing these people

10   to accountability.

11           So those are -- those are the changes that

12   have been made. It's a better bill now than what it was

13   when we passed it out.

14           And it's something that I think again on a

15   bipartisan basis, we should all be able to come

16   together and at the very least acknowledge that we

17   don't want foreign election interference, we don't want

18   tens of millions of dollars coming into the state

19   trying to impact our elections going forward,

20   regardless of what side of the aisle you are on.

21           And quite frankly, as I said before, would

22   that $14 million have made a difference in the

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                    11

1   elections this past August and November?

2           Probably not, but that doesn't make it any

3   more right, and so that's why we need to make the picks

4   [ph]. Thank you, Mr. President. I urge the passage.

5           SEN. HUFFMAN:  Thank you, Senator. The chair

6   recognizes Senator Demora.

7           SEN. DEMORA:  Thank you, Mr. President. First

8   time I even had a group of kids up here today too so

9   I'm sorry about that.

10          If all things are fair, this would have been

11  an easy yes vote, because if all things were fair, this

12  would have been a clean bill with a simple amendment

13  that would have made sure that President Biden got on

14  the ballot.

15          Unfortunately, it is so common with pieces of

16  this legislation coming from this building. This

17  legislation is not fair, it's not bipartisan, it's not

18  how policy should be made. Because of the no-brainer

19  yes vote that was passed out of the house, which would

20  have put this in line with federal regulations between

21  other states, this bill becomes absolutely partisan.

22          House Bill 114 would have made great steps to

1   make sure that no one would be barred from running for

2   office because they have a child. But instead, this sub

3   bill takes a huge chunk out of the original intent of

4   that bill, limiting the spending to only children under

5   the age of 12. I happen to have a nephew who is 21,

6   he's severely mentally disabled.

7          My aunt -- my aunt, excuse, my sister-in-law,

8   I'll get that right, I never know the -- that stuff --

9   my sister-in-law couldn't run for office because my 21

10  years old nephew who is severely mentally disabled

11  can't be by himself, but if she want to run for office

12  this bill now precludes her from using campaign fund if

13  she wanted to because my nephew is over 12. So why was

14  that taken out of the bill?

15         The sponsors didn't know about it, there was

16  no opponents to that provision of the bill when it

17  passed the house. But we did that ruining a lot of what

18  House Bill 114 would do in its own right. The parts of

19  the sub bill that would have fixed the problem where

20  the state [inaudible] early deadline to get on

21  presenter ballot, the earliest in the nation, also

22  should have been an easy thing to vote yes on.

1          I personally believe the legislation should be

2    needed to find a solution to this [inaudible] release I

3    would prefer a permanent solution. I understand the

4    time constraints that this is what the process they

5    wanted but this is not what this bill is either. I

6    mean, this bill is partisan politics at its worst,

7    shoving Senate Bill 215 into a completely unrelated

8    bill after every Democratic voted against 2 -- 215 the

9    first time, is a worst kind of politics.

10         If you remember 215 is a direct attack on

11   direct bureaucracy that the citizens participate it. It

12   would open up small time community organizations a fine

13   of $10,000 if they decide to buy a couple of t-shirts

14   for the friends in support of a local ballot issue or

15   do nothing to actually stop the problem of dark money

16   or politics.

17         And just like Senate Bill 215, this bill will

18   actually give any way to crack down on foreign

19   spending, it's about as powerful as all these

20   resolutions [inaudible] President Biden saying doing

21   this, do that.

22         There's no power in this -- in the bill to

1    actually crack down on anything because we didn't fund

2    actual people to -- at the Elections Commission to --

3    to investigate any of these so-called foreign money

4    donations. So why are we doing this?

5            For one, it sounds good in a primary stump

6    speech and number two, it's because the majority party

7    got drubbed in the elections in August and November

8    about the ballot issues and they have decided they have

9    to do something else to try to fix the elections so

10   their ballot issues can go through without citizens

11   opposing them.

12           [Inaudible] Bill 215 -- 215 got drafted after

13   the embarrassing show into August and November with

14   voters in Ohio showed that they wanted direct democracy

15   and didn't like the wishes of -- of -- of jury

16   [inaudible] legislature.

17           And even though 215 passed this senate on a

18   parti- -- on a completely partisan limits, then in a

19   Republican controlled house, it died. It didn't get a

20   hearing.

21           So, I mean, it's not the Democrats held the

22   bill at the first time, it's fellow Republicans that

1  didn't bring this bill to a vote and decided not to

2  vote on it because they thought it was egregious as

3  well.

4          I offer an amendment to the committee to take

5  all the egregious parts of this bill to make it the

6  original 242 -- the original 214 -- excuse me, 114 and

7  just put the president on the ballot but that bill, of

8  course, my -- my amend was tabled.

9          So if we really believe in full democracy,

10 which would have had a clean bill that allows the

11 president on the ballot without having to make it

12 completely partisan, but of course, we can't do that

13 because we have to put partisanship in this bill so

14 that the majority party can say that, you know, they're

15 cracking down on something that's really not going to

16 crack down on.

17         This is an attempt to attack democracy. It

18 isn't subtle or sneaky, it's completely obvious to

19 anybody paying attention that they put -- they're

20 putting the president on the ballot and a bill that

21 Democrats voted against the first time and vote against

22 today, is just their way of saying that they did really

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                    16

1   good but again, it's not good enough.

2           I really wanted to vote yes on 114. I wanted

3   to vote to make sure President Biden got on the ballot.

4   Those are both partisan -- bi-partisan common-sense

5   solutions to serious problems.

6           But of course, I can't do that because Senate

7   Bill 215 is completing this bill and it's worst that

8   its first iteration and for that I'm going to vote no.

9   Thank you, Mr. President.

10          SEN. HUFFMAN:  Thank you, Senator. Chair

11  recognizes Leader Antonio.

12          SEN. ANTONIO:  Thank you, Mr. President. It's

13  an interesting -- interesting process we have. Couple

14  of years ago, there was a time when both Democrats and

15  Republicans needed to make a temporary fix because of

16  the dates didn't line up with our -- with our

17  respective con- -- conventions, and so there was a

18  legislative fix that went through at the time.

19          It was great and we had our conventions,

20  everybody was on the ballot. Our nominees for both

21  parties, those were on the ballot and we went on from

22  there.

```
 1            This time around, it's just the Democrats. And
 2    so, we have a bill. That's an awesome bill that was
 3    originally a Democratic bill years ago, to -- to pay
 4    for childcare. This is a great idea -- what a great
 5    idea for -- for people who are campaigning, kind of
 6    level the playing field a little on a playing field
 7    that's never level.
 8            And -- and so, how -- what a great idea,
 9    wonderful. It also provides a vehicle. We talked about
10    a lot about vehicles to be able to so some other
11    things.
12            And as my colleague has already pointed out,
13    unfortunately, the things that have been added make the
14    bill that started out as a benign little bill and would
15    have provided also a short-term fix for the ballot so
16    that both candidates would be on the ballot, which is
17    what I think we all always want, to have a fair
18    election, free and fair elections in our country, in
19    our state.
20            We still profess to embrace that. I certainly
21    do, and -- but unfortunately, the language from 215
22    that is worse than it was before, not better as far as
```

1    I am concerned, continues to take away the rights of

2    the people of the State of Ohio when they are

3    attempting a ballot initiative.

4            And, you know, ballot initiatives are

5    difficult. They are difficult to do. They take a lot of

6    work. There's a lot of hoops to jump through to get --

7    to get one on the ballot and then actually to pass it.

8    And it does seem like this is a bit of retribution for

9    the fact that we've already passed a couple ballot

10   initiatives.

11           You see, when the legislature is out of stop

12   with the people of the State of Ohio, the people have

13   recourse, they take things into their own hands through

14   a ballot initiative.

15           And this bill would profess that we're going

16   to protect everyone because we're going to make sure

17   that foreign nationals do not donate, do not contribute

18   funds to those ballot initiatives. Well, it's already

19   illegal for foreign donors to donate to Ohio elections.

20           This is harmful because a handful of

21   politicians are trying to exercise power to harass the

22   people that are trying to forward a ballot initiative,

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                    19

1    and there is a couple that we may be looking at this

2    fall. We need to make sure that we call this what it

3    is.

4            It's an attempt to quash the voice of the

5    voters one more time. And they're on a winning streak

6    right now, because they're not winning here in this

7    chamber or the other chamber, they're winning at the

8    ballot box.

9            They have a message to other voters that

10   apparently has been resonating and that's how these

11   initiatives have passed. And so, what we see once

12   again, is an attempt to silence them, an attempt to

13   make it more difficult, more hoops to jump through

14   under the guise of protecting them from foreign

15   influence and money.

16           I find it ironic that the priority today is to

17   make a difference and make a change for ballot

18   initiatives when this is in our legislature.

19           In this state, we have been the givers, the --

20   the receivers, the ex- -- we have had the experience of

21   one of the largest corruption scandals that the country

22   has ever seen in our state, and yet today we're talking

1  about reforming ballot initiatives rather than

2  reforming political campaigns and campaign giving or

3  individual campaigns.

4          This is not a campaign finance reform piece of

5  legislation what we should be doing, but that's another

6  story. So I, like my colleague who just spoke, will be

7  voting no on this, and I urge a no vote on this.

8          I also urge us to try to figure out how to

9  work together to not quash the voice of the people of

10  the State of Ohio but to actually listen to them for a

11  change. Thank you. Thank you, Mr. --

12          SEN. HUFFMAN:  Thank you, Leader. Chair

13  recognizes Senator Kunze.

14          SEN. KUNZE:  Thank you, Mr. President. I rise

15  today to just say I think we don't always get to pick

16  what comes to the floor that we're going to vote on,

17  but to me I think this is a simple -- a simple yes vote

18  because we're allowing the president of the United

19  States to appear on the ballot in Ohio, and that is

20  right and fair. Thank you.

21          SEN. HUFFMAN:  Thank you, Senator. Chair

22  recognizes Senator McColley.

1           SEN. MCCOLLEY:  Thank you, Mr. President. I

2    just want to address some of the comments that have

3    been made about how somehow, we're suppressing ballot

4    campaigns. Let's keep in mind what -- what they're

5    referring to is the parity that we are creating between

6    ballot campaigns and candidate campaigns.

7           So all of us in this room know that before we

8    even file our petitions, before we may even get a

9    signature on our petitions, we have to file a

10   designation of treasurer and we have to begin disposing

11   our donations and our -- our contributions, and our

12   expenditures. Right? Because that's what the voters

13   want to see. They want to see who is financing these

14   campaigns. It's campaign finance transparency.

15          We are doing the same thing in this bill for

16   ballot campaigns, and that -- we are saying that if you

17   are raising in some cases for these state-wide

18   campaigns millions of dollars before they even start

19   gathering signatures, that we think the voters of the

20   State of Ohio deserve to know that. That's what we're

21   doing here.

22          And so, to say that we're somehow suppressing

1  a multi-million-dollar campaign in certain

2  circumstances, I just think is -- is ridiculous on its

3  base. And so, again, I would urge passage.

4          SEN. HUFFMAN:  Thank you, Senator. The

5  question is, shall the bill pass? Please call the roll.

6  CLERK:  Antonio? Blessing? Brenner?

7  SEN. BRENNER:  Yes.

8  CLERK:  Chavez?

9  SEN. CHAVEZ:  Yes.

10  CLERK:  Cirino?

11  SEN. CIRINO:  Yes.

12  CLERK:  Craig?

13  SEN. CRAIG:  No.

14  CLERK:  Demora?

15  SEN. DEMORA:  No.

16  CLERK:  Dolan?

17  SEN. DOLAN:  Yes.

18  CLERK:  Gavarone?

19  SEN. GAVARONE:  [Inaudible].

20  CLERK:  Hackett? Hicks-Hudson?

21  SEN. HICKS-HUDSON:  No.

22  CLERK:  Steve Hoffman?

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                    23

```
1    SEN. HOFFMAN:  Yes.

2    CLERK:  Ingram?

3    SEN. INGRAM:  No.

4    CLERK:  Johnson?

5    SEN. JOHNSON:  Yes.

6    CLERK:  Kunze?

7    SEN. KUNZE:  Yes.

8    CLERK:  Landis?

9    SEN. LANDIS:  No.

10   CLERK:  Lang?

11   SEN. LANG:  Yes.

12   CLERK:  Manning?

13   SEN. MANNING:  Yes.

14   CLERK:  McColley?

15   SEN. MCCOLLEY:  Yes.

16   CLERK:  O'Brien?

17   SEN. O'BRIEN:  Yes.

18   CLERK:  Reineke?

19   SEN. REINEKE:  Yes.

20   CLERK:  Reynolds?

21   SEN. REYNOLDS:  Yes.

22   CLERK:  Roegner?
```

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                              24

```
1    SEN. ROEGNER:  [Inaudible].

2    CLERK:  Romanchuck? Rully?

3    SEN. RULLY:  No.

4    CLERK:  Schaffer?

5    SEN. SCHAFFER:  Yes.

6    CLERK:  Smith?

7    SEN. SMITH:  No.

8    CLERK:  Sykes?

9    SEN. SYKES:  No.

10   CLERK:  Wilkin?

11   SEN. WILKIN:  Yes.

12   CLERK:  Wilson?

13   SEN. WILSON:  Yes.

14   CLERK:  President Hoffman?

15   SEN. HUFFMAN:  Yes. With 24 yays and seven

16   nays, the bill is passed and titled.

17          CLERK:  A bill to amend sections of the

18   revised code and modify the campaign finance law and to

19   delay the deadline for major political party to certify

20   as the presidential, vice-presidential candidates of

21   the secretary of state for the 2024 general election.

22          SEN. HUFFMAN:  The question is, shall the
```

1    title be agreed to?

2              Any member would like to add their name to the

3    title, ple- -- please do so now. The title is agreed

4    to. Bill for third consideration.

```
1                  CERTIFICATE OF TRANSCRIBER

2         I, Chris Naaden, a transcriber, hereby declare

3    under penalty of perjury that to the best of my ability

4    from the audio recordings and supporting information;

5    and that I am neither counsel for, related to, nor

6    employed by any of the parties to this case and have no

7    interest, financial or otherwise, in its outcome, the

8    above 25 pages contain a full, true and correct

9    transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12         I further declare that I have no interest in

13   the event of the action.

14

15   _____

16   June 6, 2024

17   Chris Naaden

18

19   (540606, Ohio Senate - 5-8-2024)

20

21

22
```

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                        27

| A | | | |
|---|---|---|---|

**A**

**ability**
3:4, 26:3
**able**
3:3, 6:19,
10:15, 17:10
**about**
4:14, 5:10,
7:19, 9:6, 9:22,
11:9, 12:15,
13:19, 14:8,
17:9, 17:10,
20:1, 21:3
**above**
26:8
**absolutely**
11:21
**accept**
7:22
**accidentally**
7:8, 7:9
**accomplish**
7:14
**accountability**
9:10, 10:10
**acknowledge**
10:16
**action**
26:13
**actively**
7:13
**actual**
14:2
**actually**
3:10, 7:12,
13:15, 13:18,
14:1, 18:7,
20:10
**adapted**
3:5
**add**
25:2
**added**
3:13, 7:5,
17:13
**adding**
5:12, 8:3

**address**
21:2
**advice**
2:8
**advocating**
8:6
**after**
3:21, 6:21,
7:11, 7:12,
13:8, 14:12
**again**
8:3, 10:14,
16:1, 19:12,
22:3
**against**
6:2, 6:6, 8:15,
8:19, 13:8,
15:21
**age**
3:10, 12:5
**ago**
16:14, 17:3
**agreed**
2:2, 25:1, 25:3
**aisle**
10:20
**all**
9:14, 9:22,
10:1, 10:15,
11:10, 11:11,
13:19, 15:5,
17:17, 21:7
**allow**
2:22, 4:16,
4:21
**allowance**
2:18
**allowing**
20:18
**allows**
10:3, 10:7,
15:10
**almost**
5:14, 7:7
**alone**
5:15
**already**
4:1, 5:11,

5:18, 6:8,
17:12, 18:9,
18:18
**also**
3:5, 3:9, 5:3,
5:21, 6:4, 7:4,
7:20, 9:11,
12:21, 17:9,
17:15, 20:8
**always**
17:17, 20:15
**amend**
2:5, 15:8,
24:17
**amendment**
3:5, 3:17,
6:16, 11:12,
15:4
**amendments**
2:16, 3:12,
3:13
**amount**
7:9
**amounts**
7:15
**another**
5:3, 20:5
**antonio**
16:11, 16:12,
22:6
**any**
3:1, 11:2,
13:18, 14:3,
25:2, 26:6
**anybody**
7:18, 15:19
**anything**
14:1
**anyway**
5:20
**apparently**
19:10
**appear**
20:19
**appearance**
7:17
**appropriately**
3:7

**aren't**
7:11
**argue**
7:7
**around**
17:1
**attack**
13:10, 15:17
**attempt**
15:17, 19:4,
19:12
**attempting**
18:3
**attention**
15:19
**attorney**
9:15, 10:8
**audio**
26:4
**august**
4:19, 5:16,
11:1, 14:7,
14:13
**aunt**
12:7
**authority**
9:16
**away**
18:1
**awesome**
17:2
**awry**
6:16

**B**

**ballot**
4:5, 4:7, 5:1,
8:6, 8:7, 8:8,
8:19, 11:14,
12:21, 13:14,
14:8, 14:10,
15:7, 15:11,
15:20, 16:3,
16:20, 16:21,
17:15, 17:16,
18:3, 18:4,
18:7, 18:9,
18:14, 18:18,

18:22, 19:8,
19:17, 20:1,
20:19, 21:3,
21:6, 21:16
**bandwidth**
9:20
**barred**
12:1
**base**
22:3
**based**
3:10
**basis**
4:9, 6:2, 6:6,
10:15
**because**
3:16, 4:11,
5:13, 7:6, 9:13,
11:11, 11:18,
12:2, 12:9,
12:13, 14:1,
14:6, 15:2,
15:13, 16:6,
16:15, 18:16,
18:20, 19:6,
20:18, 21:12
**becomes**
11:21
**been**
4:13, 4:17,
4:18, 6:13,
10:12, 11:10,
11:12, 12:22,
17:13, 19:10,
19:19, 21:3
**before**
4:20, 5:4,
5:10, 10:21,
17:22, 21:7,
21:8, 21:18
**begin**
21:10
**behind**
10:9
**being**
6:19
**believe**
4:8, 13:1, 15:9

**bemoaned**
6:4
**benign**
17:14
**best**
26:3
**better**
10:12, 17:22
**between**
11:20, 21:5
**bi-partisan**
16:4
**biden**
11:13, 13:20,
16:3
**big**
8:10
**biggest**
7:16
**bill**
2:4, 2:12,
2:14, 2:15,
2:18, 5:13, 6:7,
6:8, 6:10, 6:12,
6:13, 10:12,
11:12, 11:21,
11:22, 12:3,
12:4, 12:12,
12:14, 12:16,
12:18, 12:19,
13:5, 13:6,
13:7, 13:8,
13:17, 13:22,
14:12, 14:22,
15:1, 15:5,
15:7, 15:10,
15:13, 15:20,
16:7, 17:2,
17:3, 17:14,
18:15, 21:15,
22:5, 24:16,
24:17, 25:4
**bills**
2:3
**bipartisan**
6:2, 6:6,
10:15, 11:17
**bit**
18:8

**blessing**
22:6
**both**
3:13, 6:3,
16:4, 16:14,
16:20, 17:16
**box**
19:8
**brenner**
22:6, 22:7
**bring**
15:1
**bringing**
10:9
**building**
11:16
**bureaucracy**
13:11
**business**
9:8
**buy**
13:13

**C**
**calendar**
4:12
**call**
19:2, 22:5
**came**
2:15
**campaign**
2:6, 2:19,
6:15, 7:21,
12:12, 20:2,
20:4, 21:14,
22:1, 24:18
**campaigning**
17:5
**campaigns**
6:19, 20:2,
20:3, 21:4,
21:6, 21:14,
21:16, 21:18
**can't**
12:11, 15:12,
16:6
**candidate**
4:17, 21:6

**candidates**
2:9, 17:16,
24:20
**caption**
26:10
**care**
3:9, 3:10, 3:15
**caregiver**
3:11
**carrying**
3:1
**case**
10:1, 10:4,
26:6
**cases**
9:12, 21:17
**certain**
2:19, 22:1
**certainly**
17:20
**certificate**
26:1
**certified**
4:18
**certify**
7:21, 8:15,
24:19
**chair**
2:12, 11:5,
16:10, 20:12,
20:21
**chamber**
6:9, 19:7
**chances**
10:2
**change**
3:18, 4:10,
19:17, 20:11
**changes**
6:22, 10:11
**changing**
4:19
**charge**
8:8
**chavez**
22:8, 22:9
**child**
3:10, 12:2

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024

29

childcare
2:19, 17:4
children
3:3, 12:4
choice
4:4, 5:1
chris
26:2, 26:17
christian
1:22
chunk
12:3
circulation
8:7
circumstance
4:11
circumstances
22:2
cirino
22:10, 22:11
citizens
13:11, 14:10
clarifies
8:4
clean
11:12, 15:10
clear
5:4, 5:6, 7:19
clerk
2:4, 22:6,
22:8, 22:10,
22:12, 22:14,
22:16, 22:18,
22:20, 22:22,
23:2, 23:4,
23:6, 23:8,
23:10, 23:12,
23:14, 23:16,
23:18, 23:20,
23:22, 24:2,
24:4, 24:6,
24:8, 24:10,
24:12, 24:14,
24:17
code
2:6, 24:18
colleague
17:12, 20:6

come
6:21, 10:15
comes
4:15, 20:16
coming
4:3, 7:17,
7:19, 9:7,
10:18, 11:16
comments
21:2
commission
5:19, 9:3, 14:2
committee
2:17, 3:20,
4:22, 15:4
committees
8:8
common
11:15
common-sense
16:4
community
13:12
completely
13:7, 14:18,
15:12, 15:18
completing
16:7
con
7:22, 16:17
concerned
18:1
conducting
4:15
consequences
4:12
consideration
2:3, 25:4
consistent
4:14
conspire
7:13
constraints
13:4
contain
26:8
continue
9:9

continues
18:1
contribute
18:17
contributed
5:14
contribution
8:21, 8:22
contributions
7:2, 8:1, 8:17,
21:11
controlled
14:19
convention
3:21, 4:3
conventions
16:17, 16:19
copiability
7:5
correct
26:8
corruption
19:21
cost
3:8, 9:7
could
6:18, 7:6, 9:14
couldn't
12:9
counsel
26:5
country
17:18, 19:21
county
9:13, 9:17,
9:18, 9:19
couple
13:13, 16:13,
18:9, 19:1
course
3:17, 6:3,
15:8, 15:12,
16:6
court
6:17
crack
13:18, 14:1,
15:16

cracking
15:15
craig
22:12, 22:13
create
3:2
creating
21:5
criminal
10:7
current
9:16

D

danger
7:16
dark
13:15
date
4:16
dates
16:16
dauting
8:11
days
4:20
deadline
2:7, 3:21,
12:20, 24:19
dealing
4:14
dealt
2:18, 5:3
decide
13:13
decided
14:8, 15:1
deciding
3:20
declare
26:2, 26:12
defendant
10:7
definition
7:3
delay
2:7, 24:19
democracy
14:14, 15:9,

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                30

15:17
**democrat**
3:19
**democratic**
4:21, 13:8,
17:3
**democrats**
14:21, 15:21,
16:14, 17:1
**demora**
11:6, 11:7,
22:14, 22:15
**deserve**
4:4, 21:20
**designation**
21:10
**died**
14:19
**difference**
10:22, 19:17
**different**
6:8
**difficult**
18:5, 19:13
**direct**
13:10, 13:11,
14:14
**directly**
7:2, 7:4
**disabled**
12:6, 12:10
**disclosure**
6:12, 6:20
**disposing**
21:10
**doing**
8:22, 9:8,
13:20, 14:4,
20:5, 21:15,
21:21
**dolan**
22:16, 22:17
**dollar**
7:15
**dollars**
10:18, 21:18
**donate**
18:17, 18:19

**donations**
14:4, 21:11
**donor**
6:12
**donors**
18:19
**down**
13:18, 14:1,
15:15, 15:16
**drafted**
14:12
**drubbed**
14:7
**duties**
3:1
**duty**
2:21

**E**

**earlier**
3:5, 3:14
**earliest**
12:21
**early**
12:20
**easily**
7:6
**easy**
11:11, 12:22
**egregious**
15:2, 15:5
**either**
9:12, 13:5
**elected**
2:21
**election**
2:10, 3:16,
4:13, 4:15,
4:20, 5:5, 5:7,
5:22, 7:17, 8:2,
10:17, 17:18,
24:21
**elections**
5:16, 5:18,
6:1, 6:5, 9:3,
10:19, 11:1,
14:2, 14:7,
14:9, 17:18,

18:19
**else**
14:9
**embarrassing**
14:13
**embrace**
17:20
**employed**
26:6
**enemies**
4:6
**enough**
16:1
**ensure**
3:6
**ensuring**
3:8
**entities**
5:21, 7:20
**essence**
4:16, 8:12
**even**
7:8, 9:3, 11:8,
14:17, 21:8,
21:18
**event**
26:10, 26:13
**ever**
19:22
**every**
13:8
**everybody**
16:20
**everyone**
18:16
**ex**
19:20
**excuse**
12:7, 15:6
**exercise**
18:21
**expenditure**
3:11, 8:5
**expenditures**
3:7, 8:5, 8:19,
21:12
**expenses**
2:20

**experience**
19:20
**experts**
6:15
**extravagant**
3:7

**F**

**fact**
5:13, 6:4, 18:9
**fair**
11:10, 11:11,
11:17, 17:17,
17:18, 20:20
**fall**
19:2
**falsification**
8:2
**far**
17:22
**favor**
2:14
**federal**
11:20
**fellow**
14:22
**field**
17:6
**figure**
20:8
**file**
21:8, 21:9
**filing**
3:21
**filings**
7:21
**finance**
2:7, 6:15,
20:4, 21:14,
24:18
**financial**
26:7
**financing**
21:13
**find**
13:2, 19:16
**finding**
9:4

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024

31

**fine**
8:22, 13:12
**first**
6:15, 11:7,
13:9, 14:22,
15:21, 16:8
**fix**
14:9, 16:15,
16:18, 17:15
**fixed**
4:9, 12:19
**floor**
20:16
**foreign**
5:7, 5:14,
5:22, 6:5, 7:1,
7:8, 7:16, 8:20,
10:5, 10:17,
13:18, 14:3,
18:17, 18:19,
19:14
**form**
5:7, 8:13
**forward**
10:19, 18:22
**found**
6:14
**franklin**
9:17, 9:19
**frankly**
7:15, 10:21
**free**
17:18
**friends**
13:14
**full**
10:9, 15:9,
26:8
**fund**
12:12, 14:1
**funds**
2:19, 2:22,
3:6, 18:18
**further**
26:12

**G**

**gathering**
21:19

**gavarone**
22:18, 22:19
**general**
2:10, 9:15,
24:21
**general's**
10:8
**give**
6:19, 13:18
**givers**
19:19
**giving**
9:4, 20:2
**go**
2:14, 4:4, 5:1,
6:16, 14:10
**goals**
7:14
**goes**
7:3
**going**
3:16, 3:20,
4:2, 5:8, 8:16,
8:19, 9:9, 10:5,
10:19, 15:15,
16:8, 18:15,
18:16, 20:16
**good**
14:5, 16:1
**great**
11:22, 16:19,
17:4, 17:8
**greater**
7:3
**group**
11:8
**guess**
4:9
**guise**
19:14

**H**

**hackett**
22:20
**handful**
18:20
**hands**
18:13

**happen**
12:5
**harass**
18:21
**harmful**
18:20
**hearing**
14:20
**held**
14:21
**here**
11:8, 19:6,
21:21
**hereby**
26:2
**hicks-hudson**
22:20, 22:21
**himself**
12:11
**history**
6:4
**hoffman**
22:22, 23:1,
24:14
**honest**
9:14
**hoops**
18:6, 19:13
**house**
2:4, 2:14,
11:19, 11:22,
12:17, 12:18,
14:19
**huffman**
2:2, 2:11,
11:5, 16:10,
20:12, 20:21,
22:4, 24:15,
24:22
**huge**
12:3
**humphrey**
2:5

**I**

**idea**
17:4, 17:5,
17:8

**illegal**
18:19
**impact**
3:16, 10:19
**important**
3:14
**inappropriate**
8:16
**incidental**
2:20
**incidentally**
3:2
**includes**
8:5
**including**
3:8
**increase**
6:11
**independent**
8:5
**indirectly**
7:2, 7:4
**individual**
20:3
**influence**
19:15
**information**
26:4
**ingram**
23:2, 23:3
**initiative**
8:20, 18:3,
18:14, 18:22
**initiatives**
18:4, 18:10,
18:18, 19:11,
19:18, 20:1
**instead**
12:2
**intent**
12:3
**interest**
26:7, 26:12
**interesting**
16:13
**interference**
5:8, 6:1, 6:5,
10:17

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                    32

**investigate**
14:3
**involved**
5:21
**ironic**
19:16
**issue**
5:3, 8:7, 8:8,
8:15, 13:14
**issued**
5:19
**issues**
3:14, 14:8,
14:10
**iteration**
16:8
**itself**
10:8

**J**
**job**
1:20
**johnson**
23:4, 23:5
**jump**
18:6, 19:13
**june**
26:16
**jurisdiction**
9:11
**jury**
14:15

**K**
**keep**
21:4
**kids**
11:8
**kind**
9:6, 13:9, 17:5
**know**
4:2, 5:10,
5:13, 5:18,
5:21, 7:18,
12:8, 12:15,
15:14, 18:4,
21:7, 21:20
**knowingly**
7:5, 7:22, 8:3

**kunze**
20:13, 20:14,
23:6, 23:7

**L**
**landis**
23:8, 23:9
**lang**
23:10, 23:11
**language**
3:6, 8:1, 8:17,
17:21
**largest**
19:21
**larose**
4:13
**last**
5:15
**later**
6:14
**law**
2:7, 3:18,
4:10, 6:15,
6:16, 24:18
**lawfare**
4:5
**leader**
16:11, 20:12
**leading**
4:12
**least**
10:16
**legislation**
11:16, 11:17,
13:1, 20:5
**legislative**
16:18
**legislature**
14:16, 18:11,
19:18
**let's**
2:14, 7:19,
9:13, 21:4
**level**
17:6, 17:7
**light**
3:19
**likely**
6:16

**limiting**
12:4
**limits**
14:18
**line**
11:20, 16:16
**linked**
5:14
**listed**
26:10
**listen**
20:10
**little**
17:6, 17:14
**local**
13:14
**locally**
10:4
**looking**
19:1
**lot**
4:11, 12:17,
17:10, 18:5,
18:6
**lucas**
9:18

**M**
**made**
2:16, 3:11,
3:18, 3:19,
10:12, 10:22,
11:13, 11:18,
11:22, 21:3
**major**
2:7, 24:19
**majority**
14:6, 15:14
**make**
8:19, 9:3,
11:2, 11:3,
12:1, 15:5,
15:11, 16:3,
16:15, 17:13,
18:16, 19:2,
19:13, 19:17
**making**
4:10, 7:1

**manning**
23:12, 23:13
**many**
4:14, 9:8, 9:20
**maximum**
8:22
**mccolley**
2:12, 2:13,
20:22, 21:1,
23:14, 23:15
**mean**
13:6, 14:21
**measures**
6:11
**member**
25:2
**mens**
8:4
**mental**
7:5
**mentally**
12:6, 12:10
**mentioned**
5:4
**message**
19:9
**method**
7:13
**might**
7:6, 7:7
**million**
5:15, 10:22
**millions**
10:18, 21:18
**mind**
21:4
**modify**
2:6, 24:18
**money**
7:8, 7:18,
8:14, 9:6,
13:15, 14:3,
19:15
**more**
3:4, 11:3,
19:5, 19:13
**motion**
2:2

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                     33

move
9:11
much
4:1, 8:12
multi-million-do-
llar
22:1
must
3:8, 8:9
myself
4:1

**N**

naaden
1:22, 26:2,
26:17
name
25:2
nation
12:21
national
3:20, 4:22,
5:22, 7:8, 8:21,
10:5
nationals
5:14, 7:1,
18:17
nays
24:16
need
3:15, 3:18,
3:19, 11:3, 19:2
needed
4:18, 13:2,
16:15
needs
3:10
neither
26:5
nephew
12:5, 12:10,
12:13
never
12:8, 17:7
nevertheless
4:3
no-brainer
11:18

nominee
4:3, 4:22
nominees
16:20
northwest
10:1
noses
5:9
nothing
13:15
november
5:17, 11:1,
14:7, 14:13
number
2:4, 14:6

**O**

o'brien
23:16, 23:17
obvious
15:18
occur
9:14, 10:4
occurred
5:16, 9:13,
9:18, 10:4
offer
15:4
office
2:21, 3:4,
9:21, 10:8,
12:2, 12:9,
12:11
official
3:1
oftentimes
9:4, 10:5
oh
8:10
ohio
1:8, 3:22, 4:4,
5:9, 5:15, 9:3,
10:1, 10:6,
14:14, 18:2,
18:12, 18:19,
20:10, 20:19,
21:20, 26:19
ohioans
4:22

old
12:10
once
19:11
one
3:17, 4:8, 7:6,
7:7, 12:1, 14:5,
18:7, 19:5,
19:21
one's
2:21
ones
4:4
only
3:11, 8:21,
12:4
open
13:12
opinion
5:19
opponents
12:16
opportunity
3:2
opposing
14:11
opposition
8:6
organizations
5:13, 8:11,
8:12, 13:12
original
2:18, 12:3,
15:6
originally
17:3
other
3:12, 11:21,
17:10, 19:7,
19:9
others
2:5
otherwise
4:6, 26:7
out
3:1, 4:3, 5:11,
6:9, 6:10, 6:14,
10:13, 11:19,

12:3, 12:14,
17:12, 17:14,
18:11, 20:8
outcome
26:7
over
2:16, 6:3, 9:1,
9:14, 12:13
own
9:21, 12:18,
18:13

**P**

pack
8:9
packs
8:10
page
26:10
pages
1:21, 26:8
parents
3:2, 3:3
parity
21:5
part
8:4
parti
14:18
participate
13:11
parties
16:21, 26:6
partisan
11:21, 13:6,
14:18, 15:12,
16:4
partisanship
15:13
parts
12:18, 15:5
party
2:8, 14:6,
15:14, 24:19
pass
2:12, 18:7,
22:5
passage
11:4, 22:3

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                          34

passed
6:8, 6:10,
10:13, 11:19,
12:17, 14:17,
18:9, 19:11,
24:16
past
9:1, 9:2, 11:1
pay
2:19, 8:22,
17:3
paying
15:19
penalty
8:1, 26:3
people
6:18, 7:11,
7:12, 9:8, 10:9,
14:2, 17:5,
18:2, 18:12,
18:22, 20:9
performance
2:20
perjury
26:3
permanent
4:10, 13:3
person
8:20
personally
13:1
pertains
6:18
petitions
8:7, 21:8, 21:9
ph
11:4
pick
20:15
picks
11:3
piece
20:4
pieces
11:15
playing
17:6
ple
25:3

please
22:5, 25:3
pointed
17:12
policy
11:18
political
2:8, 4:6, 7:20,
20:2, 24:19
politicians
18:21
politics
13:6, 13:9,
13:16
portion
8:3
potential
4:11
power
13:22, 18:21
powerful
13:19
precedence
6:17, 6:18
precludes
12:12
prefer
13:3
present
5:4, 5:6
presenter
12:21
president
2:9, 2:13,
11:4, 11:7,
11:13, 13:20,
15:7, 15:11,
15:20, 16:3,
16:9, 16:12,
20:14, 20:18,
21:1, 24:14
presidential
2:8, 24:20
pretty
4:13
primary
3:11, 14:5
priority
19:16

probably
11:2
problem
12:19, 13:15
problems
16:5
process
13:4, 16:13
profess
17:20, 18:15
prohibit
6:22
prohibited
5:20, 7:22,
8:17
prohibition
8:21
prosecuting
10:1
prosecution
9:12, 9:16,
10:3
prosecutor
9:17, 9:19
protect
18:16
protecting
19:14
provide
4:22
provided
17:15
provides
17:9
provision
7:5, 12:16
provisions
5:12, 9:2
put
11:20, 15:7,
15:13, 15:19
putting
15:20

**Q**

quash
19:4, 20:9
question
2:11, 22:5,

24:22
quite
7:15, 10:21

**R**

raising
21:17
rather
20:1
rd
4:19
rea
8:4
real
9:9
really
7:16, 15:9,
15:15, 15:22,
16:2
reasonable
3:8
received
26:9
receivers
19:20
receiving
8:14
recent
6:4
recognizes
2:12, 11:6,
16:11, 20:13,
20:22
recordings
26:4
recourse
18:13
referring
21:5
reform
20:4
reforming
20:1, 20:2
regarding
9:2, 26:10
regardless
10:20
register
8:9, 8:18

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                                35

| | | | |
|---|---|---|---|
| registering | right | sections | set |
| 8:13 | 5:8, 5:9, 7:16, | 24:17 | 7:13 |
| registration | 11:3, 12:8, | security | seven |
| 8:13 | 12:18, 19:6, | 2:9 | 24:15 |
| regulations | 20:20, 21:12 | see | severely |
| 11:20 | rights | 7:6, 18:11, | 12:6, 12:10 |
| reineke | 18:1 | 19:11, 21:13 | shall |
| 23:18, 23:19 | rise | seem | 2:11, 22:5, |
| related | 20:14 | 18:8 | 24:22 |
| 5:16, 26:5 | roegner | seen | short |
| release | 23:22, 24:1 | 9:1, 19:22 | 3:15, 6:3 |
| 13:2 | roll | selected | short-term |
| remember | 22:5 | 3:13 | 17:15 |
| 13:10 | romanchuck | semi-accountabil- | should |
| rendered | 24:2 | ity | 4:5, 4:9, 4:21, |
| 3:9 | room | 6:11 | 6:2, 6:5, 10:15, |
| representative | 21:7 | sen | 11:18, 12:22, |
| 2:5 | ruining | 2:2, 2:11, | 13:1, 20:5 |
| republican | 12:17 | 2:13, 11:5, | shouldn't |
| 14:19 | rully | 11:7, 16:10, | 4:10 |
| republicans | 24:2, 24:3 | 16:12, 20:12, | shoving |
| 14:22, 16:15 | run | 20:14, 20:21, | 13:7 |
| require | 3:4, 12:9, | 21:1, 22:4, | show |
| 7:20, 8:20 | 12:11 | 22:7, 22:9, | 14:13 |
| requirement | running | 22:11, 22:13, | showed |
| 6:20 | 12:1 | 22:15, 22:17, | 14:14 |
| requirements | | 22:19, 22:21, | side |
| 6:13 | **S** | 23:1, 23:3, | 10:20 |
| resolutions | said | 23:5, 23:7, | sides |
| 13:20 | 5:19, 6:16, | 23:9, 23:11, | 6:3 |
| resonating | 10:21 | 23:13, 23:15, | signature |
| 19:10 | same | 23:17, 23:19, | 21:9 |
| resources | 5:21, 10:6, | 23:21, 24:1, | signature-snmnt |
| 9:22, 10:9 | 21:15 | 24:3, 24:5, | 26:14 |
| respective | say | 24:7, 24:9, | signatures |
| 16:17 | 15:14, 20:15, | 24:11, 24:13, | 21:19 |
| restraints | 21:22 | 24:15, 24:22 | significant |
| 9:21 | saying | senate | 7:18 |
| retribution | 13:20, 15:22, | 1:8, 5:11, 6:8, | silence |
| 18:8 | 21:16 | 6:10, 13:7, | 19:12 |
| return | scandals | 13:17, 14:17, | similar |
| 8:21 | 19:21 | 16:6, 26:19 | 5:12 |
| revised | schaffer | senator | simple |
| 2:6, 24:18 | 24:4, 24:5 | 2:12, 11:5, | 8:13, 11:12, |
| reynolds | secretary | 11:6, 16:10, | 20:17 |
| 23:20, 23:21 | 4:13, 8:14, | 20:13, 20:21, | simpler |
| ridiculous | 24:21 | 20:22, 22:4 | 8:12 |
| 22:2 | section | serious | single |
| | 2:6 | 16:5 | 3:3 |

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024

36

| | | | |
|---|---|---|---|
| **sister-in-law** | **start** | **suppose** | 20:12, 20:14, |
| 12:7, 12:9 | 21:18 | 2:15 | 20:20, 20:21, |
| **slap** | **started** | **suppressing** | 21:1, 22:4 |
| 9:5, 9:7 | 17:14 | 21:3, 21:22 | **themselves** |
| **small** | **state** | **supreme** | 7:7 |
| 7:9, 13:12 | 2:9, 3:9, 3:22, | 6:17 | **thereby** |
| **smith** | 5:8, 5:15, 8:11, | **sure** | 5:22 |
| 24:6, 24:7 | 8:14, 9:15, | 11:13, 12:1, | **thing** |
| **sneaky** | 10:6, 10:8, | 16:3, 18:16, | 4:8, 12:22, |
| 15:18 | 10:18, 12:20, | 19:2 | 21:15 |
| **so-called** | 17:19, 18:2, | **sykes** | **things** |
| 14:3 | 18:12, 19:19, | 2:5, 24:8, 24:9 | 11:10, 11:11, |
| **solely** | 19:22, 20:10, | | 17:11, 17:13, |
| 9:16 | 21:20, 24:21 | **T** | 18:13 |
| **solution** | **state-wide** | **t-shirts** | **think** |
| 13:2, 13:3 | 21:17 | 13:13 | 4:4, 8:10, |
| **solutions** | **states** | **tabled** | 10:14, 17:17, |
| 16:5 | 4:5, 6:17, | 15:8 | 20:15, 20:17, |
| **some** | 11:21, 20:19 | **take** | 21:19, 22:2 |
| 2:16, 6:12, | **statute** | 3:15, 4:6, 7:8, | **third** |
| 6:14, 6:15, | 7:10, 8:11 | 8:16, 8:18, | 2:3, 25:4 |
| 6:17, 6:22, 9:2, | **steps** | 15:4, 18:1, | **thought** |
| 9:9, 17:10, | 11:22 | 18:5, 18:13 | 15:2 |
| 21:2, 21:17 | **steve** | **taken** | **threat** |
| **somehow** | 22:22 | 12:14 | 5:4, 5:6 |
| 21:3, 21:22 | **still** | **takes** | **thrilled** |
| **something** | 17:20 | 12:3 | 9:22 |
| 10:14, 14:9, | **stop** | **talked** | **through** |
| 15:15 | 13:15, 18:11 | 5:10, 17:9 | 2:15, 6:12, |
| **sorry** | **story** | **talking** | 10:8, 14:10, |
| 11:9 | 20:6 | 6:14, 6:21, | 16:18, 18:6, |
| **sought** | **streak** | 9:6, 19:22 | 18:13, 19:13 |
| 6:11 | 19:5 | **tape-recording** | **throw** |
| **sounds** | **stuff** | 26:9 | 10:9 |
| 14:5 | 12:8 | **temporary** | **ties** |
| **speak** | **stump** | 3:18, 4:9, | 10:6 |
| 4:1 | 14:5 | 16:15 | **tight** |
| **specifies** | **sub** | **tens** | 4:14 |
| 8:8 | 12:2, 12:19 | 10:18 | **tighten** |
| **speech** | **substitute** | **term** | 3:6 |
| 14:6 | 2:4 | 3:15, 8:4 | **time** |
| **spending** | **subtle** | **testimony** | 11:8, 13:4, |
| 12:4, 13:19 | 15:18 | 1:7 | 13:9, 13:12, |
| **spoke** | **summarize** | **thank** | 14:22, 15:21, |
| 20:6 | 6:22 | 2:13, 11:4, | 16:14, 16:18, |
| **sponsors** | **support** | 11:5, 11:7, | 17:1, 19:5 |
| 12:15 | 8:6, 13:14 | 16:9, 16:10, | **timeframes** |
| **stand** | **supporting** | 16:12, 20:11, | 4:15 |
| 2:14 | 26:4 | | |

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024

37

| | | | |
|---|---|---|---|
| **title** 25:1, 25:3 | **underneath** 5:9 | **vote** 4:2, 5:2, 5:11, 11:11, 11:19, 12:22, 15:1, 15:2, 15:21, 16:2, 16:3, 16:8, 20:7, 20:16, 20:17 | **wishes** 14:15 |
| **titled** 24:16 | **understand** 13:3 | | **without** 14:10, 15:11 |
| **today** 3:6, 3:14, 11:8, 15:22, 19:16, 19:22, 20:15 | **unfortunately** 11:15, 17:13, 17:21 | | **wonderful** 17:9 |
| | **united** 6:17, 20:18 | | **work** 18:6, 20:9 |
| **together** 10:16, 20:9 | **unknowingly** 7:6 | **voted** 5:11, 13:8, 15:21 | **worse** 17:22 |
| **traditional** 10:7 | **unrelated** 13:7 | **voters** 14:14, 19:5, 19:9, 21:12, 21:19 | **worst** 13:6, 13:9, 16:7 |
| **transcribed** 1:22 | **unwittingly** 7:7 | | **wrist** 9:5, 9:7 |
| **transcriber** 26:1, 26:2 | **upcoming** 3:16, 5:5, 5:7, 5:22 | **voting** 20:7 | **Y** |
| **transcript** 1:6 | **urge** 11:4, 20:7, 20:8, 22:3 | **W** | **yays** 24:15 |
| **transcription** 26:9 | **use** 2:22 | **want** 10:17, 12:11, 17:17, 21:2, 21:13 | **year** 5:15 |
| **transparency** 21:14 | **using** 2:19, 4:5, 12:12 | | **years** 12:10, 16:14, 17:3 |
| **treasurer** 21:10 | **V** | **wanted** 12:13, 13:5, 14:14, 16:2 | **young** 3:3 |
| **trigger** 7:9 | **vehicle** 17:9 | **way** 10:1, 13:18, 15:22 | **yourself** 9:18 |
| **true** 26:8 | **vehicles** 17:10 | **we're** 4:19, 5:11, 7:11, 7:12, 9:6, 18:15, 18:16, 19:22, 20:16, 20:18, 21:3, 21:20, 21:22 | **$** |
| **try** 4:6, 14:9, 20:8 | **vice-presidential** 24:20 | | **$10,000** 13:13 |
| **trying** 10:19, 18:21, 18:22 | **video-recorded** 1:6 | | **$14** 5:14, 10:22 |
| **two** 3:12, 14:6 | **violated** 9:4 | **we've** 5:10, 6:21, 18:9 | **1** |
| **types** 6:19, 7:1, 7:11, 7:12, 9:12 | **violates** 8:20 | **went** 16:18, 16:21 | **114** 2:4, 2:14, 11:22, 12:18, 15:6, 16:2 |
| **U** | **violation** 9:13, 9:18 | **wilkin** 24:10, 24:11 | **12** 12:5, 12:13 |
| **um** 2:13 | **violations** 9:14 | **wilson** 24:12, 24:13 | **2** |
| **under** 8:1, 8:11, 8:17, 12:4, 19:14, 26:3 | **violators** 9:5 | **winning** 19:5, 19:6, 19:7 | **2021** 5:19 |
| **underlying** 2:15 | **voice** 19:4, 20:9 | | **2024** 1:9, 2:10, |

Transcript of Testimony of the Ohio Senate
Conducted on May 8, 2024                                    38

```
24:21, 26:16,
26:19
21
12:5, 12:9
214
15:6
215
5:11, 6:8,
6:10, 13:7,
13:8, 13:10,
13:17, 14:12,
14:17, 16:7,
17:21
23
4:19
24
24:15
242
15:6
25
26:8
26
1:21
```

```
                 5
5-8
26:19
540606
1:20, 26:19
```

```
                 7
74
4:20
7th
4:19
```

# Exhibit I



# Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824

**Date:** May 28, 2024
**Case:** 2024 Ohio Campaign Finance Litigation

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**



```
1
2
3
4
5
6               TRANSCRIPT OF VIDEO-RECORDED
7                   TESTIMONY OF THE
8       OHIO HOUSE GOVERNMENT OVERSIGHT COMMITTEE
9                   MAY 28, 2024
10                 SPECIAL SESSION
11
12
13
14
15
16
17
18
19
20   Job No.: 540606
21   Pages: 1 - 52
22   Transcribed by: Christian Naaden
```

```
 1                  P R O C E E D I N G S
 2            REP. PETERSON:  We have two items before us,
 3      House Bill 1, Representative Seitz. Would you like to
 4      present testimony?
 5            REP. SEITZ:  Thank you, Mr. Chairman, Vice
 6      Chairman Thomas and Ranking Member Humphrey. In my 24
 7      years up here, I don't think I've ever had House Bill
 8      1. So I appreciate the -- the governor calling a
 9      special session to give me that great distinction of
10      having the number one bill in the session, how about
11      that.
12            We are focused on a bill that is intended to
13      bridge the gap between the Senate's version, which
14      they've sent us two, on the foreign money ban issue.
15      They sent us House Bill 114, they sent us House Bill
16      305. Both of them were good stabs at the issue.
17            House Bill 305 did make some changes from
18      House Bill 114, because there were some concerns
19      expressed by various interest groups about the breadth
20      and perhaps unintended consequences of certain language
21      in House Bill 114.
22            House Bill 305 took care of many of those
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    concerns, however, House Bill 305 also contained about

2    40 unrelated provisions that had nothing to do with the

3    foreign money ban and on that basis alone, it seems to

4    me we were taking needless litigation risk by passing

5    that bill, particularly site unseen because of the

6    single subject rule.

7            All of us share a common goal, I hope, of

8    wanting to ban foreign money from Ohio elections, both

9    candidate elections and ballot issue initiative and

10   referendum elections.

11           This should not be a partisan issue. I'll

12   start by saying Harvard University's professor,

13   Laurence Tribe is certainly one of the more liberal

14   professors in the world, said in 2021 offering

15   testimony to the Seattle City Council on this subject,

16   he said, regulating political spending by corporations

17   with significant foreign ownership is consistent with

18   the Constitution and supreme court precedent, indeed

19   concern about po- -- potential foreign influence over

20   our Democratic politics is written into the

21   Constitution itself.

22           And while the supreme court has held that the

```
1    First Amendment prohibits limits on independent

2    expenditures in general, it has made an important

3    exception for spending by foreign nationals.

4            Federal law, as hopefully we all know, does

5    prohibit spending on campaigns by foreign nationals.

6    That's good, we are trying to emulate that at the state

7    level just like federal law prohibited non-citizens

8    from voting, but in order to put suspenders on that

9    proposition, we passed a Constitutional amendment in

10   Ohio a couple years ago with 77 percent approval that

11   applied that very same principle to all state and local

12   elections, there being a question as to whether the

13   federal law does in fact jur- -- have jurisdiction to

14   ban practices at the state and local level.

15           That's still very much a question. So what

16   we're doing here is trying as much as possible to

17   emulate not only federal law but also to emulate and

18   implement a -- an -- a written opinion of the Ohio

19   Elections Commission who opined in 2021 that Ohio law -

20   - they viewed Ohio law to already ban spending by

21   foreign nationals in ballot campaigns as well as on

22   candidates.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1          However, we all know that the Ohio Elections
2     Commission has in recent years been something of a
3     paper tiger and a written opinion of the Ohio Elections
4     Commission is far from the gravity and heft of a
5     statute. And so therefore, what we're trying to do is
6     bring forward principles that align with the federal
7     law and that align with the OEC opinion and put that
8     into Ohio statute.
9          You will note two very signal differences
10    between our short bill of 21 pages and the Senate's
11    very long bill, 305, the first 2 obvious ones are we
12    don't have any of the extraneous provisions that were
13    part of 305 in this bill, this bill deals only with the
14    foreign money ban issue and unlike 305, this bill does
15    not deal with the question of whether President Biden
16    belongs on the ballot this year in Ohio.
17         That will be addressed in a separate bill
18    brought forth by my colleague, Representative Dobos
19    after we're done. So I have prepared and hopefully by
20    the end of this speech you'll have it and your folks
21    will make copies for the committee a comparison
22    document of sorts that compares what the Senate bill

```
1    does on foreign money ban to what we're doing here and

2    you'll see the differences; okay?

3           We are pretty much the same on the enforcement

4    of the new prohibition, vesting enforcement in the

5    attorney general of Ohio upon recommendation of the OEC

6    and giving him investigatory power over the conduct of

7    foreign nationals.

8           We are also very much in line with the Senate

9    on the penalties for violation of the foreign money

10   ban, but unlike the Senate, we are being much more

11   geometrical in our approach to the question.

12          What do -- what do I mean by that? The

13   shortest distance between two points is a straight

14   line. So let's be simple and direct emulating federal

15   law, emulating the Ohio Elections Commissions'

16   rationale as much as we can without getting into what

17   we view as being possibly redundant and unduly verbose

18   language that is throughout the Senate version of the

19   foreign money ban bill.

20          You will see that we do not include the

21   Senate's rewrite of the definition of foreign national,

22   we do not include that, we are adhering to the federal
```

1   definition of foreign national. So that's one

2   difference. Another difference is we do not yet have a

3   requirement that every treasurer of every campaign must

4   sign a certification of compliance, because we think

5   that that may be a little bit much in terms of the

6   penalties that might be imposed on some treasurers

7   somewhere.        Unlike the Senate bill, we are

8   confining this bill only to spending on statewide

9   ballot initiatives, whether Legislatively initia- --

10  initiated or not and -- and statewide initiative and

11  referendum petitions.

12        The Senate bill sweeps in all elections,

13  including local ones, which cons- -- which caused some

14  folks in the Senate and on the minority party side to

15  be making a big deal out of the fact that now we need

16  to get into all of this -- the detail if somebody is

17  just trying to do a local liquor li- -- option in a --

18  in a given precinct somewhere, they would have to go

19  through all this fufora [ph], which we don't think is

20  really necessary if the goal here is to try to restrict

21  foreign spending on statewide issues.

22            So that's another difference between ours and

1  theirs; okay? We, again, share the goal of banning

2  foreign national spending on statewide elections and to

3  a very large extent, this is strictly a -- a -- an

4  argument among lawyers as to the best way to do it.

5          So I know our legal counsel has been in close

6  contact with their legal counsel, I participated in

7  some calls between both legal counsels and Senator

8  McColley who is the principle draftsman or the

9  principle sponsor over there of these initiatives.

10         And so we -- we're making progress is what

11 I'll say, but what I'll further say is until we get

12 agreement with the Senate, there's really no point in

13 proceeding, because we all know it takes two -- it

14 takes two chambers to eventually come to an agreement

15 before we get anywhere. We believe we're making

16 progress, we believe there may even be --

17         In fact, some of us are working on even a more

18 direct and simple approach, which you may see in a

19 substitute bill or amended bill as time marches on this

20 week, but our goal is to get this stated clearly,

21 concisely as possible and proceed from there leaving

22 the question of Mr. Biden to a different bill and that

1    is what this bill is all about. And with that, I'll be

2    happy to try to take your questions.

3            REP. PETERSON:  Thank you for your testimony.

4    Thank you for your work on this effort. Are there

5    questions for the witness? Representative Isaacsohn.

6            REP. ISAACSOHN:  Thank you, Chair. I imagine

7    there will be a fair amount of questions for

8    Representative Seitz. Representative Seitz, I'll start

9    with congratulations on getting House Bill 1, very

10   exciting for you.

11           My question is -- first question is sort of

12   you presented in a vacuum that these are two separate

13   bills, let's talk about them separately, but the

14   reality is these bills together are why House Bill 1

15   and 2 are why we have a special session and it was

16   clear in the governor's proclamation.

17           And so I'll start by one of your colleag- --

18   one of our colleagues, Representative Bird said on

19   Friday that the reason we need a special session is

20   because there is a price to be paid and that we deserve

21   to get something for Democrat's mistakes. Is House Bill

22   1 the price to be paid for getting the president on the

1    ballot in House Bill 2?

2         REP. SEITZ:  Well, Mr. Chairman and -- and

3    Representative Isaacsohn, I'm not going to comment on

4    what Representative Bird did or didn't say; okay?

5    They're two separate issues. We're here, because the

6    governor called a special session. He called a special

7    session to address these two issues.

8         What linkage there is between the two issues,

9    I guess everybody's entitled to make their own opinion,

10   but I'm not going to sit here and -- and -- and

11   speculate on what -- what Representative Bird meant and

12   I've heard Representative Stewart say much of the same

13   thing, they're them and I'm me. So you can ask them the

14   question if you see them this week.

15        REP. PETERSON:  Continue and let's keep our

16   topic on House Bill 1. We've got House Bill 2 coming.

17   Proceed.

18        REP. ISAACSOHN:  With all due respect, Chair,

19   the governor calling a special session made it very

20   clear that these two are linked. They are -- it is a

21   fallacy and we're --- you know, it's a pure

22   hypothetical to say that they're not linked. We are

1      doing one because of the other.

2             And so I guess my question is do you -- do you

3      think it's appropriate to set the precedent that to get

4      the president of the United States on the ballot, there

5      needs to be a compan- -- a price to be paid in a

6      separate bill in House Bill 1 to achieve some political

7      goal?

8             REP. SEITZ:  Well -- well, let's --

9             REP. PETERSON:  You may respond if you wish or

10     you may --

11            REP. SEITZ:  Yeah. Yeah.

12            REP. PETERSON:  -- we can go on to the next

13     one.

14            REP. SEITZ:  Yeah. I mean, Mr. Chairman,

15     Representative Isaacsohn, I mean, that's really kind of

16     irrelevant too. The fact of the matter is these are two

17     issues that are very important issues. You will recall

18     that this committee passed in Senate Bill 92 a

19     straightforward issue of putting Biden on the ballot.

20            So obviously, there was no linkage at that

21     point and time and that's what this committee has

22     already voted to do. So I -- I dispute the idea of

```
1    linkage there. And the -- the other thing I'll say is
2    the -- the committee process is to figure out the best
3    way to get some things done. There was a number of my
4    colleagues that were not going to vote for anything
5    having to do with Joe Biden unless -- unless the
6    foreign money issue was also resolved.
7              That was them and I'm me. We are trying to
8    respond to the governor's call for a special session.
9    We have no choice but to do so. These are -- they are
10   two separate issues in my mind and always have been and
11   if we deal with them at the same time, so what.
12             REP. PETERSON:  Representative Skindell.
13             REP. SKINDELL:  Thank you, Mr. Chair. Thank
14   you, Representative Seitz. You and I and I think there
15   was a couple others who were here in 2004 with the last
16   special session and we were dealing with campaign
17   finance issues. In your opening, you had mentioned that
18   there were several interest groups that approached
19   Legislators working on this issue regarding the breadth
20   of 114 and I'm kind of curious what interest groups
21   were those that were expressing concerns at that time.
22             REP. SEITZ:  Sure. Sure. And Mr. -- Mr.
```

```
1    Chairman and Representative Skindell, three that I'm

2    aware of and again, only indirectly, because only one

3    of them actually came to me, the one that came to me

4    was the Buckeye Institute, you're certainly familiar

5    with that thinktank, the Catholic Conference and Ohio

6    Right to Life and -- and those were the three that had

7    -- I heard either through the grapevine or directly

8    that had questions.

9            And so some of those questions were answered

10   in the language that you see in 305. The language --

11           REP. SKINDELL:  Okay.

12           REP. SEITZ:  -- that you see in 305 reflects a

13   tweak or a change recommended by the Buckeye Institute,

14   which in their view and in the view of the Catholic

15   Conference and Ohio Right to Life resolved whatever

16   question they had about over-breadth.

17           REP. SKINDELL:  Okay. Mr. Chair to

18   representative, thank you. Just I don't need the minute

19   details, but could you just generally describe what the

20   overall concerns were of these groups that --

21           REP. SEITZ:  Well, Mr. Chairman and

22   Representative Skindell, I -- I probably couldn't,
```

1    because as I told you, I didn't hear from the Catholic

2    Conference or the Ohio Right to Life myself; okay? And

3    the Buckeye Institute was just concerned about any

4    language that could somehow be construed to be a donor

5    disclosure type of requirement and about any language

6    that would penalize the inadvertent acceptance of

7    foreign money.

8          For example, I kept hearing this hypothetical,

9    what if a -- what if a -- an immigrant from Latin

10   America comes to Our Lady of the Perpetual Sorrows

11   Church and throws some money in the plate and

12   ultimately, that money finds its way into the Catholic

13   Arch Dioses to be spent on -- on, you know, fighting

14   whatever ballot issue they care to fight this year,

15   would that be a problem?

16         That was the -- that was the hypothetical that

17   was spun. I thought it was rather fanciful at the time,

18   but the Senate did try to deal with that in their

19   language by -- by requiring three levels of mans rea

20   and scienter in order for that to apply. We are not

21   following that model in this bill, we are more -- more

22   nearly tracking the language that we see in the OEC

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    opinion and in federal law.
2             REP. SKINDELL:  Okay. Mr. Chair.
3             REP. PETERSON:  Continue.
4             REP. SKINDELL:  Thank you. In your opening,
5    you had mentioned that one of the things that the
6    Senate bills had and this one doesn't was with regard
7    to the certification of the -- the campaign committee.
8    I noted that in House Bill 1 at line 303 and also at
9    418, there is a certification. I'm kind of curious,
10   just what is that certification in comparison to the
11   one that you're trying not to include from the Senate?
12            REP. SEITZ:  Well, the Senate language
13   requires all campaign treasurers to certify under
14   penalty of election falsification, which is a felony,
15   that they have not violated any campaign finance laws
16   and certification is required both at the time of
17   filing your initial designation of treasurer and when
18   filing your statement of contributions and
19   expenditures.
20            So you know, the concern that I've heard about
21   that is do you really want to -- I mean, it's going to
22   be hard to find people willing to serve as treasurers
```

1    if you've got to give all these certifications under

2    penalty of being a felon.

3           And so the compromise that I would suggest and

4    we'll see if the Senate would like to go with it is

5    rather than say nothing on that score, we could say,

6    well, yeah, we still need a certification from a real

7    live person, but it might just be a -- a -- a -- a

8    civil penalty or a fine of some sort as opposed to a

9    felony conviction; okay?

10          That's one possible compromise on this issue.

11   We don't have it yet, but that would be a compromise on

12   this issue. The reason is if you recall, because you're

13   an old-timer, there was a big case some years ago in

14   which some outfit out of Virginia spent boku money on

15   some Ohio election, and I forget what they were

16   spending the money on, but we -- they were doing it all

17   wrong and they were ultimately found --

18          The committee was found to be responsible for

19   millions of dollars in fines, but there was no real

20   live individual that they could pursue and the

21   committee was sort of like gone with the wind. So we've

22   got this huge, horrendous multi-million-dollar fine

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1   floating around in the ether and no way to collect even

2   a farthing of it.

3           So I think that might've been part of the

4   underlying basis for why we need some sort of a

5   certification from the -- from the treasurer. I think

6   the dispute is a very narrow one over how extensive is

7   the penalty for an improper or in- -- untruthful

8   certification.

9           REP. SKINDELL:  Mr. Chair.

10          REP. PETERSON:  Continue.

11          REP. SKINDELL:  Thank you for that,

12  Representative Seitz. I know sometimes we've given LLC

13  instructions and then we find -- see the actual bill

14  and they actually didn't deal with it. You may just

15  want to reexamine those 2 areas --

16          REP. SEITZ:  Yeah. We did.

17          REP. SKINDELL:  -- 303 and 418 --

18          REP. SEITZ:  Will -- will do.

19          REP. SKINDELL:  -- because there is a penalty

20  of election falsification for the treasurer not filing

21  the -- the certification. So --

22          REP. SEITZ:  At -- at what point and time, the

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    initial certification or only on the contribution of

2    expenditures?

3            REP. SKINDELL:  I -- I think that needs to be

4    delved into --

5            REP. SEITZ:  Yeah.

6            REP. SKINDELL:  -- we can -- and we can work

7    on that --

8            REP. SEITZ:  Fair enough.

9            REP. SKINDELL:  -- just to point that out.

10   Just for -- Mr. Chair, just a final question at the

11   moment so that other members can have the opportunity,

12   you had talked about the -- the federal prohibition

13   about nationals -- foreign nationals providing

14   contributions or expenditures and there's -- there's

15   been a series of federal court decisions regarding

16   those prohibitions.

17           I'm kind of curious, is -- how does House Bill

18   1 differ from the federal laws in any way? Are -- is --

19   is House Bill -- House Bill 1 more restrictive than the

20   federal boundaries in your assessment or are they about

21   equal?

22           REP. SEITZ:  Well -- well, Mr. Chairman,
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    Representative Skindell, we're -- we're trying to
2    pattern ourselves after existing precedence, both at
3    the federal level and under the OEC opinion; okay? I'm
4    not sure we know exactly what all the differences might
5    be, I guess we can all study it and figure it out, but
6    ours is much closer to the federal prohibitions than is
7    the Senate's version and follows that structure and
8    format to a much greater extent than does the Senate
9    version.
10          So -- and by the way, the precedent on this is
11   the Bluman case, B-l-u-m-a-n, which was a three-judge
12   panel, which is strange in and of itself, but a three-
13   judge panel and the opinion was written by a now
14   Justice Cavanaugh at a time when he was still a circuit
15   court judge. That decision was appealed to the supreme
16   court and was affirmed without opinion.
17          And so I think we can all look at the Bluman
18   case as being a pretty sound guidance on what is the
19   permissible -- permissible extent to which foreign na-
20   -- foreign nationals may be regulated; okay?
21          And that decision, both on the right and the
22   left, they all site the same case, Bluman, and, you
```

1  know, we've certainly read that case pretty carefully

2  and are trying to -- trying to stick within the ambit

3  of that case, which is one of the reasons -- one of the

4  reasons why even though I might like to ban green card

5  holders from contributing, because, you know, they

6  can't vote, the rationale is well, you can't vote, so

7  why should you be allowed to contribute; okay?

8       The converse is well, green card holders are

9  lawful permanent residents of the United States and

10  they can serve in the military. So you know, I might go

11  along with the idea of banning them from contributing,

12  but I think the more prudential thing to do is to leave

13  the definition of foreign nationals as it stands under

14  federal law, which provides an exception whereby green

15  card holders are allowed to contribute and that is what

16  we're doing.

17       REP. SKINDELL:  Okay. Thank you.

18       REP. PETERSON:  Representative Grim with a

19  question.

20       MS. GRIM:  Thank you, Chair. Thank you so much

21  for being here. I've got a couple questions for you. So

22  there's been a bill that's been introduced a couple of

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    GAs, House Bill 112, right now for the 135th, which

2    would deal with the -- the issue with foreign

3    donations, but also dark money.

4            So wouldn't it make more sense to have -- to

5    have hearings on that bill, because we're -- we're

6    actually addressing the issue that we need to address

7    is dark money in our elections?

8            REP. SEITZ:  Well, Mr. Chairman, there's two

9    answers to that. First is under the rules of special

10   session, we are constrained and confined only to the

11   issues for which the governor has issued a call for

12   special session and since those are the only two

13   issues, Biden on the ballot and foreign money ban, that

14   is all we may consider in this special session, number

15   one.

16           So we cannot consider the larger question of

17   dark money and I'm not familiar, as we stand here

18   today, with what 112 says. I don't know if -- I don't

19   even know if we've had hearings on it. I mean, maybe we

20   have, I don't know, but I guess we'll deal with that in

21   -- all in good time, as they said on the Wizard of Oz,

22   all in good time, my pretty, all in good time; right?

```
 1              REP. PETERSON:  Follow-up?

 2              MS. GRIM:  Sure. Thank you. Yeah. So we're

 3     here for a special session, but this has been around, I

 4     think, for several GAs. It's a -- it's a Miranda-

 5     Sweeney Bill. You know, Miranda's no -- no longer here,

 6     but why haven't we heard anything on that, because

 7     again, it -- it really deals with a larger issue.

 8              So I wanted to make that point, but also, we -

 9     - we are talking about foreign donations, but again, we

10     should really be talking about the dark money in our

11     campaigns. So the -- the -- this bill claims to be

12     about election integrity when it comes to who finances

13     campaigns. So does this ban dark money contributions?

14              REP. PETERSON:  So I think we're beyond the

15     topic of the -- of the -- the bill before us. You're

16     welcome to respond if you want.

17              REP. SEITZ:  Sure. And Mr. Chairman,

18     Representative Grim, it does if the -- if the dark

19     money is infected by foreign donations, otherwise not.

20              REP. PETERSON:  Follow-up?

21              MS. GRIM:  Yeah. So as we mentioned, federal

22     law already makes contributions to foreign nationals
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    illegal. So why wouldn't we focus on real campaign

2    finance reform, which is around dark money and to

3    support state legis- -- the candidates?

4            REP. SEITZ:  Well --

5            MS. GRIM:  I'm going to bri- -- I'm going to

6    keep bringing it up.

7            REP. SEITZ:  -- well -- well, Mr. Chairman --

8    and I'll -- I'll just say asked and answered. We've

9    already answered that. We're constrained by the call of

10    special session to deal with only the issues that we're

11    dealing with.

12            REP. PETERSON:  Representative Humphrey.

13            MS. HUMPHREY:  Thank you, Mr. Chairman and

14    thank you, Representative for being here. Real quick, I

15    want to ask a -- a question with regard to the

16    emergency clause portion of -- of the bill.

17            One, just want to know why do we need an

18    emergency clause? And then the other -- the other piece

19    of it is yeah, why -- what -- what are the reasons that

20    we would need an emergency clause to the bill, kind of

21    ties into why did the governor call an -- an emergency

22    session or committee or however you want to put it for

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    this specific bill?

2            I can see the other bill. So I guess, my -- my

3    question is why is the emergency clause portion

4    necessary?

5            REP. SEITZ:  Mr. Chairman, Representative

6    Humphrey, I will not opine or guess why -- why -- what

7    the governor's motivations were. I think the governor's

8    motivations, based on the conversation that I've had

9    with him and the lieutenant governor and the secretary

10   of state, is, you know, we'd like the House and Senate

11   to get on the same page on both of these questions,

12   because we look a little bit dysfunctional to the

13   extent we are not on the same page.

14           That's their opinion; okay? And -- and

15   frankly, I share that opinion. That's why I've been

16   working so diligently to try to bridge the gap between

17   the House and Senate versions. The emergency clause as

18   part of this, as introduced, I will bet my biffy, as

19   Rowan and Martin [ph] used to say, that we will strip

20   that out on the next version of the bill, because to

21   get an emergency clause, you need 66 people out of the

22   99 of us and I doubt that we'll get that this week.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1          MS. HUMPHREY:  Okay. Thank you,

2    Representative.

3          REP. PETERSON:  Representative Brown with a

4    question.

5          REP. BROWN:  Thank you, Chair. First of all,

6    Representative Seitz, thank you for bringing us a 21-

7    page bill instead of a 200-plus-page monstrosity, as

8    the Senate has, which basically, House Bill 305 was my

9    bill, a simple bill to deal with electronic filing and

10   pleadings in court and they turn it into some kind of

11   Frankenstein's monster, which violates the single

12   subject rule in about 15 different ways.

13          And you mentioned your concern about that, I

14   think it's a valid concern. So thank you for bringing

15   us a rational bill with which we may have some

16   questions which are a lot more amenable to solving the

17   issue than the Senate bill. Now, I did have a question.

18   I was looking at Section W, which is on Page 14 of the

19   bill, which lists -- it says, no foreign national shall

20   knowingly do any of the following and it lists 3

21   things, A, B and C.

22          And my question is with regard to paragraph C,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1   this is on lines 395 through 397, Page 14, and it says,

2   no foreign national shall promise, either expressly or

3   implicitly, to make a contribution, expenditure or

4   independent expenditure, blah, blah, blah. My question

5   is I didn't see im- -- implicitly -- or an implicit

6   promise defined anywhere. Do you have a definition for

7   what is or what constitutes an implicit promise?

8           REP. SEITZ:  Mr. Chairman and Representative

9   Brown, I do not believe the bill defines implicitly and

10  since the bill does not define implicitly, we would,

11  under common rules of Legislative construction, go back

12  to your Funk & Wagnalls or your Websters or whatever

13  and find out what the -- or Black's Law Dictionary and

14  find out what the common ordinary meaning of the term

15  is. So that's -- that would be my answer on that one.

16          And by the way, I'll just say this too, you're

17  not very happy with what they did to 305. I might say

18  Representative Humphrey and I, they -- they took our

19  114 and -- and put a bunch of stuff in there too with -

20  - so both of our bills will end up pro- -- probably

21  hopefully having to go to conference committee to be

22  restored to their original pure state.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1              REP. PETERSON:  Follow-up.
2              REP. BROWN:  Do you believe that the phrase
3       implicit promise is something that could end up in
4       litigation with some arguing that it is either overly
5       broad or vague?
6              REP. SEITZ:  Mr. Chairman and Representative
7       Brown, that is certainly a possibility, you know, and I
8       do not -- I don't want to get off topic, but you -- you
9       could go back to the Speaker Householder trial and it
10      was pretty clear that there was no expressed quid pro
11      quo there, but the jury found and the government argued
12      that well, there was a wink and a nod and a -- and a --
13      and an implicit agreement of some kind or the
14      Sittenfeld trial in Cincinnati, Ohio, which
15      Representative Isaacsohn and -- and I are familiar with
16      where again, it wasn't entirely clear at all and the
17      Sixth Circuit now is kind of agreeing with Sittenfeld
18      that you don't have expressed quid pro quo for -- for -
19      - to put the man in jail, but the -- the jury found in
20      that case that there was some sort of, you know,
21      implicit wink, wink, nod, nod deal and -- and convicted
22      on that basis.
```

```
1            So yes, it could end up in litigation. It has

2    ended up in litigation in the context of campaign

3    finance and bribery laws in recent examples, both

4    involving Councilman Sittenfeld and Speaker

5    Householder.

6            REP. BROWN:  Follow-up, Chair.

7            REP. PETERSON:  Continue.

8            REP. BROWN:  Thank you. With regard to the

9    portion of the bill that deals with the attorney

10   general matter --

11           REP. SEITZ:  Yes.

12           REP. BROWN:  -- in the -- this is on Page 18

13   and -- and 19 of the bill, the case of the failure to

14   comply with or violation of law involving this issue,

15   it says, the commission shall refer -- the -- the Ohio

16   Elections Commission shall refer the matter to the

17   attorney general except that if the attorney general's

18   victim or witness or otherwise involved in the matter,

19   then the commission shall refer to a county prosecutor.

20           So my first question with regard to this

21   particular issue is what was the rationale between

22   taking power away from county prosecutors and giving it
```

1    to the attorney general in this situation?

2             REP. SEITZ:  Mr. Chairman and -- and

3    Representative Brown, the language that you see before

4    you is narrower than the Senate version on this topic,

5    because the Senate version would have given the

6    attorney general the power to investigate and prosecute

7    any violation of the election finance laws.

8             And the Prosecuting Attorneys Association

9    called me last Friday probably, Saturday, I don't know,

10   and said, we don't like that, we -- we -- we want to

11   retain our jurisdiction over the campaign finance laws

12   that we currently have, but we have no problem with

13   giving the attorney general jurisdiction over this

14   foreign money issue and that's what Lou Tobin told me

15   last week.

16            So that's what this -- that's what this

17   language says; okay? They will continue to have their

18   jurisdiction over everything else, but I think because

19   of the intricacies of foreign money and tracing foreign

20   money and all of that, that maybe the attorney general

21   and his vast army of -- of lawyers is probably maybe

22   better equipped than a local county prosecutor to get

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    to the bottom of -- of those questions.
2            So I think that is the rationale. And again,
3    our bill is narrower than the Senate bill on this same
4    subject.
5            REP. BROWN:  I -- I definitely --
6            REP. PETERSON:  Follow-up?
7            REP. BROWN:  Follow-up. I can see that, ab- --
8    absolutely, more narrow. The -- the other part of that
9    is the attorney general gets the shall -- the
10   commission shall refer to the attorney general unless
11   the attorney general is a victim or a witness or
12   "otherwise involved in the matter." Who makes the
13   determination as to whether or not the attorney
14   general, in any particular cir- -- circumstance, is
15   otherwise involved in the matter?
16           REP. SEITZ:  Mr. Chairman and Representative
17   Brown, I would assume that would be the attorney
18   general for following his normal rules of when he's
19   conflicted out. I mean, this happens with the attorney
20   general not infrequently where he's got two different
21   state agencies that are arguing at loggerheads with one
22   another and he ends up saying, well, I can't really get
```

```
 1    involved in representing either one of you.
 2             So I would assume that to be the case. You
 3    know, if -- if you want to add as determined by
 4    somebody, I'm open to that.
 5             REP. BROWN:  Okay. I -- I appreciate that.
 6             REP. PETERSON:  If you --
 7             REP. BROWN:  I was just curious as to what the
 8    thought process was. So at this point, the way you
 9    understand it is it's up to the AG to essentially
10    police himself or herself?
11             REP. SEITZ:  I -- I -- I -- Mr. Chairman, I
12    believe that to be correct.
13             REP. BROWN:  All right. No question -- no
14    further at this time. Thank you.
15             REP. PETERSON:  All right. I -- I do have a
16    quick question and I know you hit -- you talked about
17    it in your testimony, but could you re-explain -- you
18    believe that this -- under existing law, you believe
19    that foreign nationals aren't legally allowed to
20    contribute currently, but that this would be
21    strengthening that law. Could you walk through that one
22    more time, please?
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1          REP. SEITZ:  Sure. Sure. And Mr. Chairman,

2    yes, let's -- let's walk through it again. The Ohio

3    Elections Commission issued an opinion in 2021 that

4    they thought the existing 3517., I think, 13 was

5    sufficiently broad to encompass contributions to

6    statewide ballot campaigns. That was their opinion.

7          The commission could change their opinion. The

8    comm- -- the opinion was never challenged in court but

9    could be. And so enshrining that opinion or the

10   premises of that opinion in statute strengthens the

11   opinion that they reached, number one.

12         Number two, there is a federal prohibition on

13   this subject, we acknowledge that, that does extend to

14   ballot issues as well as to campaign candidate

15   committees, but there is a question as to whether

16   federal law could be applied jurisdictionally over

17   state and local elections that didn't involve a federal

18   question; okay?

19         Just like in the example that I gave was, the

20   ban on non-citizen voting, that's a federal law too,

21   but we put belt and suspenders on that a couple years

22   ago when we passed that same principle into our
```

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

1    Constitution to make it applicable to state and local

2    elections, same theory.

3              REP. PETERSON:  Thank you. And then

4    Representative Isaacsohn with a question.

5              REP. ISAACSOHN:  Thank you, Chair. And I -- I

6    just want to sort of summarize what we just heard in

7    one of -- some of the things, Representative Seitz,

8    you've said already to make sure I have it right, but

9    basically, this is already against the law from -- as

10   per federal law. OEC has already found that this is

11   against the law here in Ohio.

12             So this is al- -- having foreign nationals

13   contribute to campaigns is already against the law per

14   the Ohio Elections Commission and federal law, as

15   you've described, which makes this fundamentally

16   political the fact that we are having this hearing and

17   that this bill has been introduced and it's political

18   in two ways.

19             One, we already talked about, which is the

20   fact that both -- some of your colleagues and the

21   Senate president have said there's a price to be paid

22   to get the president on the ballot, but it's also

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1 political -- and this is -- you said, you're not them,

2 you're you, so I'll just refer to something you said a

3 few days ago, which is that this is about people --

4 particularly, people in the majority party who don't

5 want to face primaries for ha- -- from the ideological

6 right wing for having voted to put President Biden on

7 the ballot.

8      And so they need a counter balance. So it's

9 political in that way, but it's also political, as

10 we've just heard, in that this bill is going to use

11 that red herring of preventing something that's already

12 prevented by federal law in order to hinder ballot

13 initiatives, like the ones we saw last year.

14      And so my question to you is how do you think

15 it's most likely to hinder those ballot initiatives?

16      REP. SEITZ:  Mr. Chair and -- and

17 Representative Isaacsohn, I completely dispute your

18 premise. I've explained this to -- first, in my

19 testimony, then again to Representative Peterson, the

20 fact that it might be an opinion of the OEC that it's

21 against the law or that federal law says it's against

22 federal law does not mean it is against the law

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    statutorily in the state of Ohio.
2         So this is not an exercise in politics. This
3    is an exercise perhaps in belt and suspenders, but it
4    is not an exercise in politics. Yes, there was a point
5    in time a couple weeks ago when we thought well, maybe
6    if we put the Biden question into a bill with the
7    foreign money question, people could overcome their
8    qualms, some of them, about putting -- doing anything
9    that would be perceived as helping a Democrat.
10        That's what -- we tried that gambit, as you
11   recall, and we didn't do it and it turns out it wasn't
12   a bad thing that we didn't do it, because it allowed us
13   to work collaboratively with the groups that I
14   mentioned before to resolve their questions about the
15   breadth of House Bill 114's fix; okay?
16        So you know, I -- I mean, how many times do I
17   have to say it that -- that we're doing this, because
18   it is not entirely clear that it is against the law in
19   Ohio for foreign nationals to contribute to ballot
20   campaigns. Now, I think when you read this bill, this
21   doesn't have a damn thing to do with ballot initiatives
22   that are not infected by foreign money.
```

```
1              So if you want to have your ballot initiatives
2     for God knows what -- God knows what the voters will be
3     asked to pass upon in the future without benefit of
4     being adequately informed of -- on the subject matter,
5     but you're still going to be completely free to do that
6     as long as you don't have a bunch of foreign money
7     providing you with an illegal boost to your efforts.
8              REP. ISAACSOHN:  Well, on that point, Chair --
9              REP. PETERSON:  Continue on the subject of the
10    bill, please.
11             REP. ISAACSOHN:  I'll -- I'll cont- -- will
12    continue that thought ex- -- exactly. I want to spell
13    that out a little bit as to what the bill says, because
14    you're talking about the infection of foreign money and
15    protecting election integrity.
16             So let's say you're a PhD student studying at
17    Ohio State from Cambridge University in England, the
18    type of talent that we certainly want to keep here when
19    they finish their PhD, but you are considered a foreign
20    national student studying here, you hear about this
21    unbelievable to you fact that Ohio is trying to keep
22    women from getting abortions when it's medically
```

1    necessary, so you decide you want to go to a rally

2    about issue one, you buy a poster for $10, you make

3    your sign and you're there protesting to defend

4    reproductive rights, would you be subject to the line

5    that says -- describing someone who makes an

6    expenditure or an independent expenditure in support of

7    or opposition to any statewide ballot initiative for

8    that $10 expenditure, are they subject to a $10,000

9    fine?

10           REP. SEITZ:  Mr. Chairman, Representative

11   Isaacsohn, no, that's -- we're talking about

12   contributions in connection with a ballot pack. What

13   people do on their own time with their own money as an

14   individual is unaffected.

15           REP. ISAACSOHN:  Sorry, point of

16   clarification, Chair.

17           REP. PETERSON:  Continue.

18           REP. ISAACSOHN:  Okay. So in support or

19   opposition to any statewide ballot issue or question is

20   not really what you -- that's not what you mean,

21   though?

22           REP. SEITZ:  Mr. Chairman, Representative

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    Isaacsohn, please read the whole bill and we can talk

2    offline about your going down a rathole that is not

3    there.

4            REP. PETERSON:  Representative Humphrey with a

5    question.

6            MS. HUMPHREY:  Thank you, Mr. Chairman and

7    thank you, Representative for your responses. Quick

8    question about foreign money possibly impacting ballot

9    initiatives, from what I have read, there are no real

10   clear -- or credible evidence that foreign really does

11   affect ballot initiatives, but I wanted to ask you,

12   because I know that you are knowledgeable in this

13   space.

14           So I wanted to ask you do you know of for-sure

15   certain situations -- circumstances where foreign money

16   has specifically affected ballot initiatives?

17           REP. SEITZ:  Sure. Mr. Chairman,

18   Representative Humphrey, the 1630 Fund is a

19   corporation, it is also a C4 and it -- it has received

20   millions of dollars from a foreign national or maybe

21   more than one foreign national. It played very heavily

22   in the -- in the issue one last year. It's playing very
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    heavily in the Mar- -- you know, O'Connor initiative
2    this year.
3            And so yes, foreign -- now, did it -- was it
4    the determining factor in the vote? I don't know, but,
5    you know, people raise money and spend money on a
6    campaign hoping to influence the outcome. Why else
7    would you do it? So when you look at the history of the
8    1630 Fund and when you look at who's paying into the
9    1630 Fund and it's some guy from Switzerland named Hans
10   George somebody, okay, that's what we want to stop.
11           And it could -- you know, just because it's
12   him today, some Swiss guy, okay, it could be Chairman
13   Z. tomorrow coming out of China, it could be Vladimir
14   Putin spending money to defeat Joe Biden to get his
15   friend Trump elected; okay? It could be anybody. The
16   world is a dangerous place.
17           There's a lot of bad people out there. The
18   United States is the number one economy in the world,
19   we are a ripe target for foreign interference and we
20   want to be as assiduous as we can to prevent that
21   foreign interference from clouding the judgment of Ohio
22   and United States' voters.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1              REP. PETERSON:  Follow-up?
2              MS. HUMPHREY:  So thank you, Mr. -- Mr.
3      Chairman. So essentially, I just want to -- just want
4      to ask this question real quick just so I have clarify,
5      so do you believe that this piece that -- that -- that
6      the -- the governor wants to bring up with regard to
7      foreign -- foreign money, do you believe that it is
8      directly tied and applies to the citizens, not
9      politicians, ballot amendment? So do you feel like
10     we're doing that with regard to this upcoming ballot
11     amendment?
12             REP. SEITZ:  Mr. Chairman, Representative
13     Humphrey, it deals with every single ballot amend- --
14     ballot initiative hereafter. It deals with that, it
15     deals with the one to jack up the minimum wage to
16     ridiculous levels, it deals with the [Inaudible]
17     underway to remove qualified immunity from police
18     officers and God knows what they're going to think of
19     for next year or the year after that.
20             It is not targeted at any one ballot
21     initiative, it is ubiquitously effective as to all
22     future ballot initiatives.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1          REP. PETERSON:  And we -- I have a quick

2     question, we -- we have had a great discussion and

3     we'll get to some more here in a minute. We've had a

4     great discussion about the Constitutional law and

5     Constitutional amendments. Can I -- is it fair to

6     simply say that all of us as candidates are not allowed

7     to take foreign money to our campaigns? And this would

8     just be putting that same law --

9          REP. SEITZ:  Yeah.

10          REP. PETERSON:  -- in place for ballot

11     initiatives.

12          REP. SEITZ:  Yeah. Yes.

13          REP. PETERSON:  Is that true?

14          REP. SEITZ:  Mr. Chairman, that's exactly

15     right. That's exactly right.

16          REP. PETERSON:  Thank you. Representative

17     Skindell, some more -- some more lawyer talk I expect

18     to note.

19          REP. SKINDELL:  Thank you, Mr. Chair. And Mr.

20     Chair, your -- your pri- -- prior question there kind

21     of leads into my question, that same section that the

22     chairman was referencing, which falls under 3517.13 and

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1    in the bill, those that have it easily accessible and

2    wants to look at it, it's at line -- li- -- at line

3    1146.

4              There's a -- a change in there that I'm

5    curious about, I -- I know that over the years working

6    with you, particularly in criminal law, you've always

7    made sure that you've placed the mens rea in this in

8    criminal law.

9              The -- there's a mens rea that is now being

10   inserted in this and it basically says, no candidate,

11   campaign committee, etc. shall, and you're adding

12   knowingly solicit or accept a contribution,

13   expenditure, independent expenditure from a foreign

14   national. Could you explain why it's necessary to put

15   that mens rea in that provision of law?

16             REP. SEITZ:  Sure. Mr. Chairman,

17   Representative Skindell, it narrows the scope of the

18   law. That's -- that's what we're trying to do, to make

19   sure that things are -- that you're not being unduly

20   pen- -- penalized for inadvertent -- inadvertent

21   mistakes.

22             REP. PETERSON:  Follow-up.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1              REP. SKINDELL:  Mr. Chair, is that mens rea in
2     there going to the mental state of receiving the
3     contribution or also receiving the contribution also
4     knowing that it's coming from a foreign national?
5              REP. SEITZ:  What -- what line number are you
6     in?
7              REP. SKINDELL:  This is line 1149.
8              REP. SEITZ:  I don't see line 1149. My -- my
9     version of this 21-page bill ends at 604.
10             REP. SKINDELL:  This is dash 2 of House --
11             REP. SEITZ:  Well, hold on, I don't know, I'm
12    -- I'm -- I'm looking at the bill that was given to me
13    and it's 21 pages long.
14             REP. SKINDELL:  Oh, this is -- I -- my
15    understanding is there's a dash 3 and I -- we don't
16    have it up on our iPads the last I looked and this is a
17    dash 2. I'll take a look at that --
18             REP. SEITZ:  Right.
19             REP. SKINDELL:  -- and -- and address it to
20    you offline when I get the appropriate bill.
21             REP. PETERSON:  Thank you. And I will -- I
22    will add for the committee and everyone else, you know,
```

1     certainly, I have a great appreciation for the -- the

2     staffs on both sides of the -- the House and the

3     Senate, the Democrats, Republicans that have a little

4     bit of their week- -- weekend got lost and I certainly

5     want to recognize them and appreciate the work that

6     they've done over the last few days.

7            And while I'm at it, I want to specifically

8     thank Riley Eberhart, my staff that has put together

9     this committee and we -- we are putting things up as

10     quickly as we can and certainly will -- and along with

11     that announcement, as you're checking your emails,

12     you'll find in your inbox that we have committee again

13     tomorrow at 11:00 o'clock and we will be -- have

14     everything in front of you and we'll be on the same

15     versions of the bill if we are not at this moment. So

16     are there other questions? Representative Grim.

17            MS. GRIM: Thank you, Chair. So among the

18     problems with this bill is the power it gives the

19     attorney general to investigate and limits ballot

20     initiatives as a statewide politician. So AG Yost is

21     often sued by ballot initiative efforts as himself been

22     named being a hindrance to the repeal efforts for House

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    Bill 6 and federal trials. Are you worried about the
2    clear conflicts of interest this bill presents for the
3    AG?
4            REP. PETERSON:  So you've addressed this
5    issue, you -- you may respond again.
6            REP. SEITZ:  Yeah. Sure. Mr. Chairman,
7    Representative Grim, this does not deal with ballot
8    initiatives, this deals with foreign money.
9            There is no conflict in giving the attorney
10   general the authority to investigate and prosecute
11   violations of foreign money infecting any committee,
12   candidate committee, ballot committee, initiative
13   committee, referendum committee at the state level, no
14   conflict whatsoever.
15           REP. PETERSON:  Follow-up? Representative
16   Brown with a question.
17           REP. BROWN:  Thank you, Chair. The bill in
18   question is to modify the campaign finance law
19   regarding foreign nations and statewide initiatives and
20   referenda. In that regard, some people say that -- that
21   the bill would have a chilling effect on the work of
22   the committees in charge of ballot initiatives and
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

1      referenda and the ability of these committees to get

2      citizen-led petit- -- petitions on the ballot. Do you

3      agree or disagree with that position?

4                  REP. SEITZ:  Well, Mr. Chairman,

5      Representative Brown, I think it's been evident from

6      what I've said that I would disagree with that, it has

7      no impact on that, except and to the extent that you

8      are taking foreign money.

9                  REP. BROWN:  Follow-up, Chair?

10                 REP. PETERSON:  Continue.

11                 REP. BROWN:  You know, I'm just a small-town

12     lawyer from Little Oak and Canal Winchester, but some

13     people are saying that this bill will be quickly

14     litigated and deemed unconstitutional infringement on

15     the free speech rights of ballot committees given how

16     ballot committees are treated with reverence under

17     federal law. Do you agree or disagree with that

18     position?

19                 REP. SEITZ:  Mr. Chairman and Representative

20     Brown, I disagree with that position, because the

21     Bluman case involved a ballot committee and the supreme

22     court ultimately affirmed the decision of the three-

```
1    judge panel, that indeed we did have the power to

2    regulate that because the -- because of the state's

3    interest in greater jurisdiction over foreign nationals

4    and that is entirely consistent with the opening

5    remarks that I gave where I quoted Laurence Tribe.

6         Now, he's not a small-town lawyer from Canal

7    Winchester, he's a big-time liberal lawyer from

8    Harvard, but that's what he thought.

9         REP. PETERSON:  Representative Skindell with a

10   question.

11        REP. SKINDELL:  Thank you, Mr. Chair.

12   Representative Seitz, with multiple versions of the

13   bill floating around, actually, the filed House Bill 1

14   has now shown up on the iPads and on the -- on that

15   bill, if you could refer to line 401 and 402, and this

16   is back to my discussion with you about the -- the mens

17   rea, the knowingly, and where -- for a -- a candidate

18   or a campaign committee knowingly solicit or accept a

19   contribution or expenditure from a foreign national.

20        My question to you, does that knowingly go to

21   just the acceptor solicit, meaning that if they don't

22   know who -- that it's coming from a foreign national
```

```
1    but accept the contribution unknowing that it's coming

2    from a foreign national, that they could be prosecuted

3    or does it also have to -- you know that you're

4    accepting a contribution and that you know it's coming

5    from a -- a -- a foreign national?

6           REP. SEITZ:  Well, again, Mr. Chairman,

7    Representative Skindell, I believe knowingly modifies

8    solicit or accept a contribution, expenditure or

9    independent expenditure from a foreign national. So I

10   don't know why we'd need to put knowingly in there

11   twice.

12          REP. SKINDELL:  Well --

13          REP. PETERSON:  Follow-up?

14          REP. SKINDELL:  Thank you, Mr. Chair, because

15   sometimes courts come up with some strange

16   interpretations.

17          REP. SEITZ:  [Inaudible]

18          REP. PETERSON:  Okay. Other questions?

19   Representative Isaacsohn.

20          REP. ISAACSOHN:  This will be a quick. Rep- --

21   does -- I also want to show you I've read the bill, but

22   -- because that was -- you weren't sure before, but I -
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1    - I can assure you I have multiple times. But my
2    question is you brought -- you have reference the
3    Professor Tribe letter a number of times.
4          Does this bill do what Professor Tribe is
5    saying, which is that if a corporation is largely owned
6    by foreign investors, they would not be able to invest
7    in either candidate or issue campaigns here in Ohio?
8          REP. SEITZ:  Well, the -- Mr. Chairman and --
9    and Representative Isaacsohn, that was part of the
10   original Senate Bill 215 where it was requiring these
11   corporations to have segregated funds to the extent
12   they derive foreign revenues. That was all taken out by
13   the time we got to 114; okay?
14         So I don't think it does, but -- but it --
15   what -- what Tribe is saying is corporations under
16   Citizens United have certain rights and in his view,
17   those rights may be trumped when we are dealing with
18   foreign nationals. That was the thrust of his -- of his
19   letter. So to that extent, I agree with him.
20         REP. PETERSON:  Other questions for the
21   witness? Oh, Representative Grim.
22         MS. GRIM:  Thank you, Chair. I have one more
```

```
1    question. So I want to go back to what Representative

2    Skindell was talking about, about knowingly soliciting

3    money from foreign nationals. So would that -- so I

4    believe maybe the Catholic Conference gets money from

5    the Vatican. So would that affect Vatican money?

6            REP. SEITZ:  Mr. Chairman and Representative

7    Grim --

8            REP. PETERSON:  You may respond.

9            REP. SEITZ:  -- I don't know where the

10   Catholic Conference gets its money and I doubt that it

11   comes from the Vatican, but I just don't know.

12           REP. PETERSON:  Seeing -- almost -- almost.

13   Representative Isaacsohn with another question.

14           REP. ISAACSOHN:  Well, sorry, the que- -- this

15   --

16           REP. SEITZ:  This is getting a little

17   ridiculous, Mr. Chairman.

18           REP. ISAACSOHN:  -- the -- the -- well,

19   agreed.

20           REP. PETERSON:  You may ask the question --

21           REP. ISAACSOHN:  The question --

22           REP. PETERSON:  -- on the bill.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

```
1              REP. ISAACSOHN:  -- that Representative Grim
2    asked was if the money came from the Vatican or if
3    someone was in the church who was a foreign national
4    and knowingly gave the money, would they be subject to
5    investigation and ultimately prosecution under this
6    bill, not whether it happens, but if that happened --
7              REP. SEITZ:  Remember, Member -- M- --
8              REP. ISAACSOHN:  -- would -- would this bill
9    apply to them.
10             REP. SEITZ:  -- Mr. Chairman --
11             REP. PETERSON:  You've addressed it.
12             REP. SEITZ:  -- I'm not going to speculate on
13   -- on hypotheticals, number one. Number two, I can tell
14   you that the Catholic Conference was fine with either
15   the language in 305 or with the language here. So if
16   they were worried about it, we would not be hearing
17   that they're fine.
18             REP. PETERSON:  Seeing no further questions,
19   we'll move onto the other item on our agenda, House
20   Bill 2.
21
22
```

```
 1                  CERTIFICATE OF TRANSCRIBER

 2        I, Chris Naaden, a transcriber, hereby declare

 3   under penalty of perjury that to the best of my ability

 4   from the audio recordings and supporting information;

 5   and that I am neither counsel for, related to, nor

 6   employed by any of the parties to this case and have no

 7   interest, financial or otherwise, in its outcome, the

 8   above 51 pages contain a full, true and correct

 9   transcription of the tape-recording that I received

10   regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13   the event of the action.

14

15   _____

16        June 6, 2024

17        Chris Naaden

18

19   (540606, Ohio House Government Oversight Committee - 5-

20   28-2024 - Special Session)

21

22
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                  53

| A |
|---|

**ab**
30:7
**ability**
46:1, 52:3
**able**
49:6
**abortions**
36:22
**about**
2:10, 2:19,
3:1, 3:19, 9:1,
9:13, 13:16,
14:3, 14:5,
15:20, 18:12,
18:13, 18:20,
22:9, 22:10,
22:12, 25:12,
25:13, 31:16,
33:19, 34:3,
35:8, 35:14,
36:14, 36:20,
37:2, 37:11,
38:2, 38:8,
41:4, 42:5,
45:1, 47:16,
50:2, 51:16
**above**
52:8
**absolutely**
30:8
**accept**
42:12, 47:18,
48:1, 48:8
**acceptance**
14:6
**accepting**
48:4
**acceptor**
47:21
**accessible**
42:1
**achieve**
11:6
**acknowledge**
32:13
**action**
52:13

**actual**
17:13
**actually**
13:3, 17:14,
21:6, 47:13
**add**
31:3, 43:22
**adding**
42:11
**address**
10:7, 21:6,
43:19
**addressed**
5:17, 45:4,
51:11
**addressing**
21:6
**adequately**
36:4
**adhering**
6:22
**affect**
38:11, 50:5
**affected**
38:16
**affirmed**
19:16, 46:22
**after**
5:19, 19:2,
40:19
**ag**
31:9, 44:20,
45:3
**again**
8:1, 13:2,
22:7, 22:9,
27:16, 30:2,
32:2, 34:19,
44:12, 45:5,
48:6
**against**
33:9, 33:11,
33:13, 34:21,
34:22, 35:18
**agencies**
30:21
**agenda**
51:19

**ago**
4:10, 16:13,
32:22, 34:3,
35:5
**agree**
46:3, 46:17,
49:19
**agreed**
50:19
**agreeing**
27:17
**agreement**
8:12, 8:14,
27:13
**al**
33:12
**align**
5:6, 5:7
**all**
3:7, 4:4, 4:11,
5:1, 7:12, 7:16,
7:19, 8:13, 9:1,
10:18, 15:13,
16:1, 16:16,
19:4, 19:5,
19:17, 19:22,
21:14, 21:21,
21:22, 25:5,
27:16, 29:20,
31:13, 31:15,
40:21, 41:6,
49:12
**allowed**
20:7, 20:15,
31:19, 35:12,
41:6
**almost**
50:12
**alone**
3:3
**along**
20:11, 44:10
**already**
4:20, 11:22,
22:22, 23:9,
33:8, 33:9,
33:10, 33:13,
33:19, 34:11

**also**
3:1, 4:17, 6:8,
12:6, 15:8,
21:3, 22:8,
33:22, 34:9,
38:19, 43:3,
48:3, 48:21
**always**
12:10, 42:6
**ambit**
20:2
**amenable**
25:16
**amend**
40:13
**amended**
8:19
**amendment**
4:1, 4:9, 40:9,
40:11
**amendments**
41:5
**america**
14:10
**among**
8:4, 44:17
**amount**
9:7
**announcement**
44:11
**another**
7:2, 7:22,
30:22, 50:13
**answer**
26:15
**answered**
13:9, 23:8,
23:9
**answers**
21:9
**any**
5:12, 14:3,
14:5, 15:15,
18:18, 25:20,
29:7, 30:14,
37:7, 37:19,
40:20, 45:11,
52:6

anybody
39:15
anything
12:4, 22:6,
35:8
anywhere
8:15, 26:6
appealed
19:15
applicable
33:1
applied
4:11, 32:16
applies
40:8
apply
14:20, 51:9
appreciate
2:8, 31:5, 44:5
appreciation
44:1
approach
6:11, 8:18
approached
12:18
appropriate
11:3, 43:20
approval
4:10
arch
14:13
areas
17:15
aren't
31:19
argued
27:11
arguing
27:4, 30:21
argument
8:4
army
29:21
around
17:1, 22:3,
23:2, 47:13
asked
23:8, 36:3,

51:2
assessment
18:20
assiduous
39:20
association
29:8
assume
30:17, 31:2
assure
49:1
attorney
6:5, 28:9,
28:17, 29:1,
29:6, 29:13,
29:20, 30:9,
30:10, 30:11,
30:13, 30:17,
30:19, 44:19,
45:9
attorneys
29:8
audio
52:4
authority
45:10
aware
13:2
away
28:22

**B**
b-l-u-m-a-n
19:11
back
26:11, 27:9,
47:16, 50:1
bad
35:12, 39:17
balance
34:8
ballot
3:9, 4:21,
5:16, 7:9, 10:1,
11:4, 11:19,
14:14, 21:13,
32:6, 32:14,
33:22, 34:7,

34:12, 34:15,
35:19, 35:21,
36:1, 37:7,
37:12, 37:19,
38:8, 38:11,
38:16, 40:9,
40:10, 40:13,
40:14, 40:20,
40:22, 41:10,
44:19, 44:21,
45:7, 45:12,
45:22, 46:2,
46:15, 46:16,
46:21
ban
2:14, 3:3, 3:8,
4:14, 4:20,
5:14, 6:1, 6:10,
6:19, 20:4,
21:13, 22:13,
32:20
banning
8:1, 20:11
based
24:8
basically
25:8, 33:9,
42:10
basis
3:3, 17:4,
27:22
because
2:18, 3:5, 7:4,
8:13, 9:20,
10:5, 11:1,
13:2, 14:1,
16:12, 17:19,
20:5, 21:5,
22:6, 24:12,
24:20, 29:5,
29:18, 35:12,
35:17, 36:13,
38:12, 39:11,
46:20, 47:2,
48:14, 48:22
been
5:2, 8:5,
12:10, 17:3,

18:15, 20:22,
22:3, 24:15,
33:17, 44:21,
46:5
before
2:2, 8:15,
22:15, 29:3,
35:14, 48:22
being
4:12, 6:10,
6:17, 16:2,
19:18, 20:21,
23:14, 36:4,
42:9, 42:19,
44:22
believe
8:15, 8:16,
26:9, 27:2,
31:12, 31:18,
40:5, 40:7,
48:7, 50:4
belongs
5:16
belt
32:21, 35:3
benefit
36:3
best
8:4, 12:2, 52:3
bet
24:18
better
29:22
between
2:13, 5:10,
6:13, 7:22, 8:7,
10:8, 24:16,
28:21
beyond
22:14
biden
5:15, 8:22,
11:19, 12:5,
21:13, 34:6,
35:6, 39:14
biffy
24:18
big
7:15, 16:13

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

55

**big-time**
47:7
**bill**
2:3, 2:7, 2:10,
2:12, 2:15,
2:17, 2:18,
2:21, 2:22, 3:1,
3:5, 5:10, 5:11,
5:13, 5:14,
5:17, 5:22,
6:19, 7:7, 7:8,
7:12, 8:19,
8:22, 9:1, 9:9,
9:14, 9:21,
10:1, 10:16,
11:6, 11:18,
14:21, 15:8,
17:13, 18:17,
18:19, 20:22,
21:1, 21:5,
22:5, 22:11,
22:15, 23:16,
23:20, 24:1,
24:2, 24:20,
25:7, 25:8,
25:9, 25:15,
25:17, 25:19,
26:9, 26:10,
28:9, 28:13,
30:3, 33:17,
34:10, 35:6,
35:15, 35:20,
36:10, 36:13,
38:1, 42:1,
43:9, 43:12,
43:20, 44:15,
44:18, 45:1,
45:2, 45:17,
45:21, 46:13,
47:13, 47:15,
48:21, 49:4,
49:10, 50:22,
51:6, 51:8,
51:20
**bills**
9:13, 9:14,
15:6, 26:20
**bird**
9:18, 10:4,

10:11
**bit**
7:5, 24:12,
36:13, 44:4
**black's**
26:13
**blah**
26:4
**bluman**
19:11, 19:17,
19:22, 46:21
**boku**
16:14
**boost**
36:7
**both**
2:16, 3:8, 8:7,
15:16, 19:2,
19:21, 24:11,
26:20, 28:3,
33:20, 44:2
**bottom**
30:1
**boundaries**
18:20
**breadth**
2:19, 12:19,
35:15
**bri**
23:5
**bribery**
28:3
**bridge**
2:13, 24:16
**bring**
5:6, 40:6
**bringing**
23:6, 25:6,
25:14
**broad**
27:5, 32:5
**brought**
5:18, 49:2
**brown**
25:3, 25:5,
26:9, 27:2,
27:7, 28:6,
28:8, 28:12,

29:3, 30:5,
30:7, 30:17,
31:5, 31:7,
31:13, 45:16,
45:17, 46:5,
46:9, 46:11,
46:20
**buckeye**
13:4, 13:13,
14:3
**bunch**
26:19, 36:6
**buy**
37:2

---
**C**
---

**c4**
38:19
**call**
12:8, 21:11,
23:9, 23:21
**called**
10:6, 29:9
**calling**
2:8, 10:19
**calls**
8:7
**cambridge**
36:17
**came**
13:3, 51:2
**campaign**
7:3, 12:16,
15:7, 15:13,
15:15, 23:1,
28:2, 29:11,
32:14, 39:6,
42:11, 45:18,
47:18
**campaigns**
4:5, 4:21,
22:11, 22:13,
32:6, 33:13,
35:20, 41:7,
49:7
**can't**
20:6, 30:22
**canal**
46:12, 47:6

**candidate**
3:9, 32:14,
42:10, 45:12,
47:17, 49:7
**candidates**
4:22, 23:3,
41:6
**cannot**
21:16
**caption**
52:10
**card**
20:4, 20:8,
20:15
**care**
2:22, 14:14
**carefully**
20:1
**case**
16:13, 19:11,
19:18, 19:22,
20:1, 20:3,
27:20, 28:13,
31:2, 46:21,
52:6
**catholic**
13:5, 13:14,
14:1, 14:12,
50:4, 50:10,
51:14
**caused**
7:13
**cavanaugh**
19:14
**certain**
2:20, 38:15,
49:16
**certainly**
3:13, 13:4,
20:1, 27:7,
36:18, 44:1,
44:4, 44:10
**certificate**
52:1
**certification**
7:4, 15:7,
15:9, 15:10,
15:16, 16:6,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                                     56

17:5, 17:8,
17:21, 18:1
**certifications**
16:1
**certify**
15:13
**chair**
9:6, 10:18,
12:13, 13:17,
15:2, 17:9,
18:10, 20:20,
25:5, 28:6,
33:5, 34:16,
36:8, 37:16,
41:19, 41:20,
43:1, 44:17,
45:17, 46:9,
47:11, 48:14,
49:22
**chairman**
2:5, 2:6, 10:2,
11:14, 13:1,
13:21, 18:22,
21:8, 22:17,
23:7, 23:13,
24:5, 26:8,
27:6, 29:2,
30:16, 31:11,
32:1, 37:10,
37:22, 38:6,
38:17, 39:12,
40:3, 40:12,
41:14, 41:22,
42:16, 45:6,
46:4, 46:19,
48:6, 49:8,
50:6, 50:17,
51:10
**challenged**
32:8
**chambers**
8:14
**change**
13:13, 32:7,
42:4
**changes**
2:17
**charge**
45:22

**checking**
44:11
**chilling**
45:21
**china**
39:13
**choice**
12:9
**chris**
52:2, 52:17
**christian**
1:22
**church**
14:11, 51:3
**cincinnati**
27:14
**cir**
30:14
**circuit**
19:14, 27:17
**circumstance**
30:14
**circumstances**
38:15
**citizen-led**
46:2
**citizens**
40:8, 49:16
**city**
3:15
**civil**
16:8
**claims**
22:11
**clarification**
37:16
**clarify**
40:4
**clause**
23:16, 23:18,
23:20, 24:3,
24:17, 24:21
**clear**
9:16, 10:20,
27:10, 27:16,
35:18, 38:10,
45:2
**clearly**
8:20

**close**
8:5
**closer**
19:6
**clouding**
39:21
**collaboratively**
35:13
**colleag**
9:17
**colleague**
5:18
**colleagues**
9:18, 12:4,
33:20
**collect**
17:1
**come**
8:14, 48:15
**comes**
14:10, 22:12,
50:11
**coming**
10:16, 39:13,
43:4, 47:22,
48:1, 48:4
**comm**
32:8
**comment**
10:3
**commission**
4:19, 5:2, 5:4,
28:15, 28:16,
28:19, 30:10,
32:3, 32:7,
33:14
**commissions**
6:15
**committee**
1:8, 5:21,
11:18, 11:21,
12:2, 15:7,
16:18, 16:21,
23:22, 26:21,
42:11, 43:22,
44:9, 44:12,
45:11, 45:12,
45:13, 46:21,

47:18, 52:19
**committees**
32:15, 45:22,
46:1, 46:15,
46:16
**common**
3:7, 26:11,
26:14
**compan**
11:5
**compares**
5:22
**comparison**
5:21, 15:10
**completely**
34:17, 36:5
**compliance**
7:4
**comply**
28:14
**compromise**
16:3, 16:10,
16:11
**concern**
3:19, 15:20,
25:13, 25:14
**concerned**
14:3
**concerns**
2:18, 3:1,
12:21, 13:20
**concisely**
8:21
**conduct**
6:6
**conference**
13:5, 13:15,
14:2, 26:21,
50:4, 50:10,
51:14
**confined**
21:10
**confining**
7:8
**conflict**
45:9, 45:14
**conflicted**
30:19

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

57

conflicts
45:2
congratulations
9:9
connection
37:12
cons
7:13
consequences
2:20
consider
21:14, 21:16
considered
36:19
consistent
3:17, 47:4
constitutes
26:7
constitution
3:18, 3:21,
33:1
constitutional
4:9, 41:4, 41:5
constrained
21:10, 23:9
construction
26:11
construed
14:4
cont
36:11
contact
8:6
contain
52:8
contained
3:1
context
28:2
continue
10:15, 15:3,
17:10, 28:7,
29:17, 36:9,
36:12, 37:17,
46:10
contribute
20:7, 20:15,
31:20, 33:13,

35:19
contributing
20:5, 20:11
contribution
18:1, 26:3,
42:12, 43:3,
47:19, 48:1,
48:4, 48:8
contributions
15:18, 18:14,
22:13, 22:22,
32:5, 37:12
conversation
24:8
converse
20:8
convicted
27:21
conviction
16:9
copies
5:21
corporation
38:19, 49:5
corporations
3:16, 49:11,
49:15
correct
31:12, 52:8
could
13:19, 14:4,
16:5, 16:20,
27:3, 27:9,
28:1, 31:17,
31:21, 32:7,
32:9, 32:16,
35:7, 39:11,
39:12, 39:13,
39:15, 42:14,
47:15, 48:2
couldn't
13:22
council
3:15
councilman
28:4
counsel
8:5, 8:6, 52:5

counsels
8:7
counter
34:8
county
28:19, 28:22,
29:22
couple
4:10, 12:15,
20:21, 20:22,
32:21, 35:5
court
3:18, 3:22,
18:15, 19:15,
19:16, 25:10,
32:8, 46:22
courts
48:15
credible
38:10
criminal
42:6, 42:8
curious
12:20, 15:9,
18:17, 31:7,
42:5
currently
29:12, 31:20

**D**

damn
35:21
dangerous
39:16
dark
21:3, 21:7,
21:17, 22:10,
22:13, 22:18,
23:2
dash
43:10, 43:15,
43:17
days
34:3, 44:6
deal
5:15, 7:15,
12:11, 14:18,
17:14, 21:2,

21:20, 23:10,
25:9, 27:21,
45:7
dealing
12:16, 23:11,
49:17
deals
5:13, 22:7,
28:9, 40:13,
40:14, 40:15,
40:16, 45:8
decide
37:1
decision
19:15, 19:21,
46:22
decisions
18:15
declare
52:2, 52:12
deemed
46:14
defeat
39:14
defend
37:3
define
26:10
defined
26:6
defines
26:9
definitely
30:5
definition
6:21, 7:1,
20:13, 26:6
delved
18:4
democrat
35:9
democrat's
9:21
democratic
3:20
democrats
44:3
derive
49:12

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                                 58

| | | | |
|---|---|---|---|
| describe | 34:17 | efforts | enforcement |
| 13:19 | distance | 36:7, 44:21, | 6:3, 6:4 |
| described | 6:13 | 44:22 | england |
| 33:15 | distinction | either | 36:17 |
| describing | 2:9 | 13:7, 26:2, | enough |
| 37:5 | dobos | 27:4, 31:1, | 18:8 |
| deserve | 5:18 | 49:7, 51:14 | enshrining |
| 9:20 | document | elected | 32:9 |
| designation | 5:22 | 39:15 | entirely |
| 15:17 | doing | election | 27:16, 35:18, |
| detail | 4:16, 6:1, | 15:14, 16:15, | 47:4 |
| 7:16 | 11:1, 16:16, | 17:20, 22:12, | entitled |
| details | 20:16, 35:8, | 29:7, 36:15 | 10:9 |
| 13:19 | 35:17, 40:10 | elections | equal |
| determination | dollars | 3:8, 3:9, 3:10, | 18:21 |
| 30:13 | 16:19, 38:20 | 4:12, 4:19, 5:1, | equipped |
| determined | donations | 5:3, 6:15, 7:12, | 29:22 |
| 31:3 | 21:3, 22:9, | 8:2, 21:7, | essentially |
| determining | 22:19 | 28:16, 32:3, | 31:9, 40:3 |
| 39:4 | done | 32:17, 33:2, | etc |
| dictionary | 5:19, 12:3, | 33:14 | 42:11 |
| 26:13 | 44:6 | electronic | ether |
| differ | donor | 25:9 | 17:1 |
| 18:18 | 14:4 | else | even |
| difference | doubt | 29:18, 39:6, | 8:16, 8:17, |
| 7:2, 7:22 | 24:22, 50:10 | 43:22 | 17:1, 20:4, |
| differences | down | emails | 21:19 |
| 5:9, 6:2, 19:4 | 38:2 | 44:11 | event |
| different | draftsman | emergency | 52:10, 52:13 |
| 8:22, 25:12, | 8:8 | 23:16, 23:18, | eventually |
| 30:20 | due | 23:20, 23:21, | 8:14 |
| diligently | 10:18 | 24:3, 24:17, | ever |
| 24:16 | dysfunctional | 24:21 | 2:7 |
| dioses | 24:12 | employed | every |
| 14:13 | **E** | 52:6 | 7:3, 40:13 |
| direct | easily | emulate | everybody's |
| 6:14, 8:18 | 42:1 | 4:6, 4:17 | 10:9 |
| directly | eberhart | emulating | everyone |
| 13:7, 40:8 | 44:8 | 6:14, 6:15 | 43:22 |
| disagree | economy | encompass | everything |
| 46:3, 46:6, | 39:18 | 32:5 | 29:18, 44:14 |
| 46:17, 46:20 | effect | end | evidence |
| disclosure | 45:21 | 5:20, 26:20, | 38:10 |
| 14:5 | effective | 27:3, 28:1 | evident |
| discussion | 40:21 | ended | 46:5 |
| 41:2, 41:4, | effort | 28:2 | ex |
| 47:16 | 9:4 | ends | 36:12 |
| dispute | | 30:22, 43:9 | exactly |
| 11:22, 17:6, | | | 19:4, 36:12, |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

59

41:14, 41:15
**example**
14:8, 32:19
**examples**
28:3
**except**
28:17, 46:7
**exception**
4:3, 20:14
**exciting**
9:10
**exercise**
35:2, 35:3,
35:4
**existing**
19:2, 31:18,
32:4
**expect**
41:17
**expenditure**
26:3, 26:4,
37:6, 37:8,
42:13, 47:19,
48:8, 48:9
**expenditures**
4:2, 15:19,
18:2, 18:14
**explain**
42:14
**explained**
34:18
**expressed**
2:19, 27:10,
27:18
**expressing**
12:21
**expressly**
26:2
**extend**
32:13
**extensive**
17:6
**extent**
8:3, 19:8,
19:19, 24:13,
46:7, 49:11,
49:19
**extraneous**
5:12

---
**F**
---
**face**
34:5
**fact**
4:13, 7:15,
8:17, 11:16,
33:16, 33:20,
34:20, 36:21
**factor**
39:4
**failure**
28:13
**fair**
9:7, 18:8, 41:5
**fallacy**
10:21
**falls**
41:22
**falsification**
15:14, 17:20
**familiar**
13:4, 21:17,
27:15
**fanciful**
14:17
**far**
5:4
**farthing**
17:2
**federal**
4:4, 4:7, 4:13,
4:17, 5:6, 6:14,
6:22, 15:1,
18:12, 18:15,
18:18, 18:20,
19:3, 19:6,
20:14, 22:21,
32:12, 32:16,
32:17, 32:20,
33:10, 33:14,
34:12, 34:21,
34:22, 45:1,
46:17
**feel**
40:9
**felon**
16:2

**felony**
15:14, 16:9
**few**
34:3, 44:6
**fight**
14:14
**fighting**
14:13
**figure**
12:2, 19:5
**filed**
47:13
**filing**
15:17, 15:18,
17:20, 25:9
**final**
18:10
**finance**
12:17, 15:15,
23:2, 28:3,
29:7, 29:11,
45:18
**finances**
22:12
**financial**
52:7
**find**
15:22, 17:13,
26:13, 26:14,
44:12
**finds**
14:12
**fine**
16:8, 16:22,
37:9, 51:14,
51:17
**fines**
16:19
**finish**
36:19
**first**
4:1, 5:11,
9:11, 21:9,
25:5, 28:20,
34:18
**fix**
35:15
**floating**
17:1, 47:13

**focus**
23:1
**focused**
2:12
**folks**
5:20, 7:14
**follow-up**
22:1, 22:20,
27:1, 28:6,
30:6, 30:7,
40:1, 42:22,
45:15, 46:9,
48:13
**following**
14:21, 25:20,
30:18
**follows**
19:7
**for-sure**
38:14
**foreign**
2:14, 3:3, 3:8,
3:17, 3:19, 4:3,
4:5, 4:21, 5:14,
6:1, 6:7, 6:9,
6:19, 6:21, 7:1,
7:21, 8:2, 12:6,
14:7, 18:13,
19:19, 19:20,
20:13, 21:2,
21:13, 22:9,
22:19, 22:22,
25:19, 26:2,
29:14, 29:19,
31:19, 33:12,
35:7, 35:19,
35:22, 36:6,
36:14, 36:19,
38:8, 38:10,
38:15, 38:20,
38:21, 39:3,
39:19, 39:21,
40:7, 41:7,
42:13, 43:4,
45:8, 45:11,
45:19, 46:8,
47:3, 47:19,
47:22, 48:2,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                    60

48:5, 48:9,
49:6, 49:12,
49:18, 50:3,
51:3
**forget**
16:15
**format**
19:8
**forth**
5:18
**forward**
5:6
**found**
16:17, 16:18,
27:11, 27:19,
33:10
**frankenstein's**
25:11
**frankly**
24:15
**free**
36:5, 46:15
**friday**
9:19, 29:9
**friend**
39:15
**front**
44:14
**fufora**
7:19
**full**
52:8
**fund**
38:18, 39:8,
39:9
**fundamentally**
33:15
**funds**
49:11
**funk**
26:12
**further**
8:11, 31:14,
51:18, 52:12
**future**
36:3, 40:22

**G**

**gambit**
35:10

**gap**
2:13, 24:16
**gas**
21:1, 22:4
**gave**
32:19, 47:5,
51:4
**general**
4:2, 6:5,
28:10, 28:17,
29:1, 29:6,
29:13, 29:20,
30:9, 30:10,
30:11, 30:14,
30:18, 30:20,
44:19, 45:10
**general's**
28:17
**generally**
13:19
**geometrical**
6:11
**george**
39:10
**getting**
6:16, 9:9,
9:22, 36:22,
50:16
**give**
2:9, 16:1
**given**
7:18, 17:12,
29:5, 43:12,
46:15
**gives**
44:18
**giving**
6:6, 28:22,
29:13, 45:9
**go**
7:18, 11:12,
16:4, 20:10,
26:11, 26:21,
27:9, 37:1,
47:20, 50:1
**goal**
3:7, 7:20, 8:1,
8:20, 11:7

**god**
36:2, 40:18
**going**
10:3, 10:10,
12:4, 15:21,
23:5, 34:10,
36:5, 38:2,
40:18, 43:2,
51:12
**gone**
16:21
**good**
2:16, 4:6,
21:21, 21:22
**government**
1:8, 27:11,
52:19
**governor**
2:8, 10:6,
10:19, 21:11,
23:21, 24:9,
40:6
**governor's**
9:16, 12:8,
24:7
**grapevine**
13:7
**gravity**
5:4
**great**
2:9, 41:2,
41:4, 44:1
**greater**
19:8, 47:3
**green**
20:4, 20:8,
20:14
**grim**
20:18, 20:20,
22:2, 22:18,
22:21, 23:5,
44:16, 44:17,
45:7, 49:21,
49:22, 50:7,
51:1
**groups**
2:19, 12:18,
12:20, 13:20,

35:13
**guess**
10:9, 11:2,
19:5, 21:20,
24:2, 24:6
**guidance**
19:18
**guy**
39:9, 39:12

**H**

**ha**
34:5
**hans**
39:9
**happened**
51:6
**happens**
30:19, 51:6
**happy**
9:2, 26:17
**hard**
15:22
**harvard**
3:12, 47:8
**hear**
14:1, 36:20
**heard**
10:12, 13:7,
15:20, 22:6,
33:6, 34:10
**hearing**
14:8, 33:16,
51:16
**hearings**
21:5, 21:19
**heavily**
38:21, 39:1
**heft**
5:4
**held**
3:22
**helping**
35:9
**here**
2:7, 4:16, 6:1,
7:20, 10:5,
10:10, 12:15,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                    61

20:21, 21:17,
22:3, 22:5,
23:14, 33:11,
36:18, 36:20,
41:3, 49:7,
51:15
**hereafter**
40:14
**hereby**
52:2
**herring**
34:11
**herself**
31:10
**himself**
31:10, 44:21
**hinder**
34:12, 34:15
**hindrance**
44:22
**history**
39:7
**hit**
31:16
**hold**
43:11
**holders**
20:5, 20:8,
20:15
**hope**
3:7
**hopefully**
4:4, 5:19,
26:21
**hoping**
39:6
**horrendous**
16:22
**house**
1:8, 2:3, 2:7,
2:15, 2:17,
2:18, 2:21,
2:22, 3:1, 9:9,
9:14, 9:21,
10:1, 10:16,
11:6, 15:8,
18:17, 18:19,
21:1, 24:10,

24:17, 25:8,
35:15, 43:10,
44:2, 44:22,
47:13, 51:19,
52:19
**householder**
27:9, 28:5
**however**
3:1, 5:1, 23:22
**huge**
16:22
**humphrey**
2:6, 23:12,
23:13, 24:6,
25:1, 26:18,
38:4, 38:6,
38:18, 40:2,
40:13
**hypothetical**
10:22, 14:8,
14:16
**hypotheticals**
51:13

**I**

**idea**
11:22, 20:11
**ideological**
34:5
**illegal**
23:1, 36:7
**im**
26:5
**imagine**
9:6
**immigrant**
14:9
**immunity**
40:17
**impact**
46:7
**impacting**
38:8
**implement**
4:18
**implicit**
26:5, 26:7,
27:3, 27:13,

27:21
**implicitly**
26:3, 26:5,
26:9, 26:10
**important**
4:2, 11:17
**imposed**
7:6
**improper**
17:7
**inadvertent**
14:6, 42:20
**inbox**
44:12
**include**
6:20, 6:22,
15:11
**including**
7:13
**indeed**
3:18, 47:1
**independent**
4:1, 26:4,
37:6, 42:13,
48:9
**indirectly**
13:2
**individual**
16:20, 37:14
**infected**
22:19, 35:22
**infecting**
45:11
**infection**
36:14
**influence**
3:19, 39:6
**information**
52:4
**informed**
36:4
**infrequently**
30:20
**infringement**
46:14
**initia**
7:9
**initial**
15:17, 18:1

**initiated**
7:10
**initiative**
3:9, 7:10,
37:7, 39:1,
40:14, 40:21,
44:21, 45:12
**initiatives**
7:9, 8:9,
34:13, 34:15,
35:21, 36:1,
38:9, 38:11,
38:16, 40:22,
41:11, 44:20,
45:8, 45:19,
45:22
**inserted**
42:10
**instead**
25:7
**institute**
13:4, 13:13,
14:3
**instructions**
17:13
**integrity**
22:12, 36:15
**intended**
2:12
**interest**
2:19, 12:18,
12:20, 45:2,
47:3, 52:7,
52:12
**interference**
39:19, 39:21
**interpretations**
48:16
**intricacies**
29:19
**introduced**
20:22, 24:18,
33:17
**invest**
49:6
**investigate**
29:6, 44:19,
45:10

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                62

**investigation**
51:5
**investigatory**
6:6
**investors**
49:6
**involve**
32:17
**involved**
28:18, 30:12,
30:15, 31:1,
46:21
**involving**
28:4, 28:14
**ipads**
43:16, 47:14
**irrelevant**
11:16
**isaacsohn**
9:5, 9:6, 10:3,
10:18, 11:15,
27:15, 33:4,
33:5, 34:17,
36:8, 36:11,
37:11, 37:15,
37:18, 38:1,
48:19, 48:20,
49:9, 50:13,
50:14, 50:18,
50:21, 51:1,
51:8
**issue**
2:14, 2:16,
3:9, 3:11, 5:14,
11:19, 12:6,
12:19, 14:14,
16:10, 16:12,
21:2, 21:6,
22:7, 25:17,
28:14, 28:21,
29:14, 37:2,
37:19, 38:22,
45:5, 49:7
**issued**
21:11, 32:3
**issues**
7:21, 10:5,
10:7, 10:8,

11:17, 12:10,
12:17, 21:11,
21:13, 23:10,
32:14
**item**
51:19
**items**
2:2
**itself**
3:21, 19:12

**J**

**jack**
40:15
**jail**
27:19
**job**
1:20
**joe**
12:5, 39:14
**judge**
19:13, 19:15,
47:1
**judgment**
39:21
**june**
52:16
**jur**
4:13
**jurisdiction**
4:13, 29:11,
29:13, 29:18,
47:3
**jurisdictionally**
32:16
**jury**
27:11, 27:19
**justice**
19:14

**K**

**keep**
10:15, 23:6,
36:18, 36:21
**kept**
14:8
**kind**
11:15, 12:20,

15:9, 18:17,
23:20, 25:10,
27:13, 27:17,
41:20
**know**
4:4, 5:1, 8:5,
8:13, 10:21,
14:13, 15:20,
17:12, 19:4,
20:1, 20:5,
20:10, 21:18,
21:19, 21:20,
22:5, 23:17,
24:10, 27:7,
27:20, 29:9,
31:3, 31:16,
35:16, 38:12,
38:14, 39:1,
39:4, 39:5,
39:11, 42:5,
43:11, 43:22,
46:11, 47:22,
48:3, 48:4,
48:10, 50:9,
50:11
**knowing**
43:4
**knowingly**
25:20, 42:12,
47:17, 47:18,
47:20, 48:7,
48:10, 50:2,
51:4
**knowledgeable**
38:12
**knows**
36:2, 40:18

**L**

**lady**
14:10
**language**
2:20, 6:18,
13:10, 14:4,
14:5, 14:19,
14:22, 15:12,
29:3, 29:17,
51:15

**large**
8:3
**largely**
49:5
**larger**
21:16, 22:7
**last**
12:15, 29:9,
29:15, 34:13,
38:22, 43:16,
44:6
**latin**
14:9
**laurence**
3:13, 47:5
**law**
4:4, 4:7, 4:13,
4:17, 4:19,
4:20, 5:7, 6:15,
15:1, 20:14,
22:22, 26:13,
28:14, 31:18,
31:21, 32:16,
32:20, 33:9,
33:10, 33:11,
33:13, 33:14,
34:12, 34:21,
34:22, 35:18,
41:4, 41:8,
42:6, 42:8,
42:15, 42:18,
45:18, 46:17
**lawful**
20:9
**laws**
15:15, 18:18,
28:3, 29:7,
29:11
**lawyer**
41:17, 46:12,
47:6, 47:7
**lawyers**
8:4, 29:21
**leads**
41:21
**leave**
20:12
**leaving**
8:21

63

left
19:22
legal
8:5, 8:6, 8:7
legally
31:19
legis
23:3
legislative
26:11
legislatively
7:9
legislators
12:19
let's
6:14, 9:13,
10:15, 11:8,
32:2, 36:16
letter
49:3, 49:19
level
4:7, 4:14,
19:3, 45:13
levels
14:19, 40:16
li
7:17, 42:2
liberal
3:13, 47:7
lieutenant
24:9
life
13:6, 13:15,
14:2
likely
34:15
limits
4:1, 44:19
line
6:8, 6:14,
15:8, 37:4,
42:2, 43:5,
43:7, 43:8,
47:15
lines
26:1
linkage
10:8, 11:20,

12:1
linked
10:20, 10:22
liquor
7:17
listed
52:10
lists
25:19, 25:20
litigated
46:14
litigation
3:4, 27:4,
28:1, 28:2
little
7:5, 24:12,
36:13, 44:3,
46:12, 50:16
live
16:7, 16:20
llc
17:12
local
4:11, 4:14,
7:13, 7:17,
29:22, 32:17,
33:1
loggerheads
30:21
long
5:11, 36:6,
43:13
longer
22:5
look
19:17, 24:12,
39:7, 39:8,
42:2, 43:17
looked
43:16
looking
25:18, 43:12
lost
44:4
lot
25:16, 39:17
lou
29:14

**M**

m
51:7
made
4:2, 10:19,
42:7
majority
34:4
make
2:17, 5:21,
10:9, 21:4,
22:8, 26:3,
33:1, 33:8,
37:2, 42:18
makes
22:22, 30:12,
33:15, 37:5
making
7:15, 8:10,
8:15
man
27:19
mans
14:19
many
2:22, 35:16
mar
39:1
marches
8:19
martin
24:19
matter
11:16, 28:10,
28:16, 28:18,
30:12, 30:15,
36:4
maybe
21:19, 29:20,
29:21, 35:5,
38:20, 50:4
mccolley
8:8
mean
6:12, 11:14,
11:15, 15:21,
21:19, 30:19,

34:22, 35:16,
37:20
meaning
26:14, 47:21
meant
10:11
medically
36:22
member
2:6, 51:7
members
18:11
mens
42:7, 42:9,
42:15, 43:1,
47:16
mental
43:2
mentioned
12:17, 15:5,
22:21, 25:13,
35:14
might
7:6, 16:7,
19:4, 20:4,
20:10, 26:17,
34:20
might've
17:3
military
20:10
millions
16:19, 38:20
mind
12:10
minimum
40:15
minority
7:14
minute
13:18, 41:3
miranda
22:4
miranda's
22:5
mistakes
9:21, 42:21
model
14:21

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                                    64

modifies
48:7
modify
45:18
moment
18:11, 44:15
money
2:14, 3:3, 3:8,
5:14, 6:1, 6:9,
6:19, 12:6,
14:7, 14:11,
14:12, 16:14,
16:16, 21:3,
21:7, 21:13,
21:17, 22:10,
22:13, 22:19,
23:2, 29:14,
29:19, 29:20,
35:7, 35:22,
36:6, 36:14,
37:13, 38:8,
38:15, 39:5,
39:14, 40:7,
41:7, 45:8,
45:11, 46:8,
50:3, 50:4,
50:5, 50:10,
51:2, 51:4
monster
25:11
monstrosity
25:7
more
3:13, 6:10,
8:17, 14:21,
18:19, 20:12,
21:4, 25:16,
30:8, 31:22,
38:21, 41:3,
41:17, 49:22
most
34:15
motivations
24:7, 24:8
move
51:19
much
4:15, 4:16,

6:3, 6:8, 6:10,
6:16, 7:5,
10:12, 19:6,
19:8, 20:20
multi-million-do-
llar
16:22
multiple
47:12, 49:1
must
7:3
myself
14:2

N

na
19:19
naaden
1:22, 52:2,
52:17
named
39:9, 44:22
narrow
17:6, 30:8
narrower
29:4, 30:3
narrows
42:17
national
6:21, 7:1, 8:2,
25:19, 26:2,
36:20, 38:20,
38:21, 42:14,
43:4, 47:19,
47:22, 48:2,
48:5, 48:9, 51:3
nationals
4:3, 4:5, 4:21,
6:7, 18:13,
19:20, 20:13,
22:22, 31:19,
33:12, 35:19,
47:3, 49:18,
50:3
nations
45:19
nearly
14:22

necessary
7:20, 24:4,
37:1, 42:14
need
7:15, 9:19,
13:18, 16:6,
17:4, 21:6,
23:17, 23:20,
24:21, 34:8,
48:10
needless
3:4
needs
11:5, 18:3
neither
52:5
never
32:8
new
6:4
next
11:12, 24:20,
40:19
nod
27:12, 27:21
non-citizen
32:20
non-citizens
4:7
normal
30:18
note
5:9, 41:18
noted
15:8
nothing
3:2, 16:5
number
2:10, 12:3,
21:14, 32:11,
32:12, 39:18,
43:5, 49:3,
51:13

O

o'clock
44:13
o'connor
39:1

oak
46:12
obvious
5:11
obviously
11:20
oec
5:7, 6:5,
14:22, 19:3,
33:10, 34:20
offering
3:14
officers
40:18
offline
38:2, 43:20
often
44:21
oh
43:14, 49:21
ohio
1:8, 3:8, 4:10,
4:18, 4:19,
4:20, 5:1, 5:3,
5:8, 5:16, 6:5,
6:15, 13:5,
13:15, 14:2,
16:15, 27:14,
28:15, 32:2,
33:11, 33:14,
35:1, 35:19,
36:17, 36:21,
39:21, 49:7,
52:19
okay
6:2, 8:1, 10:4,
13:11, 13:17,
14:2, 15:2,
16:9, 19:3,
19:20, 20:7,
20:17, 24:14,
25:1, 29:17,
31:5, 32:18,
35:15, 37:18,
39:10, 39:12,
39:15, 48:18,
49:13
old-timer
16:13

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                                    65

| | | | |
|---|---|---|---|
| **one** | **opposition** | **overcome** | **partisan** |
| 2:10, 3:13, | 37:7, 37:19 | 35:7 | 3:11 |
| 7:1, 9:17, 9:18, | **option** | **overly** | **party** |
| 11:1, 11:13, | 7:17 | 27:4 | 7:14, 34:4 |
| 13:2, 13:3, | **order** | **oversight** | **pass** |
| 15:5, 15:6, | 4:8, 14:20, | 1:8, 52:19 | 36:3 |
| 15:11, 16:10, | 34:12 | **own** | **passed** |
| 17:6, 20:3, | **ordinary** | 10:9, 37:13 | 4:9, 11:18, |
| 21:15, 23:17, | 26:14 | **owned** | 32:22 |
| 26:15, 30:21, | **original** | 49:5 | **passing** |
| 31:1, 31:21, | 26:22, 49:10 | **ownership** | 3:4 |
| 32:11, 33:7, | **other** | 3:17 | **pattern** |
| 33:19, 37:2, | 11:1, 12:1, | **oz** | 19:2 |
| 38:21, 38:22, | 18:11, 23:18, | 21:21 | **paying** |
| 39:18, 40:15, | 24:2, 30:8, | | 39:8 |
| 40:20, 49:22, | 44:16, 48:18, | **P** | **pen** |
| 51:13 | 49:20, 51:19 | **pack** | 42:20 |
| **ones** | **others** | 37:12 | **penalize** |
| 5:11, 7:13, | 12:15 | **page** | 14:6 |
| 34:13 | **otherwise** | 24:11, 24:13, | **penalized** |
| **only** | 22:19, 28:18, | 25:7, 25:18, | 42:20 |
| 4:17, 5:13, | 30:12, 30:15, | 26:1, 28:12, | **penalties** |
| 7:8, 13:2, 18:1, | 52:7 | 43:9, 52:10 | 6:9, 7:6 |
| 21:10, 21:12, | **ourselves** | **pages** | **penalty** |
| 23:10 | 19:2 | 1:21, 5:10, | 15:14, 16:2, |
| **open** | **out** | 43:13, 52:8 | 16:8, 17:7, |
| 31:4 | 7:15, 12:2, | **paid** | 17:19, 52:3 |
| **opening** | 16:14, 18:9, | 9:20, 9:22, | **people** |
| 12:17, 15:4, | 19:5, 24:20, | 11:5, 33:21 | 15:22, 24:21, |
| 47:4 | 24:21, 26:13, | **panel** | 34:3, 34:4, |
| **opine** | 26:14, 30:19, | 19:12, 19:13, | 35:7, 37:13, |
| 24:6 | 35:11, 36:13, | 47:1 | 39:5, 39:17, |
| **opined** | 39:13, 39:17, | **paper** | 45:20, 46:13 |
| 4:19 | 49:12 | 5:3 | **perceived** |
| **opinion** | **outcome** | **paragraph** | 35:9 |
| 4:18, 5:3, 5:7, | 39:6, 52:7 | 25:22 | **percent** |
| 10:9, 15:1, | **outfit** | **part** | 4:10 |
| 19:3, 19:13, | 16:14 | 5:13, 17:3, | **perhaps** |
| 19:16, 24:14, | **over** | 24:18, 30:8, | 2:20, 35:3 |
| 24:15, 32:3, | 3:19, 6:6, 8:9, | 49:9 | **perjury** |
| 32:6, 32:7, | 17:6, 29:11, | **participated** | 52:3 |
| 32:8, 32:9, | 29:13, 29:18, | 8:6 | **permanent** |
| 32:10, 32:11, | 32:16, 42:5, | **particular** | 20:9 |
| 34:20 | 44:6, 47:3 | 28:21, 30:14 | **permissible** |
| **opportunity** | **over-breadth** | **particularly** | 19:19 |
| 18:11 | 13:16 | 3:5, 34:4, 42:6 | **perpetual** |
| **opposed** | **overall** | **parties** | 14:10 |
| 16:8 | 13:20 | 52:6 | **person** |
| | | | 16:7 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                    66

peterson
2:2, 9:3,
10:15, 11:9,
11:12, 12:12,
15:3, 17:10,
20:18, 22:1,
22:14, 22:20,
23:12, 25:3,
27:1, 28:7,
30:6, 31:6,
31:15, 33:3,
34:19, 36:9,
37:17, 38:4,
40:1, 41:1,
41:10, 41:13,
41:16, 42:22,
43:21, 45:4,
45:15, 46:10,
47:9, 48:13,
48:18, 49:20,
50:8, 50:12,
50:20, 50:22,
51:11, 51:18
petit
46:2
petitions
7:11, 46:2
ph
7:19, 24:19
phd
36:16, 36:19
phrase
27:2
piece
23:18, 40:5
place
39:16, 41:10
placed
42:7
plate
14:11
played
38:21
playing
38:22
pleadings
25:10
please
31:22, 36:10,

38:1
plus-page
25:7
po
3:19
point
8:12, 11:21,
17:22, 18:9,
22:8, 31:8,
35:4, 36:8,
37:15
points
6:13
police
31:10, 40:17
political
3:16, 11:6,
33:16, 33:17,
34:1, 34:9
politician
44:20
politicians
40:9
politics
3:20, 35:2,
35:4
portion
23:16, 24:3,
28:9
position
46:3, 46:18,
46:20
possibility
27:7
possible
4:16, 8:21,
16:10
possibly
6:17, 38:8
poster
37:2
potential
3:19
power
6:6, 28:22,
29:6, 44:18,
47:1
practices
4:14

precedence
19:2
precedent
3:18, 11:3,
19:10
precinct
7:18
premise
34:18
premises
32:10
prepared
5:19
present
2:4
presented
9:12
presents
45:2
president
5:15, 9:22,
11:4, 33:21,
33:22, 34:6
pretty
6:3, 19:18,
20:1, 21:22,
27:10
prevent
39:20
prevented
34:12
preventing
34:11
pri
41:20
price
9:20, 9:22,
11:5, 33:21
primaries
34:5
principle
4:11, 8:8, 8:9,
32:22
principles
5:6
prior
41:20
pro
26:20, 27:10,

27:18
probably
13:22, 26:20,
29:9, 29:21
problem
14:15, 29:12
problems
44:18
proceed
8:21, 10:17
proceeding
8:13
process
12:2, 31:8
proclamation
9:16
professor
3:12, 49:3,
49:4
professors
3:14
progress
8:10, 8:16
prohibit
4:5
prohibited
4:7
prohibition
6:4, 18:12,
32:12
prohibitions
18:16, 19:6
prohibits
4:1
promise
26:2, 26:6,
26:7, 27:3
proposition
4:9
prosecute
29:6, 45:10
prosecuted
48:2
prosecuting
29:8
prosecution
51:5
prosecutor
28:19, 29:22

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                        67

| | | | |
|---|---|---|---|
| prosecutors<br>28:22<br>protecting<br>36:15<br>protesting<br>37:3<br>provides<br>20:14<br>providing<br>18:13, 36:7<br>provision<br>42:15<br>provisions<br>3:2, 5:12<br>prudential<br>20:12<br>pure<br>10:21, 26:22<br>pursue<br>16:20<br>put<br>4:8, 5:7,<br>23:22, 26:19,<br>27:19, 32:21,<br>34:6, 35:6,<br>42:14, 44:8,<br>48:10<br>putin<br>39:14<br>putting<br>11:19, 35:8,<br>41:8, 44:9<br><hr>**Q**<br>qualified<br>40:17<br>qualms<br>35:8<br>que<br>50:14<br>question<br>4:12, 4:15,<br>5:15, 6:11,<br>8:22, 9:11,<br>10:14, 11:2,<br>13:16, 18:10,<br>20:19, 21:16,<br>23:15, 24:3, | 25:4, 25:17,<br>25:22, 26:4,<br>28:20, 31:13,<br>31:16, 32:15,<br>32:18, 33:4,<br>34:14, 35:6,<br>35:7, 37:19,<br>38:5, 38:8,<br>40:4, 41:2,<br>41:20, 41:21,<br>45:16, 45:18,<br>47:10, 47:20,<br>49:2, 50:1,<br>50:13, 50:20,<br>50:21<br>questions<br>9:2, 9:5, 9:7,<br>13:8, 13:9,<br>20:21, 24:11,<br>25:16, 30:1,<br>35:14, 44:16,<br>48:18, 49:20,<br>51:18<br>quick<br>23:14, 31:16,<br>38:7, 40:4,<br>41:1, 48:20<br>quickly<br>44:10, 46:13<br>quid<br>27:10, 27:18<br>quo<br>27:11, 27:18<br>quoted<br>47:5<br><hr>**R**<br>raise<br>39:5<br>rally<br>37:1<br>ranking<br>2:6<br>rather<br>14:17, 16:5<br>rathole<br>38:2<br>rational<br>25:15 | rationale<br>6:16, 20:6,<br>28:21, 30:2<br>re-explain<br>31:17<br>rea<br>14:19, 42:7,<br>42:9, 42:15,<br>43:1, 47:17<br>reached<br>32:11<br>read<br>20:1, 35:20,<br>38:1, 38:9,<br>48:21<br>real<br>16:6, 16:19,<br>23:1, 23:14,<br>38:9, 40:4<br>reality<br>9:14<br>really<br>7:20, 8:12,<br>11:15, 15:21,<br>22:7, 22:10,<br>30:22, 37:20,<br>38:10<br>reason<br>9:19, 16:12<br>reasons<br>20:3, 20:4,<br>23:19<br>recall<br>11:17, 16:12,<br>35:11<br>received<br>38:19, 52:9<br>receiving<br>43:2, 43:3<br>recent<br>5:2, 28:3<br>recognize<br>44:5<br>recommendation<br>6:5<br>recommended<br>13:13<br>recordings<br>52:4 | red<br>34:11<br>redundant<br>6:17<br>reexamine<br>17:15<br>refer<br>28:15, 28:16,<br>28:19, 30:10,<br>34:2, 47:15<br>reference<br>49:2<br>referencing<br>41:22<br>referenda<br>45:20, 46:1<br>referendum<br>3:10, 7:11,<br>45:13<br>reflects<br>13:12<br>reform<br>23:2<br>regard<br>15:6, 23:15,<br>25:22, 28:8,<br>28:20, 40:6,<br>40:10, 45:20<br>regarding<br>12:19, 18:15,<br>45:19, 52:10<br>regulate<br>47:2<br>regulated<br>19:20<br>regulating<br>3:16<br>related<br>52:5<br>remarks<br>47:5<br>remember<br>51:7<br>remove<br>40:17<br>repeal<br>44:22<br>representative<br>2:3, 5:18, 9:5, |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                               68

| | | | |
|---|---|---|---|
| 9:8, 9:18, 10:3, 10:4, 10:11, 10:12, 11:15, 12:12, 12:14, 13:1, 13:18, 13:22, 17:12, 19:1, 20:18, 22:18, 23:12, 23:14, 24:5, 25:2, 25:3, 25:6, 26:8, 26:18, 27:6, 27:15, 29:3, 30:16, 33:4, 33:7, 34:17, 34:19, 37:10, 37:22, 38:4, 38:7, 38:18, 40:12, 41:16, 42:17, 44:16, 45:7, 45:15, 46:5, 46:19, 47:9, 47:12, 48:7, 48:19, 49:9, 49:21, 50:1, 50:6, 50:13, 51:1 **representing** 31:1 **reproductive** 37:4 **republicans** 44:3 **required** 15:16 **requirement** 7:3, 14:5 **requires** 15:13 **requiring** 14:19, 49:10 **residents** 20:9 **resolve** 35:14 **resolved** 12:6, 13:15 **respect** 10:18 | **respond** 11:9, 12:8, 22:16, 45:5, 50:8 **responses** 38:7 **responsible** 16:18 **restored** 26:22 **restrict** 7:20 **restrictive** 18:19 **retain** 29:11 **revenues** 49:12 **reverence** 46:16 **rewrite** 6:21 **ridiculous** 40:16, 50:17 **right** 13:6, 13:15, 14:2, 19:21, 21:1, 21:22, 31:13, 31:15, 33:8, 34:6, 41:15, 43:18 **rights** 37:4, 46:15, 49:16, 49:17 **riley** 44:8 **ripe** 39:19 **risk** 3:4 **rowan** 24:19 **rule** 3:6, 25:12 **rules** 21:9, 26:11, 30:18 ___S___ **s** 35:15 | **said** 3:14, 3:16, 9:18, 21:21, 29:10, 33:8, 33:21, 34:1, 34:2, 46:6 **same** 4:11, 6:3, 10:12, 12:11, 19:22, 24:11, 24:13, 30:3, 32:22, 33:2, 41:8, 41:21, 44:14 **saturday** 29:9 **saw** 34:13 **say** 8:11, 10:4, 10:12, 10:22, 12:1, 16:5, 23:8, 24:19, 26:16, 26:17, 35:17, 36:16, 41:6, 45:20 **saying** 3:12, 30:22, 46:13, 49:5, 49:15 **says** 21:18, 25:19, 26:1, 28:15, 29:17, 34:21, 36:13, 37:5, 42:10 **scienter** 14:20 **scope** 42:17 **score** 16:5 **seattle** 3:15 **secretary** 24:9 **section** 25:18, 41:21 | **see** 6:2, 6:20, 8:18, 10:14, 13:10, 13:12, 14:22, 16:4, 17:13, 24:2, 26:5, 29:3, 30:7, 43:8 **seeing** 50:12, 51:18 **seems** 3:3 **segregated** 49:11 **seitz** 2:3, 2:5, 9:8, 10:2, 11:8, 11:11, 11:14, 12:14, 12:22, 13:12, 13:21, 15:12, 17:12, 17:16, 17:18, 17:22, 18:5, 18:8, 18:22, 21:8, 22:17, 23:4, 23:7, 24:5, 25:6, 26:8, 27:6, 28:11, 29:2, 30:16, 31:11, 32:1, 33:7, 34:16, 37:10, 37:22, 38:17, 40:12, 41:9, 41:12, 41:14, 42:16, 43:5, 43:8, 43:11, 43:18, 45:6, 46:4, 46:19, 47:12, 48:6, 48:17, 49:8, 50:6, 50:9, 50:16, 51:7, 51:10, 51:12 **senate** 5:22, 6:8, 6:10, 6:18, 7:7, 7:12, 7:14, |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                          69

| | | | |
|---|---|---|---|
| 8:12, 11:18, 14:18, 15:6, 15:11, 15:12, 16:4, 19:8, 24:10, 24:17, 25:8, 25:17, 29:4, 29:5, 30:3, 33:21, 44:3, 49:10 | **short** 5:10 **shortest** 6:13 **should** 3:11, 20:7, 22:10 **show** 48:21 | 13:1, 13:11, 13:17, 13:22, 15:2, 15:4, 17:9, 17:11, 17:17, 17:19, 18:3, 18:6, 18:9, 19:1, 20:17, 41:17, 41:19, 42:17, | 27:3, 34:2, 34:11 **sometimes** 17:12, 48:15 **somewhere** 7:7, 7:18 **sorrows** 14:10 **sorry** 37:15, 50:14 |
| **senate's** 2:13, 5:10, 6:21, 19:7 **senator** 8:7 **sense** 21:4 **sent** 2:14, 2:15 **separate** 5:17, 9:12, 10:5, 11:6, 12:10 | **shown** 47:14 **side** 7:14 **sides** 44:2 **sign** 7:4, 37:3 **signal** 5:9 **signature-kyoss** 52:14 | 43:1, 43:7, 43:10, 43:14, 43:19, 47:9, 47:11, 48:7, 48:12, 48:14, 50:2 **small-town** 46:11, 47:6 **solicit** 42:12, 47:18, 47:21, 48:8 | **sort** 9:11, 16:8, 16:21, 17:4, 27:20, 33:6 **sorts** 5:22 **sound** 19:18 **space** 38:13 **speaker** 27:9, 28:4 |
| **separately** 9:13 **series** 18:15 **serve** 15:22, 20:10 **session** 1:10, 2:9, 2:10, 9:15, 9:19, 10:6, 10:7, 10:19, 12:8, 12:16, 21:10, 21:12, 21:14, 22:3, 23:10, 23:22, 52:20 | **significant** 3:17 **simple** 6:14, 8:18, 25:9 **simply** 41:6 **since** 21:12, 26:10 **single** 3:6, 25:11, 40:13 **sit** 10:10 **site** 3:5, 19:22 | **soliciting** 50:2 **solving** 25:16 **some** 2:17, 2:18, 7:6, 7:13, 8:7, 8:17, 11:6, 12:3, 13:9, 14:11, 16:8, 16:13, 16:14, 16:15, 17:4, 25:10, 25:15, 27:4, 27:13, | **special** 1:10, 2:9, 9:15, 9:19, 10:6, 10:19, 12:8, 12:16, 21:9, 21:12, 21:14, 22:3, 23:10, 52:20 **specific** 24:1 **specifically** 38:16, 44:7 **speculate** 10:11, 51:12 |
| **set** 11:3 **several** 12:18, 22:4 **shall** 25:19, 26:2, 28:15, 28:16, 28:19, 30:9, 30:10, 42:11 **share** 3:7, 8:1, 24:15 | **sittenfeld** 27:14, 27:17, 28:4 **situation** 29:1 **situations** 38:15 **sixth** 27:17 **skindell** 12:12, 12:13, | 27:20, 33:7, 33:20, 35:8, 39:9, 39:12, 41:3, 41:17, 45:20, 46:12, 48:15 **somebody** 7:16, 31:4, 39:10 **somehow** 14:4 **someone** 37:5, 51:3 **something** 5:2, 9:21, | **speech** 5:20, 46:15 **spell** 36:12 **spend** 39:5 **spending** 3:16, 4:3, 4:5, 4:20, 7:8, 7:21, 8:2, 16:16, 39:14 **spent** 14:13, 16:14 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024                                                    70

| | | | |
|---|---|---|---|
| **sponsor** | 19:14, 36:5 | **supreme** | **targeted** |
| 8:9 | **stop** | 3:18, 3:22, | 40:20 |
| **spun** | 39:10 | 19:15, 46:21 | **tell** |
| 14:17 | **straight** | **sure** | 51:13 |
| **stabs** | 6:13 | 12:22, 19:4, | **term** |
| 2:16 | **straightforward** | 22:2, 22:17, | 26:14 |
| **staff** | 11:19 | 32:1, 33:8, | **terms** |
| 44:8 | **strange** | 38:17, 42:7, | 7:5 |
| **staffs** | 19:12, 48:15 | 42:16, 42:19, | **testimony** |
| 44:2 | **strengthening** | 45:6, 48:22 | 1:7, 2:4, 3:15, |
| **stand** | 31:21 | **suspenders** | 9:3, 31:17, |
| 21:17 | **strengthens** | 4:8, 32:21, | 34:19 |
| **stands** | 32:10 | 35:3 | **th** |
| 20:13 | **strictly** | **sweeney** | 21:1 |
| **start** | 8:3 | 22:5 | **thank** |
| 3:12, 9:8, 9:17 | **strip** | **sweeps** | 2:5, 9:3, 9:4, |
| **state** | 24:19 | 7:12 | 9:6, 12:13, |
| 4:6, 4:11, | **structure** | **swiss** | 13:18, 15:4, |
| 4:14, 23:3, | 19:7 | 39:12 | 17:11, 20:17, |
| 24:10, 26:22, | **student** | **switzerland** | 20:20, 22:2, |
| 30:21, 32:17, | 36:16, 36:20 | 39:9 | 23:13, 23:14, |
| 33:1, 35:1, | **study** | ━━━ **T** ━━━ | 25:1, 25:5, |
| 36:17, 43:2, | 19:5 | **take** | 25:6, 25:14, |
| 45:13 | **studying** | 9:2, 41:7, | 28:8, 31:14, |
| **state's** | 36:16, 36:20 | 43:17 | 33:3, 33:5, |
| 47:2 | **stuff** | **taken** | 38:6, 38:7, |
| **stated** | 26:19 | 49:12 | 40:2, 41:16, |
| 8:20 | **subject** | **takes** | 41:19, 43:21, |
| **statement** | 3:6, 3:15, | 8:13, 8:14 | 44:8, 44:17, |
| 15:18 | 25:12, 30:4, | **taking** | 45:17, 47:11, |
| **states** | 32:13, 36:4, | 3:4, 28:22, | 48:14, 49:22 |
| 11:4, 20:9, | 36:9, 37:4, | 46:8 | **theirs** |
| 39:18, 39:22 | 37:8, 51:4 | **talent** | 8:1 |
| **statewide** | **substitute** | 36:18 | **theory** |
| 7:8, 7:10, | 8:19 | **talk** | 33:2 |
| 7:21, 8:2, 32:6, | **sued** | 9:13, 38:1, | **therefore** |
| 37:7, 37:19, | 44:21 | 41:17 | 5:5 |
| 44:20, 45:19 | **sufficiently** | **talked** | **thing** |
| **statute** | 32:5 | 18:12, 31:16, | 10:13, 12:1, |
| 5:5, 5:8, 32:10 | **suggest** | 33:19 | 20:12, 35:12, |
| **statutorily** | 16:3 | **talking** | 35:21 |
| 35:1 | **summarize** | 22:9, 22:10, | **things** |
| **stewart** | 33:6 | 36:14, 37:11, | 12:3, 15:5, |
| 10:12 | **support** | 50:2 | 25:21, 33:7, |
| **stick** | 23:3, 37:6, | **tape-recording** | 42:19, 44:9 |
| 20:2 | 37:18 | 52:9 | **think** |
| **still** | **supporting** | **target** | 2:7, 7:4, 7:19, |
| 4:15, 16:6, | 52:4 | 39:19 | 11:3, 12:14, |

| | | | |
|---|---|---|---|
| 17:3, 17:5,<br>18:3, 19:17,<br>20:12, 22:4,<br>22:14, 24:7,<br>25:14, 29:18,<br>30:2, 32:4,<br>34:14, 35:20,<br>40:18, 46:5,<br>49:14<br>**thinktank**<br>13:5<br>**thomas**<br>2:6<br>**thought**<br>14:17, 31:8,<br>32:4, 35:5,<br>36:12, 47:8<br>**three**<br>13:1, 13:6,<br>14:19, 19:12,<br>46:22<br>**three-judge**<br>19:11<br>**through**<br>7:19, 13:7,<br>26:1, 31:21,<br>32:2<br>**throughout**<br>6:18<br>**throws**<br>14:11<br>**thrust**<br>49:18<br>**tied**<br>40:8<br>**ties**<br>23:21<br>**tiger**<br>5:3<br>**time**<br>8:19, 11:21,<br>12:11, 12:21,<br>14:17, 15:16,<br>17:22, 19:14,<br>21:21, 21:22,<br>31:14, 31:22,<br>35:5, 37:13,<br>49:13 | **times**<br>35:16, 49:1,<br>49:3<br>**tobin**<br>29:14<br>**today**<br>21:18, 39:12<br>**together**<br>9:14, 44:8<br>**told**<br>14:1, 29:14<br>**tomorrow**<br>39:13, 44:13<br>**took**<br>2:22, 26:18<br>**topic**<br>10:16, 22:15,<br>27:8, 29:4<br>**tracing**<br>29:19<br>**tracking**<br>14:22<br>**transcribed**<br>1:22<br>**transcriber**<br>52:1, 52:2<br>**transcript**<br>1:6<br>**transcription**<br>52:9<br>**treasurer**<br>7:3, 15:17,<br>17:5, 17:20<br>**treasurers**<br>7:6, 15:13,<br>15:22<br>**treated**<br>46:16<br>**trial**<br>27:9, 27:14<br>**trials**<br>45:1<br>**tribe**<br>3:13, 47:5,<br>49:3, 49:4,<br>49:15<br>**tried**<br>35:10 | **true**<br>41:13, 52:8<br>**trump**<br>39:15<br>**trumped**<br>49:17<br>**try**<br>7:20, 9:2,<br>14:18, 24:16<br>**trying**<br>4:6, 4:16, 5:5,<br>7:17, 12:7,<br>15:11, 19:1,<br>20:2, 36:21,<br>42:18<br>**turn**<br>25:10<br>**turns**<br>35:11<br>**tweak**<br>13:13<br>**twice**<br>48:11<br>**two**<br>2:2, 2:14, 5:9,<br>6:13, 8:13,<br>8:14, 9:12,<br>10:5, 10:7,<br>10:8, 10:20,<br>11:16, 12:10,<br>21:8, 21:12,<br>30:20, 32:12,<br>33:18, 51:13<br>**type**<br>14:5, 36:18<br><br>**——— U ———**<br>**ubiquitously**<br>40:21<br>**ultimately**<br>14:12, 16:17,<br>46:22, 51:5<br>**unaffected**<br>37:14<br>**unbelievable**<br>36:21<br>**unconstitutional**<br>46:14 | **under**<br>15:13, 16:1,<br>19:3, 20:13,<br>21:9, 26:11,<br>31:18, 41:22,<br>46:16, 49:15,<br>51:5, 52:3<br>**underlying**<br>17:4<br>**understand**<br>31:9<br>**understanding**<br>43:15<br>**underway**<br>40:17<br>**unduly**<br>6:17, 42:19<br>**unintended**<br>2:20<br>**united**<br>11:4, 20:9,<br>39:18, 39:22,<br>49:16<br>**university**<br>36:17<br>**university's**<br>3:12<br>**unknowing**<br>48:1<br>**unless**<br>12:5, 30:10<br>**unlike**<br>5:14, 6:10, 7:7<br>**unrelated**<br>3:2<br>**unseen**<br>3:5<br>**until**<br>8:11<br>**untruthful**<br>17:7<br>**upcoming**<br>40:10<br>**use**<br>34:10<br><br>**——— V ———**<br>**vacuum**<br>9:12 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

72

| | | | |
|---|---|---|---|
| **vague** | **39:4** | **5:19, 6:1, 8:10,** | **wink** |
| 27:5 | **voted** | 8:15, 10:5, | 27:12, 27:21 |
| **valid** | 11:22, 34:6 | 10:21, 19:1, | **wish** |
| 25:14 | **voters** | 20:16, 21:5, | 11:9 |
| **various** | 36:2, 39:22 | 22:2, 22:14, | **within** |
| 2:19 | **voting** | 23:9, 23:10, | 20:2 |
| **vast** | 4:8, 32:20 | 35:17, 37:11, | **without** |
| 29:21 | | 40:10, 42:18 | 6:16, 19:16, |
| **vatican** | **W** | **we've** | 36:3 |
| 50:5, 50:11, | | 10:16, 16:21, | **witness** |
| 51:2 | **wage** | 17:12, 20:1, | 9:5, 28:18, |
| **verbose** | 40:15 | 21:19, 23:8, | 30:11, 49:21 |
| 6:17 | **wagnalls** | 34:10, 41:3 | **wizard** |
| **version** | 26:12 | **websters** | 21:21 |
| 2:13, 6:18, | **walk** | 26:12 | **women** |
| 19:7, 19:9, | 31:21, 32:2 | **week** | 36:22 |
| 24:20, 29:4, | **want** | 8:20, 10:14, | **work** |
| 29:5, 43:9 | 15:21, 17:15, | 24:22, 29:15, | 9:4, 18:6, |
| **versions** | 22:16, 23:15, | 44:4 | 35:13, 44:5, |
| 24:17, 44:15, | 23:17, 23:22, | **weekend** | 45:21 |
| 47:12 | 27:8, 29:10, | 44:4 | **working** |
| **vesting** | 31:3, 33:6, | **weeks** | 8:17, 12:19, |
| 6:4 | 34:5, 36:1, | 35:5 | 24:16, 42:5 |
| **vice** | 36:12, 36:18, | **welcome** | **world** |
| 2:5 | 37:1, 39:10, | 22:16 | 3:14, 39:16, |
| **victim** | 39:20, 40:3, | **weren't** | 39:18 |
| 28:18, 30:11 | 44:5, 44:7, | 48:22 | **worried** |
| **video-recorded** | 48:21, 50:1 | **whatever** | 45:1, 51:16 |
| 1:6 | **wanted** | 13:15, 14:14, | **wouldn't** |
| **view** | 22:8, 38:11, | 26:12 | 21:4, 23:1 |
| 6:17, 13:14, | 38:14 | **whatsoever** | **written** |
| 49:16 | **wanting** | 45:14 | 3:20, 4:18, |
| **viewed** | 3:8 | **whereby** | 5:3, 19:13 |
| 4:20 | **wants** | 20:14 | **wrong** |
| **violated** | 40:6, 42:2 | **whether** | 16:17 |
| 15:15 | **way** | 4:12, 5:15, | **Y** |
| **violates** | 8:4, 12:3, | 7:9, 30:13, | **yeah** |
| 25:11 | 14:12, 17:1, | 32:15, 51:6 | 11:11, 11:14, |
| **violation** | 18:18, 19:10, | **whole** | 16:6, 17:16, |
| 6:9, 28:14, | 26:16, 31:8, | 38:1 | 18:5, 22:2, |
| 29:7 | 34:9 | **willing** | 22:21, 23:19, |
| **violations** | **ways** | 15:22 | 41:9, 41:12, |
| 45:11 | 25:12, 33:18 | **winchester** | 45:6 |
| **virginia** | **we'll** | 46:12, 47:7 | **year** |
| 16:14 | 16:4, 21:20, | **wind** | 5:16, 14:14, |
| **vladimir** | 24:22, 41:3, | 16:21 | 34:13, 38:22, |
| 39:13 | 44:14, 51:19 | **wing** | 39:2, 40:19 |
| **vote** | **we're** | 34:6 | |
| 12:4, 20:6, | 4:16, 5:5, | | |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052824
Conducted on May 28, 2024

73

**years**
2:7, 4:10, 5:2,
16:13, 32:21,
42:5
**yost**
44:20

**$**

**$10**
37:2, 37:8
**$10,000**
37:8

**0**

**00**
44:13
**000**
37:8

**1**

**11**
44:13
**112**
21:1, 21:18
**114**
2:15, 2:18,
2:21, 12:20,
26:19, 35:15,
49:13
**1146**
42:3
**1149**
43:7, 43:8
**13**
32:4
**135**
21:1
**14**
25:18, 26:1
**15**
25:12
**1630**
38:18, 39:8,
39:9
**18**
28:12
**19**
28:13

**2**

**200**
25:7
**2004**
12:15
**2021**
3:14, 4:19,
32:3
**2024**
1:9, 52:16,
52:20
**21**
5:10, 25:6,
43:9, 43:13
**215**
49:10
**24**
2:6
**28**
1:9, 52:20

**3**

**303**
15:8, 17:17
**305**
2:16, 2:17,
2:22, 3:1, 5:11,
5:13, 5:14,
13:10, 13:12,
25:8, 26:17,
51:15
**3517**
32:4
**3517.13**
41:22
**395**
26:1
**397**
26:1

**4**

**40**
3:2
**401**
47:15
**402**
47:15

**418**
15:9, 17:17

**5**

**5**
52:19
**51**
52:8
**52**
1:21
**540606**
1:20, 52:19

**6**

**604**
43:9
**66**
24:21

**7**

**77**
4:10

**9**

**92**
11:18
**99**
24:22

# Exhibit J



# Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924

**Date:** May 29, 2024
**Case:** 2024 Ohio Campaign Finance Litigation

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY



```
 1
 2
 3
 4
 5
 6              TRANSCRIPT OF VIDEO-RECORDED
 7                   TESTIMONY OF THE
 8      OHIO HOUSE GOVERNMENT OVERSIGHT COMMITTEE
 9                    MAY 29, 2024
10                  SPECIAL SESSION
11
12
13
14
15
16
17
18
19
20   Job No.: 540606
21   Pages: 1 - 84
22   Transcribed by: Christian Naaden
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
 1                P R O C E E D I N G S
 2           REP. PETERSON:  We have two bills before us
 3     today. House Bill 1 for first hearing. We have several
 4     people presenting in person testimony and there's
 5     extensive written testimony. Our first presenter today
 6     is Dr. Authur Lavin. Dr. Lavin, thank you for joining
 7     us today. We look forward to your testimony.
 8           DR. LAVIN:  Thank you, Sir. Chairman Peterson,
 9     Vice Chair Thomas, Ranking Member Humphrey, members of
10     the Government Oversight Committee, thank you for the
11     opportunity to write opponent testimony today on House
12     Bill 1.
13           My name is Dr. Authur Lavin. I'm a retired
14     pediatrician and head a group of 400 physicians in
15     Greater Cleveland who are devoted to the just provision
16     of healthcare. I got involved in this issue some time
17     ago because as a doctor, and representing a group of
18     400 doctors, we were concerned that laws passed by this
19     general assembly and supported by this administration
20     put the lives of the patients we care for at risk.
21           And so, we organized to help citizens have a
22     voice in this question. And that led, of course, to the
```

1    well-known event of Issue One last year. This

2    represents over a 100-year tradition, over a century

3    tradition in the State of Ohio that is highly valued

4    and cherished over the years.

5          And we, as a group of physicians, were

6    dismayed to see attempts made last year over and again

7    to stifle the voice of the people to somehow inhibit

8    the process of a system led ballot initiative.

9          The people's voice was heard, and resoundingly

10   so. Large majorities came out and said we wanted to

11   vote at a 50 percent majority and a large majority came

12   out and supported the amendment of the constitution.

13         I'm here today because I've heard recently

14   that bills have come to the floor, in particular this

15   one, House Bill 1 that would, once again, try to impede

16   the voice of the citizen in protecting their ability to

17   speak in the process of a ballot initiative.

18         And I'm concerned as a physician that, once

19   again, we will face a general assembly that will put

20   lives at risk with legislation that could do that. And

21   if the people's voice is inhibited from protecting

22   their own lives, that's something I think every doctor

```
1      should be concerned about. And that's why we're here.
2            We're concerned about House Bill 1 for three
3      particular reasons. The first is that it requires that
4      people who sign a petition for ballot initiatives in
5      the future disclose their signature publicly.
6            And we know today the risk that citizens have
7      in disclosing their activities publicly. I think
8      there's no doubt in my mind this would have a chilling
9      effect on people signing partitions, participating in
10     the democratic, small d, process.
11           The second is an increase in financial
12     liability for participating. I lead a group of 400
13     doctors. I actually don't know the nationality of each
14     of these physicians. I don't know the nationality of
15     their spouses. Many of them contribute to ballot
16     initiative efforts.
17           I don't like the idea of myself being
18     financially liable or any of my members of my
19     organization or other citizens of Ohio facing financial
20     liability if it happens that someone they're connected
21     with isn't a U.S. citizen.
22           Again, I see the threat being addressed by the
```

1    bill, having to do with undue influence from foreign

2    nations but I think an unintended consequence that is

3    significant would be chilling the ability of people who

4    are here legally, with a green card let's say,

5    participating in the democratic process by facing

6    financial liability that would be created by this law.

7         And the third point is that the bill elevates

8    the level of investigation for questions about

9    participating in the democratic process, this cherished

10   process, of the ballot initiative that we -- we love in

11   the State of Ohio.

12        It elevates investigation to the level of the

13   Ohio Attorney General as opposed to a -- a local

14   investigation. So, in summary, the Doctors of Northeast

15   Ohio have their eyes open to the actions of you, our

16   representatives, the Ohio General Assembly and here at

17   the House of Representatives.

18        And we're concerned about an actual intent,

19   perhaps, being part of this effort with House Bill 1 to

20   silence or dampen the voice of the citizen.

21        The citizens, though, are watching and as many

22   of their doctors, we appear in testimony before this

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    important committee of the Ohio House of

2    Representatives, to call on this crucial bastion of

3    democracy, this Ohio House, to reject all attempts to

4    silence the voice of its citizens and the core of the

5    purpose of democracy. Thank you.

6            REP. PETERSON:  Thank you for your testimony.

7    Are there questions for the witness?

8            DR. LAVIN:  Thank you.

9            REP. PETERSON:  Representative Isaacsohn.

10           REP. ISAACSOHN:  Thank you, Chair. Thank you

11   so much doctor for being here today and for all of your

12   advocacy on behalf of your fellow citizens of the

13   state. I want to start with, do you have a sense that

14   it's clear what this bill would do or -- or how it

15   would impact the members of your organization?

16           Do you have a sense that it's very obvious and

17   clear what the punishments would be? What the nature of

18   the investigations would be? Or is it confusing at all?

19           DR. LAVIN:  I would -- it's completely

20   unclear. First of all, it's happening very rapidly. I

21   don't think most of our members have had a chance to

22   read the proposed legislation. And when I do read it,

1    it's not clear at all what my liability would be if I

2    continue to participate in our democracy.

3              REP. PETERSON:  Continue.

4              REP. ISAACSOHN:  Thank you. That's -- that's

5    what it sounded like from your testimony. So, I want to

6    dive into some of the ways in which that lack of

7    clarity could impact the members of your organization.

8              So, for example, let's say there's a member of

9    the organization, a doctor, who wants to get involved

10   politically but, you know, not but, but they have a

11   spouse who is a foreign national who is not a citizen

12   of the United States, cannot contribute to political

13   campaigns.

14             They have a co-mingled account but the

15   physician in question wants to participate, wants to

16   make their voice heard politically with your group. Do

17   you think this bill is clear to them what would be

18   limited and how they might be investigated and what

19   they'd be liable for?

20             DR. LAVIN:  I suppose I should say, through

21   the Chair to the representative, no, it's not clear at

22   all. I think -- I mean, let's face it, doctors aren't

```
 1     politicians. We're not involved in the legal process at

 2     all.

 3             When we hear that there's going to be

 4     liability for some types of participation, and the

 5     types aren't carefully delineated, that frightens

 6     people. People are getting scared enough as it is to

 7     speak up. This only -- this bill, I think, only

 8     heightens that sense of fear.

 9             And the fact that it's not clear is a -- is a

10     very powerful tool to scare people from participating.

11             REP. PETERSON:  Continue.

12             REP. ISAACSOHN:  So, given the -- the

13     uncertainty, the fear, the confusion you're describing,

14     looking both back at the political activity that has

15     taken place in your group and looking forward to any

16     future political activity, do you think this bill, as

17     drafted, would hinder political activity?

18             Would make people less likely to have

19     participated in the past or participate in the future,

20     given the fear and uncertainty?

21             DR. LAVIN:  So again, through the Chair to the

22     representative, I'm deeply concerned about that. I'm
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1   glad you asked that question, Representative Isaacsohn.
2   The -- I -- I feel it myself and I'm very involved. I'm
3   head of the organization. And I'm here. So, I'm not
4   frightened to participate, obviously.
5           But this bill frightens me because there are
6   hidden liabilities. Hidden liabilities always cause
7   fear. When we grant the state power to hurt a citizen
8   and -- and those powers aren't well known by the
9   citizen, then a citizen like me and the doctors in my
10  group will be frightened, more frightened to
11  participate.
12          And I actually have a concern about whether
13  that's one of the not so unintended consequences
14  because of the actions taken by the government, by the
15  state of Ohio, last year, which clearly organized to
16  try to decrease the power of the citizen's voice.
17          So, we saw that intent in clear light last
18  year. I'm not sure why we wouldn't be concerned that
19  similar motives might be operating here on House Bill
20  1.
21          REP. PETERSON:  Representative Skindell with a
22  question.
```

| | |
|---|---|
| 1 | REP. SKINDELL: Thank you, Mr. Chair. Thank |
| 2 | you doctor for your testimony today. I don't know if in |
| 3 | the -- the issues that you've dealt with -- the ballot |
| 4 | issues that you've dealt with if there's been campaign |
| 5 | violations that gone before the elections commission. |
| 6 | And normally under today's procedure, without |
| 7 | any changes of the law that we see here, the campaign |
| 8 | commission would work with the -- the -- the committee |
| 9 | to try to resolve any issues. |
| 10 | And sometimes just the -- there's no referral |
| 11 | to any prosecutor. There' s just sometimes they work |
| 12 | out the issue or the commission may impose a small fine |
| 13 | or something like that. Have you had any of those |
| 14 | dealings with the commission? |
| 15 | DR. LAVIN: Through the Chair to the |
| 16 | Representative, no, Sir. |
| 17 | REP. SKINDELL: Okay. |
| 18 | DR. LAVIN: The -- yeah, no. In fact, we've |
| 19 | never actually anticipated any such interventions. |
| 20 | Everything we do is pretty simple and straightforward |
| 21 | in terms of contributions and participation in the |
| 22 | democracy. |

1          We've never really had to think about

2     violating those things. Hasn't come up as something

3     we're worried about. And it's never happened.

4          REP. PETERSON:  Follow up?

5          REP. SKINDELL:  Okay. Not at this time. Thank

6     you, Mr. Chair.

7          REP. PETERSON:  Other questions for the

8     witness? Chair has one quick question. So, yesterday in

9     committee when the sponsor was here, a lot of these

10     points that you talked about were discussed yesterday

11     with the sponsor. He recognized that, you know, those

12     issues are being worked on.

13          Would your organization have a problem with a

14     bill that very simply said, you know, no foreign money,

15     matching the law that all of us, you know, as

16     candidates can't take foreign money. If it was -- if it

17     was simply ballot initiatives matching that, would your

18     organization have a concern with it?

19          DR. LAVIN:  I'd have to take a look at the

20     specific language. You know, as we all know --

21          REP. PETERSON:  Sure.

22          DR. LAVIN:  From years in -- in living under

1    the law, devil is in the detail. So, I wouldn't be able

2    to comment on a bill that hasn't been drafted yet.

3           REP. PETERSON:  But the concept -- the concept

4    simply matching ballot initiative language to the laws

5    that we're under -- that we operate under that have

6    been in existence for years, would that be a -- the

7    concept. Does the organization have a problem with it?

8           DR. LAVIN:  Well, I think the phrase that

9    catches me is foreign money. So, as a physician, I'm

10   not really in a position to say what that means. I'd be

11   relying on you all to tell me what it means. But

12   depending on what it means, I'd have a different

13   response.

14          REP. PETERSON:  Okay. Thank you. Appreciate

15   you traveling down today. Oh, I'm sorry. Representative

16   Brown has a question.

17          REP. BROWN:  Thank you, Chair and thank you

18   doctor for your testimony here today. In your written

19   testimony you indicate that it is obvious, you say,

20   that the bill is not intended to respond to possible

21   interference from Russia, China or Iran.

22          If they were, they would block their

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    interference in all ballot initiatives, including those

2    initiated by Ohio's General Assembly. So, you -- you

3    make a distinction between ballot initiatives, which

4    are created by citizen led petitions versus those

5    emanating from the -- from the General Assembly.

6    Correct.

7              And this bill doesn't deal with ballot

8    initiatives coming from the General Assembly. Is that

9    Correct?

10             DR. LAVIN:  So, through the Chair to the

11   Representative -- I should have said through the Chair,

12   initially --

13             REP. PETERSON:  You're doing great.

14             DR. LAVIN:  So, what I was getting at in the

15   written testimony was that the bill raises the question

16   about threats of interference from other nations, is

17   the way it seems one of the intents of the bill is.

18             But as I understand the way the bill is

19   currently drafted, it would touch on people who have

20   nothing to do with foreign governments' activities. So,

21   you could have a doctor married as the Representative

22   Isaacsohn referred to, married to a foreign citizen,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    has a green card, here legally.

2            The bill might make it illegal for them to --

3    for that doctor who is a citizen to contribute if his

4    spouse is a foreign citizen. So, it -- it -- it goes

5    beyond protecting the United States in this process

6    from the impact of foreign governments and therefore in

7    government -- governmental policies.

8            If -- if that is the concern, so, the first

9    question is why expand it to any foreign national --

10   that concern? And then the second point is, if -- if

11   there's that deep a concern about the influence, and I

12   would say -- I'm not making the distinction between

13   ballot initiatives and other campaigns or political

14   events.

15           If -- if the Ohio House sees foreign national

16   influence as harmful, why isn't the bill -- why is it

17   focused on ballot initiative not all political process?

18           REP. PETERSON:  Other questions for the

19   witness? Thank you for traveling down and joining us

20   today.

21           DR. LAVIN:  Thank you, Chair.

22           REP. PETERSON:  Next, we have Spencer Dirrig

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    with Ohio Environmental Council. Thank you for being

2    with us today.

3            MR. DIRRIG:  Good morning, Chairman. Just one

4    slight correction, Ohio Environmental Council Action

5    Fund.

6            REP. PETERSON:  Oh, I'm sorry. Thank you.

7            MR. DIRRIG:  It's the organization I'm here

8    representing today.

9            REP. PETERSON:  Thank you for clarity.

10           MR. DIRRIG:  Thank you. Good morning, Chair

11   Peterson, Vice-Chair Thomas, Ranking Member Humphrey

12   and members of the Ohio House Government Oversight

13   Committee. Thank you for the opportunity to testify

14   before this committee today on House Bill 1,

15   legislation on campaign finance law regarding foreign

16   nationals and statewide initiatives.

17           I am Spencer Dirrig. I'm proud to serve as the

18   director of the Ohio Environmental Council Action Fund

19   representing citizens across the state of Ohio who care

20   about our environment and our democracy.

21           At the Ohio Environmental Council Action Fund,

22   we know that a healthy and inclusive democracy is
```

```
1    essential for a healthy environment. We oppose

2    legislation designed to restrict the power and freedom

3    of Ohioans to organize and participate in the

4    democratic process.

5          The voices being silenced by this legislation

6    belong to real people who genuinely desire to improve

7    their communities. My grandparents took the very little

8    money they had and brought my mother to this country

9    because they believed America was a shining beacon of

10   freedom and democracy.

11         Unquestionably, becoming a United States

12   citizen was truly the best day of their lives and they

13   treasured that accomplishment immensely. But that

14   process is long and arduous.

15         They spent eight and 14 years, respectively,

16   in this nation before becoming citizens. And throughout

17   that time, they donated to non-profit organizations.

18   They organized community members to support one

19   another. And they supported issues that they cared

20   deeply about.

21         This legislation is antithetical to the

22   democracy that my family and many others came here to
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    experience. The OEC Action Fund supports disclosure and
2    transparency in campaign finance, whether regarding
3    ballot initiatives or electoral candidates.
4            Such disclosure requirements should be evenly
5    applied to all organizations ensuring transparency in
6    Ohio's elections. And those disclosure requirements
7    should not be designed around targeting immigrants and
8    the organizations they support.
9            HB 1's language creating alternative political
10   organizations and their associated disclosure
11   requirements are not actually about ballot initiative
12   transparency. They are designed to chill grass roots
13   organizations supporting ballot initiatives and punish
14   them for inclusively working with their communities.
15           If this body would like to truly improve
16   transparency by increasing disclosure across the board
17   for organizations and individuals that engage in
18   political expenditures, we'd surely welcome that.
19           This legislation, on the other hand, is a
20   targeted effort to attack a small subset of
21   organizations and individuals and it's being presented
22   in bad faith. It's crucial to note that the
```

1    contribution of foreign money to influence domestic

2    elections is already illegal under federal law and

3    these restrictions already apply to state elections.

4            However, HB 1 goes beyond these necessary

5    measures and instead it aims to impose complex, broad

6    and unclear restrictions on local, citizen led

7    organizations that support ballot initiatives.

8            Non-profit organizations, including those that

9    support environmental causes, receive donations from a

10   variety of sources. This legislation, if enacted, would

11   not only stifle the voices of Ohioans but would also

12   hinder their ability to support causes that directly

13   impact them.

14           Donations from foreign sources in other

15   countries are already regulated by federal law. Any

16   legislative -- legislation specifically targeting those

17   sources would be duplicative. Thus, this bill is

18   unnecessary for a more narrowly tailored purpose and in

19   broad form restricts the first amendment rights of all

20   Ohioans.

21           Of import, U.S. residents who are not yet U.S.

22   citizens are still afforded rights under the U.S.

1    Constitution including their first amendment rights. As

2    demonstrated during the August special election last

3    year, Ohioans cherish their right to use ballot

4    initiative when necessary to make changes in our state.

5          They are ready and willing to act in defense

6    of our democracy. This bill should be called what it

7    is, an attack on Ohioan's rights to organize. Given the

8    negative implications of HB 1, we strongly urge members

9    of the Ohio House Government Oversight Committee to

10   vote against this bill.

11         It's crucial that we protect the rights and

12   voices of all Ohioans. Thank you for the opportunity to

13   address this body on such an important issue.

14         REP. PETERSON:  Are there questions for the

15   witness? Representative Isaacsohn.

16         MR. ISAACSOHN:  Thank you, Chair. Thank you,

17   Spencer, for coming in today and giving such

18   impassioned testimony. My question revolves around some

19   of the discussion that you brought up around how this

20   might impact people's ability or willingness to

21   participate in political activity that they are driven,

22   you know, in issues that they care about.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1            So, are there -- I'll just start with are

2    there members of the organization or folks who've been

3    involved in grassroots organizing with you guys that

4    have relatives that are foreign nationals?

5            MR. DIRRIG:  Absolutely. Yes. We have many

6    Ohioans who have relatives who are foreign nationals

7    who are actively engaging, whether it be in signature

8    collection for ballot initiatives, supporting them

9    financially or sharing information with their neighbors

10   and communities.

11           REP. PETERSON:  Continue.

12           MR. DIRRIG:  Oh, sorry. Through the Chair to

13   the Representative.

14           MR. ISAACSOHN:  Is it possible then, let's say

15   there's a young college student who, you know, is

16   motivated to participate. Sees what's happening in the

17   state. Wants, you know, to get involved in a political

18   issue campaign, you know, to protect the climate.

19           And recently they had a birthday. Their

20   grandparent, who is a foreign national, gave them $200

21   for their birthday as a gift. And then a few weeks

22   later they wanted to get involved politically.
```

1        They spent $200 on a -- a few poster -- a

2    bunch of posters for them and their friends and really

3    nice markers. I don't know how you get to $200 with

4    arts and crafts but I'm sure it's possible.

5        And they then took those and went to a rally

6    in support of an issue. Do you think they would have a

7    clear understanding of whether that constituted an

8    independent expenditure, whether that constituted an

9    indirect contribution from a foreign national to a

10   ballot initiative or a state issue campaign. Like, what

11   do you think they -- what might be the impact of this

12   bill on that type of political activity?

13       MR. DIRRIG:  Mr. Chairman, Representative,

14   they absolutely would not have a clear indication or

15   understanding of what the liability of being involved

16   in this process or, frankly, in any advocacy whatsoever

17   could be.

18       The reality is not only would they not have an

19   indication or understanding of what the liability is,

20   the organization, who is working with them, certainly

21   does not have an understanding based on the way the law

22   is written right now on how this law would be enforced

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    and certainly where you draw the line on foreign

2    nationals having combined bank accounts, being able to

3    engage in the process.

4            It puts a huge chilling effect not only on the

5    individual, who may be a foreign national, but people

6    who are associated with that foreign national and on

7    organizations that have the audacity to try and

8    organize people in the State of Ohio.

9            REP. PETERSON:  Continue.

10           REP. ISAACSOHN:  So, given all of that, do you

11   think this bill, as drafted or likely, you know, the

12   spirit of the bill even if it shifts a little bit over

13   time. What do you think the impact will be on

14   grassroots organizations and the ability for people,

15   particularly new to the political process, to feel

16   comfortable and safe getting involved?

17           MR. DIRRIG:  By putting up a -- oh, to the

18   Chairman, through him to the Representative through the

19   Chairman, apologies. I strongly believe that by putting

20   up these broad, unspecific, and frankly confusing

21   restrictions and empowering the Attorney General to

22   enforce them in a very, very heavy way, will certainly

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    put a chilling affect on the right of Ohioans to be
2    able to engage in our democratic process.
3             And it will also, because of the increased
4    regulatory burden, the need to create new disclosure
5    frameworks and tax frameworks will certainly cause a
6    massive chilling affect on organizations all across the
7    state of Ohio and across the political spectrum, who
8    want to have a hand in our democratic processes.
9             REP. PETERSON:  Representative Brown with a
10   question.
11            REP. BROWN:  Thank you, Chair. Thank you, Mr.
12   Dirrig, for your testimony as well. I take it from your
13   testimony that you believe the initiative is a form of
14   direct democracy, which is important to the people of
15   Ohio. Is that correct?
16            MR. DIRRIG:  To the Representative, through
17   the Chairman, absolutely. Democracy is -- is crucial to
18   advancing a fair and healthy environment.
19            REP. BROWN:  The initiative has been part of
20   the Ohio constitution since the constitutional
21   convention of 19 -- the Ohio constitutional convention
22   of 1912 at which former Republican President Theodore
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1      Roosevelt spoke, eloquently, in a famous speech called
2      A Charter of Democracy. And in that speech Rosevelt
3      said the following, I want to quote him.
4            In short, I believe that the initiative and
5      referendum should be used, not as substitutes for
6      representative government, but as methods of making
7      such government really representative.
8            Action by the initiative or referendum ought
9      not to be the normal way of legislation, but the power
10     to take it should be provided in the constitution, so
11     that if the representatives fail truly to represent the
12     people on some matter of sufficient importance to rouse
13     popular interest, then the people shall have in their
14     hands the facilities to make good the failure.
15           And he went on, provide by the initiative and
16     referendum that the people shall have power to reserve
17     or supplement the work of the legislature should it
18     ever become necessary.
19           Do you agree with those sentiments of Teddy
20     Roosevelt, one of the most famous Republican Presidents
21     of all time?
22           MR. DIRRIG:  To the Representative through the
```

```
 1    Chairman, I absolutely do. Direct democracy is a
 2    cornerstone of this state and frankly, of the democracy
 3    that we all enjoy.
 4            One of my -- when I think back on the
 5    importance of democracy in this state and why I'm
 6    standing here, frankly, my late grandfather, who came
 7    here from India would tell me that, you know, after
 8    growing up in partition and under British Colonial
 9    rule, democracy was crucial, not because it was a goal
10    to achieve, in and of itself, but because it was a
11    tool, a path to justice.
12            And the reality is is that when we see
13    injustice happening, democracy is an opportunity. It is
14    a path to be able to seek justice.
15            And by putting barriers in the way of Ohioans,
16    who are trying to use that process to make progress,
17    whether you agree with the issue that they're working
18    on or not, it is antithetical to our democracy and puts
19    a chilling affect on advocacy across the state.
20            REP. PETERSON:  Any questions? Representative
21    Skindell.
22            REP. SKINDELL:  Thank you, Mr. Chair. Thank
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    you for your testimony today. One of the most

2    concerning parts of the legislation before us is the

3    mandatory referral to the Attorney General's Office of

4    any candidate committee, statewide committee, any of

5    the other committees named, including, it would be the

6    how our own Environmental Council Action Fund, if

7    there's any violation.

8            And that's different than what current law is

9    because the current law is it goes before the

10   Election's Commission. The Election Commission will

11   investigate and hold a hearing. And they don't

12   necessarily need to prosecute, need to fine.

13           In fact, they could enter an order just

14   saying, yeah maybe there's been a violation. We don't

15   find it necessary to impose a fine or -- or to further

16   prosecute. And they try to resolve it with the -- the

17   current committee.

18           This legislation radically changes that. The

19   commission must, if there's a violation, the commission

20   must refer it to the Attorney General's Office. And I'm

21   -- I'm, kind of, curious as to what your -- your

22   thoughts are with regard to that mandatory referral of

1    all these various committees to the Attorney General's

2    Office.

3          MR. DIRRIG:  To the Representative through the

4    Chairman, to be very clear, this is the crux of the

5    chilling affect that is -- is engaging -- is -- is the

6    goal here. As an organization if we are signing

7    ourselves up for being referred to the Attorney

8    General, which is a partisan act, regardless of whether

9    they're a Democrat or a Republican.

10         It's a partisan position. Signing ourselves up

11   to be referred to the Attorney General simply by being

12   engaged in any way and about an initiative where one

13   other organization may or may not have taken money from

14   certain person who is not a resident of the United

15   States but is a -- oh, I'm sorry, is not a citizen of

16   the United States but is a resident of the United

17   States and being forced to undergo that legal action is

18   absolutely a chilling effect.

19         Every decision we make as an organization is a

20   balance between opportunity and liability. We are

21   vastly increasing the liability of being involved in

22   the democratic process in this legislation. And it will

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    absolutely have a chilling effect on the ability from

2    our organization and others across this state to be

3    engaged in this process.

4              REP. PETERSON:  Other questions? I have two

5    quick questions if you would allow.

6              MR. DIRRIG:  Thank you, Chair.

7              REP. PETERSON:  Does the Ohio Environmental

8    Council Action Fund make donations to candidates in

9    Ohio?

10             MR. DIRRIG:  The Ohio Environmental Council

11   Action Fund does not make any donations to candidates.

12   No, Sir.

13             REP. PETERSON:  Thank you. That takes care of

14   my second question also.

15             MR. DIRRIG:  Alright. Well, thank you so much.

16             REP. PETERSON:  Thank you for being with us

17   today.

18             MR. DIRRIG:  Thank you for the opportunity.

19   Appreciate it.

20             REP. PETERSON:  Next, we have Laura Irvin

21   presenting an opponent testimony. Thank you for joining

22   us today.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

| | |
|---|---|
| 1 | MS. IRVIN:  Thank you. Chair Peterson, Vice |
| 2 | Chair Thomas, Ranking Member Humphrey, members of the |
| 3 | Government Oversight Committee, thank you for the |
| 4 | opportunity to testify in opposition to House Bill 1. |
| 5 | My name is Laura Irvin. I live in Lorain |
| 6 | County. I am a believer in democracy. I want to address |
| 7 | several points in this bill. Foreign money in our |
| 8 | elections is already prohibited under federal law. |
| 9 | There is an Ohio Elections Commission advisory |
| 10 | letter stating that the federal law applies to Ohio. |
| 11 | Surprise. Surprise. This is unnecessary. Trying to pass |
| 12 | a bill or a law that already exists is a waste of time |
| 13 | and a waste of taxpayer money. |
| 14 | It will not solve the problem. Foreign |
| 15 | nationals who want to contribute millions to ballot |
| 16 | issue campaigns will simply donate the money to |
| 17 | 501(c)(4)'s. Ohio does not require 501(c)(4)'s to file |
| 18 | anything about how they raise money, the names of their |
| 19 | donors, their addresses, their dollar amounts or the |
| 20 | connections between their companies and their |
| 21 | campaigns. |
| 22 | If you're serious -- if you're truly serious |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1       about wanting to remedy the -- remedy this problem,

2       adopt House Bill 112, The Anti-corruption Act, which is

3       sponsored by Reps Miranda and Sweeney.

4               But, of course, to do that you're going to

5       have to give it more than one hearing. This bill has

6       been introduced many times in the last 10 to 12 years.

7       The emergency clause in the legislation is unwarranted

8       unless it's targeting citizens not politicians or other

9       ballot issues.

10              Those of us who want fair districts, which is

11      the majority of Ohioans, we know what you're up to. You

12      prefer unconstitutional maps that give you a super

13      majority. As the Capital Journal wrote, it would

14      require all groups rallying -- rallying for a cause

15      that a receiving donation to spending money to register

16      is past.

17              This means that each group would have to file

18      disclosures with the government. And it could make it

19      more difficult to collect signatures to get a proposal,

20      say for a township ballot.

21              You want to make it harder to pass ballot

22      initiatives in Ohio, which are the true voice of the

```
 1    people. And remember, this will have a chilling effect

 2    not on just our petitions, but all citizens led

 3    positions even those that Republicans are for.

 4            So, we know you're trying to silence our

 5    voices. The most egregious part of this bill is

 6    stripping the enforcement of the legislation from the

 7    county prosecutors to under the purview of the Attorney

 8    General's Office.

 9            We have an activist Attorney General and we

10    know what she will pick and choose to prosecute. And I

11    would also like to say, just for the record, because

12    the Ohio legislature couldn't get their stuff together,

13    the DNC announced that it will be holding a virtual

14    meeting to officially nominate Joe Biden as their

15    candidate for president.

16            We'll make sure that he is on the ballot. And

17    I tell you, this is an embarrassment. I'm originally

18    from Texas and people from Texas are calling me and

19    talking to me about this. It's a shame. It's a shawda

20    [ph].  And it's really unbelievable that you all

21    couldn't get your stuff together.

22            Open for questions.
```

1      REP. PETERSON:  Are there questions for the

2  witness? Representative Brown.

3      REP. BROWN:  Thank you, Chair and thank you,

4  Ma'am for your testimony today. One of the issues I

5  have with the bill in particular is the -- giving power

6  to the Attorney General over local county prosecutors.

7      In -- in that provision of the -- of the House

8  Bill 1 provides that the Ohio Election Commission shall

9  refer the matter to the Attorney General except that if

10  the -- except in cases where the Attorney General is a

11  victim or a witness or -- quote, otherwise involved in

12  the matter, quote.

13      So, I asked the sponsor yesterday in this

14  committee what does otherwise involved in the matter

15  mean. And he basically said, well, it means that the

16  Attorney General polices himself. So, that basically

17  tells me there's no oversight of the Attorney General's

18  decision as to whether or not he is involved otherwise

19  in the matter at hand.

20      And we would be left to the whim of the

21  objectivity of the Attorney General with regard to

22  potential recusal by the Attorney General of the

1    Attorney General from these matters. Do you believe

2    that that is a sound and politically astute way of

3    doing things?

4            MS. IRVIN:  Through the Chair to the

5    Representative, that's crazy. I mean, what can you say?

6    We have so many politicians in this state, in this

7    country, some of who are in prison because they have

8    been the ones who are -- I'm trying to think of the

9    word. They're the ones who have been regulating

10   themselves.

11           REP. PETERSON:  Representative Skindell with a

12   question.

13           REP. SKINDELL:  Thank you, Mr. Chair. You

14   brought it up in your testimony about the power being

15   transferred to the Attorney General. And this is

16   somewhat in follow up to the questioning by

17   Representative Brown, also.

18           So, under the current system of election law,

19   you may be aware of, if something is referred to the

20   commission for a possible election law violation the

21   commission takes a look at it. They may find that

22   there's not enough evidence or not enough grounds to

1    pursue a matter and just dismiss it.

2            If they find that okay, maybe there was a

3    violation, they can find good cause not to impose a

4    fine or anything but get it resolved with the -- the

5    particular committee. They can issue an order imposing

6    a fine or refer it to the county prosecutor.

7            That's the -- kind of, the steps in what --

8    what they need to do. The change in the law, which is

9    the most radical provision of House Bill 1 is referring

10   all these matters with regard to these candidate

11   committees, the committees for the state office

12   holders, these -- all the -- the issue committees out

13   there.

14           Is all these matters divest the -- divest the

15   Election Commission from hearing them and transfer them

16   to the Attorney General's Office and then grant the

17   Attorney General unprecedented powers that we don't see

18   in the Ohio General -- Ohio Attorney General normally.

19           And the provision of the code says, the

20   Attorney General may prosecute the matter with all the

21   rights, privileges and powers conferred by law on

22   prosecuting attorneys including the power to appear

1    before a grand jury and interrogate witnesses before

2    the grand juries.

3           The powers of the Attorney General are in

4    addition to any other applicable powers of the Attorney

5    General. What do you think the -- might be the chilling

6    effect on all candidates in these issue committees and

7    candidate committees by having just even minor things

8    being sent to the Attorney General, who's granted all

9    these -- these exclusive powers?

10          MS. IRVIN:  Through the Chair to the

11   Representative, they want to silence us. That's the

12   intent. That's the exact intent of this. They don't

13   want us involved. They want to keep their supe

14   majority. They want to do what they want to do. They

15   want to get their money from lobbyists. And they want

16   to silence us.

17          REP. SKINDELL:  Mr. Chair.

18          REP. PETERSON:  Follow up. Shorter -- shorter

19   question if possible.

20          REP. SKINDELL:  Thank you. Do you think that

21   this then will instill a highly political process in

22   pursuing election law violations with regard to these

```
1    committees?
2          MS. IRVIN:  Through the Chair to the
3    Representative, absolutely.
4          REP. PETERSON:  Are there questions for the
5    witness? Thanks for being with us today.
6          MS. IRVIN:  Thank you.
7          REP. PETERSON:  Next, we have D.J. Byrnes with
8    opponent testimony. Sir, thank you for joining us.
9          MR. BYRNES:  Thank you, Chair Peterson, Vice
10   Chair Thomas, Ranking Member Humphrey. I'm here
11   speaking today on HB 1. Let's see, you know, like, I've
12   come to -- I've come to like some of you guys,
13   personally. You know, the problem I have is when you
14   guys get together, and you start conspiring.
15         You know, the hob gob of blood gets boiling in
16   you. And, you know, I blame -- part of this blame that
17   we're even talking about this lies with the National
18   Democratic Party. They should have seen this train
19   coming as far back as February.
20         I mean, they were told. You can always make
21   money in this industry by betting on the worst on you
22   guys. By betting on the worst. And I know the blame
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1 also extends to Governor Sleepy T, who last I heard
2 was, you know, some L.A. County retirees are trying to
3 get him under oath for his involvement in HB 6.
4     Some of the blame goes with him. And a lot of
5 the blame goes with Senate President Tim McVay Jr., his
6 super gimp Rob McColley. And just the Macanations that
7 the Ohio Senate has engaged in. So, like, kudos to you
8 guys.
9     I mean the most flavored offenders, obviously,
10 are not in this room. But, you know, kudos to you guys.
11 Rep Oelslager, you pointed it out last night with my
12 guys [inaudible]. You said, you know, the way the
13 Senate is engaging in this bill is completely un-
14 democratic, against the rules.
15     And what do they do, in typical mafia style,
16 they rammed it through. You know, and you guys are at
17 least here combining it. And I get that. But, you know,
18 the blame also goes on you guys for trying to go, like,
19 even getting this into the [inaudible] in the first
20 place. Sorry to cuss. Didn't mean to do that.
21     This is nothing more than just, like, an
22 attack on statewide ballot initiatives and groups who

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    are in the middle of campaigning for a legislative
2    amendment that will finally break up your little yunta
3    [ph]. I learned how to pronounce that word correctly
4    the other day.
5            You guys don't have it going on in the state
6    level. Like, you guys can pretend this is about oh,
7    democracy and oh, for money. Like, it was no Swiss
8    boller that subjugated every level of state government.
9    A Swiss boller didn't do that. A Swiss boller didn't do
10   H the largest extorsion scheme to date history that we
11   know about that has left two lobbyists dead.
12           That wasn't a Swiss boller. That was our own
13   government, First Energy, who is still in business. You
14   guys haven't done anything. Not one word. Any time I
15   try to talk to you about HB 6 it's all sucks, I'm just
16   a farmer. Oh, I don't know, I haven't read the latest
17   updates.
18           Well, I have. You know, nobody wants to talk
19   about it. And, like I said, this committee is not the
20   most flagrant offenders. Nobody in this room is a
21   flagrant offender. It's when you all get together. And
22   I'm just asking you, for once, have some respect for
```

1    yourself.

2           Why are we going along with Tim McVay Jr. and

3    his super gimp when they just want to get up there and

4    they want to cry about, oh for money this, for money

5    that. You know it's nonsense.

6           So, I'm urging you guys, and I heard maybe

7    this is a possibility where you're going to, you know,

8    shuttle this one and promote the -- the clean fix

9    ballot bill. But, I mean, at -- at what point does it

10   end guys?

11          Because I mean, I'll tell you what, this is

12   the perfect -- you guys are putting a bow on this

13   ballot initiative that's going to end your guys' super

14   majority. And a lot of you guys won't be here. Because

15   Ohio -- Ohio's not a Republican state, right? It's a

16   hog state.

17          And the hog voters went three and 0 against

18   you guys last year. And because you guys don't know how

19   to campaign because a lot of you guys have deluded

20   yourselves into, you know, oh, my super majority, red

21   plus 40 district equates to political talent and

22   governmental knowhow.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
 1          You guys are putting a bow tie on it for us.
 2   And the hog voters are coming. In November it doesn't
 3   matter. Donald Trump -- Donald Trump voters don't even
 4   vote. So, you know, the hog voters are going to come
 5   again.
 6          So, I would just ask yourselves, you know, do
 7   you want to have respect, or do you want the hog voters
 8   to run wild on you either way? Because it's -- it's
 9   going to be a win for me. So, sorry I got a little
10   excited there.
11          I'm obviously not talking to everybody in this
12   room. But you guys have a line to the people that are
13   in charge, and I'd appreciate it if you ran it up the
14   flagpole.
15          REP. PETERSON:  Questions for the presenter.
16   Let's -- and let's try and focus on the bill that's
17   before us today, please. Representative Skindell.
18          REP. SKINDELL:  Thank you, Mr. Chair. House
19   Bill 1 transfers a Trumpian style power from the
20   Election Commission to a single person in the Attorney
21   General, who is a political individual themselves to
22   prosecute all types of possible election law
```

```
 1    violations.
 2            What's your -- your general thought about
 3    consolidating that type of power and granting all this
 4    prosecutorial power in the Attorney General in election
 5    matters?
 6            REP. PETERSON:  Mr. Byrnes, if you -- if you
 7    can do me one favor.
 8            MR. BYRNES:  Yeah. Keep it on the question.
 9            REP. PETERSON:  Of -- let's not be too
10    derogatory on specific individuals.
11            MR. BYRNES:  Yeah.
12            REP. PETERSON:  But share your opinion. Let's
13    -- let's be kind.
14            MR. BYRNES:  So, I think, like, fundamentally,
15    our -- the founding fathers, you know, God bless them.
16    I think they erred in making our top cop -- our top
17    election officials, you know, partisan hacks,
18    basically.
19            And we've, kind of, seen how our state
20    government has toppled over a cliff in these last
21    couple years thanks to that. So, do I entrust giving an
22    elected, you know, theocrat more sway over our
```

1    elections, more ways to poison the well and twist the

2    levers of power more in their favor.

3           It's -- it's just -- it's just the typical

4    nonsense that we've come to expect from these people.

5    You know, this is a -- this is fundamentally a question

6    about does the sitting United States President deserve

7    to be on the ballot in Ohio? In a state that Trump's

8    going to win.

9           And they got it diluted all the way down to us

10   talking about, you know, should we give Dave Yost more

11   power. Frankly, I think Dave Yost, and whatever people

12   come after him, they have enough tools as it is to go

13   after foreign money, which is already illegal.

14          So, why are we wasting our time here talking

15   about this. That -- that's what they want us talking

16   about. So, yeah. Sorry.

17          REP. PETERSON:  Follow up. Continue.

18          MR. SKINDELL:  Just briefly, Mr. Chair, thank

19   you. So, one of the other concerns I have is election

20   matters that go before the Elections Commission under

21   current law. They're under a time constraint. The

22   Election Commission must wrap them up within a certain

1    period of time.

2          But it doesn't place any time constraint on

3    the Attorney General when he's prosecuting these

4    matters. So, it can go endlessly and -- and disrupt a

5    campaign committee for endless time. I was wondering if

6    you have any concerns about not placing time limits on

7    the Attorney General to resolve these matters.

8          MR. BYRNES:  Yeah. I mean, it's always a

9    concern, right. It's -- and it's just how are they

10   going to use that power? How -- like, how -- what's the

11   worst case they could use that power?

12         I mean, would somebody like -- would the

13   Republicans be comfortable with somebody like me being

14   the Attorney General? Going to law school? Mail order

15   law degree? Twitter law? Being the Attorney General and

16   having those kinds of powers? No. They wouldn't.

17         And I think when you're talking about

18   something when it comes to our elections, the word

19   bipartisan used to mean something in this country. And

20   now it's, we see how far that word gets us around here.

21         REP. PETERSON:  Other questions for the

22   witness? Representative Isaacsohn.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1            REP. ISAACSOHN:  Thank you, Chair. Thanks for
2      your testimony today. My question is just why do you
3      think, given your experience in this body, what do you
4      think is the reason for there to be a emergency clause
5      attached to this -- this bill?
6            MR. BYRNES:  Because they couldn't even -- you
7      know, they couldn't even do it in their -- they
8      couldn't even do it in the proper time in their
9      legislative super majorities. So, here we are.
10           And they're trying -- they're trying to shift
11     some of the blame because they need some of the votes
12     in the other caucus. They're trying to shift the blame
13     to anybody else but themselves and make it seem like
14     it's a choice between, like, putting dark -- you know,
15     you stood with the dark money foreign billionaires.
16           When I get that will work in some circles in
17     this state where there's information deserts where
18     people don't subscribe to the rooster. You know, but,
19     like, the people that know what's -- the people that
20     know what's going on and the people that observe and
21     the people that have a functioning cerebral cortex can
22     see it's just a naked -- it's just another naked power
```

1    play where super majorities aren't enough.

2            Having every statewide elected official beside

3    Sheriff Brown isn't enough. Having, you know, the

4    Governor's son on our Republican stacked supreme court

5    is not enough. We also have -- we also -- we have to,

6    like, they have to beat us and then they have to step

7    over your corpse and say F.U. on their way over. Why?

8    Because they can.

9            REP. PETERSON:  Language please. My -- my

10   grandchildren may be watching.

11           MR. BYRNES:  Yeah. You know, as far -- you

12   know, I use the French phrase F. But it -- it's just,

13   you know, it's the -- it's going. And the audacity, it

14   just never ceases. It will never be enough until it's

15   taken out of their hands entirely.

16           REP. PETERSON:  Other questions for the

17   witness? Representative Swearingen.

18           REP. SWEARINGEN:  I have to. Could you, Mr.

19   Chairman to the witness, could you explain for the

20   folks at home what an Ohio hog voter is?

21           MR. BYRNES:  I mean the Ohio -- it -- we saw

22   the perfect example of the Ohio hog voter these last

1    three elections. I mean, the Ohio hog voter is somebody

2    who, you know, is underpaid, overworked. Goes home.

3            Is -- you know, have -- has -- has bills --

4    has bills going crazy trying to manage stuff with

5    healthcare, childcare, you know, the underpaid check

6    from them employees. And they don't -- the hog voter,

7    they're probably an Ohio State fan. They might have

8    some opinions on January 6th.

9            But they don't take -- they -- the hog voter

10   at their core at least knows we're supposed to be upset

11   with you guys. That you guys have taken something from

12   us and that we should be angry about it.

13           Now, some on the right, you know, that get

14   into the little racism and the anti-immigrant stuff,

15   that's not very good. But at least they know they're

16   supposed to be angry. And they don't take their party -

17   - they don't take their orders from the party elites.

18           And I think -- I -- you know, I do give the

19   Republicans a lot of credit for that even though it's

20   been to the detriment of our society at a whole. At

21   least their party is -- you know, at least they're

22   party voters, like, are the hogs.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1          They understand the -- the power, you know.

2     Hogs together strong. And hopefully the Democratic

3     party can figure out how to tap into that because they

4     haven't been able to translate winning issues on

5     abortion, weed, should we dilute our own power at the

6     constitution, you know, in constitutional amendments.

7     They've been 0 and 3.

8          And so, I think the hog voters are going to be

9     looking at this issue. Because, you don't always

10    understand, you know, you guys don't want fair

11    districts. You guys have a pretty sweet gig. I get it.

12         And power and leverages gives itself away. But

13    you guys are setting yourselves up to be railroaded.

14    And not in a good way either, by the hog voters in

15    November. Because we -- you know, we already thought we

16    ended this stuff and yet here we are.

17         REP. PETERSON:  Other questions for the

18    witness? Thank you for being with us today.

19         MR. BYRNES:  Thank you.

20         REP. PETERSON:  Next, we have Catherine Turcer

21    with an interested party testimony. Thanks for joining

22    us today.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1           MS. TURCER:  Good morning. I have to say, I'm
2    not exactly prepared to talk after that. So, thanks for
3    making it harder for me. Anyway, I did want to thank
4    you all for this opportunity to testify and for
5    creating a space for the public to weigh in on
6    legislation during this special session.
7           I want to be very clear that I, you know, I
8    appreciate the -- the process that the House is using
9    where we do have an opportunity to let you all know
10   what we're thinking and some of our concerns.
11          I was around for the special session in 2004,
12   much like Rep. Oelslager and I appreciate the, kind of,
13   doing this as House Bill 1. So, I just wanted to make
14   sure you all knew that.
15          So, I should introduce myself. I'm Catherine
16   Turcer from Common Cause Ohio. You know, for many years
17   I've been advocating for greater transparency in, you
18   know, Ohio's campaign finance system.
19          I spent a lot of time talking about, you know,
20   shining a light on dark money. And just the importance
21   of being able to follow the money. And -- and we all
22   know that money plays an outside role -- outsize role

1    in elections.

2          And I strongly encourage you to consider how

3    you can make the system more transparent so that voters

4    are able to follow the money. They need to be able to

5    consider the source of information.

6          All you have to do is think back to House Bill

7    6 and Generation Now and the adds and if they had a

8    sense that that was funded by First -- First Energy,

9    they might have looked at those adds in a different way

10   and lobbied you all, you know, as the public in a

11   different way.

12         So, I think as we -- we -- we need greater

13   transparency also to root out possible shenanigans and

14   corruption.

15         Now, obviously, we're here today to talk about

16   foreign money. It is, of course, prohibited under an

17   opinion by the Ohio Elections Commission that

18   determined that Ohio statutory structure sufficiently

19   protects the involvement of any foreign national from

20   participating in or contributing to an issue or

21   question that will appear on Ohio's ballot.

22         Now, there's a benefit to actually taking time

1    and crafting legislation that bans foreign money. I --

2    this -- this actually makes sense. You know, we can

3    look at what's happened in other states. They made a

4    decision to, kind of, slowly work through.

5         Because there are -- there are some real

6    challenges to doing this well. And you can imagine the

7    kinds of things that could come up. For example, let's

8    suppose I married, you know, I was married to a

9    Canadian and I gave a contribution to a candidate.

10         I don't give contributions to candidates but

11    suppose I did. He makes a lot more money than I do. Was

12    that money from a foreign source. And so, there are a

13    lot of things -- there are a lot of permutations and

14    so, we need to be thinking about, like, just real

15    clarity so that we're able to address -- you know,

16    we're able to address the best way to stop the kind of

17    worries that people clearly have.

18         Now, it's not clear to me that actually

19    foreign money has been part of Ohio, you know, ballot

20    campaigns. I want to be super clear about that. But, of

21    course, you know, if you don't have greater

22    transparency, you can't follow the money. So, you can't

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    figure out if there was foreign money in elections.

2            So, at the end of the day, there is a real

3    benefit thinking about creating greater transparency.

4    Now, I do have some reservations about rushing such an

5    important, you know, important decisions.

6            And to ensure that we're -- we're creating

7    good policies but we're not creating the kind of

8    obstacles where folks don't want to get engaged in the

9    process. And so, I just -- I want to encourage you to

10   thoughtfully look at the bill. Think about provisions.

11   Think about amendments you're making.

12           Now, the one piece that I am worried about and

13   it's the reason, you know, interest part -- interested

14   party here, is, you know, good enforcement is

15   important. It's an important part of campaign finance

16   because you can pass rules and, you know, it's a little

17   like speeding. You know, many of us actually speed on

18   the highway unless we know there's a cop nearby.

19           It's important to have a good enforcement

20   mechanism. Now, this bill, which was just introduced

21   yesterday, takes the enforcement away from county

22   prosecutors and gives it, instead, to the Ohio Attorney

1    General.

2          Now, remember the Attorney General already

3    does have a role in ballot campaigns. And specifically,

4    I'm talking about the citizen-initiated ones. The

5    Attorney General reviews the summary language and this

6    giving him a second role does not create the proper

7    checks and balances that are needed.

8          And the language in the bill would suggest it

9    would possibly remove the Attorney General

10   unintentionally because he's already got a role in the

11   ballot campaigns. Now, I would like to believe that the

12   -- the no Attorney General would abuse their role in

13   the process.

14         But we know that it could be incredibly

15   tempting. And, you know, we know that when you pass

16   something like this it's not for this year. It's for

17   next year and the following years and possibly 10 or 20

18   years.

19         So, we do need to ensure that investigations

20   do not become politicized. Now, lots of times I don't

21   agree with Rep. Seitz, but I have to say, when he was

22   testifying yesterday, when he did the sponsor

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    testimony, he said, he's really correct about the Ohio

2    Elections Commission being a paper tiger.

3            But it is a panel that includes Republicans,

4    Democrats, and Independents. Now, a better approach to

5    thinking about the enforcement mechanism is to ensure

6    that Ohio elections, you know, are free of foreign

7    influence is to actually give broader investigative

8    power to the Ohio Elections Commission.

9            You could also, you know, beef up their budget

10   a little bit because they would need that if that was

11   the case. Now, I want to highlight again that a

12   comprehensive and effective campaign finance law would

13   include provisions that create greater transparency.

14           To ensure that foreign money doesn't play a

15   role in Ohio elections it's necessary to require good

16   disclosure from those engaged in independent

17   expenditure. Now, nothing in this legislation addresses

18   how the lack of transparency fostered House Bill 6, and

19   that's scandal.

20           Dark money has impacted Ohio elections for

21   years and Ohioans have been living with the

22   consequences. The very real consequences of the part of

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1  House Bill 6 that has not been removed where rate

2  payors are continuing to prop up coal plants, for

3  example.

4           Now, creating greater transparency will make

5  it easier to root out foreign money and other

6  shenanigans. Now, it's, you know, I also believe it

7  takes time to do this properly. I urge you to slow down

8  to ensure that there are not any unintended

9  consequences.

10          And I want to thank you for this opportunity

11  again.

12          REP. PETERSON:  Thank you for being with us.

13  Questions for the witness. Representative Humphrey.

14          REP. HUMPHREY:  Thank you, Mr. Chairman. And

15  thank you Ms. Turcer for -- for being here. Really good

16  testimony. Want to talk about some transparency points

17  that you brought up. And a lot of my colleagues have

18  already talked about this potential switch from OEC in

19  the -- the prosecutor to the AG.

20          But I wanted to talk -- I wanted you to

21  explain just a little bit further your thoughts on how

22  problematic it could be for that -- that switch to

1     happen. So, we know that the language with regard to

2     campaign finance violations is -- is really broad.

3            And it would allow an -- an openly partisan

4     Attorney General to take over any cases involving

5     candidates or campaigns. Do you -- one, I know you

6     talked about this already, but you do feel like it

7     would be an erosion of checks and balances potentially.

8            But I wanted to talk -- wanted you to touch on

9     potentially how it would reduce neutrality. So, if you

10    could touch on, kind of, just the issues with making

11    that -- that transition from the OEC -- or the

12    prosecutor to the Attorney General. We know he plays a

13    part already but just can you -- can you touch on that

14    a little bit more in more detail?

15           MS. TURCER:  Well, Representative Humphrey to

16    the Chair, unlike the previous speaker, I'm always a

17    little bit hesitant to cast dispersions but what I do

18    know is that humans don't always live up to their

19    better angels.

20           And that is why I -- I really believe that

21    when we think about enforcement, giving it to somebody

22    who is elected, you know, statewide, whether they're

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    Democrats or Republicans, that we're much better off

2    giving it to a neutral panel that includes Democrats,

3    Republicans, and Independents.

4              And that is the way that the campaign finance

5    system is crafted right now. Now, I would also say,

6    let's do what we can to beef up their ability to

7    enforce, to follow the money, to actually live up to

8    their potential.

9              REP. PETERSON:  Continue.

10             REP. HUMPHREY:  Thank you, Mr. Chairman. And

11   one more question and I -- this just popped in my head

12   as you were responding. But say HB 1 is passed into law

13   and this transition takes place.

14             Do you -- or even while it was trying to go

15   into the process of -- of taking place. Do you feel

16   like there could be some type of oversight on top of

17   the Attorney General? I don't know if that's possible,

18   but do you feel like it could be an oversight to go

19   over top of the Attorney General? And what do you think

20   that should be if -- if at all possible?

21             I'm just kind of trying to put this together

22   in my brain. So, I know Representative Brown spoke

1    about oversight before, basically saying that the

2    Attorney General would have no oversight. Do you feel -

3    - what type of panel, even besides the OEC, what --

4    what would that oversight be? What would that look

5    like, do you think?

6              MS. TURCER:  Thank you -- thank you

7    Representative, through the Chair, I've been thinking

8    about this as problematic specifically giving it to the

9    Attorney General and using the structures that we

10   actually have in place.

11             I haven't thought a lot about well, how would

12   you provide oversight to the Attorney General. Now,

13   those might be some of the amendments that you all are

14   considering.

15             And I again -- so, one of the things that

16   always is a little bit of a challenge is I'm testifying

17   on yesterday's version of House Bill 1 and -- and

18   obviously, we can -- I can make suggestions based on

19   amendments and -- but -- but I think the thing that I

20   would highlight is it is preferable to use the standing

21   Ohio Elections Commission to ensure that Ohio election

22   law is, you know, followed and that they actually hand

1      it off to a prosecutor.

2             I think that more independent process does

3      work. It does make sense to, you know, to beef them up

4      a little so that they can do a better job. But I would

5      just keep that Attorney General, whoever he or she or

6      they are out of the process.

7             REP. HUMPHREY:  Thank you.

8             REP. PETERSON:  Representative Skindell with a

9      question.

10            REP. SKINDELL:  Thank you, Mr. Chair. So, this

11     House Bill 1, more so than the issue with the

12     contribution or expenditure coming from a foreign

13     entity, what it does do is radically change how we look

14     at election law violations.

15            So, right now, as you know, we have the

16     commission. The commission doesn't necessarily need to

17     refer to a prosecutor, but they are so on a time

18     schedule to deal with election matters because you've

19     got an election coming up and the commission is

20     designed to, kind of, resolve those things relatively

21     quick.

22            It can find that there's not enough grounds

1     and not go forward with an issue. They can find while

2     maybe there's a violation, but we don't need to issue a

3     fine. They can fine them, or they can find that it's

4     serious enough. Then we refer it to the prosecutor.

5               Here, all matters dealing with these

6     committees, a regular campaign committee, issue

7     committee, all these committees, any violation must go

8     to the Attorney General's office and the commission is

9     divested of any say so in this.

10              Are you concerned about that?

11              MS. TURCER:  Rep. Skindell to the Chair,

12    clearly, I can see the possibility of an abuse of

13    power. I also think, you know, one of the things -- you

14    can start imagining all the different ways that someone

15    might get in trouble.

16              Okay. So, this would be -- this would be an

17    example -- you know, I picked the example of somebody

18    is married to somebody who actually is not a U.S.

19    citizen. So, that's an example of something that might

20    go wrong.

21              Another kind of thing that might go wrong,

22    let's pick a participant in last year's ballot measure.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1    Let's pick the Catholic Church. Okay. So, let's suppose

2    folks were throwing, you know, money into an area that

3    was going to be spent on yard signs, etcetera.

4            So, you know, more independent expenditure

5    than actually working its way to the campaign but,

6    like, they were going to do that. Well, they might

7    receive funds from somebody who just moved here, for

8    example, from Spain.

9            Or they might have received some from somebody

10   who's been around, you know, for many, many years and

11   is a resident. So -- so, the -- those kind -- like,

12   what I worry about -- what you were getting at, which

13   is the must, you know, all of the things, like, we want

14   to ensure that malicious foreign money is addressed but

15   that we don't discourage civic participation.

16           And that we properly address the kinds of

17   problems that can become before the Elections

18   Commission where they, you know, will say don't do

19   that. Or they will, perhaps, do a fine. But so, it's

20   one of the reasons I like the Election Commission

21   process.

22           Because there are things that are big misdeeds

```
1    and then there are things that are small. And,

2    actually, when you're at the Elections Commission -- I

3    don't know if any of you have gone recently. You know,

4    often it's somebody who just didn't -- like, their

5    treasurer let them down or something, kind of, went

6    wrong. Or they didn't understand the rules.

7            And so, this is another reason for clarity and

8    taking time. So, it's super clear what exactly it is

9    that you want to pass. Thank you.

10           REP. PETERSON:  Representative -- I'm sorry.

11   Did you have a follow up?

12           REP. SKINDELL:  Yes, I do.

13           REP. PETERSON:  Continue.

14           REP. SKINDELL:  So, the referral to the

15   Attorney General are just not the -- the foreign

16   contributions or expenditure. It is every violation of

17   an election law. So, even if you don't have a

18   disclaimer on a yard sign or a piece of literature, you

19   failed to put it on for some reason, minor violations,

20   those are even must be referred to the Attorney General

21   if it deals with one of these committees. Do you think

22   it bogs down the system?
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1          MS. TURCER:  Rep. Skindell, Chair, clearly it

2     would bog down the system. Clearly, it's problematic.

3     It could also become hyper partisan and polarizing and

4     let's -- let's use the Ohio Elections Commission in the

5     way that it was intended.

6          And let's do what we can so they can better do

7     their job.

8          REP. PETERSON:  Continue.

9          REP. SKINDELL:  Thank you, Mr. Chair. One of

10     the other concerns I have is that under the current

11     system with the Elections Commission, the Commission is

12     under a timetable. They -- they're mandated to have a

13     hearing by a certain timeframe and move things along

14     and -- and render a decision one way or another.

15          There is no timeframe, no opportunity for a

16     hearing of a -- of a committee before the Attorney

17     General. So, there's no restrictions on the Attorney

18     General, how long they hold the matter or deal with the

19     matter and keep the cloud over a committee.

20          I was wondering if you have any thoughts about

21     the -- the failure to have a -- a timeframe for these

22     matters to be resolved once they're referred to the

```
1    Attorney General?
2          MS. TURCER:  Thank you, Representative, Chair.
3    So, what is clear is that the structure that we have
4    has a clear plan. And actually, giving this to the
5    Attorney General could mean that, in fact, we were --
6    you know, somebody who had something going on or
7    something going wrong might have to wait a really long
8    time and just be worried.
9          Now, what I want to highlight again is that
10   the Ohio Election Commission has a structure. They have
11   a plan for how things are -- are created and, you know,
12   it's already part of Ohio law so you could spend some
13   time thinking about how you might want to beef that up,
14   make some changes so that you're not discouraging
15   participation, but you are getting at what you're
16   mostly worried about.
17         REP. PETERSON:  Representative Grim with a
18   question.
19         REP. GRIM:  Hold on. Of course, my thing pops
20   off. Thank you so much, Chair and thank you so much for
21   being here. So, you've touched on a couple of things,
22   being concerned about participation in the process.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1      So, I kind of wanted to touch more on that and

2  elaborate more on that. So, changes with -- to the

3  process with an emergency clause that's going to come

4  immediately after the governor signs it.

5      So, there's new rules to confuse folks. You

6  know, they're not going to understand. You know, it --

7  it's almost June. There's ballot initiatives going on

8  already so it's going to change -- it's going to change

9  that process.

10      So, in your opinion, because we're enacting

11  these in a short period of time, what are the

12  consequences of changing the rules in the democratic

13  participation process?

14      MS. TURCER:  Yes, thank you Representative to

15  the Chair. So, there is a benefit to planning for the

16  following year. Meaning there -- there's a benefit to

17  not actually passing election related legislation

18  during, you know, during this kind of election year.

19      So that the following year people can get

20  prepared. They better understand things. And, you know,

21  when we've had a history of avoiding changes to

22  election law in, you know, even numbered years.

```
1              And actually, that's very good policy and good

2     practice. And I would, you know, encourage you all to

3     think about, like, I -- I realize I desperately want

4     transparency. I also want you all to do it right.

5              So, that there's both urgency, right, but also

6     you want to take the time. And this special session,

7     it's just for a few weeks. And that I am worried about.

8                        REP. GRIM:  Thank you.

9                        REP. PETERSON:  Representative Brown

10    with a question.

11                       REP. BROWN:  Thank you, Chair. The

12    part of this bill that concerns me the most is the

13    bestowing of power upon the Attorney General and in a

14    form that I think is unmatched in my recollection.

15             And, you know, one -- the bill specifically

16    provides that the Commission shall, which is mandatory,

17    refer the matter to the Attorney General unless the

18    Attorney General is a witness, a victim or quote,

19    otherwise involved in the matter, quote.

20             And I think you were here yesterday when I

21    asked the sponsor of the bill what does that mean? And

22    he said -- and he thought it meant that the Attorney
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

 1    General would police himself.

 2            And, you know, in Lincon's first inaugural

 3    address when he was trying to convince the northerners

 4    and southerners to stick together, he appealed to the

 5    better angels of their nature.

 6            And I guess Representative Seitz was trying to

 7    appeal to the better angels of the Attorney General's

 8    nature in that he would comport himself with that --

 9    with that degree of probity. Do you believe that this

10    is a weakness in the bill that may be exploited for

11    political ends by any, possibly any Attorney General in

12    the future?

13            MS. TURCER:  Rep. Brown, Chair, I was

14    very careful not to -- to identify all the different

15    ways that things could go wrong if you gave this kind

16    of power to the Attorney General.

17            But we do know that vesting this kind

18    of power can create problems. It -- it's hard to live

19    up to your better angels. It's hard not to worry about

20    your friends. It's hard not to worry about your

21    political party. It's -- it's hard to stand up to

22    pressure from donors.

1          When you start to think about all of

2     the reasons why the Attorney General isn't the right

3     person, you can think about it for right now but that's

4     not -- we shouldn't be worrying about right now.

5          We should be thinking about well, we

6     don't know who an Attorney General will be in 10 years.

7     And we need to be thinking about this is a lot of power

8     to give when we have a proper structure for dealing

9     with problems, which has Republicans, Democrats and

10    Independents.

11         REP. PETERSON:  Representative Hoops

12    with a question.

13         REP. HOOPS:  Thank you -- thank you,

14    Mr. Chairman and appreciate your testimony. What --

15    what I'm looking at here is a bill because it seems

16    like we're throwing a lot of stuff on the Attorney

17    General that he doesn't have.

18         I mean, I -- I can understand, you

19    know, if there's still issues on a local level, county

20    level, whether it's issues or a candidate, they go back

21    to the county prosecutor. The issues that the Attorney

22    General would deal with, if you continue to read what

1    Representative Brown read.

2          And then if you continue to read it, it's

3    issues, it's statewide issues, it's statewide

4    candidates. I mean, if it wasn't the Attorney General,

5    who -- who would do that, you know, on a statewide

6    issue?

7          And then if it's people that are from outside

8    the state, so, I guess, is that the way you're

9    understanding it, or do you really believe that he's

10   also going to be -- he or she is going to be involved

11   with the local issues too?

12         MS. TURCER:  Rep. Hoops, Chair, so, what is

13   clear is that the state issues are the most

14   controversial issues. They are the issues that are the

15   ones that are going to test the better angels, to use

16   the best word.

17         So, I wouldn't look at -- when you think about

18   all of the statewide races we have and the pressure

19   that's involved with that, it makes sense to hand this

20   over to the Ohio Elections Commission so all statewide

21   elections, all state issues, it makes sense to actually

22   hand that to the proper -- the folks that already have

1    it, which is the Ohio Elections Commission and then the

2    prosecutors who do this for a living.

3         So -- so, this is a process that has worked

4    here in Ohio for a while. You know, yes, I do believe

5    we do need to beef up and give the Election Commission

6    more resources but there's no reason to -- to break

7    what we have. It works.

8         REP. HOOPS:  Ms. Turcer, I guess I just want

9    to make sure you understand that the Attorney General

10   is not going to be dealing with local issues and -- and

11   county issues. It's more of just the statewide issues.

12   I mean it -- it just makes it sound like he's going to

13   be -- he or she is going to be involved with

14   everything, which is not the case.

15        MS. TURCER:  Rep. Hoops to the Chair, I do

16   understand that we're only talking about state level

17   things.

18        REP. HOOPS:  Okay. Okay.

19        MS. TURCER:  But state level things are the

20   most controversial. They are the ones that could put a

21   lot of pressure on the Attorney General not to do the

22   right thing.

```
 1              REP. HOOPS:  Mr. Chairman.

 2              REP. PETERSON:  Follow up.

 3              REP. HOOPS:  I -- I guess I disagree with -- I

 4    think we have a process in place because we found just

 5    this past year when there were things that weren't

 6    legal and right those individuals have paid dearly for

 7    that.

 8              And so, I think there's a process if, you

 9    know, I -- I have a lot of trust in our -- in our AG. I

10    think he -- he or she is doing a good job. Now, there

11    have been some AGs in the past who have gotten into

12    trouble, and they paid for it, too.

13              I think the process does work. Now, maybe we

14    need to beef up some of those things, but I think we

15    have a process in place that if somebody does something

16    wrong, you know, that person is going to pay.

17              Eventually, they're going to be found out

18    because of groups like yourself and other groups are,

19    I'm sure, watching, you know, very closely on how this

20    is all going to work out.

21              MS. TURCER:  Representative to the Chair, I

22    think when you think about the Attorney General, you're
```

1     thinking about the current Attorney General. You need

2     to be thinking more broadly because we don't know.

3              You know, leaving it to one person rather than

4     a panel, and then when we think about the transparency

5     piece, you know, I think it's really important to -- to

6     say to ourselves, you know, to uncover that House Bill

7     6 scheme and to think about all the permutations of

8     dark money and all of the different groups, it took an

9     FBI investigation.

10              It shouldn't take an FBI investigation to

11    actually identify things before they spin wildly out of

12    control, which is why I'm encouraging you to create

13    greater transparency in the system, in general, and to

14    really focus on, you know, it's been four years since

15    Larry Householder was arrested and we've gotten more

16    and more information.

17              It really, truly is time to act. I -- much as

18    I'm encouraging to act, I also want you to be

19    thoughtful and take your time. And I -- I realize, you

20    know, I'm asking you to weigh things and do this to get

21    -- get busy, but also to get busy thoughtfully so that

22    there are not any unintended consequences, which is

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    what I'm worried about.
2           REP. PETERSON:  Chairman has a question. So,
3    yes, thank you for just -- I think -- I appreciate the
4    -- your testimony. I think if the sponsor was here, the
5    sponsor would talk about he certainly is weighing the
6    concerns of prosecutors and trying to find that
7    appropriate balance as you have suggested.
8           I just want to walk through my understanding
9    to make sure you and I agree on how we think this would
10   happen. So, yes, in the bill the Attorney General has
11   much greater powers than he did before.
12          But -- but my understanding is the Attorney
13   General, in this role, would be acting as a prosecutor.
14   So, the Attorney General can -- would bring a charge
15   before a judge, which would call a grand jury. And the
16   grand jury would decide whether there's enough evidence
17   to move forward with a trial or not.
18          And then -- and then the judge, if the grand
19   jury says yes there is evidence, then it would move
20   forward to a -- to a jury trial or a judge trial,
21   depending on the situation. So, I -- and that -- that
22   process may not be the best process.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1          And that's what this discussion is about. And
2    that's what, frankly, the sponsors are working on right
3    now. But I just didn't want there to be any
4    misunderstanding that, you know, the Attorney General
5    can't put somebody in jail or fine them millions of
6    dollars.
7          He would have to go before a judge and a jury
8    like any other case. Is that -- do you under -- have
9    that same understanding?
10         MS. TURCER:  So, Chair, I do -- I do
11   understand, you know, everybody's, you know, innocent
12   until proven guilty and there's a prosecutor and
13   there's -- I think -- but there can be investigative
14   abuses. And that is what I'm concerned about.
15         And I also did want to be super clear that,
16   you know, I'm here to help. You know, I -- you know, I
17   -- I am looking forward to seeing the amendments you're
18   considering. I'm looking forward to all the details.
19   And I am here to help.
20         I -- I want to ensure that Ohioans have, you
21   know, the ability to follow the money. And then also
22   that we have a campaign finance system that works as

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1    well as possible and doesn't discourage participation
2    and gets at, you know, the misdeeds.
3              REP. PETERSON:  Great. Thank you.
4    Representative Brown.
5              REP. BROWN:  Thank you. Thank you, Chair. The
6    Chair's question raised a question in me. The -- the
7    Attorney General would have, under this bill, if it
8    became law, prosecutorial powers, which would include
9    the prosecutor's broad discretion to determine what --
10   what matters to investigate and prosecute or not. And
11   so, there would be a great amount of -- and a broad
12   amount of discretion granted to the Attorney General as
13   any prosecutor has to make those determinations as to
14   who they will go after and who they will not go after.
15   Is that correct?
16             MS. TURCER:  That is -- I'm sorry. I'm not
17   following procedure.
18             REP. PETERSON:  You're doing great.
19             MS. TURCER:  You didn't follow procedure. It
20   wasn't a problem. All right. There we go.
21             REP. PETERSON:  But watch your -- but watch
22   your language. I do have grandchildren watching.
```

```
 1              MS. TURCER:  It never occurred to me -- okay.

 2      So, Rep. Brown to the Chair, that is absolutely correct

 3      and I -- I want to be super clear, I'm worried about

 4      abuse of the process not necessarily in 2024 but years,

 5      you know, now and years later.

 6              REP. PETERSON:  Thank you. Are there other

 7      questions for the witness? Thank you for your

 8      testimony.

 9              MS. TURCER:  Well, a big thank you for

10      creating time for the public to speak.

11              REP. PETERSON:  That's what we're here for.

12      There's extensive written testimony. I encourage you to

13      review it. I don't have anything else but -- but you

14      might have an amendment or two.

15              What other business is there for the

16      committee? Representative Humphrey.

17              REP. HUMPHREY:  Mr. Chairman, thank you, Mr.

18      Chairman. I move to amend House Bill 1 with amendment

19      226 and I'd like to explain.

20              REP. PETERSON:  Would you describe the -- the

21      amendment is in order. Would you describe the

22      amendment, please?
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1              REP. HUMPHREY:  Thank you, Mr. Chairman. This
2    amendment would remove the emergency clause from the
3    bill allowing us for more testimony and deliberation.
4    Yesterday you heard Representative Seitz agree that the
5    emergency clause needed to be removed to secure
6    necessary votes for passage.
7              The amendment will accomplish exactly what the
8    sponsor requested, the removal of the emergency clause.
9    Now, due to the vagueness and lack of specifity --
10   specificity in the bill, it is important that we have
11   more time in deliberation.
12             Eliminating the emergency clause will provide
13   this time. I would say the only reason why the governor
14   called for this special session in the first place was
15   because of the Biden fix.
16             Now that we no longer need the Biden fix,
17   therefore, there is no need to rush the process of
18   House Bill 1. Tracking money donated to ballot
19   initiatives and referendums from foreign nationals is
20   not easy and this legislation will not effectively
21   address the issue of dark money.
22             Instead, these funds will likely be redirected
```

1    to 501(c)(4) organizations where the money remains

2    ambiguous as was famously seen in the Householder case.

3    We all agree that the foreign money should not

4    influence statewide issues.

5            However, we must do this correctly by

6    thoroughly reviewing all aspects in refining the

7    processes to make the system fair. The emergency clause

8    specifically targets upcoming ballot initiatives such

9    as the citizens, not politicians re-districting a

10   minimum wage increase. With that, again, I move to

11   amend House Bill 1 with amendment 226.

12           REP. PETERSON:  Thank you. Chair recognizes

13   Representative Thomas for a motion.

14           REP. THOMAS:  Chair Peterson, I move to lay

15   amendment 226 on the table.

16           REP. PETERSON:  Will the clerk please call the

17   roll.

18           CLERK:  Chair Peterson.

19           REP. PETERSON:  Yes.

20           CLERK:  Vice Chair Thomas.

21           VICE CHAIR THOMAS:  Yes.

22           CLERK:  Ranking Member Humphrey.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
1              REP. HUMPHREY:  [inaudible].

2              CLERK:  Representative Brown.

3              REP. BROWN:  [inaudible].

4              CLERK:  Representative Dobos.

5              REP. DOBOS:  Yes.

6              CLERK:  Representative Grim.

7              REP. GRIM:  No.

8              CLERK:  Representative Hoops.

9              REP. HOOPS:  Yes.

10             CLERK:  Representative Isaacsohn.

11             REP. ISAACSOHN:  Yes.

12             CLERK:  Representative Oelslager.

13             REP. OELSLAGER:  Yes.

14             CLERK:  Representative Pizzulli.

15             REP. PIZZULLI:  Yes.

16             CLERK:  Representative Skindell

17             REP. SKINDELL:  No.

18             CLERK:  Representative Swearingen.

19             REP. SWEARINGEN:  Yes.

20             REP. PETERSON:  With appropriate votes the

21     amendment -- the amendment is laid on the table.

22     Representative Isaacsohn with a motion.
```

```
1                REP. ISAACSOHN:  Thank you, Chairman. I move
2        to amend House Bill 1 with amendment 2224.
3                REP. PETERSON:  The amendment is in in order.
4        Would you like to describe it.
5                REP. ISAACSOHN:  It would be my pleasure.
6                REP. PETERSON:  Let's stick to the amendment,
7        please.
8                REP. ISAACSOHN:  Yes. Well, the amendment that
9        I'm proposing is a result of the fact that this is not
10       about fundamentally getting the president on the
11       ballot.
12               That's been clear. It is not about banning
13       foreign money. That's been clear. This bill is about a
14       power grab for the Attorney General.
15               And so, what this amendment would do would put
16       this bill in line with what the sponsor said it was
17       about yesterday, what the Chair has indicated the bill
18       is truly about.
19               If this bill would actually be about
20       strengthening state law to be in line with existing
21       federal law to ban foreign money, it would be a very,
22       very, very simple bill.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

1          Because we have an existing law banning

2     foreign contributions and foreign involvement in

3     candidate campaigns. None of us can accept foreign

4     contributions. We have existing ban on campaign

5     committees.

6          So, all we would need to do, if that was the -

7     - truly the intended purpose of the bill would be to

8     add a portion of the sentence that said, and ballot

9     initiatives.

10          But we have 20 pages in this bill that are

11     doing something else, which tell us exactly what the

12     bill is actually about.

13          It's not -- we're not here to put the

14     president on the ballot and we're not here to ban

15     foreign money.

16          If we were this bill would look very

17     different. So, what this amendment does is get rid of

18     the power grab aspect.

19          We have an independent prosecutor who is

20     already responsible for enforcing the foreign money ban

21     in our politics. They -- they do that enforcement

22     today. They did it last year. They'll do it later this

```
 1    year as it relates to candidates and campaign

 2    committees.

 3            And that is the appropriate use of an

 4    independent prosecutor that are outside -- they're

 5    outside of state politics.

 6            So, what this amendment would do would be to

 7    maintain the power to enforce the existing laws against

 8    foreign contributions in an independent prosecutor.

 9    Thank you, Chair.

10            REP. PETERSON:  Thank you. Chair recognizes

11    Vice Chairman Thomas for a motion.

12            VICE CHAIR THOMAS:  Chair -- Chair Peterson, I

13    move to lay amendment 2224 on the table.

14            REP. PETERSON:  Thank you. Will the clerk

15    please call the role.

16            CLERK:  Chair Peterson.

17            REP. PETERSON:  Yes.

18            CLERK:  Vice Chair Thomas.

19            VICE CHAIR THOMAS:  Yes.

20            CLERK:  Ranking Member Humphrey.

21            REP. HUMPHREY:  No.

22            CLERK:  Representative Brown.
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

| | |
|---|---|
| 1 | REP. BROWN:  No. |
| 2 | CLERK:  Representative Dobos. |
| 3 | REP. DOBOS:  Yes. |
| 4 | CLERK:  Representative Grim. |
| 5 | REP. GRIM:  No. |
| 6 | CLERK:  Representative Hoops. |
| 7 | REP. HOOPS:  Yes. |
| 8 | CLERK:  Representative Isaacsohn. |
| 9 | REP. ISAACSOHN:  Yes. |
| 10 | CLERK:  Representative Oelslager. |
| 11 | REP. OELSLAGER:  Yes. |
| 12 | CLERK:  Representative Pizzulli. |
| 13 | REP. PIZZULLI:  Yes. |
| 14 | CLERK:  Representative Seitz. Representative |
| 15 | Skindell |
| 16 | REP. SKINDELL:  [inaudible]. |
| 17 | CLERK:  Representative Swearingen. |
| 18 | REP. SWEARINGEN:  Yes. |
| 19 | REP. PETERSON:  Thank you. With appropriate |
| 20 | votes the amendment is laid on the table. And as I -- |
| 21 | as I -- I'll share with everybody watching, as I told |
| 22 | Representative Isaacsohn my hope and that there will be |

1    an amendment that looks more like his than his

2    amendment tomorrow.

3           So, I hope we are heading in that direction.

4    So, no further business before that. That concludes the

5    first hearing on House Bill 1. Now, we call up House

6    Bill 2.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

```
 1                    CERTIFICATE OF TRANSCRIBER

 2         I, Chris Naaden, a transcriber, hereby declare

 3    under penalty of perjury that to the best of my ability

 4    from the audio recordings and supporting information;

 5    and that I am neither counsel for, related to, nor

 6    employed by any of the parties to this case and have no

 7    interest, financial or otherwise, in its outcome, the

 8    above 83 pages contain a full, true and correct

 9    transcription of the tape-recording that I received

10    regarding the event listed on the caption on page 1.

11

12         I further declare that I have no interest in

13    the event of the action.

14

15    _____

16    June 6, 2024

17    Chris Naaden

18

19    (540606, Ohio House Government Oversight Committee - 5-

20    29-2024 - Special Session)

21

22
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

85

| A | | | |
|---|---|---|---|
| **ability** | 67:1, 67:3, | 15:21, 17:1, | **advancing** |
| 3:16, 5:3, | 67:4, 67:5, | 24:8, 26:6, | 23:18 |
| 18:12, 19:20, | 67:7, 68:17, | 27:17, 28:8, | **advisory** |
| 22:14, 28:1, | 69:16, 70:22, | 28:11, 84:13 | 29:9 |
| 56:6, 73:21, | 71:1, 71:4, | **actions** | **advocacy** |
| 84:3 | 71:7, 72:1, | 5:15, 9:14 | 6:12, 21:16, |
| **able** | 72:5, 73:1, | **actively** | 25:19 |
| 12:1, 22:2, | 73:14, 75:3, | 20:7 | **advocating** |
| 23:2, 25:14, | 79:10, 79:12, | **activist** | 48:17 |
| 47:4, 48:21, | 79:13, 79:17, | 31:9 | **affect** |
| 49:4, 50:15, | 79:18, 79:19, | **activities** | 23:1, 23:6, |
| 50:16 | 80:12 | 4:7, 13:20 | 25:19, 27:5 |
| **abortion** | **above** | **activity** | **afforded** |
| 47:5 | 84:8 | 8:14, 8:16, | 18:22 |
| **about** | **absolutely** | 8:17, 19:21, | **after** |
| 4:1, 4:2, 5:8, | 20:5, 21:14, | 21:12 | 25:7, 42:12, |
| 5:18, 8:22, | 23:17, 25:1, | **actual** | 42:13, 48:2, |
| 9:12, 11:1, | 27:18, 28:1, | 5:18 | 64:4, 74:14 |
| 11:3, 11:10, | 36:3, 75:2 | **actually** | **ag** |
| 13:16, 14:11, | **abuse** | 4:13, 9:12, | 54:19, 70:9 |
| 15:20, 16:20, | 52:12, 59:12, | 10:19, 17:11, | **again** |
| 17:11, 19:22, | 75:4 | 49:22, 50:2, | 3:6, 3:15, |
| 27:12, 29:18, | **abuses** | 50:18, 51:17, | 3:19, 4:22, |
| 30:1, 31:19, | 73:14 | 53:7, 56:7, | 8:21, 40:5, |
| 33:14, 36:17, | **accept** | 57:10, 57:22, | 53:11, 54:11, |
| 38:6, 38:11, | 80:3 | 59:18, 60:5, | 57:15, 63:9, |
| 38:15, 38:19, | **accomplish** | 61:2, 63:4, | 77:10 |
| 39:4, 41:2, | 76:7 | 64:17, 65:1, | **against** |
| 42:6, 42:10, | **accomplishment** | 68:21, 71:11, | 19:10, 37:14, |
| 42:15, 42:16, | 16:13 | 79:19, 80:12 | 39:17, 81:7 |
| 43:6, 43:17, | **account** | **add** | **ago** |
| 46:12, 48:19, | 7:14 | 80:8 | 2:17 |
| 49:15, 50:14, | **accounts** | **addition** | **agree** |
| 50:20, 51:3, | 22:2 | 35:4 | 24:19, 25:17, |
| 51:4, 51:10, | **achieve** | **address** | 52:21, 72:9, |
| 51:11, 51:12, | 25:10 | 19:13, 29:6, | 76:4, 77:3 |
| 52:4, 53:1, | **across** | 50:15, 50:16, | **ags** |
| 53:5, 54:16, | 15:19, 17:16, | 60:16, 66:3, | 70:11 |
| 54:18, 55:6, | 23:6, 23:7, | 76:21 | **aims** |
| 55:21, 57:1, | 25:19, 28:2 | **addressed** | 18:5 |
| 57:8, 57:11, | **act** | 4:22, 60:14 | **all** |
| 59:10, 60:12, | 19:5, 27:8, | **addresses** | 6:3, 6:11, |
| 62:20, 63:13, | 30:2, 71:17, | 29:19, 53:17 | 6:18, 6:20, 7:1, |
| 63:16, 63:22, | 71:18 | **adds** | 7:22, 8:2, |
| 65:3, 65:7, | **acting** | 49:7, 49:9 | 11:15, 11:20, |
| 66:19, 66:20, | 72:13 | **administration** | 12:11, 13:1, |
| | **action** | 2:19 | 14:17, 17:5, |
| | 15:4, 15:18, | **adopt** | 18:19, 19:12, |
| | | 30:2 | |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

86

22:10, 23:6,
24:21, 25:3,
27:1, 30:14,
31:2, 31:20,
34:10, 34:12,
34:14, 34:20,
35:6, 35:8,
38:15, 38:21,
40:22, 41:3,
42:9, 48:4,
48:9, 48:14,
48:21, 49:6,
49:10, 56:20,
57:13, 59:5,
59:7, 59:14,
60:13, 65:2,
65:4, 66:14,
67:1, 68:18,
68:20, 68:21,
70:20, 71:7,
71:8, 73:18,
74:20, 77:3,
77:6, 80:6
**allow**
28:5, 55:3
**allowing**
76:3
**almost**
64:7
**along**
39:2, 62:13
**already**
18:2, 18:3,
18:15, 29:8,
29:12, 42:13,
47:15, 52:2,
52:10, 54:18,
55:6, 55:13,
63:12, 64:8,
68:22, 80:20
**alright**
28:15
**also**
18:11, 23:3,
28:14, 31:11,
33:17, 37:1,
37:18, 45:5,
49:13, 53:9,

54:6, 56:5,
59:13, 62:3,
65:4, 65:5,
68:10, 71:18,
71:21, 73:15,
73:21
**alternative**
17:9
**always**
9:6, 36:20,
43:8, 47:9,
55:16, 55:18,
57:16
**ambiguous**
77:2
**amend**
75:18, 77:11,
79:2
**amendment**
3:12, 18:19,
19:1, 38:2,
75:14, 75:18,
75:21, 75:22,
76:2, 76:7,
77:11, 77:15,
78:21, 79:2,
79:3, 79:6,
79:8, 79:15,
80:17, 81:6,
81:13, 82:20,
83:1, 83:2
**amendments**
47:6, 51:11,
57:13, 57:19,
73:17
**america**
16:9
**amount**
74:11, 74:12
**amounts**
29:19
**angels**
55:19, 66:5,
66:7, 66:19,
68:15
**angry**
46:12, 46:16
**announced**
31:13

**another**
16:19, 44:22,
59:21, 61:7,
62:14
**anti-corruption**
30:2
**anti-immigrant**
46:14
**anticipated**
10:19
**antithetical**
16:21, 25:18
**any**
4:18, 8:15,
10:7, 10:9,
10:11, 10:13,
10:19, 14:9,
18:15, 21:16,
25:20, 26:4,
26:7, 27:12,
28:11, 35:4,
38:14, 43:2,
43:6, 49:19,
54:8, 55:4,
59:7, 59:9,
61:3, 62:20,
66:11, 71:22,
73:3, 73:8,
74:13, 84:6
**anybody**
44:13
**anything**
29:18, 34:4,
38:14, 75:13
**anyway**
48:3
**apologies**
22:19
**appeal**
66:7
**appealed**
66:4
**appear**
5:22, 34:22,
49:21
**applicable**
35:4
**applied**
17:5

**applies**
29:10
**apply**
18:3
**appreciate**
12:14, 28:19,
40:13, 48:8,
48:12, 67:14,
72:3
**approach**
53:4
**appropriate**
72:7, 78:20,
81:3, 82:19
**arduous**
16:14
**area**
60:2
**aren't**
7:22, 8:5, 9:8,
45:1
**around**
17:7, 19:18,
19:19, 43:20,
48:11, 60:10
**arrested**
71:15
**arts**
21:4
**asked**
9:1, 32:13,
65:21
**asking**
38:22, 71:20
**aspect**
80:18
**aspects**
77:6
**assembly**
2:19, 3:19,
5:16, 13:2,
13:5, 13:8
**associated**
17:10, 22:6
**astute**
33:2
**attached**
44:5

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                87

**attack**
17:20, 19:7,
37:22
**attempts**
3:6, 6:3
**attorney**
5:13, 22:21,
26:3, 26:20,
27:1, 27:7,
27:11, 31:7,
31:9, 32:6,
32:9, 32:10,
32:16, 32:17,
32:21, 32:22,
33:1, 33:15,
34:16, 34:17,
34:18, 34:20,
35:3, 35:4,
35:8, 40:20,
41:4, 43:3,
43:7, 43:14,
43:15, 51:22,
52:2, 52:5,
52:9, 52:12,
55:4, 55:12,
56:17, 56:19,
57:2, 57:9,
57:12, 58:5,
59:8, 61:15,
61:20, 62:16,
62:17, 63:1,
63:5, 65:13,
65:17, 65:18,
65:22, 66:7,
66:11, 66:16,
67:2, 67:6,
67:16, 67:21,
68:4, 69:9,
69:21, 70:22,
71:1, 72:10,
72:12, 72:14,
73:4, 74:7,
74:12, 79:14
**attorneys**
34:22
**audacity**
22:7, 45:13
**audio**
84:4

**august**
19:2
**authur**
2:6, 2:13
**avoiding**
64:21
**aware**
33:19
**away**
47:12, 51:21

**B**

**back**
8:14, 25:4,
36:19, 49:6,
67:20
**bad**
17:22
**balance**
27:20, 72:7
**balances**
52:7, 55:7
**ballot**
3:8, 3:17, 4:4,
4:15, 5:10,
10:3, 11:17,
12:4, 13:1,
13:3, 13:7,
14:13, 14:17,
17:3, 17:11,
17:13, 18:7,
19:3, 20:8,
21:10, 29:15,
30:9, 30:20,
30:21, 31:16,
37:22, 39:9,
39:13, 42:7,
49:21, 50:19,
52:3, 52:11,
59:22, 64:7,
76:18, 77:8,
79:11, 80:8,
80:14
**ban**
79:21, 80:4,
80:14, 80:20
**bank**
22:2

**banning**
79:12, 80:1
**bans**
50:1
**barriers**
25:15
**based**
21:21, 57:18
**basically**
32:15, 32:16,
41:18, 57:1
**bastion**
6:2
**beacon**
16:9
**beat**
45:6
**became**
74:8
**because**
2:17, 3:13,
9:5, 9:14, 16:9,
23:3, 25:9,
25:10, 26:9,
31:11, 33:7,
39:11, 39:14,
39:18, 39:19,
40:8, 44:6,
44:11, 45:8,
47:3, 47:9,
47:15, 50:5,
51:16, 52:10,
53:10, 58:18,
60:22, 64:10,
67:15, 70:4,
70:18, 71:2,
76:15, 80:1
**become**
24:18, 52:20,
60:17, 62:3
**becoming**
16:11, 16:16
**beef**
53:9, 56:6,
58:3, 63:13,
69:5, 70:14
**been**
10:4, 12:2,

**12:6, 20:2,**
23:19, 26:14,
30:6, 33:8,
33:9, 46:20,
47:4, 47:7,
48:17, 50:19,
53:21, 54:1,
57:7, 60:10,
70:11, 71:14,
79:12, 79:13
**before**
2:2, 5:22,
10:5, 15:14,
16:16, 26:2,
26:9, 35:1,
40:17, 42:20,
57:1, 60:17,
62:16, 71:11,
72:11, 72:15,
73:7, 83:4
**behalf**
6:12
**being**
4:17, 4:22,
5:19, 6:11,
11:12, 15:1,
16:5, 17:21,
21:15, 22:2,
27:7, 27:11,
27:17, 27:21,
28:16, 33:14,
35:8, 36:5,
43:13, 43:15,
47:18, 48:21,
53:2, 54:12,
54:15, 63:21,
63:22
**believe**
22:19, 23:13,
24:4, 33:1,
52:11, 54:6,
55:20, 66:9,
68:9, 69:4
**believed**
16:9
**believer**
29:6
**belong**
16:6

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                                                88

| | | | |
|---|---|---|---|
| **benefit** | 30:5, 31:5, | **body** | 82:1 |
| 49:22, 51:3, | 32:5, 32:8, | 17:15, 19:13, | **budget** |
| 64:15, 64:16 | 34:9, 37:13, | 44:3 | 53:9 |
| **beside** | 39:9, 40:16, | **bog** | **bunch** |
| 45:2 | 40:19, 44:5, | 62:2 | 21:2 |
| **besides** | 48:13, 49:6, | **bogs** | **burden** |
| 57:3 | 51:10, 51:20, | 61:22 | 23:4 |
| **best** | 52:8, 53:18, | **boiling** | **business** |
| 16:12, 50:16, | 54:1, 57:17, | 36:15 | 38:13, 75:15, |
| 68:16, 72:22, | 58:11, 65:12, | **boller** | 83:4 |
| 84:3 | 65:15, 65:21, | 38:8, 38:9, | **busy** |
| **bestowing** | 66:10, 67:15, | 38:12 | 71:21 |
| 65:13 | 71:6, 72:10, | **both** | **byrnes** |
| **better** | 74:7, 75:18, | 8:14, 65:5 | 36:7, 36:9, |
| 53:4, 55:19, | 76:3, 76:10, | **bow** | 41:6, 41:8, |
| 56:1, 58:4, | 76:18, 77:11, | 39:12, 40:1 | 41:11, 41:14, |
| 62:6, 64:20, | 79:2, 79:13, | **brain** | 43:8, 44:6, |
| 66:5, 66:7, | 79:16, 79:17, | 56:22 | 45:11, 45:21, |
| 66:19, 68:15 | 79:19, 79:22, | **break** | 47:19 |
| **betting** | 80:7, 80:10, | 38:2, 69:6 | |
| 36:21, 36:22 | 80:12, 80:16, | **briefly** | **C** |
| **between** | 83:5, 83:6 | 42:18 | |
| 13:3, 14:12, | **billionaires** | **bring** | **c) (4** |
| 27:20, 29:20, | 44:15 | 72:14 | 77:1 |
| 44:14 | **bills** | **british** | **c) (4)'s** |
| **beyond** | 2:2, 3:14, | 25:8 | 29:17 |
| 14:5, 18:4 | 46:3, 46:4 | **broad** | **call** |
| **biden** | **bipartisan** | 18:5, 18:19, | 6:2, 72:15, |
| 31:14, 76:15, | 43:19 | 22:20, 55:2, | 77:16, 81:15, |
| 76:16 | **birthday** | 74:9, 74:11 | 83:5 |
| **big** | 20:19, 20:21 | **broader** | **called** |
| 60:22, 75:9 | **bit** | 53:7 | 19:6, 24:1, |
| **bill** | 22:12, 53:10, | **broadly** | 76:14 |
| 2:3, 2:12, | 54:21, 55:14, | 71:2 | **calling** |
| 3:15, 4:2, 5:1, | 55:17, 57:16 | **brought** | 31:18 |
| 5:7, 5:19, 6:14, | **blame** | 16:8, 19:19, | **came** |
| 7:17, 8:7, 8:16, | 36:16, 36:22, | 33:14, 54:17 | 3:10, 3:11, |
| 9:5, 9:19, | 37:4, 37:5, | **brown** | 16:22, 25:6 |
| 11:14, 12:2, | 37:18, 44:11, | 12:16, 12:17, | **campaign** |
| 12:20, 13:7, | 44:12 | 23:9, 23:11, | 10:4, 10:7, |
| 13:15, 13:17, | **bless** | 23:19, 32:2, | 15:15, 17:2, |
| 13:18, 14:2, | 41:15 | 32:3, 33:17, | 20:18, 21:10, |
| 14:16, 15:14, | **block** | 45:3, 56:22, | 39:19, 43:5, |
| 18:17, 19:6, | 12:22 | 65:9, 65:11, | 48:18, 51:15, |
| 19:10, 21:12, | **blood** | 66:13, 68:1, | 53:12, 55:2, |
| 22:11, 22:12, | 36:15 | 74:4, 74:5, | 56:4, 59:6, |
| 29:4, 29:7, | **board** | 75:2, 78:2, | 60:5, 73:22, |
| 29:12, 30:2, | 17:16 | 78:3, 81:22, | 80:4, 81:1 |
| | | | **campaigning** |
| | | | 38:1 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                                                        89

| | | | |
|---|---|---|---|
| **campaigns** 7:13, 14:13, 29:16, 29:21, 50:20, 52:3, 52:11, 55:5, 80:3 | **catherine** 47:20, 48:15 | 65:11, 66:13, 68:12, 69:15, 70:21, 73:10, 74:5, 75:2, | **cherished** 3:4, 5:9 |
| | **catholic** 60:1 | | **childcare** 46:5 |
| | **caucus** 44:12 | 77:12, 77:14, 77:18, 77:20, | **chill** 17:12 |
| **can't** 11:16, 50:22, 73:5 | **cause** 9:6, 23:5, 30:14, 34:3, 48:16 | 77:21, 79:17, 81:9, 81:10, 81:12, 81:16, 81:18, 81:19 | **chilling** 4:8, 5:3, 22:4, 23:1, 23:6, 25:19, 27:5, 27:18, 28:1, |
| **canadian** 50:9 | | | |
| **candidate** 26:4, 31:15, 34:10, 35:7, 50:9, 67:20, 80:3 | **causes** 18:9, 18:12 | **chair's** 74:6 | 31:1, 35:5 |
| | **ceases** 45:14 | **chairman** 2:8, 15:3, 21:13, 22:18, | **china** 12:21 |
| | **century** 3:2 | 22:19, 23:17, 25:1, 27:4, | **choice** 44:14 |
| **candidates** 11:16, 17:3, 28:8, 28:11, 35:6, 50:10, 55:5, 68:4, 81:1 | **cerebral** 44:21 | 45:19, 54:14, 56:10, 67:14, 70:1, 72:2, | **choose** 31:10 |
| | **certain** 27:14, 42:22, 62:13 | 75:17, 75:18, 76:1, 79:1, 81:11 | **chris** 84:2, 84:17 |
| **cannot** 7:12 | **certainly** 21:20, 22:1, 22:22, 23:5, 72:5 | **challenge** 57:16 | **christian** 1:22 |
| **capital** 30:13 | | **challenges** 50:6 | **church** 60:1 |
| **caption** 84:10 | **certificate** 84:1 | **chance** 6:21 | **circles** 44:16 |
| **card** 5:4, 14:1 | **chair** 2:9, 6:10, 7:21, 8:21, 10:1, 10:15, 11:6, 11:8, 12:17, 13:10, 13:11, 14:21, 15:10, 19:16, 20:12, 23:11, 25:22, 28:6, 29:1, 29:2, 32:3, 33:4, 33:13, 35:10, 35:17, 36:2, 36:9, 36:10, 40:18, 42:18, 44:1, 55:16, 57:7, 58:10, 59:11, 62:1, 62:9, 63:2, 63:20, 64:15, | **change** 34:8, 58:13, 64:8 | **citizen** 3:16, 4:21, 5:20, 7:11, 9:7, 9:9, 13:4, 13:22, 14:3, 14:4, 16:12, 18:6, 27:15, 59:19 |
| **care** 2:20, 15:19, 19:22, 28:13 | | **changes** 10:7, 19:4, 26:18, 63:14, 64:2, 64:21 | |
| **cared** 16:19 | | **changing** 64:12 | **citizen's** 9:16 |
| **careful** 66:14 | | **charge** 40:13, 72:14 | **citizen-initiated** 52:4 |
| **carefully** 8:5 | | **charter** 24:2 | **citizens** 2:21, 4:6, 4:19, 5:21, 6:4, 6:12, 15:19, 16:16, 18:22, 30:8, 31:2, 77:9 |
| **case** 43:11, 53:11, 69:14, 73:8, 77:2, 84:6 | | **check** 46:5 | |
| **cases** 32:10, 55:4 | | **checks** 52:7, 55:7 | **civic** 60:15 |
| **cast** 55:17 | | **cherish** 19:3 | **clarity** 7:7, 15:9, |
| **catches** 12:9 | | | |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

90

| | | | |
|---|---|---|---|
| 50:15, 61:7 | coal | 68:20, 69:1, | 73:14 |
| **clause** | 54:2 | 69:5 | **concerning** |
| 30:7, 44:4, | **code** | **committee** | 26:2 |
| 64:3, 76:2, | 34:19 | 1:8, 2:10, 6:1, | **concerns** |
| 76:5, 76:8, | **colleagues** | 10:8, 11:9, | 42:19, 43:6, |
| 76:12, 77:7 | 54:17 | 15:13, 15:14, | 48:10, 62:10, |
| **clean** | **collect** | 19:9, 26:4, | 65:12, 72:6 |
| 39:8 | 30:19 | 26:17, 29:3, | **concludes** |
| **clear** | **collection** | 32:14, 34:5, | 83:4 |
| 6:14, 6:17, | 20:8 | 38:19, 43:5, | **conferred** |
| 7:1, 7:17, 7:21, | **college** | 59:6, 59:7, | 34:21 |
| 8:9, 9:17, 21:7, | 20:15 | 62:16, 62:19, | **confuse** |
| 21:14, 27:4, | **colonial** | 75:16, 84:19 | 64:5 |
| 48:7, 50:18, | 25:8 | **committees** | **confusing** |
| 50:20, 61:8, | **combined** | 26:5, 27:1, | 6:18, 22:20 |
| 63:3, 63:4, | 22:2 | 34:11, 34:12, | **confusion** |
| 68:13, 73:15, | **combining** | 35:6, 35:7, | 8:13 |
| 75:3, 79:12, | 37:17 | 36:1, 59:6, | **connected** |
| 79:13 | **come** | 59:7, 61:21, | 4:20 |
| **clearly** | 3:14, 11:2, | 80:5, 81:2 | **connections** |
| 9:15, 50:17, | 36:12, 40:4, | **common** | 29:20 |
| 59:12, 62:1, | 42:4, 42:12, | 48:16 | **consequence** |
| 62:2 | 50:7, 64:3 | **communities** | 5:2 |
| **clerk** | **comes** | 16:7, 17:14, | **consequences** |
| 77:16, 77:18, | 43:18 | 20:10 | 9:13, 53:22, |
| 77:20, 77:22, | **comfortable** | **community** | 54:9, 64:12, |
| 78:2, 78:4, | 22:16, 43:13 | 16:18 | 71:22 |
| 78:6, 78:8, | **coming** | **companies** | **consider** |
| 78:10, 78:12, | 13:8, 19:17, | 29:20 | 49:2, 49:5 |
| 78:14, 78:16, | 36:19, 40:2, | **completely** | **considering** |
| 78:18, 81:14, | 58:12, 58:19 | 6:19, 37:13 | 57:14, 73:18 |
| 81:16, 81:18, | **comment** | **complex** | **consolidating** |
| 81:20, 81:22, | 12:2 | 18:5 | 41:3 |
| 82:2, 82:4, | **commission** | **comport** | **conspiring** |
| 82:6, 82:8, | 10:5, 10:8, | 66:8 | 36:14 |
| 82:10, 82:12, | 10:12, 10:14, | **comprehensive** | **constituted** |
| 82:14, 82:17 | 26:10, 26:19, | 53:12 | 21:7, 21:8 |
| **cleveland** | 29:9, 32:8, | **concept** | **constitution** |
| 2:15 | 33:20, 33:21, | 12:3, 12:7 | 3:12, 19:1, |
| **cliff** | 34:15, 40:20, | **concern** | 23:20, 24:10, |
| 41:20 | 42:20, 42:22, | 9:12, 11:18, | 47:6 |
| **climate** | 49:17, 53:2, | 14:8, 14:10, | **constitutional** |
| 20:18 | 53:8, 57:21, | 14:11, 43:9 | 23:20, 23:21, |
| **closely** | 58:16, 58:19, | **concerned** | 47:6 |
| 70:19 | 59:8, 60:18, | 2:18, 3:18, | **constraint** |
| **cloud** | 60:20, 61:2, | 4:1, 4:2, 5:18, | 42:21, 43:2 |
| 62:19 | 62:4, 62:11, | 8:22, 9:18, | **contain** |
| **co-mingled** | 63:10, 65:16, | 59:10, 63:22, | 84:8 |
| 7:14 | | | |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

91

| | | | |
|---|---|---|---|
| **continue** 7:2, 7:3, 8:11, 20:11, 22:9, 42:17, 56:9, 61:13, 62:8, 67:22, 68:2 **continuing** 54:2 **contribute** 4:15, 7:12, 14:3, 29:15 **contributing** 49:20 **contribution** 18:1, 21:9, 50:9, 58:12 **contributions** 10:21, 50:10, 61:16, 80:2, 80:4, 81:8 **control** 71:12 **controversial** 68:14, 69:20 **convention** 23:21 **convince** 66:3 **cop** 41:16, 51:18 **core** 6:4, 46:10 **cornerstone** 25:2 **corpse** 45:7 **correct** 13:6, 13:9, 23:15, 53:1, 74:15, 75:2, 84:8 **correction** 15:4 **correctly** 38:3, 77:5 **corruption** 49:14 **cortex** 44:21 | **could** 3:20, 7:7, 13:21, 21:17, 26:13, 30:18, 43:11, 45:18, 45:19, 50:7, 52:14, 53:9, 54:22, 55:10, 56:16, 56:18, 62:3, 63:5, 63:12, 66:15, 69:20 **couldn't** 31:12, 31:21, 44:6, 44:7, 44:8 **council** 15:1, 15:4, 15:18, 15:21, 26:6, 28:8, 28:10 **counsel** 84:5 **countries** 18:15 **country** 16:8, 33:7, 43:19 **county** 29:6, 31:7, 32:6, 34:6, 37:2, 51:21, 67:19, 67:21, 69:11 **couple** 41:21, 63:21 **course** 2:22, 30:4, 49:16, 50:21, 63:19 **court** 45:4 **crafted** 56:5 **crafting** 50:1 **crafts** 21:4 **crazy** 33:5, 46:4 | **create** 23:4, 52:6, 53:13, 66:18, 71:12 **created** 5:6, 13:4, 63:11 **creating** 17:9, 48:5, 51:3, 51:6, 51:7, 54:4, 75:10 **credit** 46:19 **crucial** 6:2, 17:22, 19:11, 23:17, 25:9 **crux** 27:4 **cry** 39:4 **curious** 26:21 **current** 26:8, 26:9, 26:17, 33:18, 42:21, 62:10, 71:1 **currently** 13:19 **cuss** 37:20 **D** **dampen** 5:20 **dark** 44:14, 44:15, 48:20, 53:20, 71:8, 76:21 **date** 38:10 **dave** 42:10, 42:11 **day** 16:12, 38:4, 51:2 | **dead** 38:11 **deal** 13:7, 58:18, 62:18, 67:22 **dealing** 59:5, 67:8, 69:10 **dealings** 10:14 **deals** 61:21 **dealt** 10:3, 10:4 **dearly** 70:6 **decide** 72:16 **decision** 27:19, 32:18, 50:4, 62:14 **decisions** 51:5 **declare** 84:2, 84:12 **decrease** 9:16 **deep** 14:11 **deeply** 8:22, 16:20 **defense** 19:5 **degree** 43:15, 66:9 **deliberation** 76:3, 76:11 **delineated** 8:5 **deluded** 39:19 **democracy** 6:3, 6:5, 7:2, 10:22, 15:20, 15:22, 16:10, 16:22, 19:6, 23:14, 23:17, 24:2, 25:1, |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

92

25:2, 25:5,
25:9, 25:13,
25:18, 29:6,
38:7
**democrat**
27:9
**democratic**
4:10, 5:5, 5:9,
16:4, 23:2,
23:8, 27:22,
36:18, 37:14,
47:2, 64:12
**democrats**
53:4, 56:1,
56:2, 67:9
**demonstrated**
19:2
**depending**
12:12, 72:21
**derogatory**
41:10
**describe**
75:20, 75:21,
79:4
**describing**
8:13
**deserts**
44:17
**deserve**
42:6
**designed**
16:2, 17:7,
17:12, 58:20
**desire**
16:6
**desperately**
65:3
**detail**
12:1, 55:14
**details**
73:18
**determinations**
74:13
**determine**
74:9
**determined**
49:18
**detriment**
46:20

**devil**
12:1
**devoted**
2:15
**different**
12:12, 26:8,
49:9, 49:11,
59:14, 66:14,
71:8, 80:17
**difficult**
30:19
**dilute**
47:5
**diluted**
42:9
**direct**
23:14, 25:1
**direction**
83:3
**directly**
18:12
**director**
15:18
**dirrig**
14:22, 15:3,
15:7, 15:10,
15:17, 20:5,
20:12, 21:13,
22:17, 23:12,
23:16, 24:22,
27:3, 28:6,
28:10, 28:15,
28:18
**disagree**
70:3
**disclaimer**
61:18
**disclose**
4:5
**disclosing**
4:7
**disclosure**
17:1, 17:4,
17:6, 17:10,
17:16, 23:4,
53:16
**disclosures**
30:18

**discourage**
60:15, 74:1
**discouraging**
63:14
**discretion**
74:9, 74:12
**discussed**
11:10
**discussion**
19:19, 73:1
**dismayed**
3:6
**dismiss**
34:1
**dispersions**
55:17
**disrupt**
43:4
**distinction**
13:3, 14:12
**district**
39:21
**districts**
30:10, 47:11
**dive**
7:6
**divest**
34:14
**divested**
59:9
**dnc**
31:13
**dobos**
78:4, 78:5,
82:2, 82:3
**doctor**
2:17, 3:22,
6:11, 7:9, 10:2,
12:18, 13:21,
14:3
**doctors**
2:18, 4:13,
5:14, 5:22,
7:22, 9:9
**doing**
13:13, 33:3,
48:13, 50:6,
70:10, 74:18,

80:11
**dollar**
29:19
**dollars**
73:6
**domestic**
18:1
**donald**
40:3
**donate**
29:16
**donated**
16:17, 76:18
**donation**
30:15
**donations**
18:9, 18:14,
28:8, 28:11
**done**
38:14
**donors**
29:19, 66:22
**doubt**
4:8
**down**
12:15, 14:19,
42:9, 54:7,
61:5, 61:22,
62:2
**dr**
2:6, 2:8, 2:13,
6:8, 6:19, 7:20,
8:21, 10:15,
10:18, 11:19,
11:22, 12:8,
13:10, 13:14,
14:21
**drafted**
8:17, 12:2,
13:19, 22:11
**draw**
22:1
**driven**
19:21
**due**
76:9
**duplicative**
18:17

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

93

| | | | |
|---|---|---|---|
| during | elections | 65:2, 75:12 | 53:5, 53:14, |
| 19:2, 48:6, | 10:5, 17:6, | encouraging | 54:8, 57:21, |
| 64:18 | 18:2, 18:3, | 71:12, 71:18 | 60:14, 73:20 |
| **E** | 29:8, 29:9, | end | ensuring |
| each | 42:1, 42:20, | 39:10, 39:13, | 17:5 |
| 4:13, 30:17 | 43:18, 46:1, | 51:2 | enter |
| easier | 49:1, 49:17, | ended | 26:13 |
| 54:5 | 51:1, 53:2, | 47:16 | entirely |
| easy | 53:6, 53:8, | endless | 45:15 |
| 76:20 | 53:15, 53:20, | 43:5 | entity |
| effect | 57:21, 60:17, | endlessly | 58:13 |
| 4:9, 22:4, | 61:2, 62:4, | 43:4 | entrust |
| 27:18, 28:1, | 62:11, 68:20, | ends | 41:21 |
| 31:1, 35:6 | 68:21, 69:1 | 66:11 | environment |
| effective | electoral | energy | 15:20, 16:1, |
| 53:12 | 17:3 | 38:13, 49:8 | 23:18 |
| effectively | elevates | enforce | environmental |
| 76:20 | 5:7, 5:12 | 22:22, 56:7, | 15:1, 15:4, |
| effort | eliminating | 81:7 | 15:18, 15:21, |
| 5:19, 17:20 | 76:12 | enforced | 18:9, 26:6, |
| efforts | elites | 21:22 | 28:7, 28:10 |
| 4:16 | 46:17 | enforcement | equates |
| egregious | eloquently | 31:6, 51:14, | 39:21 |
| 31:5 | 24:1 | 51:19, 51:21, | erosion |
| eight | else | 53:5, 55:21, | 55:7 |
| 16:15 | 44:13, 75:13, | 80:21 | erred |
| either | 80:11 | enforcing | 41:16 |
| 40:8, 47:14 | emanating | 80:20 | essential |
| elaborate | 13:5 | engage | 16:1 |
| 64:2 | embarrassment | 17:17, 22:3, | etcetera |
| elected | 31:17 | 23:2 | 60:3 |
| 41:22, 45:2, | emergency | engaged | even |
| 55:22 | 30:7, 44:4, | 27:12, 28:3, | 22:12, 31:3, |
| election | 64:3, 76:2, | 37:7, 51:8, | 35:7, 36:17, |
| 19:2, 26:10, | 76:5, 76:8, | 53:16 | 37:19, 40:3, |
| 32:8, 33:18, | 76:12, 77:7 | engaging | 44:6, 44:7, |
| 33:20, 34:15, | employed | 20:7, 27:5, | 44:8, 46:19, |
| 35:22, 40:20, | 84:6 | 37:13 | 56:14, 57:3, |
| 40:22, 41:4, | employees | enjoy | 61:17, 61:20, |
| 41:17, 42:19, | 46:6 | 25:3 | 64:22 |
| 42:22, 57:21, | empowering | enough | evenly |
| 58:14, 58:18, | 22:21 | 8:6, 33:22, | 17:4 |
| 58:19, 60:20, | enacted | 42:12, 45:1, | event |
| 61:17, 63:10, | 18:10 | 45:3, 45:5, | 3:1, 84:10, |
| 64:17, 64:18, | enacting | 45:14, 58:22, | 84:13 |
| 64:22, 69:5 | 64:10 | 59:4, 72:16 | events |
| election's | encourage | ensure | 14:14 |
| 26:10 | 49:2, 51:9, | 51:6, 52:19, | eventually |
| | | | 70:17 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

94

ever
24:18
every
3:22, 27:19,
38:8, 45:2,
61:16
everybody
40:11, 82:21
everybody's
73:11
everything
10:20, 69:14
evidence
33:22, 72:16,
72:19
exact
35:12
exactly
48:2, 61:8,
76:7, 80:11
example
7:8, 45:22,
50:7, 54:3,
59:17, 59:19,
60:8
except
32:9, 32:10
excited
40:10
exclusive
35:9
existence
12:6
existing
79:20, 80:1,
80:4, 81:7
exists
29:12
expand
14:9
expect
42:4
expenditure
21:8, 53:17,
58:12, 60:4,
61:16
expenditures
17:18

experience
17:1, 44:3
explain
45:19, 54:21,
75:19
exploited
66:10
extends
37:1
extensive
2:5, 75:12
extorsion
38:10
eyes
5:15

**F**

face
3:19, 7:22
facilities
24:14
facing
4:19, 5:5
fact
8:9, 10:18,
26:13, 63:5,
79:9
fail
24:11
failed
61:19
failure
24:14, 62:21
fair
23:18, 30:10,
47:10, 77:7
faith
17:22
family
16:22
famous
24:1, 24:20
famously
77:2
fan
46:7
far
36:19, 43:20,

45:11
farmer
38:16
fathers
41:15
favor
41:7, 42:2
fbi
71:9, 71:10
fear
8:8, 8:13,
8:20, 9:7
february
36:19
federal
18:2, 18:15,
29:8, 29:10,
79:21
feel
9:2, 22:15,
55:6, 56:15,
56:18, 57:2
fellow
6:12
few
20:21, 21:1,
65:7
figure
47:3, 51:1
file
29:17, 30:17
finally
38:2
finance
15:15, 17:2,
48:18, 51:15,
53:12, 55:2,
56:4, 73:22
financial
4:11, 4:19,
5:6, 84:7
financially
4:18, 20:9
find
26:15, 33:21,
34:2, 34:3,
58:22, 59:1,
59:3, 72:6

fine
10:12, 26:12,
26:15, 34:4,
34:6, 59:3,
60:19, 73:5
first
2:3, 2:5, 4:3,
6:20, 14:8,
18:19, 19:1,
37:19, 38:13,
49:8, 66:2,
76:14, 83:5
fix
39:8, 76:15,
76:16
flagpole
40:14
flagrant
38:20, 38:21
flavored
37:9
floor
3:14
focus
40:16, 71:14
focused
14:17
folks
20:2, 45:20,
51:8, 60:2,
64:5, 68:22
follow
11:4, 33:16,
35:18, 42:17,
48:21, 49:4,
50:22, 56:7,
61:11, 70:2,
73:21, 74:19
followed
57:22
following
24:3, 52:17,
64:16, 64:19,
74:17
forced
27:17
foreign
5:1, 7:11,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

95

11:14, 11:16,
12:9, 13:20,
13:22, 14:4,
14:6, 14:9,
14:15, 15:15,
18:1, 18:14,
20:4, 20:6,
20:20, 21:9,
22:1, 22:5,
22:6, 29:7,
29:14, 42:13,
44:15, 49:16,
49:19, 50:1,
50:12, 50:19,
51:1, 53:6,
53:14, 54:5,
58:12, 60:14,
61:15, 76:19,
77:3, 79:13,
79:21, 80:2,
80:3, 80:15,
80:20, 81:8
**form**
18:19, 23:13,
65:14
**former**
23:22
**forward**
2:7, 8:15,
59:1, 72:17,
72:20, 73:17,
73:18
**fostered**
53:18
**found**
70:4, 70:17
**founding**
41:15
**four**
71:14
**frameworks**
23:5
**frankly**
21:16, 22:20,
25:2, 25:6,
42:11, 73:2
**free**
53:6

**freedom**
16:2, 16:10
**french**
45:12
**friends**
21:2, 66:20
**frightened**
9:4, 9:10
**frightens**
8:5, 9:5
**full**
84:8
**functioning**
44:21
**fund**
15:5, 15:18,
15:21, 17:1,
26:6, 28:8,
28:11
**fundamentally**
41:14, 42:5,
79:10
**funded**
49:8
**funds**
60:7, 76:22
**further**
26:15, 54:21,
83:4, 84:12
**future**
4:5, 8:16,
8:19, 66:12

---
G
---

**gave**
20:20, 50:9,
66:15
**general**
2:19, 3:19,
5:13, 5:16,
13:2, 13:5,
13:8, 22:21,
27:8, 27:11,
31:9, 32:6,
32:9, 32:10,
32:16, 32:21,
32:22, 33:1,
33:15, 34:17,

34:18, 34:20,
35:3, 35:5,
35:8, 40:21,
41:2, 41:4,
43:3, 43:7,
43:14, 43:15,
52:1, 52:2,
52:5, 52:9,
52:12, 55:4,
55:12, 56:17,
56:19, 57:2,
57:9, 57:12,
58:5, 61:15,
61:20, 62:17,
62:18, 63:1,
63:5, 65:13,
65:17, 65:18,
66:1, 66:11,
66:16, 67:2,
67:6, 67:17,
67:22, 68:4,
69:9, 69:21,
70:22, 71:1,
71:13, 72:10,
72:13, 72:14,
73:4, 74:7,
74:12, 79:14
**general's**
26:3, 26:20,
27:1, 31:8,
32:17, 34:16,
59:8, 66:7
**generation**
49:7
**genuinely**
16:6
**getting**
8:6, 13:14,
22:16, 37:19,
60:12, 63:15,
79:10
**gift**
20:21
**gig**
47:11
**gimp**
37:6, 39:3
**give**
30:5, 30:12,

42:10, 46:18,
50:10, 53:7,
67:8, 69:5
**given**
8:12, 8:20,
19:7, 22:10,
44:3
**gives**
47:12, 51:22
**giving**
19:17, 32:5,
41:21, 52:6,
55:21, 56:2,
57:8, 63:4
**glad**
9:1
**go**
37:18, 42:12,
42:20, 43:4,
56:14, 56:18,
59:1, 59:7,
59:20, 59:21,
66:15, 67:20,
73:7, 74:14,
74:20
**goal**
25:9, 27:6
**gob**
36:15
**god**
41:15
**goes**
14:4, 18:4,
26:9, 37:4,
37:5, 37:18,
46:2
**going**
8:3, 30:4,
38:5, 39:2,
39:7, 39:13,
40:4, 40:9,
42:8, 43:10,
43:14, 44:20,
45:13, 46:4,
47:8, 60:3,
60:6, 63:6,
63:7, 64:3,
64:6, 64:7,

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 700 of 879 PAGEID #: 835

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                                                    96

64:8, 68:10,
68:15, 69:10,
69:12, 69:13,
70:16, 70:17,
70:20
**gone**
10:5, 61:3
**good**
15:3, 15:10,
24:14, 34:3,
46:15, 47:14,
48:1, 51:7,
51:14, 51:19,
53:15, 54:15,
65:1, 70:10
**gotten**
70:11, 71:15
**government**
1:8, 2:10,
9:14, 14:7,
15:12, 19:9,
24:6, 24:7,
29:3, 30:18,
38:8, 38:13,
41:20, 84:19
**governmental**
14:7, 39:22
**governments**
13:20, 14:6
**governor**
37:1, 64:4,
76:13
**governor's**
45:4
**grab**
79:14, 80:18
**grand**
35:1, 35:2,
72:15, 72:16,
72:18
**grandchildren**
45:10, 74:22
**grandfather**
25:6
**grandparent**
20:20
**grandparents**
16:7

**grant**
9:7, 34:16
**granted**
35:8, 74:12
**granting**
41:3
**grass**
17:12
**grassroots**
20:3, 22:14
**great**
13:13, 74:3,
74:11, 74:18
**greater**
2:15, 48:17,
49:12, 50:21,
51:3, 53:13,
54:4, 71:13,
72:11
**green**
5:4, 14:1
**grim**
63:17, 63:19,
65:8, 78:6,
78:7, 82:4, 82:5
**grounds**
33:22, 58:22
**group**
2:14, 2:17,
3:5, 4:12, 7:16,
8:15, 9:10,
30:17
**groups**
30:14, 37:22,
70:18, 71:8
**growing**
25:8
**guess**
66:6, 68:8,
69:8, 70:3
**guilty**
73:12
**guys**
20:3, 36:12,
36:14, 36:22,
37:8, 37:10,
37:12, 37:16,
37:18, 38:5,

38:6, 38:14,
39:6, 39:10,
39:12, 39:13,
39:14, 39:18,
39:19, 40:1,
40:12, 46:11,
47:10, 47:11,
47:13

**H**

**hacks**
41:17
**hand**
17:19, 23:8,
32:19, 57:22,
68:19, 68:22
**hands**
24:14, 45:15
**happen**
55:1, 72:10
**happened**
11:3, 50:3
**happening**
6:20, 20:16,
25:13
**happens**
4:20
**hard**
66:18, 66:19,
66:20, 66:21
**harder**
30:21, 48:3
**harmful**
14:16
**hb**
17:9, 18:4,
19:8, 36:11,
37:3, 38:15,
56:12
**head**
2:14, 9:3,
56:11
**heading**
83:3
**healthcare**
2:16, 46:5
**healthy**
15:22, 16:1,

23:18
**hear**
8:3
**heard**
3:9, 3:13,
7:16, 37:1,
39:6, 76:4
**hearing**
2:3, 26:11,
30:5, 34:15,
62:13, 62:16,
83:5
**heavy**
22:22
**heightens**
8:8
**help**
2:21, 73:16,
73:19
**here**
3:13, 4:1, 5:4,
5:16, 6:11, 9:3,
9:19, 10:7,
11:9, 12:18,
14:1, 15:7,
16:22, 25:6,
25:7, 27:6,
36:10, 37:17,
39:14, 42:14,
43:20, 44:9,
47:16, 49:15,
51:14, 54:15,
59:5, 60:7,
63:21, 65:20,
67:15, 69:4,
72:4, 73:16,
73:19, 75:11,
80:13, 80:14
**hereby**
84:2
**hesitant**
55:17
**hidden**
9:6
**highlight**
53:11, 57:20,
63:9
**highly**
3:3, 35:21

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

97

highway
51:18
himself
32:16, 66:1,
66:8
hinder
8:17, 18:12
history
38:10, 64:21
hob
36:15
hog
39:16, 39:17,
40:2, 40:4,
40:7, 45:20,
45:22, 46:1,
46:6, 46:9,
47:8, 47:14
hogs
46:22, 47:2
hold
26:11, 62:18,
63:19
holders
34:12
holding
31:13
home
45:20, 46:2
hoops
67:11, 67:13,
68:12, 69:8,
69:15, 69:18,
70:1, 70:3,
78:8, 78:9,
82:6, 82:7
hope
82:22, 83:3
hopefully
47:2
house
1:8, 2:3, 2:11,
3:15, 4:2, 5:17,
5:19, 6:1, 6:3,
9:19, 14:15,
15:12, 15:14,
19:9, 29:4,
30:2, 32:7,

34:9, 40:18,
48:8, 48:13,
49:6, 53:18,
54:1, 57:17,
58:11, 71:6,
75:18, 76:18,
77:11, 79:2,
83:5, 84:19
householder
71:15, 77:2
however
18:4, 77:5
huge
22:4
humans
55:18
humphrey
2:9, 15:11,
29:2, 36:10,
54:13, 54:14,
55:15, 56:10,
58:7, 75:16,
75:17, 76:1,
77:22, 78:1,
81:20, 81:21
hurt
9:7
hyper
62:3

I

idea
4:17
identify
66:14, 71:11
illegal
14:2, 18:2,
42:13
imagine
50:6
imagining
59:14
immediately
64:4
immensely
16:13
immigrants
17:7

impact
6:15, 7:7,
14:6, 18:13,
19:20, 21:11,
22:13
impacted
53:20
impassioned
19:18
impede
3:15
implications
19:8
import
18:21
importance
24:12, 25:5,
48:20
important
6:1, 19:13,
23:14, 51:5,
51:15, 51:19,
71:5, 76:10
impose
10:12, 18:5,
26:15, 34:3
imposing
34:5
improve
16:6, 17:15
inaugural
66:2
include
53:13, 74:8
includes
53:3, 56:2
including
13:1, 18:8,
19:1, 26:5,
34:22
inclusive
15:22
inclusively
17:14
increase
4:11, 77:10
increased
23:3

increasing
17:16, 27:21
incredibly
52:14
independent
21:8, 53:16,
58:2, 60:4,
80:19, 81:4,
81:8
independents
53:4, 56:3,
67:10
india
25:7
indicate
12:19
indicated
79:17
indication
21:14, 21:19
indirect
21:9
individual
22:5, 40:21
individuals
17:17, 17:21,
41:10, 70:6
industry
36:21
influence
5:1, 14:11,
14:16, 18:1,
53:7, 77:4
information
20:9, 44:17,
49:5, 71:16,
84:4
inhibit
3:7
inhibited
3:21
initially
13:12
initiated
13:2
initiative
3:8, 3:17,
4:16, 5:10,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

98

12:4, 14:17,
17:11, 19:4,
21:10, 23:13,
23:19, 24:4,
24:8, 24:15,
27:12, 39:13
**initiatives**
4:4, 11:17,
13:1, 13:3,
13:8, 14:13,
15:16, 17:3,
17:13, 18:7,
20:8, 30:22,
37:22, 64:7,
76:19, 77:8,
80:9
**injustice**
25:13
**innocent**
73:11
**instead**
18:5, 51:22,
76:22
**instill**
35:21
**intended**
12:20, 62:5,
80:7
**intent**
5:18, 9:17,
35:12
**intents**
13:17
**interest**
24:13, 51:13,
84:7, 84:12
**interested**
47:21, 51:13
**interference**
12:21, 13:1,
13:16
**interrogate**
35:1
**interventions**
10:19
**introduce**
48:15
**introduced**
30:6, 51:20

**investigate**
26:11, 74:10
**investigated**
7:18
**investigation**
5:8, 5:12,
5:14, 71:9,
71:10
**investigations**
6:18, 52:19
**investigative**
53:7, 73:13
**involved**
2:16, 7:9, 8:1,
9:2, 20:3,
20:17, 20:22,
21:15, 22:16,
27:21, 32:11,
32:14, 32:18,
35:13, 65:19,
68:10, 68:19,
69:13
**involvement**
37:3, 49:19,
80:2
**involving**
55:4
**iran**
12:21
**irvin**
28:20, 29:1,
29:5, 33:4,
35:10, 36:2,
36:6
**isaacsohn**
6:9, 6:10, 7:4,
8:12, 9:1,
13:22, 19:15,
19:16, 20:14,
22:10, 43:22,
44:1, 78:10,
78:11, 78:22,
79:1, 79:5,
79:8, 82:8,
82:9, 82:22
**issue**
2:16, 3:1,
10:12, 19:13,

20:18, 21:6,
21:10, 25:17,
29:16, 34:5,
34:12, 35:6,
47:9, 49:20,
58:11, 59:1,
59:2, 59:6,
68:6, 76:21
**issues**
10:3, 10:4,
10:9, 11:12,
16:19, 19:22,
30:9, 32:4,
47:4, 55:10,
67:19, 67:20,
67:21, 68:3,
68:11, 68:13,
68:14, 68:21,
69:10, 69:11,
77:4
**itself**
25:10, 47:12

**—— J ——**

**jail**
73:5
**january**
46:8
**job**
1:20, 58:4,
62:7, 70:10
**joe**
31:14
**joining**
2:6, 14:19,
28:21, 36:8,
47:21
**journal**
30:13
**jr**
37:5, 39:2
**judge**
72:15, 72:18,
72:20, 73:7
**june**
64:7, 84:16
**juries**
35:2

**jury**
35:1, 72:15,
72:16, 72:19,
72:20, 73:7
**justice**
25:11, 25:14

**—— K ——**

**keep**
35:13, 41:8,
58:5, 62:19
**kind**
26:21, 34:7,
41:13, 41:19,
48:12, 50:4,
50:16, 51:7,
55:10, 56:21,
58:20, 59:21,
60:11, 61:5,
64:1, 64:18,
66:15, 66:17
**kinds**
43:16, 50:7,
60:16
**knew**
48:14
**knowhow**
39:22
**known**
9:8
**knows**
46:10
**kudos**
37:7, 37:10

**—— L ——**

**lack**
7:6, 53:18,
76:9
**laid**
78:21, 82:20
**language**
11:20, 12:4,
17:9, 45:9,
52:5, 52:8,
55:1, 74:22
**large**
3:10, 3:11

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

99

largest
38:10
larry
71:15
last
3:1, 3:6, 9:15,
9:17, 19:2,
30:6, 37:1,
37:11, 39:18,
41:20, 45:22,
59:22, 80:22
late
25:6
later
20:22, 75:5,
80:22
latest
38:16
laura
28:20, 29:5
lavin
2:6, 2:8, 2:13,
6:8, 6:19, 7:20,
8:21, 10:15,
10:18, 11:19,
11:22, 12:8,
13:10, 13:14,
14:21
law
5:6, 10:7,
11:15, 12:1,
15:15, 18:2,
18:15, 21:21,
21:22, 26:8,
26:9, 29:8,
29:10, 29:12,
33:18, 33:20,
34:8, 34:21,
35:22, 40:22,
42:21, 43:14,
43:15, 53:12,
56:12, 57:22,
58:14, 61:17,
63:12, 64:22,
74:8, 79:20,
79:21, 80:1
laws
2:18, 12:4,

81:7
lay
77:14, 81:13
lead
4:12
learned
38:3
least
37:17, 46:10,
46:15, 46:21
leaving
71:3
led
2:22, 3:8,
13:4, 18:6, 31:2
left
32:20, 38:11
legal
8:1, 27:17,
70:6
legally
5:4, 14:1
legislation
3:20, 6:22,
15:15, 16:2,
16:5, 16:21,
17:19, 18:10,
18:16, 24:9,
26:2, 26:18,
27:22, 30:7,
31:6, 48:6,
50:1, 53:17,
64:17, 76:20
legislative
18:16, 38:1,
44:9
legislature
24:17, 31:12
less
8:18
let's
5:4, 7:8, 7:22,
20:14, 36:11,
40:16, 41:9,
41:12, 41:13,
50:7, 56:6,
59:22, 60:1,
62:4, 62:6, 79:6

letter
29:10
level
5:8, 5:12,
38:6, 38:8,
67:19, 67:20,
69:16, 69:19
leverages
47:12
levers
42:2
liabilities
9:6
liability
4:12, 4:20,
5:6, 7:1, 8:4,
21:15, 21:19,
27:20, 27:21
liable
4:18, 7:19
lies
36:17
light
9:17, 48:20
likely
8:18, 22:11,
76:22
limited
7:18
limits
43:6
lincon's
66:2
line
22:1, 40:12,
79:16, 79:20
listed
84:10
literature
61:18
little
16:7, 22:12,
38:2, 40:9,
46:14, 51:16,
53:10, 54:21,
55:14, 55:17,
57:16, 58:4
live
29:5, 55:18,

56:7, 66:18
lives
2:20, 3:20,
3:22, 16:12
living
11:22, 53:21,
69:2
lobbied
49:10
lobbyists
35:15, 38:11
local
5:13, 18:6,
32:6, 67:19,
68:11, 69:10
long
16:14, 62:18,
63:7
longer
76:16
look
2:7, 11:19,
33:21, 50:3,
51:10, 57:4,
58:13, 68:17,
80:16
looked
49:9
looking
8:14, 8:15,
47:9, 67:15,
73:17, 73:18
looks
83:1
lorain
29:5
lot
11:9, 37:4,
39:14, 39:19,
46:19, 48:19,
50:11, 50:13,
54:17, 57:11,
67:7, 67:16,
69:21, 70:9
lots
52:20
love
5:10

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

100

| M |
|---|

**ma'am**
32:4
**macanations**
37:6
**made**
3:6, 50:3
**mafia**
37:15
**mail**
43:14
**maintain**
81:7
**majorities**
3:10, 44:9,
45:1
**majority**
3:11, 30:11,
30:13, 35:14,
39:14, 39:20
**make**
7:16, 8:18,
13:3, 14:2,
19:4, 24:14,
25:16, 27:19,
28:8, 28:11,
30:18, 30:21,
31:16, 36:20,
44:13, 48:13,
49:3, 54:4,
57:18, 58:3,
63:14, 69:9,
72:9, 74:13,
77:7
**makes**
50:2, 50:11,
68:19, 68:21,
69:12
**making**
14:12, 24:6,
41:16, 48:3,
51:11, 55:10
**malicious**
60:14
**manage**
46:4
**mandated**
62:12

**mandatory**
26:3, 26:22,
65:16
**many**
4:15, 5:21,
16:22, 20:5,
30:6, 33:6,
48:16, 51:17,
60:10
**maps**
30:12
**markers**
21:3
**married**
13:21, 13:22,
50:8, 59:18
**massive**
23:6
**matching**
11:15, 11:17,
12:4
**matter**
24:12, 32:9,
32:12, 32:14,
32:19, 34:1,
34:20, 40:3,
62:18, 62:19,
65:17, 65:19
**matters**
33:1, 34:10,
34:14, 41:5,
42:20, 43:4,
43:7, 58:18,
59:5, 62:22,
74:10
**maybe**
26:14, 34:2,
39:6, 59:2,
70:13
**mccolley**
37:6
**mcvay**
37:5, 39:2
**mean**
7:22, 32:15,
33:5, 36:20,
37:9, 37:20,
39:9, 39:11,

43:8, 43:12,
43:19, 45:21,
46:1, 63:5,
65:21, 67:18,
68:4, 69:12
**meaning**
64:16
**means**
12:10, 12:11,
12:12, 30:17,
32:15
**meant**
65:22
**measure**
59:22
**measures**
18:5
**mechanism**
51:20, 53:5
**meeting**
31:14
**member**
2:9, 7:8,
15:11, 29:2,
36:10, 77:22,
81:20
**members**
2:9, 4:18,
6:15, 6:21, 7:7,
15:12, 16:18,
19:8, 20:2, 29:2
**methods**
24:6
**middle**
38:1
**might**
7:18, 9:19,
14:2, 19:20,
21:11, 35:5,
46:7, 49:9,
57:13, 59:15,
59:19, 59:21,
60:6, 60:9,
63:7, 63:13,
75:14
**millions**
29:15, 73:5
**mind**
4:8

**minimum**
77:10
**minor**
35:7, 61:19
**miranda**
30:3
**misdeeds**
60:22, 74:2
**misunderstanding**
73:4
**money**
11:14, 11:16,
12:9, 16:8,
18:1, 27:13,
29:7, 29:13,
29:16, 29:18,
30:15, 35:15,
36:21, 38:7,
39:4, 42:13,
44:15, 48:20,
48:21, 48:22,
49:4, 49:16,
50:1, 50:11,
50:12, 50:19,
50:22, 51:1,
53:14, 53:20,
54:5, 56:7,
60:2, 60:14,
71:8, 73:21,
76:18, 76:21,
77:1, 77:3,
79:13, 79:21,
80:15, 80:20
**more**
9:10, 18:18,
30:5, 30:19,
37:21, 41:22,
42:1, 42:2,
42:10, 49:3,
50:11, 55:14,
56:11, 58:2,
58:11, 60:4,
64:1, 64:2,
69:6, 69:11,
71:2, 71:15,
71:16, 76:3,
76:11, 83:1
**morning**
15:3, 15:10,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

48:1
**most**
6:21, 24:20,
26:1, 31:5,
34:9, 37:9,
38:20, 65:12,
68:13, 69:20
**mostly**
63:16
**mother**
16:8
**motion**
77:13, 78:22,
81:11
**motivated**
20:16
**motives**
9:19
**move**
62:13, 72:17,
72:19, 75:18,
77:10, 77:14,
79:1, 81:13
**moved**
60:7
**much**
6:11, 28:15,
48:12, 56:1,
63:20, 71:17,
72:11
**must**
26:19, 26:20,
42:22, 59:7,
60:13, 61:20,
77:5
**myself**
4:17, 9:2,
48:15

**N**

**naaden**
1:22, 84:2,
84:17
**naked**
44:22
**name**
2:13, 29:5
**named**
26:5

**names**
29:18
**narrowly**
18:18
**nation**
16:16
**national**
7:11, 14:9,
14:15, 20:20,
21:9, 22:5,
22:6, 36:17,
49:19
**nationality**
4:13, 4:14
**nationals**
15:16, 20:4,
20:6, 22:2,
29:15, 76:19
**nations**
5:2, 13:16
**nature**
6:17, 66:5,
66:8
**nearby**
51:18
**necessarily**
26:12, 58:16,
75:4
**necessary**
18:4, 19:4,
24:18, 26:15,
53:15, 76:6
**need**
23:4, 26:12,
34:8, 44:11,
49:4, 49:12,
50:14, 52:19,
53:10, 58:16,
59:2, 67:7,
69:5, 70:14,
71:1, 76:16,
76:17, 80:6
**needed**
52:7, 76:5
**negative**
19:8
**neighbors**
20:9

**neither**
84:5
**neutral**
56:2
**neutrality**
55:9
**never**
10:19, 11:1,
11:3, 45:14,
75:1
**new**
22:15, 23:4,
64:5
**next**
14:22, 28:20,
36:7, 47:20,
52:17
**nice**
21:3
**night**
37:11
**nobody**
38:18, 38:20
**nominate**
31:14
**non-profit**
16:17, 18:8
**none**
80:3
**nonsense**
39:5, 42:4
**normal**
24:9
**normally**
10:6, 34:18
**northeast**
5:14
**northerners**
66:3
**note**
17:22
**nothing**
13:20, 37:21,
53:17
**november**
40:2, 47:15
**numbered**
64:22

**O**

**oath**
37:3
**objectivity**
32:21
**observe**
44:20
**obstacles**
51:8
**obvious**
6:16, 12:19
**obviously**
9:4, 37:9,
40:11, 49:15,
57:18
**occurred**
75:1
**oec**
17:1, 54:18,
55:11, 57:3
**oelslager**
37:11, 48:12,
78:12, 78:13,
82:10, 82:11
**offender**
38:21
**offenders**
37:9, 38:20
**office**
26:3, 26:20,
27:2, 31:8,
34:11, 34:16,
59:8
**official**
45:2
**officially**
31:14
**officials**
41:17
**often**
61:4
**oh**
12:15, 15:6,
20:12, 22:17,
27:15, 38:6,
38:7, 38:16,
39:4, 39:20

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                    102

| | | | |
|---|---|---|---|
| **ohio** 1:8, 3:3, 4:19, 5:11, 5:13, 5:15, 5:16, 6:1, 6:3, 9:15, 14:15, 15:1, 15:4, 15:12, 15:18, 15:19, 15:21, 19:9, 22:8, 23:7, 23:15, 23:20, 23:21, 28:7, 28:9, 28:10, 29:9, 29:10, 29:17, 30:22, 31:12, 32:8, 34:18, 37:7, 39:15, 42:7, 45:20, 45:21, 45:22, 46:1, 46:7, 48:16, 49:17, 49:18, 50:19, 51:22, 53:1, 53:6, 53:8, 53:15, 53:20, 57:21, 62:4, 63:10, 63:12, 68:20, 69:1, 69:4, 84:19 **ohio's** 13:2, 17:6, 39:15, 48:18, 49:21 **ohioan's** 19:7 **ohioans** 16:3, 18:11, 18:20, 19:3, 19:12, 20:6, 23:1, 25:15, 30:11, 53:21, 73:20 **okay** 10:17, 11:5, 12:14, 34:2, 59:16, 60:1, 69:18, 75:1 | **once** 3:15, 3:18, 38:22, 62:22 **one** 3:1, 3:15, 9:13, 11:8, 13:17, 15:3, 16:18, 24:20, 25:4, 26:1, 27:12, 30:5, 32:4, 38:14, 39:8, 41:7, 42:19, 51:12, 55:5, 56:11, 57:15, 59:13, 60:20, 61:21, 62:9, 62:14, 65:15, 71:3 **ones** 33:8, 33:9, 52:4, 68:15, 69:20 **only** 8:7, 18:11, 21:18, 22:4, 69:16, 76:13 **open** 5:15, 31:22 **openly** 55:3 **operate** 12:5 **operating** 9:19 **opinion** 41:12, 49:17, 64:10 **opinions** 46:8 **opponent** 2:11, 28:21, 36:8 **opportunity** 2:11, 15:13, 19:12, 25:13, 27:20, 28:18, 29:4, 48:4, 48:9, 54:10, | 62:15 **oppose** 16:1 **opposed** 5:13 **opposition** 29:4 **order** 26:13, 34:5, 43:14, 75:21, 79:3 **orders** 46:17 **organization** 4:19, 6:15, 7:7, 7:9, 9:3, 11:13, 11:18, 12:7, 15:7, 20:2, 21:20, 27:6, 27:13, 27:19, 28:2 **organizations** 16:17, 17:5, 17:8, 17:10, 17:13, 17:17, 17:21, 18:7, 18:8, 22:7, 22:14, 23:6, 77:1 **organize** 16:3, 19:7, 22:8 **organized** 2:21, 9:15, 16:18 **organizing** 20:3 **originally** 31:17 **other** 4:19, 11:7, 13:16, 14:13, 14:18, 17:19, 18:14, 26:5, 27:13, 28:4, 30:8, 35:4, 38:4, 42:19, 43:21, 44:12, | 45:16, 47:17, 50:3, 54:5, 62:10, 70:18, 73:8, 75:6, 75:15 **others** 16:22, 28:2 **otherwise** 32:11, 32:14, 32:18, 65:19, 84:7 **ought** 24:8 **ourselves** 27:7, 27:10, 71:6 **out** 3:10, 3:12, 10:12, 34:12, 37:11, 45:15, 47:3, 49:13, 51:1, 54:5, 58:6, 70:17, 70:20, 71:11 **outcome** 84:7 **outside** 48:22, 68:7, 81:4, 81:5 **outsize** 48:22 **over** 3:2, 3:4, 3:6, 22:12, 32:6, 41:20, 41:22, 45:7, 55:4, 56:19, 62:19, 68:20 **oversight** 1:8, 2:10, 15:12, 19:9, 29:3, 32:17, 56:16, 56:18, 57:1, 57:2, 57:4, 57:12, 84:19 **overworked** 46:2 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

103

own
3:22, 26:6,
38:12, 47:5

**P**

page
84:10
pages
1:21, 80:10,
84:8
paid
70:6, 70:12
panel
53:3, 56:2,
57:3, 71:4
paper
53:2
part
5:19, 23:19,
31:5, 36:16,
50:19, 51:13,
51:15, 53:22,
55:13, 63:12,
65:12
participant
59:22
participate
7:2, 7:15,
8:19, 9:4, 9:11,
16:3, 19:21,
20:16
participated
8:19
participating
4:9, 4:12, 5:5,
5:9, 8:10, 49:20
participation
8:4, 10:21,
60:15, 63:15,
63:22, 64:13,
74:1
particular
3:14, 4:3,
32:5, 34:5
particularly
22:15
parties
84:6

partisan
27:8, 27:10,
41:17, 55:3,
62:3
partition
25:8
partitions
4:9
parts
26:2
party
36:18, 46:16,
46:17, 46:21,
46:22, 47:3,
47:21, 51:14,
66:21
pass
29:11, 30:21,
51:16, 52:15,
61:9
passage
76:6
passed
2:18, 56:12
passing
64:17
past
8:19, 30:16,
70:5, 70:11
path
25:11, 25:14
patients
2:20
pay
70:16
payors
54:2
pediatrician
2:14
penalty
84:3
people
2:4, 3:7, 4:4,
4:9, 5:3, 8:6,
8:10, 8:18,
13:19, 16:6,
22:5, 22:8,
22:14, 23:14,

24:12, 24:13,
24:16, 31:1,
31:18, 40:12,
42:4, 42:11,
44:18, 44:19,
44:20, 44:21,
50:17, 64:19,
68:7
people's
3:9, 3:21,
19:20
percent
3:11
perfect
39:12, 45:22
perhaps
5:19, 60:19
period
43:1, 64:11
perjury
84:3
permutations
50:13, 71:7
person
2:4, 27:14,
40:20, 67:3,
70:16, 71:3
personally
36:13
peterson
2:2, 2:8, 6:6,
6:9, 7:3, 8:11,
9:21, 11:4,
11:7, 11:21,
12:3, 12:14,
13:13, 14:18,
14:22, 15:6,
15:9, 15:11,
19:14, 20:11,
22:9, 23:9,
25:20, 28:4,
28:7, 28:13,
28:16, 28:20,
29:1, 32:1,
33:11, 35:18,
36:4, 36:7,
36:9, 40:15,
41:6, 41:9,

41:12, 42:17,
43:21, 45:9,
45:16, 47:17,
47:20, 54:12,
56:9, 58:8,
61:10, 61:13,
62:8, 63:17,
65:9, 67:11,
70:2, 72:2,
74:3, 74:18,
74:21, 75:6,
75:11, 75:20,
77:12, 77:14,
77:16, 77:18,
77:19, 78:20,
79:3, 79:6,
81:10, 81:12,
81:14, 81:16,
81:17, 82:19
petition
4:4
petitions
13:4, 31:2
ph
31:20, 38:3
phrase
12:8, 45:12
physician
3:18, 7:15,
12:9
physicians
2:14, 3:5, 4:14
pick
31:10, 59:22,
60:1
picked
59:17
piece
51:12, 61:18,
71:5
pizzulli
78:14, 78:15,
82:12, 82:13
place
8:15, 37:20,
43:2, 56:13,
56:15, 57:10,
70:4, 70:15,

PLANET DEPOS
888.433.3767 | WWW.PLANETDEPOS.COM

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

104

placing
76:14
43:6
plan
63:4, 63:11
planning
64:15
plants
54:2
play
45:1, 53:14
plays
48:22, 55:12
please
40:17, 45:9,
75:22, 77:16,
79:7, 81:15
pleasure
79:5
plus
39:21
point
5:7, 14:10,
39:9
pointed
37:11
points
11:10, 29:7,
54:16
poison
42:1
polarizing
62:3
police
66:1
polices
32:16
policies
14:7, 51:7
policy
65:1
political
7:12, 8:14,
8:16, 8:17,
14:13, 14:17,
17:9, 17:18,
19:21, 20:17,
21:12, 22:15,

23:7, 35:21,
39:21, 40:21,
66:11, 66:21
politically
7:10, 7:16,
20:22, 33:2
politicians
8:1, 30:8,
33:6, 77:9
politicized
52:20
politics
80:21, 81:5
popped
56:11
pops
63:19
popular
24:13
portion
80:8
position
12:10, 27:10
positions
31:3
possibility
39:7, 59:12
possible
12:20, 20:14,
21:4, 33:20,
35:19, 40:22,
49:13, 56:17,
56:20, 74:1
possibly
52:9, 52:17,
66:11
poster
21:1
posters
21:2
potential
32:22, 54:18,
56:8
potentially
55:7, 55:9
power
9:7, 9:16,
16:2, 24:9,

24:16, 32:5,
33:14, 34:22,
40:19, 41:3,
41:4, 42:2,
42:11, 43:10,
43:11, 44:22,
47:1, 47:5,
47:12, 53:8,
59:13, 65:13,
66:16, 66:18,
67:7, 79:14,
80:18, 81:7
powerful
8:10
powers
9:8, 34:17,
34:21, 35:3,
35:4, 35:9,
43:16, 72:11,
74:8
practice
65:2
prefer
30:12
preferable
57:20
prepared
48:2, 64:20
presented
17:21
presenter
2:5, 40:15
presenting
2:4, 28:21
president
23:22, 31:15,
37:5, 42:6,
79:10, 80:14
presidents
24:20
pressure
66:22, 68:18,
69:21
pretend
38:6
pretty
10:20, 47:11
previous
55:16

prison
33:7
privileges
34:21
probably
46:7
probity
66:9
problem
11:13, 12:7,
29:14, 30:1,
36:13, 74:20
problematic
54:22, 57:8,
62:2
problems
60:17, 66:18,
67:9
procedure
10:6, 74:17,
74:19
process
3:8, 3:17,
4:10, 5:5, 5:9,
5:10, 8:1, 14:5,
14:17, 16:4,
16:14, 21:16,
22:3, 22:15,
23:2, 25:16,
27:22, 28:3,
35:21, 48:8,
51:9, 52:13,
56:15, 58:2,
58:6, 60:21,
63:22, 64:3,
64:9, 64:13,
69:3, 70:4,
70:8, 70:13,
70:15, 72:22,
75:4, 76:17
processes
23:8, 77:7
progress
25:16
prohibited
29:8, 49:16
promote
39:8

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

105

| | | | |
|---|---|---|---|
| pronounce<br>38:3<br>prop<br>54:2<br>proper<br>44:8, 52:6,<br>67:8, 68:22<br>properly<br>54:7, 60:16<br>proposal<br>30:19<br>proposed<br>6:22<br>proposing<br>79:9<br>prosecute<br>26:12, 26:16,<br>31:10, 34:20,<br>40:22, 74:10<br>prosecuting<br>34:22, 43:3<br>prosecutor<br>10:11, 34:6,<br>54:19, 55:12,<br>58:1, 58:17,<br>59:4, 67:21,<br>72:13, 73:12,<br>74:13, 80:19,<br>81:4, 81:8<br>prosecutor's<br>74:9<br>prosecutorial<br>41:4, 74:8<br>prosecutors<br>31:7, 32:6,<br>51:22, 69:2,<br>72:6<br>protect<br>19:11, 20:18<br>protecting<br>3:16, 3:21,<br>14:5<br>protects<br>49:19<br>proud<br>15:17<br>proven<br>73:12 | provide<br>24:15, 57:12,<br>76:12<br>provided<br>24:10<br>provides<br>32:8, 65:16<br>provision<br>2:15, 32:7,<br>34:9, 34:19<br>provisions<br>51:10, 53:13<br>public<br>48:5, 49:10,<br>75:10<br>publicly<br>4:5, 4:7<br>punish<br>17:13<br>punishments<br>6:17<br>purpose<br>6:5, 18:18,<br>80:7<br>pursue<br>34:1<br>pursuing<br>35:22<br>purview<br>31:7<br>put<br>2:20, 3:19,<br>23:1, 56:21,<br>61:19, 69:20,<br>73:5, 79:15,<br>80:13<br>puts<br>22:4, 25:18<br>putting<br>22:17, 22:19,<br>25:15, 39:12,<br>40:1, 44:14<br>___Q___<br>question<br>2:22, 7:15,<br>9:1, 9:22, 11:8,<br>12:16, 13:15, | 14:9, 19:18,<br>23:10, 28:14,<br>33:12, 35:19,<br>41:8, 42:5,<br>44:2, 49:21,<br>56:11, 58:9,<br>63:18, 65:10,<br>67:12, 72:2,<br>74:6<br>questioning<br>33:16<br>questions<br>5:8, 6:7, 11:7,<br>14:18, 19:14,<br>25:20, 28:4,<br>28:5, 31:22,<br>32:1, 36:4,<br>40:15, 43:21,<br>45:16, 47:17,<br>54:13, 75:7<br>quick<br>11:8, 28:5,<br>58:21<br>quote<br>24:3, 32:11,<br>32:12, 65:18,<br>65:19<br>___R___<br>races<br>68:18<br>racism<br>46:14<br>radical<br>34:9<br>radically<br>26:18, 58:13<br>railroaded<br>47:13<br>raise<br>29:18<br>raised<br>74:6<br>raises<br>13:15<br>rally<br>21:5<br>rallying<br>30:14 | rammed<br>37:16<br>ran<br>40:13<br>ranking<br>2:9, 15:11,<br>29:2, 36:10,<br>77:22, 81:20<br>rapidly<br>6:20<br>rate<br>54:1<br>rather<br>71:3<br>re-districting<br>77:9<br>read<br>6:22, 38:16,<br>67:22, 68:1,<br>68:2<br>ready<br>19:5<br>real<br>16:6, 50:5,<br>50:14, 51:2,<br>53:22<br>reality<br>21:18, 25:12<br>realize<br>65:3, 71:19<br>really<br>11:1, 12:10,<br>21:2, 24:7,<br>31:20, 53:1,<br>54:15, 55:2,<br>55:20, 63:7,<br>68:9, 71:5,<br>71:14, 71:17<br>reason<br>44:4, 51:13,<br>61:7, 61:19,<br>69:6, 76:13<br>reasons<br>4:3, 60:20,<br>67:2<br>receive<br>18:9, 60:7<br>received<br>60:9, 84:9 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

receiving
30:15
recently
3:13, 20:19,
61:3
recognized
11:11
recognizes
77:12, 81:10
recollection
65:14
record
31:11
recordings
84:4
recusal
32:22
red
39:20
redirected
76:22
reduce
55:9
refer
26:20, 32:9,
34:6, 58:17,
59:4, 65:17
referendum
24:5, 24:8,
24:16
referendums
76:19
referral
10:10, 26:3,
26:22, 61:14
referred
13:22, 27:7,
27:11, 33:19,
61:20, 62:22
referring
34:9
refining
77:6
regard
26:22, 32:21,
34:10, 35:22,
55:1
regarding
15:15, 17:2,

84:10
regardless
27:8
register
30:15
regular
59:6
regulated
18:15
regulating
33:9
regulatory
23:4
reject
6:3
related
64:17, 84:5
relates
81:1
relatively
58:20
relatives
20:4, 20:6
relying
12:11
remains
77:1
remedy
30:1
remember
31:1, 52:2
removal
76:8
remove
52:9, 76:2
removed
54:1, 76:5
render
62:14
represent
24:11
representative
6:9, 7:21,
8:22, 9:1, 9:21,
10:16, 12:15,
13:11, 13:21,
19:15, 20:13,
21:13, 22:18,

23:9, 23:16,
24:6, 24:7,
24:22, 25:20,
27:3, 32:2,
33:5, 33:11,
33:17, 35:11,
36:3, 40:17,
43:22, 45:17,
54:13, 55:15,
56:22, 57:7,
58:8, 61:10,
63:2, 63:17,
64:14, 65:9,
66:6, 67:11,
68:1, 70:21,
74:4, 75:16,
76:4, 77:13,
78:2, 78:4,
78:6, 78:8,
78:10, 78:12,
78:14, 78:16,
78:18, 78:22,
81:22, 82:2,
82:4, 82:6,
82:8, 82:10,
82:12, 82:14,
82:17, 82:22
representatives
5:16, 5:17,
6:2, 24:11
representing
2:17, 15:8,
15:19
represents
3:2
reps
30:3
republican
23:22, 24:20,
27:9, 39:15,
45:4
republicans
31:3, 43:13,
46:19, 53:3,
56:1, 56:3, 67:9
requested
76:8
require
29:17, 30:14,

53:15
requirements
17:4, 17:6,
17:11
requires
4:3
reservations
51:4
reserve
24:16
resident
27:14, 27:16,
60:11
residents
18:21
resolve
10:9, 26:16,
43:7, 58:20
resolved
34:4, 62:22
resoundingly
3:9
resources
69:6
respect
38:22, 40:7
respectively
16:15
respond
12:20
responding
56:12
response
12:13
responsible
80:20
restrict
16:2
restrictions
18:3, 18:6,
22:21, 62:17
restricts
18:19
result
79:9
retired
2:13
retirees
37:2

| | | | |
|---|---|---|---|
| review | rouse | scared | serious |
| 75:13 | 24:12 | 8:6 | 29:22, 59:4 |
| reviewing | rule | schedule | serve |
| 77:6 | 25:9 | 58:18 | 15:17 |
| reviews | rules | scheme | session |
| 52:5 | 37:14, 51:16, | 38:10, 71:7 | 1:10, 48:6, |
| revolves | 61:6, 64:5, | school | 48:11, 65:6, |
| 19:18 | 64:12 | 43:14 | 76:14, 84:20 |
| rid | run | second | setting |
| 80:17 | 40:8 | 4:11, 14:10, | 47:13 |
| right | rush | 28:14, 52:6 | several |
| 19:3, 21:22, | 76:17 | secure | 2:3, 29:7 |
| 23:1, 39:15, | rushing | 76:5 | shall |
| 43:9, 46:13, | 51:4 | see | 24:13, 24:16, |
| 56:5, 58:15, | russia | 3:6, 4:22, | 32:8, 65:16 |
| 65:4, 65:5, | 12:21 | 10:7, 25:12, | shame |
| 67:2, 67:3, | | 34:17, 36:11, | 31:19 |
| 67:4, 69:22, | **S** | 43:20, 44:22, | share |
| 70:6, 73:2, | safe | 59:12 | 41:12, 82:21 |
| 74:20 | 22:16 | seeing | sharing |
| rights | said | 73:17 | 20:9 |
| 18:19, 18:22, | 3:10, 11:14, | seek | shawda |
| 19:1, 19:7, | 13:11, 24:3, | 25:14 | 31:19 |
| 19:11, 34:21 | 32:15, 37:12, | seem | shenanigans |
| risk | 38:19, 53:1, | 44:13 | 49:13, 54:6 |
| 2:20, 3:20, 4:6 | 65:22, 79:16, | seems | sheriff |
| rob | 80:8 | 13:17, 67:15 | 45:3 |
| 37:6 | same | seen | shift |
| role | 73:9 | 36:18, 41:19, | 44:10, 44:12 |
| 48:22, 52:3, | saw | 77:2 | shifts |
| 52:6, 52:10, | 9:17, 45:21 | sees | 22:12 |
| 52:12, 53:15, | say | 14:15, 20:16 | shining |
| 72:13, 81:15 | 5:4, 7:8, 7:20, | seitz | 16:9, 48:20 |
| roll | 12:10, 12:19, | 52:21, 66:6, | short |
| 77:17 | 14:12, 20:14, | 76:4, 82:14 | 24:4, 64:11 |
| room | 30:20, 31:11, | senate | shorter |
| 37:10, 38:20, | 33:5, 45:7, | 37:5, 37:7, | 35:18 |
| 40:12 | 48:1, 52:21, | 37:13 | should |
| roosevelt | 56:5, 56:12, | sense | 4:1, 7:20, |
| 24:1, 24:20 | 59:9, 60:18, | 6:13, 6:16, | 13:11, 17:4, |
| rooster | 71:6, 76:13 | 8:8, 49:8, 50:2, | 17:7, 19:6, |
| 44:18 | saying | 58:3, 68:19, | 24:5, 24:10, |
| root | 26:14, 57:1 | 68:21 | 24:17, 36:18, |
| 49:13, 54:5 | says | sent | 42:10, 46:12, |
| roots | 34:19, 72:19 | 35:8 | 47:5, 48:15, |
| 17:12 | scandal | sentence | 56:20, 67:5, |
| rosevelt | 53:19 | 80:8 | 77:3 |
| 24:2 | scare | sentiments | shouldn't |
| | 8:10 | 24:19 | 67:4, 71:10 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                    108

| | | | |
|---|---|---|---|
| **shuttle** 39:8 | 40:17, 40:18, 42:18, 58:8, 58:10, 59:11, 61:12, 61:14, 62:1, 62:9, 78:16, 78:17, 82:15, 82:16 | 11:2, 33:19, 43:18, 43:19, 46:11, 52:16, 59:19, 61:5, 63:6, 63:7, 70:15, 80:11 | 57:8, 65:15, 77:8 |
| **sign** 4:4, 61:18 | | | **specificity** 76:10 |
| **signature** 4:5, 20:7 | | **sometimes** 10:10, 10:11 | **specifity** 76:9 |
| **signature-q7she** 84:14 | **sleepy** 37:1 | **somewhat** 33:16 | **spectrum** 23:7 |
| **signatures** 30:19 | **slight** 15:4 | **son** 45:4 | **speech** 24:1, 24:2 |
| **significant** 5:3 | **slow** 54:7 | **sorry** 12:15, 15:6, 20:12, 27:15, 37:20, 40:9, 42:16, 61:10, 74:16 | **speed** 51:17 |
| **signing** 4:9, 27:6, 27:10 | **slowly** 50:4 | | **speeding** 51:17 |
| **signs** 60:3, 64:4 | **small** 4:10, 10:12, 17:20, 61:1 | | **spencer** 14:22, 15:17, 19:17 |
| **silence** 5:20, 6:4, 31:4, 35:11, 35:16 | **society** 46:20 | **sound** 33:2, 69:12 | **spend** 63:12 |
| **silenced** 16:5 | **solve** 29:14 | **sounded** 7:5 | **spending** 30:15 |
| **similar** 9:19 | **some** 2:16, 7:6, 8:4, 19:18, 24:12, 33:7, 36:12, 37:2, 37:4, 38:22, 44:11, 44:16, 46:8, 46:13, 48:10, 50:5, 51:4, 54:16, 56:16, 57:13, 60:9, 61:19, 63:12, 63:14, 70:11, 70:14 | **source** 49:5, 50:12 | **spent** 16:15, 21:1, 48:19, 60:3 |
| **simple** 10:20, 79:22 | | **sources** 18:10, 18:14, 18:17 | **spin** 71:11 |
| **simply** 11:14, 11:17, 12:4, 27:11, 29:16 | | **southerners** 66:4 | **spirit** 22:12 |
| **since** 23:20, 71:14 | | **space** 48:5 | **spoke** 24:1, 56:22 |
| **single** 40:20 | | **spain** 60:8 | **sponsor** 11:9, 11:11, 32:13, 52:22, 65:21, 72:4, 72:5, 76:8, 79:16 |
| **sir** 2:8, 10:16, 28:12, 36:8 | **somebody** 43:12, 43:13, 46:1, 55:21, 59:17, 59:18, 60:7, 60:9, 61:4, 63:6, 70:15, 73:5 | **speak** 3:17, 8:7, 75:10 | |
| **sitting** 42:6 | | **speaker** 55:16 | **sponsored** 30:3 |
| **situation** 72:21 | | **speaking** 36:11 | **sponsors** 73:2 |
| **skindell** 9:21, 10:1, 10:17, 11:5, 25:21, 25:22, 33:11, 33:13, 35:17, 35:20, | **somehow** 3:7 | **special** 1:10, 19:2, 48:6, 48:11, 65:6, 76:14, 84:20 | **spouse** 7:11, 14:4 |
| | **someone** 4:20, 59:14 | | **spouses** 4:15 |
| | **something** 3:22, 10:13, | **specific** 11:20, 41:10 | **stacked** 45:4 |
| | | **specifically** 18:16, 52:3, | **stand** 66:21 |

**standing**
25:6, 57:20
**start**
6:13, 20:1,
36:14, 59:14,
67:1
**state**
3:3, 5:11,
6:13, 9:7, 9:15,
15:19, 18:3,
19:4, 20:17,
21:10, 22:8,
23:7, 25:2,
25:5, 25:19,
28:2, 33:6,
34:11, 38:5,
38:8, 39:15,
39:16, 41:19,
42:7, 44:17,
46:7, 68:8,
68:13, 68:21,
69:16, 69:19,
79:20, 81:5
**states**
7:12, 14:5,
16:11, 27:15,
27:16, 27:17,
42:6, 50:3
**statewide**
15:16, 26:4,
37:22, 45:2,
55:22, 68:3,
68:5, 68:18,
68:20, 69:11,
77:4
**stating**
29:10
**statutory**
49:18
**step**
45:6
**steps**
34:7
**stick**
66:4, 79:6
**stifle**
3:7, 18:11
**still**
18:22, 38:13,

67:19
**stood**
44:15
**stop**
50:16
**straightforward**
10:20
**strengthening**
79:20
**stripping**
31:6
**strong**
47:2
**strongly**
19:8, 22:19,
49:2
**structure**
49:18, 63:3,
63:10, 67:8
**structures**
57:9
**student**
20:15
**stuff**
31:12, 31:21,
46:4, 46:14,
47:16, 67:16
**style**
37:15, 40:19
**subjugated**
38:8
**subscribe**
44:18
**subset**
17:20
**substitutes**
24:5
**sucks**
38:15
**sufficient**
24:12
**sufficiently**
49:18
**suggest**
52:8
**suggested**
72:7
**suggestions**
57:18

**summary**
5:14, 52:5
**supe**
35:13
**super**
30:12, 37:6,
39:3, 39:13,
39:20, 44:9,
45:1, 50:20,
61:8, 73:15,
75:3
**supplement**
24:17
**support**
16:18, 17:8,
18:7, 18:9,
18:12, 21:6
**supported**
2:19, 3:12,
16:19
**supporting**
17:13, 20:8,
84:4
**supports**
17:1
**suppose**
7:20, 50:8,
50:11, 60:1
**supposed**
46:10, 46:16
**supreme**
45:4
**sure**
9:18, 11:21,
21:4, 31:16,
48:14, 69:9,
70:19, 72:9
**surely**
17:18
**surprise**
29:11
**sway**
41:22
**swearingen**
45:17, 45:18,
78:18, 78:19,
82:17, 82:18
**sweeney**
30:3

**sweet**
47:11
**swiss**
38:7, 38:9,
38:12
**switch**
54:18, 54:22
**system**
3:8, 33:18,
48:18, 49:3,
56:5, 61:22,
62:2, 62:11,
71:13, 73:22,
77:7

---

**T**

**table**
77:15, 78:21,
81:13, 82:20
**tailored**
18:18
**take**
11:16, 11:19,
23:12, 24:10,
46:9, 46:16,
46:17, 55:4,
65:6, 71:10,
71:19
**taken**
8:15, 9:14,
27:13, 45:15,
46:11
**takes**
28:13, 33:21,
51:21, 54:7,
56:13
**taking**
49:22, 56:15,
61:8
**talent**
39:21
**talk**
38:15, 38:18,
48:2, 49:15,
54:16, 54:20,
55:8, 72:5
**talked**
11:10, 54:18,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

110

| | | | |
|---|---|---|---|
| 55:6 | 26:1, 28:21, | 48:2 | 68:17, 70:4, |
| **talking** | 32:4, 33:14, | **themselves** | 70:8, 70:10, |
| 31:19, 36:17, | 36:8, 44:2, | 33:10, 40:21, | 70:13, 70:14, |
| 40:11, 42:10, | 47:21, 53:1, | 44:13 | 70:22, 71:4, |
| 42:14, 42:15, | 54:16, 67:14, | **theocrat** | 71:5, 71:7, |
| 43:17, 48:19, | 72:4, 75:8, | 41:22 | 72:3, 72:4, |
| 52:4, 69:16 | 75:12, 76:3 | **theodore** | 72:9, 73:13 |
| **tap** | **texas** | 23:22 | **thinking** |
| 47:3 | 31:18 | **therefore** | 48:10, 50:14, |
| **tape-recording** | **thank** | 14:6, 76:17 | 51:3, 53:5, |
| 84:9 | 2:6, 2:8, 2:10, | **they'd** | 57:7, 63:13, |
| **targeted** | 6:5, 6:6, 6:8, | 7:19 | 67:5, 67:7, |
| 17:20 | 6:10, 7:4, 10:1, | **thing** | 71:1, 71:2 |
| **targeting** | 11:5, 12:14, | 57:19, 59:21, | **third** |
| 17:7, 18:16, | 12:17, 14:19, | 63:19, 69:22 | 5:7 |
| 30:8 | 14:21, 15:1, | **things** | **thomas** |
| **targets** | 15:6, 15:9, | 11:2, 33:3, | 2:9, 15:11, |
| 77:8 | 15:10, 15:13, | 35:7, 50:7, | 29:2, 36:10, |
| **tax** | 19:12, 19:16, | 50:13, 57:15, | 77:13, 77:14, |
| 23:5 | 23:11, 25:22, | 58:20, 59:13, | 77:20, 77:21, |
| **taxpayer** | 28:6, 28:13, | 60:13, 60:22, | 81:11, 81:12, |
| 29:13 | 28:15, 28:16, | 61:1, 62:13, | 81:18, 81:19 |
| **teddy** | 28:18, 28:21, | 63:11, 63:21, | **thoroughly** |
| 24:19 | 29:1, 29:3, | 64:20, 66:15, | 77:6 |
| **tell** | 32:3, 33:13, | 69:17, 69:19, | **thought** |
| 12:11, 25:7, | 35:20, 36:6, | 70:5, 70:14, | 41:2, 47:15, |
| 31:17, 39:11, | 36:8, 36:9, | 71:11, 71:20 | 57:11, 65:22 |
| 80:11 | 40:18, 42:18, | **think** | **thoughtful** |
| **tells** | 44:1, 47:18, | 3:22, 4:7, 5:2, | 71:19 |
| 32:17 | 47:19, 48:3, | 6:21, 7:17, | **thoughtfully** |
| **tempting** | 54:10, 54:12, | 7:22, 8:7, 8:16, | 51:10, 71:21 |
| 52:15 | 54:14, 54:15, | 11:1, 12:8, | **thoughts** |
| **terms** | 56:10, 57:6, | 21:6, 21:11, | 26:22, 54:21, |
| 10:21 | 58:7, 58:10, | 22:11, 22:13, | 62:20 |
| **test** | 61:9, 62:9, | 25:4, 33:8, | **threat** |
| 68:15 | 63:2, 63:20, | 35:5, 35:20, | 4:22 |
| **testify** | 64:14, 65:8, | 41:14, 41:16, | **threats** |
| 15:13, 29:4, | 65:11, 67:13, | 42:11, 43:17, | 13:16 |
| 48:4 | 72:3, 74:3, | 44:3, 44:4, | **three** |
| **testifying** | 74:5, 75:6, | 46:18, 47:8, | 4:2, 39:17, |
| 52:22, 57:16 | 75:7, 75:9, | 49:6, 49:12, | 46:1 |
| **testimony** | 75:17, 76:1, | 51:10, 51:11, | **through** |
| 1:7, 2:4, 2:5, | 77:12, 79:1, | 55:21, 56:19, | 7:20, 8:21, |
| 2:7, 2:11, 5:22, | 81:9, 81:10, | 57:5, 57:19, | 10:15, 13:10, |
| 6:6, 7:5, 10:2, | 81:14, 82:19 | 58:2, 59:13, | 13:11, 20:12, |
| 12:18, 12:19, | **thanks** | 61:21, 65:3, | 22:18, 23:16, |
| 13:15, 19:18, | 36:5, 41:21, | 65:14, 65:20, | 24:22, 27:3, |
| 23:12, 23:13, | 44:1, 47:21, | 67:1, 67:3, | 33:4, 35:10, |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

111

36:2, 37:16,
50:4, 57:7, 72:8
**throughout**
16:16
**throwing**
60:2, 67:16
**tie**
40:1
**tiger**
53:2
**tim**
37:5, 39:2
**time**
2:16, 11:5,
16:17, 22:13,
24:21, 29:12,
38:14, 42:14,
42:21, 43:1,
43:2, 43:5,
43:6, 44:8,
48:19, 49:22,
54:7, 58:17,
61:8, 63:8,
63:13, 64:11,
65:6, 71:17,
71:19, 75:10,
76:11, 76:13
**timeframe**
62:13, 62:15,
62:21
**times**
30:6, 52:20
**timetable**
62:12
**today**
2:3, 2:5, 2:7,
2:11, 3:13, 4:6,
6:11, 10:2,
12:15, 12:18,
14:20, 15:2,
15:8, 15:14,
19:17, 26:1,
28:17, 28:22,
32:4, 36:5,
36:11, 40:17,
44:2, 47:18,
47:22, 49:15,
80:22

**today's**
10:6
**together**
31:12, 31:21,
36:14, 38:21,
47:2, 56:21,
66:4
**told**
36:20, 82:21
**tomorrow**
83:2
**took**
16:7, 21:5,
71:8
**tool**
8:10, 25:11
**tools**
42:12
**top**
41:16, 56:16,
56:19
**toppled**
41:20
**touch**
13:19, 55:8,
55:10, 55:13,
64:1
**touched**
63:21
**township**
30:20
**tracking**
76:18
**tradition**
3:2, 3:3
**train**
36:18
**transcribed**
1:22
**transcriber**
84:1, 84:2
**transcript**
1:6
**transcription**
84:9
**transfer**
34:15
**transferred**
33:15

**transfers**
40:19
**transition**
55:11, 56:13
**translate**
47:4
**transparency**
17:2, 17:5,
17:12, 17:16,
48:17, 49:13,
50:22, 51:3,
53:13, 53:18,
54:4, 54:16,
65:4, 71:4,
71:13
**transparent**
49:3
**traveling**
12:15, 14:19
**treasured**
16:13
**treasurer**
61:5
**trial**
72:17, 72:20
**trouble**
59:15, 70:12
**true**
30:22, 84:8
**truly**
16:12, 17:15,
24:11, 29:22,
71:17, 79:18,
80:7
**trump**
40:3
**trump's**
42:7
**trumpian**
40:19
**trust**
70:9
**try**
3:15, 9:16,
10:9, 22:7,
26:16, 38:15,
40:16
**trying**
25:16, 29:11,

31:4, 33:8,
37:2, 37:18,
44:10, 44:12,
46:4, 56:14,
56:21, 66:3,
66:6, 72:6
**turcer**
47:20, 48:1,
48:16, 54:15,
55:15, 57:6,
59:11, 62:1,
63:2, 64:14,
66:13, 68:12,
69:8, 69:15,
69:19, 70:21,
73:10, 74:16,
74:19, 75:1,
75:9
**twist**
42:1
**twitter**
43:15
**two**
2:2, 28:4,
38:11, 75:14
**type**
21:12, 41:3,
56:16, 57:3
**types**
8:4, 8:5, 40:22
**typical**
37:15, 42:3

**U**

**un**
37:13
**unbelievable**
31:20
**uncertainty**
8:13, 8:20
**unclear**
6:20, 18:6
**unconstitutional**
30:12
**uncover**
71:6
**under**
10:6, 11:22,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024

112

12:5, 18:2,
18:22, 25:8,
29:8, 31:7,
33:18, 37:3,
42:20, 42:21,
49:16, 62:10,
62:12, 73:8,
74:7, 84:3
**undergo**
27:17
**underpaid**
46:2, 46:5
**understand**
13:18, 47:1,
47:10, 61:6,
64:6, 64:20,
67:18, 69:9,
69:16, 73:11
**understanding**
21:7, 21:15,
21:19, 21:21,
68:9, 72:8,
72:12, 73:9
**undue**
5:1
**unintended**
5:2, 9:13,
54:8, 71:22
**unintentionally**
52:10
**united**
7:12, 14:5,
16:11, 27:14,
27:16, 42:6
**unless**
30:8, 51:18,
65:17
**unlike**
55:16
**unmatched**
65:14
**unnecessary**
18:18, 29:11
**unprecedented**
34:17
**unquestionably**
16:11
**unspecific**
22:20

**until**
45:14, 73:12
**unwarranted**
30:7
**upcoming**
77:8
**updates**
38:17
**upset**
46:10
**urge**
19:8, 54:7
**urgency**
65:5
**urging**
39:6
**use**
19:3, 25:16,
43:10, 43:11,
45:12, 57:20,
62:4, 68:15,
81:3
**using**
48:8, 57:9

**V**

**vagueness**
76:9
**valued**
3:3
**variety**
18:10
**various**
27:1
**vastly**
27:21
**version**
57:17
**versus**
13:4
**vesting**
66:17
**vice**
2:9, 29:1,
36:9, 77:20,
77:21, 81:11,
81:12, 81:18,
81:19

**vice-chair**
15:11
**victim**
32:11, 65:18
**video-recorded**
1:6
**violating**
11:2
**violation**
26:7, 26:14,
26:19, 33:20,
34:3, 59:2,
59:7, 61:16
**violations**
10:5, 35:22,
41:1, 55:2,
58:14, 61:19
**virtual**
31:13
**voice**
2:22, 3:7, 3:9,
3:16, 3:21,
5:20, 6:4, 7:16,
9:16, 30:22
**voices**
16:5, 18:11,
19:12, 31:5
**vote**
3:11, 19:10,
40:4
**voter**
45:20, 45:22,
46:1, 46:6, 46:9
**voters**
39:17, 40:2,
40:3, 40:4,
40:7, 46:22,
47:8, 47:14,
49:3
**votes**
44:11, 76:6,
78:20, 82:20

**W**

**wage**
77:10
**wait**
63:7

**walk**
72:8
**want**
6:13, 7:5,
23:8, 24:3,
29:6, 29:15,
30:10, 30:21,
35:11, 35:13,
35:14, 35:15,
39:3, 39:4,
40:7, 42:15,
47:10, 48:3,
48:7, 50:20,
51:8, 51:9,
53:11, 54:10,
54:16, 60:13,
61:9, 63:9,
63:13, 65:3,
65:4, 65:6,
69:8, 71:18,
72:8, 73:3,
73:15, 73:20,
75:3
**wanted**
3:10, 20:22,
48:13, 54:20,
55:8, 64:1
**wanting**
30:1
**wants**
7:9, 7:15,
20:17, 38:18
**waste**
29:12, 29:13
**wasting**
42:14
**watch**
74:21
**watching**
5:21, 45:10,
70:19, 74:22,
82:21
**way**
13:17, 13:18,
21:21, 22:22,
24:9, 25:15,
27:12, 33:2,
37:12, 40:8,

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 052924
Conducted on May 29, 2024                                           113

| | | | |
|---|---|---|---|
| 42:9, 45:7,<br>47:14, 49:9,<br>49:11, 50:16,<br>56:4, 60:5,<br>62:5, 62:14,<br>68:8<br>**ways**<br>7:6, 42:1,<br>59:14, 66:15<br>**we'll**<br>31:16<br>**we're**<br>4:1, 4:2, 5:18,<br>8:1, 11:3, 12:5,<br>36:17, 46:10,<br>48:10, 49:15,<br>50:15, 50:16,<br>51:6, 51:7,<br>56:1, 64:10,<br>67:16, 69:16,<br>75:11, 80:13,<br>80:14<br>**we've**<br>10:18, 11:1,<br>41:19, 42:4,<br>64:21, 71:15<br>**weakness**<br>66:10<br>**weed**<br>47:5<br>**weeks**<br>20:21, 65:7<br>**weigh**<br>48:5, 71:20<br>**weighing**<br>72:5<br>**welcome**<br>17:18<br>**well-known**<br>3:1<br>**went**<br>21:5, 24:15,<br>39:17, 61:5<br>**weren't**<br>70:5<br>**whatever**<br>42:11<br>**whatsoever**<br>21:16 | **whether**<br>9:12, 17:2,<br>20:7, 21:7,<br>21:8, 25:17,<br>27:8, 32:18,<br>55:22, 67:20,<br>72:16<br>**whim**<br>32:20<br>**who've**<br>20:2<br>**whoever**<br>58:5<br>**whole**<br>46:20<br>**wild**<br>40:8<br>**wildly**<br>71:11<br>**willing**<br>19:5<br>**willingness**<br>19:20<br>**win**<br>40:9, 42:8<br>**winning**<br>47:4<br>**within**<br>42:22<br>**without**<br>10:6<br>**witness**<br>6:7, 11:8,<br>14:19, 19:15,<br>32:2, 32:11,<br>36:5, 43:22,<br>45:17, 45:19,<br>47:18, 54:13,<br>65:18, 75:7<br>**witnesses**<br>35:1<br>**wondering**<br>43:5, 62:20<br>**word**<br>33:9, 38:3,<br>38:14, 43:18,<br>43:20, 68:16<br>**work**<br>10:8, 10:11, | 24:17, 44:16,<br>50:4, 58:3,<br>70:13, 70:20<br>**worked**<br>11:12, 69:3<br>**working**<br>17:14, 21:20,<br>25:17, 60:5,<br>73:2<br>**works**<br>69:7, 73:22<br>**worried**<br>11:3, 51:12,<br>63:8, 63:16,<br>65:7, 72:1, 75:3<br>**worries**<br>50:17<br>**worry**<br>60:12, 66:19,<br>66:20<br>**worrying**<br>67:4<br>**worst**<br>36:21, 36:22,<br>43:11<br>**wouldn't**<br>9:18, 12:1,<br>43:16, 68:17<br>**wrap**<br>42:22<br>**write**<br>2:11<br>**written**<br>2:5, 12:18,<br>13:15, 21:22,<br>75:12<br>**wrong**<br>59:20, 59:21,<br>61:6, 63:7,<br>66:15, 70:16<br>**wrote**<br>30:13<br>**Y**<br>**yard**<br>60:3, 61:18<br>**yeah**<br>10:18, 26:14, | 41:8, 41:11,<br>42:16, 43:8,<br>45:11<br>**year**<br>3:1, 3:2, 3:6,<br>9:15, 9:18,<br>19:3, 39:18,<br>52:16, 52:17,<br>64:16, 64:18,<br>64:19, 70:5,<br>80:22, 81:1<br>**year's**<br>59:22<br>**years**<br>3:4, 11:22,<br>12:6, 16:15,<br>30:6, 41:21,<br>48:16, 52:17,<br>52:18, 53:21,<br>60:10, 64:22,<br>67:6, 71:14,<br>75:4, 75:5<br>**yesterday**<br>11:8, 11:10,<br>32:13, 51:21,<br>52:22, 65:20,<br>76:4, 79:17<br>**yesterday's**<br>57:17<br>**yost**<br>42:10, 42:11<br>**young**<br>20:15<br>**yourself**<br>39:1, 70:18<br>**yourselves**<br>39:20, 40:6,<br>47:13<br>**yunta**<br>38:2<br>**$**<br>**$200**<br>20:20, 21:1,<br>21:3<br>**1**<br>**1's**<br>17:9 |

| 10 |
| 30:6, 52:17, 67:6 |
| **100** |
| 3:2 |
| **112** |
| 30:2 |
| **12** |
| 30:6 |
| **14** |
| 16:15 |
| **19** |
| 23:21 |
| **1912** |
| 23:22 |

| 2 |
| **20** |
| 52:17, 80:10 |
| **2004** |
| 48:11 |
| **2024** |
| 1:9, 75:4, 84:16, 84:20 |
| **2224** |
| 79:2, 81:13 |
| **226** |
| 75:19, 77:11, 77:15 |
| **29** |
| 1:9, 84:20 |

| 4 |
| **40** |
| 39:21 |
| **400** |
| 2:14, 2:18, 4:12 |

| 5 |
| **5** |
| 84:19 |
| **50** |
| 3:11 |
| **501** |
| 29:17, 77:1 |
| **540606** |
| 1:20, 84:19 |

| 6 |
| **6th** |
| 46:8 |

| 8 |
| **83** |
| 84:8 |
| **84** |
| 1:21 |

# Exhibit K



# Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024

**Date:** May 30, 2024
**Case:** 2024 Ohio Campaign Finance Litigation

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY



TRANSCRIPT OF VIDEO-RECORDED

TESTIMONY OF THE

OHIO HOUSE GOVERNMENT OVERSIGHT COMMITTEE

MAY 30, 2024

SPECIAL SESSION

Job No.: 540606

Pages: 1 - 16

Transcribed by: Christian Naaden

```
1                  P R O C E E D I N G S

2            REP. PETERSON:  We have two items of business

3   before us. We'll start with House Bill 1. The Chair

4   moves a sub-bill without objection.

5            MEMBER:  Objection.

6            REP. PETERSON:  We have an objection. And the

7   committee will stand at ease while we round up some

8   members. Thank you. There was an objection to the sub-

9   bill. Clerk, please call the role.

10           CLERK:  Chair Peterson.

11           REP. PETERSON:  Yes.

12           CLERK:  Vice Chair Thomas.

13           VICE REP. THOMAS:  Yes.

14           CLERK:  Ranking Member Humphrey.

15           REP. HUMPHREY:  No.

16           CLERK:  Representative Brown.

17           REP. BROWN:  No.

18           CLERK:  Representative Dobos.

19           REP. DOBOS:  Yes.

20           CLERK:  Representative Grim.

21           REP. GRIM:  No.

22           CLERK:  Representative Hoops.
```

```
1              REP. HOOPS:  Yes.

2              CLERK:  Representative Isaacsohn.

3              REP. ISAACSOHN:  No.

4              CLERK:  Representative Oelslager.

5              REP. OELSLAGER:  Yes.

6              CLERK:  Representative Pizzulli.

7              REP. PIZZULLI:  [inaudible].

8              CLERK:  Representative Seitz.

9              REP. SEITZ:  Yes.

10             CLERK:  Representative Skindell

11             REP. SKINDELL:  No.

12             REP. PETERSON:  The motion passes. The sub-

13    bill is now part of the bill. I would now recognize

14    Representative Seitz for an amendment, that technical

15    amendment.

16             REP. SEITZ:  Yes, Mr. Chair. I move to amend

17    substitute House Bill 1 with amendment 2259, which is a

18    [inaudible] amendment simply clarifying that whatever

19    is referenced [inaudible] commission.

20             REP. PETERSON:  Without objection can we add

21    the amendment? Seeing no objection, the amendment

22    becomes part of the bill. Thank you. Now, would
```

```
1    Representative Seitz be willing to describe this sub-
2    bill?
3            REP. SEITZ:  Sure. Sure. The – there, I think
4    seven important points to make. The first important
5    point to make is I was right that we were working on a
6    bill that would be even shorter than the 21 page bill
7    we looked at couple days ago.
8            And certainly, as Representative Brown noted a
9    couple days ago, much shorter than the 200 and some
10   page bill that came over from the Senate. So, the first
11   point is the new bill puts everything in a new code
12   section and is only five pages long.
13           So, we have taken what I said to heart that
14   the shortest distance between two points is a straight
15   line. And we're being very concise and clear in what
16   we're doing here in the bill.
17           Second, there were about, let's see, six –
18   yeah, six points of difference between us and the
19   Senate that had to be negotiated. And we've been very
20   busy doing that.
21           The first point is penalties. The Senate
22   wanted to make everything a felony of the fifth degree
```

1    including the aiding and abetting section. We were able

2    to negotiate a compromise whereby the aiding and

3    abetting section will be a M1 only. The other penalties

4    will be an M1 on the first offense graduating to a F5

5    on a repeat offense. So, that was the compromise there.

6         The enforcement language very, very similar to

7    what we saw on Tuesday. I think probably you could

8    argue that this, sort of, makes it even clearer that

9    the Attorney General has the power to investigate and

10   enforce regardless of whether it's been through the

11   mill a the OEC or not.

12        In the interest of getting prompt enforcement,

13   we all know that the OEC takes its jolly good time and

14   frequently is unable to adjudicate anything prior to an

15   election. So, that's why the enforcement section, I

16   would say, is different than the bill we looked at the

17   other day but in minor ways and – and to the Senate's

18   satisfaction on that point.

19        The Senate wanted to include reference to a

20   continuing association. I'll bet you there's not five

21   people in this room know what that is but a continuing

22   association is any form of business entity that is

```
1    organized under Internal Revenue Code Section

2    501(c)(3), 501(c)(4), 501(c)(6).

3            Their primary purpose is really not political.

4    They - in fact they are not allowed to engage in

5    politics under current law, federal and state. They are

6    not allowed to give money to candidates or urge - and

7    foreign nationals are not allowed to do that now

8    through a continuing association.

9            We're expanding that to include ballot - state

10   ballot issues, which is the thrust of the bill but we

11   are modifying the words continuing association by words

12   to the affect of to the extent allowed by law or the

13   constitution.

14           There being some question, and I think I

15   alluded to this a couple days ago, as to the extent to

16   which Citizens United would trump the foreign nationals

17   provision or the foreign nationals provision would

18   subsist regardless of the Citizens United decision.

19           And, as you all know, the Citizens United

20   decision gave 501(c)(4)s pretty well the untrampled

21   ability to advocate on behalf of issues as a

22   constitutional matter. And then so that's why we had
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

1    been somewhat reluctant to put continuing associations

2    into this bill but we've now done it through a – I

3    think a rather artful compromise, which is but it's in

4    there, to the maximum extent permitted by law or the

5    constitution.

6           You will recall that our bill a few days ago

7    adhered to the federal law definition of foreign

8    national. That was a major subject of dispute with the

9    Senate.

10          They had wanted to change our definition of

11   foreign national to make the prohibition more complete

12   and prevent even a lawful permanent residence of the

13   United States, who were non residents or, who are – I'm

14   sorry, not citizens from being able to contribute.

15          We – we thought the better part of prudence

16   was to retain our adherence to the federal definition

17   of a foreign national. You will note the next point

18   that we also prevailed over their desire – their

19   original desire was to make this the new law applicable

20   not only to state ballot issue – statewide ballot

21   issues but also to local ones as well.

22          But we prevailed and convinced them that for

1    now at least let's see how this works out at the

2    statewide ballot issue level before we go complicating

3    things by extending the principle to all manner of

4    local — local ballot issues that might exist for local

5    school levies or liquor license — liquor permits or so

6    forth.

7            The — also, you will not that there is no

8    treasurer certification language in this abbreviated

9    bill. That was a point of contention as well. And I had

10   alluded to that on Tuesday and said that we were still

11   talking about it.

12           But we have in this bill not imposed any sort

13   of criminal penalty on — on the treasurers of these

14   various campaigns in the interest of making sure people

15   are willing to serve as treasurer because we all know

16   that the treasurer typically does not solicit money.

17           The treasurer simply is the keeper of the

18   money and sort of a green eyeshade accountant type

19   person. So, that is the summary of the — where we ended

20   up, where we landed. I feel reasonably confident that

21   the Senate is prepared to agree with this if the House

22   will vote for this. And we can then be done with — done

1    with this and move on.

2          REP. PETERSON:  Thank you for that summary.

3    Representative Isaacsohn, you have an amendment.

4          REP. ISAACSOHN:  Yes, Mr. Chair. I would like

5    to amend Sub-Bill 1 with amendment 2261.

6          REP. PETERSON:  The amendment is in order.

7    Would you like to describe the amendment?

8          REP. ISAACSOHN:  I would like to describe the

9    amendment. And respond a little bit to the bill sponsor

10   and what we just heard about the new sub-bill.

11         REP. PETERSON:  Let's – let's describe the

12   amendment and I'll take a comment after.

13         REP. ISAACSOHN:  Okay. The amendment is in

14   response to what this bill does. And I want to be clear

15   about what the bill is doing. Currently, an allegation

16   of something that is already illegal, which is foreign

17   contributions to our political campaigns, has to be

18   investigated by the Ohio Elections Commission, who are

19   professionals, who are bipartisan, who have a job to

20   do, which is exactly to look into election integrity.

21         That's what they're there for. The notion that

22   they take their time adjudicating complicated issues is

```
1    a problem, is outrageous. That's how the court system

2    works. The idea that we would have - that they're

3    taking too long.

4            So, we want to give arbitrary and expedited

5    authority to a law - to a single law enforcement

6    official, the Attorney General. That is what this bill

7    is doing. It is saying any voter in Ohio - any elector

8    can allege a violation of a law that is poorly drafted,

9    overly broad, incredibly vague, very confusing, hard to

10   understand.

11           Can allege a violation of that law and then

12   that allegation can be directly and immediately

13   investigated and prosecuted by the Attorney General.

14   And by the way, that allegation is not just in state

15   ballot initiatives it's into any candidate campaign,

16   any political action committee, any candidate

17   committee.

18           So, if someone voted the wrong way for Speaker

19   of the House, for example, their campaign committee

20   might face some allegations that immediately get

21   investigated with no Ohio Elections Commission

22   interference. No taking the time to actually look into
```

1    and investigate the problem by bipartisan

2    professionals.

3          That's what the bill is doing. So, what my

4    amendment would do is keep the power to investigate and

5    prosecute these alleg – these violations, not just the

6    allegations, the violations, in the hands of an

7    independent prosecutor that is outside the realm of

8    state politics.

9          Because when we give the power directly to the

10   Attorney General, this Attorney General has already

11   been nefariously involved in trying to prevent ballot

12   initiatives to repeal unpopular laws, specifically

13   House Bill 6, as we've heard in federal trials.

14         He is being sued by the various entities

15   trying to bring forward ballot initiatives. And so, he

16   has a vested interest in pushing back and fighting

17   back. He's a statewide political actor.

18         So, to give this kind of unbridled power to

19   one person, who has already proved that he's willing to

20   use that power to political aims, is deeply misguided.

21   The amendment would keep the power in the hands of an

22   independent prosecutor.

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

```
1              So, that is what this amendment does. I look

2     forward to commenting further, as the Chair has

3     indicated but I'll - I'll stop now on this amendment.

4              REP. PETERSON:  Clerk, please call the role.

5              CLERK:  Chair Peterson.

6              REP. PETERSON:  I'm sorry. This is on the

7     amendment. Let me clarify. I would look to my Vice

8     Chairman for a motion.

9              VICE REP. THOMAS:  Chair Peterson, I move to

10    lay amendment 2261 on the table.

11             REP. PETERSON:  Thank you. Now will the clerk

12    please call the role on the tabling motion.

13             CLERK:  Chair Peterson.

14             REP. PETERSON:  Yes.

15             CLERK:  Vice Chair Thomas.

16             VICE REP. THOMAS:  Yes.

17             CLERK:  Ranking Member Humphrey.

18             REP. HUMPHREY:  No.

19             CLERK:  Representative Brown.

20             REP. BROWN:  No.

21             CLERK:  Representative Dobos.

22             REP. DOBOS:  Yes.
```

```
 1          CLERK:  Representative Grim.

 2          REP. GRIM:  No.

 3          CLERK:  Representative Hoops.

 4          REP. HOOPS:  Yes.

 5          CLERK:  Representative Isaacsohn.

 6          REP. ISAACSOHN:  No.

 7          CLERK:  Representative Oelslager.

 8          REP. OELSLAGER:  Yes.

 9          CLERK:  Representative Seitz.

10          REP. SEITZ:  Yes.

11          CLERK:  Representative Skindell

12          REP. SKINDELL:  No.

13          REP. PETERSON:  Thank you. The motion is laid

14   on the table.

15          Now, we're back to the original House Bill 1

16   as amended in the sub-bill. Chair recognizes

17   Representative Seitz.

18          REP. SEITZ:  Thank you. Mr. Chairman, I move

19   that the committee favorably report substitute House

20   Bill 1 to the Committee on Rules and Reference leaving

21   the road open at the discretion of the Chair.

22          REP. PETERSON:  We've got a motion. Clerk,
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

```
1     please call the role.

2             CLERK:  Chair Peterson.

3             REP. PETERSON:  Yes.

4             CLERK:  Vice Chair Thomas.

5             VICE REP. THOMAS:  Yes.

6             CLERK:  Ranking Member Humphrey.

7             REP. HUMPHREY:  No.

8             CLERK:  Representative Brown.

9             REP. BROWN:  No.

10            CLERK:  Representative Dobos.

11            REP. DOBOS:  Yes.

12            CLERK:  Representative Grim.

13            REP. GRIM:  No.

14            CLERK:  Representative Hoops.

15            REP. HOOPS:  Yes.

16            CLERK:  Representative Isaacsohn.

17            REP. ISAACSOHN:  No.

18            CLERK:  Representative Oelslager.

19            REP. OELSLAGER:  Yes.

20            CLERK:  Representative Seitz.

21            REP. SEITZ:  Yes.

22            CLERK:  Representative Skindell
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

1          REP. SKINDELL:  No.

2          REP. PETERSON:  With sufficient votes the

3     House Bill 1 passes.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

```
1                CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 15 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15  _____

16        June 6, 2024

17        Chris Naaden

18

19  (540606, Ohio House Government Oversight Committee - 5-

20  30-2024 - Special Session)

21

22
```

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

17

| A |
|---|
| **abbreviated** |
| 8:8 |
| **abetting** |
| 5:1, 5:3 |
| **ability** |
| 6:21, 16:3 |
| **able** |
| 5:1, 7:14 |
| **about** |
| 4:17, 8:11, |
| 9:10, 9:15 |
| **above** |
| 16:8 |
| **accountant** |
| 8:18 |
| **action** |
| 10:16, 16:13 |
| **actor** |
| 11:17 |
| **actually** |
| 10:22 |
| **add** |
| 3:20 |
| **adhered** |
| 7:7 |
| **adherence** |
| 7:16 |
| **adjudicate** |
| 5:14 |
| **adjudicating** |
| 9:22 |
| **advocate** |
| 6:21 |
| **affect** |
| 6:12 |
| **after** |
| 9:12 |
| **ago** |
| 4:7, 4:9, 6:15, |
| 7:6 |
| **agree** |
| 8:21 |
| **aiding** |
| 5:1, 5:2 |
| **aims** |
| 11:20 |

**all**
5:13, 6:19,
8:3, 8:15
**alleg**
11:5
**allegation**
9:15, 10:12,
10:14
**allegations**
10:20, 11:6
**allege**
10:8, 10:11
**allowed**
6:4, 6:6, 6:7,
6:12
**alluded**
6:15, 8:10
**already**
9:16, 11:10,
11:19
**also**
7:18, 7:21, 8:7
**amend**
3:16, 9:5
**amended**
13:16
**amendment**
3:14, 3:15,
3:17, 3:18,
3:21, 9:3, 9:5,
9:6, 9:7, 9:9,
9:12, 9:13,
11:4, 11:21,
12:1, 12:3,
12:7, 12:10
**any**
5:22, 8:12,
10:7, 10:15,
10:16, 16:6
**anything**
5:14
**applicable**
7:19
**arbitrary**
10:4
**argue**
5:8
**artful**
7:3

**association**
5:20, 5:22,
6:8, 6:11
**associations**
7:1
**attorney**
5:9, 10:6,
10:13, 11:10
**audio**
16:4
**authority**
10:5

| B |
|---|
| **back** |
| 11:16, 11:17, |
| 13:15 |
| **ballot** |
| 6:9, 6:10, |
| 7:20, 8:2, 8:4, |
| 10:15, 11:11, |
| 11:15 |
| **because** |
| 8:15, 11:9 |
| **becomes** |
| 3:22 |
| **been** |
| 4:19, 5:10, |
| 7:1, 11:11 |
| **before** |
| 2:3, 8:2 |
| **behalf** |
| 6:21 |
| **being** |
| 4:15, 6:14, |
| 7:14, 11:14 |
| **best** |
| 16:3 |
| **bet** |
| 5:20 |
| **better** |
| 7:15 |
| **between** |
| 4:14, 4:18 |
| **bill** |
| 2:3, 2:9, 3:13, |
| 3:17, 3:22, 4:2, |
| 4:6, 4:10, 4:11, |

4:16, 5:16,
6:10, 7:2, 7:6,
8:9, 8:12, 9:9,
9:14, 9:15,
10:6, 11:3,
11:13, 13:15,
13:20, 15:3
**bipartisan**
9:19, 11:1
**bit**
9:9
**bring**
11:15
**broad**
10:9
**brown**
2:16, 2:17,
4:8, 12:19,
12:20, 14:8,
14:9
**business**
2:2, 5:22
**busy**
4:20

| C |
|---|
| **c) (3** |
| 6:2 |
| **c) (4** |
| 6:2 |
| **c) (4)s** |
| 6:20 |
| **c) (6** |
| 6:2 |
| **call** |
| 2:9, 12:4, |
| 12:12, 14:1 |
| **came** |
| 4:10 |
| **campaign** |
| 10:15, 10:19 |
| **campaigns** |
| 8:14, 9:17 |
| **candidate** |
| 10:15, 10:16 |
| **candidates** |
| 6:6 |
| **caption** |
| 16:10 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024                                      18

case
16:6
certainly
4:8
certificate
16:1
certification
8:8
chair
2:3, 2:10,
2:12, 3:16, 9:4,
12:2, 12:5,
12:9, 12:13,
12:15, 13:16,
13:21, 14:2,
14:4
chairman
12:8, 13:18
change
7:10
chris
16:2, 16:17
christian
1:22
citizens
6:16, 6:18,
6:19, 7:14
clarify
12:7
clarifying
3:18
clear
4:15, 9:14
clearer
5:8
clerk
2:9, 2:10,
2:12, 2:14,
2:16, 2:18,
2:20, 2:22, 3:2,
3:4, 3:6, 3:8,
3:10, 12:4,
12:5, 12:11,
12:13, 12:15,
12:17, 12:19,
12:21, 13:1,
13:3, 13:5,
13:7, 13:9,

13:11, 13:22,
14:2, 14:4,
14:6, 14:8,
14:10, 14:12,
14:14, 14:16,
14:18, 14:20,
14:22
code
4:11, 6:1
comment
9:12
commenting
12:2
commission
3:19, 9:18,
10:21
committee
1:8, 2:7,
10:16, 10:17,
10:19, 13:19,
13:20, 16:19
complete
7:11
complicated
9:22
complicating
8:2
compromise
5:2, 5:5, 7:3
concise
4:15
confident
8:20
confusing
10:9
constitution
6:13, 7:5
constitutional
6:22
contain
16:8
contention
8:9
continuing
5:20, 5:21,
6:8, 6:11, 7:1
contribute
7:14

contributions
9:17
convinced
7:22
correct
16:8
could
5:7
counsel
16:5
couple
4:7, 4:9, 6:15
court
10:1
criminal
8:13
current
6:5
currently
9:15
        D
day
5:17
days
4:7, 4:9, 6:15,
7:6
decision
6:18, 6:20
declare
16:2, 16:12
deeply
11:20
definition
7:7, 7:10, 7:16
degree
4:22
describe
4:1, 9:7, 9:8,
9:11
desire
7:18, 7:19
difference
4:18
different
5:16
directly
10:12, 11:9

discretion
13:21
dispute
7:8
distance
4:14
dobos
2:18, 2:19,
12:21, 12:22,
14:10, 14:11
doing
4:16, 4:20,
9:15, 10:7, 11:3
done
7:2, 8:22
drafted
10:8
        E
ease
2:7
election
5:15, 9:20
elections
9:18, 10:21
elector
10:7
employed
16:6
ended
8:19
enforce
5:10
enforcement
5:6, 5:12,
5:15, 10:5
engage
6:4
entities
11:14
entity
5:22
even
4:6, 5:8, 7:12
event
16:10, 16:13
everything
4:11, 4:22

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

19

exactly
9:20
example
10:19
exist
8:4
expanding
6:9
expedited
10:4
extending
8:3
extent
6:12, 6:15, 7:4
eyeshade
8:18

**F**

f5
5:4
face
10:20
fact
6:4
favorably
13:19
federal
6:5, 7:7, 7:16,
11:13
feel
8:20
felony
4:22
few
7:6
fifth
4:22
fighting
11:16
financial
16:7
first
4:4, 4:10,
4:21, 5:4
five
4:12, 5:20
foreign
6:7, 6:16,

6:17, 7:7, 7:11,
7:17, 9:16
form
5:22
forth
8:6
forward
11:15, 12:2
frequently
5:14
full
16:8
further
12:2, 16:12

**G**

gave
6:20
general
5:9, 10:6,
10:13, 11:10
getting
5:12
give
6:6, 10:4,
11:9, 11:18
go
8:2
good
5:13
government
1:8, 16:19
graduating
5:4
green
8:18
grim
2:20, 2:21,
13:1, 13:2,
14:12, 14:13

**H**

hands
11:6, 11:21
hard
10:9
heard
9:10, 11:13

heart
4:13
here
4:16
hereby
16:2
hoops
2:22, 3:1,
13:3, 13:4,
14:14, 14:15
house
1:8, 2:3, 3:17,
8:21, 10:19,
11:13, 13:15,
13:19, 15:3,
16:19
humphrey
2:14, 2:15,
12:17, 12:18,
14:6, 14:7

**I**

idea
10:2
illegal
9:16
immediately
10:12, 10:20
important
4:4
imposed
8:12
include
5:19, 6:9
including
5:1
incredibly
10:9
independent
11:7, 11:22
indicated
12:3
information
16:4
initiatives
10:15, 11:12,
11:15
integrity
9:20

interest
5:12, 8:14,
11:16, 16:7,
16:12
interference
10:22
internal
6:1
investigate
5:9, 11:1, 11:4
investigated
9:18, 10:13,
10:21
involved
11:11
isaacsohn
3:2, 3:3, 9:3,
9:4, 9:8, 9:13,
13:5, 13:6,
14:16, 14:17
issue
7:20, 8:2
issues
6:10, 6:21,
7:21, 8:4, 9:22
items
2:2

**J**

job
1:20, 9:19
jolly
5:13
june
16:16

**K**

keep
11:4, 11:21
keeper
8:17
kind
11:18
know
5:13, 5:21,
6:19, 8:15

**L**

laid
13:13

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024                                    20

| | | | |
|---|---|---|---|
| landed | make | national | ones |
| 8:20 | 4:4, 4:5, 4:22, | 7:8, 7:11, 7:17 | 7:21 |
| language | 7:11, 7:19 | nationals | only |
| 5:6, 8:8 | makes | 6:7, 6:16, 6:17 | 4:12, 5:3, 7:20 |
| law | 5:8 | nefariously | open |
| 6:5, 6:12, 7:4, | making | 11:11 | 13:21 |
| 7:7, 7:19, 10:5, | 8:14 | negotiate | order |
| 10:8, 10:11 | manner | 5:2 | 9:6 |
| lawful | 8:3 | negotiated | organized |
| 7:12 | matter | 4:19 | 6:1 |
| laws | 6:22 | neither | original |
| 11:12 | maximum | 16:5 | 7:19, 13:15 |
| lay | 7:4 | new | other |
| 12:10 | member | 4:11, 7:19, | 5:3, 5:17 |
| least | 2:5, 2:14, | 9:10 | otherwise |
| 8:1 | 12:17, 14:6 | next | 16:7 |
| leaving | members | 7:17 | out |
| 13:20 | 2:8 | non | 8:1 |
| let's | might | 7:13 | outcome |
| 4:17, 8:1, 9:11 | 8:4, 10:20 | note | 16:7 |
| level | mill | 7:17 | outrageous |
| 8:2 | 5:11 | noted | 10:1 |
| levies | minor | 4:8 | outside |
| 8:5 | 5:17 | notion | 11:7 |
| license | misguided | 9:21 | over |
| 8:5 | 11:20 | | 4:10, 7:18 |
| line | modifying | **O** | overly |
| 4:15 | 6:11 | objection | 10:9 |
| liquor | money | 2:4, 2:5, 2:6, | oversight |
| 8:5 | 6:6, 8:16, 8:18 | 2:8, 3:20, 3:21 | 1:8, 16:19 |
| listed | more | oec | |
| 16:10 | 7:11 | 5:11, 5:13 | **P** |
| little | motion | oelslager | page |
| 9:9 | 3:12, 12:8, | 3:4, 3:5, 13:7, | 4:6, 4:10, |
| local | 12:12, 13:13, | 13:8, 14:18, | 16:10 |
| 7:21, 8:4 | 13:22 | 14:19 | pages |
| long | move | offense | 1:21, 4:12, |
| 4:12, 10:3 | 3:16, 9:1, | 5:4, 5:5 | 16:8 |
| look | 12:9, 13:18 | official | part |
| 9:20, 10:22, | moves | 10:6 | 3:13, 3:22, |
| 12:1, 12:7 | 2:4 | ohio | 7:15 |
| looked | much | 1:8, 9:18, | parties |
| 4:7, 5:16 | 4:9 | 10:7, 10:21, | 16:6 |
| **M** | **N** | 16:19 | passes |
| m1 | naaden | okay | 3:12, 15:3 |
| 5:3, 5:4 | 1:22, 16:2, | 9:13 | penalties |
| major | 16:17 | one | 4:21, 5:3 |
| 7:8 | | 11:19 | penalty |
| | | | 8:13, 16:3 |

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024

21

people
5:21, 8:14
perjury
16:3
permanent
7:12
permits
8:5
permitted
7:4
person
8:19, 11:19
peterson
2:2, 2:6, 2:10,
2:11, 3:12,
3:20, 9:2, 9:6,
9:11, 12:4,
12:5, 12:6,
12:9, 12:11,
12:13, 12:14,
13:13, 13:22,
14:2, 14:3, 15:2
pizzulli
3:6, 3:7
please
2:9, 12:4,
12:12, 14:1
point
4:5, 4:11,
4:21, 5:18,
7:17, 8:9
points
4:4, 4:14, 4:18
political
6:3, 9:17,
10:16, 11:17,
11:20
politics
6:5, 11:8
poorly
10:8
power
5:9, 11:4,
11:9, 11:18,
11:20, 11:21
prepared
8:21
pretty
6:20

prevailed
7:18, 7:22
prevent
7:12, 11:11
primary
6:3
principle
8:3
prior
5:14
probably
5:7
problem
10:1, 11:1
professionals
9:19, 11:2
prohibition
7:11
prompt
5:12
prosecute
11:5
prosecuted
10:13
prosecutor
11:7, 11:22
proved
11:19
provision
6:17
prudence
7:15
purpose
6:3
pushing
11:16
put
7:1
puts
4:11

___

Q

question
6:14

___

R

ranking
2:14, 12:17,

14:6
rather
7:3
really
6:3
realm
11:7
reasonably
8:20
recall
7:6
received
16:9
recognize
3:13
recognizes
13:16
recordings
16:4
reference
5:19, 13:20
referenced
3:19
regarding
16:10
regardless
5:10, 6:18
related
16:5
reluctant
7:1
rep
2:2, 2:6, 2:11,
2:13, 2:15,
2:17, 2:19,
2:21, 3:1, 3:3,
3:5, 3:7, 3:9,
3:11, 3:12,
3:16, 3:20, 4:3,
9:2, 9:4, 9:6,
9:8, 9:11, 9:13,
12:4, 12:6,
12:9, 12:11,
12:14, 12:16,
12:18, 12:20,
12:22, 13:2,
13:4, 13:6,
13:8, 13:10,

13:12, 13:13,
13:18, 13:22,
14:3, 14:5,
14:7, 14:9,
14:11, 14:13,
14:15, 14:17,
14:19, 14:21,
15:1, 15:2
repeal
11:12
repeat
5:5
report
13:19
representative
2:16, 2:18,
2:20, 2:22, 3:2,
3:4, 3:6, 3:8,
3:10, 3:14, 4:1,
4:8, 9:3, 12:19,
12:21, 13:1,
13:3, 13:5,
13:7, 13:9,
13:11, 13:17,
14:8, 14:10,
14:12, 14:14,
14:16, 14:18,
14:20, 14:22
residence
7:12
residents
7:13
respond
9:9
response
9:14
retain
7:16
revenue
6:1
right
4:5
road
13:21
role
2:9, 12:4,
12:12, 14:1
room
5:21

Transcript of Testimony of Ohio House Government Oversight Committee - Special Session 053024
Conducted on May 30, 2024                                                    22

| | | | |
|---|---|---|---|
| round | signature-kcnbo | 11:17 | technical |
| 2:7 | 16:14 | still | 3:14 |
| rules | similar | 8:10 | testimony |
| 13:20 | 5:6 | stop | 1:7 |
| **S** | simply | 12:3 | thank |
| said | 3:18, 8:17 | straight | 2:8, 3:22, 9:2, |
| 4:13, 8:10 | single | 4:14 | 12:11, 13:13, |
| satisfaction | 10:5 | sub | 13:18 |
| 5:18 | six | 2:8, 3:12, 4:1 | things |
| saw | 4:17, 4:18 | sub-bill | 8:3 |
| 5:7 | skindell | 2:4, 9:5, 9:10, | think |
| say | 3:10, 3:11, | 13:16 | 4:3, 5:7, 6:14, |
| 5:16 | 13:11, 13:12, | subject | 7:3 |
| saying | 14:22, 15:1 | 7:8 | thomas |
| 10:7 | solicit | subsist | 2:12, 2:13, |
| school | 8:16 | 6:18 | 12:9, 12:15, |
| 8:5 | some | substitute | 12:16, 14:4, |
| second | 2:7, 4:9, 6:14, | 3:17, 13:19 | 14:5 |
| 4:17 | 10:20 | sued | thought |
| section | someone | 11:14 | 7:15 |
| 4:12, 5:1, 5:3, | 10:18 | sufficient | through |
| 5:15, 6:1 | something | 15:2 | 5:10, 6:8, 7:2 |
| see | 9:16 | summary | thrust |
| 4:17, 8:1 | somewhat | 8:19, 9:2 | 6:10 |
| seeing | 7:1 | supporting | time |
| 3:21 | sorry | 16:4 | 5:13, 9:22, |
| seitz | 7:14, 12:6 | sure | 10:22 |
| 3:8, 3:9, 3:14, | sort | 4:3, 8:14 | transcribed |
| 3:16, 4:1, 4:3, | 5:8, 8:12, 8:18 | system | 1:22 |
| 13:9, 13:10, | speaker | 10:1 | transcriber |
| 13:17, 13:18, | 10:18 | **T** | 16:1, 16:2 |
| 14:20, 14:21 | special | table | transcript |
| senate | 1:10, 16:20 | 12:10, 13:14 | 1:6 |
| 4:10, 4:19, | specifically | tabling | transcription |
| 4:21, 5:19, 7:9, | 11:12 | 12:12 | 16:9 |
| 8:21 | sponsor | take | treasurer |
| senate's | 9:9 | 9:12, 9:22 | 8:8, 8:15, |
| 5:17 | stand | taken | 8:16, 8:17 |
| serve | 2:7 | 4:13 | treasurers |
| 8:15 | start | takes | 8:13 |
| session | 2:3 | 5:13 | trials |
| 1:10, 16:20 | state | taking | 11:13 |
| seven | 6:5, 6:9, 7:20, | 10:3, 10:22 | true |
| 4:4 | 10:14, 11:8 | talking | 16:8 |
| shorter | states | 8:11 | trump |
| 4:6, 4:9 | 7:13 | tape-recording | 6:16 |
| shortest | statewide | 16:9 | trying |
| 4:14 | 7:20, 8:2, | | 11:11, 11:15 |

| | | |
|---|---|---|
| **tuesday** 5:7, 8:10 | **vote** 8:22 | |

**tuesday**
5:7, 8:10
**two**
2:2, 4:14
**type**
8:18
**typically**
8:16

**U**

**unable**
5:14
**unbridled**
11:18
**under**
6:1, 6:5, 16:3
**understand**
10:10
**united**
6:16, 6:18,
6:19, 7:13
**unpopular**
11:12
**untrampled**
6:20
**urge**
6:6
**use**
11:20

**V**

**vague**
10:9
**various**
8:14, 11:14
**vested**
11:16
**vice**
2:12, 2:13,
12:7, 12:9,
12:15, 12:16,
14:4, 14:5
**video-recorded**
1:6
**violation**
10:8, 10:11
**violations**
11:5, 11:6

**vote**
8:22
**voted**
10:18
**voter**
10:7
**votes**
15:2

**W**

**want**
9:14, 10:4
**wanted**
4:22, 5:19,
7:10
**way**
10:14, 10:18
**ways**
5:17
**we'll**
2:3
**we're**
4:15, 4:16,
6:9, 13:15
**we've**
4:19, 7:2,
11:13, 13:22
**whatever**
3:18
**whereby**
5:2
**whether**
5:10
**willing**
4:1, 8:15,
11:19
**without**
2:4, 3:20
**words**
6:11
**working**
4:5
**works**
8:1, 10:2
**wrong**
10:18

**Y**

**yeah**
4:18

**1**

**15**
16:8
**16**
1:21

**2**

**200**
4:9
**2024**
1:9, 16:16,
16:20
**21**
4:6
**2259**
3:17
**2261**
9:5, 12:10

**3**

**30**
1:9, 16:20

**5**

**5**
16:19
**501**
6:2, 6:20
**540606**
1:20, 16:19

# Exhibit L



# Transcript of Testimony of Ohio House of Representatives - Special Session 053024

**Date:** May 30, 2024

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

```
1

2

3

4

5

6                  TRANSCRIPT OF VIDEO-RECORDED

7                     TESTIMONY OF THE

8                 OHIO HOUSE OF REPRESENTATIVES

9                       MAY 30, 2024

10                     SPECIAL SESSION

11

12

13

14

15

16

17

18

19

20   Job No.: 540606

21   Pages: 1 - 43

22   Transcribed by: Christian Naaden
```

1                    P R O C E E D I N G S

2              REP. STEPHENS:  Reports of standing and select

3     committees and bills for second consideration.

4              CLERK:  Representative Humphrey submitted the

5     following report. Standing Committee on Government

6     Oversight which is for House Bill 1. Representative

7     Seitz having the same consideration, reports back as a

8     substantive bill, recommends its passage.

9              Representative Humphrey submitted the

10    following report. Standing Committee on Government

11    Oversight, which is for House Bill 2. Representative

12    Dobos having the same consideration, reports back and

13    recommends its passage.

14             REP. STEPHENS:  Motions and resolutions. Bills

15    for third consideration.

16             CLERK:  Substitute House Bill 1.

17    Representative Seitz to enact the Revised Code to

18    modify the campaign finance law regarding foreign

19    nationals and ballot issues.

20             REP. STEPHENS:  Would the gentleman please --

21             CLERK:  Please come to order.

22             REP. STEPHENS:  First of all, would the

1  gentleman please come to order? Would the gentleman

2  please state the constitutional provision, law or rule

3  that is being violated.

4          CLERK:  Rule 82, this is a motion that needs

5  to be recognized as a motion for timely manner.

6          REP. STEPHENS:  No member has been recognized

7  to make a motion, therefore the motion to the point of

8  order is out of order. The question is shall the bill

9  pass? The clerk will read the title of the bill,

10  please.

11          CLERK:  Substitute House Bill 1.

12  Representative Seitz to enact the Revised Code to

13  modify the campaign finance law regarding foreign

14  nationals and ballot issues.

15          REP. STEPHENS:  The question is shall the bill

16  pass? The Chair recognizes Representative Seitz.

17          REP. SEITZ:  Thank you, Mr. Speaker. I rise

18  today in support of amended substitute House Bill 1 of

19  the special session. Hopefully today we will, by the

20  conclusion of today's events, satisfy Governor DeWine's

21  call for a special session to deal with the two

22  questions that he posed to us.

1           It has been a long and arduous journey to

2    attempt to grapple with this complex subject of House

3    Bill 1 in a way that meets with the tacit or express

4    approval of both Chambers. A lot of lawyers have been

5    involved.

6           That makes this very much a lawyer's bill. I

7    will just hit the highlights in the interest of not

8    giving everybody a free hour of CLE.

9           What we are doing here is banning foreign

10   nationals, directly or indirectly, through any person

11   or entity, from making contributions, expenditures, or

12   independent expenditures in support of or opposition to

13   candidates or ballot issues, including banning the

14   making of a disbursement for producing an

15   electioneering communication.

16          The bill also clarifies that the ban applies

17   to issue campaigns, regardless of whether the ballot

18   issue or question has yet been certified to appear on

19   the ballot.

20          The bill extends to continuing associations,

21   as well as campaigns, campaign funds, and other

22   entities engaging in campaigns. And it prohibits them

1    from knowingly soliciting, accepting, or receiving any

2    funds from a foreign national, and bans them from

3    spending money if they know it was received from a

4    foreign national.

5           And in the case of continuing associations,

6    that would apply to the maximum extent permitted by law

7    or the Constitution, there still being some residual

8    question as to the General Assembly's power to regulate

9    this aspect of a continuing association's activities.

10          The bill criminalizes violations of the

11   solicitation, acceptance, or receiving, and

12   expenditures provisions, makes it a crime. Also makes

13   it a crime to aid and abet the violation.

14          And furthermore, provides for treble damages,

15   which means three times the amount that was illegally

16   expended or received. So, and that's a mandatory fine

17   that is not waivable by anybody.

18          We are giving the Attorney General the

19   authority to investigate and prosecute any violation

20   related to this foreign money prohibition, which after

21   a long time, we've been able to put in a single code

22   section, which makes it much easier to read and digest.

1          We started out with a bill that came over from

2     the Senate that was over 200 pages long. We started on

3     Tuesday with a bill that was 21 pages long. We ended up

4     with a bill we passed this morning that is only about

5     five pages long.

6          So, I keep saying that the shortest distance

7     between two points is a straight line. Let's try to be

8     as clear and concise as we can to avoid any inadvertent

9     mistakes which happen when you're writing a very long

10    bill on a very complex subject.

11         The reason we're giving the Attorney General

12    this authority is because the Attorney General has a

13    bigger shop with greater expertise in complex cases,

14    with greater expertise in delving into where we might

15    find this foreign money, which will be difficult to

16    track even under optimal circumstances.

17         And the Attorney General has more

18    investigative tools in the toolbox than does the Ohio

19    Elections Commission. The Ohio Elections Commission is

20    a fine organization, but it moves at glacial speed.

21         And often is completely unable to render any

22    kind of effective relief prior to the actual election,

1    and often for many years thereafter. A good example is

2    the case of Mr. Freeman, who ran for state

3    representative some, let's see, five years ago, four

4    years ago.

5            Thank you. And just this year, the fine was

6    finally levied for the violations in that case by the

7    Ohio Elections Commission. So, that is one of the

8    reasons why we're giving the Attorney General this

9    authority.

10           We're patterning this authority after the

11   authority that he already has to investigate and

12   prosecute Medicaid fraud and workers' compensation

13   fraud. We had no problem with that. So, what we're

14   trying to do here, folks, at least what we all should

15   be trying to do, is ferret out the evil construct of

16   foreign money on our elections.

17           This is not a good thing. And I remember from

18   2016 to 2018, or thereabouts, we heard from the

19   National Democrats, and who appointed a special

20   prosecutor to look at this question, rather than going

21   through the Federal Elections Commission.

22           All we heard for three years from Mueller and

1    the gang was, Russia, Russia, Russia, Russia, Russia.

2    Everybody was concerned about Russian influence in the

3    2016 presidential election. We are now concerned about

4    other forms of foreign interference.

5          It is a dangerous world out there. The Chinese

6    are busy hacking our systems, doing everything they can

7    to pollute the values of our children. They are not our

8    friends. There are many other countries around the

9    world that are not our friends.

10          And we believe that Ohioans should decide

11   ballot questions only with money that comes from other

12   Americans. Okay? So that is what we have put together

13   and we're very proud of it. We hope this is a step

14   forward. It already is illegal under Ohio law for these

15   organizations to spend foreign money on candidates.

16          We're simply extending that proposition to

17   statewide ballot issues. We reformed the bill so as not

18   to apply to local issues, like the local park levy or a

19   local liquor option, precinct liquor option bill. We

20   made that change. So we're trying to just go after,

21   with a fairly narrow brush, what we're really trying to

22   prohibit.

1          Ballot initiatives will be able to continue

2     just as they have in recent years and probably will

3     continue for more years to come so long as the campaign

4     committee for that ballot issue just takes in money

5     from American interests and does not take in money from

6     foreign interests.

7          If they take in money from foreign interests,

8     they are not allowed to spend that money on the ballot

9     campaign. And so, they still have a way forward.

10    They've got plenty of folks, 330 million Americans or

11    so thereabouts, from whom to solicit money for their

12    ventures.

13         They do not need to widen that universe of

14    people to include folks who are citizens of countries

15    that may be our enemies nationally and internationally.

16         So with that, I would urge support for this

17    bill and appreciate the work of the committee,

18    appreciate Chairman Peterson's work, appreciate the

19    work that I did collaboratively with our Senate friends

20    to reach this point. And hopefully, we will be able to

21    get something passed here today and move it over to the

22    other Chamber. Thank you.

1         REP. STEPHENS:  The question is shall the bill

2    pass? The Chair recognizes Representative Isaacsohn.

3         REP. ISAACSOHN:  Thank you, Mr. Speaker. I

4    move to amend House Bill 1 with Amendment 2266.

5         REP. STEPHENS:  The amendment is in order and

6    the gentleman may proceed.

7         REP. ISAACSOHN:  Thank you, Mr. Speaker. I

8    rise today to urge that we take a unique opportunity to

9    do both the right thing when it is actually the easier

10   thing to do.

11        This amendment would retain the authority to

12   investigate and prosecute allegations and violations

13   with the bipartisan professionals at the Ohio Elections

14   Commission and an independent prosecutor, instead of

15   what the bill does, which is pursue yet another attempt

16   to limit the voices of the people of Ohio and give more

17   power to the already far too powerful.

18        We all know that this special session has

19   nothing to do with the Governor being concerned about

20   whether the President can get on the ballot or not.

21   This session was convened on the basis that Ohioans

22   should only have the right to vote for the sitting

1    president of the United States if they are willing to

2    trade away some of their other democratic rights.

3           That is what we are doing here today. We are

4    demonstrating to voters that their politicians only act

5    with urgency to grab power, that political civility can

6    be thrown aside and that mistrust of government is well

7    founded.

8           I both want us to be better than that, and,

9    happen to know that the vast majority of people in this

10   Chamber are in fact above that kind of behavior. The

11   real issue we are here to address is also not the

12   sinister influences that the Lieutenant Governor

13   ominously alluded to recently that he claims affected

14   our ballot initiatives.

15          Ohio voters did not reject last year's August

16   power grab because they were duped. Ohio voters did not

17   overwhelmingly vote to protect reproductive rights or

18   to legalize cannabis because they were influenced by

19   foreigners.

20          Ohio voters voted to retain their rights

21   because they know what they want and they are willing

22   to fight for what they deserve. It is insulting and

1    embarrassing to suggest otherwise. Foreign

2    contributions in campaigns are already illegal under

3    federal law.

4            But if we want to clarify state law to match

5    federal law, that would be fine with us. We oppose

6    foreign money in our politics and would support a clean

7    bill that actually did that. Instead, this bill uses

8    vague language to create a culture of fear and

9    confusion around engaging in political activity.

10           It is a terrifying power grab by the Attorney

11   General. I know the bill was only introduced late last

12   night, and most people probably haven't had a chance to

13   dive into the details. So let me explain briefly.

14           Again, foreign contributions are already

15   illegal. When the Ohio Election Commission currently

16   has reason to believe that those illegal activities are

17   taking place, they investigate and then they refer to

18   an independent prosecutor who is not involved in state

19   campaigns.

20           This bill goes far beyond the 13 words that

21   would have been necessary to codify federal law into

22   the state code. It transfers authority from an

1    independent prosecutor to a statewide politician, the

2    Attorney General, who has demonstrated over and over

3    again a willingness to use his office to pursue

4    political gains.

5           Just this week, a federal court found him to

6    be holding up a ballot initiative process, and another

7    federal trial has demonstrated the ways in which he

8    worked against a potential repeal for House Bill 6.

9           This bill creates an incredibly confusing and

10   broad set of potential violations and gives the ability

11   to allege those violations to any voter in Ohio, then

12   granting the exclusive power to investigate and

13   prosecute those alleged violations to that same

14   Attorney General who is already so involved in ballot

15   initiatives.

16          What is even an indirect contribution? If a

17   board member of the restaurant association, for

18   example, or another corporation is a foreign national,

19   are all of the political contributions from that

20   association or company's attendant PACs or committees

21   subject to violations?

22          What about a college student whose grandfather

1    sends them $100 from Ireland for their birthday, and

2    then they go and they buy some markers and some signs

3    and they go and protest for their rights, for their

4    reproductive rights at an issue campaign?

5            With the confusion of a poorly drafted and

6    rushed bill, we will need the Election Commission to

7    weigh in and investigate more than ever. But as the

8    bill sponsor noted, the bipartisan professionals at the

9    Ohio Elections Commission were taking too long for the

10   Senate Majority's liking.

11           So this bill decides to take direct aim at due

12   process and say, "You're not going fast enough. We want

13   allegations to go directly to the Attorney General. We

14   don't want due process from the Ohio Elections

15   Commission.

16           It's taking too long. We want a politician

17   with clear conflicts of interest to be able to

18   investigate and prosecute immediately."

19           That's what the bill proposes, and the public

20   deserves to know why legislators are caving to

21   extremism by jamming this through in a special session.

22   Ohioans know a citizen-led ballot initiative to reform

1    the redistricting process is likely coming our way in

2    November, and they know that people in power are shaken

3    to their core.

4            Because when citizens, not politicians, draw

5    new maps, it will begin to dismantle an unaccountable,

6    unrepresentative, gerrymandered supermajority. This

7    bill is an attack at the root of our democratic

8    process.

9            It is perfectly okay for us to disagree, even

10   vehemently, on the issues we are sent here to work on,

11   taxes, education, health care, housing, child care.

12   Governing is difficult and complex, and we have plenty

13   of legitimate disagreements about the right path

14   forward to have.

15           But we cannot afford to disagree when it comes

16   to our fundamental democratic principles. That is where

17   we have to stand firm as Ohioans and as Americans. This

18   bill is an affront to the people of Ohio.

19           It attacks their right to organize, to

20   advocate for causes they believe in, and to engage in

21   the deeply American activity of coming together to

22   fight for a better future. Most of us did not come here

1    to deprive them of those rights. And we shouldn't be

2    doing the bidding of the few people in power who did.

3           My amendment would prevent this outrageous

4    power grab and maintain existing law to keep

5    enforcement authority with an independent prosecutor.

6    It is simple, it is the right thing to do, and it's

7    what Ohioans deserve. I urge you to support it.

8           REP. STEPHENS:  The question is shall the

9    motion to amend be agreed to? The Chair recognizes

10   Representative Seitz.

11          REP. SEITZ:  Thank you once again, Mr.

12   Speaker. I rise briefly to respond. First of all, the

13   Ohio Elections Commission does not consist solely of

14   lawyers. This is, as my friend noted, a complex matter.

15   He spun out a few hypotheticals. It does not lend

16   itself to being adjudicated by folks that do not have

17   legal training.

18          Second of all, the Attorney General's power

19   that we are giving him under this bill is strictly

20   limited to cases where there are violations of the

21   foreign money section.

22          It is not a plenary grant of authority to the

1    Attorney General to do whatever he wants with respect

2    to any other form of campaign violation. Those have

3    historically been dealt with by the OEC, and they will

4    continue to be dealt with by the OEC.

5         But this unique area where you're trying to

6    trace money back through a labyrinthine chain requires

7    the sort of investigatory tools that the Attorney

8    General has and the county prosecutors do not have.

9         The county prosecutors are fine people, but

10   they have limited bandwidth for international

11   investigations, and it would be a joke to say that

12   they, too, do not have political ambitions and

13   aspirations of their own.

14        We have gone through this at the federal

15   level. They had—I mentioned Mueller before, all right?

16   So you want to turn it over to an independent

17   prosecutor. Independent like Jack Smith, independent

18   like Mueller. Yeah, fine. We all know that they're not

19   independent.

20        We all know that they're on an orchestrated

21   witch hunt to prevent the Republican candidate for

22   President from being able to run. The fact of the

1    matter is, Lawrence Tribe, who's one of the most

2    liberal professors there is from Harvard University,

3    wrote this back in 2021.

4            "Regulating political spending by corporations

5    with significant foreign ownership is consistent with

6    the Constitution and Supreme Court precedent. Indeed,

7    concern about potential foreign influence over our

8    democratic politics is written into the Constitution

9    itself. And while the Supreme Court has held that the

10   First Amendment prohibits limits on independent

11   expenditures in general, it has made an important

12   exception for spending by foreign nationals.

13           Federal law already prohibits foreign

14   nationals, a category defined by federal law to include

15   foreign governments, corporations incorporated or with

16   their principal place of business in foreign countries,

17   and individuals who are not U.S. citizens or lawful

18   permanent residents, from spending money on state,

19   federal, or local elections."

20           And that has been upheld as to state, federal,

21   state, and local candidate elections in the Blumen

22   case, which no doubt we will be discussing perhaps

1    later in this debate. So, I do not see any reason to

2    vest the complex authority that we need to give the AG

3    in the OEC, which has been slow, lacks the

4    investigative tools to do the job, and frankly, lacks

5    the budget to do the job because they are pretty well

6    hanging on by a thread over there.

7          And this would be a significant additional

8    undertaking if, in fact, there is foreign money

9    affecting our elections at any level. So, with that, I

10   would urge that the amendment be tabled.

11         REP. STEPHENS:  The question is shall the

12   motion to amend be agreed to? The Chair recognizes

13   Representative Oleslager.

14         REP. OLESLAGER:  Mr. Speaker, I move to lay

15   the amendment on the table.

16         REP. STEPHENS:  The House will prepare -- the

17   question is shall the motion to amend be laid upon the

18   table? The House will prepare and proceed to vote. All

19   members now voted. The Clerk will read the roll.

20         CLERK:  Sixty-four affirmative votes and 31

21   negative.

22         REP. STEPHENS:  With 64 affirmative votes and

1    31 negative votes, the motion is laid upon the table.

2    The question is Shall the bill pass? The Chair

3    recognizes Representative Stewart.

4           REP. STEWART:  Thank you, Mr. Speaker. I move

5    to amend with Amendment Number 2262.

6           REP. STEPHENS:  The amendment is in order, and

7    the gentleman may proceed.

8           REP. STEWART:  Thank you, Mr. Speaker. This

9    amendment would define foreign national under Ohio law

10   to include lawful permanent U.S. residents, also

11   referred to as green card holders, and prohibit green

12   card holders from making contributions or expenditures

13   under the bill.

14          It's important to remember that in 2022, 77

15   percent of Ohioans went to the ballot and approved a

16   constitutional amendment to say that noncitizens,

17   including green card holders, cannot vote in Ohio

18   elections.

19          Unfortunately, the bill that we have before us

20   today says that these same noncitizen green card

21   holders who cannot vote in our elections are for some

22   reason still nevertheless allowed to spend millions of

1    dollars potentially to influence those same elections

2    that they are barred from voting in.

3          This makes no sense as a matter of public

4    policy. If we are trying to ban foreign influence and

5    foreign money in our elections, then let's actually do

6    it. House Bill 1, as it's currently drafted, contains a

7    glaring loophole, and we should close it.

8          And that's what this amendment would do.

9    Without this amendment, folks, the Biden administration

10   can fast track a green card for their favorite

11   preferred foreign billionaire of the day from

12   Switzerland or elsewhere before the ink is even dry on

13   House Bill 1.

14         We are well within our legal rights to do this

15   under federal law. In the case of Blumen v. FEC, future

16   Supreme Court Justice Brett Kavanaugh wrote for the

17   court and summarized a lot of longstanding case law

18   regarding the ability to regulate foreign national

19   participation in our elections. And in that case, he

20   wrote in those many decisions, the Supreme Court of the

21   United States has drawn a fairly clear line.

22         The Governor may exclude foreign citizens from

1    activities intimately related to the process of

2    democratic self-government. As the court has written, a

3    state's historical power to exclude aliens from

4    participation in its democratic political institutions

5    is part of the sovereign's obligation to preserve the

6    basic conception of a political community. In other

7    words, the government may reserve participation in its

8    democratic political institutions to citizens of the

9    country.

10           We read these cases and set forth a

11   straightforward principle. It is fundamental to the

12   definition of our national security that foreign

13   citizens do not have a constitutional right to

14   participate in, and thus may be excluded from,

15   activities of democratic self-government.

16           It follows, therefore, that the United States

17   has a compelling interest for purposes of First

18   Amendment analysis in limiting the participation of

19   foreign citizens in activities of American democratic

20   self-government and in thereby preventing foreign

21   influence over the U.S. political process.

22           Now, we may have some more discussion about

1    the law, but respectfully, if someone reads that

2    language to say that we somehow cannot bar non-citizen

3    green card holders from participating in our elections,

4    we're going to respectfully but very, very strongly

5    disagree. Ohio is well within our rights to exclude

6    green card holders from spending money on ballot

7    issues.

8            This exact language has been in every version

9    of the foreign money ban that has come back from the

10   Senate to this point. This amendment enhances the bill,

11   it enhances its chances for final passage, and if I had

12   any belief whatsoever that including this amendment

13   would jeopardize the enforceability of the overall

14   bill, I would not offer it.

15           For those that plan to vote on this bill

16   today, you can't go home and tell your constituents

17   that you banned foreign money when you left over

18   100,000 foreign nationals legally able to contribute

19   money in Ohio elections.

20           Without this amendment, House Bill 1 has a

21   great big asterisk on it. It's not a foreign money ban.

22   It's a Diet Coke foreign money ban. It's a neutered,

1    watered down foreign money ban.

2          I believe based on conversations that most

3    members of the Republican caucus support this policy,

4    it's consistent with what Ohio voters did just two

5    years ago. I would ask for a yes vote on this amendment

6    and anticipating if we do get a motion to lay the

7    amendment upon the table, I would ask that you vote no

8    on tabling. Thank you.

9          REP. STEPHENS:  The question is shall a motion

10   to amend be agreed to? The Chair recognizes

11   Representative Seitz.

12         REP. SEITZ:  Thank you, Mr. Speaker. I

13   appreciate the passion with which my colleague has

14   argued to deviate from long-standing federal law and

15   Ohio law in its definition of a foreign national based

16   on a selective reading of the Blumen case and Judge

17   Kavanaugh's opinion. That case went up to the Supreme

18   Court and was affirmed without opinion. Courts often

19   speak very pointedly through their footnotes in

20   opinions.

21         And at the very end of that opinion, which

22   admittedly said we could regulate contributions by

1    foreign nationals as defined in federal law. And that

2    definition excludes from the definition of foreign

3    nationals, lawful permanent residents of the United

4    States, also known as green card holders.

5           So the court said, yes, you can restrict

6    foreign nationals from participating in the process.

7    But lawful permanent residents are not defined under

8    federal law or Ohio law as foreign nationals.

9           And so here is what Judge, now Justice

10   Kavanaugh said at the very end of this Blumen case.

11   There are important limits to our holding in this case.

12          We do not here decide whether Congress could

13   constitutionally extend the current statutory ban to

14   lawful permanent residents who have a more significant

15   attachment to the United States than the temporary

16   resident plaintiffs in this case.

17          Any such extension would raise substantial

18   questions not raised by this case. Now, why would they

19   have said that if they meant to say that jurisdictions,

20   states and federal government could bar lawful

21   permanent residents from any form of political

22   participation? Why would they say it was a substantial

1    question?

2            They are trying to tell us something by saying

3    that. That's what they're trying to do. Now, I heard

4    about, you know, maybe Biden could give his best

5    millionaire friends a bunch of green cards tomorrow if

6    we -- if we don't ban green card holders from

7    participating.

8            The process of getting a green card is not

9    susceptible to getting one overnight. We have collected

10   the relevant statutory and regulatory references to

11   that process. And depending on where you go to apply

12   for your green card, it could take anywhere from 12 to

13   24 months to get one.

14           I am concerned that we act today to ban

15   foreign money as conventionally defined with foreign

16   nationals and that if we do go beyond that, as this

17   amendment would have us do, we are inviting the undoing

18   of all of the otherwise good work that we are doing.

19           We can always come back in lame duck or a

20   subsequent session and revisit this question. But in my

21   experience, and I've had a lot of experience, and I

22   guess people don't think experience matters very much

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                    27

1    anymore, but that's okay.

2            But in my experience, the General Assembly,

3    whenever they try to push the envelope too hard and try

4    to go swing for the fences, go for broke, hit the home

5    run, whenever that happens, it generally blows up in

6    our faces. Now, if the amendment passes, the amendment

7    passes.

8            I think it would be a mistake to pass the

9    amendment today. I personally would not have a problem

10   banning green card holders from contributions on the

11   rationale advanced by my friend. But it is not Judge

12   Seitz who makes that decision.

13           It will ultimately be the judges of the

14   federal district, circuit and Supreme Courts of this

15   country. And many of them here in Ohio inclined towards

16   the liberal side of the spectrum.

17           So if we want to get something done and have

18   it be effective in time for the upcoming election,

19   prudentially, we should leave the definition of foreign

20   national alone. And therefore, I would urge that we

21   table the amendment for the reasons stated.

22           REP. STEPHENS:  The question is shall the

1    motion to amend be agreed to? The Chair recognizes

2    Representative Oelslager for a motion.

3          REP. OELSLAGER:  Mr. Speaker, I move to lay

4    the amendment on the table.

5          REP. STEPHENS:  The question is shall the

6    motion to amend be or the motion be laid upon the

7    table? The House prepare and proceed to vote. All

8    members now voted. Clerk will read the roll.

9          CLERK:  Twelve affirmative votes, 82 negative

10   votes. Therefore, the motion to amend was not laid upon

11   the table.

12         REP. STEPHENS:  By motion with 12 affirmative

13   votes and 82 negative votes, the motion to lay the

14   amendment on the table did not pass. So the question is

15   shall the motion to amend be agreed to? The House will

16   prepare and proceed to vote.

17         CLERK:  I'm sorry.

18         REP. STEPHENS:  It's canceled. What?

19         CLERK:  This is on the amendment, not on the

20   table. The board is reading it correct.

21         REP. STEPHENS:  All right. So the motion on

22   the floor is shall the motion to amend be agreed to?

1          CLERK:  Yeah.

2          REP. STEPHENS:  You're going to cancel this

3    one? All right. We'll do a do-over. All right. Have to

4    change the title. Okay. All right. The question is

5    shall the motion to amend be agreed to? The House will

6    prepare and proceed to vote.

7          CLERK:  Sorry about that.

8          REP. STEPHENS:  All members now voted? The

9    Clerk will read the roll.

10         CLERK:  59 affirmative votes, 36 negative

11   votes.

12         REP. STEPHENS:  With 59 affirmative votes and

13   36 negative votes, the motion to amend is agreed to and

14   becomes part of the bill.

15         CLERK:  The question is shall the bill as

16   amended pass?

17         REP. STEPHENS:  The question is shall the bill

18   as amended pass? The Chair recognizes Representative

19   Sweeney.

20         MS. SWEENEY:  This legislature has been deemed

21   the least productive legislature since the creation of

22   state government in Ohio. I find it unbearably ironic

1    how we find ourselves here today.

2            We find ourselves here in a special election,

3    forced to pass a bill under the guise of banning

4    foreign money because our Governor and members of the

5    majority party in the legislature all of a sudden care

6    about money in our elections.

7            We heard in committee just yesterday from

8    citizens who came from all across the state on a

9    moment's notice, because of course, we had a rush

10   process. And they said loud and clear, we do not trust

11   you.

12           We do not trust you to protect our democracy

13   and they have every reason to be skeptical. Do we

14   really have to ask why they are skeptical? Let's take a

15   walk down memory lane.

16           In my relatively short time in the House, I

17   have watched the majority party bend the rules, subvert

18   the constitution, move the goalpost, so that an

19   unrepresentative, an unaccountable majority can stay in

20   power.

21           Ohioans have watched as this body has refused

22   to adhere to our state's highest court that demanded us

1  to put maps for the people and not politicians. They've

2  bared witness to this body stripping the power of the

3  entire state school board because they started losing

4  elections.

5          A body that removed the ability for them and

6  their local governments to have special elections and

7  then turn around and resurrect special elections for

8  ourselves with their taxpayer money to the tune of $20

9  million of their hard-earned money for a failed power

10  grab in August.

11          It seems as though the only time we act is to

12  change the rules of the game to benefit power-hungry

13  politicians that are up against the will of the voters.

14  So how can a legislative body that loves to call itself

15  the people's house, work so defiantly against the

16  people?

17          The answer is political corruption through its

18  unlimited access to dark money. We all know Ohio has

19  been considered the most corrupt state house in the

20  nation.

21          For those seeking to bribe politicians,

22  influence the outcome of our elections, to enact pay to

1   play legislation, our campaign finance laws in Ohio

2   declare open season, they are screaming Ohio is open to

3   the highest bidder.

4          We all know the real threat to democracy and

5   it is this legislative's body unfettered connection

6   with dark money. We have watched as the FBI has

7   revealed how a bill can really become a law in the

8   state house.

9          They walked us through the step by step

10  process of buying legislations and politicians alike.

11  Ohioans have watched as dark money has rained on their

12  elections to help buy a now imprisoned speaker his

13  gavel.

14         And this bill does nothing to address that.

15  And as many people in this room know all too well,

16  we've seen the same tactics in these past primaries.

17  Millions of dollars being spent with no plausible idea

18  of where it's coming from, what their goal is, what it

19  is that they want, nobody gives anything for free.

20         We know that dark money illegally buys

21  elections, it's been proven in a court of law. We know

22  that it is untraceable without FBI intervention. We

1    know that it is rampant and ongoing in Ohio. How is it

2    that we are not rushing to fix this problem?

3            How is it the Governor has not called a

4    special election to fix this problem? I have sponsored

5    the Ohio Anti-Corruption Act for the past six years.

6    Unlike the proposal we have before us today, that bill

7    actually gets at what we're pretending to care about in

8    this proposal.

9            This act would actually go deeper to expose

10   secret money in our elections and go after bad actors,

11   foreign or domestic, who want to commit crimes in our

12   state. The philosophy is simple.

13           If you're going to spend money influencing

14   Ohioans, Ohioans deserve to know who you are and what

15   you're about. I find it absurd that we would only cover

16   one portion of this and not expose it across the board.

17           The sponsor is agreeing that this is still

18   going to be difficult to find. We're going to have to

19   rely on a tip, someone knowing about this, compared to

20   allowing everyone to say who is spending money in their

21   elections.

22           Our current laws protect bad actors and we're

```
1    not actually getting at it. The current people in power

2    didn't do a single thing to stop the House Bill 6

3    scandal. Now we're going to give them more power and

4    hope that they actually go after people who should be

5    spending money in our elections?

6            Lastly, and I cannot say this more clearly,

7    the bill that's the Ohio Anti-Corruption Act, that I

8    think every single Democrat has been a sponsor on, has

9    been around for decades, has an entire section

10   dedicated to banning foreign money in ballot

11   initiatives. The exact thing we're here to do. It does

12   so simply and effectively-

13           REP. STEPHENS:  I'd like to ask the

14   Representative to keep the remarks to this particular

15   bill, please.

16           MS. SWEENEY:  Yes, that's what I'm talking

17   about. That this bill is talking about banning foreign

18   money in our elections. We can do that, and I have a

19   bill that would do that, but we're removing three lines

20   in code. The code section that says foreign nationals

21   cannot contribute to political campaigns. We remove the

22   caveat and then it implies to everyone.
```

1          Or, if you don't like that way of doing it,

2     there is an amendment in committee that said, let's add

3     on to that and say foreign nationals cannot spend money

4     in their elections for political contributions and in

5     ballot initiatives.

6          That is something that Democrats support. That

7     is something that we want and have been asking for

8     decades. That provision has never received more than

9     the first obligatory hearing.

10          I went back and looked. It is never, I have

11     had no one ever ask a question or support of actually

12     banning foreign money in elections. Why do we think

13     then that now all of a sudden we care?

14          I know that the Ohioans that came to testify

15     said it's because they started winning at the ballot

16     box. I ask you to vote no and work in good faith to

17     actually address a real problem that Democrats have

18     been fighting for for decades.

19          REP. STEPHENS:  The question is shall the bill

20     as amended pass? The Chair recognizes Representative

21     Russo.

22          MS. RUSSO:  Thank you, Mr. Speaker. I will now

1   make my motion to adjourn [inaudible]. Pursuant to rule

2   82 and 83, that motion takes precedent.

3          REP. STEPHENS:  The question is shall the

4   House stand adjourned? The House will prepare and

5   proceed to vote. Have all members now voted? All

6   members now voted. The Clerk will read the roll,

7   please.

8          CLERK:  Thirty-one affirmative votes, 62

9   negative votes.

10         REP. STEPHENS:  With 31 affirmative votes and

11  62 negative votes, the House will -- the special --

12         CLERK:  The motion is not agreed to.

13         REP. STEPHENS:  The motion is not agreed to.

14  The question is shall the bill pass as amended. The

15  chair recognizes Representative Russo.

16         MS. RUSSO:  Thank you, Mr. Speaker. I wouldn't

17  be doing my job if I didn't give that a try. So what

18  has transpired over the last week of this special

19  session is anything but special.

20         What this body has done to get us here today

21  with House Bill 1 has been littered with manipulation

22  and lies that some have been telling to the public.

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                              37

1          So I am going to directly address the voters

2     who I know many are tuning in today to see what

3     happens, because here's the reality of what's going on.

4     This body and the Chamber across the state house has

5     created a fear factor around so-called foreign money.

6     Money that is already illegal in federal law and

7     applies to state campaigns.

8          It is a fantasy that has been concocted as a

9     Trojan horse to once again attack the people's

10    fundamental freedom to direct democracy and that

11    freedom to change government when that government is no

12    longer accountable, which has been the case in Ohio

13    State government for at least two decades.

14         They are scared and they are desperate. And to

15    the people who are watching, I want to say that many

16    folks in this Chamber, they know what your power is,

17    your actual power. And they know that they are losing

18    because of it.

19         The truth that people need to hear is that

20    House Bill 1 is an attack on citizen-led ballot

21    initiatives. The truth is that you, the people, have

22    defeated various attempts by this body and the body

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                        38

1    across the state house to limit your personal freedoms.

2            And the truth is they are trying to do that

3    again and changing the rules because they know what is

4    ahead in November. And to the many people and my

5    colleagues who are here in this room, I say to you, the

6    people are greater, they are braver, and they are

7    stronger, and they are certainly much smarter than you

8    give them a credit for.

9            And despite this preemptive attack against the

10   upcoming citizen-led ballot initiative that will give

11   the people, not the politicians, the power to choose

12   their own government, the people will not be fooled.

13           And come November, they will begin to

14   dismantle your grip on power. Your power grab today

15   will not be forgotten in November, just as it was not

16   forgotten in August when you were defeated, just as it

17   was not forgotten in November, last November, when you

18   were defeated. The people spoke loud and clear last

19   year that the values of many of you in this room and

20   the policies that you pass do not reflect their values.

21           And they will do it again in November in spite

22   of this latest effort, and you will lose again. Mr.

1    Speaker, I urge a no vote on this bill.

2              REP. STEPHENS:  The question is shall the bill

3    as amended pass? The Chair recognizes Representative

4    Peterson.

5              REP. PETERSON:  Thank you, Mr. Speaker. And I

6    also want to thank the Governor's Committee that spent

7    the last three days hearing extensive testimony,

8    working through an issue.

9              I certainly want to thank the sponsor who's

10   done extensive work on this issue going back several

11   weeks even. I also want to point out Riley Eberhardt,

12   my staffer who probably had 40 hours of work in by

13   Wednesday afternoon.

14             And all the clerk staff and caucus staff that

15   while this was probably a lighter weekend, we could

16   catch up to celebrate Memorial Holiday in honor of the

17   veterans, and honor those people who lost their life,

18   it became much more than that, and I appreciate the

19   work that all of us have done to get to this point.

20             You know we have been working on this bill in

21   government oversight, some version of this bill for

22   several weeks now because it's an important issue.

1          No foreign entity, whether it's Vladimir

2   Putin, whether it's a government, whether it's a

3   billionaire, whether it's anybody trying to influence

4   our elections, we should not allow that.

5          Just as we don't allow it in any of our

6   campaigns to take dollars in, we shouldn't allow them

7   to affect any of our elections. When they do that, they

8   take away, they dilute your vote. And I think we should

9   have stopped it years ago. We do have rules in place,

10  but I echo the comments of the sponsor of the bill.

11         Early in my career, I filed an election

12  complaint with the Ohio Elections Commission. They did

13  a great job. They resolved the issue, they addressed

14  the issue, and said that the candidate I was running

15  against lied about me.

16         Unfortunately, that ruling didn't come until

17  six months after the election, after I'd already been

18  seated in office and had served for five and a half

19  months.

20         That's the challenge, and that's why we need

21  this bill and this version of the bill, so that the

22  elections don't get distorted and we don't recognize

1    that it happened six months or a year or two years,

2    four years after the election.

3            This is important. It's been well vetted. The

4    committee's done work on it, not just this week, but in

5    previous weeks. I urge a yes vote. Ohioans should

6    determine Ohio elections. Please vote yes.

7            REP. STEPHENS:  The question is shall the bill

8    as amended pass? The House will prepare and proceed to

9    vote. All members now voted, the Clerk will read the

10   roll.

11           CLERK:  Sixty-four affirmative votes, 31

12   negative votes.

13           REP. STEPHENS:  With 64 affirmative votes and

14   31 negative votes, having received the required

15   constitutional majority, the bill is hereby passed and

16   entitled.

17           CLERK:  An act to enact the revised code to

18   modify the campaign finance law regarding foreign

19   nationals and ballot issues.

20           REP. STEPHENS:  The question is shall the

21   title be agreed to? Representative Seitz moves to amend

22   the title.

```
1                 If you wish to add your name to the title,

2    please do so at this time. Without objection, the title

3    is agreed to. Hearing no objection, the title is agreed

4    to.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22
```

```
1                    CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 42 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15  _____

16        June 6, 2024

17        Chris Naaden

18

19  (540606, Ohio House of Representatives - 5-30-2024 -

20  Special Session)

21

22
```

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

44

| A |
|---|

**abet**
5:13
**ability**
13:10, 21:18,
31:5, 43:3
**able**
5:21, 9:1,
9:20, 14:17,
17:22, 23:18
**about**
6:4, 8:2, 8:3,
10:19, 13:22,
15:13, 18:7,
22:22, 26:4,
29:7, 30:6,
33:7, 33:15,
33:19, 34:17,
40:15
**above**
11:10, 43:8
**absurd**
33:15
**acceptance**
5:11
**accepting**
5:1
**access**
31:18
**accountable**
37:12
**across**
30:8, 33:16,
37:4, 38:1
**act**
11:4, 26:14,
31:11, 33:5,
33:9, 34:7,
41:17
**action**
43:13
**activities**
5:9, 12:16,
22:1, 22:15,
22:19
**activity**
12:9, 15:21

**actors**
33:10, 33:22
**actual**
6:22, 37:17
**actually**
10:9, 12:7,
21:5, 33:7,
33:9, 34:1,
34:4, 35:11,
35:17
**add**
35:2, 42:1
**additional**
19:7
**address**
11:11, 32:14,
35:17, 37:1
**addressed**
40:13
**adhere**
30:22
**adjourn**
36:1
**adjourned**
36:4
**adjudicated**
16:16
**administration**
21:9
**admittedly**
24:22
**advanced**
27:11
**advocate**
15:20
**affect**
40:7
**affected**
11:13
**affecting**
19:9
**affirmative**
19:20, 19:22,
28:9, 28:12,
29:10, 29:12,
36:8, 36:10,
41:11, 41:13
**affirmed**
24:18

**afford**
15:15
**affront**
15:18
**after**
5:20, 7:10,
8:20, 33:10,
34:4, 40:17,
41:2
**afternoon**
39:13
**ag**
19:2
**again**
12:14, 13:3,
16:11, 37:9,
38:3, 38:21,
38:22
**against**
13:8, 31:13,
31:15, 38:9,
40:15
**ago**
7:3, 7:4, 24:5,
40:9
**agreed**
16:9, 19:12,
24:10, 28:1,
28:15, 28:22,
29:5, 29:13,
36:12, 36:13,
41:21, 42:3
**agreeing**
33:17
**ahead**
38:4
**aid**
5:13
**aim**
14:11
**aliens**
22:3
**alike**
32:10
**all**
2:22, 7:14,
7:22, 10:18,
13:19, 16:12,

16:18, 17:15,
17:18, 17:20,
19:18, 26:18,
28:7, 28:21,
29:3, 29:4,
29:8, 30:5,
30:8, 31:18,
32:4, 32:15,
35:13, 36:5,
39:14, 39:19,
41:9
**allegations**
10:12, 14:13
**allege**
13:11
**alleged**
13:13
**allow**
40:4, 40:5,
40:6
**allowed**
9:8, 20:22
**allowing**
33:20
**alluded**
11:13
**alone**
27:20
**already**
7:11, 8:14,
10:17, 12:2,
12:14, 13:14,
18:13, 37:6,
40:17
**also**
4:16, 5:12,
11:11, 20:10,
25:4, 39:6,
39:11
**always**
26:19
**ambitions**
17:12
**amend**
10:4, 16:9,
19:12, 19:17,
20:5, 24:10,
28:1, 28:6,

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

45

28:10, 28:15,
28:22, 29:5,
29:13, 41:21
**amended**
3:18, 29:16,
29:18, 35:20,
36:14, 39:3,
41:8
**amendment**
10:4, 10:5,
10:11, 16:3,
18:10, 19:10,
19:15, 20:5,
20:6, 20:9,
20:16, 21:8,
21:9, 22:18,
23:10, 23:12,
23:20, 24:5,
24:7, 26:17,
27:6, 27:9,
27:21, 28:4,
28:14, 28:19,
35:2
**american**
9:5, 15:21,
22:19
**americans**
8:12, 9:10,
15:17
**amount**
5:15
**analysis**
22:18
**another**
10:15, 13:6,
13:18
**answer**
31:17
**anti-corruption**
33:5, 34:7
**anticipating**
24:6
**any**
4:10, 5:1,
5:19, 6:8, 6:21,
13:11, 17:2,
19:1, 19:9,
23:12, 25:17,

25:21, 40:5,
40:7, 43:6
**anybody**
5:17, 40:3
**anymore**
27:1
**anything**
32:19, 36:19
**anywhere**
26:12
**appear**
4:18
**applies**
4:16, 37:7
**apply**
5:6, 8:18,
26:11
**appointed**
7:19
**appreciate**
9:17, 9:18,
24:13, 39:18
**approval**
4:4
**approved**
20:15
**arduous**
4:1
**area**
17:5
**argued**
24:14
**around**
8:8, 12:9,
31:7, 34:9, 37:5
**aside**
11:6
**asking**
35:7
**aspect**
5:9
**aspirations**
17:13
**assembly**
27:2
**assembly's**
5:8
**association**
13:17, 13:20

**association's**
5:9
**associations**
4:20, 5:5
**asterisk**
23:21
**attachment**
25:15
**attack**
15:7, 37:9,
37:20, 38:9
**attacks**
15:19
**attempt**
4:2, 10:15
**attempts**
37:22
**attendant**
13:20
**attorney**
5:18, 6:11,
6:12, 6:17, 7:8,
12:10, 13:2,
13:14, 14:13,
16:18, 17:1,
17:7
**audio**
43:4
**august**
11:15, 31:10,
38:16
**authority**
5:19, 6:12,
7:9, 7:10, 7:11,
10:11, 12:22,
16:5, 16:22,
19:2
**avoid**
6:8
**away**
11:2, 40:8

**B**
**back**
2:7, 2:12,
17:6, 18:3,
23:9, 26:19,
35:10, 39:10

**bad**
33:10, 33:22
**ballot**
2:19, 3:14,
4:13, 4:17,
4:19, 8:11,
8:17, 9:1, 9:4,
9:8, 10:20,
11:14, 13:6,
13:14, 14:22,
20:15, 23:6,
34:10, 35:5,
35:15, 37:20,
38:10, 41:19
**ban**
4:16, 21:4,
23:9, 23:21,
23:22, 24:1,
25:13, 26:6,
26:14
**bandwidth**
17:10
**banned**
23:17
**banning**
4:9, 4:13,
27:10, 30:3,
34:10, 34:17,
35:12
**bans**
5:2
**bar**
23:2, 25:20
**bared**
31:2
**barred**
21:2
**based**
24:2, 24:15
**basic**
22:6
**basis**
10:21
**became**
39:18
**because**
6:12, 11:16,
11:18, 11:21,

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

46

15:4, 19:5,
30:4, 30:9,
31:3, 35:15,
37:3, 37:18,
38:3, 39:22
**become**
32:7
**becomes**
29:14
**been**
3:6, 4:1, 4:4,
4:18, 5:21,
12:21, 17:3,
18:20, 19:3,
23:8, 29:20,
31:19, 32:21,
34:8, 34:9,
35:7, 35:18,
36:21, 36:22,
37:8, 37:12,
39:20, 40:17,
41:3
**before**
17:15, 20:19,
21:12, 33:6
**begin**
15:5, 38:13
**behavior**
11:10
**being**
3:3, 5:7,
10:19, 16:16,
17:22, 32:17
**belief**
23:12
**believe**
8:10, 12:16,
15:20, 24:2
**bend**
30:17
**benefit**
31:12
**best**
26:4, 43:3
**better**
11:8, 15:22
**between**
6:7

**beyond**
12:20, 26:16
**bidder**
32:3
**bidding**
16:2
**biden**
21:9, 26:4
**big**
23:21
**bigger**
6:13
**bill**
2:6, 2:8, 2:11,
2:16, 3:8, 3:9,
3:11, 3:15,
3:18, 4:3, 4:6,
4:16, 4:20,
5:10, 6:1, 6:3,
6:4, 6:10, 8:17,
8:19, 9:17,
10:1, 10:4,
10:15, 12:7,
12:11, 12:20,
13:8, 13:9,
14:6, 14:8,
14:11, 14:19,
15:7, 15:18,
16:19, 20:2,
20:13, 20:19,
21:6, 21:13,
23:10, 23:14,
23:15, 23:20,
29:14, 29:15,
29:17, 30:3,
32:7, 32:14,
33:6, 34:2,
34:7, 34:15,
34:17, 34:19,
35:19, 36:14,
36:21, 37:20,
39:1, 39:2,
39:20, 39:21,
40:10, 40:21,
41:7, 41:15
**billionaire**
21:11, 40:3
**bills**
2:3, 2:14

**bipartisan**
10:13, 14:8
**birthday**
14:1
**blows**
27:5
**blumen**
18:21, 21:15,
24:16, 25:10
**board**
13:17, 28:20,
31:3, 33:16
**body**
30:21, 31:2,
31:5, 31:14,
32:5, 36:20,
37:4, 37:22
**both**
4:4, 10:9, 11:8
**box**
35:16
**braver**
38:6
**brett**
21:16
**bribe**
31:21
**briefly**
12:13, 16:12
**broad**
13:10
**broke**
27:4
**brush**
8:21
**budget**
19:5
**bunch**
26:5
**business**
18:16
**busy**
8:6
**buy**
14:2, 32:12
**buying**
32:10
**buys**
32:20

**C**
**call**
3:21, 31:14
**called**
33:3
**came**
6:1, 30:8,
35:14
**campaign**
2:18, 3:13,
4:21, 9:3, 9:9,
14:4, 17:2,
32:1, 41:18
**campaigns**
4:17, 4:21,
4:22, 12:2,
12:19, 34:21,
37:7, 40:6
**can't**
23:16
**cancel**
29:2
**canceled**
28:18
**candidate**
17:21, 18:21,
40:14
**candidates**
4:13, 8:15
**cannabis**
11:18
**cannot**
15:15, 20:17,
20:21, 23:2,
34:6, 34:21,
35:3
**caption**
43:10
**card**
20:11, 20:12,
20:17, 20:20,
21:10, 23:3,
23:6, 25:4,
26:6, 26:8,
26:12, 27:10
**cards**
26:5

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

47

care
15:11, 30:5, 33:7, 35:13
career
40:11
case
5:5, 7:2, 7:6, 18:22, 21:15, 21:17, 21:19, 24:16, 24:17, 25:10, 25:11, 25:16, 25:18, 37:12, 43:6
cases
6:13, 16:20, 22:10
catch
39:16
category
18:14
caucus
24:3, 39:14
causes
15:20
caveat
34:22
caving
14:20
celebrate
39:16
certainly
38:7, 39:9
certificate
43:1
certified
4:18
chain
17:6
chair
3:16, 10:2, 16:9, 19:12, 20:2, 24:10, 28:1, 29:18, 35:20, 36:15, 39:3
chairman
9:18
challenge
40:20

chamber
9:22, 11:10, 37:4, 37:16
chambers
4:4
chance
12:12
chances
23:11
change
8:20, 29:4, 31:12, 37:11
changing
38:3
child
15:11
children
8:7
chinese
8:5
choose
38:11
chris
43:2, 43:17
christian
1:22
circuit
27:14
circumstances
6:16
citizen-led
14:22, 37:20, 38:10
citizens
9:14, 15:4, 18:17, 21:22, 22:8, 22:13, 22:19, 30:8
civility
11:5
claims
11:13
clarifies
4:16
clarify
12:4
cle
4:8

clean
12:6
clear
6:8, 14:17, 21:21, 30:10, 38:18
clearly
34:6
clerk
2:4, 2:16, 2:21, 3:4, 3:9, 3:11, 19:19, 19:20, 28:8, 28:9, 28:17, 28:19, 29:1, 29:7, 29:9, 29:10, 29:15, 36:6, 36:8, 36:12, 39:14, 41:9, 41:11, 41:17
close
21:7
code
2:17, 3:12, 5:21, 12:22, 34:20, 41:17
codify
12:21
coke
23:22
collaboratively
9:19
colleague
24:13
colleagues
38:5
collected
26:9
college
13:22
come
2:21, 3:1, 9:3, 15:22, 23:9, 26:19, 38:13, 40:16
comes
8:11, 15:15

coming
15:1, 15:21, 32:18
comments
40:10
commission
6:19, 7:7, 7:21, 10:14, 12:15, 14:6, 14:9, 14:15, 16:13, 40:12
commit
33:11
committee
2:5, 2:10, 9:4, 9:17, 30:7, 35:2, 39:6
committee's
41:4
committees
2:3, 13:20
communication
4:15
community
22:6
company's
13:20
compared
33:19
compelling
22:17
compensation
7:12
complaint
40:12
completely
6:21
complex
4:2, 6:10, 6:13, 15:12, 16:14, 19:2
conception
22:6
concern
18:7
concerned
8:2, 8:3, 10:19, 26:14

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

48

concise
6:8
conclusion
3:20
concocted
37:8
conflicts
14:17
confusing
13:9
confusion
12:9, 14:5
congress
25:12
connection
32:5
consideration
2:3, 2:7, 2:12,
2:15
considered
31:19
consist
16:13
consistent
18:5, 24:4
constituents
23:16
constitution
5:7, 18:6,
18:8, 30:18
constitutional
3:2, 20:16,
22:13, 41:15
constitutionally
25:13
construct
7:15
contain
43:8
contains
21:6
continue
9:1, 9:3, 17:4
continuing
4:20, 5:5, 5:9
contribute
23:18, 34:21
contribution
13:16

contributions
4:11, 12:2,
12:14, 13:19,
20:12, 24:22,
27:10, 35:4
convened
10:21
conventionally
26:15
conversations
24:2
core
15:3
corporation
13:18
corporations
18:4, 18:15
correct
28:20, 43:8
corrupt
31:19
corruption
31:17
could
24:22, 25:12,
25:20, 26:4,
26:12, 39:15
counsel
43:5
countries
8:8, 9:14,
18:16
country
22:9, 27:15
county
17:8, 17:9
course
30:9
court
13:5, 18:6,
18:9, 21:16,
21:17, 21:20,
22:2, 24:18,
25:5, 30:22,
32:21
courts
24:18, 27:14
cover
33:15

create
12:8
created
37:5
creates
13:9
creation
29:21
credit
38:8
crime
5:12, 5:13
crimes
33:11
criminalizes
5:10
culture
12:8
current
25:13, 33:22,
34:1
currently
12:15, 21:6

**D**

damages
5:14
dangerous
8:5
dark
31:18, 32:6,
32:11, 32:20
day
21:11
days
39:7
deal
3:21
dealt
17:3, 17:4
debate
19:1
decades
34:9, 35:8,
35:18, 37:13
decide
8:10, 25:12
decides
14:11

decision
27:12
decisions
21:20
declare
32:2, 43:2,
43:12
dedicated
34:10
deemed
29:20
deeper
33:9
deeply
15:21
defeated
37:22, 38:16,
38:18
defiantly
31:15
define
20:9
defined
18:14, 25:1,
25:7, 26:15
definition
22:12, 24:15,
25:2, 27:19
delving
6:14
demanded
30:22
democracy
30:12, 32:4,
37:10
democrat
34:8
democratic
11:2, 15:7,
15:16, 18:8,
22:2, 22:4,
22:8, 22:15,
22:19
democrats
7:19, 35:6,
35:17
demonstrated
13:2, 13:7

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

49

| | | | |
|---|---|---|---|
| **demonstrating** | **dismantle** | **easier** | 31:22, 41:17 |
| 11:4 | 15:5, 38:14 | 5:22, 10:9 | **end** |
| **depending** | **distance** | **eberhardt** | 24:21, 25:10 |
| 26:11 | 6:6 | 39:11 | **ended** |
| **deprive** | **distorted** | **echo** | 6:3 |
| 16:1 | 40:22 | 40:10 | **enemies** |
| **deserve** | **district** | **education** | 9:15 |
| 11:22, 16:7, | 27:14 | 15:11 | **enforceability** |
| 33:14 | **dive** | **effective** | 23:13 |
| **deserves** | 12:13 | 6:22, 27:18 | **enforcement** |
| 14:20 | **do-over** | **effectively** | 16:5 |
| **desperate** | 29:3 | 34:12 | **engage** |
| 37:14 | **dobos** | **effort** | 15:20 |
| **despite** | 2:12 | 38:22 | **engaging** |
| 38:9 | **doing** | **election** | 4:22, 12:9 |
| **details** | 4:9, 8:6, 11:3, | 6:22, 8:3, | **enhances** |
| 12:13 | 16:2, 26:18, | 12:15, 14:6, | 23:10, 23:11 |
| **determine** | 35:1, 36:17 | 27:18, 30:2, | **enough** |
| 41:6 | **dollars** | 33:4, 40:11, | 14:12 |
| **deviate** | 21:1, 32:17, | 40:17, 41:2 | **entire** |
| 24:14 | 40:6 | **electioneering** | 31:3, 34:9 |
| **dewine's** | **domestic** | 4:15 | **entities** |
| 3:20 | 33:11 | **elections** | 4:22 |
| **diet** | **done** | 6:19, 7:7, | **entitled** |
| 23:22 | 27:17, 36:20, | 7:16, 7:21, | 41:16 |
| **difficult** | 39:10, 39:19, | 10:13, 14:9, | **entity** |
| 6:15, 15:12, | 41:4 | 14:14, 16:13, | 4:11, 40:1 |
| 33:18 | **doubt** | 18:19, 18:21, | **envelope** |
| **digest** | 18:22 | 19:9, 20:18, | 27:3 |
| 5:22 | **down** | 20:21, 21:1, | **even** |
| **dilute** | 24:1, 30:15 | 21:5, 21:19, | 6:16, 13:16, |
| 40:8 | **drafted** | 23:3, 23:19, | 15:9, 21:12, |
| **direct** | 14:5, 21:6 | 30:6, 31:4, | 39:11 |
| 14:11, 37:10 | **draw** | 31:6, 31:7, | **event** |
| **directly** | 15:4 | 31:22, 32:12, | 43:10, 43:13 |
| 4:10, 14:13, | **drawn** | 32:21, 33:10, | **events** |
| 37:1 | 21:21 | 33:21, 34:5, | 3:20 |
| **disagree** | **dry** | 34:18, 35:4, | **ever** |
| 15:9, 15:15, | 21:12 | 35:12, 40:4, | 14:7, 35:11 |
| 23:5 | **duck** | 40:7, 40:12, | **every** |
| **disagreements** | 26:19 | 40:22, 41:6 | 23:8, 30:13, |
| 15:13 | **due** | **elsewhere** | 34:8 |
| **disbursement** | 14:11, 14:14 | 21:12 | **everybody** |
| 4:14 | **duped** | **embarrassing** | 4:8, 8:2 |
| **discussing** | 11:16 | 12:1 | **everyone** |
| 18:22 | | **employed** | 33:20, 34:22 |
| **discussion** | **E** | 43:6 | **everything** |
| 22:22 | | **enact** | 8:6 |
| | **early** | 2:17, 3:12, | |
| | 40:11 | | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

50

| | | | |
|---|---|---|---|
| evil | extremism | fighting | 4:9, 5:2, 5:4, |
| 7:15 | 14:21 | 35:18 | 5:20, 6:15, |
| exact | **F** | filed | 7:16, 8:4, 8:15, |
| 23:8, 34:11 | faces | 40:11 | 9:6, 9:7, 12:1, |
| example | 27:6 | final | 12:6, 12:14, |
| 7:1, 13:18 | fact | 23:11 | 13:18, 16:21, |
| exception | 11:10, 17:22, | finally | 18:5, 18:7, |
| 18:12 | 19:8 | 7:6 | 18:12, 18:13, |
| exclude | factor | finance | 18:15, 18:16, |
| 21:22, 22:3, | 37:5 | 2:18, 3:13, | 19:8, 20:9, |
| 23:5 | failed | 32:1, 41:18 | 21:4, 21:5, |
| excluded | 31:9 | financial | 21:11, 21:18, |
| 22:14 | fairly | 43:7 | 21:22, 22:12, |
| excludes | 8:21, 21:21 | find | 22:19, 22:20, |
| 25:2 | faith | 6:15, 29:22, | 23:9, 23:17, |
| exclusive | 35:16 | 30:1, 30:2, | 23:18, 23:21, |
| 13:12 | fantasy | 33:15, 33:18 | 23:22, 24:1, |
| existing | 37:8 | fine | 24:15, 25:1, |
| 16:4 | far | 5:16, 6:20, | 25:2, 25:6, |
| expended | 10:17, 12:20 | 7:5, 12:5, 17:9, | 25:8, 26:15, |
| 5:16 | fast | 17:18 | 27:19, 30:4, |
| expenditures | 14:12, 21:10 | firm | 33:11, 34:10, |
| 4:11, 4:12, | favorite | 15:17 | 34:17, 34:20, |
| 5:12, 18:11, | 21:10 | first | 35:3, 35:12, |
| 20:12 | fbi | 2:22, 16:12, | 37:5, 40:1, |
| experience | 32:6, 32:22 | 18:10, 22:17, | 41:18 |
| 26:21, 26:22, | fear | 35:9 | foreigners |
| 27:2 | 12:8, 37:5 | five | 11:19 |
| expertise | fec | 6:5, 7:3, 40:18 | forgotten |
| 6:13, 6:14 | 21:15 | fix | 38:15, 38:16, |
| explain | federal | 33:2, 33:4 | 38:17 |
| 12:13 | 7:21, 12:3, | floor | form |
| expose | 12:5, 12:21, | 28:22 | 17:2, 25:21 |
| 33:9, 33:16 | 13:5, 13:7, | folks | forms |
| express | 17:14, 18:13, | 7:14, 9:10, | 8:4 |
| 4:3 | 18:14, 18:19, | 9:14, 16:16, | forth |
| extend | 18:20, 21:15, | 21:9, 37:16 | 22:10 |
| 25:13 | 24:14, 25:1, | following | forward |
| extending | 25:8, 25:20, | 2:5, 2:10 | 8:14, 9:9, |
| 8:16 | 27:14, 37:6 | follows | 15:14 |
| extends | fences | 22:16 | found |
| 4:20 | 27:4 | fooled | 13:5 |
| extension | ferret | 38:12 | founded |
| 25:17 | 7:15 | footnotes | 11:7 |
| extensive | few | 24:19 | four |
| 39:7, 39:10 | 16:2, 16:15 | forced | 7:3, 41:2 |
| extent | fight | 30:3 | frankly |
| 5:6 | 11:22, 15:22 | foreign | 19:4 |
| | | 2:18, 3:13, | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

51

| | | | |
|---|---|---|---|
| **fraud** | **generally** | **governing** | **had—i** |
| 7:12, 7:13 | 27:5 | 15:12 | 17:15 |
| **free** | **gentleman** | **government** | **half** |
| 4:8, 32:19 | 2:20, 3:1, | 2:5, 2:10, | 40:18 |
| **freedom** | 10:6, 20:7 | 11:6, 22:7, | **hanging** |
| 37:10, 37:11 | **gerrymandered** | 25:20, 29:22, | 19:6 |
| **freedoms** | 15:6 | 37:11, 37:13, | **happen** |
| 38:1 | **getting** | 38:12, 39:21, | 6:9, 11:9 |
| **freeman** | 26:8, 26:9, | 40:2 | **happened** |
| 7:2 | 34:1 | **governments** | 41:1 |
| **friend** | **give** | 18:15, 31:6 | **happens** |
| 16:14, 27:11 | 10:16, 19:2, | **governor** | 27:5, 37:3 |
| **friends** | 26:4, 34:3, | 3:20, 10:19, | **hard** |
| 8:8, 8:9, 9:19, | 36:17, 38:8, | 11:12, 21:22, | 27:3 |
| 26:5 | 38:10 | 30:4, 33:3 | **hard-earned** |
| **full** | **gives** | **governor's** | 31:9 |
| 43:8 | 13:10, 32:19 | 39:6 | **harvard** |
| **fundamental** | **giving** | **grab** | 18:2 |
| 15:16, 22:11, | 4:8, 5:18, | 11:5, 11:16, | **health** |
| 37:10 | 6:11, 7:8, 16:19 | 12:10, 16:4, | 15:11 |
| **funds** | **glacial** | 31:10, 38:14 | **hear** |
| 4:21, 5:2 | 6:20 | **grandfather** | 37:19 |
| **further** | **glaring** | 13:22 | **heard** |
| 43:12 | 21:7 | **grant** | 7:18, 7:22, |
| **furthermore** | **go** | 16:22 | 26:3, 30:7 |
| 5:14 | 8:20, 14:2, | **granting** | **hearing** |
| **future** | 14:3, 14:13, | 13:12 | 35:9, 39:7, |
| 15:22, 21:15 | 23:16, 26:11, | **grapple** | 42:3 |
| **G** | 26:16, 27:4, | 4:2 | **held** |
| **gains** | 33:9, 33:10, | **great** | 18:9 |
| 13:4 | 34:4 | 23:21, 40:13 | **help** |
| **game** | **goal** | **greater** | 32:12 |
| 31:12 | 32:18 | 6:13, 6:14, | **here** |
| **gang** | **goalpost** | 38:6 | 4:9, 7:14, |
| 8:1 | 30:18 | **green** | 9:21, 11:3, |
| **gavel** | **goes** | 20:11, 20:17, | 11:11, 15:10, |
| 32:13 | 12:20 | 20:20, 21:10, | 15:22, 25:9, |
| **general** | **going** | 23:3, 23:6, | 25:12, 27:15, |
| 5:8, 5:18, | 7:20, 14:12, | 25:4, 26:5, | 30:1, 30:2, |
| 6:11, 6:12, | 23:4, 29:2, | 26:6, 26:8, | 34:11, 36:20, |
| 6:17, 7:8, | 33:13, 33:18, | 26:12, 27:10 | 38:5 |
| 12:11, 13:2, | 34:3, 37:1, | **grip** | **here's** |
| 13:14, 14:13, | 37:3, 39:10 | 38:14 | 37:3 |
| 17:1, 17:8, | **gone** | **guess** | **hereby** |
| 18:11, 27:2 | 17:14 | 26:22 | 41:15, 43:2 |
| **general's** | **good** | **guise** | **highest** |
| 16:18 | 7:1, 7:17, | 30:3 | 30:22, 32:3 |
| | 26:18, 35:16 | **H** | **highlights** |
| | | **hacking** | 4:7 |
| | | 8:6 | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                                   52

| | | | |
|---|---|---|---|
| historical | hunt | indirectly | introduced |
| 22:3 | 17:21 | 4:10 | 12:11 |
| historically | hypotheticals | individuals | investigate |
| 17:3 | 16:15 | 18:17 | 5:19, 7:11, |
| hit | **I** | influence | 10:12, 12:17, |
| 4:7, 27:4 | idea | 8:2, 18:7, | 13:12, 14:7, |
| holders | 32:17 | 21:1, 21:4, | 14:18 |
| 20:11, 20:12, | illegal | 22:21, 31:22, | investigations |
| 20:17, 20:21, | 8:14, 12:2, | 40:3 | 17:11 |
| 23:3, 23:6, | 12:15, 12:16, | influenced | investigative |
| 25:4, 26:6, | 37:6 | 11:18 | 6:18, 19:4 |
| 27:10 | illegally | influences | investigatory |
| holding | 5:15, 32:20 | 11:12 | 17:7 |
| 13:6, 25:11 | immediately | influencing | inviting |
| holiday | 14:18 | 33:13 | 26:17 |
| 39:16 | implies | information | involved |
| home | 34:22 | 43:4 | 4:5, 12:18, |
| 23:16, 27:4 | important | initiative | 13:14 |
| honor | 18:11, 20:14, | 13:6, 14:22, | ireland |
| 39:16, 39:17 | 25:11, 39:22, | 38:10 | 14:1 |
| hope | 41:3 | initiatives | ironic |
| 8:13, 34:4 | imprisoned | 9:1, 11:14, | 29:22 |
| hopefully | 32:12 | 13:15, 34:11, | isaacsohn |
| 3:19, 9:20 | inadvertent | 35:5, 37:21 | 10:2, 10:3, |
| horse | 6:8 | ink | 10:7 |
| 37:9 | inclined | 21:12 | issue |
| hour | 27:15 | instead | 4:17, 4:18, |
| 4:8 | include | 10:14, 12:7 | 9:4, 11:11, |
| hours | 9:14, 18:14, | institutions | 14:4, 39:8, |
| 39:12 | 20:10 | 22:4, 22:8 | 39:10, 39:22, |
| house | including | insulting | 40:13, 40:14 |
| 1:8, 2:6, 2:11, | 4:13, 20:17, | 11:22 | issues |
| 2:16, 3:11, | 23:12 | interest | 2:19, 3:14, |
| 3:18, 4:2, 10:4, | incorporated | 4:7, 14:17, | 4:13, 8:17, |
| 13:8, 19:16, | 18:15 | 22:17, 43:7, | 8:18, 15:10, |
| 19:18, 21:6, | incredibly | 43:12 | 23:7, 41:19 |
| 21:13, 23:20, | 13:9 | interests | itself |
| 28:7, 28:15, | indeed | 9:5, 9:6, 9:7 | 16:16, 18:9, |
| 29:5, 30:16, | 18:6 | interference | 31:14 |
| 31:15, 31:19, | independent | 8:4 | **J** |
| 32:8, 34:2, | 4:12, 10:14, | international | jack |
| 36:4, 36:11, | 12:18, 13:1, | 17:10 | 17:17 |
| 36:21, 37:4, | 16:5, 17:16, | internationally | jamming |
| 37:20, 38:1, | 17:17, 17:19, | 9:15 | 14:21 |
| 41:8, 43:19 | 18:10 | intervention | jeopardize |
| housing | indirect | 32:22 | 23:13 |
| 15:11 | 13:16 | intimately | job |
| humphrey | | 22:1 | 1:20, 19:4, |
| 2:4, 2:9 | | | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

53

| | | | |
|---|---|---|---|
| 19:5, 36:17, 40:13 | lacks 19:3, 19:4 | lay 19:14, 24:6, 28:3, 28:13 | lieutenant 11:12 |
| joke 17:11 | laid 19:17, 20:1, 28:6, 28:10 | least 7:14, 29:21, 37:13 | life 39:17 |
| journey 4:1 | lame 26:19 | leave 27:19 | lighter 39:15 |
| judge 24:16, 25:9, 27:11 | lane 30:15 | left 23:17 | likely 15:1 |
| judges 27:13 | language 12:8, 23:2, 23:8 | legal 16:17, 21:14 | liking 14:10 |
| june 43:16 | last 11:15, 12:11, 36:18, 38:17, 38:18, 39:7 | legalize 11:18 | limit 10:16, 38:1 |
| jurisdictions 25:19 | | legally 23:18 | limited 16:20, 17:10 |
| justice 21:16, 25:9 | lastly 34:6 | legislation 32:1 | limiting 22:18 |
| **K** | late 12:11 | legislations 32:10 | limits 18:10, 25:11 |
| kavanaugh 21:16, 25:10 | later 19:1 | legislative 31:14 | line 6:7, 21:21 |
| kavanaugh's 24:17 | latest 38:22 | legislative's 32:5 | lines 34:19 |
| keep 6:6, 16:4, 34:14 | law 2:18, 3:2, 3:13, 5:6, 8:14, 12:3, 12:4, 12:5, 12:21, 16:4, 18:13, 18:14, 20:9, 21:15, 21:17, 23:1, 24:14, 24:15, 25:1, 25:8, 32:7, 32:21, 37:6, 41:18 | legislators 14:20 | liquor 8:19 |
| kind 6:22, 11:10 | | legislature 29:20, 29:21, 30:5 | listed 43:10 |
| know 5:3, 10:18, 11:9, 11:21, 12:11, 14:20, 14:22, 15:2, 17:18, 17:20, 26:4, 31:18, 32:4, 32:15, 32:20, 32:21, 33:1, 33:14, 35:14, 37:2, 37:16, 37:17, 38:3, 39:20 | | legitimate 15:13 | littered 36:21 |
| | | lend 16:15 | local 8:18, 8:19, 18:19, 18:21, 31:6 |
| | | let's 6:7, 7:3, 21:5, 30:14, 35:2 | long 4:1, 5:21, 6:2, 6:3, 6:5, 6:9, 9:3, 14:9, 14:16 |
| | | level 17:15, 19:9 | long-standing 24:14 |
| | lawful 18:17, 20:10, 25:3, 25:7, 25:14, 25:20 | levied 7:6 | longer 37:12 |
| knowing 33:19 | lawrence 18:1 | levy 8:18 | longstanding 21:17 |
| knowingly 5:1 | laws 32:1, 33:22 | liberal 18:2, 27:16 | look 7:20 |
| known 25:4 | lawyer's 4:6 | lied 40:15 | looked 35:10 |
| **L** | lawyers 4:4, 16:14 | lies 36:22 | loophole 21:7 |
| labyrinthine 17:6 | | | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

54

| | | | |
|---|---|---|---|
| lose | markers | modify | 28:6, 28:10, |
| 38:22 | 14:2 | 2:18, 3:13, | 28:12, 28:13, |
| losing | match | 41:18 | 28:15, 28:21, |
| 31:3, 37:17 | 12:4 | moment's | 28:22, 29:5, |
| lost | matter | 30:9 | 29:13, 36:1, |
| 39:17 | 16:14, 18:1, | money | 36:2, 36:12, |
| lot | 21:3 | 5:3, 5:20, | 36:13 |
| 4:4, 21:17, | matters | 6:15, 7:16, | motions |
| 26:21 | 26:22 | 8:11, 8:15, 9:4, | 2:14 |
| loud | maximum | 9:5, 9:7, 9:8, | move |
| 30:10, 38:18 | 5:6 | 9:11, 12:6, | 9:21, 10:4, |
| loves | maybe | 16:21, 17:6, | 19:14, 20:4, |
| 31:14 | 26:4 | 18:18, 19:8, | 28:3, 30:18 |
| **M** | means | 21:5, 23:6, | moves |
| made | 5:15 | 23:9, 23:17, | 6:20, 41:21 |
| 8:20, 18:11 | meant | 23:19, 23:21, | much |
| maintain | 25:19 | 23:22, 24:1, | 4:6, 5:22, |
| 16:4 | medicaid | 26:15, 30:4, | 26:22, 38:7, |
| majority | 7:12 | 30:6, 31:8, | 39:18 |
| 11:9, 30:5, | meets | 31:9, 31:18, | mueller |
| 30:17, 30:19, | 4:3 | 32:6, 32:11, | 7:22, 17:15, |
| 41:15 | member | 32:20, 33:10, | 17:18 |
| majority's | 3:6, 13:17 | 33:13, 33:20, | **N** |
| 14:10 | members | 34:5, 34:10, | naaden |
| make | 19:19, 24:3, | 34:18, 35:3, | 1:22, 43:2, |
| 3:7, 36:1 | 28:8, 29:8, | 35:12, 37:5, | 43:17 |
| makes | 30:4, 36:5, | 37:6 | name |
| 4:6, 5:12, | 36:6, 41:9 | months | 42:1 |
| 5:22, 21:3, | memorial | 26:13, 40:17, | narrow |
| 27:12 | 39:16 | 40:19, 41:1 | 8:21 |
| making | memory | more | nation |
| 4:11, 4:14, | 30:15 | 6:17, 9:3, | 31:20 |
| 20:12 | mentioned | 10:16, 14:7, | national |
| mandatory | 17:15 | 22:22, 25:14, | 5:2, 5:4, 7:19, |
| 5:16 | might | 34:3, 34:6, | 13:18, 20:9, |
| manipulation | 6:14 | 35:8, 39:18 | 21:18, 22:12, |
| 36:21 | million | morning | 24:15, 27:20 |
| manner | 9:10, 31:9 | 6:4 | nationally |
| 3:5 | millionaire | most | 9:15 |
| many | 26:5 | 12:12, 15:22, | nationals |
| 7:1, 8:8, | millions | 18:1, 24:2, | 2:19, 3:14, |
| 21:20, 27:15, | 20:22, 32:17 | 31:19 | 4:10, 18:12, |
| 32:15, 37:2, | mistake | motion | 18:14, 23:18, |
| 37:15, 38:4, | 27:8 | 3:4, 3:5, 3:7, | 25:1, 25:3, |
| 38:19 | mistakes | 16:9, 19:12, | 25:6, 25:8, |
| maps | 6:9 | 19:17, 20:1, | 26:16, 34:20, |
| 15:5, 31:1 | mistrust | 24:6, 24:9, | 35:3, 41:19 |
| | 11:6 | 28:1, 28:2, | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                        55

necessary
12:21
need
9:13, 14:6,
19:2, 37:19,
40:20
needs
3:4
negative
19:21, 20:1,
28:9, 28:13,
29:10, 29:13,
36:9, 36:11,
41:12, 41:14
neither
43:5
neutered
23:22
never
35:8, 35:10
nevertheless
20:22
new
15:5
night
12:12
nobody
32:19
non-citizen
23:2
noncitizen
20:20
noncitizens
20:16
noted
14:8, 16:14
nothing
10:19, 32:14
notice
30:9
november
15:2, 38:4,
38:13, 38:15,
38:17, 38:21
number
20:5

**O**

objection
42:2, 42:3

obligation
22:5
obligatory
35:9
oec
17:3, 17:4,
19:3
oelslager
28:2, 28:3
offer
23:14
office
13:3, 40:18
often
6:21, 7:1,
24:18
ohio
1:8, 6:18,
6:19, 7:7, 8:14,
10:13, 10:16,
11:15, 11:16,
11:20, 12:15,
13:11, 14:9,
14:14, 15:18,
16:13, 20:9,
20:17, 23:5,
23:19, 24:4,
24:15, 25:8,
27:15, 29:22,
31:18, 32:1,
32:2, 33:1,
33:5, 34:7,
37:12, 40:12,
41:6, 43:19
ohioans
8:10, 10:21,
14:22, 15:17,
16:7, 20:15,
30:21, 32:11,
33:14, 35:14,
41:5
okay
8:12, 15:9,
27:1, 29:4
oleslager
19:13, 19:14
ominously
11:13

once
16:11, 37:9
one
7:7, 18:1,
26:9, 26:13,
29:3, 33:16,
35:11
ongoing
33:1
only
6:4, 8:11,
10:22, 11:4,
12:11, 31:11,
33:15
open
32:2
opinion
24:17, 24:18,
24:21
opinions
24:20
opportunity
10:8
oppose
12:5
opposition
4:12
optimal
6:16
option
8:19
orchestrated
17:20
order
2:21, 3:1, 3:8,
10:5, 20:6
organization
6:20
organizations
8:15
organize
15:19
other
4:21, 8:4, 8:8,
8:11, 9:22,
11:2, 17:2, 22:6
otherwise
12:1, 26:18,

43:7
ourselves
30:1, 30:2,
31:8
out
3:8, 6:1, 7:15,
8:5, 16:15,
39:11
outcome
31:22, 43:7
outrageous
16:3
over
6:1, 6:2, 9:21,
13:2, 17:16,
18:7, 19:6,
22:21, 23:17,
36:18
overall
23:13
overnight
26:9
oversight
2:6, 2:11,
39:21
overwhelmingly
11:17
own
17:13, 38:12
ownership
18:5

**P**

pacs
13:20
page
43:10
pages
1:21, 6:2, 6:3,
6:5, 43:8
park
8:18
part
22:5, 29:14
participate
22:14
participating
23:3, 25:6,

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

26:7
**participation**
21:19, 22:4,
22:7, 22:18,
25:22
**particular**
34:14
**parties**
43:6
**party**
30:5, 30:17
**pass**
3:9, 3:16,
10:2, 20:2,
27:8, 28:14,
29:16, 29:18,
30:3, 35:20,
36:14, 38:20,
39:3, 41:8
**passage**
2:8, 2:13,
23:11
**passed**
6:4, 9:21,
41:15
**passes**
27:6, 27:7
**passion**
24:13
**past**
32:16, 33:5
**path**
15:13
**patterning**
7:10
**pay**
31:22
**penalty**
43:3
**people**
9:14, 10:16,
11:9, 12:12,
15:2, 15:18,
16:2, 17:9,
26:22, 31:1,
31:16, 32:15,
34:1, 34:4,
37:15, 37:19,

37:21, 38:4,
38:6, 38:11,
38:12, 38:18,
39:17
**people's**
31:15, 37:9
**percent**
20:15
**perfectly**
15:9
**perhaps**
18:22
**perjury**
43:3
**permanent**
18:18, 20:10,
25:3, 25:7,
25:14, 25:21
**permitted**
5:6
**person**
4:10
**personal**
38:1
**personally**
27:9
**peterson**
39:4, 39:5
**peterson's**
9:18
**philosophy**
33:12
**place**
12:17, 18:16,
40:9
**plaintiffs**
25:16
**plan**
23:15
**plausible**
32:17
**play**
32:1
**please**
2:20, 2:21,
3:1, 3:2, 3:10,
34:15, 36:7,
41:6, 42:2

**plenary**
16:22
**plenty**
9:10, 15:12
**point**
3:7, 9:20,
23:10, 39:11,
39:19
**pointedly**
24:19
**points**
6:7
**policies**
38:20
**policy**
21:4, 24:3
**political**
11:5, 12:9,
13:4, 13:19,
17:12, 18:4,
22:4, 22:6,
22:8, 22:21,
25:21, 31:17,
34:21, 35:4
**politician**
13:1, 14:16
**politicians**
11:4, 15:4,
31:1, 31:13,
31:21, 32:10,
38:11
**politics**
12:6, 18:8
**pollute**
8:7
**poorly**
14:5
**portion**
33:16
**posed**
3:22
**potential**
13:8, 13:10,
18:7
**potentially**
21:1
**power**
5:8, 10:17,

11:5, 11:16,
12:10, 13:12,
15:2, 16:2,
16:4, 16:18,
22:3, 30:20,
31:2, 31:9,
34:1, 34:3,
37:16, 37:17,
38:11, 38:14
**power-hungry**
31:12
**powerful**
10:17
**precedent**
18:6, 36:2
**precinct**
8:19
**preemptive**
38:9
**preferred**
21:11
**prepare**
19:16, 19:18,
28:7, 28:16,
29:6, 36:4, 41:8
**preserve**
22:5
**president**
10:20, 11:1,
17:22
**presidential**
8:3
**pretending**
33:7
**pretty**
19:5
**prevent**
16:3, 17:21
**preventing**
22:20
**previous**
41:5
**primaries**
32:16
**principal**
18:16
**principle**
22:11

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

57

| | | | |
|---|---|---|---|
| **principles**<br>15:16<br>**prior**<br>6:22<br>**probably**<br>9:2, 12:12,<br>39:12, 39:15<br>**problem**<br>7:13, 27:9,<br>33:2, 33:4,<br>35:17<br>**proceed**<br>10:6, 19:18,<br>20:7, 28:7,<br>28:16, 29:6,<br>36:5, 41:8<br>**process**<br>13:6, 14:12,<br>14:14, 15:1,<br>15:8, 22:1,<br>22:21, 25:6,<br>26:8, 26:11,<br>30:10, 32:10<br>**producing**<br>4:14<br>**productive**<br>29:21<br>**professionals**<br>10:13, 14:8<br>**professors**<br>18:2<br>**prohibit**<br>8:22, 20:11<br>**prohibition**<br>5:20<br>**prohibits**<br>4:22, 18:10,<br>18:13<br>**proposal**<br>33:6, 33:8<br>**proposes**<br>14:19<br>**proposition**<br>8:16<br>**prosecute**<br>5:19, 7:12,<br>10:12, 13:13,<br>14:18 | **prosecutor**<br>7:20, 10:14,<br>12:18, 13:1,<br>16:5, 17:17<br>**prosecutors**<br>17:8, 17:9<br>**protect**<br>11:17, 30:12,<br>33:22<br>**protest**<br>14:3<br>**proud**<br>8:13<br>**proven**<br>32:21<br>**provides**<br>5:14<br>**provision**<br>3:2, 35:8<br>**provisions**<br>5:12<br>**prudentially**<br>27:19<br>**public**<br>14:19, 21:3,<br>36:22<br>**purposes**<br>22:17<br>**pursuant**<br>36:1<br>**pursue**<br>10:15, 13:3<br>**push**<br>27:3<br>**put**<br>5:21, 8:12,<br>31:1<br>**putin**<br>40:2<br><br>**Q**<br>**question**<br>3:8, 3:15,<br>4:18, 5:8, 7:20,<br>10:1, 16:8,<br>19:11, 19:17,<br>20:2, 24:9,<br>26:1, 26:20, | 27:22, 28:5,<br>28:14, 29:4,<br>29:15, 29:17,<br>35:11, 35:19,<br>36:3, 36:14,<br>39:2, 41:7,<br>41:20<br>**questions**<br>3:22, 8:11,<br>25:18<br><br>**R**<br>**rained**<br>32:11<br>**raise**<br>25:17<br>**raised**<br>25:18<br>**rampant**<br>33:1<br>**ran**<br>7:2<br>**rather**<br>7:20<br>**rationale**<br>27:11<br>**reach**<br>9:20<br>**read**<br>3:9, 5:22,<br>19:19, 22:10,<br>28:8, 29:9,<br>36:6, 41:9<br>**reading**<br>24:16, 28:20<br>**reads**<br>23:1<br>**real**<br>11:11, 32:4,<br>35:17<br>**reality**<br>37:3<br>**really**<br>8:21, 30:14,<br>32:7<br>**reason**<br>6:11, 12:16,<br>19:1, 20:22, | 30:13<br>**reasons**<br>7:8, 27:21<br>**received**<br>5:3, 5:16,<br>35:8, 41:14,<br>43:9<br>**receiving**<br>5:1, 5:11<br>**recent**<br>9:2<br>**recently**<br>11:13<br>**recognize**<br>40:22<br>**recognized**<br>3:5, 3:6<br>**recognizes**<br>3:16, 10:2,<br>16:9, 19:12,<br>20:3, 24:10,<br>28:1, 29:18,<br>35:20, 36:15,<br>39:3<br>**recommends**<br>2:8, 2:13<br>**recordings**<br>43:4<br>**redistricting**<br>15:1<br>**refer**<br>12:17<br>**references**<br>26:10<br>**referred**<br>20:11<br>**reflect**<br>38:20<br>**reform**<br>14:22<br>**reformed**<br>8:17<br>**refused**<br>30:21<br>**regarding**<br>2:18, 3:13,<br>21:18, 41:18,<br>43:10 |

regardless
4:17
regulate
5:8, 21:18,
24:22
regulating
18:4
regulatory
26:10
reject
11:15
related
5:20, 22:1,
43:5
relatively
30:16
relevant
26:10
relief
6:22
rely
33:19
remarks
34:14
remember
7:17, 20:14
remove
34:21
removed
31:5
removing
34:19
render
6:21
rep
2:2, 2:14,
2:20, 2:22, 3:6,
3:15, 3:17,
10:1, 10:3,
10:5, 10:7,
16:8, 16:11,
19:11, 19:14,
19:16, 19:22,
20:4, 20:6,
20:8, 24:9,
24:12, 27:22,
28:3, 28:5,
28:12, 28:18,

28:21, 29:2,
29:8, 29:12,
29:17, 34:13,
35:19, 36:3,
36:10, 36:13,
39:2, 39:5,
41:7, 41:13,
41:20
repeal
13:8
report
2:5, 2:10
reports
2:2, 2:7, 2:12
representative
2:4, 2:6, 2:9,
2:11, 2:17,
3:12, 3:16, 7:3,
10:2, 16:10,
19:13, 20:3,
24:11, 28:2,
29:18, 34:14,
35:20, 36:15,
39:3, 41:21
representatives
1:8, 43:19
reproductive
11:17, 14:4
republican
17:21, 24:3
required
41:14
requires
17:6
reserve
22:7
resident
25:16
residents
18:18, 20:10,
25:3, 25:7,
25:14, 25:21
residual
5:7
resolutions
2:14
resolved
40:13

respect
17:1
respectfully
23:1, 23:4
respond
16:12
restaurant
13:17
restrict
25:5
resurrect
31:7
retain
10:11, 11:20
revealed
32:7
revised
2:17, 3:12,
41:17
revisit
26:20
right
10:9, 10:22,
15:13, 15:19,
16:6, 17:15,
22:13, 28:21,
29:3, 29:4
rights
11:2, 11:17,
11:20, 14:3,
14:4, 16:1,
21:14, 23:5
riley
39:11
rise
3:17, 10:8,
16:12
roll
19:19, 28:8,
29:9, 36:6,
41:10
room
32:15, 38:5,
38:19
root
15:7
rule
3:2, 3:4, 36:1

rules
30:17, 31:12,
38:3, 40:9
ruling
40:16
run
17:22, 27:5
running
40:14
rush
30:9
rushed
14:6
rushing
33:2
russia
8:1
russian
8:2
russo
35:21, 35:22,
36:15, 36:16

S

said
24:22, 25:5,
25:10, 25:19,
30:10, 35:2,
35:15, 40:14
same
2:7, 2:12,
13:13, 20:20,
21:1, 32:16
satisfy
3:20
say
14:12, 17:11,
20:16, 23:2,
25:19, 25:22,
33:20, 34:6,
35:3, 37:15,
38:5
saying
6:6, 26:2
says
20:20, 34:20
scandal
34:3

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024

59

| | | | |
|---|---|---|---|
| scared | sent | signs | 27:17, 35:6, |
| 37:14 | 15:10 | 14:2 | 35:7 |
| school | served | simple | sorry |
| 31:3 | 40:18 | 16:6, 33:12 | 28:17, 29:7 |
| screaming | session | simply | sort |
| 32:2 | 1:10, 3:19, | 8:16, 34:12 | 17:7 |
| season | 3:21, 10:18, | since | sovereign's |
| 32:2 | 10:21, 14:21, | 29:21 | 22:5 |
| seated | 26:20, 36:19, | single | speak |
| 40:18 | 43:20 | 5:21, 34:2, | 24:19 |
| second | set | 34:8 | speaker |
| 2:3, 16:18 | 13:10, 22:10 | sinister | 3:17, 10:3, |
| secret | several | 11:12 | 10:7, 16:12, |
| 33:10 | 39:10, 39:22 | sitting | 19:14, 20:4, |
| section | shaken | 10:22 | 20:8, 24:12, |
| 5:22, 16:21, | 15:2 | six | 28:3, 32:12, |
| 34:9, 34:20 | shall | 33:5, 40:17, | 35:22, 36:16, |
| security | 3:8, 3:15, | 41:1 | 39:1, 39:5 |
| 22:12 | 10:1, 16:8, | sixty-four | special |
| see | 19:11, 19:17, | 19:20, 41:11 | 1:10, 3:19, |
| 7:3, 19:1, 37:2 | 20:2, 24:9, | skeptical | 3:21, 7:19, |
| seeking | 27:22, 28:5, | 30:13, 30:14 | 10:18, 14:21, |
| 31:21 | 28:15, 28:22, | slow | 30:2, 31:6, |
| seems | 29:5, 29:15, | 19:3 | 31:7, 33:4, |
| 31:11 | 29:17, 35:19, | smarter | 36:11, 36:18, |
| seen | 36:3, 36:14, | 38:7 | 36:19, 43:20 |
| 32:16 | 39:2, 41:7, | smith | spectrum |
| seitz | 41:20 | 17:17 | 27:16 |
| 2:7, 2:17, | shop | so-called | speed |
| 3:12, 3:16, | 6:13 | 37:5 | 6:20 |
| 3:17, 16:10, | short | solely | spend |
| 16:11, 24:11, | 30:16 | 16:13 | 8:15, 9:8, |
| 24:12, 27:12, | shortest | solicit | 20:22, 33:13, |
| 41:21 | 6:6 | 9:11 | 35:3 |
| select | should | solicitation | spending |
| 2:2 | 7:14, 8:10, | 5:11 | 5:3, 18:4, |
| selective | 10:22, 21:7, | soliciting | 18:12, 18:18, |
| 24:16 | 27:19, 34:4, | 5:1 | 23:6, 33:20, |
| self-government | 40:4, 40:8, 41:5 | some | 34:5 |
| 22:2, 22:15, | shouldn't | 5:7, 7:3, 11:2, | spent |
| 22:20 | 16:1, 40:6 | 14:2, 20:21, | 32:17, 39:6 |
| senate | side | 22:22, 36:22, | spite |
| 6:2, 9:19, | 27:16 | 39:21 | 38:21 |
| 14:10, 23:10 | signature-8g8ru | somehow | spoke |
| sends | 43:14 | 23:2 | 38:18 |
| 14:1 | significant | someone | sponsor |
| sense | 18:5, 19:7, | 23:1, 33:19 | 14:8, 33:17, |
| 21:3 | 25:14 | something | 34:8, 39:9, |
| | | 9:21, 26:2, | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                    60

| | | | |
|---|---|---|---|
| 40:10<br>**sponsored**<br>33:4<br>**spun**<br>16:15<br>**staff**<br>39:14<br>**staffer**<br>39:12<br>**stand**<br>15:17, 36:4<br>**standing**<br>2:2, 2:5, 2:10<br>**started**<br>6:1, 6:2, 31:3,<br>35:15<br>**state**<br>3:2, 7:2, 12:4,<br>12:18, 12:22,<br>18:18, 18:20,<br>18:21, 29:22,<br>30:8, 31:3,<br>31:19, 32:8,<br>33:12, 37:4,<br>37:7, 37:13,<br>38:1<br>**state's**<br>22:3, 30:22<br>**stated**<br>27:21<br>**states**<br>11:1, 21:21,<br>22:16, 25:4,<br>25:15, 25:20<br>**statewide**<br>8:17, 13:1<br>**statutory**<br>25:13, 26:10<br>**stay**<br>30:19<br>**step**<br>8:13, 32:9<br>**stephens**<br>2:2, 2:14,<br>2:20, 2:22, 3:6,<br>3:15, 10:1,<br>10:5, 16:8,<br>19:11, 19:16, | 19:22, 20:6,<br>24:9, 27:22,<br>28:5, 28:12,<br>28:18, 28:21,<br>29:2, 29:8,<br>29:12, 29:17,<br>34:13, 35:19,<br>36:3, 36:10,<br>36:13, 39:2,<br>41:7, 41:13,<br>41:20<br>**stewart**<br>20:3, 20:4,<br>20:8<br>**still**<br>5:7, 9:9,<br>20:22, 33:17<br>**stop**<br>34:2<br>**stopped**<br>40:9<br>**straight**<br>6:7<br>**straightforward**<br>22:11<br>**strictly**<br>16:19<br>**stripping**<br>31:2<br>**stronger**<br>38:7<br>**strongly**<br>23:4<br>**student**<br>13:22<br>**subject**<br>4:2, 6:10,<br>13:21<br>**submitted**<br>2:4, 2:9<br>**subsequent**<br>26:20<br>**substantial**<br>25:17, 25:22<br>**substantive**<br>2:8<br>**substitute**<br>2:16, 3:11, | 3:18<br>**subvert**<br>30:17<br>**sudden**<br>30:5, 35:13<br>**suggest**<br>12:1<br>**summarized**<br>21:17<br>**supermajority**<br>15:6<br>**support**<br>3:18, 4:12,<br>9:16, 12:6,<br>16:7, 24:3,<br>35:6, 35:11<br>**supporting**<br>43:4<br>**supreme**<br>18:6, 18:9,<br>21:16, 21:20,<br>24:17, 27:14<br>**susceptible**<br>26:9<br>**sweeney**<br>29:19, 29:20,<br>34:16<br>**swing**<br>27:4<br>**switzerland**<br>21:12<br>**systems**<br>8:6<br>**T**<br>**table**<br>19:15, 19:18,<br>20:1, 24:7,<br>27:21, 28:4,<br>28:7, 28:11,<br>28:14, 28:20<br>**tabled**<br>19:10<br>**tabling**<br>24:8<br>**tacit**<br>4:3<br>**tactics**<br>32:16 | **take**<br>9:5, 9:7, 10:8,<br>14:11, 26:12,<br>30:14, 40:6,<br>40:8<br>**takes**<br>9:4, 36:2<br>**taking**<br>12:17, 14:9,<br>14:16<br>**talking**<br>34:16, 34:17<br>**tape-recording**<br>43:9<br>**taxes**<br>15:11<br>**taxpayer**<br>31:8<br>**tell**<br>23:16, 26:2<br>**telling**<br>36:22<br>**temporary**<br>25:15<br>**terrifying**<br>12:10<br>**testify**<br>35:14<br>**testimony**<br>1:7, 39:7<br>**thank**<br>3:17, 7:5,<br>9:22, 10:3,<br>10:7, 16:11,<br>20:4, 20:8,<br>24:8, 24:12,<br>35:22, 36:16,<br>39:5, 39:6, 39:9<br>**thereabouts**<br>7:18, 9:11<br>**thereafter**<br>7:1<br>**thereby**<br>22:20<br>**therefore**<br>3:7, 22:16,<br>27:20, 28:10<br>**thing**<br>7:17, 10:9, |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                    61

| | | | |
|---|---|---|---|
| 10:10, 16:6, 34:2, 34:11 | together 8:12, 15:21 | 36:17 trying 7:14, 7:15, | 22:16, 25:3, 25:15 |
| think 26:22, 27:8, 34:8, 35:12, 40:8 | tomorrow 26:5 toolbox 6:18 | 8:20, 8:21, 17:5, 21:4, 26:2, 26:3, 38:2, 40:3 | universe 9:13 university 18:2 |
| third 2:15 | tools 6:18, 17:7, 19:4 | tuesday 6:3 | unlike 33:6 |
| thirty-one 36:8 | towards 27:15 | tune 31:8 | unlimited 31:18 |
| thread 19:6 | trace 17:6 | tuning 37:2 | unrepresentative 15:6, 30:19 |
| threat 32:4 | track 6:16, 21:10 | turn 17:16, 31:7 | until 40:16 |
| three 5:15, 7:22, 34:19, 39:7 | trade 11:2 | twelve 28:9 | untraceable 32:22 |
| through 4:10, 7:21, | training 16:17 | two 3:21, 6:7, | upcoming 27:18, 38:10 |
| 14:21, 17:6, 17:14, 24:19, 31:17, 32:9, 39:8 | transcribed 1:22 transcriber 43:1, 43:2 | 24:4, 37:13, 41:1 | upheld 18:20 urge 9:16, 10:8, |
| thrown 11:6 | transcript 1:6 | U | 16:7, 19:10, 27:20, 39:1, |
| time 5:21, 27:18, | transcription 43:9 | ultimately 27:13 | 41:5 urgency |
| 30:16, 31:11, 42:2 | transfers 12:22 | unable 6:21 | 11:5 use |
| timely 3:5 | transpired 36:18 | unaccountable 15:5, 30:19 | 13:3 uses |
| times 5:15 | treble 5:14 | unbearably 29:22 | 12:7 |
| tip 33:19 | trial 13:7 | under 6:16, 8:14, | V |
| title 3:9, 29:4, | tribe 18:1 | 12:2, 16:19, 20:9, 20:13, | vague 12:8 |
| 41:21, 41:22, 42:1, 42:2, 42:3 | trojan 37:9 | 21:15, 25:7, 30:3, 43:3 | values 8:7, 38:19, 38:20 |
| today 3:18, 3:19, | true 43:8 | undertaking 19:8 | various 37:22 |
| 9:21, 10:8, 11:3, 20:20, | trust 30:10, 30:12 | undoing 26:17 | vast 11:9 |
| 23:16, 26:14, 27:9, 30:1, | truth 37:19, 37:21, | unfettered 32:5 | vehemently 15:10 |
| 33:6, 36:20, 37:2, 38:14 | 38:2 try | unfortunately 20:19, 40:16 | ventures 9:12 |
| today's 3:20 | 6:7, 27:3, | unique 10:8, 17:5 | version 23:8, 39:21, |
| | | united 11:1, 21:21, | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                             62

| | | | |
|---|---|---|---|
| 40:21 | 29:10, 29:11, | we've | words |
| **vest** | 29:12, 29:13, | 5:21, 32:16 | 12:20, 22:7 |
| 19:2 | 36:8, 36:9, | **wednesday** | **work** |
| **veterans** | 36:10, 36:11, | 39:13 | 9:17, 9:18, |
| 39:17 | 41:11, 41:12, | **week** | 9:19, 15:10, |
| **vetted** | 41:13, 41:14 | 13:5, 36:18, | 26:18, 31:15, |
| 41:3 | **voting** | 41:4 | 35:16, 39:10, |
| **video-recorded** | 21:2 | **weekend** | 39:12, 39:19, |
| 1:6 | **W** | 39:15 | 41:4 |
| **violated** | **waivable** | **weeks** | **worked** |
| 3:3 | 5:17 | 39:11, 39:22, | 13:8 |
| **violation** | **walk** | 41:5 | **workers** |
| 5:13, 5:19, | 30:15 | **weigh** | 7:12 |
| 17:2 | **walked** | 14:7 | **working** |
| **violations** | 32:9 | **went** | 39:8, 39:20 |
| 5:10, 7:6, | **want** | 20:15, 24:17, | **world** |
| 10:12, 13:10, | 11:8, 11:21, | 35:10 | 8:5, 8:9 |
| 13:11, 13:13, | 12:4, 14:12, | **we'll** | **wouldn't** |
| 13:21, 16:20 | 14:14, 14:16, | 29:3 | 36:16 |
| **vladimir** | 17:16, 27:17, | **whatever** | **writing** |
| 40:1 | 32:19, 33:11, | 17:1 | 6:9 |
| **voices** | 35:7, 37:15, | **whatsoever** | **written** |
| 10:16 | 39:6, 39:9, | 23:12 | 18:8, 22:2 |
| **vote** | 39:11 | **whenever** | **wrote** |
| 10:22, 11:17, | **wants** | 27:3, 27:5 | 18:3, 21:16, |
| 19:18, 20:17, | 17:1 | **whether** | 21:20 |
| 20:21, 23:15, | **watched** | 4:17, 10:20, | **Y** |
| 24:5, 24:7, | 30:17, 30:21, | 25:12, 40:1, | **yeah** |
| 28:7, 28:16, | 32:6, 32:11 | 40:2, 40:3 | 17:18, 29:1 |
| 29:6, 35:16, | **watching** | **widen** | **year** |
| 36:5, 39:1, | 37:15 | 9:13 | 7:5, 38:19, |
| 40:8, 41:5, | **watered** | **willing** | 41:1 |
| 41:6, 41:9 | 24:1 | 11:1, 11:21 | **year's** |
| **voted** | **way** | **willingness** | 11:15 |
| 11:20, 19:19, | 4:3, 9:9, 15:1, | 13:3 | **years** |
| 28:8, 29:8, | 35:1 | **winning** | 7:1, 7:3, 7:4, |
| 36:5, 36:6, 41:9 | **ways** | 35:15 | 7:22, 9:2, 9:3, |
| **voter** | 13:7 | **wish** | 24:5, 33:5, |
| 13:11 | **we're** | 42:1 | 40:9, 41:1, 41:2 |
| **voters** | 6:11, 7:8, | **witch** | **yesterday** |
| 11:4, 11:15, | 7:10, 7:13, | 17:21 | 30:7 |
| 11:16, 11:20, | 8:13, 8:16, | **within** | **you're** |
| 24:4, 31:13, | 8:20, 8:21, | 21:14, 23:5 | 29:2 |
| 37:1 | 23:4, 33:7, | **without** | **$** |
| **votes** | 33:18, 33:22, | 21:9, 23:20, | **$100** |
| 19:20, 19:22, | 34:3, 34:11, | 24:18, 32:22, | 14:1 |
| 20:1, 28:9, | 34:19 | 42:2 | |
| 28:10, 28:13, | | **witness** | |
| | | 31:2 | |

Transcript of Testimony of Ohio House of Representatives - Special Session 053024
Conducted on May 30, 2024                                      63

| | | |
|---|---|---|
| **$20**<br>31:8 | **42**<br>43:8<br>**43**<br>1:21 | |
| **1** | **5** | |
| **100,000**<br>23:18<br>**12**<br>26:12, 28:12<br>**13**<br>12:20 | **5–**<br>43:19<br>**540606**<br>1:20, 43:19<br>**59**<br>29:10, 29:12 | |
| **2** | **6** | |
| **200**<br>6:2<br>**2016**<br>7:18, 8:3<br>**2018**<br>7:18<br>**2021**<br>18:3<br>**2022**<br>20:14<br>**2024**<br>1:9, 43:16,<br>43:19<br>**21**<br>6:3<br>**2262**<br>20:5<br>**2266**<br>10:4<br>**24**<br>26:13 | **62**<br>36:8, 36:11<br>**64**<br>19:22, 41:13 | |
| | **7** | |
| | **77**<br>20:14 | |
| | **8** | |
| | **82**<br>3:4, 28:9,<br>28:13, 36:2<br>**83**<br>36:2 | |
| **3** | | |
| **30**<br>1:9, 43:19<br>**31**<br>19:20, 20:1,<br>36:10, 41:11,<br>41:14<br>**330**<br>9:10<br>**36**<br>29:10, 29:13 | | |
| **4** | | |
| **40**<br>39:12 | | |

# Exhibit M



# Transcript of Testimony of the Ohio Senate - Special Session

**Date:** May 31, 2024
**Case:** 2024 Ohio Campaign Finance Litigation

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
**www.planetdepos.com**

1

2

3

4

5

6             TRANSCRIPT OF VIDEO-RECORDED

7               TESTIMONY OF THE

8                 OHIO SENATE

9                MAY 31, 2024

10              SPECIAL SESSION

11

12

13

14

15

16

17

18

19

20   Job No.: 540606

21   Pages: 1 - 52

22   Transcribed by: Christian Naaden

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    2

```
1                    P R O C E E D I N G S

2           CLERK:  Mr. President, I'm directed to inform

3    you that the House of Representative has passed the

4    following bill in which is concurrent to the senate has

5    requested. Amended Substitute House Rule Number 1,

6    representative of sites and others to enact the section

7    of the revised code and modify the campaign finance law

8    regarding foreign nationals and ballot issues.

9           SEN. HUFFMAN:  Stands as first consideration

10   the chair recognizes Senator McColley for a motion.

11          SEN. MCCOLLEY:  Thank you, Mr. President. I

12   move the Article to Section 15C of the Ohio

13   Constitution requiring a bill to be considered on three

14   different days, be suspended with respect to amended

15   substitute House Bill 1 and that it be considered a

16   second time.

17          SEN. HUFFMAN:  The question is, shall the

18   motion be agreed to? Clerk will call the roll.

19          CLERK:  Antani?

20          SEN. ANTANI:  No.

21          CLERK:  Antonio?  Blessing?

22          SEN. BLESSING:  Yes.
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    3

```
 1    CLERK:  Brenner?

 2    SEN. BRENNER:  Yes.

 3    CLERK:  Chavez?

 4    SEN. CHAVEZ:  Yes.

 5    CLERK:  Cirino?

 6    SEN. CIRINO:  Yes.

 7    CLERK:  Craig?

 8    SEN. CRAIG:  Yes.

 9    CLERK:  Demora?

10    SEN. DEMORA:  Yeah.

11    CLERK:  Dolan?

12    SEN. DOLAN:  Yes.

13    CLERK:  Gavarone?

14    SEN. GAVARONE:  Yes.

15    CLERK:  Hackett?

16    SEN. HACKETT:  Yes.

17    CLERK:  Hicks? Hudson?  Steve Hoffman?

18    SEN. HOFFMAN:  Yes.

19    CLERK:  Ingram?

20    SEN. INGRAM:  Yes.

21    CLERK:  Johnson?  Kunze?

22    SEN. KUNZE:  Yes.
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                          4

```
1    CLERK:  Landis?

2    SEN. LANDIS:  Yes.

3    CLERK:  Lang?

4    SEN. LANG:  Yes.

5    CLERK:  Manning?

6    SEN. MANNING:  Yes.

7    CLERK:  McColley?

8    SEN. MCCOLLEY:  Yes.

9    CLERK:  O'Brien?

10   SEN. O'BRIEN:  Yes.

11   CLERK:  Reineke?

12   SEN. REINEKE:  Yes.

13   CLERK:  Reynolds?

14   SEN. REYNOLDS:  [Inaudible].

15   CLERK:  Roegner?

16   SEN. ROEGNER:  Yes.

17   CLERK:  Romanchuck?

18   SEN. ROMANCHUCK:  Yes.

19   CLERK:  Rully [ph]?

20   SEN. RULLY:  Yes.

21   CLERK:  Schaffer?

22   SEN. SCHAFFER:  Yes.
```

1           CLERK:  Sherine?

2           SEN. SHERINE:  Yes.

3           CLERK:  Smith? Sykes?

4           SEN. SYKES:  Yeah.

5           CLERK:  Wilkin?

6           SEN. WILKIN:  Yes.

7           CLERK:  President Huffman?

8           SEN. HUFFMAN:  Yes.  With 30 yays and one nay

9    the motion is agreed to. Chair recognizes Senator

10   McColley for motion.

11          SEN. MCCOLLEY:  Thank you, Mr. President. I

12   moved to Article 2, Section 15 C of the Ohio

13   Constitution requiring the bill to be considered on

14   three different days to be suspended with respect to

15   amended substitute House Bill No. 1 and then it will be

16   considered the third time.

17          SEN. HUFFMAN:  The question is, shall that

18   motion be agreed to? Please call the roll.

19          CLERK:  Antani?

20          SEN. ANTANI:  Yes.

21          CLERK:  Antonio? Blessing? Brenner? Chavez?

22          SEN. CHAVEZ:  Yes.

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    6

```
 1              CLERK:  Cirino?

 2              SEN. CIRINO:  Yes.

 3              CLERK:  Craig?

 4              SEN. CRAIG:  [Inaudible].

 5              SEN. DEMORA:  [Inaudible].

 6              CLERK:  Dolan?

 7              SEN. DOLAN:  Yes.

 8              CLERK:  Gavarone? Hackett? Hicks-Hudson? Steve

 9    Hoffman?

10              SEN. HOFFMAN:  Yes.

11              CLERK:  Ingram?

12              SEN. INGRAM:  Yes.

13              CLERK:  Kunze?

14              SEN. KUNZE:  Yes.

15              CLERK:  Landis?

16              SEN. LANDIS:  Yes.

17              CLERK:  Lang?

18              SEN. LANG:  Yes.

19              CLERK:  Manning?

20              SEN. MANNING:  Yes.

21              CLERK:  McColley? O'Brien?

22              SEN. O'BRIEN:  Yes.
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    7

```
1            CLERK:  Reineke? Reynolds? Roegner?

2            SEN. ROEGNER:  Yes.

3            CLERK:  Romanchuck?

4            SEN. ROMANCHUCK:  Yes.

5            CLERK:  Rully?

6            SEN. RULLY:  Yes.

7            CLERK:  Schaffer?

8            SEN. SCHAFFER:  Yes.

9            CLERK:  Sherine?

10            SEN. SHERINE:  Yes.

11            CLERK:  Smith?

12            SEN. SMITH:  Yes.

13            CLERK:  Sykes?

14            SEN. SYKES:  Yes.

15            CLERK:  Wilkin?

16            SEN. WILKIN:  Yes.

17            CLERK:  President Huffman?

18            SEN. HUFFMAN:  Yes. With 23 yays and eight

19    nays, the motion is agreed to. Bills for third

20    consideration?

21            SEN. SMITH:  We've [inaudible].

22            SEN. HUFFMAN:  Oh, very good. The question is
```

1   shall the bill amended substitute House Bill Number 1

2   pass? And the chair recognizes Senator McColley.

3           SEN. MCCOLLEY:  Thank you, Mr. President. I

4   rise in favor of amended substitute House Bill Number

5   1. Without going into extreme detail, I'll just go

6   quickly into what this bill does, given the fact that

7   this will be the fifth time we've voted on some version

8   of this proposal in the chamber.

9           It goes through and it -- it includes the

10  prohibitions that we've voted on before. It would

11  prohi- -- prohibited for a foreign national to make

12  contributions directly into a campaign or through

13  another entity.

14          It also includes the prohibitions that an

15  entity act as a passthrough for those same

16  contributions, and also includes the prohibitions we've

17  already voted on that would prohibit somebody from

18  aiding or facilitating those types of contributions and

19  expenditures.

20          It also includes the provisions we included

21  regarding the travel damages -- the triple damages

22  otherwise known as where if somebody violates this,

1    they're going to be subject to triple the amount of

2    money that they contributed in fines. They're also --

3    if they received the money as a contribution, they

4    would have to return the money to the donor as well.

5              The criminal offenses are slightly different.

6    And so far, as when we passed our bill, we had a felony

7    five that attached to the campaign treasurer of one of

8    these groups where -- where they would certify

9    initially that they had not received any foreign money

10   and that they would not receive any foreign money.

11             This bill goes as far as saying that there

12   will be criminal penalties but instead it will be a

13   first-degree misdemeanor on the first offense and a

14   fifth degree felony on the second offense for the

15   foreign national who makes the contributions, the

16   entity that receives the money, and for anybody who

17   aids or facilitates. In that case it will only be a

18   first-degree misdemeanor.

19             And as far at the enforcement mechanism that

20   is included in this bill, it vest in the attorney

21   general the enforcement authority to be able to conduct

22   investigations and to be able to bring charges or bring

1    civil penalties under this section. And so, the

2    attorney general will have the ability to handle that.

3          As we've discussed before, that's important

4    because inherently, we're dealing with what will be an

5    international white-collar scheme to get this money

6    into the State of Ohio. I don't think it's fair to

7    scrap a local prosecutor with that type of case given

8    the bandwidth that they may or may not have and given

9    the international nature of this, the attorney general

10   is better suited to handle these types of cases.

11         Now, what doesn't it do compared to some of

12   the things we passed. Notably, some of the changes we

13   had to the definition of expenditure and independent

14   expenditure did not make it into this version. The

15   version that requires committees in charge of statewide

16   vowed initiatives and referendas to register as packs

17   is not in this version.

18         It only applies to foreign national

19   prohibition to statewide ballot issues and of course,

20   candidate elections that were already illegal under

21   Ohio law but not to local ballot issues. It removes the

22   treasurer certification as I discussed before and

1    removes language that would have better guarded against

2    the comingling of these types of funds into an account

3    and then using that account for expenditures going

4    forward.

5            Ultimately, this bill is weaker. I'll be

6    honest, this bill is weaker than what we have passed

7    out of the senate previously. However, I do -- do think

8    it still is a step in the right direction, it's still a

9    bill worth passing, and it's still a bill that

10   identifies this clear and present threat that we have

11   to our elections and something that we should be taking

12   care of going forward and we should be taking care of

13   immediately. I urge passage of the bill.

14           SEN. HUFFMAN:  Thank you, Senator. Chair,

15   recognize Senator Demora.

16           SEN. DEMORA:  Thank you, Mr. President. I move

17   to amend with the number that ends in 2273.

18           SEN. HUFFMAN:  Amendment is in order. I

19   appreciate --

20           SEN. DEMORA:  May I speak both for the

21   amendment and then --

22           SEN. HUFFMAN:   Absolutely.

1          SEN. DEMORA:  -- and then after the --

2          SEN. HUFFMAN:  Yes. Sure.

3          SEN. DEMORA:  Okay. Thank you, Mr. President.

4    So this amendment is very simple. This amendment would

5    get rid of foreign money on ballot issues and only get

6    rid of foreign money on ballot issues.

7          It's basically -- it adds -- it attracts all

8    the other stuff and it adds, I think it's eight or nine

9    words that says that no foreign money can be used for

10   ballot measures in Ohio.

11         It's plain and simple and does what the

12   majority has wanted to do, that the minority has never

13   been against, is banning foreign money on ballot

14   issues. Thank you, Mr. President.

15         SEN. HUFFMAN:  Thank you. We -- we'll -- we'll

16   deal with the amendment and then we'll recognize to

17   speak to the bill.

18         SEN. DEMORA:  Okay. Thank you, sir.

19         SEN. HUFFMAN:  That's all right, Senator.

20   Senator McColley is recognized to speak to the proposed

21   amendment.

22         SEN. MCCOLLEY:  Thank you, Mr. President. I

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                     13

1    rise in opposition to the amendment because what it

2    really does, is it fails to put in place any legitimate

3    penalties that would act as deterrents to this type of

4    activity.

5           Let's keep in mind that we're talking about

6    multi-million dollar schemes sometimes orchestrated by

7    groups that have over a billion dollars under their

8    management or multi billion dollars under their

9    management or billionaires who are coming in and trying

10   to put their thumb on the scale in Ohio's elections.

11          Without the penalties included in this bill,

12   there's going to be simple cost benefit analysis done

13   by man of these people and they're probably going to

14   decide it's still worth going awry of the statue if it

15   means that they can still contribute and put their

16   thumb on the scale in the State of Ohio and interfere

17   with our elections as a foreigner in the State of Ohio.

18          And so, I would urge and argue that even

19   though the -- the other side of Ohio had indicated that

20   they would be against this type of activity, evidently,

21   they may not be in favor of levying serious penalties

22   for this type of activity. And so, I would urge that we

1  defeat the amendment.

2         SEN. HUFFMAN:  Thank you, Senator. Chair

3  recognizes Senator Gavarone.

4         SEN. GAVARONE:  Thank you, Mr. President. I

5  move that we lay the amendment upon the table.

6         SEN. HUFFMAN:  Motion is to lay the amendment

7  on the table. Please call the roll.

8         CLERK:  Antani?

9         SEN. ANTANI:  Yes.

10        CLERK:  Antonio?

11        SEN. ANTONIO:  No.

12        CLERK:  Blessing?

13        SEN. BLESSING:  Yes.

14        CLERK:  Brenner?

15        SEN. BRENNER:  Yes.

16        CLERK:  Chavez?

17        SEN. CHAVEZ:  Yeah.

18        CLERK:  Cirino?

19        SEN. CIRINO:  Yes.

20        CLERK:  Craig?

21        SEN. CRAIG:  No.

22        CLERK:  Demora?

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    15

```
1    SEN. DEMORA:  No.

2    CLERK:  Dolan?

3    SEN. DOLAN:  Yes.

4    CLERK:  Gavarone?

5    SEN. GAVARONE:  Yes.

6    CLERK:  Hackett?

7    SEN. HACKETT:  Yes.

8    CLERK:  Hicks-Hudson?

9    SEN. HICKS-HUDSON:  No.

10   CLERK:  Steve Hoffman?

11   SEN. HOFFMAN:  Yes.

12   CLERK:  Ingram?

13   SEN. INGRAM:  No.

14   CLERK:  Kunze?

15   SEN. KUNZE:  No.

16   CLERK:  Landis?

17   SEN. LANDIS:  Yes.

18   CLERK:  Lang?

19   SEN. LANG:  Yes.

20   CLERK:  Manning?

21   SEN. MANNING:  Yes.

22   CLERK:  McColley?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    16

```
1    SEN. MCCOLLEY:  Yes.

2    CLERK:  O'Brien?

3    SEN. O'BRIEN:  Yes.

4    CLERK:  Reineke?

5    SEN. REINEKE:  Yes.

6    CLERK:  Reynolds?

7    SEN. REYNOLDS:  Yes.

8    CLERK:  Roegner?

9    SEN. ROEGNER:  Yes.

10   CLERK:  Romanchuck?

11   SEN. ROMANCHUCK:  Yes.

12   CLERK:  Rully?

13   SEN. RULLY:  Yes.

14   CLERK:  Schaffer?

15   SEN. SCHAFFER:  Yes.

16   CLERK:  Sherine?

17   SEN. SHERINE:  Yes.

18   CLERK:  Smith?

19   SEN. SMITH:  Yes.

20   CLERK:  Sykes?

21   SEN. SYKES:  No.

22   CLERK:  Wilkin?
```

```
1          SEN. WILKIN:  Yes.

2          CLERK:  President Huffman?

3          SEN. HUFFMAN:  Yes. By vote of 24 to 7, the

4    amendment is laid on the table. Senator Demora is

5    recognized to speak to the bill.

6          SEN. DEMORA:  Thank you, Mr. President. So, as

7    my colleague said, this is the fifth time that we've

8    talked about this and so I'll talk about it for the

9    fifth just to be consistent. Actually, I talked about

10   it in committees, so I think it's my sixth or seventh

11   time.

12         Again, un- -- unlike what the majority

13   communications director has to say about me and my

14   colleagues, we are against foreign money and we just

15   try to offer an amendment to band foreign money but I

16   guess that wasn't good enough because we've all known

17   all along that this bill is not just for banding

18   foreign money, it is for basically giving -- taking

19   away rights of people due to ballot issues. It's giving

20   power to the attorney general who in my mind doesn't

21   deserve any extra power because he can't do the job he

22   has now.
```

```
 1              This bill hurts citizens and hurts the ability
 2     for citizens to participate in ballot issues. And
 3     another thing that we've done today that, I guess from
 4     the time first in committee through today is, no --
 5     nobody in the senate has ever been able to testify in
 6     opposition to all the stuff we've done because they've
 7     all been amendments to other bills.
 8              This has been -- we -- we waived the
 9     constitutional provisions for three hearings today and
10     so nobody has ever been able to testify about the
11     benefits and/or the negative things about this bill in
12     hearing, in this chamber.
13              It's supposed to be the people's house, yet
14     we've not given the people any ability to talk about
15     why this would be bad for the State of Ohio. So with --
16     with those two things in mind, it will be the last time
17     I speak on this bill I hope. I mean, who -- who knows,
18     but I urge a no vote. Thank you, Mr. President.
19              SEN. HUFFMAN:  Thank you, Senator. Senator
20     Antani is recognized for purposes of presentation of an
21     amendment. Senator.
22              SEN. ANTANI:  Thank you, Mr. President. Move
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    19

1    to amend with AM2275.

2            SEN. HUFFMAN:  The amendment is ordered.

3    Proceed.

4            SEN. ANTANI:  Thank you, Mr. President for

5    allowing me to rise to offer this amendment. Overall, I

6    support the goal of this bill, which is to prohibit

7    foreigners from being able to contribute to -- to

8    ballot issues, which is why I -- I voted for Senate

9    Bill 215 when it came out of the senate.

10           And I think that hopefully it will accomplish

11   that. However, that bill, Senate Bill 215 and now the

12   bill coming back from the house, goes a step further,

13   which is to say that the definition of foreign national

14   includes lawful permanent residents commonly known as

15   green card holders.

16           That is a big departure from longstanding

17   federal law and presents an incredible issue to this

18   bill. Just yesterday people were surprised with the

19   Democrats voted against the table in motion of the

20   amendment that put this language into the bill, because

21   the Democrats want this in this bill so they can sue

22   over it to get it struck down.

1        It's long-standing supreme court law now via

2   Citizens United, via Buckley that speech is money, that

3   freedom of speech means you can donate to candidates

4   and campaigns. That's long-standing case law. What's

5   also long-standing case law since 1945, is to say that

6   permanent lawful residents have the right to freedom of

7   speech. That is going to get sued over in this bill.

8        And the entire thing is going to get struck

9   down because we as the legislature are overreaching.

10  Lawful permanent residents have the right to free

11  speech, donating to candidates and campaigns.

12       By the way, this bi- -- this bill is supposed

13  to be about ballot issues, but it extends the

14  prohibition on green card holders to candidates as

15  well, to candidates, but this is supposed to be about

16  ballot issues only. And so, I want foreign nationals to

17  be prohibited from giving to ballot issues and

18  campaigns.

19       I don't know how this gets around the C4

20  issue, but I think it at least prohibits a ballot issue

21  campaign from accepting foreign national money. That's

22  -- that's a good thing. But green card holders, they

1    absolutely have the right to freedom of speech, and

2    absolutely donating to campaigns and candidates is free

3    speech.

4            And so, this is going to get mucked up in the

5    courts. I want to see a bill that goes into law. I want

6    to see a bill that prohibits foreign nationals from

7    donating to ballot issue campaigns as they are

8    prohibited from donating the candidates. But changing

9    this long departure from federal law, a -- a critical

10   free speech issue is going to cause this bill to get

11   struck down, and so I urge your support.

12           SEN. HUFFMAN:  Thank you. Chair recognizes

13   Senator McColley for purposes of addressing the

14   amendment.

15           SEN. MCCOLLEY:  Thank you, Mr. President. I

16   rise in opposition because one of the cases that wasn't

17   mentioned was Blooming vs. FEC that I suspect we're

18   going to take a deeper dive on -- later on in today's

19   argument. But in essence, that case made it very clear

20   that it is a compelling government interest.

21           Even though free speech is guarded, it is a

22   compelling government interest for the Unite States to

1    separate citizens from non-citizens, and so far, as a

2    concern, their participation an acts of self-

3    governance, which not only includes by the opinion

4    voting but it also includes the act of political

5    contributions.

6              And while in that case it didn't expressly

7    deal with the foreign nationals not being able to

8    contribute, if you read the opinion and you read it

9    carefully, it makes it very clear that the legislatures

10   can appeal -- can proceed piecemeal on this approach,

11   and it does grant foreign natio- -- or, excuse me,

12   green card holders the express ability to be able to

13   contribute in these cases.

14             And in fact, it spends more time talking about

15   the difference between citizens and non-citizens, which

16   green card holders are not citizens. I urge that we

17   defeat the amendment.

18             SEN. HUFFMAN:  Good. Chair recognizes Senator

19   Gavarone for a motion.

20             SEN. GAVARONE:  Thank you, Mr. President. I

21   move that we lay the amendment upon the table.

22             SEN. HUFFMAN:  The motion is to lay the

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    23

```
1    amendment on the table. Please call the roll.

2              CLERK:  Antani?

3              SEN. ANTANI:  No.

4              CLERK:  Antonio?

5              SEN. ANTONIO:  Yes.

6              CLERK:  Blessing?

7              SEN. BLESSING:  Yes.

8              CLERK:  Brenner?

9              SEN. BRENNER:  Yes.

10             CLERK:  Chavez

11             SEN. CHAVEZ:  Yes.

12             CLERK:  Cirino?

13             SEN. CIRINO:  Yes.

14             CLERK:  Craig?

15             SEN. CRAIG:  Yes.

16             CLERK:  Demora?

17             SEN. DEMORA:  Yes.

18             CLERK:  Dolan?

19             SEN. DOLAN:  Yes.

20             CLERK:  Gavarone?

21             SEN. GAVARONE:  Yes.

22             CLERK:  Hackett?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                              24

```
1    SEN. HACKETT:  Yes.

2    CLERK:  Hicks-Hudson? Steve Hoffman?

3    SEN. HACKETT:  Yes.

4    CLERK:  Ingram?

5    SEN. INGRAM:  Yes.

6    CLERK:  Kunze?

7    SEN. KUNZE:  No.

8    CLERK:  Landis?

9    SEN. LANDIS:  Yes.

10   CLERK:  Lang?

11   SEN. LANG:  Yes.

12   CLERK:  Manning?

13   SEN. MANNING:  Yes.

14   CLERK:  McColley?

15   SEN. MCCOLLEY:  Yes.

16   CLERK:  O'Brien?

17   SEN. O'BRIEN:  Yes.

18   CLERK:  Reineke?

19   SEN. REINEKE:  Yes.

20   CLERK:  Reynolds?

21   SEN. REYNOLDS:  No.

22   CLERK:  Roegner?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    25

```
 1              SEN. ROEGNER:  Yes.

 2              CLERK:  Romanchuck?

 3              SEN. ROMANCHUCK:  Yes.

 4              CLERK:  Rully?

 5              SEN. RULLY:  Yes.

 6              CLERK:  Schaffer?

 7              SEN. SCHAFFER:  Yes.

 8              CLERK:  Sherine?

 9              SEN. SHERINE:  Yes.

10              CLERK:  Smith?

11              SEN. SMITH:  Yes.

12              CLERK:  Sykes?

13              SEN. SYKES:  Yes.

14              CLERK:  Wilkin?

15              SEN. WILKIN:  Yes.

16              CLERK:  President Huffman?

17              SEN. HUFFMAN:  Yes. By a vote of 30 to 1, the

18   amendment is laid on the table. Senator Blessing

19   recognized to speak to the bill. Senator.

20              SEN. BLESSING:  Thanks, Mr. President. I will

21   be brief because I've been told to be brief by a few of

22   my colleagues. But, you know, I just wanted to say I'm
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                          26

1    in support of House Bill 1 but I have to agree with my

2    Democratic colleagues that money overall is a major

3    problem.

4            Why is it okay for an American billionaire to

5    dump millions into a campaign? It's still bad and it

6    brings to mind Justice Louis Brandeis' admonishment

7    that we can have vast wealth in the hands of a few or

8    we can have democracy. We cannot have both.

9            He was right then and right today. But all

10   this is downstream from the real problem. The collapse

11   of anti-trust enforcement in the United States over the

12   last 40 years. Concentration of economic power leads to

13   concentration of political power, which corrupts our

14   Democratic process.

15           It should come as no surprise that things like

16   direct election of senators, initiative and referendum,

17   and others came about during the early 20th century, a

18   time of political and technological upheaval on the

19   hales of gilded age excesses. Many were called the

20   illustration, the bosses of the senate.

21           If we really wish to solve the problem of

22   money and politics, then a reexamination of anti-trust

1  should be at the top of the list. Thank you, Mr.

2  President.

3          SEN. HUFFMAN:  Thank you, Senator. Senator

4  Ingram is recognized for purposes of an amendment.

5          SEN. INGRAM:  Thank you, Mr. President. I rise

6  to present Amendment No. 2271.

7          SEN. HUFFMAN:  The amendment is in order.

8  Proceed.

9          SEN. INGRAM:  Thank you, Mr. President.

10 Actually, this is quite simple. It eliminates the

11 provision of the bill to give the attorney general

12 exclusive authority to prosecute violations of the

13 bill, requires that the Ohio Elections Commission

14 determines that the bill has been violated, the OEC

15 must either impose the full amount of the applicable

16 financial penalty or refer the matter to the

17 appropriate prosecutor as determined under current law.

18          Mr. President, I appreciate the fact that some

19 folks say that local prosecutors have so much to do and

20 have little staff and all those other things. The

21 reality is, is that unfortunately in these times

22 especially, that to put that prosecution or that

1  determination, that investigation into the hands of the

2  attorney general would be detrimental to -- detrimental

3  to some of the issues that are there on the ballot.

4        Some of those folks has nothing to do with

5  money coming from Switzerland and wherever you said

6  happening in issue one of last October, last November.

7  It has to do with the idea that we do not need another

8  way for people to be penalized.

9        You serve the possibility that the people want

10  that change and of course, if you determine that that

11  money and the attorney general is the only person

12  making that determination, then shame on us for

13  allowing that to happen. So it therefore, should be

14  back in the hands of the -- the Ohio Elections

15  Commission for them to make that determined, for them

16  to do that investigation, those penalties.

17        And of course, another thing that happens is,

18  is that there is no mention of any timelines. Like

19  right now, the OEC has deadlines that they have to

20  meet, 90 days, 60 days, whatever has to happen in those

21  penalties, and that's not here. I don't think it was

22  intended to be here. So I rise to make that amendment

1    and hopefully you will allow it to not be taped.

2             SEN. HUFFMAN:  Thank you, Senator. The chair

3    recognizes Senator McColley for purposes of addressing

4    the amendment.

5             SEN. MCCOLLEY:  Thank you, Mr. President. And

6    as I've detailed before, these cases are inherently

7    complex. These cases are inherently international.

8    These cases are inherently going to take an awful lot

9    of time and difficulty and are going to need to full

10   force and effect of the state government behind them.

11            And frankly, as much as people may argue that

12   the attorney general shouldn't handle these types of

13   cases and that maybe he is acting in bad faith in this

14   case or another case or whatever the case may be.

15            The truth of the matter is, the attorney

16   general was just elected by -- by a 20-point margin in

17   our most recent statewide election. And so, the people

18   of Ohio have voted to make sure the attorney general

19   stay -- the attorney. They felt he was doing a good

20   enough job to elect him by a 60 to 40 margin. And in

21   this case, I don't see any problem with giving the

22   attorney general this type of authority with the full

1    weight, force, and effect of the State of Ohio, given

2    the fact that these initiatives are inherently

3    statewide initiatives. Thank you, Mr. President.

4              SEN. HUFFMAN:  Thank you, Senator. Senator

5    Gavarone is recognized for purposes of the motion.

6              SEN. GAVARONE:  Thank you, Mr. President. I

7    move that we lay the amendment upon the table.

8              SEN. HUFFMAN:  The motion is to lay the

9    amendment on the table. Please call the roll.

10             CLERK:  Antani?

11             SEN. ANTANI:  Yes.

12             CLERK:  Antonio?

13             SEN. ANTONIO:  No.

14             CLERK:  Blessing?

15             SEN. BLESSING:  Yes.

16             CLERK:  Brenner.

17             SEN. BRENNER:  Yes.

18             CLERK:  Chavez?

19             SEN. CHAVEZ:  Yes.

20             CLERK:  Cirino?

21             SEN. CIRINO:  Yes.

22             CLERK:  Craig

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    31

```
1    SEN. CRAIG:  Yes.

2    CLERK:  Demora?

3    SEN. DEMORA:  No.

4    CLERK:  Dolan?

5    SEN. DOLAN:  Yes.

6    CLERK:  Gavarone?

7    SEN. GAVARONE:  Yes.

8    CLERK:  Hackett?

9    SEN. HACKETT:  Yes.

10   CLERK:  Hicks-Hudson?

11   SEN. HICKS-HUDSON:  [Inaudible].

12   CLERK:  Steve Hoffman?

13   SEN. HOFFMAN:  Yes.

14   CLERK:  Ingram?

15   SEN. INGRAM:  No.

16   CLERK:  Kunze?

17   SEN. KUNZE:  Yes.

18   CLERK:  Landis?

19   SEN. LANDIS:  Yes.

20   CLERK:  Lang?

21   SEN. LANG:  Yes.

22   CLERK:  Manning?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    32

```
1    SEN. MANNING:  Yes.

2    CLERK:  McColley?

3    SEN. MCCOLLEY:  Yes.

4    CLERK:  O'Brien?

5    SEN. O'BRIEN:  Yes.

6    CLERK:  Reineke?

7    SEN. REINEKE:  No.

8    CLERK:  Reynolds? Roegner?

9    SEN. ROEGNER:  No.

10   CLERK:  Romanchuck?

11   SEN. ROMANCHUCK:  [Inaudible].

12   CLERK:  Rully?

13   SEN. RULLY:  Yes.

14   CLERK:  Schaffer?

15   SEN. SCHAFFER:  Yes.

16   CLERK:  Sherine?

17   SEN. SHERINE:  Yes.

18   CLERK:  Smith?

19   SEN. SMITH:  Yep.

20   CLERK:  Sykes?

21   SEN. SYKES:  No.

22   CLERK:  Wilkin?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    33

1        SEN. WILKIN:  Yes.

2        CLERK:  President Huffman?

3        SEN. HUFFMAN:  Yes. With 24 yays and seven

4   nays, the amendment is tabled. The chair recognizes

5   Senator Smith for purposes of an amendment.

6        SEN. SMITH:  Thank you, Mr. President. Move to

7   amend with Amendment Number AM1352270.

8        SEN. HUFFMAN:  The amendment is order. Please

9   proceed.

10       SEN. SMITH:  Thank you, Mr. President. This

11  amendment would prohibit public utilities from

12  recovering political expenditure costs. If we fully

13  wanted to meaningfully address campaign finance or

14  form, we could require dark money groups to identify

15  their contributions and disclose their spending.

16       We could work on real solutions that put hard

17  working everyday Ohioans over corrupt corporation --

18  corporations and politicians. Unfortunately, we in this

19  -- the, in the Ohio General Assembly have a reputation

20  as a result of recent investigations as being one of

21  the most corrupt states in the country and this

22  amendment would help alleviate that.

1          In January 2023, the Energy and Policy

2     Institute re- -- released a report entitled getting

3     politics out of the utility bills. The report begins

4     with the following statement, "America's monopoly

5     electric and gas utilities are using the money that

6     they collect from customers monthly bills to fund

7     political machines that puts legislation curry favor

8     from regulators and alter the outcomes of elections,

9     sometimes even breaking the law."

10         This legislation would do two things. It would

11    prevent utilities from using rate payer money for

12    political activity and will require mandatory

13    disclosures that provide greater visibility into

14    utilities political spending.

15         In the most general terms, Mr. President and

16    colleagues of the senate, utility customers should not

17    be forced to pay for political activity that they may

18    not agree with.  Eleven states have already introduced

19    this legislation.  Three states have passed it, and

20    those states being Colorado, Connecticut, and Maine.

21         In a 2020 -- it's been reported that in a 2020

22    presentation, FirstEnergy executive, Michel Dylan

1    explained the reason FirstEnergy liked dark money was

2    it allowed the count- -- the company to be deceptive.

3    He said, "Our preferred manner of giving is through

4    Section 501C groups, as these are considered dark money

5    because they are not required to disclose where their

6    donations come from."

7          The clear and present threat to Ohio's

8    democracy is not overseas. It has a 330 area code. But

9    as best as we can tell, FirstEnergy contributed $2.5

10   million under their own name and about $63 million

11   through dark money, totaling $65.5 million. But here is

12   the thing, all of these contributions were secret. The

13   actual total amount could be much bigger. This is the

14   multi-million-dollar scheme that we should be trying to

15   prohibit.

16         Mr. President and members of the senate, this

17   amendment would broaden the scope of Special Session

18   House Bill 1, so that bad actors, foreign or domestic

19   would be prohibited, and I urge its adaption. Thank

20   you, Mr. President.

21         SEN. HUFFMAN:  Thank you, Senator. The chair

22   recognizes Senator McColley for purposes of addressing

1    the amendment.

2              SEN. MCCOLLEY:  Thank you, Mr. President. As I

3    stated, today is the -- the days are running together -

4    - as I stated the last time we were in session, this is

5    an issue that I -- I think may be worthy of a

6    conversation but I think it needs an awful lot more

7    thought and deliberation.

8              Anytime we deal with first amendment protected

9    speech, and as -- as been already pointed out, Citizens

10   United protects the speech even of these utility

11   companies, believe it or not -- we need to make sure we

12   threat lightly because there could be circumstances in

13   which we trample upon the first amendment and

14   ultimately finds ourselves in a position where the law

15   eventually gets thrown out.

16             We need to make sure we do the due diligence

17   as we have in various versions of this foreign national

18   contributions band to make sure that we are not

19   crossing the line and violating First Amendment Rights.

20   So, worthy of further conversation but not under the

21   context of this bill. Thank you.

22             SEN. HUFFMAN:  Thank you, Senator. Senator

1    Gavarone's recognized for purposes of the motion.

2              SEN. GAVARONE:  Thank you, Mr. President. I

3    move that we lay the amendment upon the table.

4              SEN. HUFFMAN:  Move -- the motion is to lay

5    the amendment on the table. Please call the roll.

6              CLERK:  Antani?

7              SEN. ANTANI:  No.

8              CLERK:  Antonio?

9              SEN. ANTONIO:  No.

10             CLERK:  Blessing?

11             SEN. BLESSING:  No.

12             CLERK:  Brenner?

13             SEN. BRENNER:  Yes.

14             CLERK:  Chavez?

15             SEN. CHAVEZ:  Yes.

16             CLERK:  Cirino?

17             SEN. CIRINO:  Yes.

18             CLERK:  Craig?

19             SEN. CRAIG:  No.

20             CLERK:  Demora?

21             SEN. DEMORA:  No.

22             CLERK:  Dolan?

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                          38

```
1    SEN. DOLAN:  Yes.

2    CLERK:  Gavarone?

3    SEN. GAVARONE:  Yes.

4    CLERK:  Hackett?

5    SEN. HACKETT:  Yes.

6    CLERK:  Hicks-Hudson?

7    SEN. HICKS-HUDSON:  No.

8    CLERK:  Steve Hoffman?

9    SEN. HOFFMAN:  Yeah.

10   CLERK:  Ingram?

11   SEN. INGRAM:  No.

12   CLERK:  Kunze?

13   SEN. KUNZE:  No.

14   CLERK:  Landis?

15   SEN. LANDIS:  Yes.

16   CLERK:  Lang?

17   SEN. LANG:  Yes.

18   CLERK:  Manning?

19   SEN. MANNING:  Yes.

20   CLERK:  McColley?

21   SEN. MCCOLLEY:  Yes.

22   CLERK:  O'Brien?
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                    39

1          SEN. O'BRIEN:  Yes.

2          CLERK:  Reineke?

3          SEN. REINEKE:  Yes.

4          CLERK:  Reynolds?

5          SEN. REYNOLDS:  Yes.

6          CLERK:  Roegner?

7          SEN. ROEGNER:  Yes.

8          CLERK:  Romanchuck?

9          SEN. ROMANCHUCK:  No.

10         CLERK:  Rully?

11         SEN. RULLY:  Yes.

12         CLERK:  Schaffer?

13         SEN. SCHAFFER:  No.

14         CLERK:  Sherine?

15         SEN. SHERINE:  Yes.

16         CLERK:  Smith?

17         SEN. SMITH:  No.

18         CLERK:  Sykes? Wilkin?

19         SEN. WILKIN:  Yes.

20         CLERK:  President Huffman?

21         SEN. HUFFMAN:  Yes. By a vote of 21 yays and
nays, the amendment is laid on the table. The chair
22   recognizes Senator Antonio for purposes of speaking to

1   the bill. Senator Antonio.

2          SEN. ANTONIO:  Thank you, Mr. President. Well,

3   how many times has been? Here we are again. I rise in

4   opposition to House Bill 1 and as for all the reasons

5   the Democrats have offered amendments in terms of the

6   concern that we have with a non-inclusion, we are not

7   addressing dark money. I appreciate the comments from

8   our colleague and look forward to further discussions

9   about how can we make sure that dark money is not

10  coming into our elections process.

11         But in the meantime, what's happened in what

12  I've heard referred to a couple times no is a watered-

13  down version of what -- what the bill started as. I

14  still think that there's -- I don't know about it being

15  watered down or diluted, but I think that the outcome

16  is still very, very dangerous.

17         And we've talked a lot about a poison pill. I

18  still believe there is enough poison in this bill to

19  really kill the will of the people as they go and bring

20  forth ballot initiatives. So now, however, this version

21  also really adds an incredible amount of power to the

22  attorney general's office, someone who interestingly

1    enough said, "I did not ask for the authority in this

2    bill. I don't care whether it's in my office or someone

3    else does the work."

4           So while he may have been elected by a

5    majority of Ohioans as has been indicated over his

6    opponent, he's indicating to us that he really doesn't

7    necessarily want to take this on. Frankly, someone who

8    has shown themselves to be partisan on many issues that

9    he's taken up, gives me great cause and great concern

10   about putting so much of this kind of power into an

11   office, into a single person's office.

12          It was interesting that the hearings over in

13   the house, we paid attention as this bill was moving

14   through the house, and we heard testimony with concern.

15   We also heard testimony that reinforces something the

16   democrats have been saying in the house, in the senate,

17   over and over again, foreign money is prohibited under

18   a opinion by the Ohio Elections Commission that

19   determine Ohio statutory structure sufficiently

20   prohibits the involvement of any foreign national from

21   participating in or contributing to an issue or

22   question that will appear on the ballot. We have been

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    42

1    saying this.

2            The attorney general also has a role already

3    in ballot campaigns. But giving him the second role

4    doesn't create the proper checks and balances that we

5    all, not only embrace, but lift up as necessary. We'd

6    like to believe -- I'd like to believe -- Catherine

7    Turcer testified in the house and she said she'd like

8    to believe that no AG would abuse their role in the

9    process, but it could be tempting.

10           We need to make sure checks and balances are

11   there. We have an Ohio Elections Commission right now.

12   A better approach would be to really allow them to do

13   the work that they need to do. Perhaps we should staff

14   them up a little bit to make sure that they can make

15   timely investigation is and give them broader

16   investigative power and perhaps a larger budget.

17           But nothing in this legislation addressing how

18   the lack of transparency led to House Bill 6 and the

19   corruption scandal that still hangs as a cloud over our

20   heads.

21           You know, a few days ago, I spoke about these

22   bills and I called them a trojan horse. I said they

1   looked innocent but they had the power to destroy the

2   voice of the people and quash their ability to be able

3   to bring something to the ballot, a ballot initiative.

4          You know, ballot initiatives are only brought

5   when the people say that the legislature is out of

6   stock with their wishes, with their opinions, with how

7   they want to be treated in the State of Ohio.

8          Often, it's trying to get their rights back.

9   So they've told us over and over again that this

10  legislature is out of stock. But we keep on keeping on

11  and now we're going to erode the power of the Ohio

12  Elections Commission, give more power to the attorney

13  general. It is complex but I still believe there is

14  going be a question about how -- enforcement even with

15  this bill.

16         And I wonder at what point is the federal

17  government going to be asked to assist in enforcement

18  in actually carrying this legislation forward or at

19  least the will, the ideas, the desire behind this --

20  this piece of legislation.

21         We haven't dealt with the issues of dark money

22  and the scandal that still, as I said, hangs over us. I

1    don't believe that Ohioans are getting a fair shake

2    with this bill. I do believe that in spite of this

3    bill, in spite of this legislation, the people of Ohio

4    will prevail just as they have in the past three times.

5    We've seen the work that they can do.

6           Never doubt the ability of a small group of

7    people to change the world. Indeed, it's the only thing

8    that ever has. Margeret Mead was right when she said

9    that. I believe the people of Ohio will prevail with or

10   without this piece of legislation, but I urge a no

11   vote.

12          SEN. HUFFMAN:  Thank you, Leader Antonio.

13   Chair recognizes Senator McColley.

14          SEN. MCCOLLEY:  Thank you, Mr. President. I

15   wasn't planning on getting up and speaking but I wanted

16   to address one issue in particular, but it -- it was

17   suggested that this bill with her participation and

18   ballot issues was dangerous and it would kill the will

19   of the people. The people voted over 70 percent nearly

20   a few years ago to say that non-citizens should not be

21   able to vote in Ohio's elections.

22          I suspect the will of the people would also be

1    that non-citizens should not be able to do in Ohio

2    elections. So it's been suggested as well that this is

3    already illegal and that somehow this -- what we're

4    doing is duplicative.

5          Let me -- let me go into a little analysis on

6    that. Some people have suggested that it is already

7    illegal at the federal level, but the truth of the

8    matter is that the current federal statute does not

9    consider issues elections as elections, and therefore,

10   the FEC does not have the ability to regulate those

11   elections. And in fact, there were legislative

12   recommend- -- recommendations offered by the FEC as

13   recently as December 14th, 2023, in which it laid out

14   its highest priority legislative recommendations.

15         The fifth highest priority was amend the

16   foreign national prohibition to include state and local

17   ballot initiatives, referenda, and recall elections. It

18   also said that it would need to do that, that congress

19   would need to do that in order for the FEC and federal

20   law to be able to band foreign national contributions

21   in federal elections. That is the FEC saying that.

22         That is also reflected in the bipartisan

1    action that we've seen in congress very recently where

2    a bipartisan house administration committee voted out

3    unanimously a band on foreign national interference

4    through their contributions in state-wide and local

5    issues elections.

6            So it would appear that the federal government

7    itself doesn't agree with the characterization that

8    this is already illegal. Now, looking at the OEC

9    opinion, it specifically makes reference to a specific

10   division of this section that deals with this kind of

11   conduct.

12           One of the first divisions deals with a

13   specific unambiguous very clear ban in the law that

14   talks about how you cannot spend foreign money in a

15   candidate election. No ambiguity whatsoever.

16           The OEC opinion, which has never been

17   litigated, has never gone in front of a court of law

18   regarding foreign national contributions and foreign

19   election and appearance in our issues elections, relies

20   on a section that -- or a division that is near that

21   division, that also talks about how general elections

22   spending would be illegal for foreign nationals.

1         It doesn't spell out in an ambiguous clear

2    fashion that these types of expenditures are

3    prohibited. So while I respect the people at the OEC

4    and their personal opinion, it's very real possibility

5    that a court of competent jurisdiction could come to a

6    very different opinion in the event that this ever

7    wound up in a court and could end up with a different

8    interpretation of that law, which gets us to where we

9    are today.

10        If it's -- even if you assume that it is

11   illegal, then we absolutely should do this. If you

12   assumed that it is already legal, then we should do it

13   anyway. Or excuse me, I had that backwards. If you

14   assume that this is legal, then we should do it anyway

15   to rectify the ambiguity that is in the statute right

16   now. If you assume that it is illegal, then we should

17   absolutely do it.          Moreover, if it were already

18   illegal and if the foreign nationals who we know are

19   contributing into Ohio's elections actually shared that

20   opinion, the cost benefit analysis that I referenced

21   earlier that they are already making as to the

22   likelihood of them succeeding if they ever have to go

1    to court on this and the likelihood of them ever having

2    to pay any sort of reasonable penalties that is

3    associated with this, they wouldn't be making all these

4    contributions into Ohio through their dark money

5    entities. They wouldn't be making these types of

6    contributions. Yes, they are.

7           That in and of itself highlights the need for

8    us at the very best to rectify the ambiguity and at the

9    very worst, to actually prohibit this in Ohio law with

10   actual penalties that are going to be legitimate

11   deterrents to this type of activity, because currently

12   at the very best case, this is ambiguous and there are

13   no penalties. Thank you, Mr. President.

14          SEN. HUFFMAN:  Thank you, Senator. The

15   question is, shall the bill pass? Pleasy call the roll.

16          CLERK:  Antani?

17          SEN. ANTANI:  Yes.

18          CLERK:  Antonio? Blessing?

19          SEN. BLESSING:  Yes.

20          CLERK:  Brenner?

21          SEN. BRENNER:  No.

22   CLERK:  Chavez?

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                              49

```
1    SEN. CHAVEZ:  Yes.

2    CLERK:  Cirino?

3    SEN. CIRINO:  Yes.

4    CLERK:  Craig?

5    SEN. CRAIG:  No.

6    CLERK:  Demora?

7    SEN. DEMORA:  No.

8    CLERK:  Dolan?

9    SEN. DOLAN:  Yes.

10   CLERK:  Gavarone? Hackett?

11   SEN. HACKETT:  Yes.

12   CLERK:  Hicks-Hudson? Steve Hoffman?

13   SEN. HOFFMAN:  Yes.

14   CLERK:  Ingram?

15   SEN. INGRAM:  No.

16   CLERK:  Kunze? Landis?

17   SEN. LANDIS:  Yes.

18   CLERK:  Lang?

19   SEN. LANG:  Yes.

20   CLERK:  Manning?

21   SEN. MANNING:  Yes.

22   CLERK:  McColley?
```

```
1    SEN. MCCOLLEY:  Yes.

2    CLERK:  O'Brien?

3    SEN. O'BRIEN:  Yes.

4    CLERK:  Reineke?

5    SEN. REINEKE:  Yes.

6    CLERK:  Reynolds?

7    SEN. REYNOLDS:  Yes.

8    CLERK:  Roegner?

9    SEN. ROEGNER:  Yes.

10   CLERK:  Romanchuck?

11   SEN. ROMANCHUCK:  Yes.

12   CLERK:  Rully?

13   SEN. RULLY:  Yes.

14   CLERK:  Schaffer?

15   SEN. SCHAFFER:  Yes.

16   CLERK:  Sherine?

17   SEN. SHERINE:  Yes.

18   CLERK:  Smith?

19   SEN. SMITH:  No.

20   CLERK:  Sykes?

21   SEN. SYKES:  No.

22         CLERK:  Wilkin?
```

Case: 2:24-cv-03495-MHW-KAJ Doc #: 16-7 Filed: 06/28/24 Page: 861 of 879  PAGEID #: 996

1           SEN. WILKIN:  Yes.

2           CLERK:  President Huffman?

3           SEN. HUFFMAN:  Yes. With 24 yays and seven

4    nays, the bill is passed and titled.

5           CLERK:  A bill to enact the section of the

6    revised code and modify the campaign finance law

7    regarding foreign nationals and ballot issues.

8           SEN. HUFFMAN:  The question is, shall the

9    title be agreed to? Any member would like to add their

10   name to the title, please do so now.

11

12

13

14

15

16

17

18

19

20

21

22

```
1              CERTIFICATE OF TRANSCRIBER

2        I, Chris Naaden, a transcriber, hereby declare

3   under penalty of perjury that to the best of my ability

4   from the audio recordings and supporting information;

5   and that I am neither counsel for, related to, nor

6   employed by any of the parties to this case and have no

7   interest, financial or otherwise, in its outcome, the

8   above 51 pages contain a full, true and correct

9   transcription of the tape-recording that I received

10  regarding the event listed on the caption on page 1.

11

12        I further declare that I have no interest in

13  the event of the action.

14

15  _____

16       June 6, 2024

17       Chris Naaden

18

19  (540606, Ohio Senate - 5-31-2024 - Special Session)

20

21

22
```

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024
53

**A**

**ability**
10:2, 18:1,
18:14, 22:12,
43:2, 44:6,
45:10, 52:3
**able**
9:21, 9:22,
18:5, 18:10,
19:7, 22:7,
22:12, 43:2,
44:21, 45:1,
45:20
**about**
13:5, 17:8,
17:9, 17:13,
18:10, 18:11,
18:14, 20:13,
20:15, 22:14,
26:17, 35:10,
40:9, 40:14,
40:17, 41:10,
42:21, 43:14,
46:14, 46:21
**above**
52:8
**absolutely**
11:22, 21:1,
21:2, 47:11,
47:17
**abuse**
42:8
**accepting**
20:21
**accomplish**
19:10
**account**
11:2, 11:3
**act**
8:15, 13:3,
22:4
**acting**
29:13
**action**
46:1, 52:13
**activity**
13:4, 13:20,

13:22, 34:12,
34:17, 48:11
**actors**
35:18
**acts**
22:2
**actual**
35:13, 48:10
**actually**
17:9, 27:10,
43:18, 47:19,
48:9
**adaption**
35:19
**add**
51:9
**address**
33:13, 44:16
**addressing**
21:13, 29:3,
35:22, 40:7,
42:17
**adds**
12:7, 12:8,
40:21
**administration**
46:2
**admonishment**
26:6
**after**
12:1
**ag**
42:8
**again**
17:12, 40:3,
41:17, 43:9
**against**
11:1, 12:13,
13:20, 17:14,
19:19
**age**
26:19
**ago**
42:21, 44:20
**agree**
26:1, 34:18,
46:7
**agreed**
2:18, 5:9,

5:18, 7:19, 51:9
**aiding**
8:18
**aids**
9:17
**all**
12:7, 12:19,
17:16, 17:17,
18:6, 18:7,
26:9, 27:20,
35:12, 40:4,
42:5, 48:3
**alleviate**
33:22
**allow**
29:1, 42:12
**allowed**
35:2
**allowing**
19:5, 28:13
**along**
17:17
**already**
8:17, 10:20,
34:18, 36:9,
42:2, 45:3,
45:6, 46:8,
47:12, 47:17,
47:21
**also**
8:14, 8:16,
8:20, 9:2, 20:5,
22:4, 40:21,
41:15, 42:2,
44:22, 45:18,
45:22, 46:21
**alter**
34:8
**ambiguity**
46:15, 47:15,
48:8
**ambiguous**
47:1, 48:12
**amend**
11:17, 19:1,
33:7, 45:15
**amended**
2:5, 2:14,

5:15, 8:1, 8:4
**amendment**
11:18, 11:21,
12:4, 12:16,
12:21, 13:1,
14:1, 14:5,
14:6, 17:4,
17:15, 18:21,
19:2, 19:5,
19:20, 21:14,
22:17, 22:21,
23:1, 25:18,
27:4, 27:6,
27:7, 28:22,
29:4, 30:7,
30:9, 33:4,
33:5, 33:7,
33:8, 33:11,
33:22, 35:17,
36:1, 36:8,
36:13, 36:19,
37:3, 37:5,
39:22
**amendments**
18:7, 40:5
**america's**
34:4
**american**
26:4
**amount**
9:1, 27:15,
35:13, 40:21
**analysis**
13:12, 45:5,
47:20
**another**
8:13, 18:3,
28:7, 28:17,
29:14
**antani**
2:19, 2:20,
5:19, 5:20,
14:8, 14:9,
18:20, 18:22,
19:4, 23:2,
23:3, 30:10,
30:11, 37:6,
37:7, 48:16,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024

54

48:17
**anti-trust**
26:11, 26:22
**antonio**
2:21, 5:21,
14:10, 14:11,
23:4, 23:5,
30:12, 30:13,
37:8, 37:9,
39:23, 40:1,
40:2, 44:12,
48:18
**any**
9:9, 9:10,
13:2, 17:21,
18:14, 28:18,
29:21, 41:20,
48:2, 51:9, 52:6
**anybody**
9:16
**anytime**
36:8
**anyway**
47:13, 47:14
**appeal**
22:10
**appear**
41:22, 46:6
**appearance**
46:19
**applicable**
27:15
**applies**
10:18
**appreciate**
11:19, 27:18,
40:7
**approach**
22:10, 42:12
**appropriate**
27:17
**area**
35:8
**argue**
13:18, 29:11
**argument**
21:19
**around**
20:19

**article**
2:12, 5:12
**asked**
43:17
**assembly**
33:19
**assist**
43:17
**associated**
48:3
**assume**
47:10, 47:14,
47:16
**assumed**
47:12
**attached**
9:7
**attention**
41:13
**attorney**
9:20, 10:2,
10:9, 17:20,
27:11, 28:2,
28:11, 29:12,
29:15, 29:18,
29:19, 29:22,
40:22, 42:2,
43:12
**attracts**
12:7
**audio**
52:4
**authority**
9:21, 27:12,
29:22, 41:1
**away**
17:19
**awful**
29:8, 36:6
**awry**
13:14

**B**

**back**
19:12, 28:14,
43:8
**backwards**
47:13

**bad**
18:15, 26:5,
29:13, 35:18
**balances**
42:4, 42:10
**ballot**
2:8, 10:19,
10:21, 12:5,
12:6, 12:10,
12:13, 17:19,
18:2, 19:8,
20:13, 20:16,
20:17, 20:20,
21:7, 28:3,
40:20, 41:22,
42:3, 43:3,
43:4, 44:18,
45:17, 51:7
**ban**
46:13
**band**
17:15, 36:18,
45:20, 46:3
**banding**
17:17
**bandwidth**
10:8
**banning**
12:13
**basically**
12:7, 17:18
**because**
10:4, 13:1,
17:16, 17:21,
18:6, 19:20,
20:9, 21:16,
25:21, 35:5,
36:12, 48:11
**been**
12:13, 18:5,
18:7, 18:8,
18:10, 25:21,
27:14, 34:21,
36:9, 40:3,
41:4, 41:5,
41:16, 41:22,
45:2, 46:16
**before**
8:10, 10:3,

10:22, 29:6
**begins**
34:3
**behind**
29:10, 43:19
**being**
19:7, 22:7,
33:20, 34:20,
40:14
**believe**
36:11, 40:18,
42:6, 42:8,
43:13, 44:1,
44:2, 44:9
**benefit**
13:12, 47:20
**benefits**
18:11
**best**
35:9, 48:8,
48:12, 52:3
**better**
10:10, 11:1,
42:12
**between**
22:15
**bi**
20:12
**big**
19:16
**bigger**
35:13
**bill**
2:4, 2:13,
2:15, 5:13,
5:15, 8:1, 8:4,
8:6, 9:6, 9:11,
9:20, 11:5,
11:6, 11:9,
11:13, 12:17,
13:11, 17:5,
17:17, 18:1,
18:11, 18:17,
19:6, 19:9,
19:11, 19:12,
19:18, 19:20,
19:21, 20:7,
20:12, 21:5,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024

21:6, 21:10,
25:19, 26:1,
27:11, 27:13,
27:14, 35:18,
36:21, 40:1,
40:4, 40:13,
40:18, 41:2,
41:13, 42:18,
43:15, 44:2,
44:3, 44:17,
48:15, 51:4,
51:5
**billion**
13:7, 13:8
**billionaire**
26:4
**billionaires**
13:9
**bills**
7:19, 18:7,
34:3, 34:6,
42:22
**bipartisan**
45:22, 46:2
**bit**
42:14
**blessing**
2:21, 2:22,
5:21, 14:12,
14:13, 23:6,
23:7, 25:18,
25:20, 30:14,
30:15, 37:10,
37:11, 48:18,
48:19
**blooming**
21:17
**bosses**
26:20
**both**
11:20, 26:8
**brandeis**
26:6
**breaking**
34:9
**brenner**
3:1, 3:2, 5:21,
14:14, 14:15,

23:8, 23:9,
30:16, 30:17,
37:12, 37:13,
48:20, 48:21
**brief**
25:21
**bring**
9:22, 40:19,
43:3
**brings**
26:6
**broaden**
35:17
**broader**
42:15
**brought**
43:4
**buckley**
20:2
**budget**
42:16

C

**c4**
20:19
**call**
2:18, 5:18,
14:7, 23:1,
30:9, 37:5,
48:15
**called**
26:19, 42:22
**came**
19:9, 26:17
**campaign**
2:7, 8:12, 9:7,
20:21, 26:5,
33:13, 51:6
**campaigns**
20:4, 20:11,
20:18, 21:2,
21:7, 42:3
**can't**
17:21
**candidate**
10:20, 46:15
**candidates**
20:3, 20:11,

20:14, 20:15,
21:2, 21:8
**cannot**
26:8, 46:14
**caption**
52:10
**card**
19:15, 20:14,
20:22, 22:12,
22:16
**care**
11:12, 41:2
**carefully**
22:9
**carrying**
43:18
**case**
9:17, 10:7,
20:4, 20:5,
21:19, 22:6,
29:14, 29:21,
48:12, 52:6
**cases**
10:10, 21:16,
22:13, 29:6,
29:7, 29:8,
29:13
**catherine**
42:6
**cause**
21:10, 41:9
**century**
26:17
**certificate**
52:1
**certification**
10:22
**certify**
9:8
**chair**
2:10, 5:9, 8:2,
11:14, 14:2,
21:12, 22:18,
29:2, 33:4,
35:21, 39:22,
44:13
**chamber**
8:8, 18:12

**change**
28:10, 44:7
**changes**
10:12
**changing**
21:8
**characterization**
46:7
**charge**
10:15
**charges**
9:22
**chavez**
3:3, 3:4, 5:21,
5:22, 14:16,
14:17, 23:10,
23:11, 30:18,
30:19, 37:14,
37:15, 48:22,
49:1
**checks**
42:4, 42:10
**chris**
52:2, 52:17
**christian**
1:22
**circumstances**
36:12
**cirino**
3:5, 3:6, 6:1,
6:2, 14:18,
14:19, 23:12,
23:13, 30:20,
30:21, 37:16,
37:17, 49:2,
49:3
**citizens**
18:1, 18:2,
20:2, 22:1,
22:15, 22:16,
36:9
**civil**
10:1
**clear**
11:10, 21:19,
22:9, 35:7,
46:13, 47:1
**cloud**
42:19

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                          56

**code**
2:7, 35:8, 51:6
**collapse**
26:10
**colleague**
17:7, 40:8
**colleagues**
17:14, 25:22,
26:2, 34:16
**collect**
34:6
**colorado**
34:20
**come**
26:15, 35:6,
47:5
**coming**
13:9, 19:12,
28:5, 40:10
**comingling**
11:2
**comments**
40:7
**commission**
27:13, 28:15,
41:18, 42:11,
43:12
**committee**
18:4, 46:2
**committees**
10:15, 17:10
**commonly**
19:14
**communications**
17:13
**companies**
36:11
**company**
35:2
**compared**
10:11
**compelling**
21:20, 21:22
**competent**
47:5
**complex**
29:7, 43:13
**concentration**
26:12, 26:13

**concern**
22:2, 40:6,
41:9, 41:14
**concurrent**
2:4
**conduct**
9:21, 46:11
**congress**
45:18, 46:1
**connecticut**
34:20
**consider**
45:9
**consideration**
2:9, 7:20
**considered**
2:13, 2:15,
5:13, 5:16, 35:4
**consistent**
17:9
**constitution**
2:13, 5:13
**constitutional**
18:9
**contain**
52:8
**context**
36:21
**contribute**
13:15, 19:7,
22:8, 22:13
**contributed**
9:2, 35:9
**contributing**
41:21, 47:19
**contribution**
9:3
**contributions**
8:12, 8:16,
8:18, 9:15,
22:5, 33:15,
35:12, 36:18,
45:20, 46:4,
46:18, 48:4,
48:6
**conversation**
36:6, 36:20
**corporation**
33:17

**corporations**
33:18
**correct**
52:8
**corrupt**
33:17, 33:21
**corruption**
42:19
**corrupts**
26:13
**cost**
13:12, 47:20
**costs**
33:12
**could**
33:14, 33:16,
35:13, 36:12,
42:9, 47:5, 47:7
**counsel**
52:5
**count**
35:2
**country**
33:21
**couple**
40:12
**course**
10:19, 28:10,
28:17
**court**
20:1, 46:17,
47:5, 47:7, 48:1
**courts**
21:5
**craig**
3:7, 3:8, 6:3,
6:4, 14:20,
14:21, 23:14,
23:15, 30:22,
31:1, 37:18,
37:19, 49:4,
49:5
**create**
42:4
**criminal**
9:5, 9:12
**critical**
21:9

**crossing**
36:19
**current**
27:17, 45:8
**currently**
48:11
**curry**
34:7
**customers**
34:6, 34:16

**D**

**damages**
8:21
**dangerous**
40:16, 44:18
**dark**
33:14, 35:1,
35:4, 35:11,
40:7, 40:9,
43:21, 48:4
**days**
2:14, 5:14,
28:20, 36:3,
42:21
**deadlines**
28:19
**deal**
12:16, 22:7,
36:8
**dealing**
10:4
**deals**
46:10, 46:12
**dealt**
43:21
**december**
45:13
**deceptive**
35:2
**decide**
13:14
**declare**
52:2, 52:12
**deeper**
21:18
**defeat**
14:1, 22:17

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                                57

| | | | |
|---|---|---|---|
| **definition** | **difference** | **domestic** | **elected** |
| 10:13, 19:13 | 22:15 | 35:18 | 29:16, 41:4 |
| **degree** | **different** | **donate** | **election** |
| 9:14 | 2:14, 5:14, | 20:3 | 26:16, 29:17, |
| **deliberation** | 9:5, 47:6, 47:7 | **donating** | 46:15, 46:19 |
| 36:7 | **difficulty** | 20:11, 21:2, | **elections** |
| **democracy** | 29:9 | 21:7, 21:8 | 10:20, 11:11, |
| 26:8, 35:8 | **diligence** | **donations** | 13:10, 13:17, |
| **democratic** | 36:16 | 35:6 | 27:13, 28:14, |
| 26:2, 26:14 | **diluted** | **done** | 34:8, 40:10, |
| **democrats** | 40:15 | 13:12, 18:3, | 41:18, 42:11, |
| 19:19, 19:21, | **direct** | 18:6 | 43:12, 44:21, |
| 40:5, 41:16 | 26:16 | **donor** | 45:2, 45:9, |
| **demora** | **directed** | 9:4 | 45:11, 45:17, |
| 3:9, 3:10, 6:5, | 2:2 | **doubt** | 45:21, 46:5, |
| 11:15, 11:16, | **direction** | 44:6 | 46:19, 46:21, |
| 11:20, 12:1, | 11:8 | **down** | 47:19 |
| 12:3, 12:18, | **directly** | 19:22, 20:9, | **electric** |
| 14:22, 15:1, | 8:12 | 21:11, 40:13, | 34:5 |
| 17:4, 17:6, | **director** | 40:15 | **eleven** |
| 23:16, 23:17, | 17:13 | **downstream** | 34:18 |
| 31:2, 31:3, | **disclose** | 26:10 | **eliminates** |
| 37:20, 37:21, | 33:15, 35:5 | **due** | 27:10 |
| 49:6, 49:7 | **disclosures** | 17:19, 36:16 | **else** |
| **departure** | 34:13 | **dump** | 41:3 |
| 19:16, 21:9 | **discussed** | 26:5 | **embrace** |
| **deserve** | 10:3, 10:22 | **duplicative** | 42:5 |
| 17:21 | **discussions** | 45:4 | **employed** |
| **desire** | 40:8 | **during** | 52:6 |
| 43:19 | **dive** | 26:17 | **enact** |
| **destroy** | 21:18 | **dylan** | 2:6, 51:5 |
| 43:1 | **division** | 34:22 | **end** |
| **detail** | 46:10, 46:20, | | 47:7 |
| 8:5 | 46:21 | **E** | **ends** |
| **detailed** | **divisions** | | 11:17 |
| 29:6 | 46:12 | **earlier** | **energy** |
| **determination** | **doing** | 47:21 | 34:1 |
| 28:1, 28:12 | 29:19, 45:4 | **early** | **enforcement** |
| **determine** | **dolan** | 26:17 | 9:19, 9:21, |
| 28:10, 41:19 | 3:11, 3:12, | **economic** | 26:11, 43:14, |
| **determined** | 6:6, 6:7, 15:2, | 26:12 | 43:17 |
| 27:17, 28:15 | 15:3, 23:18, | **effect** | **enough** |
| **determines** | 23:19, 31:4, | 29:10, 30:1 | 17:16, 29:20, |
| 27:14 | 31:5, 37:22, | **eight** | 40:18, 41:1 |
| **deterrents** | 38:1, 49:8, 49:9 | 7:18, 12:8 | **entire** |
| 13:3, 48:11 | **dollar** | **either** | 20:8 |
| **detrimental** | 13:6 | 27:15 | **entities** |
| 28:2 | **dollars** | **elect** | 48:5 |
| | 13:7, 13:8 | 29:20 | |

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024

58

entitled
34:2
entity
8:13, 8:15,
9:16
erode
43:11
especially
27:22
essence
21:19
even
13:18, 21:21,
34:9, 36:10,
43:14, 47:10
event
47:6, 52:10,
52:13
eventually
36:15
ever
18:5, 18:10,
44:8, 47:6,
47:22, 48:1
everyday
33:17
evidently
13:20
excesses
26:19
exclusive
27:12
excuse
22:11, 47:13
executive
34:22
expenditure
10:13, 10:14,
33:12
expenditures
8:19, 11:3,
47:2
explained
35:1
express
22:12
expressly
22:6

extends
20:13
extra
17:21
extreme
8:5

**F**

facilitates
9:17
facilitating
8:18
fact
8:6, 22:14,
27:18, 30:2,
45:11
fails
13:2
fair
10:6, 44:1
faith
29:13
far
9:6, 9:11,
9:19, 22:1
fashion
47:2
favor
8:4, 13:21,
34:7
fec
21:17, 45:10,
45:12, 45:19,
45:21
federal
19:17, 21:9,
43:16, 45:7,
45:8, 45:19,
45:21, 46:6
felony
9:6, 9:14
felt
29:19
few
25:21, 26:7,
42:21, 44:20
fifth
8:7, 9:14,

17:7, 17:9,
45:15
finance
2:7, 33:13,
51:6
financial
27:16, 52:7
finds
36:14
fines
9:2
first
2:9, 9:13,
18:4, 36:8,
36:13, 36:19,
46:12
first-degree
9:13, 9:18
firstenergy
34:22, 35:1,
35:9
five
9:7
folks
27:19, 28:4
following
2:4, 34:4
force
29:10, 30:1
forced
34:17
foreign
2:8, 8:11, 9:9,
9:10, 9:15,
10:18, 12:5,
12:6, 12:9,
12:13, 17:14,
17:15, 17:18,
19:13, 20:16,
20:21, 21:6,
22:7, 22:11,
35:18, 36:17,
41:17, 41:20,
45:16, 45:20,
46:3, 46:14,
46:18, 46:22,
47:18, 51:7
foreigner
13:17

foreigners
19:7
form
33:14
forth
40:20
forward
11:4, 11:12,
40:8, 43:18
frankly
29:11, 41:7
free
20:10, 21:2,
21:10, 21:21
freedom
20:3, 20:6,
21:1
front
46:17
full
27:15, 29:9,
29:22, 52:8
fully
33:12
fund
34:6
funds
11:2
further
19:12, 36:20,
40:8, 52:12

**G**

gas
34:5
gavarone
3:13, 3:14,
6:8, 14:3, 14:4,
15:4, 15:5,
22:19, 22:20,
23:20, 23:21,
30:5, 30:6,
31:6, 31:7,
37:2, 38:2,
38:3, 49:10
gavarone's
37:1
general
9:21, 10:2,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    59

10:9, 17:20,
27:11, 28:2,
28:11, 29:12,
29:16, 29:18,
29:22, 33:19,
34:15, 42:2,
43:13, 46:21
**general's**
40:22
**getting**
34:2, 44:1,
44:15
**gilded**
26:19
**give**
27:11, 42:15,
43:12
**given**
8:6, 10:7,
10:8, 18:14,
30:1
**gives**
41:9
**giving**
17:18, 17:19,
20:17, 29:21,
35:3, 42:3
**go**
8:5, 40:19,
45:5, 47:22
**goal**
19:6
**goes**
8:9, 9:11,
19:12, 21:5
**going**
8:5, 9:1, 11:3,
11:12, 13:12,
13:13, 13:14,
20:7, 20:8,
21:4, 21:10,
21:18, 29:8,
29:9, 43:11,
43:14, 43:17,
48:10
**gone**
46:17
**good**
7:22, 17:16,

20:22, 22:18,
29:19
**governance**
22:3
**government**
21:20, 21:22,
29:10, 43:17,
46:6
**grant**
22:11
**great**
41:9
**greater**
34:13
**green**
19:15, 20:14,
20:22, 22:12,
22:16
**group**
44:6
**groups**
9:8, 13:7,
33:14, 35:4
**guarded**
11:1, 21:21
**guess**
17:16, 18:3

**H**

**hackett**
3:15, 3:16,
6:8, 15:6, 15:7,
23:22, 24:1,
24:3, 31:8,
31:9, 38:4,
38:5, 49:10,
49:11
**hales**
26:19
**handle**
10:2, 10:10,
29:12
**hands**
26:7, 28:1,
28:14
**hangs**
42:19, 43:22
**happen**
28:13, 28:20

**happened**
40:11
**happening**
28:6
**happens**
28:17
**hard**
33:16
**heads**
42:20
**heard**
40:12, 41:14,
41:15
**hearing**
18:12
**hearings**
18:9, 41:12
**help**
33:22
**here**
28:21, 28:22,
35:11, 40:3
**hereby**
52:2
**hicks**
3:17
**hicks-hudson**
6:8, 15:8,
15:9, 24:2,
31:10, 31:11,
38:6, 38:7,
49:12
**highest**
45:14, 45:15
**highlights**
48:7
**hoffman**
3:17, 3:18,
6:9, 6:10,
15:10, 15:11,
24:2, 31:12,
31:13, 38:8,
38:9, 49:12,
49:13
**holders**
19:15, 20:14,
20:22, 22:12,
22:16

**honest**
11:6
**hope**
18:17
**hopefully**
19:10, 29:1
**horse**
42:22
**house**
2:3, 2:5, 2:15,
5:15, 8:1, 8:4,
18:13, 19:12,
26:1, 35:18,
40:4, 41:13,
41:14, 41:16,
42:7, 42:18,
46:2
**however**
11:7, 19:11,
40:20
**hudson**
3:17
**huffman**
2:9, 2:17, 5:7,
5:8, 5:17, 7:17,
7:18, 7:22,
11:14, 11:18,
11:22, 12:2,
12:15, 12:19,
14:2, 14:6,
17:2, 17:3,
18:19, 19:2,
21:12, 22:18,
22:22, 25:16,
25:17, 27:3,
27:7, 29:2,
30:4, 30:8,
33:2, 33:3,
33:8, 35:21,
36:22, 37:4,
39:20, 39:21,
44:12, 48:14,
51:2, 51:3, 51:8
**hurts**
18:1

**I**

**idea**
28:7

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024
60

ideas
43:19
identifies
11:10
identify
33:14
illegal
10:20, 45:3,
45:7, 46:8,
46:22, 47:11,
47:16, 47:18
illustration
26:20
immediately
11:13
important
10:3
impose
27:15
include
45:16
included
8:20, 9:20,
13:11
includes
8:9, 8:14,
8:16, 8:20,
19:14, 22:3,
22:4
incredible
19:17, 40:21
indeed
44:7
independent
10:13
indicated
13:19, 41:5
indicating
41:6
inform
2:2
information
52:4
ingram
3:19, 3:20,
6:11, 6:12,
15:12, 15:13,
24:4, 24:5,

27:4, 27:5,
27:9, 31:14,
31:15, 38:10,
38:11, 49:14,
49:15
inherently
10:4, 29:6,
29:7, 29:8, 30:2
initially
9:9
initiative
26:16, 43:3
initiatives
10:16, 30:2,
30:3, 40:20,
43:4, 45:17
innocent
43:1
instead
9:12
institute
34:2
intended
28:22
interest
21:20, 21:22,
52:7, 52:12
interesting
41:12
interestingly
40:22
interfere
13:16
interference
46:3
international
10:5, 10:9,
29:7
interpretation
47:8
introduced
34:18
investigation
28:1, 28:16,
42:15
investigations
9:22, 33:20
investigative
42:16

involvement
41:20
issue
19:17, 20:20,
21:7, 21:10,
28:6, 36:5,
41:21, 44:16
issues
2:8, 10:19,
10:21, 12:5,
12:6, 12:14,
17:19, 18:2,
19:8, 20:13,
20:16, 20:17,
28:3, 41:8,
43:21, 44:18,
45:9, 46:5,
46:19, 51:7
itself
46:7, 48:7

**J**

january
34:1
job
1:20, 17:21,
29:20
johnson
3:21
june
52:16
jurisdiction
47:5
justice
26:6

**K**

keep
13:5, 43:10
keeping
43:10
kill
40:19, 44:18
kind
41:10, 46:10
know
20:19, 25:22,
40:14, 42:21,

43:4, 47:18
known
8:22, 17:16,
19:14
knows
18:17
kunze
3:21, 3:22,
6:13, 6:14,
15:14, 15:15,
24:6, 24:7,
31:16, 31:17,
38:12, 38:13,
49:16

**L**

lack
42:18
laid
17:4, 25:18,
39:22, 45:13
landis
4:1, 4:2, 6:15,
6:16, 15:16,
15:17, 24:8,
24:9, 31:18,
31:19, 38:14,
38:15, 49:16,
49:17
lang
4:3, 4:4, 6:17,
6:18, 15:18,
15:19, 24:10,
24:11, 31:20,
31:21, 38:16,
38:17, 49:18,
49:19
language
11:1, 19:20
larger
42:16
last
18:16, 26:12,
28:6, 36:4
later
21:18
law
2:7, 10:21,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    61

19:17, 20:1,
20:4, 20:5,
21:5, 21:9,
27:17, 34:9,
36:14, 45:20,
46:13, 46:17,
47:8, 48:9, 51:6
**lawful**
19:14, 20:6,
20:10
**lay**
14:5, 14:6,
22:21, 22:22,
30:7, 30:8,
37:3, 37:4
**leader**
44:12
**leads**
26:12
**least**
20:20, 43:19
**led**
42:18
**legal**
47:12, 47:14
**legislation**
34:7, 34:10,
34:19, 42:17,
43:18, 43:20,
44:3, 44:10
**legislative**
45:11, 45:14
**legislature**
20:9, 43:5,
43:10
**legislatures**
22:9
**legitimate**
13:2, 48:10
**let's**
13:5
**level**
45:7
**levying**
13:21
**lift**
42:5
**lightly**
36:12

**liked**
35:1
**likelihood**
47:22, 48:1
**line**
36:19
**list**
27:1
**listed**
52:10
**litigated**
46:17
**little**
27:20, 42:14,
45:5
**local**
10:7, 10:21,
27:19, 45:16,
46:4
**long**
21:9
**long-standing**
20:1, 20:4,
20:5
**longstanding**
19:16
**look**
40:8
**looked**
43:1
**looking**
46:8
**lot**
29:8, 36:6,
40:17
**louis**
26:6

---
**M**
---
**machines**
34:7
**made**
21:19
**maine**
34:20
**major**
26:2
**majority**
12:12, 17:12,

41:5
**make**
8:11, 10:14,
28:15, 28:22,
29:18, 36:11,
36:16, 36:18,
40:9, 42:10,
42:14
**makes**
9:15, 22:9,
46:9
**making**
28:12, 47:21,
48:3, 48:5
**man**
13:13
**management**
13:8, 13:9
**mandatory**
34:12
**manner**
35:3
**manning**
4:5, 4:6, 6:19,
6:20, 15:20,
15:21, 24:12,
24:13, 31:22,
32:1, 38:18,
38:19, 49:20,
49:21
**many**
26:19, 40:3,
41:8
**margeret**
44:8
**margin**
29:16, 29:20
**matter**
27:16, 29:15,
45:8
**maybe**
29:13
**mccolley**
2:10, 2:11,
4:7, 4:8, 5:10,
5:11, 6:21, 8:2,
8:3, 12:20,
12:22, 15:22,

16:1, 21:13,
21:15, 24:14,
24:15, 29:3,
29:5, 32:2,
32:3, 35:22,
36:2, 38:20,
38:21, 44:13,
44:14, 49:22,
50:1
**mead**
44:8
**mean**
18:17
**meaningfully**
33:13
**means**
13:15, 20:3
**meantime**
40:11
**measures**
12:10
**mechanism**
9:19
**meet**
28:20
**member**
51:9
**members**
35:16
**mention**
28:18
**mentioned**
21:17
**michel**
34:22
**million**
35:10, 35:11
**millions**
26:5
**mind**
13:5, 17:20,
18:16, 26:6
**minority**
12:12
**misdemeanor**
9:13, 9:18
**modify**
2:7, 51:6

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024

62

money
9:2, 9:3, 9:4,
9:9, 9:10, 9:16,
10:5, 12:5,
12:6, 12:9,
12:13, 17:14,
17:15, 17:18,
20:2, 20:21,
26:2, 26:22,
28:5, 28:11,
33:14, 34:5,
34:11, 35:1,
35:4, 35:11,
40:7, 40:9,
41:17, 43:21,
46:14, 48:4
monopoly
34:4
monthly
34:6
more
22:14, 36:6,
43:12
moreover
47:17
most
29:17, 33:21,
34:15
motion
2:10, 2:18,
5:9, 5:10, 5:18,
7:19, 14:6,
19:19, 22:19,
22:22, 30:5,
30:8, 37:1, 37:4
move
2:12, 11:16,
14:5, 18:22,
22:21, 30:7,
33:6, 37:3, 37:4
moved
5:12
moving
41:13
much
27:19, 29:11,
35:13, 41:10
mucked
21:4

multi
13:8
multi-million
13:6
multi-million-do-
llar
35:14
must
27:15

N

naaden
1:22, 52:2,
52:17
name
35:10, 51:10
natio
22:11
national
8:11, 9:15,
10:18, 19:13,
20:21, 36:17,
41:20, 45:16,
45:20, 46:3,
46:18
nationals
2:8, 20:16,
21:6, 22:7,
46:22, 47:18,
51:7
nature
10:9
nay
5:8
nays
7:19, 33:4,
39:22, 51:4
near
46:20
nearly
44:19
necessarily
41:7
necessary
42:5
need
28:7, 29:9,
36:11, 36:16,

42:10, 42:13,
45:18, 45:19,
48:7
needs
36:6
negative
18:11
neither
52:5
never
12:12, 44:6,
46:16, 46:17
nine
12:8
nobody
18:5, 18:10
non-citizens
22:1, 22:15,
44:20, 45:1
non-inclusion
40:6
notably
10:12
nothing
28:4, 42:17
november
28:6
number
2:5, 8:1, 8:4,
11:17, 33:7

O

o'brien
4:9, 4:10,
6:21, 6:22,
16:2, 16:3,
24:16, 24:17,
32:4, 32:5,
38:22, 39:1,
50:2, 50:3
october
28:6
oec
27:14, 28:19,
46:8, 46:16,
47:3
offense
9:13, 9:14

offenses
9:5
offer
17:15, 19:5
offered
40:5, 45:12
office
40:22, 41:2,
41:11
often
43:8
oh
7:22
ohio
1:8, 2:12,
5:12, 10:6,
10:21, 12:10,
13:16, 13:17,
13:19, 18:15,
27:13, 28:14,
29:18, 30:1,
33:19, 41:18,
41:19, 42:11,
43:7, 43:11,
44:3, 44:9,
45:1, 48:4,
48:9, 52:19
ohio's
13:10, 35:7,
44:21, 47:19
ohioans
33:17, 41:5,
44:1
okay
12:3, 12:18,
26:4
one
5:8, 9:7,
21:16, 28:6,
33:20, 44:16,
46:12
only
9:17, 10:18,
12:5, 20:16,
22:3, 28:11,
42:5, 43:4, 44:7
opinion
22:3, 22:8,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                           63

41:18, 46:9,
46:16, 47:4,
47:6, 47:20
**opinions**
43:6
**opponent**
41:6
**opposition**
13:1, 18:6,
21:16, 40:4
**orchestrated**
13:6
**order**
11:18, 27:7,
33:8, 45:19
**ordered**
19:2
**other**
12:8, 13:19,
18:7, 27:20
**others**
2:6, 26:17
**otherwise**
8:22, 52:7
**ourselves**
36:14
**out**
11:7, 19:9,
34:3, 36:9,
36:15, 43:5,
43:10, 45:13,
46:2, 47:1
**outcome**
40:15, 52:7
**outcomes**
34:8
**over**
13:7, 19:22,
20:7, 26:11,
33:17, 41:5,
41:12, 41:17,
42:19, 43:9,
43:22, 44:19
**overall**
19:5, 26:2
**overreaching**
20:9
**overseas**
35:8

**own**
35:10

---
**P**

**packs**
10:16
**page**
52:10
**pages**
1:21, 52:8
**paid**
41:13
**participate**
18:2
**participating**
41:21
**participation**
22:2, 44:17
**particular**
44:16
**parties**
52:6
**partisan**
41:8
**pass**
8:2, 48:15
**passage**
11:13
**passed**
2:3, 9:6,
10:12, 11:6,
34:19, 51:4
**passing**
11:9
**passthrough**
8:15
**past**
44:4
**pay**
34:17, 48:2
**payer**
34:11
**penalized**
28:8
**penalties**
9:12, 10:1,
13:3, 13:11,
13:21, 28:16,

28:21, 48:2,
48:10, 48:13
**penalty**
27:16, 52:3
**people**
13:13, 17:19,
18:14, 19:18,
28:8, 28:9,
29:11, 29:17,
40:19, 43:2,
43:5, 44:3,
44:7, 44:9,
44:19, 44:22,
45:6, 47:3
**people's**
18:13
**percent**
44:19
**perhaps**
42:13, 42:16
**perjury**
52:3
**permanent**
19:14, 20:6,
20:10
**person**
28:11
**person's**
41:11
**personal**
47:4
**ph**
4:19
**piece**
43:20, 44:10
**piecemeal**
22:10
**pill**
40:17
**place**
13:2
**plain**
12:11
**planning**
44:15
**please**
5:18, 14:7,
23:1, 30:9,

33:8, 37:5,
51:10
**pleasy**
48:15
**point**
29:16, 43:16
**pointed**
36:9
**poison**
40:17, 40:18
**policy**
34:1
**political**
22:4, 26:13,
26:18, 33:12,
34:7, 34:12,
34:14, 34:17
**politicians**
33:18
**politics**
26:22, 34:3
**position**
36:14
**possibility**
28:9, 47:4
**power**
17:20, 17:21,
26:12, 26:13,
40:21, 41:10,
42:16, 43:1,
43:11, 43:12
**preferred**
35:3
**present**
11:10, 27:6,
35:7
**presentation**
18:20, 34:22
**presents**
19:17
**president**
2:2, 2:11, 5:7,
5:11, 7:17, 8:3,
11:16, 12:3,
12:14, 12:22,
14:4, 17:2,
17:6, 18:18,
18:22, 19:4,

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024

64

21:15, 22:20,
25:16, 25:20,
27:2, 27:5,
27:9, 27:18,
29:5, 30:3,
30:6, 33:2,
33:6, 33:10,
34:15, 35:16,
35:20, 36:2,
37:2, 39:20,
40:2, 44:14,
48:13, 51:2
**prevail**
44:4, 44:9
**prevent**
34:11
**previously**
11:7
**priority**
45:14, 45:15
**probably**
13:13
**problem**
26:3, 26:10,
26:21, 29:21
**proceed**
19:3, 22:10,
27:8, 33:9
**process**
26:14, 40:10,
42:9
**prohi**
8:11
**prohibit**
8:17, 19:6,
33:11, 35:15,
48:9
**prohibited**
8:11, 20:17,
21:8, 35:19,
41:17, 47:3
**prohibition**
10:19, 20:14,
45:16
**prohibitions**
8:10, 8:14,
8:16
**prohibits**
20:20, 21:6,

41:20
**proper**
42:4
**proposal**
8:8
**proposed**
12:20
**prosecute**
27:12
**prosecution**
27:22
**prosecutor**
10:7, 27:17
**prosecutors**
27:19
**protected**
36:8
**protects**
36:10
**provide**
34:13
**provision**
27:11
**provisions**
8:20, 18:9
**public**
33:11
**purposes**
18:20, 21:13,
27:4, 29:3,
30:5, 33:5,
35:22, 37:1,
39:23
**put**
13:2, 13:10,
13:15, 19:20,
27:22, 33:16
**puts**
34:7
**putting**
41:10

**Q**

**quash**
43:2
**question**
2:17, 5:17,
7:22, 41:22,

43:14, 48:15,
51:8
**quickly**
8:6
**quite**
27:10

**R**

**rate**
34:11
**read**
22:8
**real**
26:10, 33:16,
47:4
**reality**
27:21
**really**
13:2, 26:21,
40:19, 40:21,
41:6, 42:12
**reason**
35:1
**reasonable**
48:2
**reasons**
40:4
**recall**
45:17
**receive**
9:10
**received**
9:3, 9:9, 52:9
**receives**
9:16
**recent**
29:17, 33:20
**recently**
45:13, 46:1
**recognize**
11:15, 12:16
**recognized**
12:20, 17:5,
18:20, 25:19,
27:4, 30:5, 37:1
**recognizes**
2:10, 5:9, 8:2,
14:3, 21:12,

22:18, 29:3,
33:4, 35:22,
39:23, 44:13
**recommend**
45:12
**recommendations**
45:12, 45:14
**recordings**
52:4
**recovering**
33:12
**rectify**
47:15, 48:8
**reexamination**
26:22
**refer**
27:16
**reference**
46:9
**referenced**
47:20
**referenda**
45:17
**referendas**
10:16
**referendum**
26:16
**referred**
40:12
**reflected**
45:22
**regarding**
2:8, 8:21,
46:18, 51:7,
52:10
**register**
10:16
**regulate**
45:10
**regulators**
34:8
**reineke**
4:11, 4:12,
7:1, 16:4, 16:5,
24:18, 24:19,
32:6, 32:7,
39:2, 39:3,
50:4, 50:5

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    65

| | | | |
|---|---|---|---|

**reinforces**
41:15
**related**
52:5
**released**
34:2
**relies**
46:19
**removes**
10:21, 11:1
**report**
34:2, 34:3
**reported**
34:21
**representative**
2:3, 2:6
**reputation**
33:19
**requested**
2:5
**require**
33:14, 34:12
**required**
35:5
**requires**
10:15, 27:13
**requiring**
2:13, 5:13
**residents**
19:14, 20:6,
20:10
**respect**
2:14, 5:14,
47:3
**result**
33:20
**return**
9:4
**revised**
2:7, 51:6
**reynolds**
4:13, 4:14,
7:1, 16:6, 16:7,
24:20, 24:21,
32:8, 39:4,
39:5, 50:6, 50:7
**rid**
12:5, 12:6

**right**
11:8, 12:19,
20:6, 20:10,
21:1, 26:9,
28:19, 42:11,
44:8, 47:15
**rights**
17:19, 36:19,
43:8
**rise**
8:4, 13:1,
19:5, 21:16,
27:5, 28:22,
40:3
**roegner**
4:15, 4:16,
7:1, 7:2, 16:8,
16:9, 24:22,
25:1, 32:8,
32:9, 39:6,
39:7, 50:8, 50:9
**role**
42:2, 42:3,
42:8
**roll**
2:18, 5:18,
14:7, 23:1,
30:9, 37:5,
48:15
**romanchuck**
4:17, 4:18,
7:3, 7:4, 16:10,
16:11, 25:2,
25:3, 32:10,
32:11, 39:8,
39:9, 50:10,
50:11
**rule**
2:5
**rully**
4:19, 4:20,
7:5, 7:6, 16:12,
16:13, 25:4,
25:5, 32:12,
32:13, 39:10,
39:11, 50:12,
50:13
**running**
36:3

**S**
**said**
17:7, 28:5,
35:3, 41:1,
42:7, 42:22,
43:22, 44:8,
45:18
**same**
8:15
**say**
17:13, 19:13,
20:5, 25:22,
27:19, 43:5,
44:20
**saying**
9:11, 41:16,
42:1, 45:21
**says**
12:9
**scale**
13:10, 13:16
**scandal**
42:19, 43:22
**schaffer**
4:21, 4:22,
7:7, 7:8, 16:14,
16:15, 25:6,
25:7, 32:14,
32:15, 39:12,
39:13, 50:14,
50:15
**scheme**
10:5, 35:14
**schemes**
13:6
**scope**
35:17
**scrap**
10:7
**second**
2:16, 9:14,
42:3
**secret**
35:12
**section**
2:6, 2:12,
5:12, 10:1,

35:4, 46:10,
46:20, 51:5
**see**
21:5, 21:6,
29:21
**seen**
44:5, 46:1
**self**
22:2
**senate**
1:8, 2:4, 11:7,
18:5, 19:8,
19:9, 19:11,
26:20, 34:16,
35:16, 41:16,
52:19
**senator**
2:10, 5:9, 8:2,
11:14, 11:15,
12:19, 12:20,
14:2, 14:3,
17:4, 18:19,
18:21, 21:13,
22:18, 25:18,
25:19, 27:3,
29:2, 29:3,
30:4, 33:5,
35:21, 35:22,
36:22, 39:23,
40:1, 44:13,
48:14
**senators**
26:16
**separate**
22:1
**serious**
13:21
**serve**
28:9
**session**
1:10, 35:17,
36:4, 52:19
**seven**
33:3, 51:3
**seventh**
17:10
**shake**
44:1

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                         66

| | | | |
|---|---|---|---|
| **shall** | **small** | 20:7, 20:11, | **step** |
| 2:17, 5:17, | 44:6 | 21:1, 21:3, | 11:8, 19:12 |
| 8:1, 48:15, 51:8 | **smith** | 21:10, 21:21, | **steve** |
| **shame** | 5:3, 7:11, | 36:9, 36:10 | 3:17, 6:8, |
| 28:12 | 7:12, 7:21, | **spell** | 15:10, 24:2, |
| **shared** | 16:18, 16:19, | 47:1 | 31:12, 38:8, |
| 47:19 | 25:10, 25:11, | **spend** | 49:12 |
| **she'd** | 32:18, 32:19, | 46:14 | **still** |
| 42:7 | 33:5, 33:6, | **spending** | 11:8, 11:9, |
| **sherine** | 33:10, 39:16, | 33:15, 34:14, | 13:14, 13:15, |
| 5:1, 5:2, 7:9, | 39:17, 50:18, | 46:22 | 26:5, 40:14, |
| 7:10, 16:16, | 50:19 | **spends** | 40:16, 40:18, |
| 16:17, 25:8, | **solutions** | 22:14 | 42:19, 43:13, |
| 25:9, 32:16, | 33:16 | **spite** | 43:22 |
| 32:17, 39:14, | **solve** | 44:2, 44:3 | **stock** |
| 39:15, 50:16, | 26:21 | **spoke** | 43:6, 43:10 |
| 50:17 | **some** | 42:21 | **struck** |
| **should** | 8:7, 10:11, | **staff** | 19:22, 20:8, |
| 11:11, 11:12, | 10:12, 27:18, | 27:20, 42:13 | 21:11 |
| 26:15, 27:1, | 28:3, 28:4, 45:6 | **stands** | **structure** |
| 28:13, 34:16, | **somebody** | 2:9 | 41:19 |
| 35:14, 42:13, | 8:17, 8:22 | **started** | **stuff** |
| 44:20, 45:1, | **somehow** | 40:13 | 12:8, 18:6 |
| 47:11, 47:12, | 45:3 | **state** | **subject** |
| 47:14, 47:16 | **someone** | 10:6, 13:16, | 9:1 |
| **shouldn't** | 40:22, 41:2, | 13:17, 18:15, | **substitute** |
| 29:12 | 41:7 | 29:10, 30:1, | 2:5, 2:15, |
| **shown** | **something** | 43:7, 45:16 | 5:15, 8:1, 8:4 |
| 41:8 | 11:11, 41:15, | **state-wide** | **succeeding** |
| **side** | 43:3 | 46:4 | 47:22 |
| 13:19 | **sometimes** | **stated** | **sue** |
| **signature-kbmle** | 13:6, 34:9 | 36:3, 36:4 | 19:21 |
| 52:14 | **sort** | **statement** | **sued** |
| **simple** | 48:2 | 34:4 | 20:7 |
| 12:4, 12:11, | **speak** | **states** | **sufficiently** |
| 13:12, 27:10 | 11:20, 12:17, | 21:22, 26:11, | 41:19 |
| **since** | 12:20, 17:5, | 33:21, 34:18, | **suggested** |
| 20:5 | 18:17, 25:19 | 34:19, 34:20 | 44:17, 45:2, |
| **single** | **speaking** | **statewide** | 45:6 |
| 41:11 | 39:23, 44:15 | 10:15, 10:19, | **suited** |
| **sir** | **special** | 29:17, 30:3 | 10:10 |
| 12:18 | 1:10, 35:17, | **statue** | **support** |
| **sites** | 52:19 | 13:14 | 19:6, 21:11, |
| 2:6 | **specific** | **statute** | 26:1 |
| **sixth** | 46:9, 46:13 | 45:8, 47:15 | **supporting** |
| 17:10 | **specifically** | **statutory** | 52:4 |
| **slightly** | 46:9 | 41:19 | **supposed** |
| 9:5 | **speech** | **stay** | 18:13, 20:12, |
| | 20:2, 20:3, | 29:19 | |

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                   67

| | | | |
|---|---|---|---|
| **20:15** | **40:17** | **thanks** | **timelines** |
| **supreme** | **talking** | 25:20 | 28:18 |
| 20:1 | 13:5, 22:14 | **themselves** | **timely** |
| **sure** | **talks** | 41:8 | 42:15 |
| 12:2, 29:18, | 46:14, 46:21 | **therefore** | **times** |
| 36:11, 36:16, | **tape-recording** | 28:13, 45:9 | 27:21, 40:3, |
| 36:18, 40:9, | 52:9 | **thing** | 40:12, 44:4 |
| 42:10, 42:14 | **taped** | 18:3, 20:8, | **title** |
| **surprise** | 29:1 | 20:22, 28:17, | 51:9, 51:10 |
| 26:15 | **technological** | 35:12, 44:7 | **titled** |
| **surprised** | 26:18 | **things** | 51:4 |
| 19:18 | **tell** | 10:12, 18:11, | **today** |
| **suspect** | 35:9 | 18:16, 26:15, | 18:3, 18:4, |
| 21:17, 44:22 | **tempting** | 27:20, 34:10 | 18:9, 26:9, |
| **suspended** | 42:9 | **think** | 36:3, 47:9 |
| 2:14, 5:14 | **terms** | 10:6, 11:7, | **today's** |
| **switzerland** | 34:15, 40:5 | 12:8, 17:10, | 21:18 |
| 28:5 | **testified** | 19:10, 20:20, | **together** |
| **sykes** | 42:7 | 28:21, 36:5, | 36:3 |
| 5:3, 5:4, 7:13, | **testify** | 36:6, 40:14, | **told** |
| 7:14, 16:20, | 18:5, 18:10 | 40:15 | 25:21, 43:9 |
| 16:21, 25:12, | **testimony** | **third** | **top** |
| 25:13, 32:20, | 1:7, 41:14, | 5:16, 7:19 | 27:1 |
| 32:21, 39:18, | 41:15 | **thought** | **total** |
| 50:20, 50:21 | **th** | 36:7 | 35:13 |
| **T** | 26:17, 45:13 | **threat** | **totaling** |
| **table** | **thank** | 11:10, 35:7, | 35:11 |
| 14:5, 14:7, | 2:11, 5:11, | 36:12 | **trample** |
| 17:4, 19:19, | 8:3, 11:14, | **three** | 36:13 |
| 22:21, 23:1, | 11:16, 12:3, | 2:13, 5:14, | **transcribed** |
| 25:18, 30:7, | 12:14, 12:15, | 18:9, 34:19, | 1:22 |
| 30:9, 37:3, | 12:18, 12:22, | 44:4 | **transcriber** |
| 37:5, 39:22 | 14:2, 14:4, | **through** | 52:1, 52:2 |
| **tabled** | 17:6, 18:18, | 8:9, 8:12, | **transcript** |
| 33:4 | 18:19, 18:22, | 18:4, 35:3, | 1:6 |
| **take** | 19:4, 21:12, | 35:11, 41:14, | **transcription** |
| 21:18, 29:8, | 21:15, 22:20, | 46:4, 48:4 | 52:9 |
| 41:7 | 27:1, 27:3, | **thrown** | **transparency** |
| **taken** | 27:5, 27:9, | 36:15 | 42:18 |
| 41:9 | 29:2, 29:5, | **thumb** | **travel** |
| **taking** | 30:3, 30:4, | 13:10, 13:16 | 8:21 |
| 11:11, 11:12, | 30:6, 33:6, | **time** | **treasurer** |
| 17:18 | 33:10, 35:19, | 2:16, 5:16, | 9:7, 10:22 |
| **talk** | 35:21, 36:2, | 8:7, 17:7, | **treated** |
| 17:8, 18:14 | 36:21, 36:22, | 17:11, 18:4, | 43:7 |
| **talked** | 37:2, 40:2, | 18:16, 22:14, | **triple** |
| 17:8, 17:9, | 44:12, 44:14, | 26:18, 29:9, | 8:21, 9:1 |
| | 48:13, 48:14 | 36:4 | **trojan** |
| | | | 42:22 |

Transcript of Testimony of the Ohio Senate - Special Session
Conducted on May 31, 2024                                    68

| | | | |
|---|---|---|---|
| **true** | **urge** | **voted** | **whatsoever** |
| 52:8 | 11:13, 13:18, | 8:7, 8:10, | 46:15 |
| **truth** | 13:22, 18:18, | 8:17, 19:8, | **wherever** |
| 29:15, 45:7 | 21:11, 22:16, | 19:19, 29:18, | 28:5 |
| **try** | 35:19, 44:10 | 44:19, 46:2 | **whether** |
| 17:15 | **using** | **voting** | 41:2 |
| **trying** | 11:3, 34:5, | 22:4 | **white-collar** |
| 13:9, 35:14, | 34:11 | **vowed** | 10:5 |
| 43:8 | **utilities** | 10:16 | **wilkin** |
| **turcer** | 33:11, 34:5, | **vs** | 5:5, 5:6, 7:15, |
| 42:7 | 34:11, 34:14 | 21:17 | 7:16, 16:22, |
| **two** | **utility** | **W** | 17:1, 25:14, |
| 18:16, 34:10 | 34:3, 34:16, | | 25:15, 32:22, |
| **type** | 36:10 | **waived** | 33:1, 39:18, |
| 10:7, 13:3, | **V** | 18:8 | 39:19, 50:22, |
| 13:20, 13:22, | | **want** | 51:1 |
| 29:22, 48:11 | **various** | 19:21, 20:16, | **wish** |
| **types** | 36:17 | 21:5, 28:9, | 26:21 |
| 8:18, 10:10, | **vast** | 41:7, 43:7 | **wishes** |
| 11:2, 29:12, | 26:7 | **wanted** | 43:6 |
| 47:2, 48:5 | **version** | 12:12, 25:22, | **without** |
| **U** | 8:7, 10:14, | 33:13, 44:15 | 8:5, 13:11, |
| **ultimately** | 10:15, 10:17, | **watered** | 44:10 |
| 11:5, 36:14 | 40:13, 40:20 | 40:12, 40:15 | **wonder** |
| **un** | **versions** | **way** | 43:16 |
| 17:12 | 36:17 | 20:12, 28:8 | **words** |
| **unambiguous** | **vest** | **we'll** | 12:9 |
| 46:13 | 9:20 | 12:15, 12:16 | **work** |
| **unanimously** | **via** | **we're** | 33:16, 41:3, |
| 46:3 | 20:1, 20:2 | 10:4, 13:5, | 42:13, 44:5 |
| **under** | **video-recorded** | 21:17, 43:11, | **working** |
| 10:1, 10:20, | 1:6 | 45:3 | 33:17 |
| 13:7, 13:8, | **violated** | **we've** | **world** |
| 27:17, 35:10, | 27:14 | 7:21, 8:7, | 44:7 |
| 36:20, 41:17, | **violates** | 8:10, 8:16, | **worst** |
| 52:3 | 8:22 | 10:3, 17:7, | 48:9 |
| **unfortunately** | **violating** | 17:16, 18:3, | **worth** |
| 27:21, 33:18 | 36:19 | 18:6, 18:14, | 11:9, 13:14 |
| **unite** | **violations** | 40:17, 44:5, | **worthy** |
| 21:22 | 27:12 | 46:1 | 36:5, 36:20 |
| **united** | **visibility** | **weaker** | **wouldn't** |
| 20:2, 26:11, | 34:13 | 11:5, 11:6 | 48:3, 48:5 |
| 36:10 | **voice** | **wealth** | **wound** |
| **unlike** | 43:2 | 26:7 | 47:7 |
| 17:12 | **vote** | **weight** | **Y** |
| **upheaval** | 17:3, 18:18, | 30:1 | |
| 26:18 | 25:17, 39:21, | **whatever** | **yays** |
| | 44:11, 44:21 | 28:20, 29:14 | 5:8, 7:18, |

33:3, 39:21,
51:3
**yeah**
3:10, 5:4,
14:17, 38:9
**years**
26:12, 44:20
**yep**
32:19
**yesterday**
19:18

---

**$**

**$2.5**
35:9
**$63**
35:10
**$65.5**
35:11

---

**1**

**1352270**
33:7
**14**
45:13
**15**
2:12, 5:12
**1945**
20:5

---

**2**

**20**
26:17, 29:16
**2020**
34:21
**2023**
34:1, 45:13
**2024**
1:9, 52:16,
52:19
**21**
39:21
**215**
19:9, 19:11
**2271**
27:6
**2273**
11:17

---

**2275**
19:1
**23**
7:18
**24**
17:3, 33:3,
51:3

---

**3**

**30**
5:8, 25:17
**31**
1:9, 52:19
**330**
35:8

---

**4**

**40**
26:12, 29:20

---

**5**

**5–**
52:19
**501**
35:4
**51**
52:8
**52**
1:21
**540606**
1:20, 52:19

---

**6**

**60**
28:20, 29:20

---

**7**

**70**
44:19

---

**9**

**90**
28:20