# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| OPAWL – BUILDING AAPI FEMINIST LEADERSHIP, et al., | : : : | |
| Plaintiffs, | : : : | |
| v. | : : : | CASE NO. 2:24-cv-3495 |
| | : : | JUDGE WATSON |
| DAVE YOST, et al., | : : : | |
| Defendants. | : | |

## DEFENDANTS' MOTION TO STAY PENDING APPEAL

Defendants Dave Yost and Frank LaRose move this Court for an order staying enforcement of the preliminary injunction issued on August 31, 2024. Doc. 32. A memorandum of law follows.

                                                            Respectfully submitted,

                                                            DAVE YOST
                                                            Ohio Attorney General

                                                            */s/ Ann Yackshaw*
                                                            ANN YACKSHAW (0090623)*
                                                            *Counsel of Record*
                                                            JULIE M. PFEIFFER
                                                            STEPHEN P. TABATOWSKI
                                                            Assistant Attorneys General
                                                            Constitutional Offices Section
                                                            30 East Broad Street, 16th Floor
                                                            Columbus, Ohio 43215
                                                            Tel: (614) 466-2872; Fax: (614) 728-7592
                                                            Ann.Yackshw@OhioAGO.gov
                                                            Julie.Pfeiffer@OhioAGO.gov
                                                            Stephen.Tabatwoski@OhioAGO.gov

                                                            *Counsel for Defendants Ohio Attorney General*
                                                            *Yost and Ohio Secretary of State Frank LaRose*

**INTRODUCTION**

**I.    FACTS**

On August 31, 2024, the Court preliminarily enjoined enforcement of portions of HB 1, codified at Ohio Rev. Code §3517.121. This statute prohibits any foreign-national individual, defined as "an individual who is not a United States citizen or natural" from making election-related contributions, expenditures, and independent expenditures. Ohio Rev. Code §3517.121(A)(2)(a). With one narrow exception, the Court found that HB 1 is constitutional. Doc. 32 at PageID 1187. The Court found that lawful permanent residents "have political speech rights," and therefore, any restriction on those rights must be constitutionally tailored to advance the State's interests. The Court ultimately concluded that HB 1 is not constitutionally tailored because, in the Court's view, the State showed no link between lawful permanent residents and the State's interest in preventing foreign influence over State elections. Doc. 32 at PageID 1178.

As a remedy, the Court enjoined enforcement of Ohio Rev. Code §3517.121(A)(2)(a), the definition of a foreign-national individual, in its entirety. That is, even though the Court recognized that *most* foreign-national individuals covered by Ohio Rev. Code §3517.121(A)(2)(a) do not have any First Amendment rights to participate in American self-government, it nonetheless enjoined the law as applied to *all* foreign-national individuals.

This injunction should be stayed pending appeal. A stay will give the Sixth Circuit an opportunity to determine the level of scrutiny that applies to laws like HB 1. As this Court recognized, this is an open question that may dispose of Plaintiffs' claims. In the alternative, the Court should stay the portions of its injunction that sweep more broadly than the constitutional injuries it identified, allowing the statute to be enforced in its constitutional applications. Because the State is now suffering irreparable injury from the injunction, Defendants respectfully request that the Court rule on this motion for stay by **Thursday, September 5, 2024,** so that, if necessary

2

the State may seek relief from the U.S. Court of Appeals or the Supreme Court of the United States in time to enforce its election rules during the 2024 General Election.

## II. LAW AND ARGUMENT

### A. Standard Of Review

When considering a motion for stay pending appeal, the Court considers "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Coal. to Defend Affirmative Action v. Granholm*, 473 F.3d 237, 244 (6th Cir. 2006). These factors are not each prerequisites to a stay pending appeal but are "interconnected considerations" to be balanced by the reviewing court. *Id*. Here, these factors favor Defendants.

### B. Defendants are likely to succeed on appeal.

#### 1. Defendants are likely to succeed on appeal because the Sixth Circuit is likely to apply rational basis review and uphold HB 1 in its entirety.

This Court recognized that the level of constitutional scrutiny "may be decisive here." Doc. 32 at PageID 1162. And it further recognized that the level of scrutiny remains an open question. *Id*. (citing *Bluman v. FEC*, 800 F. Supp. 2d 281, 292 (D.D.C. 2011)). The Court therefore should therefore stay its decision to allow the Sixth Circuit an opportunity to address this open question. *See Schmitt v. Ohio Secretary of State*, No. 2:18-cv-966, 2019 U.S. Dist. LEXIS 43930, at *1 (N.D. Ohio Mar. 18, 2019) (staying an injunction for 10 days to provide defendant the opportunity to move the Sixth Circuit Court of Appeals for relief).

In any event, the Sixth Circuit is likely to apply rational basis review here. In *Bluman*, which this Court recognizes as binding, the court reviewed two lines of cases: (1) cases establishing that foreign citizens "enjoy many of the same constitutional rights that U.S. citizens do," and (2)

3

cases establishing that "foreign citizens may be denied certain rights and privileges that U.S. citizens possess." 800 F. Supp. 2d at 286-87. From these cases, the court distilled a "straightforward principle." *Id*. at 288. "It is fundamental to the definition of our national political community that foreign citizens *do not have a constitutional right* to participate in, and thus may be excluded from, activities of democratic self-government." *Id*. (emphasis added).

*Bluman* did not qualify or condition this principle. When it comes to activities of democratic self-government, foreign nationals have no constitutional rights that the law protects. By definition, this includes First Amendment rights. The *Bluman* court would not have concluded that foreign nationals have no constitutional rights to participate in democratic self-government if it really meant that foreign nationals do, in fact, have First Amendment rights in this area. When fundamental rights are not implicated, rational basis review applies. *See Kowall v. Benson*, 18 F.4th 542, 548 (6th Cir. 2021). Because no such fundamental rights are implicated here, rational basis review will apply, and Defendants will succeed on appeal.

This Court recognized that the Supreme Court has not applied heightened review to laws that exclude foreign nationals from the most important government positions. Doc. 32 at PageID 1166. But it concluded that it need not follow those decisions because they arose under the Equal Protection Clause, not the First Amendment. In so doing, the Court did not apply *Bluman*'s essential holding derived from those cases: that foreign nationals do not have constitutional rights—including, by definition, First Amendment rights—to participate in the activities of American self-government.

Because the Sixth Circuit is likely to apply rational basis review, Defendant will prevail on appeal. The Court should therefore stay its injunction pending appeal.

    **2.**     **Defendants are likely to succeed on appeal because HB 1 will survive even strict scrutiny as applied to lawful permanent residents.**

4

Even if some form of heightened scrutiny applies, Defendants are still likely to prevail on appeal under *Bluman* because HB 1 survives any level of review. As *Bluman* recognized, the State's interest is "limiting the participation of foreign citizens in activities of American democratic self-government, and in thereby preventing foreign influence over the U.S. political process." *Id*. This interest is "compelling." *Id*. Accordingly, bans on election spending by foreign nationals can withstand strict scrutiny: "[T]he debate over the level of scrutiny is ultimately not decisive here because we conclude that [52 U.S.C. §30121] passes muster even under strict scrutiny." *Id*. at 285.

Applying these principles here, Defendants are likely to succeed on appeal. Under *Bluman*, the State has an interest in limiting the participation of foreign citizens in the activities of American democratic self-government, and that interest is "compelling." 800 F. Supp. 2d at 288. Even Plaintiffs concede that the General Assembly repeatedly cited "prevent[ing] foreign billionaires from interfering in Ohio's elections" as an interest in HB 1 during its passage. Doc. 31 at PageID 1124. By extending the election-spending ban to *all* foreign nationals, including lawful permanent residents, the General Assembly narrowly tailored the law to advance this interest. Unlike federal law,[1] HB 1 does not permit foreign citizens to participate in some activities of American self-government—funding electioneering communications for state ballot issues—while excluding them from others—voting and running for office. Rather, *all* foreign citizens are excluded from *all* the most central activities of American democratic self-government. Ohio Rev. Code §3517.121(A)(2)(a); Ohio Const. art. V, §1; art. XV, §4.

---

[1] Ironically, the plaintiffs in *Bluman* argued that federal law was not narrowly tailored because it did not apply to lawful permanent residents. 800 F. Supp. 2d at 290. ("Plaintiffs argue that the statute, as a measure designed to limit foreign influence over American self-government, is underinclusive and not narrowly tailored because it does not prohibit contributions and expenditures by lawful permanent residents.").

5

In concluding that HB 1 unconstitutionally restricts lawful permanent residents, the Court incorrectly focused on activities that do not relate to state self-government. It found that lawful permanent residents pay income tax and serve in the U.S. military and are therefore unlikely to pose a risk of undue foreign influence. Doc. 32 at PageID 1181-82. While laudable, these activities are far less connected to democratic self-government than those activities from which lawful permanent residents are constitutionally excluded: voting and running for office.

Indeed, under the Court's analysis, it is doubtful that a State's ban on voting by lawful permanent residents could be upheld. If lawful permanent residents have First Amendment rights to political participation and the States' interests in limiting foreign influence cannot apply to them, how could a State justify excluding lawful permanent residents from voting? Yet more than forty-five States tie the right to vote to citizenship. *See* Doc. 29 at PageID 1068. Surely those laws are not all now in jeopardy; yet, they cannot be squared with the Court's analysis here.

Defendants recognize the significance of the activities engaged in by lawful permanent residents, including those highlighted by the Court. Nonetheless, Defendants respectfully submit that they are likely to prevail on appeal because HB 1 is narrowly tailored to advance the State's compelling interest in excluding foreign nationals from the activities of American self-government.

> **3. In the alternative, the Court should stay the portions of the injunction that enjoin enforcement of applications of the statute that the Court concluded are likely lawful.**

In the alternative, the Court should stay its injunction insofar as it applies to foreign nationals other than lawful permanent residents. "Even in the First Amendment context, facial challenges are disfavored, and neither parties nor courts can disregard the requisite inquiry into how a law works in all of its applications." *Moody v. NetChoice, LLC*, 144 S. Ct. 2383, 2409 (2024). Here, the Court wisely considered multiple applications of the law. Doc. 32 at PageID

6

1187-88. In so doing, it concluded that HB 1 *is constitutional* as applied to foreign nationals other than lawful permanent residents. *Id.* Yet the Court ultimately enjoined HB 1's application to *all* foreign-national individuals. This remedy goes too far.

When a statute cannot be constitutionally applied to particular persons, courts can sever those applications from the statute. The general rule is that any equitable relief "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). Thus, "[w]hen confronting a constitutional flaw in a statute, [federal courts] try to limit the solution to the problem by (1) enjoining only the unconstitutional applications of a statute while leaving other applications in force or (2) severing its problematic portions while leaving the remainder intact." *Byrd v. Tenn. Wine & Spirits Retailers Ass'n*, 883 F.3d 608, 626 (6th Cir. 2018) (quoting *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006)). In other words, a statute "may be declared invalid to the extent that it reaches too far, but otherwise left intact." *Id*. "This approach derives from the Judiciary's 'negative power to disregard an unconstitutional enactment' in resolving a legal dispute." *United States v. Arthrex, Inc.*, 594 U.S. 1, 23–24 (2021) (quoting *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). That is because "the judicial power is, fundamentally, the power to render judgments in individual cases." *Murphy v. NCAA*, 584 U.S. 453, 488 (2018) (Thomas, J., concurring).

In elections cases, federal courts routinely enjoin the *application* of a law to certain persons or under certain circumstances, while leaving the constitutional applications in force. *See, e.g.*, *League of Women Voters v. LaRose*, 2024 U.S. Dist. LEXIS 128303 (N.D. Ohio July 22, 2024) (enjoining Ohio from enforcing two sections of an elections statute "against any disabled voter or against any individual who assists any disabled voter" without enjoining the law's application

7

against other persons); *Foster v. Dilger*, 2010 U.S. Dist. LEXXIS 95195, at * 23 (E.D. Ky. Sept. 9, 2010) ("Accordingly, there is no need for the Court to enjoin the enforcement of KRS §121.150(6) altogether. The Court will limit the scope of its injunction to the enforcement of the $100 contribution limit for individual donors to school board campaigns."); *cf. Arthrex*, 594 U.S. at 26 ("we hold that 35 U.S.C. §6(c) is unenforceable as applied to the Director insofar as it prevents the Director from reviewing the decisions of the PTAB on his own.").

The Court determined that HB 1 cannot constitutionally apply to lawful permanent residents. Under the rule articulated in *Ayotte*, it should have enjoined the application of HB 1 to lawful permanent residents only—the only application of the statute the Court concluded was unconstitutional. Accordingly, the Court should have ordered Defendants not to enforce HB 1 *as applied* to lawful permanent residents and let the remainder of the law take effect.

Understandably, the Court correctly sought to avoid judicial legislation in crafting an appropriate remedy. Doc. 32 at PageID 1190 ("Enjoining Defendants from enforcing [Ohio Rev. Code §3517.121] against only LPRs would require the Court to effectively re-write the statute."). But in doing so, it enjoined applications that it had already concluded were likely constitutional. It is the Court's power and duty to enjoin only the unconstitutional applications of a statute while leaving the many constitutional applications in force. *See Ayotte*, 546 U.S. at 328-29. Therefore, as an alternative to fully staying its injunction pending appeal, the Court should stay its injunction insofar as it applies to foreign nationals other than lawful permanent residents.

    **C.**    **The remaining factors favor a stay.**

For the reasons set forth above, Defendants are likely to prevail on the merits. As a result, they will satisfy the remaining stay-pending-appeal factors: the State always suffers irreparable harm when its lawful regulations are enjoined, *see Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020) (per curiam); no one will suffer any relevant harm by being made to comply with a

8

lawful statute; and the public interest is always served by "giving effect to the will of the people by enforcing the laws they and their representatives enact." *Id*.

Breaking these factors down, Defendants will suffer irreparable harm absent a stay. "Ohio's interests will suffer if the Court takes away the General Assembly's prerogative" to prevent foreign influence in Ohio's elections, and federal courts should "not intrude upon the Ohio legislature's prerogative lightly." *Libertarian Party of Ohio v. Husted*, No. 2:13-cv-953, 2014 U.S. Dist. LEXIS 49841, at *35 (S.D. Ohio Mar. 19, 2014).

Failing to grant a stay means subjecting the public to a serious risk of voter confusion. "Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion." *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006). That is all the more reason to stay remedies in election-law cases if at all possible: doing so ensures that voters are not confused by ephemeral, constantly evolving election rules. Further, it is always "in the public interest that [this Court] give effect to the will of the people by enforcing the laws . . . their representatives enact." *Thompson v. DeWine*, 976 F.3d 610, 619 (6th Cir. 2020). And specific to HB 1, the public interest favors "deferring to [the State] Defendants' efforts to ensure the integrity of the election . . . ." *Morrison v. Colley*, No. C-2-06-644, 2006 U.S. Dist. LEXIS 68183, *46 (S.D. Ohio. Sept. 12, 2006).

Finally, no one will suffer if HB 1 goes into effect. HB 1 cannot cause irreparable constitutional injury because it applies to foreign nationals who lack a First Amendment right to participate in the process of American democratic self-government. Nor will it harm the American plaintiffs. As to Plaintiff Quilligan, the citizen married to a foreign national with commingled household funds, HB 1 poses no certain and immediate risk of harm. "Absent evidence to the contrary," Ohio law treats contributions from a joint account as made "by the person signing or

9

endorsing the joint check or other written instrument." Ohio Adm. Code 111:2-4-14. A spousal citizen may freely exercise her First Amendment rights in compliance with HB 1 by simply signing the contribution check. And especially if the Court stays its injunction to the extent that it prevents the State from enforcing Ohio Rev. Code §3517.121 against non-LPR foreign nationals, the Court's own holding virtually stipulates to a lack of constitutional injury of the type that can overbalance the irreparable injury inflicted on the State.

### III. CONCLUSION

For these reasons, the Court should stay the preliminary injunction pending appeal. In the alternative, the Court should stay the preliminary injunction insofar as it applies to individual foreign nationals other than lawful permanent residents. Defendants respectfully request that the Court rule on this motion for stay by **Thursday, September 5, 2024**, so that, if necessary the State may seek relief from the U.S. Court of Appeals or the Supreme Court of the United States in time to enforce its election rules during the 2024 General Election.

Respectfully submitted,

DAVE YOST
Ohio Attorney General

*/s/ Ann Yackshaw*
ANN YACKSHAW (0090623)*
*Counsel of Record*
JULIE M. PFIEIFFER
STEPHEN P. TABATOWSKI
Assistant Attorneys General
Constitutional Offices Section
30 East Broad Street, 16th Floor
Columbus, Ohio 43215
Tel: (614) 466-2872; Fax: (614) 728-7592
Ann.Yackshw@OhioAGO.gov
Julie.Pfeiffer@OhioAGO.gov
Stephen.Tabatwoski@OhioAGO.gov

*Counsel for Defendants Ohio Attorney General Dave Yost and Ohio Secretary of State Frank LaRose*

10

## CERTIFICATE OF SERVICE

      I hereby certify that on September 2, 2024, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

                                          */s/Ann Yackshaw*
                                          ANN YACKSHAW (0090623)
                                          Assistant Attorney General